# EXHIBIT A

LA QUINTA, CA 92253

Nunc Pro Tunc As Of
Date ___ 1/14/26



FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

NOV 18 2025

L. Gieser

CVPS2508295

JCW

JAN 21 2026

## FIRST AMENDED COMPLAINT FOR DAMAGES

### SUPERIOR COURT OF CALIFORNIA
### COUNTY OF RIVERSIDE

**Plaintiff:**
AUDREY LITTLE

**Defendants:**
ROCKET TITLE INSURANCE COMPANY; ROCKET CLOSE, LLC (f/k/a Amrock Title California Inc.); ROCKET COMPANIES, INC.; OAKTREE FUNDING CORPORATION; and DOES 1–50

**UNLIMITED CIVIL CASE**

**JURY TRIAL DEMANDED**

### 1. INTRODUCTION

This lawsuit arises from a coordinated and systemic failure by Oaktree Funding Corporation, Rocket Title Insurance Company, Rocket Close LLC (formerly Amrock Title California Inc.), and Rocket Companies, Inc., who together concealed a recorded $393,000 lien, closed a defective refinance loan, disbursed funds contrary to written escrow instructions, misrepresented legal obligations, withheld required documents, and refused to correct or mitigate a known title defect.

As a result of Defendants' actions and omissions, Plaintiff—a 60-year-old disabled breast cancer survivor—was forced into a defective $716,000 loan at 9.625%, recorded in the wrong lien position, eliminating her ability to refinance and placing her at immediate risk of losing her home.

Plaintiff's economic damages exceed $3,000,000, and Defendants acted with malice, oppression, and fraud.

### 2. PARTIES

Plaintiff: Audrey Little, an individual residing in Riverside County.

Defendants:

1. Rocket Title Insurance Company – Issued preliminary title report and final title policy; refused documents; made false statements about "privacy laws."

2. Rocket Close, LLC (formerly Amrock Title California Inc.) – Acted as Settlement Agent; listed as Settlement Agent on the Closing Disclosure; conducted title search, bring-down, escrow, disbursement, and recording.

3. Rocket Companies, Inc. – Parent entity controlling Rocket Title and Rocket Close.

4. Oaktree Funding Corporation – Lender; funded defective refinance; concealed denial; refused appeal and mitigation.

5. DOES 1–50 – Individuals/entities involved in title search, underwriting, denial, concealment, fraud, or conspiracy.

**3. JURISDICTION AND VENUE**

Venue is proper in Riverside County because the property is located here, Plaintiff resides here, and Defendants transact business here.

**4. FACTUAL ALLEGATIONS**

plaintiff alleges the following facts based on personal knowledge:

# A. Plaintiff's Pre-Refinance Financial Structure

Before refinancing, Plaintiff carried **$2,175,500** in total mortgage-related debt consisting of:

- **$357,000 at Prime (6.99%)**, interest-only → **$2,079.52/month**

- **$125,000 at 10%**, interest-only → **$1,041.67/month**

- **$1,700,500 at 2.65% blended rate** → **$6,042/month**

**Total monthly obligation = $9,163.19.**

All payments were **current, stable, affordable, and sustainable**.

Plaintiff was not in default and had no financial distress prior to the refinance.

———

## B. Mandatory Closing Instructions

All Defendants, including Rocket Close/Amrock and Oaktree, executed written closing instructions requiring:

**"Verification of second-position lien priority BEFORE disbursement."**

Rocket Close/Amrock was responsible for:

- Title search

- Bring-down search

- Escrow

- Settlement

- Disbursement

- Recording

- Compliance with lender's instructions

The Closing Disclosure lists:

**Settlement Agent:** Amrock Title California Inc.

**Email:** lcsettlements@rocketclose.com

This proves Rocket Close/Amrock acted as settlement agent for the Rocket entities.

# C. Timeline of the Recorded Lien (Critical Evidence)

The **$393,000 Resnick lien** was **recorded with Riverside County on December 19, 2024**.

Plaintiff's refinance through Oaktree:

- **DID NOT begin until approximately May 2025,**

- **DID NOT close until mid-July 2025.**

This means:

1. The lien had been publicly recorded **5–7 months** before closing.

2. Rocket Title's preliminary search should have captured it.

3. Rocket Close's bring-down search should have captured it.

4. Oaktree's underwriting should have flagged it.

5. No reasonable title professional could have missed this lien.

6. Disbursement without verifying second position violated the lender's instructions.

This was **not** a "timing issue."

This was a **serious breach of professional duties.**


## D. Loan Recorded in the Wrong Lien Position

As a result of the missed lien:

• Oaktree's **$716,000 loan at 9.625%** recorded in **third position,**

• behind the **$393,000 lien,**

• rather than in **second position**, as required.

Plaintiff never would have qualified for the refinance

and

Oaktree never would have subordinated the loan

had the recorded lien been disclosed before closing.

## E. Refusal to Produce Documents (13+ Requests)

After discovering the defect, Plaintiff made **more than 13 separate requests** for:

- Title search report

- Bring-down search

- Title examination notes

- Title basis documents

- Escrow file

- Settlement file

- Recording confirmations

Rocket Title refused, falsely claiming:

> "We cannot provide non-public financial information due to privacy laws."

This was false because:

- The requested documents concern **Plaintiff's own property**

- The California DOI requires production of title evidence

- Privacy laws do **not** prohibit disclosure of a borrower's own documents

- Rocket Close/Amrock withheld escrow records without basis

Rocket's refusal increased Plaintiff's harm and violated industry practice.

———

## F. Oaktree Concealed the Title Insurance Claim Denial

Oaktree:

- Filed the lender's title claim

- **Never provided** the denial letter

- **Never revealed** the reason for denial

- **Never filed** an appeal

- **Ignored** Plaintiff's legal explanation showing denial was improper

- **Failed to mitigate** despite knowing Plaintiff would suffer harm

Oaktree concealed information *it was obligated to disclose*

as the **insured lender** on the title policy.

## b. Refusal to Produce Documents (13+ Requests). ( oak tree )

After discovering the defect, Plaintiff made **more than 13 separate requests** for:

- Title search report

- Bring-down search

- Title examination notes

- Title basis documents

- Escrow file

## G. Coordinated Responses — Evidence of Civil Conspiracy

On November 17, 2025, Rocket's attorney and Oaktree's attorney
emailed Plaintiff **within one minute of each other**, using
nearly identical language:

- "Privacy laws prevent disclosure"

- "Not our department"

- "Separate entities"

- "Contact someone else"

Both:

- refused to cure,

- refused to mitigate,

- refused to produce documents,

- refused forbearance,

- concealed material information,

- and blamed Plaintiff.

The timing, wording, and synchronized denial strategies
demonstrate:


✔ **a joint plan**

✔ **mutual protection**

✔ **common strategy**

✔ **and agreement to conceal the title defect**

This supports the civil conspiracy claim.

## H. Oaktree's Refusal to Grant Temporary Forbearance

Despite receiving:

- a detailed outline of the title defect,

- evidence of the missed lien,

- proof of denial impropriety,

- Plaintiff's health and vulnerability,

- Plaintiff's risk of forced sale,

- over six months of elevated interest costs,

Oaktree refused temporary forbearance

and improperly sent Plaintiff to a servicer with **no authority** to correct:

- title defects

- underwriting errors

- missed lien

- denial appeals

- lien priority

- settlement errors

This refusal worsened Plaintiff's damages

and violated CFPB Regulation X servicing obligations.

# I. Plaintiff's Damages

As the direct result of Defendants' wrongful conduct:

- **Interest differential:** $1,077,648

- **Equity loss due to forced sale:** $779,000

- **Replacement housing cost:** ~$4,000,000

- **Out-of-pocket losses:** $150,696

- **Total economic harm:** > $3 million

## K. Forced Sale Damages

As a direct result of the title defect and Defendants' refusal to cure or mitigate, Plaintiff must sell her home before this matter is resolved. The upcoming forced sale will occur under time pressure and financial distress, causing Plaintiff to lose hundreds of thousands of dollars in equity. Plaintiff will be unable to purchase a comparable replacement home without incurring an estimated **$4,000,000** cost. Defendants' conduct has placed Plaintiff in an irreversible financial position that will continue to cause damages long after this lawsuit is resolved.

Plaintiff, a **60-year-old disabled breast cancer survivor**, now faces:

- loss of her home,

- loss of equity,

- inability to refinance,

- and long-term financial damage.

**All damages alleged in this Complaint reflect Plaintiff's losses as of November 17, 2025. These damages continue to accrue daily due to Defendants' ongoing refusal to correct the defective lien priority, refusal to provide documents, refusal

to mitigate, and refusal to appeal the title claim denial. Plaintiff reserves the right to supplement and increase these damages as additional harms occur."

## 5. CAUSES OF ACTION

# COUNT 1 — NEGLIGENCE (Against All Defendants)

Plaintiff incorporates all preceding paragraphs.

Each Defendant owed Plaintiff a duty to exercise reasonable care in connection with the refinance transaction, including properly examining title, identifying recorded liens, verifying lien priority, complying with written closing instructions, conducting accurate bring-down searches, underwriting based on correct title information, producing documents reasonably requested, and preventing foreseeable harm.

Defendants breached their duties by:

- missing a publicly recorded $393,000 lien that had been recorded for months,

- failing to verify second-position lien priority,

- disbursing funds despite written instructions requiring lien verification,

- underwriting a loan Plaintiff never would have qualified for had the lien been disclosed, and

- refusing to correct or mitigate the defect after being repeatedly notified.

As a direct and foreseeable result, Plaintiff suffered damages exceeding $3,000,000.

———

# COUNT 2 — ESCROW NEGLIGENCE (Against Rocket Close/Amrock)

Plaintiff incorporates all preceding paragraphs.
Rocket Close, LLC (formerly Amrock Title California Inc.) acted as the **Settlement Agent** as shown by the Closing Disclosure identifying "Amrock Title California Inc." and listing the **RocketClose.com** settlement email address.

As escrow holder/settlement agent, Rocket Close/Amrock owed duties to:

- follow written closing instructions,

- verify lien priority prior to funding,

- conduct accurate title searches,

- perform proper bring-down searches,

- and disburse funds only after all conditions were met.

Rocket Close/Amrock breached these duties by missing the recorded lien, failing to verify lien priority, failing to follow instructions requiring confirmation of second position, and disbursing funds in violation of those instructions.

This breach directly caused the defective loan and Plaintiff's resulting losses.

———

# COUNT 3 — NEGLIGENT MISREPRESENTATION (Against All Defendants)

Plaintiff incorporates all preceding paragraphs.
Defendants represented that:

- the title search was accurate,

- all liens had been identified,

- the refinance would record in second position,

- the loan was proper and valid,

- and necessary documents would be provided.

These representations were false, and Defendants lacked reasonable grounds for believing them to be true.

Plaintiff reasonably relied on these assurances when agreeing to and closing the refinance transaction.

As a result of this reliance, Plaintiff suffered significant financial harm.

———

# COUNT 4 — FRAUDULENT CONCEALMENT (Against All Defendants)

Plaintiff incorporates all preceding paragraphs.

Defendants concealed material facts they had a duty to disclose, including:

- the existence of the recorded $393,000 lien,

- the defect in lien priority,

- the failure to verify lien position,

- the denial of Oaktree's lender's title claim,

- the absence of any appeal,

- the refusal to provide documents,

- and the integrated relationship between Rocket Title and Rocket Close.

Defendants intentionally withheld these facts, knowing Plaintiff would rely on the false belief that title had been properly cleared.

Plaintiff justifiably relied on Defendants' concealment and suffered ensuing damages.

————

# COUNT 5 — CIVIL CONSPIRACY (Against All Defendants)

Plaintiff incorporates all preceding paragraphs.

Defendants acted together pursuant to a common plan to:

- conceal the title defect,

- deflect responsibility,

- refuse disclosure of required documents,

- obstruct Plaintiff's attempts to obtain the truth,

- and prevent correction of the wrong lien position.


Evidence includes:

- synchronized attorney emails sent within one minute,

- nearly identical denial scripts,

- coordinated false "privacy law" excuses,

- mutual refusal to produce documents,

- concealment of the denial and lack of appeal,

- redirection of Plaintiff to unrelated parties.

Each Defendant committed overt acts in furtherance of the conspiracy, causing Plaintiff's harm.

———

# COUNT 6 — VIOLATION OF CALIFORNIA INSURANCE CODE §§12340.10–12340.12 (Against Rocket Title)

Plaintiff incorporates all preceding paragraphs.
Rocket Title failed to comply with statutory duties regarding retention and production of title evidence, including the title search, bring-down, examiner notes, and basis documents.

Rocket Title refused more than 13 requests for these materials and falsely cited "privacy laws," which do not apply to a borrower's own documents and do not override DOI regulations.

These failures contributed to Plaintiff's damages.

———

# COUNT 7 — UNFAIR BUSINESS PRACTICES (Bus. & Prof. Code §17200) (Against All Defendants)

Plaintiff incorporates all preceding paragraphs. Defendants engaged in unlawful, unfair, and fraudulent business practices by:

- concealing the recorded lien,

- refusing to provide documents,

- issuing defective title reports,

- disbursing contrary to written instructions,

- concealing the denial of the title claim,

- refusing forbearance,

- refusing to mitigate damage,

- and using coordinated false explanations.

Plaintiff suffered economic injury as a result.

# COUNT 8 — UDAAP VIOLATIONS (Against All Defendants)

Plaintiff incorporates all preceding paragraphs.
Defendants' conduct constitutes unfair, deceptive, and abusive acts, including:

- knowingly placing Plaintiff into a defective refinance structure,

- refusing to correct a known defect,

- exploiting Plaintiff's vulnerability (age 60, disabled, breast cancer survivor),

- concealing critical documents,

- misleading Plaintiff about responsibilities and rights,

- obstructing regulators.

These practices caused substantial, unavoidable economic harm.

# COUNT 9 — CFPB REGULATION X VIOLATIONS (12 C.F.R. §1024) (Against Oaktree)

Plaintiff incorporates all preceding paragraphs.
Oaktree violated Regulation X by:

- failing to respond to Plaintiff's hardship request,

- refusing temporary forbearance,

- failing to evaluate loss mitigation,

- concealing the title claim denial,

- refusing to appeal the denial,

- and misdirecting Plaintiff to a servicer unable to correct underwriting or title errors.

These failures worsened Plaintiff's losses.

———

# COUNT 10 — FAILURE TO MITIGATE DAMAGES (Against Oaktree and Rocket Title)

Plaintiff incorporates all preceding paragraphs.

Despite repeated notice and detailed explanation from Plaintiff, Oaktree and Rocket Title failed to take reasonable steps to mitigate harm, including:

- refusing to appeal the title claim denial,

- refusing to cure the lien priority defect,

- refusing to provide documents,

- refusing temporary forbearance,

- refusing realistic settlement discussions.

Their refusal to act increased Plaintiff's damages.

———

# COUNT 11 — PUNITIVE DAMAGES (Against All Defendants, Civil Code §3294)

Plaintiff incorporates all preceding paragraphs.

Defendants acted with **malice, oppression, and fraud** by:

- concealing the recorded lien,

- refusing to correct a known defect,

- intentionally obstructing Plaintiff,

- providing synchronized false explanations,

- refusing to mitigate harm,

- concealing the denial and lack of appeal,

- and consciously disregarding Plaintiff's rights and financial safety.

Plaintiff is a **60-year-old disabled breast cancer survivor**, heightening the severity and foreseeable nature of the harm.

Defendants' refusal to act despite repeated notice, and their coordinated concealment of the title defect, has forced Plaintiff into selling her home to prevent total financial collapse. Defendants knew that failure to correct the lien priority and refusal to mitigate would lead to a forced sale, displacement, loss of equity, and long-term economic harm. Defendants consciously disregarded Plaintiff's rights, safety, and financial stability—especially given Plaintiff's age (60), disability, and history of breast cancer—constituting malice and oppression under Civil Code §3294.

Punitive damages are appropriate to punish and deter Defendants' conduct.

**"All damages described above are calculated as of November 17, 2025."**

**6. PRAYER FOR RELIEF**

*(Copy and paste this entire section into your complaint.)*

**WHEREFORE, Plaintiff respectfully prays for judgment against all Defendants, jointly and severally where permitted by law, and for the following relief:**

All monetary amounts stated below reflect Plaintiff's damages **as of November 17, 2025**, and **continue to accrue** due to Defendants' ongoing refusal to correct the defective lien priority, refusal to mitigate, refusal to provide documents, and refusal to appeal the title claim denial. Plaintiff expressly reserves the right to amend and increase these damages as additional harm occurs before trial.

1. **Rescission** of the defective refinance loan in the amount of **$716,000**, including cancellation of the Note and Deed of Trust that recorded in the wrong lien position.

2. **Indemnification and full payoff** of all liens and obligations affected by Defendants' missed lien and defective title work, including but not limited to:

   - the **$393,000 Resnick lien**,

   - the **$125,000** second mortgage,

   - the **$357,000** interest-only obligation,

   - and any additional liens or debts impacted by the defective closing.

3. **Restitution and disgorgement** of all sums Defendants obtained as a result of the defective refinance, including fees, interest, and costs.

4. **Recovery of all overpaid interest and long-term interest damage**, including the lifetime interest differential of **$1,077,648**, representing the difference between Plaintiff's pre-defect structure and the forced 9.625% loan.

5. **Recovery of lost equity** in the approximate amount of **$779,000**, representing the loss of home equity directly caused by the defective title closing and inability to refinance.

6. **Compensation for forced-sale damages**, including but not limited to:

   - diminished sale proceeds due to financial distress,

   - lost net equity,

   - loss of bargaining power,

   - inability to refinance or hold the property,

   - and economic displacement resulting from the need to purchase **replacement housing estimated at approximately $4,000,000**.

7. **Compensation for all out-of-pocket costs**, including but not limited to:

   - approximately **$73,000** in credit depletion and protective payments,

- **$24,000** in emergency borrowing,

- **$1,800** for required equipment replacement to pursue this matter,

- **$4,000** in filing, service, and subpoena fees,

- and all additional consequential losses shown at trial.

8. **General and special damages** according to proof at trial, including emotional distress, loss of stability, loss of housing security, and deterioration of Plaintiff's health.

9. **Punitive and exemplary damages** pursuant to Civil Code §3294 for Defendants' malice, oppression, and fraud, including but not limited to:

- deliberate concealment of the recorded lien,

- synchronized misrepresentations,

- refusal to mitigate known harm,

- coordinated concealment of the title claim denial,

- refusal to appeal the denial,

- and conscious disregard of Plaintiff's rights, financial safety, disability, and medical vulnerability.

10. **Injunctive relief**, including but not limited to:

- an order compelling Defendants to produce all title, escrow, settlement, underwriting, and claim documents;

- an order requiring Defendants to correct the defective lien priority;

- an order requiring Oaktree to resubmit and/or appeal the title insurance claim;

- and any further corrective actions this Court deems necessary to prevent continuing harm.

11. **Declaratory relief** confirming that Defendants' conduct was negligent, unlawful, deceptive, unfair, conspiratorial, and in violation of California and federal statutes, regulations, and fiduciary obligations.

12. **Pre-judgment and post-judgment interest** as allowed by law.

13. **Costs of suit**, including filing fees, service costs, and recoverable litigation expenses.

14. Any and all additional relief the Court deems **just and proper**, particularly in light of Plaintiff's age (60), disability, breast cancer history, financial vulnerability, and the catastrophic harm caused by Defendants' actions

**7. SIGNATURE**

Dated: November 17, 2025

/s/ Audrey Little

Plaintiff, In Pro Per