FILED
CLERK, U.S. DISTRICT COURT
2/10/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: asi  DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AUDREY B. LITTLE, | Case No. 5:26-cv-00402-MEMF (MBKx) |
| Plaintiff, | |
| v. | |
| OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET COMPANIES, INC.; and DOES 1-50, inclusive | |
| Defendants. | |

**THIRD SUPPLEMENTAL DECLARATION OF AUDREY B. LITTLE IN SUPPORT OF EX PARTE TRO AND STATUS-QUO RELIEF**

I, Audrey B. Little, declare as follows:

1. I am Plaintiff in this action. I have personal knowledge of the facts stated in this declaration and, if called, could and would testify competently to them.

2. What this case is about. This case is about whether escrow, title diligence, escrow instructions, recording order, and closing safeguards (including pre-funding quality control) matter - i.e., whether the loan could properly fund only if Defendants' deed of trust could be recorded in the required lien position - and

1  whether Defendants and their agents followed those safeguards. It is not about

2  whether a borrower can or must independently discover and report what appears on

3  title; that is the role of title/escrow safeguards and the contractual escrow

4  instructions that govern closing.

5  3. Title inquiry. During the loan process, I specifically asked whether anything

6  appeared on title regarding a family-related loan or lien. I was told, in substance,

7  that there was nothing on title reflecting such a lien. That response did not surprise

8  me because, to my knowledge at the time, there was no recorded family lien

9  affecting title and the family obligation required no monthly payment.

10  4. Reliance on safeguards and escrow instructions. I relied on the transaction's

11  safeguards - title diligence, the escrow instructions I signed, and required

12  recordation priority - so that the loan would not fund unless the lender's deed of

13  trust could be recorded in the required position and unless title was accurately

14  checked near closing. I understood that escrow instructions requiring recordation

15  priority are binding and were the operative failsafe to prevent a defective closing.

16  5. Stale title materials; no current title check. Based on the documents I have

17  reviewed, title materials in the file reflect that the title commitment was based on

18  older/stale title information, and a current title report (bring-down) was not

19  obtained immediately before disbursement. If a current title report had been run

near closing/disbursement, the lien-priority problem would have been caught and the transaction would not have funded in a defective lien position.

6. When I learned of the defect. I learned of the lien-priority defect only when I later attempted to refinance and was blocked because of the recorded lien position. That was the first time I learned that the safeguards had failed in a way that prevented refinancing.

7. Economic logic. I am a numbers person. I would not have rationally refinanced into a higher interest rate or worse economic terms if the intended refinance benefit could not be achieved. Had I known that a lien priority defect would prevent refinancing and lock me into a worse rate/cost structure, I would not have proceeded.

8. DTI-neutral versus LTV/CLTV disqualifier. The family obligation required no monthly payment and therefore did not increase my debt-to-income ratio (DTI). The underwriting impact of a recorded family lien on title would have been to increase loan-to-value/combined loan-to-value (LTV/CLTV) beyond program limits and to prevent the required lien position from being achieved. I understood that if a family lien appeared on title, the loan would not and should not close. For that reason, a current title check and strict compliance with escrow instructions were essential failsafes.

9. Any single safeguard would have prevented this. If any one of the standard closing safeguards had been performed correctly - including running a current title report near closing, confirming lien position before disbursement, enforcing the escrow instruction requiring recordation in the required priority on or before disbursement, or conducting a final pre-funding quality control check - this transaction would not have funded in a defective lien position and the ensuing harm would not have occurred.

10. Forced, irreparable choices absent interim relief. If the Court does not grant TRO/status-quo relief, I will be forced to sell my home to prevent Defendants from being paid on a disputed lien position that should not impair title as recorded. I will also be forced to choose between paying the disputed obligation to avoid harm to an innocent co-borrower versus paying my first mortgage, risking my first missed payment in more than 33 years. These are irreversible harms that cannot be fully remedied later by money damages.

11. Requested relief. I submit this declaration in support of narrow, temporary status-quo relief preventing irreversible foreclosure/title transfer and collateral coercive harms (billing/collection pressure and adverse credit reporting) while the Court resolves jurisdiction/remand and sets prompt preliminary-injunction proceedings.

1   I declare under penalty of perjury under the laws of the United States that the

2   foregoing is true and correct.

3   DATED: February 10, 2026

4   /s/ Audrey B. Little

5   AUDREY B. LITTLE