FILED
CLERK, U.S. DISTRICT COURT
2/10/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: asi DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

1  UNITED STATES DISTRICT COURT

2  CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDREY B. LITTLE, | Case No. 5:26-cv-00402-MEMF (MBKx) |
| Plaintiff, | |
| v. | |
| OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET COMPANIES, INC.; and DOES 1-50, inclusive, | |
| Defendants. | |

3

4  FOURTH SUPPLEMENTAL DECLARATION OF AUDREY B. LITTLE

5  (RE: TEAGUE DECLARATION; RECORD CORRECTION; MISSING

6  'COMPLETE LOAN FILE' MATERIALS)

7  1. I am the Plaintiff in this action. I have personal knowledge of the facts stated

8  herein and could competently testify to them.

9  2. I submit this declaration for a limited purpose: (a) to correct the record regarding

10 assertions made in the Declaration of Robert Teague filed in support of Oaktree's

11 opposition to my ex parte application for temporary restraining order ('Teague

1  Decl.'), and (b) to identify critical gaps in the materials Oaktree produced as a

2  purported 'Complete Loan File,' which bear directly on the 'concealment' narrative

3  and on the lender/title gatekeeping failures at issue.

4  3. Mr. Teague's declaration presents itself as an authoritative statement of

5  corporate facts. He represents that he is a custodian of Oaktree's books and records,

6  that those records are maintained in the regular course of business, and that he

7  reviewed the file and is 'extremely familiar' with me and the loan. (Teague Decl.

8  paras. 3-5.)

9  4. Mr. Teague's declaration does not identify his full role at Oaktree. However, in a

10 November 4, 2025 email to me, Mr. Teague identified himself in his signature

11 block as 'SVP Director of Compliance & General Counsel' for Oaktree Funding

12 Corp. (Exhibit K-1.)

13 5. As Oaktree's in-house General Counsel and senior compliance officer, Mr.

14 Teague's role should have been to analyze what occurred in this transaction against

15 Oaktree's underwriting conditions, title diligence requirements, and lien-position

16 safeguards, and to ensure that any sworn factual assertions presented to the Court

17 are verified and complete.

18 6. Instead, the Teague declaration advances a borrower 'concealment' narrative and

19 a counterfactual underwriting conclusion (i.e., Oaktree 'would not have funded' had

20 it known of the family loan), without addressing the gatekeeping documents and

1  conditions that control lien priority and recording before disbursement. (Teague
2  Decl. paras. 8-10.)
3  7. I previously declared under penalty of perjury (executed December 23, 2025)
4  that prior to applying for the subject loan, I informed the mortgage broker that I
5  had a family loan, and that I understood at all times that if a recorded lien affected
6  title I would not qualify. (Supplemental Declaration of Audrey Little executed Dec.
7  23, 2025, paras. 2-4.)
8  8. My prior declaration also states that the family obligation required no monthly
9  payment and was effectively a zero-payment obligation, meaning the alleged
10  obligation would not change debt-to-income calculations. (Id. para. 9.) The
11  underwriting significance of the family loan is therefore not 'DTI manipulation,'
12  but rather lien position/CLTV and title/recording conditions - issues controlled by
13  title/escrow gatekeeping.
14  9. I further declared that the escrow instructions required the lender's deed of trust
15  to be recorded in second position prior to funding, and that no current title report
16  was run as of closing/recording. (Id. paras. 5-7.) Those are gatekeeper failures
17  independent of any borrower disclosure narrative.
18  10. After Oaktree received a denial of its title insurance claim, Mr. Teague
19  communicated to me threats of referral to the FBI and/or allegations of mortgage
20  fraud based on the same 'concealment' theory. I understood this as pressure to

1  accept a borrower-fault narrative rather than address the transactional safeguards

2  requiring second-position recording and verification before disbursement.

3  11. I responded that Oaktree could make any referral it wished because I disclosed

4  the family loan to the broker, my co-borrower did not have knowledge of any

5  undisclosed lien, and I repeatedly executed closing documents making lien position

6  a mandatory condition of the transaction. In particular, the deed of trust I signed

7  repeatedly identifies the instrument as a California second-lien deed of trust, and

8  the escrow instructions required second-position recording on or before

9  disbursement.

10 12. Oaktree did not produce any substantive evidentiary materials to me until

11 approximately December 10, 2025, when I received a Dropbox link containing

12 (among other items) a title insurance policy excerpt without a cover page that does

13 not match the claim/denial materials, a title insurance claim denial, a title

14 commitment reflecting a stale title effective date, and a file labeled 'Little

15 Complete Loan File.'

16 13. The file labeled 'Little Complete Loan File' is approximately 600 pages and

17 appears largely composed of generic or non-substantive materials. The only

18 materials of apparent relevance within it are certain underwriting condition

19 lists/requirements. Critically, however, the file omits core executed closing and

1  verification documents that would ordinarily appear in a complete closing and

2  servicing file.

3  14. By way of example (non-exhaustive), the 'Complete Loan File' is missing: the

4  executed and/or final Deed of Trust, the Note, signed escrow instructions/closing

5  instructions, recording information and final recording details, current title pulls or

6  bring-down title reports proximate to funding/recording, the final underwriter sign-

7  off/clear-to-close (or equivalent approval), the credit report relied upon, and core

8  third-party items customarily in the file (including title, tax, and insurance

9  documentation). I have repeatedly requested those materials, along with any CPL

10 letter(s), all claim submission/appeal communications and decisions relating to the

11 title insurance claim, and Oaktree's signed-off quality control ('QC') documentation

12 reflecting review and verification of lien position prior to disbursement, but those

13 materials have not been provided to me.

14 15. These omissions are significant because the missing documents are the

15 documents that would confirm lien-priority verification, underwriting approval,

16 and the basis for funding/disbursement. Without them, the borrower-fault narrative

17 presented in the Teague Declaration should not be credited on this TRO record.

18 16. I submit this declaration solely to ensure the Court has an accurate record while

19 full briefing proceeds, and to support the need for narrow, temporary relief

1  preserving the status quo to prevent irreversible enforcement, housing

2  destabilization, and medical regression.

3

4  I declare under penalty of perjury under the laws of the United States of America

5  that the foregoing is true and correct.

6  Executed on February 10, 2026, at La Quinta, California.

7

8  /s/ Audrey B. Little

9  AUDREY B. LITTLE

10  Plaintiff Pro Se

11

1                      EXHIBIT K-1

2     Email from Robert R. Teague dated November 4, 2025 (title and direct number)

3     From: Robert Teague <rteague@oaktreefunding.com>
4     Subject: RE: call
5     Date: November 4, 2025 at 3:47 PM
6     To: Audrey Little <audrey.little@gmail.com>; Jon Epstein
7     <jepstein@oaktreefunding.com>
8
9     Ms. Little, Jon and I are available tomorrow 10am AZ time for a call. If you're
10    available at that time, we can give you a call.
11
12    Robert R. Teague, Esq.
13    SVP Director of Compliance & General Counsel
14    Direct: 480.691.3808
15    Office: 1.800.521.3911
16    Nonqmexpert.com