UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Case No. 5:26-cv-00402-MEMF (MBKx)

FILED
CLERK, U.S. DISTRICT COURT
2/10/2026
CENTRAL DISTRICT OF CALIFORNIA
BY ___asi___ DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

AUDREY B. LITTLE, Plaintiff,

v.

OAKTREE FUNDING CORPORATION;

ROCKET CLOSE, LLC; ROCKET

COMPANIES, INC.; and DOES 1–50,

inclusive,

Defendants.

1

2  PLAINTIFF'S EMERGENCY CONSOLIDATED REPLY IN SUPPORT OF TRO, ORDER

3  SHORTENING TIME, AND PRELIMINARY INJUNCTION THROUGH FINAL

4  ADJUDICATION OR RECORDED CURE; AND RESPONSE TO DEFENDANTS'

5  REMOVAL NARRATIVE AND EVIDENTIARY OBJECTIONS

6

7  Plaintiff submits this Reply to present the record as it is—document-driven and timestamped—

8  and to prevent irreversible harm. Defendants are attempting to reframe a systemic closing and

9  gatekeeper failure into a borrower-disclosure morality play and to obtain timing leverage through

10  removal and late-night filing practice.

1  Defendants filed their federal opposition packet at 10:44 p.m. on February 9, 2026 and served it
2  by email/ECF notice. Plaintiff worked through the night because the date-certain harm matured
3  on February 10, 2026.
4  Defendants have engaged in a repeated pattern of after-hours and late-night filings that appear
5  calculated to disadvantage a pro se litigant facing date-certain irreparable harm. The Notice of
6  Removal was filed at 5:37 p.m. on January 29, 2026—the day after the state-court injunction
7  opposition deadline was missed. Oaktree's motion to dismiss was filed at 9:59 p.m. on February
8  5. And the opposition to Plaintiff's emergency TRO application was filed at 10:44 p.m. on
9  February 9. This practice has repeatedly required Plaintiff to prepare emergency responses
10 overnight, while Defendants obtain additional procedural breathing room. (ECF No. 1 at 5:37
11 p.m.; ECF No. 21 at 9:59 p.m.; ECF No. 23 at 10:44 p.m.).
12
13 **I.  KEY FACTS AND TIMELINE (UNDISPUTED)**
14 • Rocket was served December 22, 2025; Oaktree was served December 31, 2025.
15 • Plaintiff's noticed state-court injunction opposition deadline was January 28, 2026 (court-day
16 counted). Defendants missed it. No opposition filed.
17 • Oaktree filed its Notice of Removal on January 29, 2026 after business hours.
18 • Oaktree filed its federal opposition package at 10:44 p.m. on February 9, 2026, accompanied by
19 multiple evidentiary-objection filings aimed at striking Plaintiff's irreparable-harm record.
20
21 **II.  THE INJUNCTION OPPOSITION DEADLINE WAS MISSED; REMOVAL THEN**
22 **PROVIDED THIRTEEN EXTRA DAYS**

1  Defendants' opposition to the noticed injunction was due January 28, 2026. The deadline was

2  missed. No opposition was filed.

3  On January 29—after the missed deadline—Oaktree removed. Removal did not interrupt a

4  timely response; the response had already been missed. Removal reset the procedural clock and

5  provided Defendants approximately thirteen extra days to oppose in federal court compared to

6  the state schedule.

7  Defense counsel states that removal meant Oaktree "did not need to file a response" to the

8  pending state-court injunction motion. That statement ignores the fact that the state deadline had

9  already passed before removal was filed. Removal functioned as an end-run around a missed

10 deadline and a pending injunction posture.

11

12 **III.  REMOVAL MISSTATEMENTS: COUNSEL KNOWLEDGE, CONSENT, AND**

13 **FEDERAL-CLAIM POSTURE**

14 Rocket was served nine days before Oaktree and remained a defendant at removal. Under 28

15 U.S.C. § 1446(b)(2)(A), all properly joined and served defendants must join in or consent to

16 removal at the time of removal.

17 On January 5, 2026 Plaintiff expressly identified Rocket's counsel to Oaktree's counsel

18 ("Zeeshan is the attorney for Rocket Close and Companies"), copying Rocket's counsel on the

19 same email chain. Any representation that Rocket counsel was unknown, or that consent could

20 be obtained only after later "discovery," is contradicted by that written notice.

21 By January 23, 2026 Plaintiff provided Oaktree a redlined version of the materially superseding

22 pleading posture and explained that the SAC revisions were evidence-driven after Oaktree's

production on December 10, 2025. Defendants' attempt to portray removal as compelled by surprise or by a stable federal-claim posture is inconsistent with the contemporaneous record.

Plaintiff requests expedited remand determination and fees under 28 U.S.C. § 1447(c).

**IV. THIS IS A TOTAL GATEKEEPER COLLAPSE (TITLE / ESCROW / RECORDING / RECONVEYANCE / TITLE INSURANCE / QC)—NOT "ONE MISSED LIEN"**

Defendants want this case to be about one allegedly "missed" deed of trust so they can pivot to borrower nondisclosure. That is not the record. The record supports, at minimum, serious questions that every core safeguard failed:

Defendants also mischaracterize Oaktree as a mere "conventional lender." The loan was processed as a non-conventional product, and Oaktree functioned as the underwriter—not a passive money source. Oaktree's own file reflects underwriting and lender QC responsibilities tied to title and lien-priority conditions. Oaktree cannot invoke the "conventional lender" label to disclaim duty while simultaneously acting as the underwriting gatekeeper for title, CLTV, and required lien position.

Oaktree also had the stale preliminary title report dated 10/15/2024 in its file long before funding. The record reflects that this stale title material was in Oaktree's possession and relied upon in the underwriting/closing process since at least May 2025. A current title bring-down at or immediately before disbursement was the obvious safeguard; either it was never obtained, or it was obtained and ignored. Either scenario supports injunctive relief and undermines Defendants' effort to shift blame to borrower "disclosure."

• No current title bring-down was obtained immediately before disbursement (or, if obtained, Defendants proceeded anyway).

- Escrow did not comply with the lien-priority instruction requiring the lender's deed of trust to record in the required position as a condition to close. Oaktree admits this safeguard existed and that escrow recorded Oaktree in a subordinate position.
- Recording occurred after disbursement rather than on/before the disbursement date required by the closing instruction (recording order safeguard failed).
- A paid lien was not timely reconveyed/cleared, compounding the defective lien stack and demonstrating the title/escrow "cleanup" function failed.
- Title insurance / title-risk handling was not performed as it should have been (claim/denial/policy inconsistencies are in the record).
- Oaktree's own QC/title conditions were not enforced despite underwriting limits turning on title/CLTV gatekeeping.

### V. DTI = $0; TITLE/CLTV WAS THE DISQUALIFIER—THAT IS WHY PLAINTIFF ASKED "IS IT ON TITLE?"

Defendants' "material concealment" narrative collapses under underwriting math. The family obligation required no monthly payment; disclosure would add $0 to DTI. The underwriting gate was whether a lien appeared on title (CLTV/lien stack) and whether the lender's deed of trust could be recorded in the required position. That is why Plaintiff asked whether it was on title.

### VI. DEFENDANTS' OBJECTION PACKET IS A "GAG" ATTEMPT TO ERASE IRREPARABLE HARM

Plaintiff's medical background further supports the credibility of her functional-harm testimony. Plaintiff worked in healthcare for 36 years. Plaintiff is not offering expert causation opinions.

1. Plaintiff offers first-hand functional facts, supported by medical records, and explains why the physical consequences of forced displacement and overexertion are serious and irreversible for her.
2. Plaintiff is disabled with degenerative musculoskeletal conditions. Plaintiff also has microscopic colitis. During this period, Plaintiff has experienced stress-aggravated symptoms including night sweats, hair loss, and other immune-related changes. Plaintiff did not previously understand these stress responses until her treating physician explained that severe stress can trigger such physical symptoms. Plaintiff reports these facts as observed and as communicated to her by her treating providers; she does not ask the Court to make medical-causation findings on an emergency record.
3. Plaintiff further experienced an ear infection during this same period, which her physician advised may be associated with stress-related immune changes. Again, Plaintiff offers this only to show the concrete physical deterioration occurring during the enforcement-and-delay window and why continued pressure and forced move risk permanent injury and loss of function.
4. Defendants filed multiple evidentiary-objection documents aiming to strike Plaintiff's disability and injury facts as "irrelevant." Irreparable harm is a required TRO/PI element. Plaintiff offers first-hand functional facts and objective corroboration; Defendants' objections are an attempt to blind the Court to the irreparable-harm inquiry.

Defendants' wholesale objections to Plaintiff's disability and stress-related symptoms are themselves misplaced under the irreparable-harm standard. A TRO/PI requires the Court to assess whether irreparable injury is likely absent relief. See Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). Plaintiff's testimony is offered for functional limitations

and observed injury, supported by contemporaneous medical records and her 36-year healthcare background; it is not offered as expert causation testimony.

## VII.  RELIEF REQUESTED

- Immediate TRO restraining any trustee sale/title transfer/foreclosure steps;
- Immediate restraint of acceleration, default/late/collection fees, billing/collection activity, and coercive enforcement leverage;
- Immediate restraint of adverse credit furnishing/updating/verifying during the TRO period (or require DISPUTED and bar new delinquency/default codes);
- Order Shortening Time and expedited PI hearing;
- Preliminary Injunction to remain in effect through final adjudication or recorded cure;
- Expedited remand determination and fees/costs under 28 U.S.C. § 1447(c);
- Bond waived or nominal (≤ $500).
- Plaintiff further requests that the Court take notice of Defendants' pattern of after-hours filings and consider appropriate cost-shifting or other remedies under the Court's inherent authority.

## VIII.  CONCLUSION

Defendants missed a fixed state-court opposition deadline, removed the next day after business hours, obtained thirteen extra days, and filed a 10:44 p.m. federal opposition package designed to erase irreparable harm. The Court should enter immediate injunctive relief and expedite remand and PI proceedings.

DATED: February 10, 2026

1   /s/ Audrey B. Little

2   AUDREY B. LITTLE

3   Plaintiff Pro Se