FILED
CLERK, U.S. DISTRICT COURT
02/09/2026
CENTRAL DISTRICT OF CALIFORNIA
BY AP DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**AUDREY B. LITTLE,**

Plaintiff,

v.

**OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET COMPANIES, INC.; and DOES 1–50, inclusive,**

Defendants.

Case No. 5:26-cv-00402-MEMF-MBK

**PLAINTIFF'S OPPOSITION TO DEFENDANT OAKTREE FUNDING CORPORATION'S MOTION TO DISMISS AND MOTION TO STRIKE PUNITIVE DAMAGES ALLEGATIONS**

Pending Dkt. 13, Plaintiff seeks leave to file SAC v82.1 removing UDAAP and RESPA/Reg X.
Dated: February 6, 2026

MTD arguments directed solely to those withdrawn counts will be moot if leave is granted.

**I. INTRODUCTION**

This case is not about a loan payment dispute, and it is not about borrower nondisclosure. From the first conversation with the mortgage broker, Plaintiff disclosed the existence of a family loan and specifically asked whether any lien appeared on title, because she understood she would not

qualify if it did. She was told none appeared. Plaintiff did not know—and had no way to know—that a family deed of trust had been recorded. Co-borrower Jacob Little likewise knew neither of any loan nor any lien and relied entirely on Defendants' title, escrow, and underwriting safeguards.

This case is instead about whether the mandatory safeguards that define a secured real-estate transaction in California have any legal effect at all. Plaintiff and her co-borrower agreed to one transaction only: a loan that would be verified, recorded, and insured in second-lien position, behind the first and with no intervening liens. Plaintiff would never have accepted any loan in third or fourth position and would never have accepted any loan that was not the only lien behind the first.

The Deed of Trust executed by both borrowers is expressly labeled a "California Second Deed of Trust" on every page. That repeated designation reflects the only transaction to which Plaintiff and her co-borrower consented. A borrower's signature on a document labeled "Second Deed of Trust" does not create a second-lien transaction if the deed does not land there; enforcement rights arise from a valid closing, not from labels divorced from reality.

Rocket Close, LLC controlled escrow, title, disbursement, and recording. Rocket Title issued the lender's title insurance. Oaktree Funding Corporation performed underwriting and imposed non-discretionary conditions precedent to funding, including final QC prior to funding and verification that the loan would record in second-lien position on or before disbursement.

The undisputed record shows disbursement on July 14, 2025 and recording on July 15, 2025. Under the policy's own timing clause, insurance could not attach until recording. The loan therefore disbursed uninsured, unperfected, and without verified second-lien status, and it did not land in the agreed position at all.

Plaintiff drafted the First Amended Complaint before Defendants produced any documents. The Second Amended Complaint was drafted after some documents were produced—underwriting requirements, stale title materials, and claim/denial correspondence—and after Plaintiff independently obtained recorded instruments and other evidence. Plaintiff still does not have the title pulls if any, the escrow file or a complete loan file. Any additional discovery can only tell us one of two things, 1) confirm that Defendants violated all of the safeguards or 2) prove that they in fact pulled additional title that was current and knew about the existing lien and proceeded anyway.

Oaktree moves to dismiss the following causes of action: (1) Negligence; (3) Negligent Misrepresentation; (4) Fraudulent Concealment; (5) Civil Conspiracy; (7) Unfair Business Practices (Bus. & Prof. Code § 17200); (8) UDAAP; (9) Regulation X/RESPA; (10) Failure to Mitigate; and (11) Punitive Damages. Each challenge fails as a matter of law.

**II. RECORD BEFORE THE COURT**

Plaintiff relies on the SAC and incorporated exhibits; the Exhibit Binder and TRO Exhibit Binder, including Escrow Instructions (Exs. A-1/A-2), disbursement and recording proof (Exs. B-1/B-2), title policy effective-date clause (Ex. C-4), stale title and commitment materials (Exs. C-1/D-2), underwriting conditions (Ex. D-1), lien stack evidence (Ex. C-2), claim/notice materials (Exs. E-1/E-2), pause and mitigation exhibits (Exs. T-1/T-2; U-3B), and Plaintiff's declarations (Disclosure Declaration; Supplemental Declaration dated Feb. 3, 2026).

**III. UNDISPUTED DOCUMENTARY FACTS (ALL SAFEGUARDS FAILED)**

The Specific Closing Instructions imposed five non-discretionary safeguards designed to ensure delivery of an insured, verified second-lien transaction: (1) Oaktree final QC review prior to funding; (2) recordation in verified second-lien position on or before disbursement; (3) delivery

of duplicate originals of the ALTA lender's title policy; (4) issuance of required endorsements (including endorsements 8.1, 9, and 5 or equivalents); and (5) an ALTA policy free from unpermitted liens or encumbrances, with taxes paid current and limited to permitted exceptions from the May 8, 2025 preliminary title. Not one of these safeguards was satisfied at the time of funding.

Funds disbursed on July 14, 2025, while the Deed of Trust recorded on July 15, 2025. Because recording occurred after disbursement, the loan disbursed uninsured and without a perfected or verified second-lien position.

Title materials used in underwriting were facially stale (October 15, 2024) and were attached to the May commitment. Oaktree's underwriting approved only a second-lien product with a 75% CLTV cap, which the actual lien stack exceeded.

Plaintiff disclosed the family loan and asked whether any lien appeared on title; she was told none appeared. She did not know it was recorded. Co-borrower Jacob Little knew neither the loan nor lien.

Plaintiff learned of the defect only because she attempted to refinance immediately as planned; otherwise she would not know today.

Oaktree had actual knowledge of the defect by September 9–10, 2025, tendered a title claim, and nevertheless continued enforcement and refused a temporary pause.

### IV. FAC VS. SAC AND DISCOVERY

The FAC was drafted without access to any documents. The SAC was drafted once sufficient evidence was obtained to tell a fact based chain of events.  Discovery now can only confirm violations or prove knowing misconduct.

### V. ARGUMENT (COUNT BY COUNT IN OAKTREE'S ORDER)

### A. COUNT 1 – NEGLIGENCE

Oaktree argues it owed no duty as a lender and that Plaintiff's alleged nondisclosure caused the problem. This argument fails. Oaktree performed underwriting and imposed specific conditions precedent to funding, including final QC and verified second-lien recordation. By undertaking these safeguards, Oaktree assumed a duty to perform them with reasonable care. Plaintiff disclosed the family loan and asked about liens; she was told none appeared. Plaintiff and co-borrower lacked access to current title. Disbursement nevertheless occurred before recording, making compliance impossible. Negligence is plausibly pled.

### B. COUNT 3 – NEGLIGENT MISREPRESENTATION

Plaintiff pleads negligent misrepresentation by conduct. Funding, recording, billing, and enforcement represented that the express conditions precedent had been satisfied. That representation was false as shown by the disbursement/recording sequence and the policy's effective-date clause.

### C. COUNT 4 – FRAUDULENT CONCEALMENT

Defendants possessed stale title reports since May 2025 and underwriting materials; borrowers did not. Lien position was the essence of consent. Plaintiff discovered the defect only by attempting to refinance. Concealment is pled with particularity.

### D. COUNT 5 – CIVIL CONSPIRACY

Conspiracy is pled as a joint-liability theory tethered to plausible underlying torts. Dismissal with prejudice is improper.

### E. COUNT 7 – UNFAIR BUSINESS PRACTICES (UCL)

Enforcing a transaction that never validly closed and refusing a pause after knowledge is unlawful, unfair, and fraudulent.

**F. COUNT 8 – UDAAP**

Even if no private right exists under the label, the facts support UCL and tort claims. Dismissal must be without prejudice.

**G. COUNT 9 – REGULATION X / RESPA**

To the extent federal servicing allegations remain, dismissal with prejudice is improper where documents remain withheld. Additionally, both Oak Tree and Rocket know this cause was removed in the SAC.

**H. COUNT 10 – FAILURE TO MITIGATE**

Plaintiff's mitigation efforts show reasonableness and do not support dismissal.

**I. COUNT 11 – PUNITIVE DAMAGES / MOTION TO STRIKE**

Plaintiff seeks punitive damages only for post-notice conduct. Oaktree knew the transaction never closed as agreed and refused a pause despite foreseeable harm. Leave to amend is required if more detail is desired.

**VI. IRREPARABLE HARM**

Enforcement of a non-transaction has already destroyed Plaintiff's personal life, harmed her health and threatens forced sale, catastrophic tax loss, loss of 1031 exchange, increased HOA obligations, and severe further medical harm. No money judgment can restore these losses.

**VII. CONCLUSION**

For the foregoing reasons, Oaktree's Motion to Dismiss and Motion to Strike should be DENIED.

Dated: February 6, 2026

/s/ Audrey Little

1    AUDREY LITTLE

2    Plaintiff Pro Se

ADDENDUM A

REBUTTAL TO OAKTREE'S "BORROWER CONCEALMENT / NON-DISCLOSURE" THEORY

Defendants' repeated emphasis on alleged "borrower non-disclosure" is legally immaterial to Plaintiff's claims. The closing instructions and underwriting conditions imposed non-discretionary conditions precedent on Oaktree and the escrow agent—including final QC review prior to funding, verified second-lien recordation on or before disbursement, and current title/bring-down currency through funding/recording. (Exs. A-1, A-2, D-1, D-2.) Those independent gatekeeper requirements failed regardless of anything Plaintiff said or did not say. Even perfect disclosure would not have cured stale title materials (October 15, 2024), disbursement before recording (July 14, 2025 vs. July 15, 2025), or the absence of QC sign-off. Any post-stale title pull Defendants ran and then ignored would only underscore knowledge and wrongdoing, not excuse the failures. Borrower disclosure is therefore immaterial to the enforceability theories Defendants advance in this motion.

A. "Concealment" is a disputed factual defense and cannot be resolved on a Rule 12(b)(6) motion

Oaktree's motion asserts as "fact" that Plaintiff "concealed" the Resnick deed of trust and "failed to disclose" the family loan. That contention is not an element Plaintiff must negate at the pleading stage; it is, at most, a disputed factual defense. Judicial notice of a recorded instrument establishes only the existence and recording of the document, not Plaintiff's knowledge, intent, communications, or causation. Those issues are fact-bound and cannot be decided on the face of the complaint.

B. Both borrowers reasonably depended on the title/escrow process and lender

QC, not on "borrower disclosure"

This transaction involved two borrowers: Plaintiff Audrey B. Little and co-borrower Jacob Little. The Resnick loan and deed of trust were not Jacob's debt; Jacob did not borrow the Resnick loan and had no involvement in the family loan. At the time of signing, Jacob had no access to the current recorded lien stack or bring-down title evidence and reasonably relied, just as Plaintiff did, on the regulated escrow/title process and lender conditions precedent to ensure the refinance would close and record in the required lien position. That reliance is ordinary and reasonable. Borrowers do not control: (i) the current title bring-down performed immediately before funding; (ii) satisfaction/recording sequencing; (iii) escrow disbursement; or (iv) lender final-QC sign-off. Those functions are performed by the closing professionals and the lender before money is released.

C. Plaintiff disclosed the family loan to the mortgage broker and asked whether any lien appeared on title

Plaintiff disclosed to the mortgage broker that she had a family loan and asked, out of caution, whether any lien related to that family loan appeared on title. Plaintiff was told that the title information being reviewed did not show any such lien and that the title report was clear. Plaintiff did not know that a family deed of trust had been recorded in December 2024. Plaintiff asked precisely because she understood that an intervening recorded lien would change the transaction and likely disqualify the loan under Oaktree's own guidelines.

D. The defect turns on stale title and failure to satisfy written conditions precedent

The core defect alleged is not "borrower concealment," but failure to run and act on current title through disbursement/recording, failure to comply with escrow instructions, and failure to satisfy Oaktree's written pre-funding conditions. Oaktree's Closing Instructions required "Final QC review prior to funding" and

required the loan to record in 2nd lien position on or before the disbursement date. (see Ex. A).

The transaction nevertheless funded and recorded without meeting the second-lien-by-disbursement condition, establishing (at minimum) a plausible inference of defective QC and/or stale title reliance. (see Ex. A, Ex. C-2).

Oaktree's underwriting/approval documents identify the loan as a second-lien product with a maximum CLTV threshold. Accounting for the undisclosed $393,000 recorded senior lien pushes CLTV above the stated maximum, meaning the loan would not have been approved as underwritten if current title/lien stack had been used. (see Ex. D-1, Ex. C-2).

E. Co-borrower facts independently defeat the "concealment caused everything" narrative

Oaktree's "concealment" theory fails on its own terms because the refinance obligated a co-borrower who was not the Resnick borrower and had no knowledge of any recorded intervening lien. If Oaktree's position is that "borrower disclosure" was the decisive control, then Oaktree must explain how that control could apply to Jacob Little, a co-borrower who did not borrow the family loan and depended entirely on the same title/escrow/QC pipeline. The more plausible explanation, and the one supported by the documentary conditions, is that Defendants' title/escrow/QC process failed.

F. Relief requested

Deny dismissal based on "concealment/non-disclosure" because it is a disputed factual defense not resolvable on Rule 12(b)(6).

Deny any request for dismissal with prejudice; at minimum, grant leave to amend to add additional particularity and incorporate the post-FAC documents now in Plaintiff's possession.

If the Court takes judicial notice of recorded instruments, limit notice to the existence/recording of those documents and not to contested issues of

knowledge, intent, or causation.

Optional: short paragraph for oral argument

"Oaktree's 'concealment' narrative is a factual defense, not a Rule 12 basis to dismiss. I disclosed the family loan to the broker and asked if any lien appeared on title; I was told title was clear. Neither I nor my co-borrower had access to the current lien stack or bring-down title evidence; those were controlled by escrow/title and Oaktree's own final-QC condition. The defect here is the failure of the title/escrow/QC pipeline to satisfy written conditions precedent, not borrower disclosure."

Dated: February 9, 2026

/s/ Audrey B. Little
AUDREY B. LITTLE
Plaintiff Pro Se