FILED
CLERK, U.S. DISTRICT COURT
02/23/2026
CENTRAL DISTRICT OF CALIFORNIA
BY ___AP___ DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDREY LITTLE, | Case No. 5:26-cv-00402-MEMF-MBK |
| Plaintiff, | |
| v. | |
| OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET COMPANIES, INC.; and DOES 1–50, inclusive, | |
| Defendants. | |

**SUPPLEMENTAL DECLARATION OF AUDREY LITTLE**

**CONSOLIDATED IRREPARABLE HARM SUMMARY (NON-PHI)**

I, Audrey Little, declare as follows:

1. I am the Plaintiff in this action. I submit this consolidated declaration to place all irreparable harms in one place. This declaration is based on my personal knowledge and records. Supporting documentation is contained in previously filed binders and separately

filed PHI/medical materials; this declaration omits exhibit citations for readability and privacy.

I submit this summary to identify the physical, financial, credit, housing, and life-functioning harms that have occurred and/or are imminent as a result of the ongoing enforcement of the disputed Oaktree loan and the continued withholding of core closing/title/escrow records needed to verify what occurred and to resolve the dispute. Unless otherwise stated, the harms below are ongoing and compounding.

A. Imminent Forced Sale and Housing Displacement (Date-Certain)

Forced listing deadline (Feb. 28, 2026): If interim relief is not entered before February 28, 2026, I will be forced to list my home for sale because I cannot sustain continued payment demands and compounding costs. Once I list under duress, the consequences cannot be undone later.

Loss of uniquely suitable home: My home is uniquely suitable and not readily replaceable (single-story, custom-built for my needs and my pets). A forced sale would permanently deprive me of a uniquely suitable living environment.

Replacement impossibility / displacement: Comparable replacement housing is not realistically available in my area within the constraints created by this dispute, and any interim solution would require extended rental housing (which is unusually difficult given that I have five pets).

Permanent downstream consequences of forced sale: A forced sale would trigger long-term, nonreversible consequences including increased housing costs, likely higher HOA

burdens, and major disruption to stability and health that cannot later be "fixed" by money.

### B. Credit Harm and Forced Triage Between Obligations (Irreversible Once Reported)

Co-borrower credit risk (Jake): I have been forced to prioritize payments on the Oaktree loan to avoid credit harm to my son/co-borrower, Jake, because negative reporting would be difficult to undo once made.

First-ever late payment on my Ally first mortgage: As a direct result of being forced to divert limited funds to keep Oaktree current (to protect Jake), I incurred my first late payment ever on my Ally first mortgage. Once late fees and credit reporting risk are triggered, the harm cannot be retroactively erased by the Court.

Credit exhaustion: I am maxed out on credit cards and have lost the ability to absorb emergencies, causing escalating interest/fees and increasing risk of further delinquencies.

Refinance lockout: I discovered the lien-position/recording problems only when I attempted to refinance and could not. The inability to refinance promptly has trapped me in a worsening financial spiral and increases the risk of forced sale.

### C. Financial Destabilization and Cascading Defaults

HOA payment failure: My HOA check bounced due to lack of available funds, exposing me to late charges, collections, and further destabilization.

Inability to maintain essential insurance coverage: I have been unable to pay required/essential insurance premiums (home insurance, car insurance, umbrella policy),

placing me at risk of catastrophic uninsured loss and additional financial consequences that cannot be undone later.

Inability to complete taxes: I have been unable to complete/pay my taxes on schedule due to financial crisis and time displacement, risking penalties and further destabilization.

Loss of medical access structure: I have been unable to pay the concierge fee for my doctor, disrupting continuity of care at a time of significant health decline.

Compounding fees/penalties: Continued enforcement without a pause has forced destructive triage decisions and has caused compounding fees and penalties (including bank/returned-payment/late-fee consequences) that increase over time and worsen irreparable credit and housing risk.

D. Physical and Medical Harm (Documented and Observable Decline)

Inability to eat normally / poor nutrition: Stress and constant time pressure have caused me to not eat or to eat poorly and irregularly, leading to reduced stamina and visible health decline.

Unintended weight loss: I have lost approximately 8 pounds unintentionally during this period.

Sleep disruption and physiologic strain: I have suffered sustained sleep disruption, nightly stress dreams, and measurable physiologic strain tracked by wearables (WHOOP/Oura), consistent with severe and ongoing stress.

Recurrent crying and tear duct swelling: I cry frequently from stress and overwhelm; when I cry, my left tear duct clogs and my left eye swells.

Night sweats (medical record): I have experienced night sweats documented in medical records during this period.

New ear infection (medical record): I suffered an ear infection during this period, unusual for me and the first I can recall in my life.

Hair loss and other physiologic changes: I have experienced hair falling out and other physiologic changes (including new body odor), reflecting ongoing stress-related deterioration.

Deconditioning from inability to exercise: Due to financial and time constraints of self-representation, I have not maintained normal exercise for months, causing significant deconditioning and visible physical changes.

Musculoskeletal injury and recovery risk (rotator cuff): I have suffered significant physical injury (including a torn rotator cuff) with ongoing treatment needs and risk of worsened prognosis without stabilization. The longer this continues, the greater the risk of non-healing or escalation to surgery, which would impair driving and daily functioning.

Caregiving reduction causing increased risk: I have not received additional caregiving hours. Instead, I have been forced to reduce needed in-home caregiving because I cannot afford the hours due to Defendants' enforcement activity and the costs it imposed. I lost two days per week of caregiver support. This reduction materially increased my fall risk and directly contributed to the injuries described below.

Two falls and resulting injuries: During this dispute I suffered two serious falls. First, I fell and tore my rotator cuff. Second, I fell and injured my right hip and right leg.

MRI documentation: The MRI confirming the rotator cuff tear is included in my confidential PHI/medical materials filed separately. I am not including the MRI images/report in this public summary to protect my privacy.

E. Emotional and Functional Harm (Life-Functioning Loss Not Restorable Later)

Near-daily distress: I experience frequent emotional breakdowns and crying from prolonged stress, uncertainty, and compounding harm.

Need for renewed therapy/support: I have not needed therapy for years, but I now cannot handle this alone and must locate a new provider and begin treatment again due to the severity and persistence of stress.

Loss of normal life activities: I have been unable to date, socialize, and maintain normal personal life functioning due to the crisis and constant emergency litigation burden.

F. Loss of Irreplaceable Family Time and Opportunities

Loss of time with my elderly mother and sister: I have lost substantial, irreplaceable time with my 84-year-old mother and my sister during a period when that time cannot be replaced later.

Loss of once-in-a-lifetime trips and bonding time with my sons: I was forced to cancel major planned trips with my sons (including a Bora Bora trip with my younger son and a World Cup trip with my older son), causing both (a) significant economic loss and (b) permanent loss of unique family experiences.

Out-of-pocket travel losses: I incurred nonrefundable cancellation losses associated with these trips, estimated at approximately $60,000 (subject to receipts/refunds).

Impact on pets and daily responsibilities: The crisis has materially impaired my ability to care for my dogs as I normally do (walking/playing), which compounds distress and reflects severe life disruption.

G. Litigation Burden and Record Withholding (Ongoing Prejudice)

Extraordinary time displacement: I have spent approximately 2,200 hours (conservative) on emergency litigation tasks and compliance because I am forced to proceed pro se due to financial constraints. This time displacement has directly caused missed obligations, worsening health, and compounding financial damage.

Removal-related delay and extended crisis window: Removal and post-removal motion practice extended the period of acute harm and forced me into continuous emergency briefing while damage continued to accrue.

Withholding of core closing/control documents: The only critical unknowns that remain are within withheld records (e.g., title pulls/updates/bring-downs, payoff/reconveyance tracking, recording confirmations, and related internal records). Continued withholding prevents verification and timely resolution while enforcement continues.

H. Why the Harm Is Irreparable

Irreversibility of forced sale and first-time delinquency: Once forced listing occurs, or once first-ever delinquencies/credit reporting occur, the Court cannot practically undo the downstream consequences later.

Compounding nature: Each week of delay increases both the severity and the permanence of harm: more defaults, more credit risk, more health decline, and heightened probability of forced sale/displacement.

Uniqueness of real-property stability and disability-related needs: The stability and suitability of my housing situation and my health baseline are not readily replaceable; loss of them cannot be fully compensated later with money.

Supporting Documentation (Examples to Attach / Reference)

Ally first mortgage account screenshot/statement showing past-due status and late fees (date-stamped).

Proof of Oaktree payments made during the same period (bank/servicer confirmations).

HOA bounce documentation and any late/collection notice.

Insurance nonpayment notices / lapse warnings (home/auto/umbrella).

Medical records: night sweats, ear infection, weight measurements, injury/rotator cuff records, PT/rehab documentation.

Wearable summaries (weekly averages of sleep/recovery/strain).

Proof of forced listing by Feb. 28 (realtor email, draft listing agreement, calendar schedule).

Travel cancellation receipts/confirmations/refund denials (Bora Bora, World Cup).

Written requests for escrow/title/loan file access and responses/refusals.

I declare under penalty of perjury that the foregoing summary is true and correct to the best of my knowledge based on my records and personal knowledge.

Dated: February 23, 2026

1

2    Audrey Little

3

4

5    I declare under penalty of perjury under the laws of the United States that the foregoing is

6    true and correct.

7    Executed on February 23, 2026, at La Quinta, California.

8

9    /s/ Audrey Little

10   Audrey Little