# EXHIBIT INDEX

| Exhibit | Description | Page |
|---------|-------------|------|
| A | Escrow / Closing Instructions | 3 |
| A-1 | Specific Closing / Escrow Instructions (Original) | 4 |
| A-2 | Typed Escrow Instructions (Readable Copy) | 7 |
| B | Disbursement, Recording & Settlement | 14 |
| B-1 | Proof of Loan Disbursement - 07/14/2025 | 15 |
| B-2 | Recorded Deed of Trust and Recording Proof - 07/15/2025 | 17 |
| B-3 | Complete Escrow Closing / Settlement Statement (Closing Disclosure) | 20 |
| B-4 | Rocket Exhibit B - Title / Settlement Process (Who Did What) | 27 |
| B-5 | Rocket Exhibit C - Disbursement Proof & Recording Proof | 35 |
| B-6 | Disbursement While Uninsured/Unsecured (Summary) | 46 |
| C | Title & Insurance Failure / Unjust Enrichment | 47 |
| C-1 | Preliminary Title Report - 10/15/2024 (Facially Stale) | 48 |
| C-2 | Title / Lien Visibility as of Recording (shows senior liens) | 52 |
| C-3 | Proof of Title Insurance Premium Paid | 56 |
| C-4 | Lender's Title Insurance Policy (effective-date language; incorporated | 59 |
| C-5 | Rocket Exhibit D - Title Policy (Effective Date / Schedule B) | 60 |
| C-6 | Rocket Exhibit E - Stale Title / Commitments (9-Month Gap) | 83 |
| C-7 | Rocket Exhibit F - Lien Visibility / Position Evidence | 92 |
| C-8 | Rocket Exhibit L - Claim Denial & Admissions (10/24/2025) | 94 |
| D | QC / Bring-Down Failure (Absence Evidence) | 96 |
| D-1 | Underwriting / Final QC Conditions (2nd lien premise; QC requirement; | 97 |
| D-2 | Commitment Jacket Warning / Absence of Timely Bring-Down Evidence | 103 |
| D-3 | Document Requests and QWR (what was demanded; what is missing) | 109 |
| D-4 | Rocket Exhibit J - Selected Loan File Excerpts | 112 |
| E | Oaktree Knowledge, Claim & Posture | 114 |
| E-1 | Oaktree Title Claim Submission (Notice of Claim) | 115 |
| E-2 | Title Claim Denial Letter - 10/24/2025 (Rocket Title counsel) | 117 |
| E-3 | Oaktree Knowledge / Correspondence | 123 |
| E-4 | Refusal to Pause / Enforcement Posture | 128 |
| F | Irreparable Harm / Disability | 131 |
| F-1 | SSD / Disability Documentation | 132 |
| F-2 | Court Order Granting Disability Accommodation (MC-410) | 137 |
| F-3 | Loss of In-Home Caregiving Evidence | 140 |
| F-4 | Medical Impact / Treatment Disruption Evidence | 144 |
| G | Counsel / Escrow Obstruction | 148 |
| G-1 | Emails - Teri Hill | 149 |

| Exhibit | Description | Page |
|---------|-------------|------|
| G-2 | Emails - Stacey Holubec | 152 |
| H | CPL Paid, Invoked & Ignored / Document Requests | 154 |
| H-0 | Proof CPL Fee Paid (invoice line item) | 155 |
| H-1 | CPL Invocation Email - 12/10/2025 [PLACEHOLDER] | 157 |
| H-2 | Requests for CPL Copy, Appeals, Escrow File, Claim File | 160 |
| H-3 | Follow-Ups Showing Silence / No Response | 165 |
| N | Enterprise / Corporate Knowledge, Assignment & Continued Notice | 169 |
| N-1 | Escalation to Rocket Companies (Enterprise Notice) | 170 |
| N-2 | Assignment to Rocket Close Leadership | 174 |
| N-3 | Follow-Ups After Assignment (No Cure / No Pause) | 177 |
| N-4 | Continued Notice with No Response | 187 |
| N-5 | Rocket Exhibit G - Notice of Claim (09/09/2025) | 191 |
| N-6 | Rocket Exhibit H - Enterprise Notice Timeline | 193 |
| T | Refusal to Pause / Continued Enforcement | 195 |
| T-1 | Chronology/Table of Pause Requests | 196 |
| T-2 | Written Refusals / Continued Enforcement Records | 198 |
| T-3 | Rocket Exhibit M - Counsel Notice / Refusal to Pause + Billing Materials | 202 |
| U | Court / Procedural | 337 |
| U-1 | Prior Accepted Motion / Declaration | 338 |
| U-2 | MC-410 Disability Accommodation Order | 341 |
| M | Miscellaneous Correspondence (Only if Needed) | 344 |
| M-1 | Misc. Targeted Correspondence (only if needed) | 345 |

Index Addendum (added):
H-3A  Additional CPL Follow-Ups (Supplement appended at end)  .......... 356
V-22  Oaktree Equity Advantage HELOC Program Matrix (Effective 01/06/2026)  .. 722



# Escrow / Closing Instructions

# EXHIBIT A-1

Specific Closing / Escrow Instructions (Original)

FROM: OAKTREE FUNDING CORP.
3133 WEST FRYE ROAD #205
CHANDLER, ARIZONA 85226
Phone: (480) 800-3800 /Fax: (480)857-8080

TO: AMROCK TITLE CALIFORNIA INC
17785 CENTER CRT DR N #760
CERRITOS, CALIFORNIA 90703
Phone: (866) 313-6336

ATTN: GARY WALLACE

RE:   Borrower(s): AUDREY BETH LITTLE, JACOB LITTLE

Document Date: July 8, 2025

Closing Date: July 8, 2025

Disbursement: July 14, 2025

Case No.:

Loan No.: 22025050036

App. No.:

Order No.: 74346744

Escrow No.: 74346744

Property Address: 81439 MERV GRIFFIN WAY, LA QUINTA, CALIFORNIA 92253

# SPECIFIC CLOSING INSTRUCTIONS

## LOAN DOCUMENTS:

We enclose the following documents necessary to complete the above referenced loan transaction:

(X) Note
(X) Deed of Trust
(X) Planned Unit Dev. Rider
(X) Payment Letter
(X) Hazard Ins. Req.
(X) Affidavit and Agreement
(X) Allonge to Note

(X) ATLA
(X) Consumer Credit Score Disclosure
(X) Privacy Policy
(X) CINF
(X) Borrowers Cert.
(X) 4506C
SEE ATTACHED SUPPLEMENTAL CLOSING INSTRUCTIONS

Deliver one (1) copy of all loan documents to the Borrower(s); deliver one (1) copy of the Federal Truth-In-Lending Disclosure Statement or Closing Disclosure (as applicable) to **each** Borrower.

## LOAN TERMS:

Loan Amount: 716,580.00
Initial Advance:
Sales Price:
Term (Months): 360
Interest Rate: 9.625 %
Initial Payment: 6,090.85
First Payment Date: 09/01/25
Last Payment Date: 08/01/55

ARM Loan: (  ) Yes   (X ) No
Index:
Margin:
Periodic Rate Cap:
Lifetime Rate Cap:
Lifetime Rate Floor:
Interest Change Date:
Payment Change Date:
Loan Purpose:  HOME EQUITY LOAN

## PAYOFF REQUIREMENTS:

It is a condition to the funding of this loan that the following payoffs be made through this closing.   Indicate payoffs on the HUD-1 Settlement Statement or Closing Disclosure (as applicable) or provide other satisfactory evidence of payoff:
PAYOFF to KINECTA FCU for HELOC      360,584.08 PAYOFF to AMEX for Charge Account      16,850.00
PAYOFF to JPMCB CARD for Revolving Account      15,303.00 PAYOFF to WFBNA CARD for Revolving Account      5,799.00
PAYOFF to GS BANK for Revolving Account      22,813.00 SEE ATTACHED PAYOFF ADDENDUM.

## CONDITIONS TO BE SATISFIED PRIOR TO DISBURSEMENT OF LOAN PROCEEDS:

OAKTREE TO PERFORM FINAL QC REVIEW PRIOR TO FUNDING.
BORROWER AND LOAN AGENT TO SIGN FINAL 1003 AT CLOSING.
FINAL CD TO REFLECT THE FOLLOWING PAYOFFS:

* * SEE ATTACHED ADDENDUM TO CLOSING INSTRUCTIONS* *

## TITLE INSURANCE REQUIREMENTS:

You are authorized to use funds for the account of the Borrowers and to record all instruments when you comply with the following:

1. THIS LOAN MUST RECORD IN  2ND  LIEN POSITION ON OR PRIOR TO THE DISBURSEMENT DATE NOTED ABOVE.  PROVIDE DUPLICATE ORIGINALS OF THE ALTA TITLE POLICY.
2. Vesting to read:  AUDREY BETH LITTLE, AN UNMARRIED WOMAN AND JACOB LITTLE, AN UNMARRIED MAN, AS JOINT TENANTS WITH FULL RIGHTS OF SURVIVORSHIP

3. Title Policy must contain the following endorsements (or their equivalents):  8.1,9,5

4. ALTA Title Policy must be free from liens, encumbrances, easements, encroachments and other title matters except (i) the lien of our loan in the amount of our loan on the property described herein showing the Instrument or Document Number and the date of recording of the Security Instrument; (ii) general, specific, state, county, city, school or other taxes and assessments not yet due or payable:  (ALL TAXES TO BE PAID CURRENT)

(iii) other items as permitted by us; and (iv) the following items as shown on the preliminary title report, commitment, binder or equivalent dated  May 8, 2025

## SECONDARY FINANCING:

Secondary financing in the amount of $  NONE                    has been approved.

## ESTIMATE OF FEES AND COSTS:

| ITEM | AMOUNT | POC | PAID BY |
|---|---|---|---|
| Document Prep fee to: Oaktree Funding Corp | 195.00 | | Borrower |
| Underwriting fee to: Oaktree Funding Corp | 695.00 | | Borrower |
| Appraisal fees to: AMC Direct Corporation | 900.00 | | Borrower |
| Appraisal Review Fee to: Clear Capital | 120.00 | | Borrower |
| TITLE - Lender's title insurance to: Amrock Title California INC | 575.00 | | Borrower |
| TITLE - Settlement Fee to: Amrock Title California INC | 475.00 | | Borrower |
| Mortgage recording fee to: Other | 256.00 | | Borrower |
| Originator compensation to: Adaxa, LLC | 14,331.60 | | Borrower |
| TITLE - Tax Certificate fee to: Amrock Title California INC | 25.00 | | Borrower |
| Deed Prep Fee to: RR MICHIGAN, LLC | 95.00 | | Borrower |

Subtotal of Estimated Fees and Costs:  $ ___17,667.60___

## PER DIEM INTEREST:
From: 07/14/25        To:08/01/25
(Anticipated Closing Date)

___18___ days at $ ___191.5856___ per day        Subtotal of Per Diem Interest:  $ ___3,448.54___ *

## IMPOUNDS/ESCROWS:
Impound/escrow checks should be made payable to and sent to us together with the original final HUD-1 Settlement Statement or Closing Disclosure (as applicable).

| | month(s) | at $ | per Month | = $ |
| | month(s) | at $ | per Month | = $ |
| | month(s) | at $ | per Month | = $ |
| | month(s) | at $ | per Month | = $ |
| | month(s) | at $ | per Month | = $ |
| | month(s) | at $ | per Month | = $ |

Aggregate Escrow Adjustment:  $ ___0.00___

\* Interest paid by: Borrower

Impound Subtotal:  $ ___0.00___
Mortgage Ins. Premium:  $ _____
**TOTAL OF FEES AND COSTS:**  $ ___21,116.14___

## HUD-1 SETTLEMENT STATEMENT OR CLOSING DISCLOSURE:

The **final** HUD-1 Settlement Statement or Closing Disclosure (as applicable) must be completed at settlement and must accurately reflect all receipts and disbursements indicated in these closing instructions and any amended closing instructions subsequent hereto. If any changes to fees occur documents may need to be re-drawn and re-signed. Fax a certified copy of the final HUD-1 Settlement Statement or Closing Disclosure (as applicable) to    OAKTREE FUNDING CORP @ (909) 982-9614                                        Attention: Quality Assurance

Send the original final HUD-1 Settlement Statement or Closing Disclosure (as applicable) to us at the following address within 24 hours of settlement:   3133 WEST FRYE ROAD #205, CHANDLER, ARIZONA 85226

**ADDITIONAL INFORMATION:** BORROWER MUST SIGN AND DATE THESE CLOSING INSTRUCTIONS.
If for any reason this loan does not close within 48 hours of your receipt of funds, immediately return all documents to Lender and wire all funds only to:    OAKTREE FUNDING CORP
3133 WEST FRYE ROAD #205, CHANDLER, ARIZONA 85226
PLEASE WIRE FUNDS BACK TO THE WAREHOUSE LINE
If you have any questions regarding any of these instructions, please contact   OAKTREE FUNDING CORP
at (480) 800-3800

**BORROWER ACKNOWLEDGMENT:** I/We have read and acknowledged receipt of these Closing Instructions.

Borrower AUDREY BETH LITTLE            Date            Borrower JACOB LITTLE            Date

# EXHIBIT A-2

Typed Escrow Instructions (Readable Copy)

SPECIFIC CLOSING INSTRUCTIONS

FROM: OAKTREE FUNDING CORP.

3133 WEST FRYE ROAD, #205, CHANDLER, ARIZONA 85226

Phone: (480) 800-3800 Fax: (480) 857-8080

TO: AMROCK TITLE CALIFORNIA, INC.

3133 WEST 1ST STREET, #2205, CHANDLER, ARIZONA 85703

Phone: (866) 313-8336

ATTN: GARY WALLACE

RE: Borrower(s): AUDREY BETH LITTLE, JACOB LITTLE

Property Address: 81439 MERV GRIFFIN WAY, LA QUINTA, CALIFORNIA 92253

Document Date: July 8, 2025

Closing Date: July 8, 2025

Disbursement: July 14, 2025

Loan No.: 22025050036

Order No.: 74346744

Escrow No.: 74346744

LOAN DOCUMENTS:

We enclose the following documents necessary to complete the above referenced loan transaction:

(X) Note

(X) Deed of Trust

(X) Planned Unit Dev. Rider

(X) Payment Letter

(X) Hazard Ins. Req.

(X) Affidavit and Agreement

(X) Allonge to Note

(X) ATLA

(X) Consumer Credit Score Disclosure

(X) Privacy Policy

(X) CINF

(X) Borrowers Cert.

(X) 4506C

SEE ATTACHED SUPPLEMENTAL CLOSING INSTRUCTIONS

Deliver one (1) copy of all loan documents to the Borrower(s); deliver one (1) copy of the Federal Truth-In-Lending Disclosure Statement or Closing Disclosure (as applicable) to each Borrower.

LOAN TERMS:

Loan Amount: 716,580.00

Term (Months): 360

Interest Rate: 9.625 %

Initial Payment: 6,090.85

First Payment Date: 09/01/25

Last Payment Date: 08/01/55

ARM Loan: ( ) Yes (X) No

Loan Purpose: HOME EQUITY LOAN


PAYOFF REQUIREMENTS:

It is a condition to the funding of this loan that the following payoffs be made through this closing. Indicate payoffs on the HUD-1 Settlement Statement or Closing Disclosure (as applicable) or provide other satisfactory evidence of payoff:

PAYOFF to KINECTA FCU for HELOC        360,584.08

PAYOFF to AMEX for Charge Account      16,850.00

PAYOFF to JPMCB CARD for Revolving Account 15,303.00

PAYOFF to WFBN CARD for Revolving Account 5,799.00

PAYOFF to GSBANK for Revolving Account   22,813.00

SEE ATTACHED PAYOFF ADDENDUM.


CONDITIONS TO BE SATISFIED PRIOR TO DISBURSEMENT OF LOAN PROCEEDS:

OAKTREE TO PERFORM FINAL QC REVIEW PRIOR TO FUNDING.

BORROWER AND LOAN AGENT TO SIGN FINAL 103 AT CLOSING.

FINAL CD TO REFLECT THE FOLLOWING PAYOFFS:

** SEE ATTACHED ADDENDUM TO CLOSING INSTRUCTIONS **


TITLE INSURANCE REQUIREMENTS:

You are authorized to use funds for the account of the Borrowers and to record all instruments when you comply with the following:

1. THIS LOAN MUST RECORD IN 2ND LIEN POSITION ON OR PRIOR TO THE DISBURSEMENT DATE NOTED ABOVE. PROVIDE DUPLICATE ORIGINALS OF THE ALTA TITLE POLICY

2. Vesting to read: AUDREY BETH LITTLE, AN UNMARRIED WOMAN AND JACOB LITTLE, AN UNMARRIED MAN, AS JOINT TENANTS WITH FULL RIGHTS OF SURVIVORSHIP

3. Title Policy must contain the following endorsements (or their equivalents): 8.1, 9, 5

4. ALTA Title Policy must be free from liens, encumbrances, easements, encroachments and other title matters except (i) the lien of our loan... (ALL TAXES TO BE PAID CURRENT) ... and (iv) the following items as shown on the preliminary title report dated May 8, 2025


SECONDARY FINANCING:

Secondary financing in the amount of $ NONE has been approved.


ESTIMATE OF FEES AND COSTS:


| ITEM | AMOUNT | POC | PAID BY |
|---|---|---|---|
| Document Prep fee to: Oaktree Funding Corp | 195.00 | | Borrower |
| Underwriting fee to: Oaktree Funding Corp | 695.00 | | Borrower |
| Appraisal fees to: AMC Direct Corporation | 900.00 | | Borrower |
| Appraisal Review Fee to: Clear Capital | 120.00 | | Borrower |
| TITLE - Lender's title insurance to: Amrock | 575.00 | | Borrower |
| TITLE - Settlement Fee to: Amrock Title | 475.00 | | Borrower |
| Mortgage recording fee to: Other | 256.00 | | Borrower |
| Originator compensation to: Adaxa, LLC | 14,331.60 | | Borrower |
| TITLE - Tax Certificate fee to: Amrock | 25.00 | | Borrower |
| Deed Prep Fee to: RR MICHIGAN, LLC | 95.00 | | Borrower |

Subtotal of Estimated Fees and Costs: $17,667.60


PER DIEM INTEREST:

From: 07/14/25 To: 08/01/25   18 days at $191.5856 per day

Subtotal of Per Diem Interest: $3,448.54 *


IMPOUNDS/ESCROWS:

(Blank table – no impounds listed)

Aggregate Escrow Adjustment: $0.00

Impound Total: $0.00

TOTAL OF FEES AND COSTS: $21,116.14


HUD-1 SETTLEMENT STATEMENT OR CLOSING DISCLOSURE:

The final HUD-1 or Closing Disclosure must accurately reflect all receipts and disbursements... Fax a certified copy to OAKTREE FUNDING CORP @ (909) 982-9614. Send original to 3133 WEST FRYE ROAD #205, CHANDLER, ARIZONA 85226.


ADDITIONAL INFORMATION:

BORROWER MUST SIGN AND DATE THESE CLOSING INSTRUCTIONS.

If loan does not close within 48 hours of receipt of funds, return documents and wire funds back to OAKTREE FUNDING CORP.

Please contact (480) 800-3800 with questions.


BORROWER ACKNOWLEDGMENT:

I/We have read and acknowledged receipt of these Closing Instructions.


Borrower: AUDREY BETH LITTLE       Date: _____

Borrower: JACOB LITTLE          Date: _____

# B

## Disbursement, Recording & Settlement

# EXHIBIT B-1

Proof of Loan Disbursement - 07/14/2025



## TRANSACTION DETAIL | *(continued)*

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|-------:|--------:|
| 07/07 | Remote Online Deposit          1 | **120.00** | 2,430.49 |
| 07/07 | Unitedhealthcare Premium     781482043821     Tel ID: 1836282001 | -544.24 | 1,886.25 |
| 07/07 | Unitedhcmedicare Medinspymt 000001321677779 Tel ID: 9000447048 | -115.40 | 1,770.85 |
| 07/07 | Zelle Payment To Ericpagelyahoo.Com Pagel Jpm99Bek5Ru3 | -1,041.67 | 729.18 |
| 07/07 | 07/04 Payment To Chase Card Ending IN 8129 | -300.00 | 429.18 |
| 07/07 | 07/06 Payment To Chase Card Ending IN 8129 | -100.00 | 329.18 |
| 07/07 | 07/06 Payment To Chase Card Ending IN 8129 | -190.00 | 139.18 |
| 07/07 | Affirm Inc        Affirm Pay 4428065        Web ID: 0000317218 | -275.48 | -136.30 |
| 07/07 | Affirm Inc        Affirm Pay 4780332        Web ID: 0000317218 | -80.07 | -216.37 |
| 07/07 | Bloomingdales    Auto Pymt  721716665280274 Web ID: Citiautfdr | -54.53 | -270.90 |
| 07/07 | Paypal          Inst Xfer  Instacart       Web ID: Paypalsi77 | -41.70 | -312.60 |
| 07/07 | Paypal          Inst Xfer  Instacart       Web ID: Paypalsi77 | -23.52 | -336.12 |
| 07/07 | Paypal          Inst Xfer  Adobe Inc Adobe Web ID: Paypalsi77 | -12.99 | -349.11 |
| 07/08 | Zelle Payment From Lance Betson Wfct0Yzvjr59 | **2,000.00** | 1,650.89 |
| 07/08 | 360 Sheffield Fi Trans Pmt         PPD ID: 1561771532 | -390.47 | 1,260.42 |
| 07/08 | Ebay Comwrxgt9B9 Payments   4Vbdfmirqgpom20 Web ID: 1395398000 | -191.25 | 1,069.17 |
| 07/08 | Griffin Ranch Ho L7709420          PPD ID: 1711041244 | -590.00 | 479.17 |
| 07/08 | Paypal          Inst Xfer  Flexjobs        Web ID: Paypalsi77 | -2.95 | 476.22 |
| 07/08 | Card Purchase With Pin  07/08 Homegoods 44439 Town C Palm Desert CA Card 6892 | -101.04 | 375.18 |
| 07/09 | Broadspire Svcs  Claimpmt   6710046536      CCD ID: B363917295 | **10,630.00** | 11,005.18 |
| 07/09 | Paypal          Inst Xfer  Google Google_Y Web ID: Paypalsi77 | -149.95 | 10,855.23 |
| 07/09 | Paypal          Inst Xfer  Instantink      Web ID: Paypalsi77 | -8.69 | 10,846.54 |
| 07/10 | Card Purchase          07/08 Hobby-Lobby #709 Rancho Mirage CA Card 6892 | -15.02 | 10,831.52 |
| 07/10 | Ally Home Loans  Loan Paymt 7123095684      Web ID: 9Drafting | -6,587.64 | 4,243.88 |
| 07/10 | Imp Irrig Dist   Power Bill         PPD ID: 9960038000 | -955.39 | 3,288.49 |
| 07/10 | Frontier Communi Bill Pay   21139369821     Tel ID: 7529252911 | -200.00 | 3,088.49 |
| 07/10 | Select Portfolio Sps      0031420235      Web ID: 1870465626 | -3,022.81 | 65.68 |
| 07/11 | Recurring Card Purchase 07/11 Hudforeclosed.Com 877-5038719 CA Card 6892 | -49.60 | 16.08 |
| 07/11 | Paypal          Inst Xfer  Apple.Com Bill  Web ID: Paypalsi77 | -106.98 | -90.90 |
| 07/11 | Paypal          Inst Xfer  Apple.Com Bill  Web ID: Paypalsi77 | -37.95 | -128.85 |
| 07/11 | Affirm Inc        Affirm Pay 6853746        Web ID: 0000317218 | -17.94 | -146.79 |
| 07/14 | Card Purchase Return    07/10 Hobby-Lobby #709 Rancho Mirage CA Card 6892 | 4.30 | -142.49 |
| 07/14 | Real Time Transfer Recd From Aba/Contr Bnk-072000326  From: Bnf-Amrock Ref: 746429 Info: Text-Rmtinf-Loan Proceeds Audrey Beth Little Iid: 20250714021000021P1Brjpc01440268995 Recd: 18:27:50 Trn: 1223962195Gc Bref: 2579A0A1-C0C6-4E23-Be12-8Cb259C708A | **85,790.31** | 85,647.82 |
| 07/14 | Zelle Payment From Rosalina Ramirez 25484359608 | **2,000.00** | 87,647.82 |
| 07/14 | Affirm Inc        Affirm Pay 7319217        Web ID: 0000317218 | -101.86 | 87,545.96 |
| 07/14 | Card Purchase          07/14 Sp+Aff * Snuggle ME O 855-423-3729 CA Card 6892 | -35.66 | 87,510.30 |
| 07/14 | Affirm Inc        Affirm Pay 7841309        Web ID: 0000317218 | -192.42 | 87,317.88 |
| 07/14 | Aqua Finance Inc Billpay         PPD ID: 1391615890 | -83.65 | 87,234.23 |
| 07/14 | Zelle Payment To Rosalina Ramirez 25483779585 | -2,685.00 | 84,549.23 |
| 07/14 | Zelle Payment To Rosario Sandoval Jpm99Bfqnm7U | -750.00 | 83,799.23 |
| 07/14 | Affirm Inc        Affirm Pay 7966272        Web ID: 0000317218 | -210.65 | 83,588.58 |
| 07/15 | Remote Online Deposit          1 | **1,690.41** | 85,278.99 |
| 07/15 | Manual CR-Bkrg | **8,000.00** | 93,278.99 |
| 07/15 | Online Transfer From Sav ...3716 Transaction#: 25494185710 | **4,000.00** | 97,278.99 |
| 07/15 | Zelle Payment From Rosalina Ramirez 25490370727 | **685.00** | 97,963.99 |

# EXHIBIT B-2

Recorded Deed of Trust and Recording Proof - 07/15/2025

*Prepared for Exhibit Binder - v2 (reordered/retabbed)*

## Advanced Search - Web

Search one or several fields at a time.

**Individual Names** should be entered **Last First MI** (i.e. Smith James M). For a broader search, use only a last name and

# Assessor-County Clerk-Recorder

Language          Home          cart

**Clerk Documents are indexed from Jan 1, 1893 through Nov 21, 2025**

**Recorder Documents are indexed from Jan 1, 1974 through Dec 31, 2025**

| Document Number | Recording Date Start | Recording Date End | Name |
|---|---|---|---|
| | 07/13/2025 | 07/16/2025 | oaktree |

Document Types

Use Advanced Name Searching
([What is this?](#))

| Recent searches | | Clear Selections | Search |
|---|---|---|---|

Description (1)

**DEED OF T...    1**



☐ **Showing page 1 of 1 for 1 Total Results**

**Advanced Search - Web Recording Date is between Jul 13, 2025 and Jul 16, 2025 and Name contains oaktree**

Name (4)

LITTLE AU...    1

**Back**

MORTGAG...    1

OAKTREE F...    1

Apply Filter...


 D  ## 2025-0214839 • DEED OF TRUST

| RecordingDate | Grantor (2) | Grantee (2) | # of Pages |
|---|---|---|---|
| 07/15/2025 08:20 AM | LITTLE AUDREY BETH<br>LITTLE JACOB | OAKTREE FUNDING CORP MORTGAGE FL | 21 |

© Copyright 2014-2024 Tyler Technologies | Version 2024.4.21

# EXHIBIT B-3

Complete Escrow Closing / Settlement Statement (Closing Disclosure)

# Closing Disclosure

*This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.*

## Closing Information

| | |
|---|---|
| **Date Issued** | 7/8/2025 |
| **Closing Date** | 7/8/2025 |
| **Disbursement Date** | 7/14/2025 |
| **Settlement Agent** | Amrock Title California Inc |
| **File#** | 74346744 |
| **Property** | 81439 Merv Griffin Way |
| | La Quinta , CA 92253 |
| **Appraised Prop. Value** | $2,850,000 |

## Transaction Information

| | |
|---|---|
| **Borrower** | Audrey Beth Little and Jacob Little |
| | 81439 Merv Griffin Way |
| | La Quinta, CA 92253 |
| **Lender** | Oaktree Funding Corp |

## Loan Information

| | |
|---|---|
| **Loan Term** | 30 years |
| **Purpose** | Home Equity Loan |
| **Product** | Fixed Rate |
| **Loan Type** | |x| Conventional D FHA |
| | VA ☐ |
| **Loan ID#** | 22025050036 |
| **MIC#** | |

## Loan Terms

| | | Can this amount increase after closing? |
|---|---|---|
| **Loan Amount** | $716,580 | **NO** |
| **Interest Rate** | 9.625% | **NO** |
| **Monthly Principal & Interest** *See Projected Payments below for your Estimated Total Monthly Payment* | $6,090.85 | **NO** |
| | | **Does the loan have these features?** |
| **Prepayment Penalty** | | **NO** |
| **Balloon Payment** | | **NO** |

## Projected Payments

| Payment Calculation | Years 1 - 30 |
|---|---|
| Principal & Interest | $6,090.85 |
| Mortgage Insurance | + 0 |
| Estimated Escrow *Amount can increase over time* | + 0 |
| **Estimated Total Monthly Payment** | **$6,090.85** |

| | | This estimate includes | In escrow? |
|---|---|---|---|
| **Estimated Taxes, Insurance & Assessments** *Amount can increase over time* *See page 4 for details* | **$1,993.98** a month | |x| Property Taxes | **NO** |
| | | |x| Homeowner's Insurance | **NO** |
| | | D Other: | |
| | | *See Escrow Account on page 4 for details. You must pay for other property costs separately.* | |

## Costs at Closing

| | | |
|---|---|---|
| **Closing Costs** | $12,232.49 | Includes $17,536.60 in Loan Costs+ $3,704.54 in Other Costs -$9,008.65 in Lender Credits.*See page 2 for details.* |
| **Cash to Close** | $85,790.31 | Includes Closing Costs *See Calculating Cash to Close on page 3 for details.* D Frorrlil To Borrower |



✫DocMagic

**Closing Cost Details**

| Loan Costs | | Borrower-Paid | | Paid by Others |
|---|---|---|---|---|
| | | At Closing | Before Closing | |
| **A. Origination Charges** | | **$15,221.60** | | |
| 01  % of Loan Amount (Points) | | | | |
| 02 Document Prep Fee | | $195.00 | | |
| 03 Originator Compensation  to Adaxa, LLC | | $14,331.60 | | |
| 04 Underwriting Fee | | $695.00 | | |
| 05 | | | | |
| 06 | | | | |
| 07 | | | | |
| 08 | | | | |
| **B. Services Borrower Did Not Shop For** | | **$1,020.00** | | |
| 01 Appraisal Fees | to Ame Direct Corporation | $900.00 | | |
| 02 Appraisal Review Fee | to Clear Capital | $120.00 | | |
| 03 | | | | |
| 04 | | | | |
| 05 | | | | |
| 06 | | | | |
| 07 | | | | |
| 08 | | | | |
| 09 | | | | |
| 10 | | | | |
| **C. Services Borrower Did Shop For** | | **$1,295.00** | | |
| 01 Deed Prep Fee | to Rr Michigan, LLC | $95.00 | | |
| 02 Title - Lender's Title Insurance | to Amrock Title California Inc | $575.00 | | |
| 03 Title - Notary Fees | to Amrock Title California Inc | $125.00 | | |
| 04 Title - Settlement Fee | to Amrock Title California Inc | $475.00 | | |
| 05 Title - Tax Certificate Fee | to Amrock Title California Inc | $25.00 | | |
| 06 | | | | |
| 07 | | | | |
| 08 | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | | **$17,536.60** | | |
| Loan Costs Subtotals (A+ B + C) | | $17,536.60 | | |

| Other Costs | | Borrower-Paid | | Paid by Others |
|---|---|---|---|---|
| **E. Taxes and Other Government Fees** | | **$256.00** | | |
| 01 Recording Fees     Deed:     Mortgage: $256.00 | | $256.00 | | |
| 02 | | | | |
| **F. Prepaids** | | **$3,448.54** | | |
| 01 Homeowner's Insurance Premium (  mo.) | | | | |
| 02 Mortgage Insurance Premium (  mo.) | | | | |
| 03 Prepaid Interest ($191.59 per day from 7/14/25 to 8/1/25) | | $3,448.54 | | |
| 04 Property Taxes (  mo.) | | | | |
| 05 | | | | |
| **G. Initial Escrow Payment at Closing** | | | | |
| 01 Homeowner's Insurance     per month for  mo. | | | | |
| 02 Mortgage Insurance     per month for  mo. | | | | |
| 03 Property Taxes     per month for  mo. | | | | |
| 04 | | | | |
| 05 | | | | |
| 06 | | | | |
| 07 | | | | |
| 08 Aggregate Adjustment | | | | |
| **H. Other** | | | | |
| 01 | | | | |
| 02 | | | | |
| 03 | | | | |
| 04 | | | | |
| 05 | | | | |
| 06 | | | | |
| 07 | | | | |
| 08 | | | | |
| **I. TOTAL OTHER COSTS (Borrower-Paid)** | | **$3,704.54** | | |
| Other Costs Subtotals (E + F + G + H) | | $3,704.54 | | |

| | | | | |
|---|---|---|---|---|
| **J. TOTAL CLOSING COSTS (Borrower-Paid)** | | **$12,249** | | |
| Closing Costs Subtotals (D + I) | | $21,241.14 | | |
| Lender Credits (Includes $51.40 credit for increase in Closing Costs above legal limit) | | -$9,008.65 | | |



Page 2



DocMagic

## Payoffs and Payments

Use this table to see a summary of your payoffs and payments to others from your loan amount.

| TO | | AMOUNT |
|---|---|---|
| 01 | Payoff to 2024 Property Taxes for Other Expense | $12,959.79 |
| 02 | Payoff to Amex for Charge Account | $16,850.00 |
| 03 | Payoff to Amex for Revolving Account | $938.00 |
| 04 | Payoff to Bby/Cbna for Revolving Account | $729.00 |
| 05 | Payoff to Bloom/Cbna for Revolving Account | $1,398.00 |
| 06 | Payoff to Capital One for Revolving Account | $6,707.00 |
| 07 | Payoff to Ccb/Saksmc (Lqi) | $4,194.00 |
| 08 | Payoff to Citi for Revolving Account | $2,683.00 |
| 09 | Payoff to City National Bank for Revolving Account | $123.00 |
| 10 | Payoff to County Tax Liens | $274.56 |
| 11 | Payoff to Federal Taxes Due | $38,612.77 |
| 12 | Payoff to Gs Bank for Revolving Account | $22,813.00 |
| 13 | Payoff to Jpmcb Card for Revolving Account | $15,303.00 |
| 14 | Payoff to Kinecta FCU for Heloc | $360,584.08 |
| 15 | Additional Payoffs and Payments - See Addendum | $200,467.23 |
| **K. TOTAL PAYOFFS AND PAYMENTS** | | **$674,636.43** |

## Calculating Cash to Close

Use this table to see what has changed from your Loan Estimate.

| | Loan Estimate | Final | Did this change? |
|---|---|---|---|
| Loan Amount | S716,580.00 | S716,580.00 | **NO** |
| Total Closing Costs (J) | -S12,555.00 | -S12,232.49 | **YES** • See **Total Loan Costs(D)** and **Total Other Costs(I).** Increase exceeds legal imits by S51.40. See **Lender Credits** on page 2 for credit of excess amount. |
| Closing Costs Paid Before Closing | S0 | S0 | **NO** |
| Total Payoffs and Payments (K) | -$687,191 | -S715,880 | **YES** • See **Payoffs and Payments (K)** |
| **Cash to Close** | S29,389 | S700.00 | |
| | D From |x| To Borrower | D From |x| To Borrower | Closing Costs Financed (Paid from your Loan Amount) $12,232.49 |



Page 3

☆ DocMagic

# Additional Information About This Loan

## Loan Disclosures

### Assumption

If you sell or transfer this property to another person, your lender

D   will allow, under certain conditions, this person to assume this loan on the original terms.

IXI will not allow assumption of this loan on the original terms.

### Demand Feature

Your loan

D   has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.

IXI does not have a demand feature.

### Late Payment

If your payment is more than 70days late, your lender will charge a late fee of 5% *of your overdue payment.*

### Negative Amortization  (Increase in Loan Amount)

Under your loan terms, you

D   are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

D   may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

IXI do not have a negative amortization feature.

### Partial Payments

Your lender

D   may accept payments that are less than the full amount due (partial payments) and apply them to your loan.

D   may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.

IXI does not accept any partial payments.

If this loan is sold, your new lender may have a different policy.

### Security Interest

You are granting a security interest in
*81439 Merv Griffin Way, La Quinta, CA 92253*

You may lose this property if you do not make your payments or satisfy other obligations for this loan.

### Escrow Account

*For now,* your loan

D   will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | | |
|---|---|---|
| Escrowed Property Costs overYearl | | Estimated total amount over year 1 for your escrowed property costs: |
| Non-Escrowed Property Costs overYearl | | Estimated total amount over year 1 for your non-escrowed property costs:  You may have other property costs. |
| Initial Escrow Payment | | A cushion for the escrow account you pay at closing. See Section G on page 2. |
| Monthly Escrow Payment | | The amount included in your total monthly payment. |

Ix! will not have an escrow account because Ix! you declined it D your lender does not offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | | |
|---|---|---|
| Estimated Property Costs overYearl | $23,927.76 | Estimated total amount over year 1. You must pay these costs directly, possibly in one or two large payments a year. |
| Escrow Waiver Fee | | |

### *In the future,*

Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.



☆ DocMagic

## Loan Calculations

| | |
|---|---|
| **Total of Payments.** Total you will have paid after you make all payments of principal, interest, mortgage insurance, and loan costs, as scheduled. | $2,213,700.07 |
| **Finance Charge.** The dollar amount the loan will cost you. | $1,496,450.07 |
| **Amount Financed.** The loan amount available after paying your upfront finance charge. | $696,264.86 |
| **Annual Percentage Rate (APR)** Your costs over the loan term expressed as a rate. This is not your interest rate. | 9.962% |
| **Total Interest Percentage (TIP).** The total amount of interest that you will pay over the loan term as a percentage of your loan amount. | 206.478% |

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

## Other Disclosures

**Contract Details**
See your note and security instrument for information about
- what happens if you fail to make your payments,
- what is a default on the loan,
- situations in which your lender can require early repayment of the loan, and
- the rules for making payments before they are due.

**Liability after Foreclosure**
If your lender forecloses on this property and the foreclosure does not cover the amount of unpaid balance on this loan,

☒ state law may protect you from liability for the unpaid balance. If you refinance or take on any additional debt on this property, you may lose this protection and have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information.

☐ state law does not protect you from liability for the unpaid balance.

**Refinance**
Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan.

**Tax Deductions**
If you borrow more than this property is worth, the interest on the loan amount above this property's fair market value is not deductible from your federal income taxes. You should consult a tax advisor for more information.

## Contact Information

| | Lender | Mortgage Broker | Settlement Agent |
|---|---|---|---|
| **Name** | Oaktree Funding Corp | Adaxa, LLC | Amrock Title California Inc |
| **Address** | 3133 West Frye Road #205, Chandler, AZ 85226 | 6930 E Chauncey Ln Suite 210, Phoenix, AZ 85054 | 17785 Center Crt Dr N #760, Cerritos, CA 90703 |
| **NMLSID** | 71640 | 2380533 | |
| **CA License ID** | 01079521 | 60D8O-172593 | U-3124-5 |
| **Contact** | | Adam Scott Jorgensen | Gary Wallace |
| **Contact NMLS ID** | | 1627987 | |
| **Contact CA License ID** | | CA-DFPI1627987 | U-3124-5 |
| **Email** | | ajorgensen@adaxahome.com | lcsettlements@rocketclose.com |
| **Phone** | | (402) 525-3079 | (866) 313-6336 |

## Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

| | |
|---|---|
| Audrey Beth Little | Date |
| Jacob Little | Date |



 DocMagic

**Addendum**

## Payoffs and Payments

**Use this table to see a summary of your payoffs and payments to others from your loan amount.**

| TO | AMOUNT |
|---|---|
| Payoff to Pagel Management LLC | $125,000.00 |
| Payoff to BMW Finance | $46,380.23 |
| Payoff to Kinecta Loan | $29,087.00 |



☆ DocMagic

# EXHIBIT B-4

Rocket Exhibit B — Title / Settlement Process (Who Did What)

Adaxa, LLC
6930 E Chauncey Ln Ste 210
Phoenix, AZ 85054

Phone Number:  (402) 525-3079

# MORTGAGE INVOICE

Date:          7/1/2025

Client Name:   Oaktree Funding Corporation          Order Number:       74346744

Loan Number: 22025050036                            Property Address:  81439 Merv Griffin Way
                                                                       La Quinta, CA 92253-8084
Loan Amount:  $750,000.00

Total Premium Due:        $575.00

**Additional Charges and Available Endorsements:**

Insured Closing Protection Letter                   $0.00
ALTA 8.1 Environmental Protection Lien              $0.00
ALTA 5 Planned Unit Development                     $0.00
ALTA 9 Restrictions, Encroachments, Minerals        $0.00

Underwriter portion of premium:  $57.50 , Agent portion of premium:  $517.50

---

Issued By:  Rocket Close and Title, Inc                Agent for:  Rocket Title Insurance Company
            17785 Center Court Dr. N., Suite 760
            Cerritos, CA 90703                          Countersigned By: Rocket Close and Title, Inc
            Phone: (866) 948-7627
            Fax: (877) 380-4101
            Email: clientrelations@rocketclose.com
            Website: www.rocketclose.com

                                                        Nicole Beattie, Agent

ALTA COMMITMENT - Mortgage Invoice

## ○ Rocket Title Insurance Company

**Transaction Identification Data, for which the Company assumes no liability as set forth in Commitment Condition 5.e.:**
Issuing Agent: Rocket Close and Title, Inc
Issuing Office: 17785 Center Court Dr. N., Suite 760 Cerritos, CA 90703
Issuing Office's ALTA® Registry ID: 1066048
Loan ID #: 22025050036
Commitment Number: 74346744
Issuing Office File Number: 74346744
Property Address: 81439 Merv Griffin Way, La Quinta, CA 92253-8084
Revision Number: 4

## Schedule A

1. **Commitment Date:** May 8, 2025 at 8:00 a.m.

2. **Policy to be Issued:**

    Loan Policy (7/1/21) $750,000.00  (Without Standard Exceptions)

    **Proposed Insured:**  Oaktree Funding Corporation, its successors and/or assigns

    **Loan Number:**  22025050036

3. **The estate or interest in the Land described or referred to in this Commitment is:**  Fee Simple

4. **The Title is, at the Commitment Date, vested in:**
    Audrey Beth Little, an unmarried woman
    By Deed from Lennar Homes of California, Inc., a California Corporation to Audrey Beth Little, an unmarried woman, dated May 12, 2021, recorded June 18, 2021 in Instrument/Case No. 2021-0369122.

5. **The Land is described as follows:**

    Land situated in the City of La Quinta in the County of Riverside in the State of California

    (See Attached Exhibit A - Legal Description)

    **Commonly Known As:**  81439 Merv Griffin Way  La Quinta, CA 92253-8084

    Tax Parcel Identification Numbers: 780-120-055

    Property Type:  Planned Unit Development

    NOTE: The property address, tax parcel identification number, and property type are provided solely for informational purposes and are not insurable for this transaction.

In order to close a transaction using this Title Commitment, and have a Title Policy issued based on the contents of this Commitment, the Commitment Revision Date must not be older than 14 days from the actual closing date.  Please contact this Title provider for appropriate updates.  Please not that after 180 days, this commitment is void and of no effect.

This  page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Rocket Title Insurance Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and counter-signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Form 99A11002412



**ᑎRocket Title Insurance Company**

Agent for:  Rocket Title Insurance Company
Countersigned By:

**ROCKET TITLE INSURANCE COMPANY**



*By:*

Officer

_____
Nicole Beattie, Agent

In order to close a transaction using this Title Commitment, and have a Title Policy issued based on the contents of this Commitment, the Commitment Revision Date must not be older than 14 days from the actual closing date.  Please contact this Title provider for appropriate updates.  Please not that after 180 days, this commitment is void and of no effect.

This  page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Rocket Title Insurance Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and counter-signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Form 99A11002412

**Rocket Title Insurance Company**

**ALTA Commitment for Title Insurance**
**2021 v. 01.00 (07-01-2021)**

## SCHEDULE B - PART I
### (Requirements)

All of the following Requirements must be met:

1.  The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2.  Pay the agreed amount for the estate or interest to be insured.

3.  Pay the premiums, fees, and charges for the Policy to the Company.

4.  Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

5.  The following are the requirements to be complied with:
    A.  Payment to, or for the account of, the sellers or mortgagors of the full consideration for the estate or interest to be insured.
    B.  Instruments in insurable form which must be executed, delivered and duly filed for record.

6.  Record mortgage/deed of trust to be insured from Audrey Beth Little, an unmarried woman .

7.  A Deed of Trust to Secure an Indebtedness of $1,384,896.00, and any other amounts as therein provided, recorded October 27, 2021, as Instrument/Case No. 2021-0634801, of Official Records.

    | | |
    |---|---|
    | Dated Date: | October 19, 2021 |
    | Trustor: | Audrey Beth Little, an unmarried woman |
    | Trustee: | Title365 Company |
    | Beneficiary: | Mortgage Electronic Registration Systems, Inc., as nominee for Ally Bank |
    | Loan No: | |
    | MIN: | 100572615853071984 |
    | Open Ended: | No |

    Additional Information:

    Re-recorded July 27, 2022 in Instrument/Case No. 2022-0334595.

8.  A Deed of Trust to Secure an Indebtedness of $357,500.00, and any other amounts as therein provided, recorded October 18, 2022, as Instrument/Case No. 2022-0432861, of Official Records.

    | | |
    |---|---|
    | Dated Date: | October 4, 2022 |
    | Trustor: | Audrey Beth Little, an unmarried woman |
    | Trustee: | First American Title Company |

In order to close a transaction using this Title Commitment, and have a Title Policy issued based on the contents of this Commitment, the Commitment Revision Date must not be older than 14 days from the actual closing date.  Please contact this Title provider for appropriate updates.  Please not that after 180 days, this commitment is void and of no effect.

This  page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Rocket Title Insurance Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and counter-signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Form 99A11002412



**⌂Rocket Title Insurance Company**

<div align="right">

**ALTA Commitment for Title Insurance**
**2021 v. 01.00 (07-01-2021)**

</div>

| | |
|---|---|
| Beneficiary: | Kinecta Federal Credit Union, a Federal Credit Union |
| Loan No: | 7000034807 |
| MIN: | |
| Open Ended: | Yes |

9. A Deed of Trust to Secure an Indebtedness of $125,000.00, and any other amounts as therein provided, recorded December 7, 2022, as Instrument/Case No. 2022-0494846, of Official Records.

| | |
|---|---|
| Dated Date: | November 30, 2022 |
| Trustor: | Audrey Beth Little, an unmarried woman |
| Trustee: | Fidelity National Title Company, a California corporation |
| Beneficiary: | Pagel Management LLC |
| Loan No: | |
| MIN: | |
| Open Ended: | No |

10. Payment of unpaid taxes and special assessments, plus penalty, interest and collection fees, if any, or same to be shown on the final policy.

11. Taxes being obtained from municipality. To follow under separate cover.

**Tax Id Number(s): 780-120-055**

NOTE: In the event that the loan secured by the mortgage to be insured (the insured mortgage) is closed and disbursed by a branch office of the Company or an agent of the Company, for whom we have provided you with an un-cancelled closing protection letter, the policy committed for by this commitment will be issued in the form required by your closing instructions.  Such policy will only include exceptions disclosed by this commitment and any amendments to or updates of this commitment provided to you prior to closing.

NOTE: Rocket Close and Title, Inc obtains the opinion of an independent attorney licensed in the subject property state prior to the furnishing of any title information where required by applicable law.

In order to close a transaction using this Title Commitment, and have a Title Policy issued based on the contents of this Commitment, the Commitment Revision Date must not be older than 14 days from the actual closing date.  Please contact this Title provider for appropriate updates.  Please not that after 180 days, this commitment is void and of no effect.

This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Rocket Title Insurance Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and counter-signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Form 99A11002412



**Rocket Title Insurance Company**

**Commitment for Title Insurance**
**2021 v. 01.00 (07-01-2021)**

## SCHEDULE B - PART II
### (Exceptions)

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This Commitment and the Policy treat any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document will be excepted from coverage.**

The Policy will not insure against loss or damage resulting from the terms and conditions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

2. Rights, facts, interests or claims which are not shown by the Public Records, but which could be ascertained by an inspection of said Land or by making inquiry of persons in possession thereof.

3. Easements, claims of easement or encumbrances which are not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.

5. Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof, water rights, claims or title to water, in each case not shown in the public records.

6. Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

7. Taxes and assessments not yet due and payable.

8. Covenants, conditions and restrictions and other instruments recorded in the public records and purporting to impose a transfer fee or conveyance fee payable upon the conveyance of an interest in real property or payable for the right to make or accept such a transfer, and any and all fees, liens or charges, whether recorded or unrecorded, if any, currently due payable or that will become due or payable, and any other rights deriving therefrom, that are assessed pursuant thereto.

9. Oil, gas, or other mineral interests and all rights incident thereto now or previously conveyed, transferred, leased, excepted or reserved.

10. Any and all easements, agreements and restrictions of record.

11. Assessments, if any, for Community Facility Districts affecting said land which may exist by virtue of assessment maps or notices filed by said Districts.

NOTE: In the event that the Commitment Jacket is not attached hereto, all of the terms, conditions and provisions contained in said Jacket are incorporated herein.

NOTE: The policy to be issued may contain an arbitration clause.  When the Amount of Insurance is less than the amount, if any, set forth in the arbitration, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as exclusive remedy of the parties.  Arbitration is voluntary and non-binding.

In order to close a transaction using this Title Commitment, and have a Title Policy issued based on the contents of this Commitment, the Commitment Revision Date must not be older than 14 days from the actual closing date.  Please contact this Title provider for appropriate updates.  Please not that after 180 days, this commitment is void and of no effect.

This  page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Rocket Title Insurance Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and counter-signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Form 99A11002412



EXHIBIT A - LEGAL DESCRIPTION

 Tax Id Number(s): 780-120-055

Land situated  in the City of La Quinta in the County of Riverside in the State of CA

PARCEL 1: LOT 64 OF TRACT NO. 32879, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 399, PAGES 3 THROUGH 20, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, GEOTHERMAL STEAM AND ALL PRODUCTS DERIVED FROM ANY OF THE FOREGOING, THAT MAY BE WITHIN OR UNDER THE LAND, TOGETHER WITH THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND STORING IN AND REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THE LAND, OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LAND, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER AND BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS OR MINES WITHOUT, HOWEVER, THE RIGHT TO DRILL, MINE, STORE, EXPLORE OR OPERATE THROUGH THE SURFACE OR THE UPPER 500 FEET OF THE SUBSURFACE OF THE LAND.

RESERVING UNTO GRANTOR, ITS SUCCESSORS AND ASSIGNS, AND OTHERS, TOGETHER WITH THE RIGHT TO GRANT AND TRANSFER ALL OR A PORTION OF THE SAME, EXCEPT AS GRANTED HEREBY, EASEMENTS AND RIGHTS OF ACCESS, USE, ENJOYMENT, MAINTENANCE, REPAIRS, DRAINAGE AND FOR OTHER PURPOSES, ALL AS RESERVED TO GRANTOR AS DECLARANT AND OWNER IN THE DECLARATION.

PARCEL 2: EASEMENTS AND RIGHTS OF OWNERS AS SET FORTH IN THAT CERTAIN "AMENDED AND RESTATED DECLARATION OF RESTRICTIONS FOR GRIFFIN RANCH" RECORDED ON JANUARY 8, 2013 AS INSTRUMENT NO. 2013-0009750, RE-RECORDED ON JUNE 18, 2013 AS INSTRUMENT NO. 2013-0288996 (COLLECTIVELY "DECLARATION"), AND AS SET FORTH IN THAT CERTAIN "SUPPLEMENTAL DECLARATION AND NOTICE OF ANNEXATION," RECORDED ON SEPTEMBER 4, 2020, AS INSTRUMENT NO. 2020-0418197, OF OFFICIAL RECORDS, AND ANY AMENDMENTS THERETO ("DECLARATION OF ANNEXATION") OF OFFICIAL RECORDS, AND ANY AMENDMENTS THERETO, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY.

PARCEL 3: A NONEXCLUSIVE EASEMENT APPURTENANT TO THE PROPERTY FOR INGRESS, EGRESS AND ACCESS ON, OVER, AND ACROSS THE PRIVATE STREETS IN GRIFFIN RANCH, AS MORE PARTICULARLY SET FORTH IN THAT CERTAIN "DECLARATION ESTABLISHING ACCESS EASEMENT RIGHTS" RECORDED

# EXHIBIT B-5

Rocket Exhibit C — Disbursement Proof & Recording Proof

**CHASE** ⬡

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

June 24, 2025 through July 22, 2025

Primary Account: **000000818985381**

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-888-262-4273** |
| Para Espanol: | 1-888-262-4273 |
| International Calls: | 1-713-262-1679 |
| We accept operator relay calls | |

00524608 DRE 703 219 20425 NNNNNNNNNNN  1 000000000 15 0000

AUDREY LITTLE
81439 MERV GRIFFIN WAY
LA QUINTA CA 92253-8084



## We're making changes to help better protect your account

1. **You may be required to use a trusted device for certain account and digital services**
   Starting September 21, 2025, you may need to use a trusted device to manage your account and digital profile, access or use certain account product and services (including certain wire transfers), make certain payments and transfers, or to provide authentication or approvals. A trusted device is a smartphone that has been enrolled with us based on specific criteria.

   **You may need to enroll a device**
   You may already be using a trusted device. If not, you'll receive instructions to make your device trusted the next time you try to perform an action that requires it.

   For more details, please see the Amendment in the Deposit Account Agreement and the new Section V. D. *Using trusted devices*.

2. **How we treat third-party endorsed check deposits is changing**
   A third-party endorsed check is a check that was originally payable to another person/entity that you attempt to deposit or cash. Beginning September 1, 2025, we may not accept a third-party check for deposit or to cash or we may require verification of endorsements. If we refuse a deposit, we may return the check or provide a substitute check to you.

   You can find this update in Section III. A. *Our rights and responsibilities for deposits*.

You can see the complete, updated Deposit Account Agreement beginning June 12, 2025, at **chase.com/disclosures**. If you have questions, please don't hesitate to contact us by calling the number on this statement.



June 24, 2025 through July 22, 2025
Primary Account: **000000818985381**

## CONSOLIDATED BALANCE SUMMARY

**ASSETS**

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Sapphire Checking | 000000818985381 | -$403.62 | $3,554.15 |
| Chase Premier Savings | 000003922213716 | 324.37 | 7.25 |
| Total | | **-$79.25** | **$3,561.40** |
| | | | |
| **TOTAL  ASSETS** | | **-$79.25** | **$3,561.40** |

## CHASE SAPPHIRE CHECKING

AUDREY LITTLE                                          Account Number: 000000818985381

## CHECKING SUMMARY

| | AMOUNT |
|---|---|
| **Beginning Balance** | **-$403.62** |
| Deposits and Additions | 157,336.82 |
| Checks Paid | -4,000.00 |
| ATM & Debit Card Withdrawals | -2,473.07 |
| Electronic Withdrawals | -138,846.98 |
| Other Withdrawals | -8,000.00 |
| Fees | -59.00 |
| **Ending Balance** | **$3,554.15** |
| | |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.05 |
| Interest Paid Year-to-Date | $0.13 |

Your account ending in 3716 is linked to this account for overdraft protection.

## CHECKS PAID

| CHECK NUMBER | DATE PAID | AMOUNT |
|---|---|---|
| 159  ^ | 07/17 | $4,000.00 |
| **Total Checks Paid** | | **$4,000.00** |

If you see a check description in the Transaction Detail section, it means your check has already been converted for electronic payment. Because of this, we're not able to return the check to you or show you an image on Chase.com.

^ An image of this check may be available for you to view on Chase.com.



June 24, 2025 through July 22, 2025

Primary Account: **000000818985381**

# TRANSACTION DETAIL



| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|-------:|--------:|
| | **Beginning Balance** | | **-$403.62** |
| 06/24 | Paypal          Inst Xfer  Apple.Com Bill  Web ID: Paypalsi77 | -40.93 | -444.55 |
| 06/24 | Overdraft Fee For A $755.36 Item - Details: Applecard Gsbank Payment 2523018      Web ID: 9999999999 | -34.00 | -478.55 |
| 06/25 | Real Time Transfer Recd From Aba/Contr Bnk-021000021  From: Bnf-Paypal Ref: 25062514674910352 Info: Text-  Iid: 20250624021000021P1Brjpc05280310903 Recd: 10:48:29 Trn: 0420712176GA Bref: 60E13C48-826D-4223-93Aa-D16546E229E | **1,708.27** | 1,229.72 |
| 06/25 | Delta Dental Ins Premium    018076134754   Tel ID: 1942761537 | -83.26 | 1,146.46 |
| 06/25 | 06/25 Payment To Chase Card Ending IN 8129 | -400.00 | 746.46 |
| 06/25 | Zelle Payment To Rosalina Ramirez 25251459632 | -105.00 | 641.46 |
| 06/25 | ATM Withdrawal       06/25 78805 Highway 111 LA Quinta CA Card 6892 | -200.00 | 441.46 |
| 06/25 | Paypal          Inst Xfer  Psmiley202461  Web ID: Paypalsi77 | -400.00 | 41.46 |
| 06/26 | Zelle Payment From Michael Nanko Backyn9U8D2X | **3,500.00** | 3,541.46 |
| 06/26 | Best Buy          Payment    201732781587864 Tel ID: Citigpufdr | -70.00 | 3,471.46 |
| 06/26 | 06/26 Online Domestic Wire Transfer Via: Kinecta Fcu MN Bch/322278073 A/C: Audrey Little LA Quinta CA 92253 US Imad: 0626Mmqfmp2N033511 Trn: 3640955177Es | -2,900.00 | 571.46 |
| 06/27 | Zelle Payment From Michael Nanko Bacpkqppy0On | **1,500.00** | 2,071.46 |
| 06/27 | Paypal          Inst Xfer  Apple.Com Bill  Web ID: Paypalsi77 | -13.48 | 2,057.98 |
| 06/30 | Fedwire Credit Via: Wells Fargo Bank, N.A./121000248 B/O: Stewart And Lynda Resnick Revocablelos Angeles CA US 90064-1549 Ref: Chase Nyc/Ctr/Bnf=Audrey Little LA Quinta CA 92253-8084 US/Ac-00000000 8189 Rfb=7918 Obi=2025 Gift To Audr Ey Little Bbi=/Chgs/USD0,00/ Imad: 0630l1B7031R024483 Trn: 1594531181Ff | **12,085.41** | 14,143.39 |
| 06/30 | Zelle Payment From Jacob Little 0Pe03Bz17Hat | **3,114.00** | 17,257.39 |
| 06/30 | Bmw Bank          Bmwfs Pymt          PPD ID: 0870631885 | -891.75 | 16,365.64 |
| 06/30 | Mercury Ins      Payment          PPD ID: Ay52211612 | -193.10 | 16,172.54 |
| 06/30 | 06/28 Payment To Chase Card Ending IN 8129 | -101.00 | 16,071.54 |
| 06/30 | Card Purchase          06/29 Sp+Aff* Snuggle ME Org Affirm.Com CA Card 6892 | -35.67 | 16,035.87 |
| 06/30 | Select Portfolio Sps      0031420235      Web ID: 1870465626 | -3,022.81 | 13,013.06 |
| 06/30 | Paypal          Inst Xfer  Apple.Com Bill  Web ID: Paypalsi77 | -64.99 | 12,948.07 |
| 06/30 | Paypal          Inst Xfer  Apple.Com Bill  Web ID: Paypalsi77 | -7.99 | 12,940.08 |
| 06/30 | Applecard Gsbank Payment    2523018      Web ID: 9999999999 | -1,121.00 | 11,819.08 |
| 06/30 | Paypal          Inst Xfer  Doordash Jambaj Web ID: Paypalsi77 | -19.31 | 11,799.77 |
| 06/30 | Zelle Payment To Marco 25313928185 | -1,800.00 | 9,999.77 |
| 06/30 | Zelle Payment To Rosario Sandoval Jpm99Be16Ghf | -3,200.00 | 6,799.77 |
| 06/30 | 06/30 Payment To Chase Card Ending IN 8129 | -200.00 | 6,599.77 |
| 07/01 | ODP Transfer From Savings ...3716 | **314.83** | 6,914.60 |
| 07/01 | Recurring Card Purchase 06/30 Kickresume Beckov Card 6892 Euro 16.00 X 1.178750 (Exchg Rte) | -18.86 | 6,895.74 |
| 07/01 | Amazon Corp      Syf Paymnt 604578164927565 Web ID: 9069872103 | -3,589.47 | 3,306.27 |
| 07/01 | Kinecta Fcu      Transfer          Web ID: 322278073 | -2,789.07 | 517.20 |
| 07/01 | Paypal          Inst Xfer  Doordash Vons  Web ID: Paypalsi77 | -17.53 | 499.67 |
| 07/01 | Affirm Inc      Affirm Pay 2575152      Web ID: 0000317218 | -499.67 | 0.00 |
| 07/02 | Cnb Credit Card  Payment    06502238      Web ID: 7951780067 | -250.00 | -250.00 |
| 07/03 | Online Transfer From  Sav ...3716 Transaction#: 24942710588 | **2,700.00** | 2,450.00 |
| 07/03 | Paypal          Inst Xfer  Instacart Costc Web ID: Paypalsi77 | -101.40 | 2,348.60 |
| 07/03 | Paypal          Inst Xfer  Instacart Costc Web ID: Paypalsi77 | -26.11 | 2,322.49 |
| 07/03 | Paypal          Inst Xfer  Netflix.Com    Web ID: Paypalsi77 | -24.99 | 2,297.50 |
| 07/07 | ODP Transfer From Savings ...3716 | **12.99** | 2,310.49 |



June 24, 2025 through July 22, 2025

Primary Account: **000000818985381**

## TRANSACTION DETAIL  *(continued)*

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| 07/07 | Remote Online Deposit          1 | **120.00** | 2,430.49 |
| 07/07 | Unitedhealthcare Premium    781482043821    Tel ID: 1836282001 | -544.24 | 1,886.25 |
| 07/07 | Unitedhcmedicare Medinspymt 000001321677779 Tel ID: 9000447048 | -115.40 | 1,770.85 |
| 07/07 | Zelle Payment To Ericpagelyahoo.Com Pagel Jpm99Bek5Ru3 | -1,041.67 | 729.18 |
| 07/07 | 07/04 Payment To Chase Card Ending IN 8129 | -300.00 | 429.18 |
| 07/07 | 07/06 Payment To Chase Card Ending IN 8129 | -100.00 | 329.18 |
| 07/07 | 07/06 Payment To Chase Card Ending IN 8129 | -190.00 | 139.18 |
| 07/07 | Affirm Inc      Affirm Pay 4428065      Web ID: 0000317218 | -275.48 | -136.30 |
| 07/07 | Affirm Inc      Affirm Pay 4780332      Web ID: 0000317218 | -80.07 | -216.37 |
| 07/07 | Bloomingdales   Auto Pymt  721716665280274 Web ID: Citiautfdr | -54.53 | -270.90 |
| 07/07 | Paypal          Inst Xfer  Instacart      Web ID: Paypalsi77 | -41.70 | -312.60 |
| 07/07 | Paypal          Inst Xfer  Instacart      Web ID: Paypalsi77 | -23.52 | -336.12 |
| 07/07 | Paypal          Inst Xfer  Adobe Inc Adobe Web ID: Paypalsi77 | -12.99 | -349.11 |
| 07/08 | Zelle Payment From Lance Betson Wfct0Yzvjr59 | **2,000.00** | 1,650.89 |
| 07/08 | 360 Sheffield Fi Trans Pmt        PPD ID: 1561771532 | -390.47 | 1,260.42 |
| 07/08 | Ebay Comwrxgt9B9 Payments   4Vbdfmirqgpom20 Web ID: 1395398000 | -191.25 | 1,069.17 |
| 07/08 | Griffin Ranch Ho L7709420        PPD ID: 1711041244 | -590.00 | 479.17 |
| 07/08 | Paypal          Inst Xfer  Flexjobs      Web ID: Paypalsi77 | -2.95 | 476.22 |
| 07/08 | Card Purchase With Pin  07/08 Homegoods 44439 Town C Palm Desert CA Card 6892 | -101.04 | 375.18 |
| 07/09 | Broadspire Svcs  Claimpmt   6710046536      CCD ID: B363917295 | **10,630.00** | 11,005.18 |
| 07/09 | Paypal          Inst Xfer  Google Google_Y Web ID: Paypalsi77 | -149.95 | 10,855.23 |
| 07/09 | Paypal          Inst Xfer  Instantink      Web ID: Paypalsi77 | -8.69 | 10,846.54 |
| 07/10 | Card Purchase          07/08 Hobby-Lobby #709 Rancho Mirage CA Card 6892 | -15.02 | 10,831.52 |
| 07/10 | Ally Home Loans  Loan Paymt 7123095684      Web ID: 9Drafting | -6,587.64 | 4,243.88 |
| 07/10 | Imp Irrig Dist   Power Bill        PPD ID: 9960038000 | -955.39 | 3,288.49 |
| 07/10 | Frontier Communi Bill Pay   21139369821      Tel ID: 7529252911 | -200.00 | 3,088.49 |
| 07/10 | Select Portfolio Sps      0031420235      Web ID: 1870465626 | -3,022.81 | 65.68 |
| 07/11 | Recurring Card Purchase 07/11 Hudforeclosed.Com 877-5038719 CA Card 6892 | -49.60 | 16.08 |
| 07/11 | Paypal          Inst Xfer  Apple.Com Bill  Web ID: Paypalsi77 | -106.98 | -90.90 |
| 07/11 | Paypal          Inst Xfer  Apple.Com Bill  Web ID: Paypalsi77 | -37.95 | -128.85 |
| 07/11 | Affirm Inc      Affirm Pay 6853746      Web ID: 0000317218 | -17.94 | -146.79 |
| 07/14 | Card Purchase Return    07/10 Hobby-Lobby #709 Rancho Mirage CA Card 6892 | **4.30** | -142.49 |
| 07/14 | Real Time Transfer Recd From Aba/Contr Bnk-072000326  From: Bnf-Amrock Ref: 746429 Info: Text-Rmtinf-Loan Proceeds Audrey Beth Little Iid: 20250714021000021P1Brjpc01440268995 Recd: 18:27:50 Trn: 1223962195Gc Bref: 2579A0A1-C0C6-4E23-Be12-8Cb259C708A | **85,790.31** | 85,647.82 |
| 07/14 | Zelle Payment From Rosalina Ramirez 25484359608 | **2,000.00** | 87,647.82 |
| 07/14 | Affirm Inc      Affirm Pay 7319217      Web ID: 0000317218 | -101.86 | 87,545.96 |
| 07/14 | Card Purchase          07/14 Sp+Aff * Snuggle ME O 855-423-3729 CA Card 6892 | -35.66 | 87,510.30 |
| 07/14 | Affirm Inc      Affirm Pay 7841309      Web ID: 0000317218 | -192.42 | 87,317.88 |
| 07/14 | Aqua Finance Inc Billpay        PPD ID: 1391615890 | -83.65 | 87,234.23 |
| 07/14 | Zelle Payment To Rosalina Ramirez 25483779585 | -2,685.00 | 84,549.23 |
| 07/14 | Zelle Payment To Rosario Sandoval Jpm99Bfqnm7U | -750.00 | 83,799.23 |
| 07/14 | Affirm Inc      Affirm Pay 7966272      Web ID: 0000317218 | -210.65 | 83,588.58 |
| 07/15 | Remote Online Deposit          1 | **1,690.41** | 85,278.99 |
| 07/15 | Manual CR-Bkrg | **8,000.00** | 93,278.99 |
| 07/15 | Online Transfer From Sav ...3716 Transaction#: 25494185710 | **4,000.00** | 97,278.99 |
| 07/15 | Zelle Payment From Rosalina Ramirez 25490370727 | **685.00** | 97,963.99 |



June 24, 2025 through July 22, 2025

Primary Account: **000000818985381**

## TRANSACTION DETAIL *(continued)*



| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| 07/15 | Card Purchase          07/15 Sp+Aff * Snuggle ME O 855-423-3729 CA Card 6892 | -71.33 | 97,892.66 |
| 07/15 | Card Purchase          07/15 Sq *Royal Deluxe Auto D Gosq.Com CA Card 6892 | -89.25 | 97,803.41 |
| 07/15 | 07/14 Payment To Chase Card Ending IN 8129 | -14,963.11 | 82,840.30 |
| 07/15 | 07/15 Online Transfer To Sav ...3716 Transaction#: 25486639462 | -4,000.00 | 78,840.30 |
| 07/15 | 07/15 Online Payment 25486728338 To Stewat And Lynda Resnick Rev Tru | -1,378.74 | 77,461.56 |
| 07/15 | Zelle Payment To Nora Arcos Jpm99Bfrrh43 | -3,310.00 | 74,151.56 |
| 07/15 | Zelle Payment To Rosario Sandoval Jpm99Bfrsls5 | -750.00 | 73,401.56 |
| 07/15 | 07/15 Manual Db-Bkrg | -8,000.00 | 65,401.56 |
| 07/15 | 07/15 Online Domestic Wire Transfer Via: Wells Fargo Bank, N.A./0407 A/C: Lance Betson Costa Mesa CA 92626 US Ssn: 00275334 Trn: 3141955196Es | -12,000.00 | 53,401.56 |
| 07/15 | Venmo          Payment    1043522256578   Web ID: 3264681992 | -2,200.00 | 51,201.56 |
| 07/15 | Socalgas        Paid Scgc  0561935550     Web ID: 6951240705 | -107.29 | 51,094.27 |
| 07/15 | American Express ACH Pmt    M8728          Web ID: 2005032111 | -16,870.54 | 34,223.73 |
| 07/15 | Venmo          Payment    1043522370163   Web ID: 3264681992 | -225.00 | 33,998.73 |
| 07/15 | Affirm Inc      Affirm Pay 8102802        Web ID: 0000317218 | -894.90 | 33,103.83 |
| 07/15 | Affirm Inc      Affirm Pay 8102822        Web ID: 0000317218 | -645.59 | 32,458.24 |
| 07/15 | Affirm Inc      Affirm Pay 8102827        Web ID: 0000317218 | -605.11 | 31,853.13 |
| 07/15 | Affirm Inc      Affirm Pay 8102804        Web ID: 0000317218 | -449.28 | 31,403.85 |
| 07/15 | Affirm Inc      Affirm Pay 8102824        Web ID: 0000317218 | -387.82 | 31,016.03 |
| 07/15 | Affirm Inc      Affirm Pay 8102807        Web ID: 0000317218 | -378.30 | 30,637.73 |
| 07/15 | Affirm Inc      Affirm Pay 8102806        Web ID: 0000317218 | -275.49 | 30,362.24 |
| 07/15 | Affirm Inc      Affirm Pay 8102800        Web ID: 0000317218 | -271.00 | 30,091.24 |
| 07/15 | Affirm Inc      Affirm Pay 8102809        Web ID: 0000317218 | -64.09 | 30,027.15 |
| 07/15 | 07/15 Online Domestic Wire Transfer Via: Sofi NA/031101334 A/C: Jake Little Redondo Beach CA 90278 US Imad: 0715Mmqfmp2K021299 Trn: 3459565196Es | -13,000.00 | 17,027.15 |
| 07/15 | Zelle Payment To Dennis Sparks Jpm99Bfualm1 | -125.00 | 16,902.15 |
| 07/15 | American Express ACH Pmt    W8970          Web ID: 2005032111 | -3,190.00 | 13,712.15 |
| 07/16 | Book Transfer Credit B/O: Rocket Close And Title, Inc Cerritos CA 90703-8573 US Org:/3138772152 Rocket Close, LLC Ref: Creditor Refund Audrey Beth Little 81439 Merv Griffin Way LA Quinta CA 92253 Trn: 7567700197Jo | **16,850.00** | 30,562.15 |
| 07/16 | Zelle Payment To Rosario Sandoval Jpm99Bfvubjl | -2,685.00 | 27,877.15 |
| 07/16 | Zelle Payment To Ericpagelyahoo.Com Pagel Jpm99Bfvzpu6 | -520.83 | 27,356.32 |
| 07/16 | Cnb Credit Card  Payment    06502238        Web ID: 7951780067 | -4,715.17 | 22,641.15 |
| 07/16 | Applecard Gsbank Payment    2523018         Web ID: 9999999999 | -882.53 | 21,758.62 |
| 07/16 | Paypal          Inst Xfer  Psmiley202461   Web ID: Paypalsi77 | -8.00 | 21,750.62 |
| 07/17 | Venmo          Cashout          PPD ID: 5264681992 | **31.25** | 21,781.87 |
| 07/17 | Card Purchase          07/15 Agia Insurance Trans 800-6691889 CA Card 6892 | -1,012.40 | 20,769.47 |
| 07/17 | Zelle Payment To Mike Nanko Jpm99Bfzrdrw | -5,000.00 | 15,769.47 |
| 07/17 | Comenity Pay II  Web Pymt   P25197456389375 Web ID: 1651180275 | -4,458.75 | 11,310.72 |
| 07/17 | Bloomingdales    Online Pmt 621750275276855 Web ID: Citictp | -922.69 | 10,388.03 |
| 07/17 | Kinecta Fcu        Transfer          Web ID: 322278073 | -843.00 | 9,545.03 |
| 07/17 | Paypal          Inst Xfer  Chewy Inc      Web ID: Paypalsi77 | -55.82 | 9,489.21 |
| 07/17 | Rocket Money      Premium    St-Y6O1K3N6D6S1 CCD ID: 4270465600 | -8.00 | 9,481.21 |
| 07/17 | ATM Withdrawal          07/17 78805 Highway 111 LA Quinta CA Card 6892 | -400.00 | 9,081.21 |
| 07/17 | Check            # 159 | -4,000.00 | 5,081.21 |
| 07/18 | Zelle Payment To Rosalina Ramirez 25519684113 | -125.00 | 4,956.21 |



June 24, 2025 through July 22, 2025
Primary Account: **000000818985381**

## TRANSACTION DETAIL  *(continued)*

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| 07/21 | Card Purchase          07/19 Sp Belle Fleur Home Bellefleurny. NY Card 6892 | -384.00 | 4,572.21 |
| 07/21 | Recurring Card Purchase 07/19 Hudforeclosed.Com 877-5038719 CA Card 6892 | -1.50 | 4,570.71 |
| 07/21 | Paypal          Inst Xfer  Resumeco          Web ID: Paypalsi77 | -27.88 | 4,542.83 |
| 07/21 | Card Purchase          07/21 Sp+Aff* Hamilton Jewel Affirm.Com CA Card 6892 | -28.75 | 4,514.08 |
| 07/21 | Paypal          Inst Xfer  Adobe Inc Adobe Web ID: Paypalsi77 | -4.99 | 4,509.09 |
| 07/21 | Paypal          Echeck     Mike          Web ID: Paypalec88 | -1,000.00 | 3,509.09 |
| 07/22 | Venmo          Cashout          PPD ID: 5264681992 | **600.00** | 4,109.09 |
| 07/22 | Card Purchase          07/22 Paypal *Bluemtn 888-254-1450 OH Card 6892 | -29.99 | 4,079.10 |
| 07/22 | Capital One          Mobile Pmt CA016Ae82C79046 Web ID: 9279744380 | -500.00 | 3,579.10 |
| 07/22 | Interest Payment | **0.05** | 3,579.15 |
| 07/22 | Monthly Service Fee | -25.00 | 3,554.15 |
| | **Ending Balance** | | **$3,554.15** |

## OVERDRAFT FEE SUMMARY

| | Total for This Period | Total Year-to-date |
|---|---|---|
| Total Overdraft Fees | $34.00 | $102.00 |

Did you know you can waive your Chase Sapphire Checking Monthly Service Fee by keeping an average daily balance of at least $75,000 in qualifying linked deposits and investments?

## CHASE PREMIER SAVINGS

AUDREY LITTLE                                      Account Number: 000003922213716

## SAVINGS SUMMARY

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$324.37** |
| Deposits and Additions | 7,170.70 |
| ATM Withdrawals | -460.00 |
| Electronic Withdrawals | -6,700.00 |
| Other Withdrawals | -327.82 |
| **Ending Balance** | **$7.25** |

| | |
|---|---|
| Annual Percentage Yield Earned This Period | 0.00% |
| Interest Paid Year-to-Date | $0.01 |

The monthly service fee for this account was waived as an added feature of a linked Chase Sapphire Checking account.



## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|-------:|--------:|
| | **Beginning Balance** | | **$324.37** |
| 07/01 | ODP Transfer To Checking  …5381 | -314.83 | 9.54 |
| 07/03 | SSA  Treas 310   Xxsoc Sec         PPD ID: 9031736026 | **3,170.70** | 3,180.24 |
| 07/03 | 07/03 Online Transfer To  Chk …5381 Transaction#: 24942710588 | -2,700.00 | 480.24 |
| 07/03 | ATM Withdrawal        07/03 78805 Highway 111 LA Quinta CA Card 6892 | -460.00 | 20.24 |
| 07/07 | ODP Transfer To Checking  …5381 | -12.99 | 7.25 |
| 07/15 | Online Transfer From Chk …5381 Transaction#: 25486639462 | **4,000.00** | 4,007.25 |
| 07/15 | 07/15 Online Transfer To Chk …5381 Transaction#: 25494185710 | -4,000.00 | 7.25 |
| | **Ending Balance** | | **$7.25** |

You earned a higher interest rate on your Chase Premier Savings account during this statement period because you had a qualifying Chase Sapphire Checking account.



**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

Call us at 1-866-564-2262 or write us at the address on the front of this statement immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

**For personal accounts only:** We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number;
- A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
- The amount of the suspected error.

We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will provide provisional credit to your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**For business accounts,** our practice is to follow the procedures described above as detailed in your Deposit Account Agreement or other applicable agreements, but we are not legally required to do so. For example, we require you to notify us no later than 30 days after we sent you the first statement on which the error appeared. We may require you to provide us with a written statement that the disputed transaction was unauthorized. We are also not required to give provisional credit.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC FUNDS TRANSFERS**: Contact us immediately if your statement is incorrect or if you need more information about any non-electronic funds transfers on this statement. For more details, see your Deposit Account Agreement or other applicable agreements that govern your account.

**JPMorgan Chase Bank, N.A. Member FDIC**

**CHASE ⬡**

This Page Intentionally Left Blank

## Advanced Search - Web

Search one or several fields at a time.

**Individual Names** should be entered **Last First MI** (i.e. Smith James M). For a broader search, use only a last name and

## Assessor-County Clerk-Recorder

Language          Home          cart

**Clerk Documents are indexed from Jan 1, 1893 through Nov 21, 2025**

**Recorder Documents are indexed from Jan 1, 1974 through Dec 31, 2025**

| Document Number | Recording Date Start | Recording Date End | Name |
|---|---|---|---|
| | 07/13/2025 | 07/16/2025 | oaktree |

Document Types

Use Advanced Name Searching
([What is this?](#))

| Recent searches | | Clear Selections | Search |
|---|---|---|---|

---

**Description (1)**

| |
|---|

**DEED OF T...    1**

☐ **Showing page 1 of 1 for 1 Total Results**

**Advanced Search - Web Recording Date is between Jul 13, 2025 and Jul 16, 2025 and Name contains oaktree**

Name (4)

LITTLE AU...    1

**Back**

MORTGAG...    1

OAKTREE F...    1

Apply Filter…

 **2025-0214839 · DEED OF TRUST**

| RecordingDate | Grantor (2) | Grantee (2) | # of Pages |
|---|---|---|---|
| **07/15/2025 08:20 AM** | **LITTLE AUDREY BETH** LITTLE JACOB | **OAKTREE FUNDING CORP** MORTGAGE EL | **21** |

© Copyright 2014-2024 Tyler Technologies | Version 2024.4.21

## EXHIBIT B-6

### Disbursement While Unsecured and Uninsured (Summary)

Prepared for Exhibit Binder        (added 02/22/2026)

---

**- Unsecured at disbursement:**

Funds were disbursed on 07/14/2025, but the Deed of Trust was recorded on 07/15/2025. Accordingly, the lien was not recorded/perfected at the time the note was funded.

**- Uninsured at disbursement:**

The lender's title policy language and Rocket's policy exhibit tie the effective date/coverage attachment to recording (and/or the later of policy date or recording). Because recording occurred after funding, coverage could not attach on 07/14/2025.

**- Stale title pipeline:**

The title/commitment materials include a facially stale preliminary title report dated 10/15/2024 and related stale commitments, showing a multi-month gap between title work and the 07/2025 funding/recording window.

**- Core exhibit support:**

B-1 (p.15), B-2 (p.17), B-5 (p.35), C-1 (p.48), C-4 (p.59), C-5 (p.60), and C-6 (p.83).

**- Relevance to pleading:**

Supports breach of conditions precedent / escrow instructions, rescission, and inducement/materiality allegations, including that the transaction was funded before required safeguards (recording + coverage attachment) were satisfied.

*See referenced exhibits for source documents and full context.*



# Title & Insurance Failure / Unjust Enrichment

Exhibit Section Divider

# EXHIBIT C-1

Preliminary Title Report - 10/15/2024 (Facially Stale)

*Prepared for Exhibit Binder - v2 (reordered/retabbed)*

74346744                                                                                    October 15, 2024

# Title Summary

Loan Number:           22025050036

81439 Merv Griffin Way

La Quinta, CA 92253-8084

Borrowers:             Audrey Beth Little
Underwriter:           Rocket Title Insurance Company

Audrey Beth Little, an unmarried woman

*Date of Current Vesting:*
By Deed dated May 12, 2021, Recorded June 18, 2021

Land Situated in the City of La Quinta in the County of Riverside in the State of CA
PARCEL 1: LOT 64 OF TRACT NO. 32879, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 399, PAGES 3 THROUGH 20, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, GEOTHERMAL STEAM AND ALL PRODUCTS DERIVED FROM ANY OF THE FOREGOING, THAT MAY BE WITHIN OR UNDER THE LAND, TOGETHER WITH THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND STORING IN AND REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THE LAND, OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LAND, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER AND BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS OR MINES WITHOUT, HOWEVER, THE RIGHT TO DRILL, MINE, STORE, EXPLORE OR OPERATE THROUGH THE SURFACE OR THE UPPER 500 FEET OF THE SUBSURFACE OF THE LAND.

RESERVING UNTO GRANTOR, ITS SUCCESSORS AND ASSIGNS, AND OTHERS, TOGETHER WITH THE RIGHT TO GRANT AND TRANSFER ALL OR A PORTION OF THE SAME, EXCEPT AS GRANTED HEREBY, EASEMENTS AND RIGHTS OF ACCESS, USE, ENJOYMENT, MAINTENANCE, REPAIRS, DRAINAGE AND FOR OTHER PURPOSES, ALL AS RESERVED TO GRANTOR AS DECLARANT AND OWNER IN THE DECLARATION.

PARCEL 2: EASEMENTS AND RIGHTS OF OWNERS AS SET FORTH IN THAT CERTAIN "AMENDED AND RESTATED DECLARATION OF RESTRICTIONS FOR GRIFFIN RANCH" RECORDED ON JANUARY 8, 2013 AS INSTRUMENT NO. 2013-0009750, RE-RECORDED ON JUNE 18, 2013 AS INSTRUMENT NO. 2013-0288996 (COLLECTIVELY "DECLARATION"), AND AS SET FORTH IN THAT CERTAIN "SUPPLEMENTAL DECLARATION AND NOTICE OF ANNEXATION," RECORDED ON SEPTEMBER 4, 2020, AS INSTRUMENT NO. 2020-0418197, OF OFFICIAL RECORDS, AND ANY AMENDMENTS THERETO ("DECLARATION OF ANNEXATION") OF OFFICIAL RECORDS, AND ANY AMENDMENTS THERETO, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY.

PARCEL 3: A NONEXCLUSIVE EASEMENT APPURTENANT TO THE PROPERTY FOR INGRESS, EGRESS AND ACCESS ON, OVER, AND ACROSS THE PRIVATE STREETS IN GRIFFIN RANCH, AS MORE PARTICULARLY SET FORTH IN THAT CERTAIN "DECLARATION ESTABLISHING ACCESS EASEMENT RIGHTS" RECORDED ON OCTOBER 10, 2007 AS INSTRUMENT NO. 2007-0628725 IN THE OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, AS SAME MAY BE RE-RECORDED, RESTATED AND/OR AMENDED FROM TIME TO TIME (THE "ACCESS DECLARATION").

Tax ID Numbers(s): 780-120-055

1.  A Deed of Trust to Secure an Indebtedness of $1,384,896.00, and any other amounts as therein provided, recorded October 27, 2021, as Instrument/Case No. 2021-0634801, of Official Records.
    Dated Date:            October 19, 2021

    Trustor:              Audrey Beth Little, an unmarried woman

    Trustee:              Title365 Company

    Beneficiary:          Mortgage Electronic Registration Systems, Inc., as nominee for Ally Bank

    Loan No:

    Additional Information:

    Re-recorded July 27, 2022 in Instrument/Case No. 2022-0334595.

2.  A Deed of Trust to Secure an Indebtedness of $357,500.00, and any other amounts as therein provided, recorded October 18, 2022, as Instrument/Case No. 2022-0432861, of Official Records.
    Dated Date:            October 4, 2022

    Trustor:              Audrey Beth Little, an unmarried woman

**Order Number:**    74346744
**Production Date:**    October 15, 2024

## CONVEYANCE SEARCH

Effective Date:  May 8, 2025 at 8:00 a.m.

From examination of the records in the Register of Deeds Office, Riverside County, CA, for property described as follows, to wit:

Land situated  in the City of La Quinta in the County of Riverside in the State of CA

(See Attached Exhibit A - Legal Description)

Commonly known as: 81439 Merv Griffin Way, La Quinta, CA 92253-8084

780-120-055

24 months prior to May 8, 2025, we find there are no conveyances affecting subject property except the following:

1 By Deed  from Lennar Homes of California, Inc., a California Corporation to Audrey Beth Little, an unmarried woman dated May 12, 2021 and recorded June 12, 2021, Instrument/Case No. 2021-0369122

This report contains information from public land records available in the county indicated above for whose accuracy and completeness we assume no responsibility. This report is released with the understanding that it is strictly confidential and only to be used by the party requesting it. This report is not to be construed as an opinion of title or as a commitment for title insurance. For matters of a legal nature, we suggest you contact your attorney. The liability of Rocket Close and Title, Inc is limited to the amount paid for this report. Rocket Close and Title, Inc assumes no liability, financial or otherwise, in association with the information in this report.

74346744                                                                October 15, 2024

| | |
|---|---|
| Trustee: | First American Title Company |
| Beneficiary: | Kinecta Federal Credit Union, a Federal Credit Union |
| Loan No: | 7000034807 |

3.  A Deed of Trust to Secure an Indebtedness of $125,000.00, and any other amounts as therein provided, recorded December 7, 2022, as Instrument/Case No. 2022-0494846, of Official Records.

| | |
|---|---|
| Dated Date: | November 30, 2022 |
| Trustor: | Audrey Beth Little, an unmarried woman |
| Trustee: | Fidelity National Title Company, a California corporation |
| Beneficiary: | Pagel Management LLC |
| Loan No: | |

4.  Record mortgage/deed of trust to be insured from Audrey Beth Little, an unmarried woman  .

Please prepare your final loan documents as follows:

Audrey Beth Little

***If documents are not drawn exactly as stated above, a delay in closing your loan could occur***

# EXHIBIT C-2

Title / Lien Visibility as of Recording (shows senior liens)

*Prepared for Exhibit Binder - v2 (reordered/retabbed)*

*Note: Underlying vendor report contains an internal heading 'EXHIBIT F'; it is filed in this binder as Exhibit C-2.*

# EXHIBIT F – Title / Lien Visibility as of 7/15/2025

Property/title report showing lien history and senior liens visible at time of Oaktree recording.





## Property Details Report

**Subject Property Location**

Report Date: 12/03/2025
Order ID: R202972322

| | | | |
|---|---|---|---|
| **Property Address** | 81439 MERV GRIFFIN WAY | | |
| **City, State & Zip** | LA QUINTA, CA 92253-8084 | | |
| **County** | RIVERSIDE COUNTY | **Property Use** | Single Family Residential |
| **Mailing Address** | 81439 MERV GRIFFIN WAY, LA QUINTA, CA 92253-8084 | **Parcel Number** | 780-120-055 |
| **Census Tract** | 0456.14 | **Latitude** | 33.651522 |
| **Thomas Bros Pg-Grid** | | **Longitude** | -116.242809 |

**Legal Description Details**  Lot Number: 64 Tract No: 32879 Brief Description: .52 ACRES IN LOT 64 MB 399/003 TR 32879

### Current Ownership Information    *Source of Ownership data: Recorder Information*

| | | | |
|---|---|---|---|
| | | **Sale Price** | |
| **Primary Owner Name(s)** | LITTLE, AUDREY BETH; LITTLE, JACOB | **Transfer Date** | 07/09/2025 |
| | | **Recording Date** | 07/15/2025 |
| | | **Recorder Doc #** | 2025-0214838 |
| **Vesting** | Joint Tenants with Right of Survivorship | **Book/Page** | |

### Latest Full Sale Information

| | | | |
|---|---|---|---|
| | | **Sale Price** | $1,731,500 |
| **Primary Owner Name(s)** | LITTLE, AUDREY BETH | **Sale Date** | 05/12/2021 |
| | | **Recording Date** | 06/18/2021 |
| | | **Recorder Doc #** | 2021-0369122 |
| **Vesting** | | **Book/Page** | |

**Financing Details at Time of Purchase**

| | | | | |
|---|---|---|---|---|
| 1 | **Loan Amount** | $1,384,896 | **Origination Lender Name** | 5TH STREET CAPITAL INC |
| | **Loan Type** | Conventional | **Recording Doc #** | 2021-0369123 |

### Property Characteristics

| | | | | | |
|---|---|---|---|---|---|
| **Bedrooms** | 4 | **Year Built** | 2020 | **Living Area (SF)** | 4,821 |
| **Bathrooms/Partial** | 3.75 | **Garage Type/Parking Spaces** | Attached Garage/2 | **Price ($/SF)** | $359/SF |
| **Total Rooms** | | **Stories/Floors** | 1 Story | **Lot Size (SF/AC)** | 22,651/.52 |
| **Construction Type** | Wood | **Units** | | **Fireplace** | 1 Fireplace |
| **Exterior Walls** | | **Buildings** | | **Pool** | Pool (yes) - P |
| **Roof Material/Type** | Tile | **Basement Type/Area** | | **Heat Type** | Central |
| **Foundation Type** | | **Style** | | **A/C** | Central |
| **Property Type** | Residential | **View** | | **Elevator** | |
| **Land Use** | Single Family Residential | | | **Zoning** | |

### Assessment & Taxes

| | | | | | |
|---|---|---|---|---|---|
| **Assessment Year** | 2025 | **Tax Year** | 2025 | **Tax Exemption** | California State Homeowner's Exemption |
| **Total Assessed Value** | $1,577,004 | **Tax Amount** | $20,740.76 | **Tax Rate Area** | 20-171 |
| **Land Value** | $394,251 | **Tax Account ID** | 780120055 | | |
| **Improvement Value** | $1,182,753 | **Tax Status** | No Delinquency Found | | |
| **Improvement Ratio** | 75% | **Delinquent Tax Year** | | | |
| **Total Value** | | | | **Market Improvement Value** | |
| **Market Land Value** | | | | **Market Value Year** | |

### Lien History

| Trans. ID | Recording Date | Lender | Amount | Purchase Money |
|---|---|---|---|---|
| 1 | 07/15/2025 | OAKTREE FUNDING CORP | $716,580 | NO |
| 2 | 12/06/2024 | STEWART AND LYNDA RESNICK REVOCABLE TRUS | $393,000 | NO |
| 3 | 12/07/2022 | PAGEL MANAGEMENT LLC | $125,000 | NO |
| 4 | 10/18/2022 | KINECTA FCU | $357,500 | NO |
| 5 | 07/27/2022 | ALLY BANK | $1,384,896 | NO |

## Lien History (cont.)

| Trans. ID | Recording Date | Lender | Amount | Purchase Money |
|---|---|---|---|---|
| 6 | 07/21/2022 | US BANK NA | $278,000 | NO |
| 7 | 04/04/2022 | PAGEL MANAGEMENT LLC | $257,500 | NO |
| 8 | 10/27/2021 | ALLY BANK | $1,384,896 | NO |
| 9 | 06/18/2021 | 5TH STREET CAPITAL INC | $1,384,896 | YES |

## Loan Officer Insights

| Trans.ID | | | |
|---|---|---|---|
| 8 | Loan Officer | CHARLES FRANCO | NMLS#248801 |
| | Broker | | NMLS# |
| | Loan Company | KINECTA FEDERAL CREDIT UNION | NMLS#407870 |
| 9 | Loan Officer | NICHOLAS HOWIE | NMLS#1922562 |
| | Broker | BETTER MORTGAGE CORPORATION | NMLS#330511 |
| | Loan Company | | NMLS# |
| 13 | Loan Officer | NICHOLAS HOWIE | NMLS#1922562 |
| | Broker | | NMLS# |
| | Loan Company | ALLY BANK | NMLS#181005 |
| 14 | Loan Officer | ROBERT FORBES PAINTER | NMLS#272709 |
| | Broker | BROKER SOLUTIONS INC | NMLS#6606 |
| | Loan Company | 5TH STREET CAPITAL INC | NMLS#1436495 |

# EXHIBIT C-3

Proof of Title Insurance Premium Paid

Adaxa, LLC
6930 E Chauncey Ln Ste 210
Phoenix, AZ 85054

Phone Number: (402) 525-3079

## MORTGAGE INVOICE

Date:           7/1/2025

Client Name:    Oaktree Funding Corporation          Order Number:     74346744

Loan Number: 22025050036                             Property Address: 81439 Merv Griffin Way
                                                                       La Quinta, CA 92253-8084
Loan Amount:  $750,000.00

Total Premium Due:        $575.00

**Additional Charges and Available Endorsements:**

Insured Closing Protection Letter                 $0.00
ALTA 8.1 Environmental Protection Lien            $0.00
ALTA 5 Planned Unit Development                   $0.00
ALTA 9 Restrictions, Encroachments, Minerals      $0.00

Underwriter portion of premium:  $57.50 , Agent portion of premium:  $517.50

Issued By:  Rocket Close and Title, Inc                Agent for:  Rocket Title Insurance Company
            17785 Center Court Dr. N., Suite 760
            Cerritos, CA 90703                         Countersigned By: Rocket Close and Title, Inc
            Phone: (866) 948-7627
            Fax: (877) 380-4101
            Email: clientrelations@rocketclose.com
            Website: www.rocketclose.com

                                                       Nicole Beattie, Agent

ALTA COMMITMENT - Mortgage Invoice

## Closing Cost Details

## Loan Costs

| | | Borrower-Paid | | Paid by Others |
|---|---|---|---|---|
| | | At Closing | Before Closing | |
| **A. Origination Charges** | | **$15,221.60** | | |
| 01 % of Loan Amount (Points) | | | | |
| 02 Document Prep Fee | | $195.00 | | |
| 03 Originator Compensation to Adaxa, LLC | | $14,331.60 | | |
| 04 Underwriting Fee | | $695.00 | | |
| 05 | | | | |
| 06 | | | | |
| 07 | | | | |
| 08 | | | | |
| **B. Services Borrower Did Not Shop For** | | **$1,020.00** | | |
| 01 Appraisal Fees | to Ame Direct Corporation | $900.00 | | |
| 02 Appraisal Review Fee | to Clear Capital | $120.00 | | |
| 03 | | | | |
| 04 | | | | |
| 05 | | | | |
| 06 | | | | |
| 07 | | | | |
| 08 | | | | |
| 09 | | | | |
| 10 | | | | |
| **C. Services Borrower Did Shop For** | | **$1,295.00** | | |
| 01 Deed Prep Fee | to Rr Michigan, LLC | $95.00 | | |
| 02 Title - Lender's Title Insurance | to Amrock Title California Inc | $575.00 | | |
| 03 Title - Notary Fees | to Amrock Title California Inc | $125.00 | | |
| 04 Title - Settlement Fee | to Amrock Title California Inc | $475.00 | | |
| 05 Title - Tax Certificate Fee | to Amrock Title California Inc | $25.00 | | |
| 06 | | | | |
| 07 | | | | |
| 08 | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | | **$17,536.60** | | |
| Loan Costs Subtotals (A+ B + C) | | $17,536.60 | | |

## Other Costs

| | | Borrower-Paid | | Paid by Others |
|---|---|---|---|---|
| **E. Taxes and Other Government Fees** | | **$256.00** | | |
| 01 Recording Fees     Deed:     Mortgage: $256.00 | | $256.00 | | |
| 02 | | | | |
| **F. Prepaids** | | **$3,448.54** | | |
| 01 Homeowner's Insurance Premium ( mo.) | | | | |
| 02 Mortgage Insurance Premium ( mo.) | | | | |
| 03 Prepaid Interest ($191.59 per day from 7/14/25 to 8/1/25) | | $3,448.54 | | |
| 04 Property Taxes ( mo.) | | | | |
| 05 | | | | |
| **G. Initial Escrow Payment at Closing** | | | | |
| 01 Homeowner's Insurance    per month for  mo. | | | | |
| 02 Mortgage Insurance    per month for  mo. | | | | |
| 03 Property Taxes    per month for  mo. | | | | |
| 04 | | | | |
| 05 | | | | |
| 06 | | | | |
| 07 | | | | |
| 08 Aggregate Adjustment | | | | |
| **H. Other** | | | | |
| 01 | | | | |
| 02 | | | | |
| 03 | | | | |
| 04 | | | | |
| 05 | | | | |
| 06 | | | | |
| 07 | | | | |
| 08 | | | | |
| **I. TOTAL OTHER COSTS (Borrower-Paid)** | | **$3,704.54** | | |
| Other Costs Subtotals (E + F + G + H) | | $3,704.54 | | |
| **J. TOTAL CLOSING COSTS (Borrower-Paid)** | | **$12,249** | | |
| Closing Costs Subtotals (D + I) | | $21,241.14 | | |
| Lender Credits (Includes $51.40 credit for increase in Closing Costs above legal limit) | | -$9,008.65 | | |





DocMagic

# EXHIBIT C-4

Lender's Title Insurance Policy (effective-date language; incorporated terms)

# EXHIBIT C-5

Rocket Exhibit D — Title Policy (Effective Date / Schedule B)

## FINAL POLICY

**Order Number:** 74346744

**Loan Number:** 22025050036

**Property Address:** 81439 Merv Griffin Way

La Quinta, CA 92253 8084

## PLEASE DELIVER TO:

Adaxa, LLC
6930 E Chauncey Ln Ste 210
Phoenix, AZ 85054

ATTN: FINAL DOCS

---

**Issued By:**

Rocket Close and Title, Inc
17785 Center Court Dr. N., Suite 760
Cerritos, CA 90703
Phone: (866) 948-7627
Fax: (877) 380-4101

Agent for:

*Rocket Title Insurance Company*

**⭘ Rocket Title Insurance Company**

**ALTA SHORT FORM RESIDENTIAL LOAN POLICY—**
**ASSESSMENTS PRIORITY ONE-TO-FOUR FAMILY**
**issued by**
**ROCKET TITLE INSURANCE COMPANY**

**Transaction Identification Data, for which the Company assumes no liability as set forth in Condition 9.e.:**

Issuing Agent: Rocket Close and Title, Inc

Issuing Office: 17785 Center Court Dr. N., Suite 760, Cerritos, CA 90703

Issuing Office's ALTA® Registry ID: 1066048

Loan ID Number: 22025050036

Issuing Office File Number: 74346744

Property Address: 81439 Merv Griffin Way, La Quinta, CA 92253 8084

# SCHEDULE A

Name and Address of Title Insurance Company:   Rocket Title Insurance Company
5910 No. Central Expressway, Suite 1445, Dallas, TX 75206

Policy Number:  RTLSCA-104615

Amount of Insurance:  $716,580.00         Premium:  $575.00

Mortgage Amount:   $716,580.00       Mortgage Date:  7/9/2025

Date of Policy:  07/09/2025
or the date of recording of the insured
mortgage, whichever is later

Property Address:   81439 Merv Griffin Way, La Quinta, CA 92253 8084

County and State:   Riverside, CA

1. Name of Insured:        Oaktree Funding Corporation its successors and/or assigns

2. Name of Borrower(s):   Audrey Beth Little, an unmarried person and Jacob Little, a single man, Joint Tenants with Rights of Survivorship

3. The estate or interest in the Land identified in this Schedule A and which is encumbered by the Insured Mortgage is Fee Simple and is, at the Date of Policy, vested in the Borrower(s) identified in the Insured Mortgage and named above.

4. The Land referred to in this policy is described as set forth in the Insured Mortgage.

5. This policy consists of 6 page(s), unless an addendum is attached and indicated below:

   ☒    Addendum attached

6. This policy incorporates by reference the endorsements selected below, if any, adopted by the American Land Title Association as of the Date of Policy:

   ☐      ALTA 4 Condominium—Assessments Priority endorsement
   ☒      ALTA 5 Planned Unit Development—Assessments Priority endorsement
   ☐      ALTA 6 Variable Rate Mortgage endorsement, if the Insured Mortgage contains provisions which provide for an adjustable interest rate

Copyright 2021 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Form Name: 9913012412                                    Page 1 of 6



**Rocket Title Insurance Company**

## SCHEDULE B

## EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

Except to the extent set forth below, this policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses arising by reason of:

1.      Those taxes and assessments that become due or payable subsequent to the Date of Policy. Exception 1 does not modify or limit the coverage provided in Covered Risk 11.b.

2.      Covenants, conditions, restrictions, or limitations, if any, appearing in the Public Records; however, this policy insures against loss or damage arising from:
   a.      the violation of those covenants, conditions, restrictions, or limitations on or prior to the Date of Policy;
   b.      a forfeiture or reversion of Title from a future violation of those covenants, conditions, restrictions, or limitations, including those relating to environmental protection; and
   c.      provisions in those covenants, conditions, restrictions, or limitations, including those relating to environmental protection, under which the lien of the Insured Mortgage can be invalidated, subordinated, or impaired.
   As used in Exception 2.a., the words "covenants, conditions, restrictions, or limitations" do not refer to or include any covenant, condition, restriction, or limitation (i) relating to obligations of any type to perform maintenance, repair, or remediation on the Land; or (ii) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances, except to the extent that an Enforcement Notice as of the Date of Policy identifies a violation or alleged violation affecting the Land and is not referenced in an Addendum attached to this policy.

3.      Any easements or servitudes appearing in the Public Records; however, this policy insures against loss or damage arising from:
   a.      the encroachment, at the Date of Policy, of the improvements on any easement; and
   b.      any interference with or damage to existing improvements, including lawns, shrubbery, and trees, resulting from the use of the easements for the purposes granted or reserved.

4.      Any lease, grant, exception, or reservation of minerals or mineral rights or other subsurface substances appearing in the Public Records; however, this policy insures against loss or damage arising from:
   a.      any effect on or impairment of the use of the Land for one-to-four family residential purposes by reason of such lease, grant, exception, or reservation of minerals or mineral rights or other subsurface substances; and
   b.      any damage to existing improvements, including lawns, shrubbery, and trees, resulting from the future exercise of any right to use the surface of the Land for the extraction or development of the minerals or mineral rights or other subsurface substances so leased, granted, excepted, or reserved.
   Nothing herein insures against loss or damage resulting from contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

NOTICES, WHERE SENT: Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at: 5910 North Central Expressway, Suite 1445, Dallas, TX 75206.

Copyright 2021 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Form Name: 9913012412                                    Page 3 of 6



**Rocket Title Insurance Company**

**ADDENDUM**
**ALTA SHORT FORM RESIDENTIAL LOAN POLICY**
**ASSESSMENTS PRIORITY ONE-TO-FOUR FAMILY**

Addendum to Policy Number: **RTLSCA-104615**                              File Number: **74346744**

**SCHEDULE B**
(Continued)

In addition to the matters set forth in Schedule B of the policy to which this Addendum is attached, this policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of the following:

Oil, gas, or other mineral interests and all rights incident thereto now or previously conveyed, transferred, leased, excepted or reserved.

Assessments, if any, for Community Facility Districts affecting said land which may exist by virtue of assessment maps or notices filed by said Districts.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Form Name: 9913012412                              Page 4 of 6



**EXHIBIT A - LEGAL DESCRIPTION**

**Policy Number:**    RTLSCA-104615                    **Order Number:**    74346744
**Loan Number:**     22025050036

Tax Id Number(s): 780-120-055

Land Situated  in the City of La Quinta in the County of Riverside in the State of CA
PARCEL 1: LOT 64 OF TRACT NO. 32879, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 399, PAGES 3 THROUGH 20, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, GEOTHERMAL STEAM AND ALL PRODUCTS DERIVED FROM ANY OF THE FOREGOING, THAT MAY BE WITHIN OR UNDER THE LAND, TOGETHER WITH THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND STORING IN AND REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THE LAND, OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LAND, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER AND BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS OR MINES WITHOUT, HOWEVER, THE RIGHT TO DRILL, MINE, STORE, EXPLORE OR OPERATE THROUGH THE SURFACE OR THE UPPER 500 FEET OF THE SUBSURFACE OF THE LAND.

RESERVING UNTO GRANTOR, ITS SUCCESSORS AND ASSIGNS, AND OTHERS, TOGETHER WITH THE RIGHT TO GRANT AND TRANSFER ALL OR A PORTION OF THE SAME, EXCEPT AS GRANTED HEREBY, EASEMENTS AND RIGHTS OF ACCESS, USE, ENJOYMENT, MAINTENANCE, REPAIRS, DRAINAGE AND FOR OTHER PURPOSES, ALL AS RESERVED TO GRANTOR AS DECLARANT AND OWNER IN THE DECLARATION.

PARCEL 2: EASEMENTS AND RIGHTS OF OWNERS AS SET FORTH IN THAT CERTAIN "AMENDED AND RESTATED DECLARATION OF RESTRICTIONS FOR GRIFFIN RANCH" RECORDED ON JANUARY 8, 2013 AS INSTRUMENT NO. 2013-0009750, RE-RECORDED ON JUNE 18, 2013 AS INSTRUMENT NO. 2013-0288996 (COLLECTIVELY "DECLARATION"), AND AS SET FORTH IN THAT CERTAIN "SUPPLEMENTAL

Rocket Title Insurance Company

DECLARATION AND NOTICE OF ANNEXATION," RECORDED ON SEPTEMBER 4, 2020, AS INSTRUMENT NO. 2020-0418197, OF OFFICIAL RECORDS, AND ANY AMENDMENTS THERETO ("DECLARATION OF ANNEXATION") OF OFFICIAL RECORDS, AND ANY AMENDMENTS THERETO, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY.

PARCEL 3: A NONEXCLUSIVE EASEMENT APPURTENANT TO THE PROPERTY FOR INGRESS, EGRESS AND ACCESS ON, OVER, AND ACROSS THE PRIVATE STREETS IN GRIFFIN RANCH, AS MORE PARTICULARLY SET FORTH IN THAT CERTAIN "DECLARATION ESTABLISHING ACCESS EASEMENT RIGHTS" RECORDED ON OCTOBER 10, 2007 AS INSTRUMENT NO. 2007-0628725 IN THE OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, AS SAME MAY BE RE-RECORDED, RESTATED AND/OR AMENDED FROM TIME TO TIME (THE "ACCESS DECLARATION").

Commonly known as: 81439 Merv Griffin Way, La Quinta, CA, 92253 8084

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**Rocket Title Insurance Company**

**ALTA SHORT FORM RESIDENTIAL LOAN POLICY—
ASSESSMENTS PRIORITY ONE-TO-FOUR FAMILY
issued by
ROCKET TITLE INSURANCE COMPANY**

**Transaction Identification Data, for which the Company assumes no liability as set forth in Condition 9.e.:**

Issuing Agent: Rocket Close and Title, Inc

Issuing Office: 17785 Center Court Dr. N., Suite 760, Cerritos, CA 90703

Issuing Office's ALTA® Registry ID: 1066048

Loan ID Number: 22025050036

Issuing Office File Number: 74346744

Property Address: 81439 Merv Griffin Way, La Quinta, CA 92253 8084

# SCHEDULE A

Name and Address of Title Insurance Company:    Rocket Title Insurance Company
5910 No. Central Expressway, Suite 1445, Dallas, TX 75206

Policy Number:  RTLSCA-104615

Amount of Insurance:  $716,580.00          Premium:  $575.00

Mortgage Amount:  $716,580.00          Mortgage Date:  7/9/2025

Date of Policy:  07/09/2025
                 or the date of recording of the insured
                 mortgage, whichever is later

Property Address:    81439 Merv Griffin Way, La Quinta, CA 92253 8084

County and State:    Riverside, CA

1.  Name of Insured:        Oaktree Funding Corporation its successors and/or assigns

2.  Name of Borrower(s):    Audrey Beth Little, an unmarried person and Jacob Little, a single man, Joint Tenants with Rights of Survivorship

3.  The estate or interest in the Land identified in this Schedule A and which is encumbered by the Insured Mortgage is Fee Simple and is, at the Date of Policy, vested in the Borrower(s) identified in the Insured Mortgage and named above.

4.  The Land referred to in this policy is described as set forth in the Insured Mortgage.

5.  This policy consists of 6 page(s), unless an addendum is attached and indicated below:

☒    Addendum attached

6.  This policy incorporates by reference the endorsements selected below, if any, adopted by the American Land Title Association as of the Date of Policy:

☐    ALTA 4 Condominium—Assessments Priority endorsement
☒    ALTA 5 Planned Unit Development—Assessments Priority endorsement
☐    ALTA 6 Variable Rate Mortgage endorsement, if the Insured Mortgage contains provisions which provide for an adjustable interest rate

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Form Name: 9913012412                      Page 1 of 6



**Rocket Title Insurance Company**

☐ ALTA 6.2 Variable Rate Mortgage—Negative Amortization endorsement, if the Insured Mortgage contains provisions which provide for both an adjustable interest rate and negative amortization

☐ ALTA 7 Manufactured Housing Unit endorsement, if a manufactured housing unit is located on the Land at the Date of Policy

☐ ALTA 7.1 Manufactured Housing—Conversion—Loan Policy endorsement

☒ ALTA 8.1 Environmental Protection Lien endorsement—Paragraph b refers to the following State statute(s):

☒ ALTA 9 Restrictions, Encroachments, Minerals—Loan Policy endorsement

☐ ALTA 9.6 Private Rights—Loan Policy endorsement

☐ ALTA 14 Future Advance—Priority endorsement

☐ ALTA 14.1 Future Advance—Knowledge endorsement

☐ ALTA 14.3 Future Advance—Reverse Mortgage endorsement

☐ ALTA 22 Location endorsement, if the type of improvement is a one-to-four family residential structure and the Property Address is as shown above

☐ ALTA 30 Shared Appreciation Mortgage endorsement

SUBJECT TO THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B BELOW, AND ANY ADDENDUM ATTACHED HERETO, ROCKET TITLE INSURANCE COMPANY, A TEXAS CORPORATION, (THE "COMPANY"), HEREBY INSURES THE INSURED IN ACCORDANCE WITH AND SUBJECT TO THE TERMS, EXCLUSIONS, AND CONDITIONS SET FORTH IN THE AMERICAN LAND TITLE ASSOCIATION (ALTA) LOAN POLICY (07-01-2021), ALL OF WHICH ARE INCORPORATED HEREIN. ALL REFERENCES TO SCHEDULES A AND B REFER TO SCHEDULES A AND B OF THIS POLICY.

Countersigned by:

ROCKET TITLE INSURANCE COMPANY

By:

_____
Authorized Signatory

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Form Name: 9913012412                                    Page 2 of 6

Rocket Title Insurance Company

## SCHEDULE B

## EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

Except to the extent set forth below, this policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses arising by reason of:

1.      Those taxes and assessments that become due or payable subsequent to the Date of Policy. Exception 1 does not modify or limit the coverage provided in Covered Risk 11.b.

2.      Covenants, conditions, restrictions, or limitations, if any, appearing in the Public Records; however, this policy insures against loss or damage arising from:
   a.      the violation of those covenants, conditions, restrictions, or limitations on or prior to the Date of Policy;
   b.      a forfeiture or reversion of Title from a future violation of those covenants, conditions, restrictions, or limitations, including those relating to environmental protection; and
   c.      provisions in those covenants, conditions, restrictions, or limitations, including those relating to environmental protection, under which the lien of the Insured Mortgage can be invalidated, subordinated, or impaired.
   As used in Exception 2.a., the words "covenants, conditions, restrictions, or limitations" do not refer to or include any covenant, condition, restriction, or limitation (i) relating to obligations of any type to perform maintenance, repair, or remediation on the Land; or (ii) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances, except to the extent that an Enforcement Notice as of the Date of Policy identifies a violation or alleged violation affecting the Land and is not referenced in an Addendum attached to this policy.

3.      Any easements or servitudes appearing in the Public Records; however, this policy insures against loss or damage arising from:
   a.      the encroachment, at the Date of Policy, of the improvements on any easement; and
   b.      any interference with or damage to existing improvements, including lawns, shrubbery, and trees, resulting from the use of the easements for the purposes granted or reserved.

4.      Any lease, grant, exception, or reservation of minerals or mineral rights or other subsurface substances appearing in the Public Records; however, this policy insures against loss or damage arising from:
   a.      any effect on or impairment of the use of the Land for one-to-four family residential purposes by reason of such lease, grant, exception, or reservation of minerals or mineral rights or other subsurface substances; and
   b.      any damage to existing improvements, including lawns, shrubbery, and trees, resulting from the future exercise of any right to use the surface of the Land for the extraction or development of the minerals or mineral rights or other subsurface substances so leased, granted, excepted, or reserved.
   Nothing herein insures against loss or damage resulting from contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

NOTICES, WHERE SENT: Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at: 5910 North Central Expressway, Suite 1445, Dallas, TX 75206.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Form Name: 9913012412                                    Page 3 of 6



**Rocket Title Insurance Company**

**ADDENDUM
ALTA SHORT FORM RESIDENTIAL LOAN POLICY
ASSESSMENTS PRIORITY ONE-TO-FOUR FAMILY**

Addendum to Policy Number:  **RTLSCA-104615**                    File Number:  **74346744**

**SCHEDULE B**
(Continued)

In addition to the matters set forth in Schedule B of the policy to which this Addendum is attached, this policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of the following:

Oil, gas, or other mineral interests and all rights incident thereto now or previously conveyed, transferred, leased, excepted or reserved.

Assessments, if any, for Community Facility Districts affecting said land which may exist by virtue of assessment maps or notices filed by said Districts.

The terms, conditions, and obligations contained in the Deed of Trust in the original amount of $1,384,896.00, executed by Audrey Beth Little, an unmarried woman to Mortgage Electronic Registration Systems, Inc. as nominee for Ally Bank, dated October 19, 2021 and recorded October 27, 2021 in Instrument/Case No. 20210634801 MIN: 100572615853071984. Corrective Affidavit correcting loan originator, recorded July 27, 2022 in Instrument Number 2022-0334595.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Form Name: 9913012412



**EXHIBIT A - LEGAL DESCRIPTION**

**Policy Number:**   **RTLSCA-104615**                                    **Order Number:**   **74346744**
**Loan Number:**     **22025050036**

Tax Id Number(s): 780-120-055

Land Situated  in the City of La Quinta in the County of Riverside in the State of CA
PARCEL 1: LOT 64 OF TRACT NO. 32879, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 399, PAGES 3 THROUGH 20, INCLUSIVE OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS RIGHTS AND
OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, GEOTHERMAL STEAM AND ALL PRODUCTS
DERIVED FROM ANY OF THE FOREGOING, THAT MAY BE WITHIN OR UNDER THE LAND, TOGETHER WITH
THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND STORING
IN AND REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO
WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THE LAND, OIL OR GAS
WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LAND, AND TO
BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER
AND BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP,
MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS OR MINES WITHOUT, HOWEVER, THE
RIGHT TO DRILL, MINE, STORE, EXPLORE OR OPERATE THROUGH THE SURFACE OR THE UPPER 500 FEET
OF THE SUBSURFACE OF THE LAND.

RESERVING UNTO GRANTOR, ITS SUCCESSORS AND ASSIGNS, AND OTHERS, TOGETHER WITH THE
RIGHT TO GRANT AND TRANSFER ALL OR A PORTION OF THE SAME, EXCEPT AS GRANTED HEREBY,
EASEMENTS AND RIGHTS OF ACCESS, USE, ENJOYMENT, MAINTENANCE, REPAIRS, DRAINAGE AND FOR
OTHER PURPOSES, ALL AS RESERVED TO GRANTOR AS DECLARANT AND OWNER IN THE DECLARATION.

PARCEL 2: EASEMENTS AND RIGHTS OF OWNERS AS SET FORTH IN THAT CERTAIN "AMENDED AND
RESTATED DECLARATION OF RESTRICTIONS FOR GRIFFIN RANCH" RECORDED ON JANUARY 8, 2013 AS
INSTRUMENT NO. 2013-0009750, RE-RECORDED ON JUNE 18, 2013 AS INSTRUMENT NO. 2013-0288996
(COLLECTIVELY "DECLARATION"), AND AS SET FORTH IN THAT CERTAIN "SUPPLEMENTAL

## FINAL POLICY

**Order Number:**     74346744

**Loan Number:**     22025050036

**Property Address:**   81439 Merv Griffin Way

La Quinta, CA 92253 8084

## PLEASE DELIVER TO:

Adaxa, LLC
6930 E Chauncey Ln Ste 210
Phoenix, AZ 85054

ATTN: FINAL DOCS

---

**Issued By:**

Rocket Close and Title, Inc
17785 Center Court Dr. N., Suite 760
Cerritos, CA 90703
Phone: (866) 948-7627
Fax: (877) 380-4101

Agent for:

*Rocket Title Insurance Company*

**Rocket Title Insurance Company**

**ALTA SHORT FORM RESIDENTIAL LOAN POLICY—
ASSESSMENTS PRIORITY ONE-TO-FOUR FAMILY
issued by
ROCKET TITLE INSURANCE COMPANY**

**Transaction Identification Data, for which the Company assumes no liability as set forth in Condition 9.e.:**

Issuing Agent: Rocket Close and Title, Inc

Issuing Office: 17785 Center Court Dr. N., Suite 760, Cerritos, CA 90703

Issuing Office's ALTA® Registry ID: 1066048

Loan ID Number: 22025050036

Issuing Office File Number: 74346744

Property Address: 81439 Merv Griffin Way, La Quinta, CA 92253 8084

# SCHEDULE A

Name and Address of Title Insurance Company:    Rocket Title Insurance Company
5910 No. Central Expressway, Suite 1445, Dallas, TX 75206

Policy Number:  RTLSCA-104615

Amount of Insurance:  $716,580.00          Premium:  $575.00

Mortgage Amount:    $716,580.00          Mortgage Date:  7/9/2025

Date of Policy:  07/09/2025
or the date of recording of the insured
mortgage, whichever is later

Property Address:    81439 Merv Griffin Way, La Quinta, CA 92253 8084

County and State:    Riverside, CA

1. Name of Insured:        Oaktree Funding Corporation its successors and/or assigns

2. Name of Borrower(s):    Audrey Beth Little, an unmarried person and Jacob Little, a single man, Joint Tenants with Rights of Survivorship

3. The estate or interest in the Land identified in this Schedule A and which is encumbered by the Insured Mortgage is Fee Simple and is, at the Date of Policy, vested in the Borrower(s) identified in the Insured Mortgage and named above.

4. The Land referred to in this policy is described as set forth in the Insured Mortgage.

5. This policy consists of 6 page(s), unless an addendum is attached and indicated below:

    ☒    Addendum attached

6. This policy incorporates by reference the endorsements selected below, if any, adopted by the American Land Title Association as of the Date of Policy:

    ☐    ALTA 4 Condominium—Assessments Priority endorsement
    ☒    ALTA 5 Planned Unit Development—Assessments Priority endorsement
    ☐    ALTA 6 Variable Rate Mortgage endorsement, if the Insured Mortgage contains provisions which provide for an adjustable interest rate

Copyright 2021 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Rocket Title Insurance Company

## SCHEDULE B

## EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

Except to the extent set forth below, this policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses arising by reason of:

1.  Those taxes and assessments that become due or payable subsequent to the Date of Policy. Exception 1 does not modify or limit the coverage provided in Covered Risk 11.b.

2.  Covenants, conditions, restrictions, or limitations, if any, appearing in the Public Records; however, this policy insures against loss or damage arising from:
    a.   the violation of those covenants, conditions, restrictions, or limitations on or prior to the Date of Policy;
    b.   a forfeiture or reversion of Title from a future violation of those covenants, conditions, restrictions, or limitations, including those relating to environmental protection; and
    c.   provisions in those covenants, conditions, restrictions, or limitations, including those relating to environmental protection, under which the lien of the Insured Mortgage can be invalidated, subordinated, or impaired.
    As used in Exception 2.a., the words "covenants, conditions, restrictions, or limitations" do not refer to or include any covenant, condition, restriction, or limitation (i) relating to obligations of any type to perform maintenance, repair, or remediation on the Land; or (ii) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances, except to the extent that an Enforcement Notice as of the Date of Policy identifies a violation or alleged violation affecting the Land and is not referenced in an Addendum attached to this policy.

3.  Any easements or servitudes appearing in the Public Records; however, this policy insures against loss or damage arising from:
    a.   the encroachment, at the Date of Policy, of the improvements on any easement; and
    b.   any interference with or damage to existing improvements, including lawns, shrubbery, and trees, resulting from the use of the easements for the purposes granted or reserved.

4.  Any lease, grant, exception, or reservation of minerals or mineral rights or other subsurface substances appearing in the Public Records; however, this policy insures against loss or damage arising from:
    a.   any effect on or impairment of the use of the Land for one-to-four family residential purposes by reason of such lease, grant, exception, or reservation of minerals or mineral rights or other subsurface substances; and
    b.   any damage to existing improvements, including lawns, shrubbery, and trees, resulting from the future exercise of any right to use the surface of the Land for the extraction or development of the minerals or mineral rights or other subsurface substances so leased, granted, excepted, or reserved.
    Nothing herein insures against loss or damage resulting from contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

NOTICES, WHERE SENT: Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at: 5910 North Central Expressway, Suite 1445, Dallas, TX 75206.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Form Name: 9913012412                                              Page 3 of 6



**Rocket Title Insurance Company**

**ADDENDUM
ALTA SHORT FORM RESIDENTIAL LOAN POLICY
ASSESSMENTS PRIORITY ONE-TO-FOUR FAMILY**

Addendum to Policy Number: **RTLSCA-104615**                    File Number: **74346744**

**SCHEDULE B**
(Continued)

In addition to the matters set forth in Schedule B of the policy to which this Addendum is attached, this policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of the following:

Oil, gas, or other mineral interests and all rights incident thereto now or previously conveyed, transferred, leased, excepted or reserved.

Assessments, if any, for Community Facility Districts affecting said land which may exist by virtue of assessment maps or notices filed by said Districts.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Form Name: 9913012412                              Page 4 of 6



**EXHIBIT A - LEGAL DESCRIPTION**

**Policy Number:**  **RTLSCA-104615**                    **Order Number:**   **74346744**
**Loan Number:**    **22025050036**

Tax Id Number(s): 780-120-055

Land Situated  in the City of La Quinta in the County of Riverside in the State of CA
PARCEL 1: LOT 64 OF TRACT NO. 32879, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 399, PAGES 3 THROUGH 20, INCLUSIVE OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS RIGHTS AND
OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, GEOTHERMAL STEAM AND ALL PRODUCTS
DERIVED FROM ANY OF THE FOREGOING, THAT MAY BE WITHIN OR UNDER THE LAND, TOGETHER WITH
THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND STORING
IN AND REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO
WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THE LAND, OIL OR GAS
WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LAND, AND TO
BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER
AND BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP,
MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS OR MINES WITHOUT, HOWEVER, THE
RIGHT TO DRILL, MINE, STORE, EXPLORE OR OPERATE THROUGH THE SURFACE OR THE UPPER 500 FEET
OF THE SUBSURFACE OF THE LAND.

RESERVING UNTO GRANTOR, ITS SUCCESSORS AND ASSIGNS, AND OTHERS, TOGETHER WITH THE
RIGHT TO GRANT AND TRANSFER ALL OR A PORTION OF THE SAME, EXCEPT AS GRANTED HEREBY,
EASEMENTS AND RIGHTS OF ACCESS, USE, ENJOYMENT, MAINTENANCE, REPAIRS, DRAINAGE AND FOR
OTHER PURPOSES, ALL AS RESERVED TO GRANTOR AS DECLARANT AND OWNER IN THE DECLARATION.

PARCEL 2: EASEMENTS AND RIGHTS OF OWNERS AS SET FORTH IN THAT CERTAIN "AMENDED AND
RESTATED DECLARATION OF RESTRICTIONS FOR GRIFFIN RANCH" RECORDED ON JANUARY 8, 2013 AS
INSTRUMENT NO. 2013-0009750, RE-RECORDED ON JUNE 18, 2013 AS INSTRUMENT NO. 2013-0288996
(COLLECTIVELY "DECLARATION"), AND AS SET FORTH IN THAT CERTAIN "SUPPLEMENTAL

**Rocket Title Insurance Company**

DECLARATION AND NOTICE OF ANNEXATION," RECORDED ON SEPTEMBER 4, 2020, AS INSTRUMENT NO. 2020-0418197, OF OFFICIAL RECORDS, AND ANY AMENDMENTS THERETO ("DECLARATION OF ANNEXATION") OF OFFICIAL RECORDS, AND ANY AMENDMENTS THERETO, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY.

PARCEL 3: A NONEXCLUSIVE EASEMENT APPURTENANT TO THE PROPERTY FOR INGRESS, EGRESS AND ACCESS ON, OVER, AND ACROSS THE PRIVATE STREETS IN GRIFFIN RANCH, AS MORE PARTICULARLY SET FORTH IN THAT CERTAIN "DECLARATION ESTABLISHING ACCESS EASEMENT RIGHTS" RECORDED ON OCTOBER 10, 2007 AS INSTRUMENT NO. 2007-0628725 IN THE OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, AS SAME MAY BE RE-RECORDED, RESTATED AND/OR AMENDED FROM TIME TO TIME (THE "ACCESS DECLARATION").

Commonly known as: 81439 Merv Griffin Way, La Quinta, CA, 92253 8084

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Form Name: 9913012412                                      Page 6 of 6



**Rocket Title Insurance Company**

**ALTA SHORT FORM RESIDENTIAL LOAN POLICY—
ASSESSMENTS PRIORITY ONE-TO-FOUR FAMILY
issued by
ROCKET TITLE INSURANCE COMPANY**

**Transaction Identification Data, for which the Company assumes no liability as set forth in Condition 9.e.:**

Issuing Agent: Rocket Close and Title, Inc

Issuing Office: 17785 Center Court Dr. N., Suite 760, Cerritos, CA 90703

Issuing Office's ALTA® Registry ID: 1066048

Loan ID Number: 22025050036

Issuing Office File Number: 74346744

Property Address: 81439 Merv Griffin Way, La Quinta, CA 92253 8084

# SCHEDULE A

Name and Address of Title Insurance Company:    Rocket Title Insurance Company
5910 No. Central Expressway, Suite 1445, Dallas, TX 75206

Policy Number:  RTLSCA-104615

Amount of Insurance:  $716,580.00          Premium:  $575.00

Mortgage Amount:  $716,580.00          Mortgage Date:  7/9/2025

Date of Policy:  07/09/2025
or the date of recording of the insured
mortgage, whichever is later

Property Address:   81439 Merv Griffin Way, La Quinta, CA 92253 8084

County and State:   Riverside, CA

1.  Name of Insured:        Oaktree Funding Corporation its successors and/or assigns

2.  Name of Borrower(s):   Audrey Beth Little, an unmarried person and Jacob Little, a single man, Joint Tenants with Rights of Survivorship

3.  The estate or interest in the Land identified in this Schedule A and which is encumbered by the Insured Mortgage is Fee Simple and is, at the Date of Policy, vested in the Borrower(s) identified in the Insured Mortgage and named above.

4.  The Land referred to in this policy is described as set forth in the Insured Mortgage.

5.  This policy consists of 6 page(s), unless an addendum is attached and indicated below:

☒    Addendum attached

6.  This policy incorporates by reference the endorsements selected below, if any, adopted by the American Land Title Association as of the Date of Policy:

☐    ALTA 4 Condominium—Assessments Priority endorsement
☒    ALTA 5 Planned Unit Development—Assessments Priority endorsement
☐    ALTA 6 Variable Rate Mortgage endorsement, if the Insured Mortgage contains provisions which provide for an adjustable interest rate



**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Form Name: 9913012412                        Page 1 of 6



**Rocket Title Insurance Company**

☐ ALTA 6.2 Variable Rate Mortgage—Negative Amortization endorsement, if the Insured Mortgage contains provisions which provide for both an adjustable interest rate and negative amortization

☐ ALTA 7 Manufactured Housing Unit endorsement, if a manufactured housing unit is located on the Land at the Date of Policy

☐ ALTA 7.1 Manufactured Housing—Conversion—Loan Policy endorsement

☒ ALTA 8.1 Environmental Protection Lien endorsement—Paragraph b refers to the following State statute(s):

☒ ALTA 9 Restrictions, Encroachments, Minerals—Loan Policy endorsement

☐ ALTA 9.6 Private Rights—Loan Policy endorsement

☐ ALTA 14 Future Advance—Priority endorsement

☐ ALTA 14.1 Future Advance—Knowledge endorsement

☐ ALTA 14.3 Future Advance—Reverse Mortgage endorsement

☐ ALTA 22 Location endorsement, if the type of improvement is a one-to-four family residential structure and the Property Address is as shown above

☐ ALTA 30 Shared Appreciation Mortgage endorsement

SUBJECT TO THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B BELOW, AND ANY ADDENDUM ATTACHED HERETO, ROCKET TITLE INSURANCE COMPANY, A TEXAS CORPORATION, (THE "COMPANY"), HEREBY INSURES THE INSURED IN ACCORDANCE WITH AND SUBJECT TO THE TERMS, EXCLUSIONS, AND CONDITIONS SET FORTH IN THE AMERICAN LAND TITLE ASSOCIATION (ALTA) LOAN POLICY (07-01-2021), ALL OF WHICH ARE INCORPORATED HEREIN. ALL REFERENCES TO SCHEDULES A AND B REFER TO SCHEDULES A AND B OF THIS POLICY.

Countersigned by:

ROCKET TITLE INSURANCE COMPANY

By:

_____
Authorized Signatory

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Form Name: 9913012412                                    Page 2 of 6

**Rocket Title Insurance Company**

## SCHEDULE B

### EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

Except to the extent set forth below, this policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses arising by reason of:

1.  Those taxes and assessments that become due or payable subsequent to the Date of Policy. Exception 1 does not modify or limit the coverage provided in Covered Risk 11.b.

2.  Covenants, conditions, restrictions, or limitations, if any, appearing in the Public Records; however, this policy insures against loss or damage arising from:
    a.  the violation of those covenants, conditions, restrictions, or limitations on or prior to the Date of Policy;
    b.  a forfeiture or reversion of Title from a future violation of those covenants, conditions, restrictions, or limitations, including those relating to environmental protection; and
    c.  provisions in those covenants, conditions, restrictions, or limitations, including those relating to environmental protection, under which the lien of the Insured Mortgage can be invalidated, subordinated, or impaired.
    As used in Exception 2.a., the words "covenants, conditions, restrictions, or limitations" do not refer to or include any covenant, condition, restriction, or limitation (i) relating to obligations of any type to perform maintenance, repair, or remediation on the Land; or (ii) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances, except to the extent that an Enforcement Notice as of the Date of Policy identifies a violation or alleged violation affecting the Land and is not referenced in an Addendum attached to this policy.

3.  Any easements or servitudes appearing in the Public Records; however, this policy insures against loss or damage arising from:
    a.  the encroachment, at the Date of Policy, of the improvements on any easement; and
    b.  any interference with or damage to existing improvements, including lawns, shrubbery, and trees, resulting from the use of the easements for the purposes granted or reserved.

4.  Any lease, grant, exception, or reservation of minerals or mineral rights or other subsurface substances appearing in the Public Records; however, this policy insures against loss or damage arising from:
    a.  any effect on or impairment of the use of the Land for one-to-four family residential purposes by reason of such lease, grant, exception, or reservation of minerals or mineral rights or other subsurface substances; and
    b.  any damage to existing improvements, including lawns, shrubbery, and trees, resulting from the future exercise of any right to use the surface of the Land for the extraction or development of the minerals or mineral rights or other subsurface substances so leased, granted, excepted, or reserved.
    Nothing herein insures against loss or damage resulting from contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

NOTICES, WHERE SENT: Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at: 5910 North Central Expressway, Suite 1445, Dallas, TX 75206.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Form Name: 9913012412                                        Page 3 of 6



**Rocket Title Insurance Company**

**ADDENDUM
ALTA SHORT FORM RESIDENTIAL LOAN POLICY
ASSESSMENTS PRIORITY ONE-TO-FOUR FAMILY**

Addendum to Policy Number: **RTLSCA-104615**          File Number: **74346744**

**SCHEDULE B**
(Continued)

In addition to the matters set forth in Schedule B of the policy to which this Addendum is attached, this policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of the following:

Oil, gas, or other mineral interests and all rights incident thereto now or previously conveyed, transferred, leased, excepted or reserved.

Assessments, if any, for Community Facility Districts affecting said land which may exist by virtue of assessment maps or notices filed by said Districts.

The terms, conditions, and obligations contained in the Deed of Trust in the original amount of $1,384,896.00, executed by Audrey Beth Little, an unmarried woman to Mortgage Electronic Registration Systems, Inc. as nominee for Ally Bank, dated October 19, 2021 and recorded October 27, 2021 in Instrument/Case No. 20210634801 MIN: 100572615853071984. Corrective Affidavit correcting loan originator, recorded July 27, 2022 in Instrument Number 2022-0334595.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Form Name: 9913012412



**EXHIBIT A - LEGAL DESCRIPTION**

**Policy Number:** **RTLSCA-104615**                    **Order Number:**   **74346744**
**Loan Number:**     **22025050036**

 Tax Id Number(s): 780-120-055

Land Situated  in the City of La Quinta in the County of Riverside in the State of CA
PARCEL 1: LOT 64 OF TRACT NO. 32879, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 399, PAGES 3 THROUGH 20, INCLUSIVE OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS RIGHTS AND
OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, GEOTHERMAL STEAM AND ALL PRODUCTS
DERIVED FROM ANY OF THE FOREGOING, THAT MAY BE WITHIN OR UNDER THE LAND, TOGETHER WITH
THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND STORING
IN AND REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO
WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THE LAND, OIL OR GAS
WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LAND, AND TO
BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER
AND BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP,
MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS OR MINES WITHOUT, HOWEVER, THE
RIGHT TO DRILL, MINE, STORE, EXPLORE OR OPERATE THROUGH THE SURFACE OR THE UPPER 500 FEET
OF THE SUBSURFACE OF THE LAND.

RESERVING UNTO GRANTOR, ITS SUCCESSORS AND ASSIGNS, AND OTHERS, TOGETHER WITH THE
RIGHT TO GRANT AND TRANSFER ALL OR A PORTION OF THE SAME, EXCEPT AS GRANTED HEREBY,
EASEMENTS AND RIGHTS OF ACCESS, USE, ENJOYMENT, MAINTENANCE, REPAIRS, DRAINAGE AND FOR
OTHER PURPOSES, ALL AS RESERVED TO GRANTOR AS DECLARANT AND OWNER IN THE DECLARATION.

PARCEL 2: EASEMENTS AND RIGHTS OF OWNERS AS SET FORTH IN THAT CERTAIN "AMENDED AND
RESTATED DECLARATION OF RESTRICTIONS FOR GRIFFIN RANCH" RECORDED ON JANUARY 8, 2013 AS
INSTRUMENT NO. 2013-0009750, RE-RECORDED ON JUNE 18, 2013 AS INSTRUMENT NO. 2013-0288996
(COLLECTIVELY "DECLARATION"), AND AS SET FORTH IN THAT CERTAIN "SUPPLEMENTAL

# EXHIBIT C-6

Rocket Exhibit E — Stale Title / Commitments (9-Month Gap)

74346744                                                                October 15, 2024

## Title Summary

Loan Number:           22025050036

81439 Merv Griffin Way

La Quinta, CA 92253-8084

Borrowers:             Audrey Beth Little
Underwriter:           Rocket Title Insurance Company

Audrey Beth Little, an unmarried woman

*Date of Current Vesting:*
By Deed dated May 12, 2021, Recorded June 18, 2021

Land Situated in the City of La Quinta in the County of Riverside in the State of CA
PARCEL 1: LOT 64 OF TRACT NO. 32879, IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 399, PAGES 3 THROUGH 20, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, GEOTHERMAL STEAM AND ALL PRODUCTS DERIVED FROM ANY OF THE FOREGOING, THAT MAY BE WITHIN OR UNDER THE LAND, TOGETHER WITH THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND STORING IN AND REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THE LAND, OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LAND, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER AND BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS OR MINES WITHOUT, HOWEVER, THE RIGHT TO DRILL, MINE, STORE, EXPLORE OR OPERATE THROUGH THE SURFACE OR THE UPPER 500 FEET OF THE SUBSURFACE OF THE LAND.

RESERVING UNTO GRANTOR, ITS SUCCESSORS AND ASSIGNS, AND OTHERS, TOGETHER WITH THE RIGHT TO GRANT AND TRANSFER ALL OR A PORTION OF THE SAME, EXCEPT AS GRANTED HEREBY, EASEMENTS AND RIGHTS OF ACCESS, USE, ENJOYMENT, MAINTENANCE, REPAIRS, DRAINAGE AND FOR OTHER PURPOSES, ALL AS RESERVED TO GRANTOR AS DECLARANT AND OWNER IN THE DECLARATION.

PARCEL 2: EASEMENTS AND RIGHTS OF OWNERS AS SET FORTH IN THAT CERTAIN "AMENDED AND RESTATED DECLARATION OF RESTRICTIONS FOR GRIFFIN RANCH" RECORDED ON JANUARY 8, 2013 AS INSTRUMENT NO. 2013-0009750, RE-RECORDED ON JUNE 18, 2013 AS INSTRUMENT NO. 2013-0288996 (COLLECTIVELY "DECLARATION"), AND AS SET FORTH IN THAT CERTAIN "SUPPLEMENTAL DECLARATION AND NOTICE OF ANNEXATION," RECORDED ON SEPTEMBER 4, 2020, AS INSTRUMENT NO. 2020-0418197, OF OFFICIAL RECORDS, AND ANY AMENDMENTS THERETO ("DECLARATION OF ANNEXATION") OF OFFICIAL RECORDS, AND ANY AMENDMENTS THERETO, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY.

PARCEL 3: A NONEXCLUSIVE EASEMENT APPURTENANT TO THE PROPERTY FOR INGRESS, EGRESS AND ACCESS ON, OVER, AND ACROSS THE PRIVATE STREETS IN GRIFFIN RANCH, AS MORE PARTICULARLY SET FORTH IN THAT CERTAIN "DECLARATION ESTABLISHING ACCESS EASEMENT RIGHTS" RECORDED ON OCTOBER 10, 2007 AS INSTRUMENT NO. 2007-0628725 IN THE OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, AS SAME MAY BE RE-RECORDED, RESTATED AND/OR AMENDED FROM TIME TO TIME (THE "ACCESS DECLARATION").

Tax ID Numbers(s): 780-120-055

1.  A Deed of Trust to Secure an Indebtedness of $1,384,896.00, and any other amounts as therein provided, recorded October 27, 2021, as Instrument/Case No. 2021-0634801, of Official Records.
    Dated Date:            October 19, 2021

    Trustor:               Audrey Beth Little, an unmarried woman

    Trustee:               Title365 Company

    Beneficiary:           Mortgage Electronic Registration Systems, Inc., as nominee for Ally Bank

    Loan No:

    Additional Information:

    Re-recorded July 27, 2022 in Instrument/Case No. 2022-0334595.

2.  A Deed of Trust to Secure an Indebtedness of $357,500.00, and any other amounts as therein provided, recorded October 18, 2022, as Instrument/Case No. 2022-0432861, of Official Records.
    Dated Date:            October 4, 2022

    Trustor:               Audrey Beth Little, an unmarried woman

**ʘRocket Title Insurance Company**

ALTA Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)

Commitment No.: 74346744

**ALTA COMMITMENT FOR TITLE INSURANCE
ISSUED BY
Rocket Title Insurance Company**

**NOTICE**

**IMPORTANT—READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

**COMMITMENT TO ISSUE POLICY**

Subject to the Notice; Schedule B, Part I --Requirements; Schedule B, Part II --Exceptions; and the Commitment Conditions, Rocket Title Insurance Company, a Texas Corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Amount of Insurance and the name of the Proposed Insured.

If all of the Schedule B, Part I --Requirements have not been met within 180 days after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Rocket Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.

Copyright 2021 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Form 99A11002412





**Rocket Title Insurance Company**

## COMMITMENT CONDITIONS

1.    DEFINITIONS

   a.    "Discriminatory Covenant": Any covenant, condition, restriction, or limitation that is unenforceable under applicable law because it illegally discriminates against a class of individuals based on personal characteristics such as race, color, religion, sex, sexual orientation, gender identity, familial status, disability, national origin, or other legally protected class.

   b.    "Knowledge" or "Known": Actual knowledge or actual notice, but not constructive notice imparted by the Public Records.

   c.    "Land": The land described in Item 5 of Schedule A and improvements located on that land that by State law constitute real property. The term "Land" does not include any property beyond that described in Schedule A, nor any right, title, interest, estate, or easement in any abutting street, road, avenue, alley, lane, right-of-way, body of water, or waterway, but does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.

   d.    "Mortgage": A mortgage, deed of trust, trust deed, security deed, or other real property security instrument, including one evidenced by electronic means authorized by law.

   e.    "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.

   f.    "Proposed Amount of Insurance": Each dollar amount specified in Schedule A as the Proposed Amount of Insurance of each Policy to be issued pursuant to this Commitment.

   g.    "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.

   h.    "Public Records": The recording or filing system established under State statutes in effect at the Commitment Date under which a document must be recorded or filed to impart constructive notice of matters relating to the Title to a purchaser for value without Knowledge. The term "Public Records" does not include any other recording or filing system, including any pertaining to environmental remediation or protection, planning, permitting, zoning, licensing, building, health, public safety, or national security matters.

   i.    "State": The state or commonwealth of the United States within whose exterior boundaries the Land is located. The term "State" also includes the District of Columbia, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, and Guam.

   j.    "Title": The estate or interest in the Land identified in Item 3 of Schedule A.

2.    If all of the Schedule B, Part I --Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3.    The Company's liability and obligation is limited by and this Commitment is not valid without:
   a.    the Notice;
   b.    the Commitment to Issue Policy;
   c.    the Commitment Conditions;
   d.    Schedule A;
   e.    Schedule B, Part I - Requirements;
   f.    Schedule B, Part II - Exceptions
   g.    a counter-signature by the Company or its issuing agent that may be in electronic form.

4.    COMPANY'S RIGHT TO AMEND

This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Rocket Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.

Copyright 2021 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Form 99A11002412

**ⵔRocket Title Insurance Company**

**ALTA Commitment for Title Insurance**
**2021 v. 01.00 (07-01-2021)**

Agent for:  Rocket Title Insurance Company
Countersigned By:

**ROCKET TITLE INSURANCE COMPANY**



By:

Officer

_____
Nicole Beattie, Agent

In order to close a transaction using this Title Commitment, and have a Title Policy issued based on the contents of this Commitment, the Commitment Revision Date must not be older than 14 days from the actual closing date.  Please contact this Title provider for appropriate updates.  Please not that after 180 days, this commitment is void and of no effect.

This  page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Rocket Title Insurance Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and counter-signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Form 99A11002412

**Order Number:**    74346744
**Production Date:**   October 15, 2024

## CONVEYANCE SEARCH

Effective Date:  May 8, 2025 at 8:00 a.m.

From examination of the records in the Register of Deeds Office, Riverside County, CA, for property described as follows, to wit:

Land situated  in the City of La Quinta in the County of Riverside in the State of CA

(See Attached Exhibit A - Legal Description)

Commonly known as: 81439 Merv Griffin Way, La Quinta, CA 92253-8084

780-120-055

24 months prior to May 8, 2025, we find there are no conveyances affecting subject property except the following:

1 By Deed  from Lennar Homes of California, Inc., a California Corporation to Audrey Beth Little, an unmarried woman dated May 12, 2021 and recorded June 12, 2021, Instrument/Case No. 2021-0369122

This report contains information from public land records available in the county indicated above for whose accuracy and completeness we assume no responsibility. This report is released with the understanding that it is strictly confidential and only to be used by the party requesting it. This report is not to be construed as an opinion of title or as a commitment for title insurance. For matters of a legal nature, we suggest you contact your attorney. The liability of Rocket Close and Title, Inc is limited to the amount paid for this report. Rocket Close and Title, Inc assumes no liability, financial or otherwise, in association with the information in this report.

## Signing Requirement Sheet

Loan Number: 22025050036

The following signors are required to be at closing:
**Audrey Beth Little**

The following string is required in the mortgage clause:
**Audrey Beth Little, an unmarried woman**

74346744                                                                                          October 15, 2024

| | |
|---|---|
| Trustee: | First American Title Company |
| Beneficiary: | Kinecta Federal Credit Union, a Federal Credit Union |
| Loan No: | 7000034807 |

3.  A Deed of Trust to Secure an Indebtedness of $125,000.00, and any other amounts as therein provided, recorded December 7, 2022, as Instrument/Case No. 2022-0494846, of Official Records.

| | |
|---|---|
| Dated Date: | November 30, 2022 |
| Trustor: | Audrey Beth Little, an unmarried woman |
| Trustee: | Fidelity National Title Company, a California corporation |
| Beneficiary: | Pagel Management LLC |
| Loan No: | |

4.  Record mortgage/deed of trust to be insured from Audrey Beth Little, an unmarried woman  .

Please prepare your final loan documents as follows:

Audrey Beth Little

***If documents are not drawn exactly as stated above, a delay in closing your loan could occur***



| 17785 Center Court Drive N. Ste. 760
Cerritos, CA 90703
(888) 848-5355

**CALIFORNIA**
AMROCK TITLE CALIFORNIA INC.

# Wire Transfer Information

Below are the key components needed to initiate a transfer in the state your transaction is located. We've included the banking information for convenience — just have your loan number handy!

**Bank Name:** JPMorgan Chase Bank, N.A.
**Bank Address:** 1116 W. Long Lake Rd., Bloomfield Hills, MI 48302
**Account Name:** Amrock Title California Trust Account
**Routing Number:** 021000021
**Account Number:** 465890320
**Reference: Your Loan Number**

FOR SAME DAY FUNDING: All required disbursement documents and wires must be received by 3 p.m. ET to guarantee same day funding. If the information is sent after 3 p.m. ET, we will make our best effort to fund the file in a timely manner.

NOTES: Any wires received that cannot easily be matched to one of our scheduled disbursements will be returned as unidentifiable. These instructions are for wires only. ACH transactions cannot be accepted in this account and will automatically be rejected back to sender. Checks mailed to the bank's address cannot be accepted and will be returned to sender.

Protect yourself from electronic transfers funds fraud. Visit amrock.com/ProtectYourMoney to learn how.

| Please double-check that your loan number is accurate. Wires that cannot be matched with a disbursement will be returned as "unidentifiable." If you don't have online banking, take this page to your bank for assistance.

# EXHIBIT C-7

Rocket Exhibit F — Lien Visibility / Position Evidence

## EXHIBIT C-7 — Cross-Reference

The lien-visibility / subject property location report that previously appeared here is filed in Exhibit C-2.

See Exhibit C-2 (Title / Lien Visibility as of Recording) for the same report, to avoid duplication.

*(Cross-reference page to avoid duplicate exhibits)*

# EXHIBIT C-8

Rocket Exhibit L — Claim Denial & Admissions (10/24/2025)

## EXHIBIT C-8 — Cross-Reference

The 10/24/2025 Rocket Title claim denial letter and written admissions are filed in Exhibit E-2.

See Exhibit E-2 for the full denial letter pages.

*(Cross-reference page to avoid duplicate exhibits)*

# D

## QC / Bring-Down Failure (Absence Evidence)

# EXHIBIT D-1

Underwriting / Final QC Conditions (2nd lien premise; QC requirement; max CLTV)

# EXHIBIT J

Selected pages from complete loan file (CPL/QC/title timing/conditions)



## APPROVAL CERTIFICATE

**July 07, 2025 6:40 PM PDT**

Oaktree Funding Corp
3133 W Frye Road, Suite 205
Chandler, AZ 85226

**Ref #: 22025050036**

Audrey Beth Little
81439 Merv Griffin Way
La Quinta, CA 92253

This mortgage loan has been approved on behalf of the above noted client with the following terms and conditions.

| | | | |
|---|---|---|---|
| **Loan Number** | 22025050036 | **AU Response** | None/Not Submitted |
| **Approval Date** | 7/2/2025 | **Approval Exp Date** | |
| | | **Rate Lock Expiration** | 7/11/2025 |

| **Loan Information** | | | |
|---|---|---|---|
| **Loan Amount** | $716,580.00 | **Loan Purpose** | Refinance Cash-out |
| **Total Loan Amount** | $716,580.00 | **Cashout Amount** | $100,000.00 |
| **Mortgage Insurance** | No MI | **Impound?** | No escrow |
| **Upfront MIP Fee Financed** | $0.00 | **Term / Due** | 360 / 360 Months |
| **Note Rate** | 9.625% | **Loan Program** | 30 YR FIXED 2ND LIEN OO/2ND EQUITY ADVANTAGE |
| **Max DTI / Rate** | 50.000% / 9.067% | **Payment Type** | Principal & Interest |
| **LTV / CLTV / HCLTV** | 25.144% / 69.809% / | **Documentation** | Full Document |

| **Collateral** | | | |
|---|---|---|---|
| **Home Value** | $2,850,000.00 | **Property Type** | PUD |
| **Appraised Value** | $2,850,000.00 | **Property Purpose** | Primary Residence |
| **Appraisal Exp Date** | | **Asset Exp Date** | |

| **Income** | | | |
|---|---|---|---|
| **Monthly Income** | $40,847.17 | **Principal & Interest** | $6,090.85 |
| **Income Doc Exp Date** | | **Ratios** | 33.634% / 49.640% |

| **Credit** | | | |
|---|---|---|---|
| **Qualifying Score** | 689 | **Credit Exp Date** | |
| **LQI Credit Exp Date** | | | |

| **Preliminary Title Report** | | | |
|---|---|---|---|
| **Prelim Document Date** | | **Prelim Title Exp Date** | |

| **Loan Officer** | | | |
|---|---|---|---|
| **Contact** | Adam Jorgensen | **Phone** | (402) 525-3079 |
| **E-mail** | ajorgensen@adaxahome.com | **Fax** | |
| **Broker Name** | Adaxa, LLC | | |

| **Processor (External)** | | | |
|---|---|---|---|
| **Contact** | Ashley Garcia | **Phone** | (831) 212-2483 |
| **E-mail** | agarcia@adaxahome.com | **Fax** | |
| **Broker Name** | Adaxa, LLC | | |

| **Processor** | | | |
|---|---|---|---|
| **Contact** | Kale Allred | **Phone** | (480) 800-3800 |
| **E-mail** | kallred@oaktreefunding.com | **Fax** | |

| **Account Executive** | | | |
|---|---|---|---|
| **Contact** | Adam Martin | **Phone** | (480) 800-3800 |
| **E-mail** | akmartin@oaktreefunding.com | **Fax** | |

**Underwriter Signature:** _____          **Date:** _____

## APPROVAL CERTIFICATE

**July 07, 2025 6:40 PM PDT**                    **Ref #: 22025050036**

Oaktree Funding Corp                             Audrey Beth Little
3133 W Frye Road, Suite 205                      81439 Merv Griffin Way
Chandler, AZ 85226                               La Quinta, CA 92253

This mortgage loan has been approved on behalf of the above noted client with the following terms and conditions.

| | NOTE | DATE CLEARED | CLEARED BY |
|---|---|---|---|
| 27 | CTC - See Account Manager for questions on docs.<br><br>FICO: 689<br>MAX DTI = 50%<br>MAX CLTV = 75%<br>' | | |

| | PTF | DATE CLEARED | CLEARED BY |
|---|---|---|---|
| 78 | Subject lien is a 2nd mortgage. The following lien on title may remain in 1st position: Ally | | |
| 68 | Final CD to reflect the following payoffs:<br><br>Kinecta FCU HELOC<br>Pagel Mangement LLC<br>JPMCB Card<br>GS Bank<br>Amex<br>WFBNA Card<br>City National Bank<br>Citi<br>Syncb/Amazon<br>Bloom/CBNA<br>Capital One<br>BBY/CBNA<br>Amex<br>CCB/SaksMC<br>Federal Taxes Due<br>County Tax Liens | | |
| 69 | HOI insurance balance of $N/A to be paid at closing. | | |
| 71 | E-signatures are not allowed. All E-signed LOE's to be hand signed at closing. | | |
| 72 | Oaktree to perform VVOE/Business Verification within 5 days of closing. | | |
| 73 | Borrower to sign Final 1003 at closing. | | |
| 82 | Loan must meet QM fees and HPML test.  If not, appraisal is required. | | |
| 61 | Confirm and/or update rate lock expiration. Rate lock must be good through funding. | | |
| 62 | SEE EXPIRATION DATES BELOW:<br><br>Appraisal: 8/10<br>Assets: N/A<br>CPL: 10/1<br>Credit: 8/1<br>Income: TBD<br>Title: 8/8<br>LOCK: 7/11 | | |
| 76 | Oaktree to perform Final QC review prior to funding. | | |



Alternative Analysis Form

Re: Little 22025050036

This loan did not qualify for Agency Guidelines due to the program being Second Mortgage for this
borrower.

Thank you!

-Oaktree UW Department

Oaktree Funding Corporation
1298 W. 7th St, Upland, CA 91786

# EXHIBIT D-2

Commitment Jacket Warning / Absence of Timely Bring-Down Evidence

**Rocket Title Insurance Company**

<div align="right">

ALTA Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)

</div>

**Transaction Identification Data, for which the Company assumes no liability as set forth in Commitment Condition 5.e.:**

Issuing Agent: Rocket Close and Title, Inc
Issuing Office: 17785 Center Court Dr. N., Suite 760 Cerritos, CA 90703
Issuing Office's ALTA® Registry ID: 1066048
Loan ID #: 22025050036
Commitment Number: 74346744
Issuing Office File Number: 74346744
Property Address: 81439 Merv Griffin Way, La Quinta, CA 92253-8084
Revision Number: 4

<div align="center">

## Schedule A

</div>

1. **Commitment Date:** May 8, 2025 at 8:00 a.m.

2. **Policy to be Issued:**

    Loan Policy (7/1/21) $750,000.00  (Without Standard Exceptions)

    **Proposed Insured:**  Oaktree Funding Corporation, its successors and/or assigns

    **Loan Number:**  22025050036

3. **The estate or interest in the Land described or referred to in this Commitment is:**  Fee Simple

4. **The Title is, at the Commitment Date, vested in:**
    Audrey Beth Little, an unmarried woman
    By Deed from Lennar Homes of California, Inc., a California Corporation to Audrey Beth Little, an unmarried woman, dated May 12, 2021, recorded June 18, 2021 in Instrument/Case No. 2021-0369122.

5. **The Land is described as follows:**

    Land situated in the City of La Quinta in the County of Riverside in the State of California

    (See Attached Exhibit A - Legal Description)

    **Commonly Known As:**  81439 Merv Griffin Way  La Quinta, CA 92253-8084

    Tax Parcel Identification Numbers: 780-120-055

    Property Type:  Planned Unit Development

    NOTE: The property address, tax parcel identification number, and property type are provided solely for informational purposes and are not insurable for this transaction.

In order to close a transaction using this Title Commitment, and have a Title Policy issued based on the contents of this Commitment, the Commitment Revision Date must not be older than 14 days from the actual closing date.  Please contact this Title provider for appropriate updates.  Please not that after 180 days, this commitment is void and of no effect.

This  page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Rocket Title Insurance Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and counter-signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Form 99A11002412



**Rocket Title Insurance Company**

Agent for: Rocket Title Insurance Company
Countersigned By:

**ROCKET TITLE INSURANCE COMPANY**



*By:* _____
Officer

_____
Nicole Beattie, Agent

In order to close a transaction using this Title Commitment, and have a Title Policy issued based on the contents of this Commitment, the Commitment Revision Date must not be older than 14 days from the actual closing date.  Please contact this Title provider for appropriate updates.  Please not that after 180 days, this commitment is void and of no effect.

This  page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Rocket Title Insurance Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and counter-signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Form 99A11002412

**🟥 Rocket Title Insurance Company**

<div align="right">

**ALTA Commitment for Title Insurance**
**2021 v. 01.00 (07-01-2021)**

</div>

## SCHEDULE B - PART I
## (Requirements)

All of the following Requirements must be met:

1. The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2. Pay the agreed amount for the estate or interest to be insured.

3. Pay the premiums, fees, and charges for the Policy to the Company.

4. Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

5. The following are the requirements to be complied with:
   A. Payment to, or for the account of, the sellers or mortgagors of the full consideration for the estate or interest to be insured.
   B. Instruments in insurable form which must be executed, delivered and duly filed for record.

6. Record mortgage/deed of trust to be insured from Audrey Beth Little, an unmarried woman .

7. A Deed of Trust to Secure an Indebtedness of $1,384,896.00, and any other amounts as therein provided, recorded October 27, 2021, as Instrument/Case No. 2021-0634801, of Official Records.

   | | |
   |---|---|
   | Dated Date: | October 19, 2021 |
   | Trustor: | Audrey Beth Little, an unmarried woman |
   | Trustee: | Title365 Company |
   | Beneficiary: | Mortgage Electronic Registration Systems, Inc., as nominee for Ally Bank |
   | Loan No: | |
   | MIN: | 100572615853071984 |
   | Open Ended: | No |

   Additional Information:

   Re-recorded July 27, 2022 in Instrument/Case No. 2022-0334595.

8. A Deed of Trust to Secure an Indebtedness of $357,500.00, and any other amounts as therein provided, recorded October 18, 2022, as Instrument/Case No. 2022-0432861, of Official Records.

   | | |
   |---|---|
   | Dated Date: | October 4, 2022 |
   | Trustor: | Audrey Beth Little, an unmarried woman |
   | Trustee: | First American Title Company |

In order to close a transaction using this Title Commitment, and have a Title Policy issued based on the contents of this Commitment, the Commitment Revision Date must not be older than 14 days from the actual closing date.  Please contact this Title provider for appropriate updates.  Please not that after 180 days, this commitment is void and of no effect.

This  page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Rocket Title Insurance Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and counter-signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Form 99A11002412



**Rocket Title Insurance Company**

<div align="right">

**ALTA Commitment for Title Insurance**
**2021 v. 01.00 (07-01-2021)**

</div>

| | |
|---|---|
| Beneficiary: | Kinecta Federal Credit Union, a Federal Credit Union |
| Loan No: | 7000034807 |
| MIN: | |
| Open Ended: | Yes |

9.  A Deed of Trust to Secure an Indebtedness of $125,000.00, and any other amounts as therein provided, recorded December 7, 2022, as Instrument/Case No. 2022-0494846, of Official Records.

| | |
|---|---|
| Dated Date: | November 30, 2022 |
| Trustor: | Audrey Beth Little, an unmarried woman |
| Trustee: | Fidelity National Title Company, a California corporation |
| Beneficiary: | Pagel Management LLC |
| Loan No: | |
| MIN: | |
| Open Ended: | No |

10. Payment of unpaid taxes and special assessments, plus penalty, interest and collection fees, if any, or same to be shown on the final policy.

11. Taxes being obtained from municipality. To follow under separate cover.

**Tax Id Number(s): 780-120-055**

NOTE: In the event that the loan secured by the mortgage to be insured (the insured mortgage) is closed and disbursed by a branch office of the Company or an agent of the Company, for whom we have provided you with an un-cancelled closing protection letter, the policy committed for by this commitment will be issued in the form required by your closing instructions.  Such policy will only include exceptions disclosed by this commitment and any amendments to or updates of this commitment provided to you prior to closing.

NOTE: Rocket Close and Title, Inc obtains the opinion of an independent attorney licensed in the subject property state prior to the furnishing of any title information where required by applicable law.

In order to close a transaction using this Title Commitment, and have a Title Policy issued based on the contents of this Commitment, the Commitment Revision Date must not be older than 14 days from the actual closing date.  Please contact this Title provider for appropriate updates.  Please not that after 180 days, this commitment is void and of no effect.

This  page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Rocket Title Insurance Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and counter-signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Form 99A11002412



Case 5:26-cv-00402-MEMF-MBK     Document 78-1     Filed 03/03/26     Page 108 of 725
Page ID #:2596

## ⋂ Rocket Title Insurance Company

**Commitment for Title Insurance**
**2021 v. 01.00 (07-01-2021)**

## SCHEDULE B - PART II
### (Exceptions)

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This Commitment and the Policy treat any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document will be excepted from coverage.**

The Policy will not insure against loss or damage resulting from the terms and conditions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

2.  Rights, facts, interests or claims which are not shown by the Public Records, but which could be ascertained by an inspection of said Land or by making inquiry of persons in possession thereof.

3.  Easements, claims of easement or encumbrances which are not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.

5.  Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof, water rights, claims or title to water, in each case not shown in the public records.

6.  Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

7.  Taxes and assessments not yet due and payable.

8.  Covenants, conditions and restrictions and other instruments recorded in the public records and purporting to impose a transfer fee or conveyance fee payable upon the conveyance of an interest in real property or payable for the right to make or accept such a transfer, and any and all fees, liens or charges, whether recorded or unrecorded, if any, currently due payable or that will become due or payable, and any other rights deriving therefrom, that are assessed pursuant thereto.

9.  Oil, gas, or other mineral interests and all rights incident thereto now or previously conveyed, transferred, leased, excepted or reserved.

10. Any and all easements, agreements and restrictions of record.

11. Assessments, if any, for Community Facility Districts affecting said land which may exist by virtue of assessment maps or notices filed by said Districts.

NOTE: In the event that the Commitment Jacket is not attached hereto, all of the terms, conditions and provisions contained in said Jacket are incorporated herein.

NOTE: The policy to be issued may contain an arbitration clause.  When the Amount of Insurance is less than the amount, if any, set forth in the arbitration, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as exclusive remedy of the parties.  Arbitration is voluntary and non-binding.

In order to close a transaction using this Title Commitment, and have a Title Policy issued based on the contents of this Commitment, the Commitment Revision Date must not be older than 14 days from the actual closing date.  Please contact this Title provider for appropriate updates.  Please not that after 180 days, this commitment is void and of no effect.

This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Rocket Title Insurance Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and counter-signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Form 99A11002412



# EXHIBIT D-3

Document Requests and QWR (what was demanded; what is missing)

*Prepared for Exhibit Binder - v2 (reordered/retabbed)*

1. Complete origination file (application, disclosures, Note, Deed of Trust, HUD-1/Closing Disclosure)
2. Complete closing/escrow file
3. Final ALTA title insurance policy and all endorsements
4. Preliminary Title Report / Title Commitment
5. All escrow instructions and amendments
6. All recorded documents (Deed of Trust, Assignment(s), Reconveyances, etc.)
7. Complete servicing file and payment history from inception to present
8. All internal notes, memos, emails, and correspondence regarding my loan
9. Identity of the current creditor/note holder and any assignments
10. Complete audio recordings of any phone calls (if retained)
11. Copy of any insurance claims filed regarding lien position or title defects

I also dispute the validity of the debt to the extent it may be affected by the undisclosed prior lien that caused Oaktree's loan to record in third position instead of second, as required by your own title insurance policy and escrow instructions.

Failure to provide the requested documents within the statutory timeframe may constitute a violation of RESPA and California law and may subject you to actual damages, statutory damages up to $2,000, attorney fees, and costs.

Please send all documents to the mailing address above and also email them to audrey.little@gmail.com.

Thank you for your immediate attention.

Sincerely,

/s/Audrey Little
Audrey Little
Date: December 2, 2025

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** QWR
**Date:** December 2, 2025 at 6:03 PM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com, My Loan Servicer noreply-servicing@myloanservicer.com, info@myloanservicer.com
**Cc:** audrey.little458@gmail.com



Audrey Little
81439 Merv Griffin Way
La quinta, CA 92253
audrey.little458@gmail.com
310-283-4448

December 2, 2025

SENT VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED & EMAIL

Oaktree Funding Corp.
Attn: Customer Service / QWR Department
PO Box 660217
Dallas, TX 75266-0217
loaninfo@myloanservicer.com

Cornerstone Servicing (sub-servicer for Oaktree Funding Corp.)
Attn: Research Department
PO Box 660217
Dallas, TX 75266-0217
loaninfo@myloanservicer.com

Re: Qualified Written Request (RESPA) & Demand for Complete Loan File
Loan Number: ending in 2597
Property Address: 81439 Merv Griffin Way, La Quinta, CA 92253
Borrower: Audrey Little

Dear Sir or Madam,

This is a **Qualified Written Request** under Section 6 of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e), and a formal demand under California Civil Code §§ 2937, 1632, and 2923.55.

I formally request that you provide **within 10 days** (or sooner if required by law) a complete, legible copy of **every document** in my loan file, including but not limited to:

1. Complete origination file (application, disclosures, Note, Deed of Trust, HUD-1/Closing Disclosure)
2. Complete closing/escrow file
3. Final ALTA title insurance policy and all endorsements
4. Preliminary Title Report / Title Commitment
5. All escrow instructions and amendments
6. All recorded documents (Deed of Trust, Assignment(s), Reconveyances, etc.)
7. Complete servicing file and payment history from inception to present
8. All internal notes, memos, emails, and correspondence regarding my loan
9. Identity of the current creditor/note holder and any assignments
10. Complete audio recordings of any phone calls (if retained)
11. Copy of any insurance claims filed regarding lien position or title defects

# EXHIBIT D-4

Rocket Exhibit J — Selected Loan File Excerpts

---

*Prepared for Exhibit Binder - v8 (standardized cover)*

## EXHIBIT D-4 — Cross-Reference

The selected loan-file excerpt pages (underwriting / QC conditions) are filed in Exhibit D-1.

See Exhibit D-1 for the same loan-file excerpts, to avoid duplication.

*(Cross-reference page to avoid duplicate exhibits)*



# E

## Oaktree Knowledge, Claim & Posture

# EXHIBIT E-1

Oaktree Title Claim Submission (Notice of Claim)

# EXHIBIT G – Oaktree Claim Notice / Knowledge Evidence (9/10/2025)

Notice of Claim to Rocket Title describing Resnick DOT recorded 12/8/2024 and third-position issue.

# EXHIBIT E-2

Title Claim Denial Letter - 10/24/2025 (Rocket Title counsel)

# EXHIBIT L

Expanded Claim Denial and Written Admissions
(Failure to Cure Known Closing Defect)

Mr. Robert Teague
Oaktree Funding Corp.
October 24, 2025
Page 2

### *Policy*

The insuring provisions of the Policy provide coverage for, among other things, and subject to the exceptions set forth in Schedule B:

> *3. Unmarketable Title*
>
> *...*
>
> *10. The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance on the Title as security for the following components of the Indebtedness:*
>> *a. the amount of the principal disbursed as of the Date of Policy;*
>> *b. the interest on the obligation secured by the Insured Mortgage;*
>> *c. the reasonable expense of foreclosure;*
>> *d. amounts advanced for insurance premiums by the Insured before the acquisition of the estate or interest in the Title; and*
>> *e. the following amounts advanced by the Insured before the acquisition of the estate or interest in the Title to protect the priority of the lien of the Insured Mortgage:*
>>> *i. real estate taxes and assessments imposed by a governmental taxing authority; and*
>>> *ii. regular, periodic assessments by a property owners' association.*

The coverage afforded under the Policy is limited to the exceptions set forth in Schedule B, as well as the exclusions set forth in the Policy.

I note that schedule B does not except the Resnick Deed of Trust. In addition, and due to an oversight, Schedule B does not except the first lien secured against the Property in the approximate amount of $1.3M and in favor of Ally Bank.

Exclusion 3(c) excludes coverage for matters:

> *c. resulting in no loss or damage to the Insured Claimant.*

### *Analysis re: Resnick Deed of Trust*

A title insurance policy is a contract of indemnity. It does not guarantee or represent that title is in any particular state or condition. Rather, a title insurance policy indemnifies against actual loss compensable under the terms of the title insurance policy which arises as a result of a matter for which coverage is afforded in accordance with, and subject to, the terms and conditions of the title insurance policy. This position is consistent with California case law and statute. See *Siegel v. Fidelity National Title Insurance Company* (1996) 46 Cal.App.4th 1181; See also *Smith v. First American Title Insurance Company* (1986) 177 Cal.App.3d 625; *Glavinich v. Commonwealth Land Title Insurance Company* (1984) 163 Cal.App.3d 263; *Karl v. Commonwealth Land Title Ins. Co.* (1993) 20 Cal. App. 4th 972.; and California Insurance Code Sections 12340.10 and 12340.11.  The policy expressly provides that the insurer will pay any loss or

Mr. Robert Teague
Oaktree Funding Corp.
October 24, 2025
Page 3

damage suffered by the insured from any omitted defect not excluded by the terms of the policy. 3 Miller and Starr, Cal. Real Estate (2nd ed. 1989).

The Resnick Deed of Trust appears to fall within insuring provision No. 10. The Resnick Deed of Trust was not disclosed on Schedule B as an exception to the Policy, and it purports to assert seniority over the Oaktree Deed of Trust. I turn now towards the impact of Exclusion No. 3(c) set forth above.

As set forth above, the Policy is a contract of indemnity. As such, the obligations of the Company are only triggered upon the Insured suffering a loss under the Policy. Here, that has not occurred. The Oaktree Loan is current, and so is the Resnick Loan. Indeed, the Resnick Loan appears to be a loan between family members. Stewart Resnick is apparently Audrey Little's uncle. The Resnick Loan is current, with very low interest, and at the end of each year borrower's uncle gifts her the interest paid on the loan. To the extent that the borrower continues to make payments under the Resnick Loan and there is no threat of foreclosure under the Resnick Deed of Trust, the Insured has not incurred a loss under the Policy triggering the obligations of the Company and, as noted above, Exclusion No. 3(c) provides that there is no coverage under the Policy for matters for which the Insured has not suffered any loss.

I turn now to the claim that the existence of the Resnick Deed of Trust has rendered the Oaktree Loan unsaleable on the secondary mortgage market and whether the same falls within insuring provision No. 3.

Under California law, defects affecting the *value* of an interest in real property, as opposed to *title* to the real property, does not render said interest unmarketable within the context of a title insurance policy. *Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal. App. 4th 1132; *Mellinger v. Ticor Title Ins. Co. of California* (2001) 93 Cal.App.4th 691, 695–696 ("Thus, the test for a marketable title is 'whether a reasonable purchaser, knowing that a third party might claim an interest in the property, would nevertheless proceed with the transaction.'")

The existence of the Resnick Deed of Trust may impact the value that a third party may be willing to pay for a purchase of the Oaktree Loan, but it does not impact the marketability of Oaktree's *title* to the Property pursuant to the Oaktree Deed of Trust, which remains unchallenged and valid and enforceable, i.e., Oaktree has a valid and enforceable lien against the Property, and no one is challenging the same.

Accordingly, the existence of the Resnick Deed of Trust does not fall within insuring provision No. 3.

### *Analysis re: First Lien*

As noted above, Schedule B did not except coverage for the first lien in the approximate amount of $1.3 Million and in favor of Ally Bank. This was due to an oversight.

While your letter does not specifically mention said first lien, please be advised that there would be no coverage for the same given our investigation has determined that the existence of the first lien was known to Oaktree at the time of origination and the time the Policy was issued. Indeed, your letter confirms that Oaktree intended to be secured in a *second* lien position against the Property. Thus, any claim based on the first lien would be excluded based on exclusions 3(a) and 3(b), which exclude coverage for matters:

Mr. Robert Teague
Oaktree Funding Corp.
October 24, 2025
Page 4

> *a. created, suffered, assumed, or agreed to by the Insured Claimant;*
> *b. not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;*

The Company will be amending the Policy to reflect an exception in Schedule B for the first lien. This may be done through issuance of a corrective policy, or by issuing an amended Schedule B. I will provide more information on that in the near future.

Based on the foregoing, the Company respectfully denies any obligation to you. In the event that the facts as we understand them change in the future, i.e. foreclosure proceedings are initiated under the Resnick Deed of Trust, or the Borrowers default under the terms of the Oaktree Loan or Deed of Trust and Oaktree initiates foreclosure, please promptly re-tender the claim to the Company at that time so that the Company may reevaluate its obligations under the Policy at said time and in light of said developments.

Reference to any particular provision of a policy of title insurance in this letter, the contents of this letter, and the contents of any prior correspondence, do not constitute and shall not be construed as a waiver of any other term or provision of any policy of title insurance, any grounds for denial, or any applicable defenses as may be afforded by law. The Company retains the right to supplement this letter.

Please also note that the above is based upon the information currently available to the Company. If there are any facts which were unknown to the Company upon making this coverage determination, and which may alter such determination, please provide this information or documentation in writing as soon as possible and your claim will be reevaluated. If I do not receive additional information or documentation, your claim file will be closed in 30 days from the date of this letter.

The Company retains the right to supplement this letter. Also please be advised that the Company retains the right deny your claim based on additional grounds.

Enclosed is a "Notice to Claimant When your Claim Has Been Denied" for your reference. This notice is provided pursuant to state regulations and contains certain information that may be of assistance to claimants whose claims have been denied.

Should you have any questions or concerns regarding this matter, you may contact me at (313) 338-0120 or by email at Claims@rockettic.com.

Sincerely,

*Ginny Lafferty*

Ginny Lafferty
Legal Counsel, Title Insurance

Cc: Olivier J. Labarre: olabarre@wrightlegal.net (as courtesy)

Mr. Robert Teague
Oaktree Funding Corp.
October 24, 2025
Page 5

**<u>NOTICE</u>**

You have various rights, and limitations upon those rights, as provided in the policy or guarantee, under state or federal law, or under governmental regulations. It is important that you are aware of the following:

ARBITRATION

Your policy or guarantee may give you, and the Company, the right to Arbitration. If the right to Arbitration is contained in the Conditions and Stipulations of the policy or guarantee, then you may request that a neutral Arbitrator hear any coverage decision made by the Company. If you should decide to seek Arbitration, then the Company upon request will provide a copy of the Rules for Arbitration to you.

COMPLAINTS TO THE INSURANCE COMMISSIONER

If you believe all or part of your claim has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance. The California Department of Insurance may be contacted at California Department of Insurance Claims Services Bureau, 11th Floor, 300 South Spring Street, Los Angeles, California 90013. The telephone number is (213) 897-8921.

STATUTE OF LIMITATIONS

The statute of limitations governing a claim under a title insurance policy is two years pursuant to *California Code of Civil Procedure §339.*

# EXHIBIT E-3

Oaktree Knowledge / Correspondence

**From:** **Audrey Little** audreylittle458@gmail.com  📎
**Subject:** Re: URGENT RESPONSE REQUIRED ( or not ) by 5:00 PM today
**Date:** November 17, 2025 at 3:09 PM
**To:** Robert Teague rteague@oaktreefunding.com, Goldstein, Jason E. jgoldstein@buchalter.com
**Cc:** J. Labarre Olivier olabarre@wrightlegal.net, pglass@wrightlegal.net

**Subject:** Forbearance Request and Oaktree's Responsibilities as Lender

Robert,

Thank you for your email and for providing Cornerstone's contact information.

Out of respect, I want to clarify something important. Your response—directing me to a third-party servicer—does not address my actual request, which was made to **Oaktree as the lender**, not the servicer. Servicers cannot correct underwriting defects, cannot correct lien-priority errors, cannot produce the lender's title package for the Department of Insurance, and cannot mitigate lender-created harm unless they are directed to do so by the lender.

Cornerstone processes payments, but **Oaktree owns this loan** and remains responsible for:

- approving and funding the defective refinance,
- possessing the full lender title package,
- cooperating with DOI document requests,
- mitigating borrower harm, and
- directing its servicer to grant temporary forbearance where appropriate.

Redirecting me to a party who has no authority to correct any part of this situation only delays resolution and **creates the appearance of bad-faith handling**. Sending a borrower to the wrong party when the lender knows the servicer cannot fix the underlying defect is specifically identified as an unfair practice under CFPB servicing standards.

I will contact Cornerstone as you suggested, but I want the record to reflect clearly:

✔ **My request for temporary forbearance was made to**

**Oaktree**

✔ **Oaktree has full authority to grant or direct forbearance,**

✔ **Oaktree is the entity responsible for mitigating the harm caused by this defective loan, and**

✔ **Oaktree cannot shift that responsibility to Cornerstone.**

I remain willing to resolve this matter today and avoid further escalation. I am available this afternoon until 5:00 PM if Oaktree wishes to discuss resolution.

For transparency, I am copying Rocket's counsel so that all parties have the same information.

Sincerely,

**Audrey Little**

La Quinta, California

Phone: 310-283-4448

Email: Audrey.Little458@gmail.com

> On Nov 17, 2025, at 2:58 PM, Robert Teague <rteague@oaktreefunding.com> wrote:
>
> Ms. Little,
>
> Oaktree does not service your loan. You must request a forbearance through the loan servicer, Cornerstone.
>
> Here is Cornerstone's contact information:
> Servicer email: loaninfo@myloanservicer.com
> Servicer phone number: 866-515-9015
>
> Regards,



**Robert R. Teague, Esq.**
SVP Director of Compliance & General Counsel

**Direct:** 480.691.3808
**Office:** 1.800.521.3911
Nonqmexpert.com



The information contained in this transmission may contain privileged and confidential information. It  is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NMLS ID: 71640 Licensed States: AL | AK | AR | AZ | CA | CO | CT | DC | DE | FL | GA | IA | ID | IL | IN | KS | KY | LA | MA | MD | ME | MI | MN | MT | NC | NE | NH | NJ | NM | NV | OH | OK | OR | PA | RI | SC | TN | TX | UT | VA | WA | WI | WY

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Monday, November 17, 2025 3:11 PM
**To:** J. Labarre Olivier <olabarre@wrightlegal.net>; Goldstein, Jason E. <jgoldstein@buchalter.com>
**Cc:** Robert Teague <rteague@oaktreefunding.com>
**Subject:** URGENT RESPONSE REQUIRED ( or not ) by 5:00 PM today
**Importance:** High

**Today's Communications – Request for Immediate Resolution**

## Mr. Labarre and Mr. Goldstein,

I am sending this email to both of you **for transparency**, so that each party has the same information at the same time.

As stated in my letters, I remain willing to resolve this matter **today**. If a fair settlement is reached today, I will withdraw my DOI complaint, my CFPB complaints, and my court-filed lawsuit.

If this matter is not resolved today, I want to give you the respect of knowing in advance what will occur:

1. I will be filing my **expanded DOI response after 5:00 PM** today.
2. I will be filing my **three CFPB complaints** tonight—against Rocket Title, Rocket Close/Amrock, and Oaktree.
3. Because Oaktree has not responded to my forbearance request, I will be forced to **sell securities at a loss AND list my home for a fast sale** to stay solvent.

I now fully understand how to amend complaints, what forms are required, and how to properly serve all parties. I am prepared to update my existing lawsuit and to file a **separate complaint against Oaktree** if necessary.

I am available **all afternoon until 5:00 PM** to discuss resolution today.

Thank you,

**Audrey Little**

**From:** **Robert Teague** rteague@oaktreefunding.com  📎
**Subject:** RE: URGENT RESPONSE REQUIRED ( or not ) by 5:00 PM today
**Date:** November 17, 2025 at 2:58 PM
**To:** audrey.little458@gmail.com, J. Labarre Olivier olabarre@wrightlegal.net, Goldstein, Jason E. jgoldstein@buchalter.com
**Cc:** azoaktree azoaktree@oaktreefunding.com

Ms. Little,

Oaktree does not service your loan. You must request a forbearance through the loan servicer, Cornerstone.

Here is Cornerstone's contact information:
Servicer email: loaninfo@myloanservicer.com
Servicer phone number: 866-515-9015

Regards,



**Robert R. Teague, Esq.**
SVP Director of Compliance & General Counsel

**Direct:** 480.691.3808
**Office:** 1.800.521.3911
Nonqmexpert.com

The information contained in this transmission may contain privileged and confidential information. It  is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NMLS ID: 71640 Licensed States: AL | AK | AR | AZ | CA | CO | CT | DC | DE | FL | GA | IA | ID | IL | IN | KS | KY | LA | MA | MD | ME | MI | MN | MT | NC | NE | NH | NJ | NM | NV | OH | OK | OR | PA | RI | SC | TN | TX | UT | VA | WA | WI | WY

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Monday, November 17, 2025 3:11 PM
**To:** J. Labarre Olivier <olabarre@wrightlegal.net>; Goldstein, Jason E. <jgoldstein@buchalter.com>
**Cc:** Robert Teague <rteague@oaktreefunding.com>
**Subject:** URGENT RESPONSE REQUIRED ( or not ) by 5:00 PM today
**Importance:** High

**Today's Communications – Request for Immediate Resolution**

# Mr. Labarre and Mr. Goldstein,

I am sending this email to both of you **for transparency**, so that each party has the same information at the same time.

As stated in my letters, I remain willing to resolve this matter **today**. If a fair settlement is reached today, I will withdraw my DOI complaint, my CFPB complaints, and my court-filed lawsuit.

If this matter is not resolved today, I want to give you the respect of knowing in advance what will occur:

1. I will be filing my **expanded DOI response after 5:00 PM** today.
2. I will be filing my **three CFPB complaints** tonight—against Rocket Title, Rocket Close/Amrock, and Oaktree.
3. Because Oaktree has not responded to my forbearance request, I will be forced to **sell securities at a loss AND list my home for a fast sale** to stay solvent.

I now fully understand how to amend complaints, what forms are required, and how to properly serve all parties. I am prepared to update my existing lawsuit and to file a **separate complaint against Oaktree** if necessary.

I am available **all afternoon until 5:00 PM** to discuss resolution today.

Thank you,

**Audrey Little**

# EXHIBIT E-4

Refusal to Pause / Enforcement Posture

**From:** **Goldstein, Jason E.** jgoldstein@buchalter.com 📎

**Subject:** RE: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from you I will not have a. Choice [IMAN-BUCHALTER.FID6170674]

**Date:** January 8, 2026 at 1:20 PM

**To:** Audrey Little audreylittle458@gmail.com

**Cc:** Goldstein, Jason E. jgoldstein@Buchalter.com

JG

---

Audrey:

To be clear, unless you are told that there will be what you have referred to as a pause, there is no pause.

**Buchalter LLP**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**Buchalter**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

---

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, January 8, 2026 10:07 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Re: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from y
BUCHALTER.FID6170674]

> This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

---

Because the payment was made on the 29th and this is not the first time
I have asked for a pause until the noticed hearing can you please confirm yes or no not no answer as usual.

Regards,

Audrey Little
audreylittle458@gmail.com

On Jan 8, 2026, at 10:04 AM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Audrey:

That seems to be a standard and nice message.  How is it harassment?

**Buchalter LLP**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**Buchalter**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800

To:
Robert Teague, Oaktree Funding Corp.
Jonathan Epstein, Oaktree Funding Corp.
MyLoanServicer.com (Collections & Escalations)

---

I am done being misled, threatened, and ignored by Oaktree.

You knew the lien-priority defect originated with Rocket Close's escrow breach.
Yet instead of telling me the truth or granting temporary forbearance, you:

- **Threatened me with the FBI** over a 0% family loan listed exactly the way every borrower lists family loans.

- **Falsely stated** Oaktree "would need to foreclose" to show a loss — a statement directly contradicted by the controlling case law I provided to you.

- **Ignored my TRO notice issued on November 26, 2025.**

- **Continued collection** on a structurally defective, improperly secured loan.

- **Refused forbearance**, despite knowing this refinancing never should have closed.

- Escalated harm to my son **Jake (33)**, his wife, and their infant daughter.

Your misconduct is the direct cause of the **immediate emergency** now requiring court intervention.

I have incurred **$412,000** in compensatory damages as a result of Rocket Close's breach and your refusal to mitigate.
The payoff on the defective loan is **$716,580**.

You have until **3:00 p.m. PST today, December 1, 2025**, to:

**1. Grant full temporary forbearance immediately (no payments, no late fees, no reporting)**

**2. Confirm in writing that no adverse credit action will be taken**

**3. Suspend all collection activity pending resolution**

If you do NOT comply by the deadline:

- I will file the attached **Second Amended Complaint** tomorrow (Case No. CVPS2508295).

- I will seek a **Temporary Restraining Order** and **Preliminary Injunction** restraining all further collection, reporting, and enforcement.

- I will retain litigation-financing counsel, and Oaktree will be liable for attorney fees, Rosenthal damages, and punitive damages.

Your refusal to grant forbearance is the **immediate trigger** forcing me toward a potential forced sale — an irreparable harm the Court will not ignore.

**/s/ Audrey Little**



# F

# Irreparable Harm / Disability

# EXHIBIT F-1

SSD / Disability Documentation

*Prepared for Exhibit Binder - v2 (reordered/retabbed)*

## Social Security Administration
# Benefit Verification Letter

Date: January 12, 2024
BNC#: 24B5395K13179
REF: A

AUDREY BETH LITTLE
81439 MERV GRIFFIN WAY
LA QUINTA CA  92253-8084

You asked us for information from your record. The information that you requested is shown below. If you want anyone else to have this information, you may send them this letter.

**Information About Current Social Security Benefits**

Beginning December 2023, the full monthly Social Security benefit before any deductions is $3,488.80.

We deduct $594.00 for medical insurance premiums each month.

The regular monthly Social Security payment is $2,894.00.
(We must round down to the whole dollar.)

Social Security benefits for a given month are paid the following month. (For example, Social Security benefits for March are paid in April.)

Your Social Security benefits are paid on or about the third of each month.

We found that you became disabled under our rules on August 13, 2010.

**Information About Past Social Security Benefits**

From December 2022 to November 2023, the full monthly Social Security benefit before any deductions was $3,380.70.

We deducted $560.50 for medical insurance premiums each month.

The regular monthly Social Security payment was $2,820.00.
(We must round down to the whole dollar.)

**Type of Social Security Benefit Information**

You are entitled to monthly disability benefits.

See Next Page

24B5395K13179                                                      Page 2 of 2

## Medicare Information

You are entitled to hospital insurance under Medicare beginning February 2013.

You are entitled to medical insurance under Medicare beginning July 2016.

Your Medicare number is 2QX1JD4PG22.  You may use this number to get medical services while waiting for your Medicare card.

If  you have any questions, please log into Medicare.gov, or call 1-800-MEDICARE (1-800-633-4227).

## Date of Birth Information

The date of birth shown on our records is August 26, 1965.

## Suspect Social Security Fraud?

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

## If You Have Questions

## Need more help?

1. Visit www.ssa.gov for fast, simple and secure online service.
2. Call us at **1-800-772-1213**, weekdays from 8:00 am to 7:00 pm.  If you are deaf or hard of hearing, call TTY **1-800-325-0778**. Please mention this letter when you call.
3. You may also call your local office at **1-877-319-5758**.

          SOCIAL SECURITY
          46845 MONROE STREET
          INDIO CA 92201

**How are we doing?**  Go to www.ssa.gov/feedback to tell us.

*Social Security Administration*

 **Social Security Administration**

AUDREY B LITTLE                                    Date: April 28, 2015
540 24TH PLACE                                     Claim Number:  XXX-XX-2922A
HERMOSA BEACH CA 90254-2607

You asked us for information from your record. The information that you requested is shown below. If you want anyone else to have this information, you may send them this letter.

**Information About Current Social Security Benefits**

Beginning December 2014, the full monthly Social Security benefit before any deductions is $2,713.60.

We deduct $0.00 for medical insurance premiums each month.

The regular monthly Social Security payment is $2,713.00.
(We must round down to the whole dollar.)

Social Security benefits for a given month are paid the following month. (For example, Social Security benefits for March are paid in April.)

Your Social Security benefits are paid on or about the fourth Wednesday of each month.

**Information About Past Social Security Benefits**

From December 2013 to November 2014, the full monthly Social Security benefit before any deductions was $2,668.30.

We deducted $0.00 for medical insurance premiums each month.

The regular monthly Social Security payment was $2,668.00.
(We must round down to the whole dollar.)

**Type of Social Security Benefit Information**

You are entitled to monthly disability benefits.

**Date of Birth Information**

The date of birth shown on our records is August 26, 1965.

**Medicare Information**

You are entitled to hospital insurance under Medicare beginning February 2013.

**Suspect Social Security Fraud?**

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

**If You Have Questions**

We invite you to visit our web site at www.socialsecurity.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local office at

877-319-0732. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY
22600 CRENSHAW BLVD
TORRANCE, CA 90505

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

*Social Security Administration*

# EXHIBIT F-2

## Court Order Granting Disability Accommodation (MC-410)

*Prepared for Exhibit Binder (reordered/retabbed)*

**MC-410**    **Disability Accommodation Request**

**CONFIDENTIAL**

If you have a disability and need an accommodation while you are at court, you can use this form to make your request. For more information, see form MC-410-INFO .

**5** Make this request at least **5 days** (when the court is open) before you need the accommodation.

*Clerk receives and date stamps here.*

**Court Name and Address:**

**1 Your information**

Name: Audrey Little

Address: 81439 Merv Griffin Way

La Quinta CA  92253

Phone: 310-283-4448

Email: audrey.little458@gmail.com

**Case Number (if you know it):**
CVPS2508295

**2 How are you involved in the case?**
☐ Juror  ☒ Party  ☐ Witness  ☐ Lawyer
☐ Other (explain):

**Case Name/Type (if you know it):**
Little vs Rocket

**3 When and where do you need the accommodation?** [date(s), time(s), and court location]     Supior court of Riversie , Palm Springs Division

**4 What accommodation do you need at the court?**
The ability to appear remotely (by Zoom or equivalent) when medically necessary;schedule hearings at earliest possible dates when court permits, consideration and limitations on continuances  where pheasa

**5 Why do you need this accommodation to assist you in court?**
I am disableld and this case is causng orolinged harm.  That these accommodations apply to all future hearings in this matter.

☒ More information on this request is attached.

Date: 12-31-2025

Audrey Little
**Type or print name**


Signature

**(Optional)** If a court employee, caregiver or other person helped fill out this form and is **willing to provide more information if needed**, provide contact information below:

Name:                    Email:                    Phone:

Judicial Council of California, *www.courts.ca.gov*
Rev. January 1, 2021, Optional Form
Cal. Rules of Court, rule 1.100

**Disability Accommodation Request**

MC-410, Page 1 of 2



Name: Audrey Little

Case Number (if you know it):
CVPS2508295

---------------------------- **Court fills out below** ----------------------------

**(Optional)**

⚠ **Important!** If your case is delayed or dismissed after you make this request and you do not need the accommodation for the date you specified under 3, please contact the court at:

Phone: _____    Email: _____

☒ Your request is **GRANTED.** The court will provide the accommodation(s) requested.

☐ Your request is **DENIED IN WHOLE OR IN PART.** The denied portion of your request:

    ☐ Does not meet the requirements of <u>Cal. Rules of Court, rule 1.100</u>.

    ☐ Creates an undue financial or administrative burden for the court.

    ☐ Changes the basic nature of the court's service, program, or activity.

    Explain the reasons supporting the box(es) checked above:

    _____

    _____

    ☐ **Instead**, the court will provide the following accommodation(s):

    _____

    _____

**The court will provide the accommodation(s):**

☐ For the date(s) and time(s) requested    ☐ Indefinitely

☐ On date(s): *future courts hearings, unless trials or other evidentiary hearings where*

☐ More information on this decision is attached. *Physical attendance is necessary.*

Date: *1.09.26*

*Arthur C Hester*
Type or print name

▶ *[signature]*
Signature

The court responded in person, by phone, or mail/email on: _____

**Note**: You may be able to ask for a review of this decision.
<u>Cal. Rules of Court, rule 1.100(g)</u> explains how to do this.

Rev. January 1, 2021

**Disability Accommodation Request**

MC-410, Page 2 of 2

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]  [ Save this form ]  [ Clear this form ]

# EXHIBIT F-3

## Loss of In-Home Caregiving Evidence

*Prepared for Exhibit Binder (reordered/retabbed)*

# EXHIBIT F-3 — Loss of In-Home Caregiving Evidence (Summary)

- Declarant statement: payments to in-home aide Rosario Sandoval have been reduced due to financial constraints; weekly support decreased from approximately $750+ per week to approximately $450 or less per week.
- Declarant statement: currently owes Rosario Sandoval approximately $2,500 in unpaid amounts.
- Attached: Chase/Zelle recipient activity history showing payment amounts and dates for Rosario Sandoval.

*Prepared for exhibit binder assembly. Summary reflects declarant's stated facts; underlying payment records follow.*

Send money with

**R**    # Rosario Sandoval   760-898-0873

Registered as ROSARIO SANDOVAL

👤 Personal account   |   🗓 Zelle® ID active since Jul 2019

---

### Amount

[                                    ]

Today's limit for this recipient is $0.00.

### Message to recipient

[ What's this for?                   ]

Character limit: 140

### Pay from

[ SAPPHIRE CHECKING (...5381) --     ]

### Send on

[ 01/20/2026                         ]

When will my money get there?

We update your account activity with payments on the send-on date.

### Rosario Sandoval Activity

| Date sent | Status | Type | Amount |
|---|---|---|---|
| Jan 12, 2026 | Completed | In moments ⓘ | $550.00 |
| Jan 11, 2026 | Completed | In moments ⓘ | $45.00 |
| Oct 3, 2025 | Completed | In moments ⓘ | $650.00 |
| Aug 15, 2025 | Completed | In moments ⓘ | $1,350.00 |
| Aug 1, 2025 | Completed | In moments ⓘ | $600.00 |
| Jul 25, 2025 | Completed | In moments ⓘ | $1,500.00 |
| Jul 16, 2025 | Completed | In moments ⓘ | $2,685.00 |
| Jul 15, 2025 | Completed | In moments ⓘ | $750.00 |
| Jul 14, 2025 | Completed | In moments ⓘ | $750.00 |
| Jun 30, 2025 | Completed | In moments ⓘ | $3,200.00 |
| May 2, 2025 | Completed | In moments ⓘ | $2,100.00 |
| Apr 14, 2025 | Completed | In moments ⓘ | $2,845.00 |

| Date sent | Status | Type | | Amount |
|-----------|--------|------|---|--------|
| Mar 29, 2025 | Completed | In moments | ⓘ | $1,350.00 |
| Dec 8, 2024 | Completed | In moments | ⓘ | $400.00 |
| Dec 7, 2024 | Completed | In moments | ⓘ | $200.00 |
| Dec 7, 2024 | Completed | In moments | ⓘ | $3,100.00 |
| Dec 7, 2024 | Completed | In moments | ⓘ | $1,400.00 |
| Dec 6, 2024 | Completed | In moments | ⓘ | $4,410.00 |

You've reached the end of your activity.

# EXHIBIT F-4

Medical Impact / Treatment Disruption Evidence

---

*Prepared for Exhibit Binder - v8 (standardized cover)*

SUPPLEMENTAL DECLARATION OF AUDREY LITTLE
IN SUPPORT OF MOTION TO ADVANCE CASE MANAGEMENT CONFERENCE

[¶ 1] I am a disabled individual with significant and ongoing medical conditions. My health is highly sensitive to prolonged stress, disruption of treatment, and physical overexertion. Procedural delay in this case is materially worsening my health and placing me at risk of permanent physical injury.

[¶ 2] I have a history of breast cancer and chronic autoimmune illness. My treating physicians have emphasized the importance of minimizing prolonged stress due to its impact on immune and inflammatory responses. Since this case began, sustained uncertainty, financial strain, and the risk of losing my home have caused a significant escalation of stress-related symptoms.

[¶ 3] For the first time since approximately 2009, I have experienced a flare of microscopic colitis, which is 100% stress-agitated. Due to the severity of symptoms, my physicians have recommended a colonoscopy and endoscopy. These symptoms arose during the pendency of this case.

[¶ 4] I have experienced new physical symptoms that I have never previously had, including persistent night sweats, unexplained body odor, hair loss, and immune-related issues. During this same period, I developed an ear infection for the first time in my life.

[¶ 5] I am a breast cancer survivor, having been diagnosed in 2017 and remaining cancer-free. Stress is a medically recognized risk factor for recurrence. Many of the physical stress responses I experience, including night sweats, are involuntary and not subject to conscious control.

[¶ 6] Due to the financial impact of this case, I have been forced to discontinue medically necessary therapies not covered by insurance. I have lost approximately three months of therapy that previously required approximately four hours per week.

[¶ 7] Based on my treatment history and medical guidance, therapy interruption has a compounding effect. Each month of missed therapy typically requires approximately two

to two and a half months of increased therapy to recover lost function. As a result, recovery is now projected to require approximately five months at approximately nine hours per week.

[¶ 8] I have also been unable to participate in adaptive physical education activities, which typically require approximately twelve hours per week and are critical to maintaining strength and preventing surgical intervention.

[¶ 9] Due to financial strain, I have been forced to reduce long-standing in-home assistance that I relied on for over twenty years. As a result, I have performed physical tasks beyond my medical limitations.

[¶ 10] As a direct result, I sustained a shoulder injury and am scheduled to undergo an MRI on January 9, 2026.

[¶ 11] I have sought ongoing medical care from my primary physician and pain management physician and am now being referred to an orthopedic surgeon due to progression of injury.

[¶ 12] Continued delay places me at risk of requiring surgical intervention that could result in an estimated sixty percent loss of mobility.

[¶ 13] Continued delay also increases the risk that I may lose my home, which was specifically designed to accommodate my physical limitations. Relocation would place me at significant risk of serious physical injury.

[¶ 14] The cumulative effect of prolonged delay places me at risk of irreparable physical harm. Advancing the Case Management Conference will allow the Court to promptly address scheduling and prevent further injury.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _____, at _____, California.

_____

Audrey Little

Plaintiff in Pro Per



# G

## Counsel / Escrow Obstruction

# EXHIBIT G-1

Emails - Teri Hill

Failure to resolve will result in the Second Amended Complaint being filed first thing Tuesday morning, December 2, 2025.

Sincerely,
Audrey Little
Plaintiff, In Propria Persona
81439 Merv Griffin Way, La Quinta, CA 92253
(310) 283-4448 | audreylittle458@gmail.com

Attachments – exactly these five files:
A. Nov-4-2025_Krishna-Moldovan_Executive_Email_Chain.pdf
B. Our-Companies_Rocket-Companies.pdf
C. Our-Philosophies_Rocket-Companies.pdf
D. Document-Request-Log_17-Refusals.pdf
E. Rocket_Fraud_and_Concealment_Timeline.pdf (the one-page timeline + cost comparison we just finalized)

A



**heather.pdf**

**Our Companies _ Rocket Companies.pdf**

**Our Philosophies _ Rocket Companies.pdf**

**KEY DATE EX E.pdf**

Requested Titl report Teri Hill , Stacey Holubec, Heather Moldovan, Philip Glass, Olivier Lebarre Beginning 10-1-2025 through Yesterday. I will have to charge you to pull everyone and that will take too much time.

A. Nov-4-2025_Krishna-Moldovan_Executive_Email_Chain.pdf
B. Our-Companies_Rocket-Companies.pdf
C. Our-Philosophies_Rocket-Companies.pdf
D. Document-Request-Log_17-Refusals.pdf
E. Rocket_Fraud_and_Concealment_Timeline.pdf (the one-page timeline + cost comparison we just finalized)

A



**heather.pdf**

**Our Companies _ Rocket Companies.pdf**

**Our Philosophies _ Rocket Companies.pdf**

**KEY DATE EX E.pdf**
50 KB

Requested Titl report Teri Hill , Stacey Holubec, Heather Moldovan, Philip Glass, Olivier Lebarre Beginning 10-1-2025 through Yesterday. I will have to charge you to pull everyone and that will take too much time.

# EXHIBIT G-2

Emails - Stacey Holubec

*Prepared for Exhibit Binder - v2 (reordered/retabbed)*

From: **Audrey Little** audreylittle@mac.com
Subject: Fwd: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required
Date: November 20, 2025 at 5:09 PM
To: Heather Moldovan HeatherMoldovan@rocketclose.com, Stacey Holubec StaceyHolubec@rocketclose.com
Cc: Zeeshan Iqbal ZIqbal@hinshawlaw.com



I am providing this as proof that I am filing a TRO within the hour.  Your attorney cannot accept service on your behalf so this is your notice.  I will also serve you brie edervice ,

Begin forwarded message:

**From:** Audrey Little <audrey.little@gmail.com>
**Subject: Fwd: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required**
**Date:** November 20, 2025 at 4:07:47 PM PST
**To:** "Olivier J. Labarre" <olabarre@wrightlegal.net>, Zeeshan Iqbal <ZIqbal@hinshawlaw.com>

FYI

Begin forwarded message:

**From:** Audrey Little <audrey.little@gmail.com>
**Subject: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required**
**Date:** November 20, 2025 at 4:07:10 PM PST
**To:** Jon Epstein <jepstein@oaktreefunding.com>, Teague Robert <rteague@oaktreefunding.com>, "Goldstein Jason E." <jgoldstein@buchalter.com>, info@myloanservicer.com, My Loan Servicer <noreply-servicing@myloanservicer.com>
**Reply-To:** audrey.little458@gmail.com

# SUBJECT: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required

**DATE:** Today
**FROM:** Audrey Little
**TO:** Oak Tree Funding Corp., Loan Servicer, and Counsel
**RE:** Loan on 81439 Merv Griffin Way, La Quinta, CA 92253

Dear Oak Tree Funding Corp. and Loan Servicer:

This email is **formal legal notice** that the loan on my property at **81439 Merv Griffin Way, La Quinta, CA 92253** is in **active dispute** due to:

- multiple **escrow instruction violations**,

- **failure to verify lien priority before disbursement**,

- reliance on a **stale title report**,

- and the loan recording in **THIRD** position instead of the instructed second position.

This has rendered the loan **defective and not enforceable as written**.

# 1. Your refusal to act caused the November 16 bounced payment

I requested **forbearance** multiple times.

Oak Tree told me to contact the servicer.
The servicer told me today that they **cannot act until Oak Tree approves it**.

Meanwhile, the only responses I received from the servicer were:

"We are looking into it "



# CPL Paid, Invoked & Ignored / Document Requests

# EXHIBIT H-0

Proof CPL Fee Paid (invoice line item)

Adaxa, LLC
6930 E Chauncey Ln Ste 210
Phoenix, AZ 85054

Phone Number: (402) 525-3079

## MORTGAGE INVOICE

Date:          7/1/2025

Client Name:   Oaktree Funding Corporation          Order Number:      74346744

Loan Number: 22025050036          Property Address:  81439 Merv Griffin Way
                                                     La Quinta, CA 92253-8084
Loan Amount:   $750,000.00


Total Premium Due:          $575.00


**Additional Charges and Available Endorsements:**

| | |
|---|---|
| Insured Closing Protection Letter | $0.00 |
| ALTA 8.1 Environmental Protection Lien | $0.00 |
| ALTA 5 Planned Unit Development | $0.00 |
| ALTA 9 Restrictions, Encroachments, Minerals | $0.00 |

Underwriter portion of premium: $57.50 , Agent portion of premium: $517.50

---

Issued By:  Rocket Close and Title, Inc          Agent for:  Rocket Title Insurance Company
            17785 Center Court Dr. N., Suite 760
            Cerritos, CA 90703          Countersigned By: Rocket Close and Title, Inc
            Phone: (866) 948-7627
            Fax: (877) 380-4101
            Email: clientrelations@rocketclose.com
            Website: www.rocketclose.com

            Nicole Beattie, Agent

ALTA COMMITMENT - Mortgage Invoice

# EXHIBIT H-1

CPL Invocation Email - 12/10/2025

Prepared for Exhibit Binder - v2 (reordered/retabbed)

From: **Audrey Little** audreylittle458@gmail.com
Subject: Thank you and clarification of my letter to Rocket that you were copied on
Date: December 10, 2025 at 10:49 PM
To: Goldstein, Jason E. jgoldstein@buchalter.com, Teague Robert rteague@oaktreefunding.com



Subject: Follow-Up on Rocket Closing Error, CPL Breach, and Required TRO Filing

Jason and Robert,

Thank you for finally sending me the documents I requested.

Now that the key documents are finally in hand, the complete sequence of the July 2025 closing is no longer ambiguous. The escrow instructions, the outdated title report, Oaktree's claim letter, and Rocket's own denial confirm exactly what I have been explaining for months: the defect occurred at closing, the lien was already of record, the required verification was never performed, and Rocket funded the loan in the wrong lien position.

You now have the same facts I have had to piece together without assistance. Those facts confirm that I was correct in my assessment from the beginning. This was never a borrower issue. It was a closing-date defect resulting directly from Rocket's failure to follow written escrow instructions and its breach of the CPL obligations under Insurance Code §§ 12340.1–12340.11.

Because neither Rocket nor Oaktree took corrective action when the defect was first identified, and because the loan has continued to be treated as enforceable despite being funded in an invalid lien position, I no longer have discretion regarding next steps. I must proceed with my Temporary Restraining Order and the Second Amended Complaint to prevent further harm.

I want to make one point absolutely clear: my goal has always been to resolve the lien-priority defect and stop the ongoing damage created by Rocket's error. Oaktree did not cause the error. Rocket did. Once Rocket corrects the lien-priority defect and satisfies the financial consequence of its own closing mistake, I will immediately dismiss Oaktree from the litigation. Your continued involvement exists only because Rocket's conduct has made it unavoidable.

However, until Rocket takes responsibility and the lien is corrected, I cannot delay the TRO filing. The harm continues daily, and the courts must now intervene to prevent further loss created by a closing that did not follow the governing instructions.

I am sending this follow-up so that there is no misunderstanding about (1) the reason the defect occurred, (2) the reason the TRO is now required, and (3) the reason Oaktree remains in the case only temporarily and solely because of Rocket's actions and Oaktree's refusal to pause billing—an issue that may ultimately determine how the matter is resolved.

If Rocket resolves the defect promptly, this becomes a Rocket-only matter. If Rocket continues to delay, the court will resolve it.

Please govern yourselves accordingly.

Sincerely,


Audrey Little
81439 Merv Griffin Way
La Quinta, CA 92253
310-283-4448

audrey.little458@gmail.com

# EXHIBIT H-2

Requests for CPL Copy, Appeals, Escrow File, Claim File

**From:** **Audrey Little** audreylittle@icloud.com
**Subject:** Request for Closing Protection Letter – Order No. 74346744 / Loan No. 22025050036
**Date:** December 14, 2025 at 8:10 PM
**To:** Heather Moldovan HeatherMoldovan@rocketclose.com, Client Resolution clientresolution@rocketclose.com, Iqbal, Zeeshan ZIqbal@hinshawlaw.com, Olivier J. Labarre olabarre@wrightlegal.net
**Cc:** Goldstein, Jason E. jgoldstein@buchalter.com
**Bcc:** Teague Robert rteague@oaktreefunding.com

## Subject: Request for Closing Protection Letter – Order No. 74346744 / Loan No. 22025050036

Dear [Rocket Close / Rocket Title] Team,

Please provide a copy of the **Closing Protection Letter** issued in connection with **Order No. 74346744 / Loan No. 22025050036** for **Oaktree Funding Corporation**. Your **July 1, 2025 Mortgage Invoice** for this transaction expressly reflects issuance of an **"Insured Closing Protection Letter – $0.00."** I am requesting the CPL document itself, including its operative terms, as it governs the closing-stage obligations and is directly relevant to pending court filings. Please let me know when I can expect delivery.

Thank you,
Audrey Little
81439 Merv Griffin Way
La Quinta, CA 92253
310-283-4448
audrey.little458@gmail.com

**From:** **Audrey Little** audreylittle@icloud.com
**Subject:** Request for CPL Coverage Determination – Attn: Ginny Lafferty
**Date:** December 29, 2025 at 9:39 PM
**To:** claims@rockettc.com
**Cc:** Audrey Little audreylittle@icloud.com, Olivier J. Labarre olabarre@wrightlegal.net, Goldstein, Jason E. jgoldstein@buchalter.com

To Whom It May Concern,

I am writing to request a **formal coverage determination under the Closing Protection Letter ("CPL")** issued in connection with the July 2025 closing.

This correspondence is **limited solely to CPL applicability**.

## Undisputed Escrow Failure

Both Rocket and Oaktree have already **acknowledged in writing** that the escrow agent **failed to follow written escrow instructions**, resulting in the loan being funded and recorded in an **impaired lien priority position at inception**. That escrow failure is not in dispute.

The defect existed as of the closing date. It was not caused by borrower conduct and did not arise post-closing.

## CPL Coverage Trigger

The CPL exists precisely to protect against **loss arising from an escrow agent's failure to comply with written instructions in connection with a closing**. Because escrow's failure is undisputed, the only remaining issue is **whether CPL coverage applies**, not causation.

## Loss Occurred at Impairment, Not Foreclosure

Any assertion that there is "no loss yet" is legally incorrect under California law.

California courts recognize that **loss occurs at the moment a lien is impaired**, not at foreclosure or liquidation. The injury is immediate because the insured bargained for and paid for a specific lien priority that was never delivered, resulting in diminished security and increased risk from inception.

Foreclosure is not a prerequisite to loss. It is merely a potential downstream consequence.

## Request

This matter has not been evaluated as a **stand-alone CPL coverage issue**, despite the acknowledged escrow failure. I therefore request that you:

1. Confirm the existence and applicability of the CPL issued for this transaction;

2. Confirm that escrow's acknowledged failure to follow written instructions triggered CPL coverage; and

3. Provide a written CPL coverage determination **without reliance on foreclosure-based or "no loss yet" defenses**.

**Failure to provide a written CPL coverage determination within ten (10) days of this letter will be treated as a refusal to honor CPL obligations.**

This request is made in good faith to allow CPL obligations to be evaluated and resolved promptly.



**From:** **Audrey Little** audreylittle458@gmail.com 📎
**Subject:** Request for CPL Coverage Determination – Attn: Ginny Lafferty
**Date:** December 30, 2025 at 10:45 AM
**To:**
**Cc:** Audrey Little audreylittle458@gmail.com



**CPL_Coverage_Reques
t_Little_2025-09-29...**
4 KB

To Whom It May Concern,

I am writing to request a **formal coverage determination under the Closing Protection Letter ("CPL")** issued in connection with the July 2025 closing.

This correspondence is **limited solely to CPL applicability**.

## Undisputed Escrow Failure

Both Rocket and Oaktree have already **acknowledged in writing** that the escrow agent **failed to follow written escrow instructions**, resulting in the loan being funded and recorded in an **impaired lien priority position at inception**. That escrow failure is not in dispute.

The defect existed as of the closing date. It was not caused by borrower conduct and did not arise post-closing.

## CPL Coverage Trigger

The CPL exists precisely to protect against **loss arising from an escrow agent's failure to comply with written instructions in connection with a closing**. Because escrow's failure is undisputed, the only remaining issue is **whether CPL coverage applies**, not causation.

## Loss Occurred at Impairment, Not Foreclosure

Any assertion that there is "no loss yet" is legally incorrect under California law.

California courts recognize that **loss occurs at the moment a lien is impaired**, not at foreclosure or liquidation. The injury is immediate because the insured bargained for and paid for a specific lien priority that was never delivered, resulting in diminished security and increased risk from inception.

Foreclosure is not a prerequisite to loss. It is merely a potential downstream consequence.

## Request

This matter has not been evaluated as a **stand-alone CPL coverage issue**, despite the acknowledged escrow failure. I therefore request that you:

1. Confirm the existence and applicability of the CPL issued for this transaction;

2. Confirm that escrow's acknowledged failure to follow written instructions triggered CPL coverage; and

3. Provide a written CPL coverage determination **without reliance on foreclosure-based or "no loss yet" defenses**.

**Failure to provide a written CPL coverage determination within ten (10) days of this letter will be**

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** Has Oakree submitted a claim under the CPL second request for response.
**Date:** January 8, 2026 at 10:36 AM
**To:** Goldstein, Jason E.  jgoldstein@buchalter.com
**Cc:** Audrey Little  audreylittle458@gmail.com

If so when?
If not why?

Regards,

Audrey Little
audreylittle458@gmail.com

# EXHIBIT H-3

Follow-Ups Showing Silence / No Response

*Prepared for Exhibit Binder - v2 (reordered/retabbed)*

**From:** **Audrey Little** audreylittle@icloud.com
**Subject:** Hi Please at least confirm
**Date:** December 17, 2025 at 10:55 AM
**To:** Olivier J. Labarre olabarre@wrightlegal.net



Was a CPL issued.  Olivier this is seriously impacting every area of my life especially my health.

I really need to know and get a copy please.  I am filing the new active complaint today and you will receive it.  As of now Title probably looks the best in it. Please



**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** cpl
**Date:** December 22, 2025 at 12:56 PM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com

Hi,

Has Oaktree submitted a claim for CPL coverage? If not does it plan to? I requested a copy of the CPL that is indicated in my file but I do not have a copy.  It was not in the documents I received from Robert.

Hope you are well.

Audrey

**From:** **Audrey Little** audreylittle@icloud.com
**Subject:** CPL
**Date:** December 26, 2025 at 10:03 AM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com, Olivier J. Labarre olabarre@wrightlegal.net
**Cc:** Audrey Little audreylittle@icloud.com

Was a CPL (closing protection letter) issued for my loan?



# Enterprise / Corporate Knowledge, Assignment & Continued Notice

# EXHIBIT N-1

Escalation to Rocket Companies (Enterprise Notice)

**From:** **Audrey Little** audrey.little@gmail.com
**Subject:** Thank you so much!
**Date:** November 4, 2025 at 2:38 PM
**To:** Krishna Varun Varun@rocket.com



Warmest Regards,
Audrey

Sent from my iPhone

> On Nov 4, 2025, at 11:05 AM, Krishna, Varun <Varun@rocket.com> wrote:
>
>
> Thank you for reaching out and sharing the background on this, Audrey. I'm adding Heather Moldovan here - she'll connect with you directly to review the details and coordinate next steps.
>
> – varun
>
> ---
>
> **From:** Audrey Little <audrey.little@gmail.com>
> **Sent:** Tuesday, November 4, 2025 12:35 PM
> **To:** Krishna, Varun <varunkrishna@rocketcompanies.com>
> **Cc:** Rocket Companies Investor Relations <ir@rocketcompanies.com>; Rocket Mortgage Inclusion Support <Assist@rocketmortgage.com>; RocketProTPOTitleClearance@amrock.com; Rocket Close Funding <AmrockFunding@amrock.com>; orders@rockettitle.com
> **Subject:** [External] Request for Single Executive Point of Contact — Cross-Entity Compliance Matter
>
>
> To: Office of the CEO — Varun Krishna
> Cc: ir@rocket.com; independentdirectors@rocketcompanies.com; Assist@RocketMortgage.com; RocketProTPOTitleClearance@amrock.com; AmrockFunding@amrock.com; orders@rockettitle.com
> Subject: Request for Single Executive Point of Contact — Cross-Entity Compliance Matter
>
> Dear Mr. Krishna and Office of the CEO,
>
> I'm writing to request a single executive point of contact to coordinate resolution of a cross-entity issue involving Rocket Mortgage, Rocket Close (Amrock), and Rocket Title Insurance Company.
>
> I've attached an Executive Summary and a detailed letter outlining the timeline and supporting facts. The situation is fully solvable with coordinated action, but thus far internal departments have deferred responsibility rather than aligning to address the matter.
>
> Why I'm elevating this to your office:
> • The matter concerns lien priority, title accuracy, and escrow/title obligations.
> • If not resolved promptly, it risks seven-figure losses for both Rocket and me.
> • Based on the obligations outlined, Rocket would likely bear that cost.
> • My objective is cooperation and timely resolution, not litigation.
>
> My request:
> Please designate one senior leader with authority across the above entities to receive my

packet and coordinate a cure. I am ready to provide anything needed and to work collaboratively toward resolution.

If acceptable, I can transmit the full packet securely today and am available for a call at your earliest convenience.

Thank you for your time and attention. I am committed to a cooperative and fair resolution.

Sincerely,
Audrey Little
Phone: 310-283-4448
Email: Audrey.Little458@gmail.com

Attachments:
• Executive Summary – Cross-Entity Compliance Matter (PDF)
• Long Letter with Timeline

From: **Audrey Little** audrey.little@gmail.com
Subject: Re: [External] Request for Single Executive Point of Contact — Cross-Entity Compliance Matter
Date: November 4, 2025 at 2:34 PM
To: Moldovan Heather  HeatherMoldovan@rocketclose.com
Cc: Krishna Varun  Varun@rocket.com



Thank you both for writing me back so quickly. I cannot tell you how much it means to me. If you heard my voice, you would know I'm just trying to resolve this the best way possible for everybody. I finally had to escalate because it's like your kids won't play together and it's creating huge financial problems for me and oak tree.

NEvery day this goes forward losses, grow on the on my side and oak trees and it's really simple.

The two biggest defenses so far have been blame, shifting to me, which is unreasonable and rocket title and close pointing fingers at one another. I need a single point of contact that's going deal with this.

I'm not the insured via title insurance, but the continued no basis denial affects me financially in large way and if they don't pay the claim rocket clothes will be in for a major lawsuit along with reporting to regulatory bodies and I really don't wanna do that.

Should rocket title insurance continue to deny the claim in bad faith and not baby I  take care of this then it's going to force me to sell my home or force oak tree to modify the mortgage. Both of those are damages in the millions versus $393,000.

Again, thank you so much for your prompt responses. I feel so much better just seeing them.

Warmest Regards,
Audrey

Sent from my iPhone

> On Nov 4, 2025, at 1:46 PM, Moldovan, Heather <HeatherMoldovan@rocketclose.com> wrote:
>
> Thank you for the add, Varun.
>
> Audrey, I am reviewing the file and will respond once I've had a chance to review the attachments.
>
> Thank you,
>
>  <image001.png>
>
> **Heather Moldovan**
> Vice President, Rocket Close Operations | Rocket Close
>
> T (313) 782-0019
> F (877) 385-2393
>
> 662 Woodward, Detroit, MI 48226
>
> **From:** Krishna, Varun <Varun@rocket.com>
> **Sent:** Tuesday, November 4, 2025 2:05 PM
> **To:** Audrey Little <audrey.little@gmail.com>
> **Cc:** Moldovan, Heather <HeatherMoldovan@rocketclose.com>
> **Subject:** RE: [External] Request for Single Executive Point of Contact — Cross-Entity Compliance Matter
>
> Thank you for reaching out and sharing the background on this, Audrey. I'm adding Heather Moldovan here - she'll connect with you directly to review the details and coordinate next steps.
>
> – varun

# EXHIBIT N-2

Assignment to Rocket Close Leadership

**From:** Audrey Little <audrey.little@gmail.com>
**Sent:** Tuesday, November 4, 2025 12:35 PM
**To:** Krishna, Varun <varunkrishna@rocketcompanies.com>
**Cc:** Rocket Companies Investor Relations <ir@rocketcompanies.com>; Rocket Mortgage Inclusion Support <Assist@rocketmortgage.com>; RocketProTPOTitleClearance@amrock.com; Rocket Close Funding <AmrockFunding@amrock.com>; orders@rockettitle.com
**Subject:** [External] Request for Single Executive Point of Contact — Cross-Entity Compliance Matter


To: Office of the CEO — Varun Krishna
Cc: ir@rocket.com; independentdirectors@rocketcompanies.com; Assist@RocketMortgage.com; RocketProTPOTitleClearance@amrock.com; AmrockFunding@amrock.com; orders@rockettitle.com
Subject: Request for Single Executive Point of Contact — Cross-Entity Compliance Matter

Dear Mr. Krishna and Office of the CEO,

I'm writing to request a single executive point of contact to coordinate resolution of a cross-entity issue involving Rocket Mortgage, Rocket Close (Amrock), and Rocket Title Insurance Company.

I've attached an Executive Summary and a detailed letter outlining the timeline and supporting facts. The situation is fully solvable with coordinated action, but thus far internal departments have deferred responsibility rather than aligning to address the matter.

Why I'm elevating this to your office:
• The matter concerns lien priority, title accuracy, and escrow/title obligations.
• If not resolved promptly, it risks seven-figure losses for both Rocket and me.
• Based on the obligations outlined, Rocket would likely bear that cost.
• My objective is cooperation and timely resolution, not litigation.

My request:
Please designate one senior leader with authority across the above entities to receive my packet and coordinate a cure. I am ready to provide anything needed and to work collaboratively toward resolution.

If acceptable, I can transmit the full packet securely today and am available for a call at your earliest convenience.

Thank you for your time and attention. I am committed to a cooperative and fair resolution.

Sincerely,
Audrey Little
Phone: 310-283-4448
Email: Audrey.Little458@gmail.com

Attachments:
• Executive Summary — Cross-Entity Compliance Matter (PDF)

Executive Summary – Cross-Entity Compliance Matter (PDF)
• Long Letter with Timeline

# EXHIBIT N-3

Follow-Ups After Assignment (No Cure / No Pause)



**From:** **Audrey Little** audreylittle@mac.com
**Subject:** Fwd: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required
**Date:** November 20, 2025 at 5:09 PM
**To:** Heather Moldovan HeatherMoldovan@rocketclose.com, Stacey Holubec StaceyHolubec@rocketclose.com
**Cc:** Zeeshan Iqbal ZIqbal@hinshawlaw.com

---

I am providing this as proof that I am filing a TRO within the hour.  Your attorney cannot accept service on your behalf so this is your notice.  I will also serve you brie edervice ,

Begin forwarded message:

**From:** Audrey Little <audrey.little@gmail.com>
**Subject: Fwd: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required**
**Date:** November 20, 2025 at 4:07:47 PM PST
**To:** "Olivier J. Labarre" <olabarre@wrightlegal.net>, Zeeshan Iqbal <ZIqbal@hinshawlaw.com>

FYI

Begin forwarded message:

**From:** Audrey Little <audrey.little@gmail.com>
**Subject: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required**
**Date:** November 20, 2025 at 4:07:10 PM PST
**To:** Jon Epstein <jepstein@oaktreefunding.com>, Teague Robert <rteague@oaktreefunding.com>, "Goldstein Jason E." <jgoldstein@buchalter.com>, info@myloanservicer.com, My Loan Servicer <noreply-servicing@myloanservicer.com>
**Reply-To:** audrey.little458@gmail.com

# SUBJECT: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required

**DATE:** Today
**FROM:** Audrey Little
**TO:** Oak Tree Funding Corp., Loan Servicer, and Counsel
**RE:** Loan on 81439 Merv Griffin Way, La Quinta, CA 92253

---

Dear Oak Tree Funding Corp. and Loan Servicer:

This email is **formal legal notice** that the loan on my property at **81439 Merv Griffin Way, La Quinta, CA 92253** is in **active dispute** due to:

- multiple **escrow instruction violations**,

- **failure to verify lien priority before disbursement**,

- reliance on a **stale title report**,

- and the loan recording in **THIRD** position instead of the instructed second position.

This has rendered the loan **defective and not enforceable as written**.

# 1. Your refusal to act caused the November 16 bounced payment

I requested **forbearance** multiple times.

Oak Tree told me to contact the servicer.
The servicer told me today that they **cannot act until Oak Tree approves it**.

Meanwhile, the only responses I received from the servicer were:

"We are looking into it."

Your failure to act, combined with your internal contradictions, **directly caused the November 16 payment to bounce**.

You—not me—created the delinquency risk.

# 2. Because the loan is disputed NO negative credit reporting is permitted

Under **15 U.S.C. §1681s-2(a)(3)** and California's CCRAA:

You are **prohibited** from reporting:

- the November 16 bounced payment,

- any late payment,

- any delinquency,

- any derogatory information,

- against **me or my son** (co-borrower).

Any reporting after this notice will be treated as:

- **knowing FCRA violation**,

- **CCRAA violation**,

- **servicing misconduct**,

- and will result in immediate legal action and damages.

# 3. Effective immediately — all activity must STOP

STOP

Upon receipt of this email, you must:

✔ **Mark the loan as DISPUTED**

✔ **Freeze all negative credit reporting**

✔ **Stop all auto-pay attempts**

✔ **Stop all fees, penalties, and collection actions**

✔ **Freeze loan status pending resolution of the lien defect**

Any action after this notice will expose you to **statutory and punitive damages**.

# 4. Emergency TRO is being filed today

Because Oak Tree and the servicer failed to act on repeated forbearance requests, I am filing an **Emergency Temporary Restraining Order today** in Riverside County Superior Court.

The TRO will seek:

- unconditional forbearance,

- a full freeze on credit reporting,

- a freeze on collection,

- and protection for both borrowers.

After filing, any reporting also becomes **contempt of court**.

# 5. REQUIRED RESPONSE — Deadline: Tomorrow, 12:00 p.m.

You must respond **IN WRITING by tomorrow at 12:00 p.m.** confirming:

1. Loan is marked **DISPUTED**

2. All credit reporting is **frozen**

3. November 16 payment **will not be reported**

4. Auto-pay is **disabled**

5. Loan status is **frozen** pending TRO

6. Oak Tree is acting on my forbearance request

****Non-response = bad faith + willful

## ****Non-response – bad faith + willful violation****

If I do not receive a written confirmation by **12:00 p.m. tomorrow**, your silence will be treated as:

- **acknowledgment of receipt**,

- **deliberate refusal to protect borrowers**,

- **bad faith**,

- **knowing violation of FCRA/CCRAA**,

- and this email will be filed with the Court as **Exhibit A**.

I will seek all available damages and sanctions.

---

Sincerely,
**Audrey Little**
81439 Merv Griffin Way
La Quinta, CA 92253
310-283-4448
Audrey.little458@gmail.com



**From:** **Audrey Little** audrey.little@gmail.com
**Subject:** Fwd: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required
**Date:** November 20, 2025 at 4:07 PM
**To:** Olivier J. Labarre olabarre@wrightlegal.net, Zeeshan Iqbal ZIqbal@hinshawlaw.com

---

FYI

Begin forwarded message:

**From:** Audrey Little <audrey.little@gmail.com>
**Subject: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required**
**Date:** November 20, 2025 at 4:07:10 PM PST
**To:** Jon Epstein <jepstein@oaktreefunding.com>, Teague Robert <rteague@oaktreefunding.com>, "Goldstein Jason E." <jgoldstein@buchalter.com>, info@myloanservicer.com, My Loan Servicer <noreply-servicing@myloanservicer.com>
**Reply-To:** audrey.little458@gmail.com

# SUBJECT: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required

**DATE:** Today
**FROM:** Audrey Little
**TO:** Oak Tree Funding Corp., Loan Servicer, and Counsel
**RE:** Loan on 81439 Merv Griffin Way, La Quinta, CA 92253

---

Dear Oak Tree Funding Corp. and Loan Servicer:

This email is **formal legal notice** that the loan on my property at **81439 Merv Griffin Way, La Quinta, CA 92253** is in **active dispute** due to:

- multiple **escrow instruction violations**,

- **failure to verify lien priority before disbursement**,

- reliance on a **stale title report**,

- and the loan recording in **THIRD** position instead of the instructed second position.

This has rendered the loan **defective and not enforceable as written**.

# 1. Your refusal to act caused the November 16 bounced payment

I requested **forbearance** multiple times.

Oak Tree told me to contact the servicer.

The servicer told me today that they **cannot act until Oak Tree approves it**.

Meanwhile, the only responses I received from the servicer were:

"We are looking into it."

Your failure to act, combined with your internal contradictions, **directly caused the November 16 payment to bounce**.

You—not me—created the delinquency risk.

# 2. Because the loan is disputed NO negative credit reporting is permitted

Under **15 U.S.C. §1681s-2(a)(3)** and California's CCRAA:

You are **prohibited** from reporting:

- the November 16 bounced payment,
- any late payment,
- any delinquency,
- any derogatory information,
- against **me or my son** (co-borrower).

Any reporting after this notice will be treated as:

- **knowing FCRA violation**,
- **CCRAA violation**,
- **servicing misconduct**,
- and will result in immediate legal action and damages.

# 3. Effective immediately — all activity must STOP

Upon receipt of this email, you must:

✔ **Mark the loan as DISPUTED**

✔ **Freeze all negative credit reporting**

✔ **Stop all auto-pay attempts**

✔ **Stop all fees, penalties, and collection actions**

✔ **Freeze loan status pending resolution of the lien defect**

Any action after this notice will expose you to **statutory and punitive damages**.

# 4. Emergency TRO is being filed today

Because Oak Tree and the servicer failed to act on repeated forbearance requests, I am filing an **Emergency Temporary Restraining Order today** in Riverside County Superior Court.

The TRO will seek:

- unconditional forbearance,
- a full freeze on credit reporting,
- a freeze on collection,
- and protection for both borrowers.

After filing, any reporting also becomes **contempt of court**.

# 5. REQUIRED RESPONSE — Deadline: Tomorrow, 12:00 p.m.

You must respond **IN WRITING by tomorrow at 12:00 p.m.** confirming:

1. Loan is marked **DISPUTED**
2. All credit reporting is **frozen**
3. November 16 payment **will not be reported**
4. Auto-pay is **disabled**
5. Loan status is **frozen** pending TRO
6. Oak Tree is acting on my forbearance request

# ****Non-response = bad faith + willful violation****

If I do not receive a written confirmation by **12:00 p.m. tomorrow**, your silence will be treated as:

- **acknowledgment of receipt**,
- **deliberate refusal to protect borrowers**,
- **bad faith**,
- **knowing violation of FCRA/CCRAA**,

- and this email will be filed with the Court as **Exhibit A**.

I will seek all available damages and sanctions.

---

Sincerely,
**Audrey Little**
81439 Merv Griffin Way
La Quinta, CA 92253
310-283-4448
Audrey.little458@gmail.com

# EXHIBIT N-4

Continued Notice with No Response

To:
Robert Teague, Oaktree Funding Corp.
Jonathan Epstein, Oaktree Funding Corp.
MyLoanServicer.com (Collections & Escalations)

---

I am done being misled, threatened, and ignored by Oaktree.

You knew the lien-priority defect originated with Rocket Close's escrow breach.
Yet instead of telling me the truth or granting temporary forbearance, you:

- **Threatened me with the FBI** over a 0% family loan listed exactly the way every borrower lists family loans.

- **Falsely stated** Oaktree "would need to foreclose" to show a loss — a statement directly contradicted by the controlling case law I provided to you.

- **Ignored my TRO notice issued on November 26, 2025.**

- **Continued collection** on a structurally defective, improperly secured loan.

- **Refused forbearance**, despite knowing this refinancing never should have closed.

- Escalated harm to my son **Jake (33)**, his wife, and their infant daughter.

Your misconduct is the direct cause of the **immediate emergency** now requiring court intervention.

I have incurred **$412,000** in compensatory damages as a result of Rocket Close's breach and your refusal to mitigate.
The payoff on the defective loan is **$716,580**.

You have until **3:00 p.m. PST today, December 1, 2025**, to:

## 1. Grant full temporary forbearance immediately (no payments, no late fees, no reporting)

## 2. Confirm in writing that no adverse credit action will be taken

## 3. Suspend all collection activity pending resolution

If you do NOT comply by the deadline:

- I will file the attached **Second Amended Complaint** tomorrow (Case No. CVPS2508295).

- I will seek a **Temporary Restraining Order** and **Preliminary Injunction** restraining all further collection, reporting, and enforcement.

- I will retain litigation-financing counsel, and Oaktree will be liable for attorney fees, Rosenthal damages, and punitive damages.

Your refusal to grant forbearance is the **immediate trigger** forcing me toward a potential forced sale — an irreparable harm the Court will not ignore.

**/s/ Audrey Little**

**Audrey Little**
(310) 283-4448
audreylittle458@gmail.com

**Attachment: Second Amended Complaint (Rocket + Oaktree + Servicer)
Attachments A–E**

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

**SAC2_Full3_TRO_with_
Lines_UPDATE2D.pdf**
129 KB

**Exhibit_Binder_With_N
arratives.pdf**
2.5 MB

# EXHIBIT N-5

Rocket Exhibit G — Notice of Claim (09/09/2025)

## EXHIBIT N-5 — Cross-Reference

The Oaktree Title Claim Submission / Notice of Claim pages are filed in Exhibit E-1.

See Exhibit E-1 for the Notice of Claim materials.

*(Cross-reference page to avoid duplicate exhibits)*

# EXHIBIT N-6

Rocket Exhibit H — Enterprise Notice Timeline

---

*Prepared for Exhibit Binder - v8 (standardized cover)*

# EXHIBIT N-6 — Cross-Reference

The communications / disclosure timeline email chain is filed in Exhibit N-1 (and related N-2 through N-4 tabs).

See Exhibit N-1 for the complete email chain, to avoid duplication.

*(Cross-reference page to avoid duplicate exhibits)*

# T

# Refusal to Pause / Continued Enforcement

# EXHIBIT T-1

Chronology/Table of Pause Requests

*Prepared for Exhibit Binder - v2 (reordered/retabbed)*

# Exhibit T — Chronology of Requests to Pause Billing / Enforcement

| Date | Recipient | Method | Request Made | Basis Stated | Response / Outcome |
|---|---|---|---|---|---|
| Nov 8, 2025 | Rocket Title / Amrock (Rocket Close) | Email (Ex Parte Notice) | Requested halt to enforcement pending cure | Lien priority defect; stale title; failure to cure | No cure; no pause granted |
| Nov 8, 2025 | Oaktree Funding (Teague / Epstein) | Email | Notice of impending court filing; implied request to pause enforcement pending resolution | Insured lien recorded in wrong position | No pause granted |
| Nov 10, 2025 | Oaktree (Teague / Epstein / Bowlby) | Email + phone attempts | Requested temporary forbearance and coordination with insurer | Loan insured; lien priority failure | No written response; redirected |
| Nov 17, 2025 | Oaktree Funding | Email (High Importance) | Formal request for immediate forbearance / pause of billing and reporting | Defective lien; insured loss; imminent harm | Denied / deflected to servicer |
| Nov 17, 2025 | Loan Servicer (Cornerstone / MyLoanServicer) | Email (QWR-style) | Formal request for forbearance and pause | Loan in dispute; title defect; lender instruction | Acknowledged only; no action taken |
| Nov 17, 2025 | Oaktree (Teague) | Email reply | Reiterated pause request; clarified servicer lacks authority | Oaktree is decision-maker | Refused; directed to servicer |
| Nov 19, 2025 | Oaktree Counsel (Goldstein) | Email + attachments | Renewed pause / forbearance request to avoid TRO | Prevent irreparable harm | No pause granted |
| Nov 25, 2025 | Oaktree Counsel (Goldstein) | Email | Explicit forbearance request | Loan invalid; enforcement creates harm | Refused; no forbearance |
| Nov 26, 2025 (AM) | Oaktree + Servicer | Email (TRO Notice) | Final request to pause billing, collections, and reporting | Emergency relief pending | No pause granted |
| Nov 26, 2025 (10:00 AM) | Oaktree Counsel + Servicer | Formal TRO Notice | Demand to halt enforcement pending hearing | Court rules compliance | Ignored; no pause |
| Dec 1, 2025 | Oaktree (Teague / Epstein) | Emails (FINAL NOTICE) | Immediate forbearance demanded | Loan unenforceable; insured defect | Explicit refusal; continued billing |
| Dec 2, 2025 | Oaktree Counsel | Email | Re-request pause prior to TRO hearing | Avoid judicial intervention | No pause granted |
| Dec 3, 2025 | Oaktree Counsel | Email | Again requested pause of enforcement | Prevent foreclosure / credit harm | No written approval |
| Dec 5–9, 2025 | Oaktree (Teague) | Emails | Repeated requests to stop billing and reporting | Loan invalid; known defect | No pause; billing continued |

# EXHIBIT T-2

Written Refusals / Continued Enforcement Records

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** Re: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from you I will not have a. Choice [IMAN-BUCHALTER.FID6170674]
**Date:** January 8, 2026 at 1:30 PM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com
**Cc:** Audrey Little audreylittle458@gmail.com

Thank you for responding.  Here is where I am, I am going to have to stop my caretaker immediately, I am disabled and I am going to need to sell.

I have tried not to hurt oaktree. You know that.

FYI they are complicit in the failing escrow if you look at the escrow instructions They required Oaktree to QC the loan prior and based on how It ended up and the evidence Robert gave me that did not occur.  Had it this loan was no title insurance in effect at the time of the loan which I don't know that anyone including title has realized based on the denial. I really have given you everything.

I did not know about this lien and I am the only one that followed escrow instructions.

All I requested was a. Pause so we could  get close to settle and they will and oak tree will be paid.  I have 100% evidence backed irrefutable suit against them that no amount of discovery will change.  I only need the pause lo suit if the pause.  This case will be over quickly so I do not understand why Oaktree would intentionally put me in this position,

Even if the pause is only for 160 days it's enough.


Regards,

Audrey Little
audreylittle458@gmail.com


On Jan 8, 2026, at 1:20 PM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Audrey:

To be clear, unless you are told that there will be what you have referred to as a pause, there is no pause.


**Buchalter LLP**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn


**Buchalter**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn


**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, January 8, 2026 10:07 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Re: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from
BUCHALTER.FID6170674]

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

Because the payment was made on the 29th and this is not the first time
I have asked for a pause until the noticed hearing can you please confirm yes or no not no answer as usual.


Regards,

Audrey Little
audreylittle458@gmail.com


On Jan 8, 2026, at 10:04 AM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Audrey:

That seems to be a standard and nice message.  How is it harassment?


Buchalter LLP

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** Re: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from you I will not have a. Choice [IMAN-BUCHALTER.FID6170674]
**Date:** January 8, 2026 at 1:22 PM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com
**Cc:** Audrey Little audreylittle458@gmail.com

Will they agree not to negatively report credit if I pay January on feb 5?

Regards,

Audrey Little
audreylittle458@gmail.com

On Jan 8, 2026, at 1:20 PM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Audrey:

To be clear, unless you are told that there will be what you have referred to as a pause, there is no pause.

**Buchalter LLP**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**Buchalter**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, January 8, 2026 10:07 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Re: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from BUCHALTER.FID6170674]

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

Because the payment was made on the 29th and this is not the first time
I have asked for a pause until the noticed hearing can you please confirm yes or no not no answer as usual.

Regards,

Audrey Little
audreylittle458@gmail.com

On Jan 8, 2026, at 10:04 AM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Audrey:

That seems to be a standard and nice message.  How is it harassment?

**Buchalter LLP**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** **Goldstein, Jason E.** jgoldstein@buchalter.com 📎

**Subject:** RE: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from you I will not have a. Choice [IMAN-BUCHALTER.FID6170674]

**Date:** January 8, 2026 at 1:20 PM

**To:** Audrey Little  audreylittle458@gmail.com

**Cc:** Goldstein, Jason E.  jgoldstein@Buchalter.com

Audrey:

To be clear, unless you are told that there will be what you have referred to as a pause, there is no pause.

**Buchalter LLP**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**Buchalter**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, January 8, 2026 10:07 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Re: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from y
BUCHALTER.FID6170674]

> This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

Because the payment was made on the 29th and this is not the first time
I have asked for a pause until the noticed hearing can you please confirm yes or no not no answer as usual.

Regards,

Audrey Little
audreylittle458@gmail.com

On Jan 8, 2026, at 10:04 AM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Audrey:

That seems to be a standard and nice message.  How is it harassment?

**Buchalter LLP**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**Buchalter**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800

# EXHIBIT T-3

Rocket Exhibit M — Counsel Notice / Refusal to Pause + Billing Materials

**From:** **My Loan Servicer** noreply-servicing@myloanservicer.com
**Subject:** 24/7 access to your mortgage is ready!
**Date:** August 8, 2025 at 2:06 PM
**To:** audrey.little@gmail.com







**As a reminder, the servicing of your mortgage transferred to Oaktree Funding Corp.** Our goal is to make homeownership easy and convenient, and we hope you've had a smooth transition. We are happy to serve you!

We're mailing you a letter with your **new loan number** and other details. You can also visit website to explore new ways to manage your mortgage, make payments, and more.

## SET UP YOUR NEW ONLINE ACCOUNT TODAY!

Our secure and easy-to-use website & app help you manage your mortgage anytime, anywhere.

**> LEARN MORE**

**Step 1:** To register, click here or download our LoanNav mobile app.

**Step 2:** Enter your last name, SSN or EIN/TIN, and email address. Click *next* to verify your information.

**Step 3:** View and accept our user terms and privacy policy.

Gain 24/7 access!

## GETTING STARTED

- **Confirm your communication preferences.** Go to *My Loan* and find the *Loan information* section to enter your preferred mailing address, email address and phone numbers. To update your preferences, click *Edit*.
- **See an overview of your mortgage**, including your new loan number, balance details, interest information, draw period dates, and more. Go to *My Loan* in the main menu.
- **Explore our online payment options.** Go to *Payment* to set up or manage autopay (recurring monthly ACH drafts) or make a one-time payment.
- **Go paperless** to get an email notification when each new statement is available. Go to *Documents,* scroll to *Manage Delivery Preferences,* and check *Email* next to the statement(s) you do not want to receive by mail.

## WE'RE A CALL OR CLICK AWAY!

Any time you have questions or need support, we're happy to help. Here are a few ways to reach us:

- Message with us via our website or app
- Call 866-760-3361
- Via email

**IMPORTANT INFORMATION**

If you wish to opt out of receiving future electronic communications from us, please log into your account at cs.myloanservicer.com or call us at 866.760.3361 to update your communication preferences. Please do not reply to this email as we are not able to respond to messages sent to this address.

do not reply to this email as we are not able to respond to messages sent to this address.

**ATTENTION**

For your protection, Cornerstone Servicing will never send you emails requesting your social security number, password, or any other sensitive information. If you do receive such messages, you should consider them suspicious and delete them and contact us immediately at 866.760.3361.

**SUBSERVICING NOTICE**

Cornerstone Servicing, a division of Cornerstone Capital Bank, SSB, has an agreement with Oaktree Funding Corp to provide the day-to-day servicing of your loan.  Cornerstone Capital Bank, SSB, Member FDIC, NMLS ID# 2258 (www.nmlsconsumeraccess.org)
To view our privacy policy, please visit our website oaktree.myloanservicer.com.

Disclosures https://myloanservicer.com/disclosures/

Unsubscribe - Unsubscribe Preferences

**From:** **NoReply-Servicing** noreply-servicing@myloanservicer.com
**Subject:** Message from Oaktree Funding Corp. 2597
**Date:** September 17, 2025 at 5:29 AM
**To:** AUDREY.LITTLE@GMAIL.COM, HEYNOWJL@OUTLOOK.COM





## Your mortgage payment is complete.

Great news — we have successfully processed and applied the following payment to your mortgage loan ending in 2597. You're all set!

| | |
|---|---|
| **Amount Paid** | $6,090.85 |
| **Payment Date** | 09/16/2025 |
| Breakdown | |
| **Principal and Interest** | $6,090.85 |
| **Escrow (Taxes and Insurance)** | $0.00 |
| **Additional Principal** | $0.00 |
| **Fees** | $0.00 |

Log into our website or app to review your payment information, transactions, and more— anytime, anywhere.

## READY TO SET UP RECURRING PAYMENTS?

READY TO SET UP RECURRING PAYMENTS?

You can save time and gain peace of mind by automating your mortgage payments. To set up recurring monthly ACH drafts, visit our website or app and enroll in Autopay. To split your monthly payment into recurring drafts every 14 days, contact us to set up Budget Drafts. For information browse our FAQs.

## WE'RE JUST A CALL OR CLICK AWAY!

If you need assistance, we're happy to help! Here are a few ways to reach us:

- Call  866-760-3361

- Message with us via our website and app

- Email us loaninfo@myloanservicer.com

**IMPORTANT INFORMATION**

This email was sent to the email address you provided to receive updates on your mortgage loan. If you wish to opt out of receiving future electronic communications from us, please log into your account at oaktree.myloanservicer.com or call us at 866-760-3361 to update your communication preferences. Please do not reply to this email as we are not able to respond to messages sent to this address.

**ATTENTION**

For your protection, Oaktree Funding Corp. will never send you emails requesting your social security number, password, or any other sensitive information. If you do receive such messages, you should consider them suspicious and delete them and contact us immediately at 866-760-3361.

**SUBSERVICING NOTICE**

Cornerstone Servicing, a division of Cornerstone Capital Bank, SSB, has an agreement with Oaktree Funding Corp. to provide the day-to-day servicing of your loan.

To view our privacy policy, please visit oaktree.myloanservicer.com.

Oaktree Funding Corp.  | NMLS #71640 (www.nmlsconsumeraccess.org)

Disclosures https://myloanservicer.com/disclosures/

THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited. If you have received this communication in error, please notify the sender immediately. Thank you.

**From:** **Oaktree Funding Corp.** noreply-servicing@myloanservicer.com
**Subject:** Important Information Regarding your Account
**Date:** September 20, 2025 at 9:01 AM
**To:** AUDREY.LITTLE@gmail.com AUDREY.LITTLE@GMAIL.COM



### Important Information Regarding your Account

Maybe it was an oversight, but we haven't received your monthly payment.

**<u>Why am I receiving this email?</u>**

We are sending you this email to inform you that we did not receive your full mortgage payment within 15 days of your due date. A late fee in the amount of $0.00 may be assessed to your account. According to the terms of your loan agreement, your monthly payment is due 10/01/2025.

**<u>What should I do next?</u>**

If you've already made a full payment, please disregard this letter but be aware that this fee may be assessed to your account. If a full payment has not been submitted at this time, please make a payment to avoid any further penalties. You may submit your payment online at oaktree.myloanservicer.com, by calling us at the number below, or by mailing a check to the following address:

Oaktree Funding Corp.
PO Box 660217
Dallas, TX 75266-0217

To avoid a late fee from being assessed to your account in the future, please make your monthly payment prior to the late fee assessment date as indicated in your loan agreement.

**Questions? – We're here to help!**

Any time you have questions about your mortgage, visit oaktree.myloanservicer.com to browse FAQs and other helpful resources or contact us any of the following ways. We are eager to serve you!

- Call 866-760-3361
- Message us via oaktree.myloanservicer.com
- Email loaninfo@myloanservicer.com

We are committed to your successful homeownership. If you need payment assistance and would like to hear about your loss mitigation options or if you have any questions, please contact us online or at the number listed below.

If you are experiencing financial difficulty, you may seek assistance with household budgeting at no charge from HUD-approved housing counseling agencies. You may obtain a list of HUD-approved homeownership counselors or counseling organizations in your area by calling the HUD Nationwide toll-free telephone number at 800.569.4287 or toll-free TDD 800.877.8339, or by going to www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

You can also contact the CFPB at 855.411.2372, or by going to www.consumerfinance.gov/find-a-housing-counselor.

Additional educational resources can be found at Fannie Mae's Know Your Options™ website at KnowYourOptions.com.

**IMPORTANT INFORMATION**

If you wish to opt out of receiving future electronic communications from us, please log into your account at oaktree.myloanservicer.com or call us at 866-760-3361 to update your communication preferences. Please do not reply to this email as we are not able to respond to messages sent to this address.

**ATTENTION**

For your protection, Oaktree Funding Corp. will never send you emails requesting your social security number, password, or any other sensitive information. If you do receive such messages, you should consider them suspicious, delete them, and contact us immediately at 866-760-3361.

**SUBSERVICING NOTICE**

Cornerstone Servicing, a division of Cornerstone Capital Bank, SSB, has an agreement with Oaktree Funding Corp. to provide the day-to-day servicing of your loan.

To view Oaktree Funding Corp.'s privacy policy, visit nonqmexpert.com.

To view Cornerstone Capital Bank's privacy policy, visit houseloan.com/privacy-notice

To view Cornerstone Capital Bank's disclosures, visit myloanservicer.com/disclosures.

Oaktree Funding Corp. | NMLS ID # 71640 (www.nmlsconsumeraccess.org)

Cornerstone Capital Bank, SSB Member FDIC, NMLS ID#2258 (www.nmlsconsumeraccess.org)

Email ID:CO120

**From:** **Oaktree Funding Corp.** noreply-servicing@myloanservicer.com  📎
**Subject:** Go Paperless!
**Date:** October 1, 2025 at 9:32 AM
**To:** AUDREY.LITTLE@gmail.com AUDREY.LITTLE@GMAIL.COM



### Now available! Electronic escrow statements & more

If you've enrolled for electronic monthly and year-end statements, you know the perks: convenient email notifications, less clutter, less waste, and more.

**Great news—we've expanded this convenient service to escrow statements and other routine communications!** If you have an escrow account, we provide these statements at least annually to update you on your tax and/or insurance expenses, balance, and any changes you need to know about.

### OPT-IN TODAY

Once enrolled, you'll get an email when new escrow statements are ready to view, download or print. In most cases, a paper copy will not be mailed to you. You will also receive other transactional and account maintenance notices by e-mail.

### Enroll online in a few quick clicks:

1.   Log into your online account.
2.   Go to Documents and click Manage Delivery Preferences.
3.   Next to Escrow statements plus other routine servicing communications

3.    Next to Escrow statements plus other routine servicing communications,
check the Email box and follow the prompts to complete your enrollment.

**Questions?** Browse our <u>FAQs</u> for more information about electronic statements or contact us.

## WE'RE A CALL OR CLICK AWAY!

Any time you have questions or need support, we're happy to help. Here are a few ways to
reach us:

- Call <u>866-760-3361</u>
- Log into our <u>website</u> and <u>app</u> to message with us
- Email us at loaninfo@myloanservicer.com

**IMPORTANT INFORMATION**

If you wish to opt out of receiving future electronic communications from us, please log into your
account at <u>oaktree.myloanservicer.com</u> or call us at  866-760-3361 to update your communication
preferences. Please do not reply to this email as we are not able to respond to messages sent to this
address.

**ATTENTION**

For your protection, Oaktree Funding Corp. will never send you emails requesting your social security
number, password, or any other sensitive information. If you do receive such messages, you should
consider them suspicious, delete them, and contact us immediately at  866-760-3361.

**SUBSERVICING NOTICE**

Cornerstone Servicing, a division of Cornerstone Capital Bank, SSB, has an agreement with Oaktree
Funding Corp. to provide the day-to-day servicing of your loan.

To view Oaktree Funding Corp.'s privacy policy, visit <u>nonqmexpert.com.</u>

To view Cornerstone Capital Bank's privacy policy, visit <u>houseloan.com/privacy-notice</u>

To view Cornerstone Capital Bank's disclosures, visit <u>myloanservicer.com/disclosures</u>.

Oaktree Funding Corp. | NMLS ID # 71640 (<u>www.nmlsconsumeraccess.org</u>)

Cornerstone Capital Bank, SSB Member FDIC, NMLS ID#2258 (<u>www.nmlsconsumeraccess.org</u>)

Email ID:CC016

From:    **NoReply-Servicing** noreply-servicing@myloanservicer.com
Subject: Message from Oaktree Funding Corp. 2597
Date:    October 17, 2025 at 6:07 AM
To:      AUDREY.LITTLE@GMAIL.COM, HEYNOWJL@OUTLOOK.COM





## Your mortgage payment is complete.

Great news — we have successfully processed and applied the following payment to your mortgage loan ending in 2597. You're all set!

| | |
|---|---|
| **Amount Paid** | $6,090.85 |
| **Payment Date** | 10/16/2025 |
| Breakdown | |
| **Principal and Interest** | $6,090.85 |
| **Escrow (Taxes and Insurance)** | $0.00 |
| **Additional Principal** | $0.00 |
| **Fees** | $0.00 |

Log into our website or app to review your payment information, transactions, and more— anytime, anywhere.

## READY TO SET UP RECURRING PAYMENTS?

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** Fwd: Thank you for your Inquiry
**Date:** November 17, 2025 at 4:24 PM
**To:** Teague Robert rteague@oaktreefunding.com, Goldstein, Jason E. jgoldstein@buchalter.com

AL

FYI I know they will need to come to you… this is also bad faith

> Begin forwarded message:
>
> **From:** "My Loan Servicer" <noreply-servicing@myloanservicer.com>
> **Subject: Thank you for your Inquiry**
> **Date:** November 17, 2025 at 3:21:26 PM PST
> **To:** audreylittle458@gmail.com
> **Reply-To:** "My Loan Servicer" <noreply-servicing@myloanservicer.com>
>
> Hello,
>
> We are writing to acknowledge receipt of your recent inquiry regarding your account. We have escalated your request to our Executive Services team. This team will ensure timely and complete research is conducted.
>
> If you have additional information related to this inquiry, please feel free to email us at executiveservices@myloanservicer.com or call us at 1-855-746-LOAN (5626).
>
> We apologize for any inconvenience this issue may have caused you and we appreciate your patience while we address the inquiry.
>
> Regards,
>
> Your Servicing Team
>
> Executive Services
>
> ---------
>
> Your reference number is: 237970
>
> THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited. If you have received this communication in error, please notify the sender immediately. Thank you.



**From:** **My Loan Servicer** noreply-servicing@myloanservicer.com
**Subject:** Thank you for your Inquiry
**Date:** November 17, 2025 at 3:21 PM
**To:** audreylittle458@gmail.com

Hello,

We are writing to acknowledge receipt of your recent inquiry regarding your account. We have escalated your request to our Executive Services team. This team will ensure timely and complete research is conducted.

If you have additional information related to this inquiry, please feel free to email us at executiveservices@myloanservicer.com or call us at 1-855-746-LOAN (5626).

We apologize for any inconvenience this issue may have caused you and we appreciate your patience while we address the inquiry.

Regards,

Your Servicing Team

Executive Services

---------

Your reference number is: 237970

THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited. If you have received this communication in error, please notify the sender immediately. Thank you.

**From:** Audrey Little audreylittle458@gmail.com
**Subject:** Re: Thank you for your Inquiry [IMAN-BUCHALTER.FID3863988]
**Date:** November 17, 2025 at 9:37 PM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com
**Cc:** Teague Robert rteague@oaktreefunding.com

Oops that was my outline… this is my complaint… sorry I am new to this but learning quickly

**First_Amended_Compl aint_11-17-1.docx**
90 KB


On Nov 17, 2025, at 9:32 PM, Audrey Little <audreylittle458@gmail.com> wrote:

Courtesy copy let me know if you will accept electronic Service

Thank you

Audrey

<010 oak tree.pdf>
<First_Amended_Complaint_Template.docx>

On Nov 17, 2025, at 4:26 PM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Ms. Little:

Please stop communicating directly with my client.

All communications should be directly only to me.

Also, you are incorrect.

Buchalter

**Jason E. Goldstein**
Shareholder
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

## Buchalter

**Jason E. Goldstein**
Shareholder
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Monday, November 17, 2025 4:24 PM
**To:** Teague Robert <rteague@oaktreefunding.com>; Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Subject:** Fwd: Thank you for your Inquiry

> This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

FYI I know they will need to come to you… this is also bad faith

Begin forwarded message:

**From:** "My Loan Servicer" <noreply-servicing@myloanservicer.com>
**Subject: Thank you for your Inquiry**
**Date:** November 17, 2025 at 3:21:26 PM PST
**To:** audreylittle458@gmail.com
**Reply-To:** "My Loan Servicer" <noreply-servicing@myloanservicer.com>

Hello,

We are writing to acknowledge receipt of your recent inquiry regarding your account. We have escalated your request to our Executive Services team. This team will ensure timely and complete research is conducted.

If you have additional information related to this inquiry, please feel free to email us at executiveservices@myloanservicer.com or call us at 1-855-746-LOAN (5626).

We apologize for any inconvenience this issue may have caused you and we appreciate your patience while we address the inquiry.

Regards,

Your Servicing Team

Executive Services

---------

Your reference number is: 237970

THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited. If you have received this communication in error, please notify the sender immediately. Thank you.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

**From:** Audrey Little audreylittle458@gmail.com
**Subject:** Re: Thank you for your Inquiry [IMAN-BUCHALTER.FID3863988]
**Date:** November 17, 2025 at 9:32 PM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com
**Cc:** Teague Robert rteague@oaktreefunding.com

Courtesy copy let me know if you will accept electronic Service

Thank you

Audrey



**010 oak tree.pdf**

**First_Amended_Compl aint_Template.docx**
39 KB

On Nov 17, 2025, at 4:26 PM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Ms. Little:

Please stop communicating directly with my client.

All communications should be directly only to me.

Also, you are incorrect.

## Buchalter

**Jason E. Goldstein**
Shareholder
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

## Buchalter

**Jason E. Goldstein**
Shareholder
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

---

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Monday, November 17, 2025 4:24 PM
**To:** Teague Robert <rteague@oaktreefunding.com>; Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Subject:** Fwd: Thank you for your Inquiry

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

---

FYI I know they will need to come to you… this is also bad faith

Begin forwarded message:

**From:** "My Loan Servicer" <noreply-servicing@myloanservicer.com>
**Subject: Thank you for your Inquiry**
**Date:** November 17, 2025 at 3:21:26 PM PST
**To:** audreylittle458@gmail.com
**Reply-To:** "My Loan Servicer" <noreply-servicing@myloanservicer.com>

Hello,

We are writing to acknowledge receipt of your recent inquiry regarding your account. We have escalated your request to our Executive Services team. This team will ensure timely and complete research is conducted.

If you have additional information related to this inquiry, please feel free to email us at executiveservices@myloanservicer.com or call us at 1-855-746-LOAN (5626).

We apologize for any inconvenience this issue may have caused you and we appreciate your patience while we address the inquiry.

Regards,

Your Servicing Team

Executive Services

---------

Your reference number is: 237970

THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING
DOCUMENTS, IS CONFIDENTIAL and may contain information that is
privileged and exempt from disclosure under applicable law. If you are neither
the intended recipient nor responsible for delivering the message to the
intended recipient, please note that any dissemination, distribution, copying or
the taking of any action in reliance upon the message is strictly prohibited. If
you have received this communication in error, please notify the sender
immediately. Thank you.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a
communication privileged by law. If you received this e-mail in error, any review, use, dissemination,
distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by
return e-mail and please delete this message and any and all duplicates of this message from your system.
Thank you in advance for your cooperation. For additional policies governing this e-mail, please see
 http://www.buchalter.com/about/firm-policies/.

**From:** **Goldstein, Jason E.** jgoldstein@buchalter.com
**Subject:** RE: Thank you for your Inquiry [IMAN-BUCHALTER.FID3863988]
**Date:** November 17, 2025 at 4:26 PM
**To:** Audrey Little audreylittle458@gmail.com
**Cc:** Goldstein, Jason E. jgoldstein@Buchalter.com

JG

Ms. Little:

Please stop communicating directly with my client.

All communications should be directly only to me.

Also, you are incorrect.

## Buchalter

**Jason E. Goldstein**
Shareholder
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

## Buchalter

**Jason E. Goldstein**
Shareholder
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Monday, November 17, 2025 4:24 PM
**To:** Teague Robert <rteague@oaktreefunding.com>; Goldstein, Jason E.
<jgoldstein@Buchalter.com>
**Subject:** Fwd: Thank you for your Inquiry

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

FYI I know they will need to come to you… this is also bad faith

Begin forwarded message:

**From:** "My Loan Servicer" <noreply-servicing@myloanservicer.com>
**Subject: Thank you for your Inquiry**
**Date:** November 17, 2025 at 3:21:26 PM PST
**To:** audreylittle458@gmail.com
**Reply-To:** "My Loan Servicer" <noreply-servicing@myloanservicer.com>

Hello,

We are writing to acknowledge receipt of your recent inquiry regarding your account. We have escalated your request to our Executive Services team. This team will ensure timely and complete research is conducted.

If you have additional information related to this inquiry, please feel free to email us at executiveservices@myloanservicer.com or call us at 1-855-746-LOAN (5626).

We apologize for any inconvenience this issue may have caused you and we appreciate your patience while we address the inquiry.

Regards,

Your Servicing Team

Executive Services

---------

Your reference number is: 237970

THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited. If you have received this communication in error, please notify the sender immediately. Thank you.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a

communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

**From:** **NoReply-Servicing** noreply-servicing@myloanservicer.com
**Subject:** Message from Oaktree Funding Corp. 2597
**Date:** November 18, 2025 at 6:03 AM
**To:** AUDREY.LITTLE@GMAIL.COM, HEYNOWJL@OUTLOOK.COM





## Your mortgage payment is complete.

Great news — we have successfully processed and applied the following payment to your mortgage loan ending in 2597. You're all set!

**Amount Paid**      $6,090.85
**Payment Date**      11/17/2025
Breakdown
**Principal and Interest**   $6,090.85
**Escrow (Taxes and Insurance)**  $0.00
**Additional Principal**  $0.00
**Fees**  $0.00

Log into our website or app to review your payment information, transactions, and more— anytime, anywhere.

## READY TO SET UP RECURRING PAYMENTS?



**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** Fwd: Thank you for your Inquiry
**Date:** November 18, 2025 at 8:08 AM
**To:** Goldstein Jason E.  jgoldstein@buchalter.com

FYI

Warmest Regards,
Audrey

Sent from my iPhone

Begin forwarded message:

> **From:** Audrey Little <audreylittle458@gmail.com>
> **Date:** November 18, 2025 at 8:07:25 AM PST
> **To:** Servicer My Loan <noreply-servicing@myloanservicer.com>
> **Subject: Re: Thank you for your Inquiry**
>
> Thank you for sending the email.You wrote me this yesterday and I'm in an urgent situation.
>
> The situation is caused by a title error and while that's being resolved I really need a forbearance or will be forced to sell my home. Literally, I'll have to list it this week.
>
> I really need an answer right away. Thank you for understanding and helping me.
>
> Warmest Regards,
> Audrey
>
> Sent from my iPhone
>
>> On Nov 18, 2025, at 8:02 AM, My Loan Servicer <noreply-servicing@myloanservicer.com> wrote:
>>
>>
>> Hello,
>>
>> We are writing to acknowledge receipt of your recent inquiry regarding your mortgage account. We have escalated your request to our Executive Services team. This team will ensure timely and complete research is conducted.
>>
>> If you have additional information related to this inquiry, please feel free to email us at executiveservices@myloanservicer.com or call us at 1-855-746-LOAN (5626).
>>
>> We apologize for any inconvenience this issue may have caused you and we appreciate your patience while we address the inquiry.
>>
>> Regards,
>>
>> Your Servicing Team
>>
>> Executive Services

---------

Your reference number is: 194942

THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited. If you have received this communication in error, please notify the sender immediately. Thank you.



**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** Re: Thank you for your Inquiry
**Date:** November 18, 2025 at 8:07 AM
**To:** Servicer My Loan noreply-servicing@myloanservicer.com

Thank you for sending the email.You wrote me this yesterday and I'm in an urgent situation.

The situation is caused by a title error and while that's being resolved I really need a forbearance or will be forced to sell my home. Literally, I'll have to list it this week.

I really need an answer right away. Thank you for understanding and helping me.

Warmest Regards,
Audrey

Sent from my iPhone

> On Nov 18, 2025, at 8:02 AM, My Loan Servicer <noreply-servicing@myloanservicer.com> wrote:
>
>
> Hello,
>
> We are writing to acknowledge receipt of your recent inquiry regarding your mortgage account. We have escalated your request to our Executive Services team. This team will ensure timely and complete research is conducted.
>
> If you have additional information related to this inquiry, please feel free to email us at executiveservices@myloanservicer.com or call us at 1-855-746-LOAN (5626).
>
> We apologize for any inconvenience this issue may have caused you and we appreciate your patience while we address the inquiry.
>
> Regards,
>
> Your Servicing Team
>
> Executive Services
>
> ---------
>
> Your reference number is: 194942
>
> THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited. If you have received this communication in error, please notify the sender immediately. Thank you.

**From:** **My Loan Servicer** noreply-servicing@myloanservicer.com
**Subject:** Thank you for your Inquiry
**Date:** November 18, 2025 at 8:02 AM
**To:** audreylittle458@gmail.com



Hello,

We are writing to acknowledge receipt of your recent inquiry regarding your mortgage account. We have escalated your request to our Executive Services team. This team will ensure timely and complete research is conducted.

If you have additional information related to this inquiry, please feel free to email us at executiveservices@myloanservicer.com or call us at 1-855-746-LOAN (5626).

We apologize for any inconvenience this issue may have caused you and we appreciate your patience while we address the inquiry.

Regards,

Your Servicing Team

Executive Services

----------

Your reference number is: 194942

THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited. If you have received this communication in error, please notify the sender immediately. Thank you.

**From:** **My Loan Servicer** noreply-servicing@myloanservicer.com
**Subject:** Secure: Important Information Regarding Your Mortgage ending in 2597
**Date:** November 19, 2025 at 7:56 AM
**To:** audreylittle458@gmail.com

 

This is a secure message.

Click here by 2026-11-19 15:56 UTC to read your message.
After that, open the attachment.

More Info

**Disclaimer**:  This email and its content are confidential and intended solely for the use of the addressee. Please notify the sender if you have received this email in error or simply delete it.

Secured by Proofpoint Encryption, Copyright © 2009-2025 Proofpoint, Inc. All rights reserved.

**SecureMessageAtt
.html**

**From:** **My Loan Servicer** noreply-servicing@myloanservicer.com
**Subject:** Thank you for your Inquiry
**Date:** November 19, 2025 at 8:03 AM
**To:** audreylittle458@gmail.com



Hello,

We are writing to acknowledge receipt of your recent inquiry regarding your account. We have escalated your request to our Executive Services team. This team will ensure timely and complete research is conducted.

If you have additional information related to this inquiry, please feel free to email us at executiveservices@myloanservicer.com or call us at 1-855-746-LOAN (5626).

We apologize for any inconvenience this issue may have caused you and we appreciate your patience while we address the inquiry.

Regards,

Your Servicing Team

Executive Services

---------

Your reference number is: 239272

THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited. If you have received this communication in error, please notify the sender immediately. Thank you.



**From:** **My Loan Servicer** noreply-servicing@myloanservicer.com
**Subject:** Thank you for your Inquiry
**Date:** November 19, 2025 at 8:03 AM
**To:** audreylittle458@gmail.com

Hello,

We are writing to acknowledge receipt of your recent inquiry regarding your mortgage account. We have escalated your request to our Executive Services team. This team will ensure timely and complete research is conducted.

If you have additional information related to this inquiry, please feel free to email us at executiveservices@myloanservicer.com or call us at 1-855-746-LOAN (5626).

We apologize for any inconvenience this issue may have caused you and we appreciate your patience while we address the inquiry.

Regards,

Your Servicing Team

Executive Services

---------

Your reference number is: 195449

THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited. If you have received this communication in error, please notify the sender immediately. Thank you.

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** IMMEDIATE FORBEARANCE
**Date:** November 19, 2025 at 9:57 AM
**To:** Loan Servicer My noreply-servicing@myloanservicer.com

To Whom It May Concern,

I am writing to formally place the loan servicer on notice of a significant title defect, escrow breach, and underwriting irregularity affecting my mortgage loan originated through Oaktree Funding Corp. I have already sent formal written notice to Oak Tree, the lender, requesting an immediate temporary forbearance. I am now notifying the servicer because you have independent obligations under federal and state law to prevent borrower harm and to escalate this matter immediately.

**Please treat this as a Notice of Servicing Error, Notice of Borrower Hardship Not Caused by the Borrower, and a Request for Immediate Loss-Mitigation Protection.**

---

# 1. Summary of the Situation (Servicer Version)

- A family lien recorded on **December 19, 2024** was missed by **Rocket Title Insurance** during the title search and was not included in the underwriting file.

- **Rocket Close (escrow)** breached written escrow instructions requiring that the second-position lien be *verified and confirmed* prior to funding.

- Oak Tree relied on Rocket's incorrect information and funded a loan that **never would have been approved** had the true lien priority been disclosed.

- As a result, the loan is **defectively structured**, at a **9.625% interest rate**, and is **uninsurable** in its current form.

- I have already given Oak Tree formal notice and requested a temporary forbearance so that further preventable harm does not occur.

- Until the title insurer cures the defect, I am at risk of immediate and irreparable injury.

Because you are the **servicer**, you have independent federal and state obligations **once you receive notice**, even though the lender (Oak Tree) is the only party who can approve the forbearance.

---

# 2. Your Legal Obligations as Servicer After Notice

Under **RESPA, Regulation X, California law, and federal servicing standards**, a servicer must:

✔ **immediately escalate the issue to the investor (Oak Tree)**

✔ **suspend any activity that could cause borrower harm**

✔ **prevent negative credit reporting**

✔ **prevent the assessment of late fees or penalties**

✔ **put a hold on collections, default letters, or foreclosure-related processes**

✔ put a hold on collections, default letters, or foreclosure-related processes

✔ **acknowledge and investigate the servicing error**

✔ **provide loss-mitigation options that do not financially harm the borrower**

✔ **correct, document, and address any third-party errors affecting the loan**

I am formally requesting all of the above.

# 3. Servicer Exposure if No Action Is Taken

Once on notice, a servicer becomes independently liable for:

- failing to escalate a known loss-mitigation request

- continuing harmful servicing activity

- negative credit reporting on a defective loan

- ignoring or mishandling a Notice of Error

- violating Regulation X servicing rules

- causing avoidable borrower harm ("avoidable consequences doctrine")

These violations create statutory damages, actual damages, attorney's fees, and in some cases punitive exposure.

I am notifying you now so that you have the opportunity to protect yourself from these risks.

# 4. Request for Immediate Servicer Action

I respectfully request that you:

**1. Place an immediate hold on all adverse actions or reporting.**

**2. Suspend late fees, default charges, and collection activity.**

**3. Flag the loan as "under investor review / title defect."**

**4. Escalate the forbearance request to Oak Tree today.**

**5. Acknowledge receipt of this notice in writing.**

This is necessary to protect both me **and the servicer** from the consequences of continuing to service a loan that is defective, misrepresented, and currently under dispute.

## 5. I am trying to avoid unnecessary litigation

I want to be very clear:
I do **not** want to take legal action against the servicer.

However, once the servicer is on formal notice, any **new harm** becomes the servicer's independent liability. Because neither the servicer nor Oak Tree can shift those "post-notice" damages onto Rocket Title Insurance, it is in everyone's best interest to prevent avoidable harm now.

I am giving you the opportunity to protect yourself and ensure compliance with federal and state requirements.

---

# 6. Please confirm receipt

Please respond confirming:

- you have escalated this to Oak Tree immediately

- you have suspended all adverse activity

- you are reviewing the file under RESPA/Reg X

Thank you for your prompt attention.

Sincerely,
**Audrey Little**
81439. MERV GRIFFIN WAY

LA QUINTA CA 92253

**Servicer_Notice_Letter _With_Statutes.docx**
38 KB


**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** Re: Secure: Important Information Regarding Your Mortgage ending in 2597
**Date:** November 20, 2025 at 9:01 AM
**To:** My Loan Servicer noreply-servicing@myloanservicer.com



**Subject:** Immediate Action Required – Stop Delaying Based on an Invalid Loan

Hello,

Your message today appears to be another attempt to stall. To be absolutely clear:

The Oaktree loan **should not exist at all**. It was issued based on **fraud, negligence, and a defective title search**, and it is currently in legal dispute. That loan is **invalid**, sits in **third position**, and cannot be used as a basis for delaying any processing on my account.

CSUNS remains the **only valid, perfected lien**, and nothing prevents you from processing the CSUNS account, my Social Security Disability income verification, or any required assistance or servicing actions.

Your continued delay is causing harm and is unacceptable.
Please proceed immediately.

Thank you,
**Audrey Little**
310-283-4448

On Nov 20, 2025, at 8:29 AM, My Loan Servicer <noreply-servicing@myloanservicer.com> wrote:

<logo.png>                                              <lock.gif>

This is a secure message.

Click here by 2026-11-20 16:29 UTC to read your message.
After that, open the attachment.

More Info

**Disclaimer**: This email and its content are confidential and intended solely for the use of the addressee. Please notify the sender if you have received this email in error or simply delete it.

Secured by Proofpoint Encryption, Copyright © 2009-2025 Proofpoint, Inc. All rights reserved.
<SecureMessageAtt.html>

**From:** **My Loan Servicer** noreply-servicing@myloanservicer.com
**Subject:** Secure: Important Information Regarding Your Mortgage ending in 2597
**Date:** November 20, 2025 at 8:29 AM
**To:** audreylittle458@gmail.com

   

This is a secure message.

Click here by 2026-11-20 16:29 UTC to read your
message.
After that, open the attachment.

More Info

**Disclaimer**:  This email and its content are confidential and intended solely for the
use of the addressee. Please notify the sender if you have received this email in
error or simply delete it.

Secured by Proofpoint Encryption, Copyright © 2009-2025 Proofpoint, Inc. All rights
reserved.

SecureMessageAtt
html

**From:** **Audrey Little** audreylittle@mac.com
**Subject:** Fwd: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required
**Date:** November 20, 2025 at 5:09 PM
**To:** Heather Moldovan HeatherMoldovan@rocketclose.com, Stacey Holubec StaceyHolubec@rocketclose.com
**Cc:** Zeeshan Iqbal ZIqbal@hinshawlaw.com



I am providing this as proof that I am filing a TRO within the hour.  Your attorney cannot accept service on your behalf so this is your notice.  I will also serve you brie edervice ,

Begin forwarded message:

**From:** Audrey Little <audrey.little@gmail.com>
**Subject: Fwd: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required**
**Date:** November 20, 2025 at 4:07:47 PM PST
**To:** "Olivier J. Labarre" <olabarre@wrightlegal.net>, Zeeshan Iqbal <ZIqbal@hinshawlaw.com>

FYI

Begin forwarded message:

**From:** Audrey Little <audrey.little@gmail.com>
**Subject: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required**
**Date:** November 20, 2025 at 4:07:10 PM PST
**To:** Jon Epstein <jepstein@oaktreefunding.com>, Teague Robert <rteague@oaktreefunding.com>, "Goldstein Jason E." <jgoldstein@buchalter.com>, info@myloanservicer.com, My Loan Servicer <noreply-servicing@myloanservicer.com>
**Reply-To:** audrey.little458@gmail.com

# SUBJECT: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required

**DATE:** Today
**FROM:** Audrey Little
**TO:** Oak Tree Funding Corp., Loan Servicer, and Counsel
**RE:** Loan on 81439 Merv Griffin Way, La Quinta, CA 92253

Dear Oak Tree Funding Corp. and Loan Servicer:

This email is **formal legal notice** that the loan on my property at **81439 Merv Griffin Way, La Quinta, CA 92253** is in **active dispute** due to:

- multiple **escrow instruction violations**,

- **failure to verify lien priority before disbursement**,

- reliance on a **stale title report**,

- and the loan recording in **THIRD** position instead of the instructed second position.

This has rendered the loan **defective and not enforceable as written**.

# 1. Your refusal to act caused the November 16 bounced payment

I requested **forbearance** multiple times.

Oak Tree told me to contact the servicer.
The servicer told me today that they **cannot act until Oak Tree approves it**.

Meanwhile, the only responses I received from the servicer were:

"We are looking into it."

Your failure to act, combined with your internal contradictions, **directly caused the November 16 payment to bounce**.

You—not me—created the delinquency risk.

# 2. Because the loan is disputed NO negative credit reporting is permitted

Under **15 U.S.C. §1681s-2(a)(3)** and California's CCRAA:

You are **prohibited** from reporting:

- the November 16 bounced payment,

- any late payment,

- any delinquency,

- any derogatory information,

- against **me or my son** (co-borrower).

Any reporting after this notice will be treated as:

- **knowing FCRA violation**,

- **CCRAA violation**,

- **servicing misconduct**,

- and will result in immediate legal action and damages.

# 3. Effective immediately — all activity must STOP

# STOP

Upon receipt of this email, you must:

✔ **Mark the loan as DISPUTED**

✔ **Freeze all negative credit reporting**

✔ **Stop all auto-pay attempts**

✔ **Stop all fees, penalties, and collection actions**

✔ **Freeze loan status pending resolution of the lien defect**

Any action after this notice will expose you to **statutory and punitive damages**.

# 4. Emergency TRO is being filed today

Because Oak Tree and the servicer failed to act on repeated forbearance requests, I am filing an **Emergency Temporary Restraining Order today** in Riverside County Superior Court.

The TRO will seek:

- unconditional forbearance,
- a full freeze on credit reporting,
- a freeze on collection,
- and protection for both borrowers.

After filing, any reporting also becomes **contempt of court**.

# 5. REQUIRED RESPONSE — Deadline: Tomorrow, 12:00 p.m.

You must respond **IN WRITING by tomorrow at 12:00 p.m.** confirming:

1. Loan is marked **DISPUTED**
2. All credit reporting is **frozen**
3. November 16 payment **will not be reported**
4. Auto-pay is **disabled**
5. Loan status is **frozen** pending TRO
6. Oak Tree is acting on my forbearance request

****Non-response = bad faith + willful

## ****Non-response – bad faith + willful violation****

If I do not receive a written confirmation by **12:00 p.m. tomorrow**, your silence will be treated as:

- **acknowledgment of receipt**,

- **deliberate refusal to protect borrowers**,

- **bad faith**,

- **knowing violation of FCRA/CCRAA**,

- and this email will be filed with the Court as **Exhibit A**.

I will seek all available damages and sanctions.

---

Sincerely,
**Audrey Little**
81439 Merv Griffin Way
La Quinta, CA 92253
310-283-4448
Audrey.little458@gmail.com



From: **Audrey Little** audrey.little@gmail.com
Subject: Fwd: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required
Date: November 20, 2025 at 4:07 PM
To: Olivier J. Labarre olabarre@wrightlegal.net, Zeeshan Iqbal ZIqbal@hinshawlaw.com

FYI

Begin forwarded message:

**From:** Audrey Little <audrey.little@gmail.com>
**Subject: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required**
**Date:** November 20, 2025 at 4:07:10 PM PST
**To:** Jon Epstein <jepstein@oaktreefunding.com>, Teague Robert <rteague@oaktreefunding.com>, "Goldstein Jason E." <jgoldstein@buchalter.com>, info@myloanservicer.com, My Loan Servicer <noreply-servicing@myloanservicer.com>
**Reply-To:** audrey.little458@gmail.com

# SUBJECT: URGENT LEGAL NOTICE — Disputed Loan, Escrow Violations, Immediate Credit Freeze Required

**DATE:** Today
**FROM:** Audrey Little
**TO:** Oak Tree Funding Corp., Loan Servicer, and Counsel
**RE:** Loan on 81439 Merv Griffin Way, La Quinta, CA 92253

Dear Oak Tree Funding Corp. and Loan Servicer:

This email is **formal legal notice** that the loan on my property at **81439 Merv Griffin Way, La Quinta, CA 92253** is in **active dispute** due to:

- multiple **escrow instruction violations**,

- **failure to verify lien priority before disbursement**,

- reliance on a **stale title report**,

- and the loan recording in **THIRD** position instead of the instructed second position.

This has rendered the loan **defective and not enforceable as written**.

# 1. Your refusal to act caused the November 16 bounced payment

I requested **forbearance** multiple times.

Oak Tree told me to contact the servicer.

The servicer told me today that they **cannot act until Oak Tree approves it**.

Meanwhile, the only responses I received from the servicer were:

"We are looking into it."

Your failure to act, combined with your internal contradictions, **directly caused the November 16 payment to bounce**.

You—not me—created the delinquency risk.

# 2. Because the loan is disputed NO negative credit reporting is permitted

Under **15 U.S.C. §1681s-2(a)(3)** and California's CCRAA:

You are **prohibited** from reporting:

- the November 16 bounced payment,
- any late payment,
- any delinquency,
- any derogatory information,
- against **me or my son** (co-borrower).

Any reporting after this notice will be treated as:

- **knowing FCRA violation**,
- **CCRAA violation**,
- **servicing misconduct**,
- and will result in immediate legal action and damages.

# 3. Effective immediately — all activity must STOP

Upon receipt of this email, you must:

✔ **Mark the loan as DISPUTED**

✔ **Freeze all negative credit reporting**

✔ **Stop all auto-pay attempts**

✔ **Stop all fees, penalties, and collection actions**

✔ **Freeze loan status pending resolution of the lien defect**

Any action after this notice will expose you to **statutory and punitive damages**.

# 4. Emergency TRO is being filed today

Because Oak Tree and the servicer failed to act on repeated forbearance requests, I am filing an **Emergency Temporary Restraining Order today** in Riverside County Superior Court.

The TRO will seek:

- unconditional forbearance,

- a full freeze on credit reporting,

- a freeze on collection,

- and protection for both borrowers.

After filing, any reporting also becomes **contempt of court**.

# 5. REQUIRED RESPONSE — Deadline: Tomorrow, 12:00 p.m.

You must respond **IN WRITING by tomorrow at 12:00 p.m.** confirming:

1. Loan is marked **DISPUTED**

2. All credit reporting is **frozen**

3. November 16 payment **will not be reported**

4. Auto-pay is **disabled**

5. Loan status is **frozen** pending TRO

6. Oak Tree is acting on my forbearance request

# ****Non-response = bad faith + willful violation****

If I do not receive a written confirmation by **12:00 p.m. tomorrow**, your silence will be treated as:

- **acknowledgment of receipt**,

- **deliberate refusal to protect borrowers**,

- **bad faith**,

- **knowing violation of FCRA/CCRAA**,

- and this email will be filed with the Court as **Exhibit A**.

I will seek all available damages and sanctions.

---

Sincerely,
**Audrey Little**
81439 Merv Griffin Way
La Quinta, CA 92253
310-283-4448
Audrey.little458@gmail.com

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** # 1018042597 – Property: 81439 Merv Griffin Way, La Quinta, CA 92253 FINAL 24-HOUR NOTICE – I HAVE REQUESTED FORBEARANCE REPEATEDLY FOR OVER A WEEK WITH NO RESPONSE CONFIRM FULL FORBEARANCE BY 12:00 PM TOMORROW (NOVEMBER 26, 2025) OR I FILE WITH DFPI SAME DAY
**Date:** November 25, 2025 at 12:29 PM
**To:** Goldstein Jason E. jgoldstein@buchalter.com, My Loan Servicer noreply-servicing@myloanservicer.com
**Cc:** Iqbal, Zeeshan ZIqbal@hinshawlaw.com

Audrey Little
81439 Merv Griffin Way
La Quinta, CA 92253
Phone: 310-283-4448
Email: audrey.little458@gmail.com

November 25, 2025

VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED
& EMAIL Audrey.little@gmail.com

1. Oak Tree Funding Corporation – Attn: Compliance
 PO Box 660217, Dallas, TX 75266-0217

2. Jason Goldstein, Esq. – Buchalter (Counsel for Oak Tree)
 1000 Wilshire Blvd, Suite 1500, Los Angeles, CA 90017

3. Oak Tree Funding Corporation
 1298 W 7th St, Upland, CA 91786

Re: Loan # 1018042597 – Property: 81439 Merv Griffin Way, La Quinta, CA 92253
FINAL 24-HOUR NOTICE – I HAVE REQUESTED FORBEARANCE REPEATEDLY FOR OVER A
WEEK WITH NO RESPONSE
CONFIRM FULL FORBEARANCE BY 12:00 PM TOMORROW (NOVEMBER 26, 2025) OR I FILE
WITH DFPI SAME DAY

To Whom It May Concern:

I, Audrey Little, under penalty of perjury, declare:

1. I have a $716,580 loan with Oak Tree Funding (Loan # 1018042597) at 9.625% with a monthly payment
of $6,090.85.

2. Rocket Title Insurance Company completely missed a $393,000 Resnick deed of trust recorded December
6, 2024.

3. Because of Rocket Title's negligence, my Oak Tree loan closed in third position instead of second.

4. No workable solution exists that does not dramatically increase my monthly payment:
  - Subordination would add thousands per month at 9.625%.
  - Any payoff scenario adds debt I never qualified for.

5. Rocket Title's error has trapped me in a loan I never agreed to and cannot afford. This has caused
immediate and severe financial hardship that makes the $6,090.85 monthly payment impossible.

6. I have requested forbearance repeatedly for **more than one week** with **zero acknowledgment or
response** from Oak Tree or its representatives.

FINAL DEMAND – 24-HOUR DEADLINE

Under California Civil Code §§ 2923.6 and 2924.11, I demand **immediate full forbearance** — **complete suspension of all payments** — effective immediately and continuing until Rocket Title's negligence is fully cured without any increase in my monthly payment.

You must confirm in writing that forbearance is granted (with $0 payment, no fees, no credit reporting, no foreclosure activity) **by 12:00 PM Pacific Time tomorrow, Wednesday, November 26, 2025**.

If I do not receive written confirmation by that deadline, I will file formal complaints the same day with the California Department of Financial Protection & Innovation (DFPI) and the California Department of Insurance and will seek emergency injunctive relief in Riverside County Superior Court.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 25, 2025

/s/ Audrey Little

_____

Audrey Little
Date: November 25, 2025



**From:** Audrey Little audreylittle458@gmail.com
**Subject:** Re: today [IMAN-BUCHALTER.FID6170674]
**Date:** November 25, 2025 at 4:07 PM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com

You think I want to? I have only asked for a forbearance which they refuse to grant.

That is all I needed to to implicate them at all. Without that I must sell you dont understand. Look at what I gave you. I deliberately kept any scenario out where oak tree could be partially implicated. I have more than proven my desire to help them and even in my filing draft I still have them getting back their loan money. The damages I had with selling however will be a direct result of them and my servicer.

Ok well Jason the call me I. Am back and explain what the heck is going on. Otherwise it is just my imagination and that is all I have

There is zero reason oak tree cannot or has not granted it. They are knowingly collecting on an invalid loan. That is in the draft too. I dont want to come after oak tree they are leaving me no choice. BTW my loan servicer as well.

> On Nov 25, 2025, at 3:06 PM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:
>
> Ms. Little:
>
> I do NOT think this is a joke. I do NOT think you are a joke. And your suing Oaktree who did nothing wrong is not the right move.
>
> I am moving forward against Amrock and Rocket.
>
> I would appreciate it if you did not attempt to put words in my mouth. Especially false ones that I did not say or write.
>
> Thank you.
>
> ## Buchalter
>
> **Jason E. Goldstein**
> Shareholder
> **T** (949) 224-6235
> **F** (949) 720-0182
> jgoldstein@Buchalter.com
>
> 18400 Von Karman Avenue, Suite 800
> Irvine, CA 92612-0514
> www.buchalter.com I Bio I LinkedIn
>
> ## Buchalter
>
> **Jason E. Goldstein**
> Shareholder

Shareholder
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Tuesday, November 25, 2025 3:02 PM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Subject:** today

> This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

After you requested a call today and I cleared my schedule accordingly, I received no call or follow-up. Accordingly, I am proceeding with filing the attached Second Amended Complaint tomorrow at 12:30 p.m. as previously noticed."
I will send you a copy today. I guess you think this is a joke… and I am too.

You arr clearly wrong about me also.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** TRO Notice
**Date:** November 26, 2025 at 10:00 AM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com, My Loan Servicer noreply-servicing@myloanservicer.com



**:**NOTICE OF INTENT TO FILE TRO – Hearing Set for Monday Morning

Dear Counsel,

This email serves as **formal notice** that I will be seeking a **Temporary Restraining Order (TRO)** tomorrow morning in the matter of **Audrey Little v. Rocket Title Insurance Company, et al., Riverside Superior Court Case No. CVPS2508295**.

Pursuant to California Rules of Court 3.1203–3.1204, I am providing notice that:

- I will file the TRO **by 10:00 a.m. tomorrow morning**,

- I will request the earliest available ex parte hearing,

- The relief sought includes preventing any adverse credit reporting, collection activity, late fees, or negative servicing actions relating to the disputed refinance loan while the title defect and litigation are pending.

I am available today for discussion if you wish to resolve this prior to filing.
Please confirm receipt of this notice.

Sincerely,
**Audrey Little**
81439 Merv Griffin Way
La Quinta, CA 92253
310-283-4448

audrey.little458@gmail.com

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** FYI
**Date:** November 26, 2025 at 12:27 PM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com

I will be filing this filled in of course.

I just want you to see my outline for second amended complaint.

Oak tree removed.

I spoke with My Loan Servicer and they asked.me after weeks to fill out a form… I will not be doing that.

I sent them proof of an invalid loan, I instructed them to call Oak Tree to confirm it

They are going to,

In the even that oak. Tree does not confirm that the loan in place as of now is invalid I will have no choice but to add them.  Right now I am removing them unless that occurs,

I will continue to copy you as long as you are honest and not concealing anything to me that I need to know. If you are then I will discontinue.

I am asking you again to please honor my request for my entire loan file in oak trees possession including the copy of the title insurance policy and jacket. Not just the commitment as was sent before.  I am also requesting any current title reports Oak Tree has on my address. 81439 Merv Griffin Way La Quinta CA 92253.

Jason, I am being more than fair and I expect the same in return.

One thing I have not explained is that this loan has triggered a payback for the preceding lien and that is why I am in financial distress.   Please help me here.

Should I have to sell which I postponed until after thanksgiving next week, if they want my house they will buy it still.  Once that happens and it for sure will next week, I will have to name Oak Tree and Myloan servicer and there will not be an any negotiations becasue the damage will honestly be to great.

I have tried everything I can think of and I will also have to sell to get a real attorney,  I am realizing the law does not matter and that is why things take forever and are delayed.  This is clearly an invalid loan, what to do is also clear. I am trying and have seen no evidence of anyone else attempting to correct anything.  You should be able to understand where I am coming from

Happy Thanksgiving,

Audrey

**Second_Amended_Co**
**mplaint_FULL_BREA...**
40 KB


This is a draft only *****

**From:** **Goldstein, Jason E.** jgoldstein@buchalter.com 📎
**Subject:** Re: FINAL DEMAND – 3:00 P.M. TODAY – OAKTREE'S THREATS, MISREPRESENTATIONS, AND REFUSAL OF FORBEARANCE HAVE CREATED IMMINENT TRO FILING
**Date:** December 1, 2025 at 9:33 AM
**To:** audrey.little458@gmail.com
**Cc:** Robert Teague rteague@oaktreefunding.com, Jon Epstein jepstein@oaktreefunding.com, My Loan Servicer noreply-servicing@myloanservicer.com, info@myloanservicer.com, Lexine James ljames@cornerstoneservicing.com, Goldstein, Jason E. jgoldstein@Buchalter.com

Ms.Little:

As I have informed you multiple times - do not contact my client directly.

You may contact the servicer.

Your barrage of emails are also not helping with anything.

Neither are your flagrant misrepresentations about Oaktree.

I will be sending you a formal cease and desist letter this afternoon.

Jason Goldstein
Buchalter

## Buchalter

**Jason E. Goldstein**
Shareholder
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

On Dec 1, 2025, at 9:24 AM, Audrey Little <audreylittle458@gmail.com> wrote:

> This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

**December 1, 2025**

**Subject:** FINAL DEMAND – 3:00 P.M. TODAY – OAKTREE'S THREATS, MISREPRESENTATIONS, AND REFUSAL OF FORBEARANCE HAVE CREATED IMMINENT TRO FILING

To:
Robert Teague, Oaktree Funding Corp.
Jonathan Epstein, Oaktree Funding Corp.
MyLoanServicer.com (Collections & Escalations)

---

I am done being misled, threatened, and ignored by Oaktree.

You knew the lien-priority defect originated with Rocket Close's escrow breach.
Yet instead of telling me the truth or granting temporary forbearance, you:

- **Threatened me with the FBI** over a 0% family loan listed exactly the way every borrower lists family loans.

- **Falsely stated** Oaktree "would need to foreclose" to show a loss — a statement directly contradicted by the controlling case law I provided to you.

- **Ignored my TRO notice issued on November 26, 2025.**

- **Continued collection** on a structurally defective, improperly secured loan.

- **Refused forbearance**, despite knowing this refinancing never should have closed.

- Escalated harm to my son **Jake (33)**, his wife, and their infant daughter.

Your misconduct is the direct cause of the **immediate emergency** now requiring court intervention.

I have incurred **$412,000** in compensatory damages as a result of Rocket Close's breach and your refusal to mitigate.
The payoff on the defective loan is **$716,580**.

You have until **3:00 p.m. PST today, December 1, 2025**, to:

**1. Grant full temporary forbearance immediately (no payments, no late fees, no reporting)**

**2. Confirm in writing that no adverse credit action will be taken**

**3. Suspend all collection activity pending resolution**

If you do NOT comply by the deadline:

- I will file the attached **Second Amended Complaint** tomorrow (Case No. CVPS2508295).

- I will seek a **Temporary Restraining Order** and **Preliminary Injunction** restraining all further collection, reporting, and enforcement.

- I will retain litigation-financing counsel, and Oaktree will be liable for attorney fees, Rosenthal damages, and punitive damages.

Your refusal to grant forbearance is the **immediate trigger** forcing me toward a potential forced sale — an irreparable harm the Court will not ignore.

**/s/ Audrey Little**

**Audrey Little**
(310) 283-4448
audreylittle458@gmail.com

**Attachment: Second Amended Complaint (Rocket + Oaktree + Servicer)**
**Attachments A–E**

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

**SAC2_Full3_TRO_with_Lines_UPDATE2D.pdf**
129 KB

**Exhibit_Binder_With_Narratives.pdf**
2.5 MB

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** FINAL DEMAND – 3:00 P.M. TODAY – OAKTREE'S THREATS, MISREPRESENTATIONS, AND REFUSAL OF FORBEARANCE HAVE CREATED IMMINENT TRO FILING
**Date:** December 1, 2025 at 9:23 AM
**To:** Teague Robert rteague@oaktreefunding.com, Jon Epstein jepstein@oaktreefunding.com, Goldstein, Jason E. jgoldstein@buchalter.com, My Loan Servicer noreply-servicing@myloanservicer.com, info@myloanservicer.com, James, Lexine ljames@cornerstoneservicing.com

---

**December 1, 2025**

**Subject:** FINAL DEMAND – 3:00 P.M. TODAY – OAKTREE'S THREATS, MISREPRESENTATIONS, AND REFUSAL OF FORBEARANCE HAVE CREATED IMMINENT TRO FILING

To:
Robert Teague, Oaktree Funding Corp.
Jonathan Epstein, Oaktree Funding Corp.
MyLoanServicer.com (Collections & Escalations)

---

I am done being misled, threatened, and ignored by Oaktree.

You knew the lien-priority defect originated with Rocket Close's escrow breach.
Yet instead of telling me the truth or granting temporary forbearance, you:

- **Threatened me with the FBI** over a 0% family loan listed exactly the way every borrower lists family loans.

- **Falsely stated** Oaktree "would need to foreclose" to show a loss — a statement directly contradicted by the controlling case law I provided to you.

- **Ignored my TRO notice issued on November 26, 2025.**

- **Continued collection** on a structurally defective, improperly secured loan.

- **Refused forbearance**, despite knowing this refinancing never should have closed.

- Escalated harm to my son **Jake (33)**, his wife, and their infant daughter.

Your misconduct is the direct cause of the **immediate emergency** now requiring court intervention.

I have incurred **$412,000** in compensatory damages as a result of Rocket Close's breach and your refusal to mitigate.
The payoff on the defective loan is **$716,580**.

You have until **3:00 p.m. PST today, December 1, 2025**, to:

## 1. Grant full temporary forbearance immediately (no payments, no late fees, no reporting)

## 2. Confirm in writing that no adverse credit action will be taken

## 3. Suspend all collection activity pending resolution

If you do NOT comply by the deadline:

If you do NOT comply by the deadline:

- I will file the attached **Second Amended Complaint** tomorrow (Case No. CVPS2508295).

- I will seek a **Temporary Restraining Order** and **Preliminary Injunction** restraining all further collection, reporting, and enforcement.

- I will retain litigation-financing counsel, and Oaktree will be liable for attorney fees, Rosenthal damages, and punitive damages.

Your refusal to grant forbearance is the **immediate trigger** forcing me toward a potential forced sale — an irreparable harm the Court will not ignore.

**/s/ Audrey Little**



**SAC2_Full3_TRO_with_Lines_UPDATE2D.pdf**
129 KB

**Exhibit_Binder_With_Narratives.pdf**
2.5 MB

**Audrey Little**
(310) 283-4448

audreylittle458@gmail.com

**Attachment: Second Amended Complaint (Rocket + Oaktree + Servicer)**
**Attachments A–E**

**From:** **Oaktree Funding Corp.** noreply-servicing@myloanservicer.com  📎
**Subject:** Go Paperless: Opt-in before December 31!
**Date:** December 3, 2025 at 9:01 AM
**To:** AUDREY.LITTLE458@gmail.com  AUDREY.LITTLE458@GMAIL.COM



## Go Paperless: Opt-in before December 31!

Did you know you can get your year-end statement(s) electronically instead of by mail? To receive an email when your 2025 statement is ready, opt-in online or by phone before December 31st. Your statement will be sent by January 31, 2026.

## HOW IT WORKS

Enroll online in a few quick clicks. Once enrolled, we will email you when new year-end statements are ready to view, download, and print. Paper copies will no longer be mailed to you.

**Enroll Today:**

1.     Log into your online account.

2.     Go to Documents and click Manage Delivery Preferences.

3.     Next to year-end statements, check the Email box.

4.     If you agree to the terms and conditions, click SAVE.

Questions? Visit oaktree.myloanservicer.com for answers to common questions about year-end statements and how to go paperless.

## WE'RE A CALL OR CLICK AWAY!

Any time you have questions or need support, we're happy to help. Here are a few ways to reach us:

- Call 866-760-3361
- Log into our website and app to message with us
- Email us at loaninfo@myloanservicer.com

**IMPORTANT INFORMATION**

If you wish to opt out of receiving future electronic communications from us, please log into your account at oaktree.myloanservicer.com or call us at  866-760-3361 to update your communication preferences. Please do not reply to this email as we are not able to respond to messages sent to this address.

**ATTENTION**

For your protection, Oaktree Funding Corp. will never send you emails requesting your social security number, password, or any other sensitive information. If you do receive such messages, you should consider them suspicious, delete them, and contact us immediately at  866-760-3361.

**SUBSERVICING NOTICE**

Cornerstone Servicing, a division of Cornerstone Capital Bank, SSB, has an agreement with Oaktree Funding Corp. to provide the day-to-day servicing of your loan.

To view Oaktree Funding Corp.'s privacy policy, visit nonqmexpert.com.

To view Cornerstone Capital Bank's privacy policy, visit houseloan.com/privacy-notice

To view Cornerstone Capital Bank's disclosures, visit myloanservicer.com/disclosures.

Oaktree Funding Corp. | NMLS ID # 71640 (www.nmlsconsumeraccess.org)

Cornerstone Capital Bank, SSB Member FDIC, NMLS ID#2258 (www.nmlsconsumeraccess.org)

PO Box 4638, Englewood, CO80155
Monday through Friday, 6am to 6pm / Saturday 8am to 12pm MT

Email ID:CC030

From: **Audrey Little** audreylittle@icloud.com
Subject: Re: Courtesy Copy – Filed Ex Parte Application for Temporary Restraining Order (Little v. Rocket Title, et al.) Exhibit Binder final
Date: December 12, 2025 at 3:16 PM
To: audrey.little458@gmail.com
Cc: Goldstein, Jason E.  jgoldstein@buchalter.com, Olivier J. Labarre  olabarre@wrightlegal.net, S. Glass Phillip pglass@wrightlegal.net, Iqbal, Zeeshan ZIqbal@hinshawlaw.com, Heather Moldovan HeatherMoldovan@rocketclose.com, Varun Krishna  Varun@rocket.com, generalcounsel@rocketcompanies.com, Teague Robert rteague@oaktreefunding.com

---

**Subject:** Updated Formatted Version for Review (No Substantive Changes)

Hi ,

I am sending an updated version of the document previously shared for your review.

To be clear, **the content has not changed**. No facts, assertions, or positions have been revised. The only updates made were **formatting and structural adjustments** to improve clarity, organization, and ease of review.

This version is provided solely to facilitate a more efficient and accurate review process.

Please let me know if you have any questions or if you would like me to highlight any specific sections.

Best regards,
Audrey Little
81439 Merv Griffin Way
La Quinta, CA 92253
310-283-4448
audrey.little458@gmail.com

**Proposed_Order_on_Ex_Parte_TRO_OSC_Ad...**
73 KB


**FL@TRO_Application_Full_TNR12_1p5_Read...**
226 KB


**FL Declaration Audrey Little.pdf**
74 KB


**Exhibit_Index_CRC_2_111_NO_LINENUM.pdf**
75 KB


**FLexhibits a thru j with denial .pdf**
16.8 MB



On Dec 11, 2025, at 10:46 AM, Audrey Little <audreylittle@icloud.com> wrote:

Click to Download
exhibits a thru j.pdf
155.1 MB

Sorry

On Dec 11, 2025, at 10:03 AM, Audrey Little <audreylittle458@gmail.com> wrote:

**SUBJECT:** Courtesy Copy – Filed Ex Parte Application for Temporary Restraining Order (Little v. Rocket Title, et al.)

**BODY:**

Zeeshan and Jason,

As a courtesy, I am providing you with copies of the documents I have submitted today for filing with the Riverside Superior Court in Case No. CVPS2508295 (Little v. Rocket Title Insurance Company, et al.).

Attached:

1. Plaintiff's Ex Parte Application for Temporary Restraining Order; OSC re Preliminary Injunction; Request for Order Shortening Time; and Request for Leave to File SAC

2. [Proposed] Temporary Restraining Order (PDF)

3. [Proposed] Temporary Restraining Order (Word version)

4. Exhibit Binder (Exhibits A–J)

5. Proof of Service – Email Service on Rocket Title (LeBarre)

These are provided for courtesy notice only.
Formal service for the TRO package has been executed on Rocket Title Insurance Company through its agent for service of process, Olivier LeBarre.

Regards,
**Audrey Little**
Plaintiff in Pro Per
Phone: (310) 283-4448
Email: Audrey.Little458@gmail.com

&lt;Tro Applicatiom.pdf&gt;

&lt;Proposed Order.pdf&gt;

&lt;Proposed Order.docx&gt;

&lt;Exhibit Binder Exhibits A thru J.pdf&gt;

&lt;Proof_of_Service_SIGNED .pdf&gt;

**From:** **Mail Delivery Subsystem** MAILER-DAEMON@mx0b-005e1901.pphosted.com
**Subject:** Returned mail: see transcript for details
**Date:** December 16, 2025 at 10:04 AM
**To:** audreylittle@icloud.com



The original message was received at Tue, 16 Dec 2025 17:54:21 GMT
from m0234850.ppops.net [127.0.0.1]

----- The following addresses had permanent fatal errors -----
<info@myloanservicer.com>
  (reason: 550 5.4.1 Recipient address rejected: Access denied. For more information see
https://aka.ms/EXOSmtpErrors [BN2PEPF000044A4.namprd02.prod.outlook.com 2025-
12-16T17:54:22.636Z 08DE3B27BC2C2BE6])

----- Transcript of session follows -----
... while talking to myloanservicer-com.mail.protection.outlook.com.:
||| DATA
<<< 550 5.4.1 Recipient address rejected: Access denied. For more information see
https://aka.ms/EXOSmtpErrors [BN2PEPF000044A4.namprd02.prod.outlook.com 2025-
12-16T17:54:22.636Z 08DE3B27BC2C2BE6]
550 5.1.1 <info@myloanservicer.com>... User unknown
<<< 503 5.5.2 Need rcpt command [BN2PEPF000044A4.namprd02.prod.outlook.com
2025-12-16T17:54:22.636Z 08DE3B27BC2C2BE6]
Original-Envelope-Id: 5cmHIivaTKrMbCsV1p8DV816ahayOPoW 2025-12-
16T17:54:21.009298+0000
Reporting-MTA: dns; mx0b-005e1901.pphosted.com
Received-From-MTA: DNS; m0234850.ppops.net
Arrival-Date: Tue, 16 Dec 2025 17:54:21 GMT

Final-Recipient: RFC822; info@myloanservicer.com
X-Actual-Recipient: rfc822; info@myloanservicer.com
Action: failed
Status: 5.4.1
Remote-MTA: DNS; myloanservicer-com.mail.protection.outlook.com
Diagnostic-Code: SMTP; 550 5.4.1 Recipient address rejected: Access denied. For more
information see https://aka.ms/EXOSmtpErrors
[BN2PEPF000044A4.namprd02.prod.outlook.com 2025-12-16T17:54:22.636Z
08DE3B27BC2C2BE6]
Last-Attempt-Date: Tue, 16 Dec 2025 17:54:22 GMT

**From:** Audrey Little <audreylittle@icloud.com>
**Subject: URGENT NOTICE TO COUNSEL – KNOWING, UNAUTHORIZED
BILLING AFTER ADMISSION OF ERROR**
**Date:** December 16, 2025 at 9:54:07 AM PST

**To:** "Goldstein, Jason E." <jgoldstein@buchalter.com>, My Loan Servicer <noreply-servicing@myloanservicer.com>, info@myloanservicer.com, "James, Lexine" <ljames@cornerstoneservicing.com>
**Cc:** Teague Robert <rteague@oaktreefunding.com>

**Date:** December 16, 2025

**Via Email (Emergency Service)**
Jason E. Goldstein, Esq.
Buchalter
Counsel for Oaktree Funding Corporation

Re: **Audrey Little v. Rocket Title Insurance Company, et al.**

---

## URGENT NOTICE TO COUNSEL – KNOWING, UNAUTHORIZED BILLING AFTER ADMISSION OF ERROR

Counsel:

This letter is sent to you in your capacity as counsel for Oaktree Funding Corporation to place both you and your client on immediate notice of ongoing, knowing misconduct that has escalated into an emergency requiring immediate court intervention.

As you and your client have acknowledged in writing, Oaktree is aware that the subject loan should not have closed as structured due to title and escrow failures. Oaktree has further acknowledged that the defect giving rise to the improper lien position did not originate with the borrower. Despite that knowledge, Oaktree has continued to bill, collect, and authorize payment withdrawals on a loan that all parties now know was improperly created and improperly secured.

After repeated written notices instructing Oaktree and its servicer to cease billing, payment withdrawals, and enforcement activity—and after notice that the loan is disputed and subject to imminent court review—an additional payment in the amount of approximately **$6,090.85** was withdrawn from my bank account **today**.

This withdrawal was **unauthorized**.

As a direct result of this unauthorized debit, my account is now overdrawn by **more than $5,000**, triggering cascading payment failures and leaving me without access to funds for basic necessities, including **food and prescription medication**. This is not speculative

basic necessities, including **food and prescription medication**. This is not speculative harm. It is immediate, concrete, and ongoing.

This conduct occurred **after admission of error**, **after notice**, and **after express instructions to stop**. Continued billing under these circumstances is not a good-faith dispute. It is **knowing conduct** that predictably inflicts severe financial, credit, and medical harm on borrowers trapped in a loan that should never have existed.

You and your client are therefore on notice of the following facts:

1. Oaktree has acknowledged that the loan should not have closed as structured.

2. Oaktree has actual knowledge that the lien position is defective due to title and escrow failures.

3. Oaktree has been expressly instructed, in writing, to cease billing, withdrawals, and enforcement activity.

4. Oaktree nevertheless authorized or permitted an additional payment withdrawal today, causing immediate and severe harm.

5. Oaktree is knowingly exposing both borrowers to irreparable financial, credit, and medical harm.

This escalation will be presented to the Court as evidence of **intentional and oppressive conduct** warranting immediate injunctive relief.

Accordingly, demand is hereby made that Oaktree Funding Corporation, **effective immediately**:

- Cease all billing, payment withdrawals, collection activity, and enforcement actions;

- Reverse the unauthorized debit processed today;

- Confirm in writing that **no adverse credit reporting** will occur;

- Issue written instructions to its servicer implementing a **full and immediate pause** pending court determination.

Absent immediate written confirmation of the above, this letter and supporting evidence will be submitted to the Court as proof that Oaktree, through counsel, knowingly continued collection activity after admitting error and after notice of irreparable harm.

Nothing in this letter waives any rights, claims, or remedies. All rights are expressly reserved.

Please govern yourselves accordingly.

Respectfully,

**Audrey Little**
Plaintiff in Pro Per
81439 Merv Griffin Way
La Quinta, CA 92253
310-283-4448
audrey.little458@gmail.com

**From:** **NoReply-Servicing** noreply-servicing@myloanservicer.com
**Subject:** Message from Oaktree Funding Corp. 2597
**Date:** December 17, 2025 at 6:07 AM
**To:** AUDREY.LITTLE458@GMAIL.COM, HEYNOWJL@OUTLOOK.COM





## Your mortgage payment is complete.

Great news — we have successfully processed and applied the following payment to your mortgage loan ending in 2597. You're all set!

**Amount Paid**     $6,090.85
**Payment Date**     12/16/2025
Breakdown
**Principal and Interest**  $6,090.85
**Escrow (Taxes and Insurance)**  $0.00
**Additional Principal**  $0.00
**Fees**  $0.00

Log into our website or app to review your payment information, transactions, and more—anytime, anywhere.

## READY TO SET UP RECURRING PAYMENTS?

**From:** Audrey Little audreylittle@icloud.com
**Subject:** Here they are
**Date:** December 30, 2025 at 1:18 PM
**To:** jcohen@coheneblg.com
**Cc:** Audrey Little audreylittle@icloud.com, Audrey Little audreylittle@mac.com



**final_complaint_SAC_FINAL.pdf**
172 KB

**tro sup exibit binder .pdf**
15.4 MB

**supplemental exhitbi index.pdf**
168 KB

**key stmtm of fact with correct cover.pdf**
70 KB

**Case_Law_Supporting_Plaintiff.pdf**
6 KB

**Declaration_of_Audrey_Little_Supplemental ...**
184 KB

**varun regulatory review.pdf**
110 KB

**Request for CPL Coverage ...**

This case literally could not be clearer and I do not for the life of me understand why they have chosen litigation over cure,  I have given them many good faith options to settle. If you have AI run the case through and you will see the summary.

You are the only friend I have that can represent me.

You are the only friend I have that can represent me.

**From:** Audrey Little audreylittle458@gmail.com
**Subject:** Here they are
**Date:** December 30, 2025 at 1:19 PM
**To:** jcohen@coheneblg.com
**Cc:** Audrey Little audreylittle458@gmail.com, Audrey Little audreylittle@mac.com



**final_complaint_SAC_FINAL.pdf**

**tro sup exibit binder .pdf**

**supplemental exhitbi index.pdf**

**key stmtm of fact with correct cover.pdf**

**Case_Law_Supporting_Plaintiff.pdf**

**Declaration_of_Audrey_Little_Supplemental ...**

**varun regulatory review.pdf**

**Request for CPL Coverage ...**

This case literally could not be clearer and I do not for the life of me understand why they have chosen litigation over cure, I have given them many good faith options to settle. If you have AI run the case through and you will see the summary.

You are the only friend I have that can represent me.

Regards,

Audrey Little
audreylittle458@gmail.com

**From:** Jake Little  jake.little@thetradedesk.com  📎
**Subject:** Re: Message from Oaktree Funding Corp.
**Date:** December 30, 2025 at 2:35 PM
**To:** Audrey Little  audreylittle@icloud.com

Yes paid last night. Forwarded you confirmation

Get [Outlook for iOS](#)

**From:** Audrey Little <audreylittle@icloud.com>
**Sent:** Tuesday, December 30, 2025 2:28:20 PM
**To:** Jake Little <jake.little@thetradedesk.com>
**Cc:** Audrey Little <audreylittle@icloud.com>
**Subject:** Fwd: Message from Oaktree Funding Corp.

I got this today was it paid last night? I need to know for the legal stuff

Begin forwarded message:

**From:** "Oaktree Funding Corp." <noreply-servicing@myloanservicer.com>
**Subject:** **Message from Oaktree Funding Corp.**
**Date:** December 30, 2025 at 9:08:46 AM PST
**To:** AUDREY.LITTLE458@GMAIL.COM
**Reply-To:** loaninfo@myloanservicer.com





**Protect your credit! Make your past due payment today.**

Maybe it was an oversight, but we haven't received your payment due 12/01/2025.

Be sure to make or schedule your payment before the last business day of this month.

Please note, if you successfully submitted your payment on the date you received this email, your payment should be processing. If you aren't sure, please contact us.

## WAYS TO PAY

We offer a variety of quick and easy payment options. Choose whichever is most convenient for you! Questions? Check out our FAQs.

- Online via oaktree.myloanservicer.com or our LoanNav mobile app

- Call Customer Care at 866-760-3361
- Set up autopay (recurring monthly ACH drafts) online or by phone
- Call to set up budget drafts (recurring ACH drafts every 14 days)
- Mail a check with the coupon on your billing statement

## READY TO AUTOMATE YOUR FUTURE PAYMENTS?

Did you know you can put your mortgage payments on cruise control with automatic, recurring ACH drafts? We offer two convenient options:

- Monthly Autopay (enroll online or by phone).
- Biweekly Budget Drafts (call to enroll).

Once enrolled, your payments will draft automatically from your chosen bank account on the same day every month, saving you time and peace of mind.

**Questions? – We're here to help!**

Any time you have questions about your mortgage, visit oaktree.myloanservicer.com to browse FAQs and other helpful resources or contact us any of the following ways. We are eager to serve

you!

- Call <u>866-760-3361</u>
- Message us via <u>oaktree.myloanservicer.com</u>
- Email <u>loaninfo@myloanservicer.com</u>

As your mortgage partner, we are eager to serve you!

**IMPORTANT INFORMATION**

If you wish to opt out of receiving future electronic communications from us, please log into your account at <u>oaktree.myloanservicer.com</u> or call us at 866-760-3361 to update your communication preferences. Please do not reply to this email as we are not able to respond to messages sent to this address.

**ATTENTION**

For your protection, Oaktree Funding Corp. will never send you emails requesting your social security number, password, or any other sensitive information. If you do receive such messages, you should consider them suspicious, delete them, and contact us immediately at 866-760-3361.

**SUBSERVICING NOTICE**

Cornerstone Servicing, a division of Cornerstone Capital Bank, SSB, has an agreement with Oaktree Funding Corp. to provide the day-to-day servicing of your loan.

To view Oaktree Funding Corp.'s privacy policy, visit <u>https://nonqmexpert.com.</u>

To view Cornerstone Capital Bank's privacy policy, visit <u>houseloan.com/privacy-notice</u>

To view Cornerstone Capital Bank's disclosures, visit <u>myloanservicer.com/disclosures</u>.

Oaktree Funding Corp. | NMLS ID # 71640 (www.nmlsconsumeraccess.org)

Cornerstone Capital Bank, SSB Member FDIC, NMLS ID#2258

(www.nmlsconsumeraccess.org)

PO Box 4638, Englewood, CO80155
Monday through Friday, 6am to 6pm / Saturday 8am to 12pm MT

Email ID:CC012

**From:** **Audrey Little** audreylittle@icloud.com  🔗
**Subject:** Fwd: Message from Oaktree Funding Corp.
**Date:** December 30, 2025 at 2:28 PM
**To:** Jake Little jake.little@thetradedesk.com
**Cc:** Audrey Little audreylittle@icloud.com



I got this today was it paid last night? I need to know for the legal stuff

Begin forwarded message:

**From:** "Oaktree Funding Corp." <noreply-servicing@myloanservicer.com>
**Subject:** **Message from Oaktree Funding Corp.**
**Date:** December 30, 2025 at 9:08:46 AM PST
**To:** AUDREY.LITTLE458@GMAIL.COM
**Reply-To:** loaninfo@myloanservicer.com



**IMPORTANT NOTICE** *regarding your* **MORTGAGE**

**Protect your credit! Make your past due payment today.**

Maybe it was an oversight, but we haven't received your payment due 12/01/2025.

Be sure to make or schedule your payment before the last business day of this month.

Please note, if you successfully submitted your payment on the date you received this email, your payment should be processing. If you aren't sure, please contact us.

## WAYS TO PAY

We offer a variety of quick and easy payment options. Choose whichever is most convenient for you! Questions? Check out our FAQs.

- Online via oaktree.myloanservicer.com or our LoanNav mobile app

- Call Customer Care at 866-760-3361
- Set up autopay (recurring monthly ACH drafts) online or by phone
- Call to set up budget drafts (recurring ACH drafts every 14 days)
- Mail a check with the coupon on your billing statement

## READY TO AUTOMATE YOUR FUTURE PAYMENTS?

Did you know you can put your mortgage payments on cruise control with automatic, recurring ACH drafts? We offer two convenient options:

- Monthly Autopay (enroll online or by phone).
- Biweekly Budget Drafts (call to enroll).

Once enrolled, your payments will draft automatically from your chosen bank account on the same day every month, saving you time and peace of mind.

**Questions? – We're here to help!**

Any time you have questions about your mortgage, visit oaktree.myloanservicer.com to browse FAQs and other helpful resources or contact us any of the following ways. We are eager to serve you!

- Call 866-760-3361
- Message us via oaktree.myloanservicer.com
- Email loaninfo@myloanservicer.com

As your mortgage partner, we are eager to serve you!

**IMPORTANT INFORMATION**

If you wish to opt out of receiving future electronic communications from us, please log into your account at oaktree.myloanservicer.com or call us at 866-760-3361 to update your communication preferences. Please do not reply to this email as we are not able to respond to messages sent to this address.

**ATTENTION**

For your protection, Oaktree Funding Corp. will never send you emails requesting your social security number, password, or any other sensitive information. If you do receive such messages, you should consider them suspicious, delete them, and contact us immediately at 866-760-3361.

**SUBSERVICING NOTICE**

Cornerstone Servicing, a division of Cornerstone Capital Bank, SSB, has an agreement with Oaktree Funding Corp. to provide the day-to-day servicing of your loan.

To view Oaktree Funding Corp.'s privacy policy, visit https://nonqmexpert.com.

To view Cornerstone Capital Bank's privacy policy, visit
houseloan.com/privacy-notice

To view Cornerstone Capital Bank's disclosures, visit
myloanservicer.com/disclosures.

Oaktree Funding Corp. | NMLS ID # 71640 (www.nmlsconsumeraccess.org)

Cornerstone Capital Bank, SSB Member FDIC, NMLS ID#2258
(www.nmlsconsumeraccess.org)

PO Box 4638, Englewood, CO80155
Monday through Friday, 6am to 6pm / Saturday 8am to 12pm MT



Email ID:CC012

**From:** **Oaktree Funding Corp.** noreply-servicing@myloanservicer.com
**Subject:** Message from Oaktree Funding Corp.
**Date:** December 30, 2025 at 9:08 AM
**To:** AUDREY.LITTLE458@gmail.com  AUDREY.LITTLE458@GMAIL.COM



**Protect your credit! Make your past due payment today.**

Maybe it was an oversight, but we haven't received your payment due 12/01/2025.

Be sure to make or schedule your payment before the last business day of this month.

Please note, if you successfully submitted your payment on the date you received this email, your payment should be processing. If you aren't sure, please contact us.

**WAYS TO PAY**

We offer a variety of quick and easy payment options. Choose whichever is most convenient for you! Questions? Check out our FAQs.

- Online via oaktree.myloanservicer.com or our LoanNav mobile app

- Call Customer Care at 866-760-3361
- Set up autopay (recurring monthly ACH drafts) online or by phone
- Call to set up budget drafts (recurring ACH drafts every 14 days)
- Mail a check with the coupon on your billing statement

## READY TO AUTOMATE YOUR FUTURE PAYMENTS?

Did you know you can put your mortgage payments on cruise control with automatic, recurring ACH drafts? We offer two convenient options:

- Monthly Autopay (enroll online or by phone).
- Biweekly Budget Drafts (call to enroll).

Once enrolled, your payments will draft automatically from your chosen bank account on the same day every month, saving you time and peace of mind.

**Questions? – We're here to help!**

Any time you have questions about your mortgage, visit oaktree.myloanservicer.com to browse FAQs and other helpful resources or contact us any of the following ways. We are eager to serve you!

- Call 866-760-3361
- Message us via oaktree.myloanservicer.com
- Email loaninfo@myloanservicer.com

As your mortgage partner, we are eager to serve you!

**IMPORTANT INFORMATION**

If you wish to opt out of receiving future electronic communications from us, please log into your account at oaktree.myloanservicer.com or call us at 866-760-3361 to update your communication preferences. Please do not reply to this email as we are not able to respond to messages sent to this address.

**ATTENTION**

For your protection, Oaktree Funding Corp. will never send you emails requesting your social security number, password, or any other sensitive information. If you do receive such messages, you should consider them suspicious, delete them, and contact us immediately at 866-760-3361.

**SUBSERVICING NOTICE**

Cornerstone Servicing, a division of Cornerstone Capital Bank, SSB, has an agreement with Oaktree Funding Corp. to provide the day-to-day servicing of your loan.

Funding Corp. to provide the day-to-day servicing of your loan.

To view Oaktree Funding Corp.'s privacy policy, visit https://nonqmexpert.com.

To view Cornerstone Capital Bank's privacy policy, visit houseloan.com/privacy-notice

To view Cornerstone Capital Bank's disclosures, visit myloanservicer.com/disclosures.

Oaktree Funding Corp. | NMLS ID # 71640 (www.nmlsconsumeraccess.org)

Cornerstone Capital Bank, SSB Member FDIC, NMLS ID#2258 (www.nmlsconsumeraccess.org)

PO Box 4638, Englewood, CO80155
Monday through Friday, 6am to 6pm / Saturday 8am to 12pm MT

Email ID:CC012

**From:** **NoReply-Servicing** noreply-servicing@myloanservicer.com
**Subject:** Message from Oaktree Funding Corp. 2597
**Date:** December 31, 2025 at 7:46 AM
**To:** AUDREY.LITTLE458@GMAIL.COM, HEYNOWJL@OUTLOOK.COM





## Your mortgage payment is complete.

Great news — we have successfully processed and applied the following payment to your mortgage loan ending in 2597. You're all set!

**Amount Paid**     $6,395.39
**Payment Date**     12/30/2025
Breakdown
**Principal and Interest**   $6,090.85
**Escrow (Taxes and Insurance)**  $0.00
**Additional Principal**  $0.00
**Fees**  $304.54

Log into our website or app to review your payment information, transactions, and more— anytime, anywhere.

## READY TO SET UP RECURRING PAYMENTS?

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** Fwd: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from you I will not have a. Choice
**Date:** January 8, 2026 at 9:56 AM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com
**Cc:** Audrey Little audreylittle458@gmail.com

I just received this when a payment was made by my son on 12/29 .  This is now harassment.





**Additional Principal** $0.00

**Fees** $304.54

Log into our website or app to review your payment information, transactions, and more anywhere.

## READY TO SET UP RECURRING PAYMENTS?

All folders are up to date.    Connected to: Microsoft E

ime Payment Draft Scheduled

LE:

g sent to confirm that your one-time payment draft $6,420.39, for your loan ending in *2597, was 29/2025.



number is 1767067557600.

questions, please contact us at the phone number

ur business.

**ng Corp.**

for information purposes only. Please do not respond
ress.

| Monday - Friday: 6 AM - 6 PM (MT) | Saturday: 8
) | Equal Housing Opportunity

ORMATION This email was sent to the email address
receive updates on your mortgage loan. If you wish
eiving future electronic communications from us,
s.myloanservicer.com or call us at 866.312.0272 to
munication preferences. Please do not reply to this
not able to respond to messages sent to this address.

All

Calendar        Files        Apps

FIRMATION

**\*>

o

oday regarding your transactions.

ɟ your transaction history, we confirmed that there was no denied payment for the past 30 days
ɔ, to January 08, 2026.

ie don't hesitate to contact us.

Regards,

Audrey Little
audreylittle458@gmail.com

Begin forwarded message:

**From:** "Oaktree Funding Corp." <noreply-servicing@myloanservicer.com>
**Subject: Important Notice Regarding Your Mortgage**
**Date:** January 8, 2026 at 9:01:28 AM PST
**To:** AUDREY.LITTLE458@GMAIL.COM
**Reply-To:** loaninfo@myloanservicer.com



**From:** **Oaktree Funding Corp.** noreply-servicing@myloanservicer.com
**Subject:** Important Notice Regarding Your Mortgage
**Date:** January 8, 2026 at 9:01 AM
**To:** AUDREY.LITTLE458@gmail.com AUDREY.LITTLE458@GMAIL.COM



A payment made to your loan ending in 2597 on 12/30/2025 in the amount of $6,420.39 was returned unpaid by your bank due to UNCOLLECTED FUNDS. To replace the returned payment, please make a new payment as soon as possible.

IMPORTANT: If the new payment is not received prior to the end of your grace period, a late fee may be charged. In addition, if you are enrolled for autopay (monthly recurring ACH drafts) or budget drafts (recurring ACH drafts every 14 days), and your loan is past due on your next scheduled draft day, your next payment will not draft.

If you are unable to make the payment, please contact us. We're here to help!

## WAYS TO PAY

We offer a variety of quick and easy payment options. Choose whichever is most convenient for you!

Before your first payment to  Oaktree Funding Corp. is due, you will receive a statement by mail--or enroll for our convenient e-statement options to receive it by email.

- Online via oaktree.myloanservicer.com or our mobile app LoanNav

- Call Customer Care at <u>866-500-0756</u>

- Set up autopay (recurring monthly ACH drafts) online or by phone

- Call to set up budget drafts (recurring ACH drafts every 14 days)

- Mail a check or update your third-party bill pay settings to:

  Oaktree Funding Corp.

  PO Box 660217

  Dallas, TX 75266-0217

## WE'RE A CALL OR CLICK AWAY!

Any time you have questions or need support, we're happy to help. Here are a few ways to reach us:

- Call <u>866-760-3361</u>
- Log into our <u>website</u> and <u>app</u> to message with us
- Email us at <u>loaninfo@myloanservicer.com</u>

**<u>Fair Debt Collection Practices Act:</u>**
TO THE EXTENT THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) AND/OR STATE DEBT COLLECTION LAWS ARE APPLICABLE, PLEASE BE ADVISED THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**<u>Bankruptcy Information:</u>**

IF YOU ARE CURRENTLY INVOLVED IN A BANKRUPTCY PROCEEDING OR HAVE PREVIOUSLY RECEIVED A DISCHARGE IN A BANKRUPTCY PROCEEDING, PLEASE NOTIFY US IMMEDIATELY, IF YOU HAVE NOT DONE SO ALREADY, AND BE ADVISED THAT THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY. THIS NOTICE IS NOT INTENDED TO COLLECT, RECOVER, OR OFFSET THE DEBT AGAINST YOU PERSONALLY AND SHOULD NOT BE CONSIDERED A DEMAND FOR PAYMENT OR INDICATE THAT YOU ARE PERSONALLY LIABLE FOR THIS DEBT. PLEASE CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS ABOUT YOUR RIGHTS UNDER BANKRUPTCY LAW.

**<u>Equal Credit Opportunity Act:</u>**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Division of Depositor and Consumer Protection, National Center for Consumer and Depositor Assistance, Federal Deposit Insurance Corporation, 1100 Walnut Street, Box #11, Kansas City, MO 64106.

**Servicemembers Civil Relief Act Disclosure:**

If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to eligible military service personnel, including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility, please contact our Customer Service Team at 866-760-3361.

**Successor in Interest:**

Confirmed successors in interest to borrowers named on the Note are not liable for repayment of the debt of the original named borrower unless and until the successor assumes the loan obligation pursuant to applicable law.

**Credit Reporting Disclosure:**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**IMPORTANT INFORMATION**

If you wish to opt out of receiving future electronic communications from us, please log into your account at oaktree.myloanservicer.com or call us at 866-760-3361 to update your communication preferences. Please do not reply to this email as we are not able to respond to messages sent to this address.

**ATTENTION**

For your protection, Oaktree Funding Corp. will never send you emails requesting your social security number, password, or any other sensitive information. If you do receive such messages, you should consider them suspicious, delete them, and contact us immediately at  866-760-3361.

**SUBSERVICING NOTICE**

Cornerstone Servicing, a division of Cornerstone Capital Bank, SSB, has an agreement with Oaktree Funding Corp. to provide the day-to-day servicing of your loan.

To view Oaktree Funding Corp.'s privacy policy, visit https://nonqmexpert.com.

To view Cornerstone Capital Bank's privacy policy, visit houseloan.com/privacy-notice

To view Cornerstone Capital Bank's disclosures, visit myloanservicer.com/disclosures.

Oaktree Funding Corp. | NMLS ID # 71640 (www.nmlsconsumeraccess.org)

Cornerstone Capital Bank, SSB Member FDIC, NMLS ID#2258 (www.nmlsconsumeraccess.org)

PO Box 4638, Englewood, CO80155
Monday through Friday, 6am to 6pm / Saturday 8am to 12pm MT

Email ID:CH010



From: **Audrey Little** audreylittle@me.com
Subject: Fwd: QWR
Date: January 8, 2026 at 10:08 AM
To: thagen@houseloan.com
Cc: Audrey Little audreylittle@me.com

Begin forwarded message:

**From:** Audrey Little <audreylittle458@gmail.com>
**Subject: QWR**
**Date:** December 2, 2025 at 6:03:41 PM PST
**To:** "Goldstein, Jason E." <jgoldstein@buchalter.com>, My Loan Servicer <noreply-servicing@myloanservicer.com>, info@myloanservicer.com
**Cc:** audrey.little458@gmail.com
**Reply-To:** audrey.little458@gmail.com

Audrey Little
81439 Merv Griffin Way
La quinta, CA 92253
audrey.little458@gmail.com
310-283-4448

December 2, 2025

SENT VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED & EMAIL

Oaktree Funding Corp.
Attn: Customer Service / QWR Department
PO Box 660217
Dallas, TX 75266-0217
loaninfo@myloanservicer.com

Cornerstone Servicing (sub-servicer for Oaktree Funding Corp.)
Attn: Research Department
PO Box 660217
Dallas, TX 75266-0217
loaninfo@myloanservicer.com

Re: Qualified Written Request (RESPA) & Demand for Complete Loan File
Loan Number: ending in 2597
Property Address: 81439 Merv Griffin Way, La Quinta, CA 92253
Borrower: Audrey Little

Dear Sir or Madam,

This is a **Qualified Written Request** under Section 6 of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e), and a formal demand under California Civil Code §§ 2937, 1632, and 2923.55.

I formally request that you provide **within 10 days** (or sooner if required by law) a complete, legible copy of **every document** in my loan file, including but not limited to:

1. Complete origination file (application, disclosures, Note, Deed of Trust, HUD-1/Closing Disclosure)

1. Complete origination file (application, disclosures, Note, Deed of Trust, HUD-1/Closing Disclosure)
2. Complete closing/escrow file
3. Final ALTA title insurance policy and all endorsements
4. Preliminary Title Report / Title Commitment
5. All escrow instructions and amendments
6. All recorded documents (Deed of Trust, Assignment(s), Reconveyances, etc.)
7. Complete servicing file and payment history from inception to present
8. All internal notes, memos, emails, and correspondence regarding my loan
9. Identity of the current creditor/note holder and any assignments
10. Complete audio recordings of any phone calls (if retained)
11. Copy of any insurance claims filed regarding lien position or title defects

I also dispute the validity of the debt to the extent it may be affected by the undisclosed prior lien that caused Oaktree's loan to record in third position instead of second, as required by your own title insurance policy and escrow instructions.

Failure to provide the requested documents within the statutory timeframe may constitute a violation of RESPA and California law and may subject you to actual damages, statutory damages up to $2,000, attorney fees, and costs.

Please send all documents to the mailing address above and also email them to audrey.little@gmail.com.

Thank you for your immediate attention.

Sincerely,

/s/Audrey Little
Audrey Little
Date: December 2, 2025

From: **Audrey Little** audreylittle458@gmail.com
Subject: QWR
Date: December 2, 2025 at 6:03 PM
To: Goldstein, Jason E. jgoldstein@buchalter.com, My Loan Servicer noreply-servicing@myloanservicer.com, info@myloanservicer.com
Cc: audrey.little458@gmail.com



Audrey Little
81439 Merv Griffin Way
La quinta, CA 92253
audrey.little458@gmail.com
310-283-4448

December 2, 2025

SENT VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED & EMAIL

Oaktree Funding Corp.
Attn: Customer Service / QWR Department
PO Box 660217
Dallas, TX 75266-0217
loaninfo@myloanservicer.com

Cornerstone Servicing (sub-servicer for Oaktree Funding Corp.)
Attn: Research Department
PO Box 660217
Dallas, TX 75266-0217
loaninfo@myloanservicer.com

Re: Qualified Written Request (RESPA) & Demand for Complete Loan File
Loan Number: ending in 2597
Property Address: 81439 Merv Griffin Way, La Quinta, CA 92253
Borrower: Audrey Little

Dear Sir or Madam,

This is a **Qualified Written Request** under Section 6 of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e), and a formal demand under California Civil Code §§ 2937, 1632, and 2923.55.

I formally request that you provide **within 10 days** (or sooner if required by law) a complete, legible copy of **every document** in my loan file, including but not limited to:

1. Complete origination file (application, disclosures, Note, Deed of Trust, HUD-1/Closing Disclosure)
2. Complete closing/escrow file
3. Final ALTA title insurance policy and all endorsements
4. Preliminary Title Report / Title Commitment
5. All escrow instructions and amendments
6. All recorded documents (Deed of Trust, Assignment(s), Reconveyances, etc.)
7. Complete servicing file and payment history from inception to present
8. All internal notes, memos, emails, and correspondence regarding my loan
9. Identity of the current creditor/note holder and any assignments
10. Complete audio recordings of any phone calls (if retained)
11. Copy of any insurance claims filed regarding lien position or title defects

I also dispute the validity of the debt to the extent it may be affected by the undisclosed prior lien that caused Oaktree's loan to record in third position instead of second, as required by your own title insurance policy and escrow instructions.

Failure to provide the requested documents within the statutory timeframe may constitute a violation of RESPA and California law and may subject you to actual damages, statutory damages up to $2,000, attorney fees, and costs.

Please send all documents to the mailing address above and also email them to audrey.little@gmail.com.

Thank you for your immediate attention.

Sincerely,

/s/Audrey Little
Audrey Little
Date: December 2, 2025

**From:** **Audrey Little** audreylittle@icloud.com
**Subject:** Fwd: URGENT NOTICE TO COUNSEL – KNOWING, UNAUTHORIZED BILLING AFTER ADMISSION OF ERROR
**Date:** January 8, 2026 at 10:08 AM
**To:** thagen@houseloan.com
**Cc:** Audrey Little audreylittle@icloud.com



Begin forwarded message:

**From:** Audrey Little <audreylittle@icloud.com>
**Subject: URGENT NOTICE TO COUNSEL – KNOWING, UNAUTHORIZED BILLING AFTER ADMISSION OF ERROR**
**Date:** December 16, 2025 at 9:54:07 AM PST
**To:** "Goldstein, Jason E." <jgoldstein@buchalter.com>, My Loan Servicer <noreply-servicing@myloanservicer.com>, info@myloanservicer.com, "James, Lexine" <ljames@cornerstoneservicing.com>
**Cc:** Teague Robert <rteague@oaktreefunding.com>

**Date:** December 16, 2025

**Via Email (Emergency Service)**
Jason E. Goldstein, Esq.
Buchalter
Counsel for Oaktree Funding Corporation

Re: **Audrey Little v. Rocket Title Insurance Company, et al.**

## URGENT NOTICE TO COUNSEL – KNOWING, UNAUTHORIZED BILLING AFTER ADMISSION OF ERROR

Counsel:

This letter is sent to you in your capacity as counsel for Oaktree Funding Corporation to place both you and your client on immediate notice of ongoing, knowing misconduct that has escalated into an emergency requiring immediate court intervention.

As you and your client have acknowledged in writing, Oaktree is aware that the subject loan should not have closed as structured due to title and escrow failures. Oaktree has further acknowledged that the defect giving rise to the improper lien position did not originate with the borrower. Despite that knowledge, Oaktree has continued to bill, collect, and authorize payment withdrawals on a loan that all parties now know was improperly created and improperly secured.

After repeated written notices instructing Oaktree and its servicer to cease billing, payment withdrawals, and enforcement activity—and after notice that the loan is disputed and subject to imminent court review —an additional payment in the amount of approximately **$6,090.85** was withdrawn from my bank account **today**.

This withdrawal was **unauthorized**.

As a direct result of this unauthorized debit, my account is now overdrawn by **more than $5,000**, triggering cascading payment failures and leaving me without access to funds for basic necessities, including **food and prescription medication**. This is not speculative harm. It is immediate, concrete, and

including **food and prescription medication**. This is not speculative harm. It is immediate, concrete, and ongoing.

This conduct occurred **after admission of error**, **after notice**, and **after express instructions to stop**. Continued billing under these circumstances is not a good-faith dispute. It is **knowing conduct** that predictably inflicts severe financial, credit, and medical harm on borrowers trapped in a loan that should never have existed.

You and your client are therefore on notice of the following facts:

1. Oaktree has acknowledged that the loan should not have closed as structured.

2. Oaktree has actual knowledge that the lien position is defective due to title and escrow failures.

3. Oaktree has been expressly instructed, in writing, to cease billing, withdrawals, and enforcement activity.

4. Oaktree nevertheless authorized or permitted an additional payment withdrawal today, causing immediate and severe harm.

5. Oaktree is knowingly exposing both borrowers to irreparable financial, credit, and medical harm.

This escalation will be presented to the Court as evidence of **intentional and oppressive conduct** warranting immediate injunctive relief.

Accordingly, demand is hereby made that Oaktree Funding Corporation, **effective immediately**:

• Cease all billing, payment withdrawals, collection activity, and enforcement actions;

• Reverse the unauthorized debit processed today;

• Confirm in writing that **no adverse credit reporting** will occur;

• Issue written instructions to its servicer implementing a **full and immediate pause** pending court determination.

Absent immediate written confirmation of the above, this letter and supporting evidence will be submitted to the Court as proof that Oaktree, through counsel, knowingly continued collection activity after admitting error and after notice of irreparable harm.

Nothing in this letter waives any rights, claims, or remedies. All rights are expressly reserved.

Please govern yourselves accordingly.

Respectfully,

**Audrey Little**
Plaintiff in Pro Per
81439 Merv Griffin Way
La Quinta, CA 92253
310-283-4448
audrey.little458@gmail.com

From: **Audrey Little** audreylittle@icloud.com
Subject: URGENT NOTICE TO COUNSEL – KNOWING, UNAUTHORIZED BILLING AFTER ADMISSION OF ERROR
Date: December 16, 2025 at 9:54 AM
To: Goldstein, Jason E. jgoldstein@buchalter.com, My Loan Servicer noreply-servicing@myloanservicer.com,
   info@myloanservicer.com, James, Lexine ljames@cornerstoneservicing.com
Cc: Teague Robert rteague@oaktreefunding.com

**Date:** December 16, 2025

**Via Email (Emergency Service)**
Jason E. Goldstein, Esq.
Buchalter
Counsel for Oaktree Funding Corporation

Re: **Audrey Little v. Rocket Title Insurance Company, et al.**

---

## URGENT NOTICE TO COUNSEL – KNOWING, UNAUTHORIZED BILLING AFTER ADMISSION OF ERROR

Counsel:

This letter is sent to you in your capacity as counsel for Oaktree Funding Corporation to place both you and your client on immediate notice of ongoing, knowing misconduct that has escalated into an emergency requiring immediate court intervention.

As you and your client have acknowledged in writing, Oaktree is aware that the subject loan should not have closed as structured due to title and escrow failures. Oaktree has further acknowledged that the defect giving rise to the improper lien position did not originate with the borrower. Despite that knowledge, Oaktree has continued to bill, collect, and authorize payment withdrawals on a loan that all parties now know was improperly created and improperly secured.

After repeated written notices instructing Oaktree and its servicer to cease billing, payment withdrawals, and enforcement activity—and after notice that the loan is disputed and subject to imminent court review—an additional payment in the amount of approximately **$6,090.85** was withdrawn from my bank account **today**.

This withdrawal was **unauthorized**.

As a direct result of this unauthorized debit, my account is now overdrawn by **more than $5,000**, triggering cascading payment failures and leaving me without access to funds for basic necessities, including **food and prescription medication**. This is not speculative harm. It is immediate, concrete, and ongoing.

This conduct occurred **after admission of error**, **after notice**, and **after express instructions to stop**. Continued billing under these circumstances is not a good-faith dispute. It is **knowing conduct** that predictably inflicts severe financial, credit, and medical harm on borrowers trapped in a loan that should never have existed.

You and your client are therefore on notice of the following facts:

1. Oaktree has acknowledged that the loan should not have closed as structured.

2. Oaktree has actual knowledge that the lien position is defective due to title and escrow failures.

3. Oaktree has been expressly instructed, in writing, to cease billing, withdrawals, and enforcement activity.

4. Oaktree nevertheless authorized or permitted an additional payment withdrawal today, causing immediate and severe harm.

5. Oaktree is knowingly exposing both borrowers to irreparable financial, credit, and medical harm.

This escalation will be presented to the Court as evidence of **intentional and oppressive conduct** warranting immediate injunctive relief.

Accordingly, demand is hereby made that Oaktree Funding Corporation, **effective immediately**:

- Cease all billing, payment withdrawals, collection activity, and enforcement actions;

- Reverse the unauthorized debit processed today;

- Confirm in writing that **no adverse credit reporting** will occur;

- Issue written instructions to its servicer implementing a **full and immediate pause** pending court determination.

Absent immediate written confirmation of the above, this letter and supporting evidence will be submitted to the Court as proof that Oaktree, through counsel, knowingly continued collection activity after admitting error and after notice of irreparable harm.

Nothing in this letter waives any rights, claims, or remedies. All rights are expressly reserved.

Please govern yourselves accordingly.

Respectfully,

**Audrey Little**
Plaintiff in Pro Per
81439 Merv Griffin Way
La Quinta, CA 92253
310-283-4448
audrey.little458@gmail.com

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** Re: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from you I will not have a. Choice [IMAN-BUCHALTER.FID6170674]
**Date:** January 8, 2026 at 1:30 PM
**To:** Goldstein, Jason E.  jgoldstein@buchalter.com
**Cc:** Audrey Little  audreylittle458@gmail.com

Thank you for responding.  Here is where I am, I am going to have to stop my caretaker immediately, I am disabled and I am going to need to sell.

I have tried not to hurt oaktree. You know that.

FYI they are complicit in the failing escrow if you look at the escrow instructions They required Oaktree to QC the loan prior and based on how It ended up and the evidence Robert gave me that did not occur.  Had it this loan was no title insurance in effect at the time of the loan which I don't know that anyone including title has realized based on the denial. I really have given you everything.

I did not know about this lien and I am the only one that followed escrow instructions.

All I requested was a. Pause so we could  get close to settle and they will and oak tree will be paid.  I have 100% evidence backed irrefutable suit against them that no amount of discovery will change.  I only need the pause lo suit if the pause.  This case will be over quickly so I do not understand why Oaktree would intentionally put me in this position,

Even if the pause is only for 160 days it's enough.


Regards,

Audrey Little
audreylittle458@gmail.com


> On Jan 8, 2026, at 1:20 PM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:
>
> Audrey:
>
> To be clear, unless you are told that there will be what you have referred to as a pause, there is no pause.
>
>
> **Buchalter LLP**
>
> **Jason E. Goldstein**
> Partner
> **T** (949) 224-6235
> **F** (949) 720-0182
> jgoldstein@Buchalter.com
>
> 18400 Von Karman Avenue, Suite 800
> Irvine, CA 92612-0514
> www.buchalter.com | Bio | LinkedIn
>
>
> **Buchalter**
>
> **Jason E. Goldstein**
> Partner
> **T** (949) 224-6235
> **F** (949) 720-0182
> jgoldstein@Buchalter.com
>
> 18400 Von Karman Avenue, Suite 800
> Irvine, CA 92612-0514
> www.buchalter.com | Bio | LinkedIn
>
>
> **From:** Audrey Little <audreylittle458@gmail.com>
> **Sent:** Thursday, January 8, 2026 10:07 AM
> **To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
> **Cc:** Audrey Little <audreylittle458@gmail.com>
> **Subject:** Re: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from BUCHALTER.FID6170674]
>
> | This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>: |
>
> Because the payment was made on the 29th and this is not the first time
> I have asked for a pause until the noticed hearing can you please confirm yes or no not no answer as usual.
>
>
> Regards,
>
> Audrey Little
> audreylittle458@gmail.com
>
>
> > On Jan 8, 2026, at 10:04 AM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:
> >
> > Audrey:
> >
> > That seems to be a standard and nice message.  How is it harassment?
> >
> >
> > Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, January 8, 2026 9:57 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Fwd: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't he

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

I just received this when a payment was made by my son on 12/29 .  This is now harassment.

<image001.jpg><image002.jpg><image003.jpg>
Regards,

Audrey Little
audreylittle458@gmail.com

Begin forwarded message:

**From:** "Oaktree Funding Corp." <noreply-servicing@myloanservicer.com>
**Subject: Important Notice Regarding Your Mortgage**
**Date:** January 8, 2026 at 9:01:28 AM PST
**To:** AUDREY.LITTLE458@GMAIL.COM
**Reply-To:** loaninfo@myloanservicer.com

<image001.jpg>

<image004.png>

<image005.png>

A payment made to your loan ending in 2597 on 12/30/2025 in the amount of $6,420.39 was returned unpaid by your bank due to UNCOLLECTED FUNDS. To replace the returned payment possible.

IMPORTANT: If the new payment is not received prior to the end of your grace period, a late fee may be charged. In addition, if you are enrolled for autopay (monthly recurring ACH drafts) or days), and your loan is past due on your next scheduled draft day, your next payment will not draft.

If you are unable to make the payment, please contact us. We're here to help!

**WAYS TO PAY**

We offer a variety of quick and easy payment options. Choose whichever is most convenient for you!

Before your first payment to  Oaktree Funding Corp. is due, you will receive a statement by mail--or enroll for our convenient e-statement options to receive it by email.
        Online via oaktree.myloanservicer.com or our mobile app LoanNav
        Call Customer Care at 866-500-0756
        Set up autopay (recurring monthly ACH drafts) online or by phone
        Call to set up budget drafts (recurring ACH drafts every 14 days)
        Mail a check or update your third-party bill pay settings to:

        Oaktree Funding Corp.

        PO Box 660217

        Dallas, TX 75266-0217

**WE'RE A CALL OR CLICK AWAY!**

Any time you have questions or need support, we're happy to help. Here are a few ways to reach us:

- Call 866-760-3361
- Log into our website and app to message with us
- Email us at loaninfo@myloanservicer.com

**Fair Debt Collection Practices Act:**

TO THE EXTENT THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) AND/OR STATE DEBT COLLECTION LAWS ARE APPLICABLE, PLEASE BE ADVISED THAT THIS COMMU
AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**Bankruptcy Information:**

IF YOU ARE CURRENTLY INVOLVED IN A BANKRUPTCY PROCEEDING OR HAVE PREVIOUSLY RECEIVED A DISCHARGE IN A BANKRUPTCY PROCEEDING, PLEASE NOTIFY US
ALREADY, AND BE ADVISED THAT THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY. THIS NOTICE IS NOT INTENDED TO COLLECT, RECOVER, OR OFFSET THE DEBT A
NOT BE CONSIDERED A DEMAND FOR PAYMENT OR INDICATE THAT YOU ARE PERSONALLY LIABLE FOR THIS DEBT. PLEASE CONSULT AN ATTORNEY IF YOU HAVE ANY QUE
BANKRUPTCY LAW.

**Equal Credit Opportunity Act:**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided
binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consume
administers compliance with this law concerning this creditor is Division of Depositor and Consumer Protection, National Center for Consumer and Depositor Assistance, Federal Deposit Ins
#11, Kansas City, MO 64106.

**Servicemembers Civil Relief Act Disclosure:**

If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and be
including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility, please contact our Customer Service Team at 866-760-3361.

**Successor in Interest:**

Confirmed successors in interest to borrowers named on the Note are not liable for repayment of the debt of the original named borrower unless and until the successor assumes the loan ob

**Credit Reporting Disclosure:**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. As required by la
report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

---

**IMPORTANT INFORMATION**

If you wish to opt out of receiving future electronic communications from us, please log into your account at oaktree.myloanservicer.com or call us at 866-760-3361 to update your communication preferences. Please do not reply to this email as we are not able to respond to messages sent to this address.

**ATTENTION**

For your protection, Oaktree Funding Corp. will never send you emails requesting your social security number, password, or any other sensitive information. If you do receive such messages, you should consider them suspicious, delete them, and contact us immediately at 866-760-3361.

**SUBSERVICING NOTICE**

Cornerstone Servicing, a division of Cornerstone Capital Bank, SSB, has an agreement with Oaktree Funding Corp. to provide the day-to-day servicing of your loan.

To view Oaktree Funding Corp.'s privacy policy, visit https://nonqmexpert.com.

To view Cornerstone Capital Bank's privacy policy, visit houseloan.com/privacy-notice

To view Cornerstone Capital Bank's disclosures, visit myloanservicer.com/disclosures.

Oaktree Funding Corp. | NMLS ID # 71640 (www.nmlsconsumeraccess.org)

Cornerstone Capital Bank, SSB Member FDIC, NMLS ID#2258 (www.nmlsconsumeraccess.org)

PO Box 4638, Englewood, CO80155
Monday through Friday, 6am to 6pm / Saturday 8am to 12pm MT

Email ID:CH010

&lt;image002.jpg&gt;

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distributio Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or c us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-ma policies/.

**From:** **Audrey Little** audreylittle458@gmail.com

**Subject:** Re: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from you I will not have a. Choice [IMAN-BUCHALTER.FID6170674]

**Date:** January 8, 2026 at 1:22 PM

**To:** Goldstein, Jason E. jgoldstein@buchalter.com

**Cc:** Audrey Little audreylittle458@gmail.com

Will they agree not to negatively report credit if I pay January on feb 5?

Regards,

Audrey Little
audreylittle458@gmail.com

On Jan 8, 2026, at 1:20 PM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Audrey:

To be clear, unless you are told that there will be what you have referred to as a pause, there is no pause.

**Buchalter LLP**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**Buchalter**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, January 8, 2026 10:07 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Re: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from
BUCHALTER.FID6170674]

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

Because the payment was made on the 29th and this is not the first time
I have asked for a pause until the noticed hearing can you please confirm yes or no not no answer as usual.

Regards,

Audrey Little
audreylittle458@gmail.com

On Jan 8, 2026, at 10:04 AM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Audrey:

That seems to be a standard and nice message.  How is it harassment?

**Buchalter LLP**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, January 8, 2026 9:57 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Fwd: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't he

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

I just received this when a payment was made by my son on 12/29 .  This is now harassment.

<image001.jpg><image002.jpg><image003.jpg>
Regards,

Audrey Little
audreylittle458@gmail.com

Begin forwarded message:

**From:** "Oaktree Funding Corp." <noreply-servicing@myloanservicer.com>
**Subject: Important Notice Regarding Your Mortgage**
**Date:** January 8, 2026 at 9:01:28 AM PST
**To:** AUDREY.LITTLE458@GMAIL.COM
**Reply-To:** loaninfo@myloanservicer.com

<image001.jpg>

<image004.png>

<image005.png>

A payment made to your loan ending in 2597 on 12/30/2025 in the amount of $6,420.39 was returned unpaid by your bank due to UNCOLLECTED FUNDS. To replace the returned payment
possible.

IMPORTANT: If the new payment is not received prior to the end of your grace period, a late fee may be charged. In addition, if you are enrolled for autopay (monthly recurring ACH drafts) or
days), and your loan is past due on your next scheduled draft day, your next payment will not draft.

If you are unable to make the payment, please contact us. We're here to help!

**WAYS TO PAY**

We offer a variety of quick and easy payment options. Choose whichever is most convenient for you!

Before your first payment to  Oaktree Funding Corp. is due, you will receive a statement by mail--or enroll for our convenient e-statement options to receive it by email.
Online via oaktree.myloanservicer.com or our mobile app LoanNav
Call Customer Care at 866-500-0756
Set up autopay (recurring monthly ACH drafts) online or by phone
Call to set up budget drafts (recurring ACH drafts every 14 days)
Mail a check or update your third-party bill pay settings to:

Oaktree Funding Corp.

PO Box 660217

Dallas, TX 75266-0217

**WE'RE A CALL OR CLICK AWAY!**

Any time you have questions or need support, we're happy to help. Here are a few ways to reach us:

· Call 866-760-3361
· Log into our website and app to message with us
· Email us at loaninfo@myloanservicer.com

**Fair Debt Collection Practices Act:**

TO THE EXTENT THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) AND/OR STATE DEBT COLLECTION LAWS ARE APPLICABLE, PLEASE BE ADVISED THAT THIS COMMU
AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**Bankruptcy Information:**

IF YOU ARE CURRENTLY INVOLVED IN A BANKRUPTCY PROCEEDING OR HAVE PREVIOUSLY RECEIVED A DISCHARGE IN A BANKRUPTCY PROCEEDING, PLEASE NOTIFY US
ALREADY, AND BE ADVISED THAT THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY. THIS NOTICE IS NOT INTENDED TO COLLECT, RECOVER, OR OFFSET THE DEBT A
NOT BE CONSIDERED A DEMAND FOR PAYMENT OR INDICATE THAT YOU ARE PERSONALLY LIABLE FOR THIS DEBT. PLEASE CONSULT AN ATTORNEY IF YOU HAVE ANY QUI
BANKRUPTCY LAW.

**Equal Credit Opportunity Act:**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided
binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consume
administers compliance with this law concerning this creditor is Division of Depositor and Consumer Protection, National Center for Consumer and Depositor Assistance, Federal Deposit Ins
#11, Kansas City, MO 64106.

**Servicemembers Civil Relief Act Disclosure:**

If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and be
including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility, please contact our Customer Service Team at 866-760-3361.

**Successor in Interest:**

Confirmed successors in interest to borrowers named on the Note are not liable for repayment of the debt of the original named borrower unless and until the successor assumes the loan ob

**Credit Reporting Disclosure:**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. As required by la
report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

---

**IMPORTANT INFORMATION**

If you wish to opt out of receiving future electronic communications from us, please log into your account at oaktree.myloanservicer.com or call us at 866-760-3361 to update your communication preferences. Please do not reply to this email as we are not able to respond to messages sent to this address.

**ATTENTION**

For your protection, Oaktree Funding Corp. will never send you emails requesting your social security number, password, or any other sensitive information. If you do receive such messages, you should consider them suspicious, delete them, and contact us immediately at 866-760-3361.

**SUBSERVICING NOTICE**

Cornerstone Servicing, a division of Cornerstone Capital Bank, SSB, has an agreement with Oaktree Funding Corp. to provide the day-to-day servicing of your loan.

To view Oaktree Funding Corp.'s privacy policy, visit https://nonqmexpert.com.

To view Cornerstone Capital Bank's privacy policy, visit houseloan.com/privacy-notice

To view Cornerstone Capital Bank's disclosures, visit myloanservicer.com/disclosures.

Oaktree Funding Corp. | NMLS ID # 71640 (www.nmlsconsumeraccess.org)

Cornerstone Capital Bank, SSB Member FDIC, NMLS ID#2258 (www.nmlsconsumeraccess.org)

PO Box 4638, Englewood, CO80155
Monday through Friday, 6am to 6pm / Saturday 8am to 12pm MT

Email ID:CH010

&lt;image002.jpg&gt;

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distributi
Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies
http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or c
us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-ma
policies/.

**From:** **Goldstein, Jason E.** jgoldstein@buchalter.com  📎
**Subject:** RE: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from you I will not have a. Choice [IMAN-BUCHALTER.FID6170674]
**Date:** January 8, 2026 at 1:20 PM
**To:** Audrey Little  audreylittle458@gmail.com
**Cc:** Goldstein, Jason E.  jgoldstein@Buchalter.com

Audrey:

To be clear, unless you are told that there will be what you have referred to as a pause, there is no pause.

Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, January 8, 2026 10:07 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Re: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from y
BUCHALTER.FID6170674]

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

Because the payment was made on the 29th and this is not the first time
I have asked for a pause until the noticed hearing can you please confirm yes or no not no answer as usual.

Regards,

Audrey Little
audreylittle458@gmail.com

On Jan 8, 2026, at 10:04 AM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Audrey:

That seems to be a standard and nice message.  How is it harassment?

Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800

Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

---

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, January 8, 2026 9:57 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Fwd: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hea

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

---

I just received this when a payment was made by my son on 12/29 .  This is now harassment.

<image001.jpg><image002.jpg><image003.jpg>
Regards,

Audrey Little
audreylittle458@gmail.com


Begin forwarded message:

**From:** "Oaktree Funding Corp." <noreply-servicing@myloanservicer.com>
**Subject: Important Notice Regarding Your Mortgage**
**Date:** January 8, 2026 at 9:01:28 AM PST
**To:** AUDREY.LITTLE458@GMAIL.COM
**Reply-To:** loaninfo@myloanservicer.com


<image004.png>

<image005.png>

---

A payment made to your loan ending in 2597 on 12/30/2025 in the amount of $6,420.39 was returned unpaid by your bank due to UNCOLLECTED FUNDS. To replace the returned payment, possible.

IMPORTANT: If the new payment is not received prior to the end of your grace period, a late fee may be charged. In addition, if you are enrolled for autopay (monthly recurring ACH drafts) or b days), and your loan is past due on your next scheduled draft day, your next payment will not draft.

If you are unable to make the payment, please contact us. We're here to help!

**WAYS TO PAY**

We offer a variety of quick and easy payment options. Choose whichever is most convenient for you!

Before your first payment to  Oaktree Funding Corp. is due, you will receive a statement by mail--or enroll for our convenient e-statement options to receive it by email.
Online via oaktree.myloanservicer.com or our mobile app LoanNav
Call Customer Care at 866-500-0756
Set up autopay (recurring monthly ACH drafts) online or by phone
Call to set up budget drafts (recurring ACH drafts every 14 days)
Mail a check or update your third-party bill pay settings to:

Oaktree Funding Corp.

PO Box 660217

Dallas, TX 75266-0217


**WE'RE A CALL OR CLICK AWAY!**

Any time you have questions or need support, we're happy to help. Here are a few ways to reach us:

· Call 866-760-3361
· Log into our website and app to message with us
· Email us at loaninfo@myloanservicer.com


**Fair Debt Collection Practices Act:**
TO THE EXTENT THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) AND/OR STATE DEBT COLLECTION LAWS ARE APPLICABLE, PLEASE BE ADVISED THAT THIS COMMUN
AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.


**Bankruptcy Information:**

IF YOU ARE CURRENTLY INVOLVED IN A BANKRUPTCY PROCEEDING OR HAVE PREVIOUSLY RECEIVED A DISCHARGE IN A BANKRUPTCY PROCEEDING, PLEASE NOTIFY US I

IF YOU ARE CURRENTLY INVOLVED IN A BANKRUPTCY PROCEEDING OR HAVE PREVIOUSLY RECEIVED A DISCHARGE IN A BANKRUPTCY PROCEEDING, PLEASE NOTIFY US II
ALREADY, AND BE ADVISED THAT THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY. THIS NOTICE IS NOT INTENDED TO COLLECT, RECOVER, OR OFFSET THE DEBT AG
NOT BE CONSIDERED A DEMAND FOR PAYMENT OR INDICATE THAT YOU ARE PERSONALLY LIABLE FOR THIS DEBT. PLEASE CONSULT AN ATTORNEY IF YOU HAVE ANY QUES
BANKRUPTCY LAW.

**Equal Credit Opportunity Act:**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided t
binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer
administers compliance with this law concerning this creditor is Division of Depositor and Consumer Protection, National Center for Consumer and Depositor Assistance, Federal Deposit Insur
#11, Kansas City, MO 64106.

**Servicemembers Civil Relief Act Disclosure:**

If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and bene
including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility, please contact our Customer Service Team at 866-760-3361.

**Successor in Interest:**

Confirmed successors in interest to borrowers named on the Note are not liable for repayment of the debt of the original named borrower unless and until the successor assumes the loan oblig

**Credit Reporting Disclosure:**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. As required by law
report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

---

**IMPORTANT INFORMATION**

If you wish to opt out of receiving future electronic communications from us, please log into your account at oaktree.myloanservicer.com or call us at 866-760-3361 to update your communication preferences. Please do not reply to this email as we are not able to respond to messages sent to this address.

**ATTENTION**

For your protection, Oaktree Funding Corp. will never send you emails requesting your social security number, password, or any other sensitive information. If you do receive such messages, you should consider them suspicious, delete them, and contact us immediately at 866-760-3361.

**SUBSERVICING NOTICE**

Cornerstone Servicing, a division of Cornerstone Capital Bank, SSB, has an agreement with Oaktree Funding Corp. to provide the day-to-day servicing of your loan.

To view Oaktree Funding Corp.'s privacy policy, visit https://nonqmexpert.com.

To view Cornerstone Capital Bank's privacy policy, visit houseloan.com/privacy-notice

To view Cornerstone Capital Bank's disclosures, visit myloanservicer.com/disclosures.

Oaktree Funding Corp. | NMLS ID # 71640 (www.nmlsconsumeraccess.org)

Cornerstone Capital Bank, SSB Member FDIC, NMLS ID#2258 (www.nmlsconsumeraccess.org)

PO Box 4638, Englewood, CO80155
Monday through Friday, 6am to 6pm / Saturday 8am to 12pm MT

Email ID:CH010

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution
Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies g
http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or cop
us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail,
policies/.

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** Re: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from you I will not have a. Choice [IMAN-BUCHALTER.FID6170674]
**Date:** January 8, 2026 at 10:06 AM
**To:** Goldstein, Jason E.  jgoldstein@buchalter.com
**Cc:** Audrey Little  audreylittle458@gmail.com

Because the payment was made on the 29th and this is not the first time
I have asked for a pause until the noticed hearing can you please confirm yes or no not no answer as usual.

Regards,

Audrey Little
audreylittle458@gmail.com

On Jan 8, 2026, at 10:04 AM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Audrey:

That seems to be a standard and nice message.  How is it harassment?

Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, January 8, 2026 9:57 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Fwd: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear fro

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

I just received this when a payment was made by my son on 12/29 .  This is now harassment.

<image001.jpg><image002.jpg><image003.jpg>
Regards,

Audrey Little
audreylittle458@gmail.com

Begin forwarded message:

**From:** "Oaktree Funding Corp." <noreply-servicing@myloanservicer.com>
**Subject: Important Notice Regarding Your Mortgage**
**Date:** January 8, 2026 at 9:01:28 AM PST
**To:** AUDREY.LITTLE458@GMAIL.COM
**Reply-To:** loaninfo@myloanservicer.com

<image004.png>

<image005.png>

A payment made to your loan ending in 2597 on 12/30/2025 in the amount of $6,420.39 was returned unpaid by your bank due to UNCOLLECTED FUNDS. To replace the returned payment, please
possible.

IMPORTANT: If the new payment is not received prior to the end of your grace period, a late fee may be charged. In addition, if you are enrolled for autopay (monthly recurring ACH drafts) or budge days), and your loan is past due on your next scheduled draft day, your next payment will not draft.

If you are unable to make the payment, please contact us. We're here to help!

**WAYS TO PAY**

We offer a variety of quick and easy payment options. Choose whichever is most convenient for you!

Before your first payment to  Oaktree Funding Corp. is due, you will receive a statement by mail--or enroll for our convenient e-statement options to receive it by email.
    Online via oaktree.myloanservicer.com or our mobile app LoanNav
    Call Customer Care at 866-500-0756
    Set up autopay (recurring monthly ACH drafts) online or by phone
    Call to set up budget drafts (recurring ACH drafts every 14 days)
    Mail a check or update your third-party bill pay settings to:

   Oaktree Funding Corp.

   PO Box 660217

   Dallas, TX 75266-0217

**WE'RE A CALL OR CLICK AWAY!**

Any time you have questions or need support, we're happy to help. Here are a few ways to reach us:

    · Call 866-760-3361
    · Log into our website and app to message with us
    · Email us at loaninfo@myloanservicer.com

**Fair Debt Collection Practices Act:**
TO THE EXTENT THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) AND/OR STATE DEBT COLLECTION LAWS ARE APPLICABLE, PLEASE BE ADVISED THAT THIS COMMUNICAT
AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**Bankruptcy Information:**

IF YOU ARE CURRENTLY INVOLVED IN A BANKRUPTCY PROCEEDING OR HAVE PREVIOUSLY RECEIVED A DISCHARGE IN A BANKRUPTCY PROCEEDING, PLEASE NOTIFY US IMME
ALREADY, AND BE ADVISED THAT THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY. THIS NOTICE IS NOT INTENDED TO COLLECT, RECOVER, OR OFFSET THE DEBT AGAINS
NOT BE CONSIDERED A DEMAND FOR PAYMENT OR INDICATE THAT YOU ARE PERSONALLY LIABLE FOR THIS DEBT. PLEASE CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTION
BANKRUPTCY LAW.

**Equal Credit Opportunity Act:**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the ap
binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Cred
administers compliance with this law concerning this creditor is Division of Depositor and Consumer Protection, National Center for Consumer and Depositor Assistance, Federal Deposit Insurance
#11, Kansas City, MO 64106.

**Servicemembers Civil Relief Act Disclosure:**

If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits t
including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility, please contact our Customer Service Team at 866-760-3361.

**Successor in Interest:**

Confirmed successors in interest to borrowers named on the Note are not liable for repayment of the debt of the original named borrower unless and until the successor assumes the loan obligatio

**Credit Reporting Disclosure:**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. As required by law, you
report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

---

**IMPORTANT INFORMATION**

If you wish to opt out of receiving future electronic communications from us, please log into your
account at oaktree.myloanservicer.com or call us at  866-760-3361 to update your communication
preferences. Please do not reply to this email as we are not able to respond to messages sent to this

address.

**ATTENTION**

For your protection, Oaktree Funding Corp. will never send you emails requesting your social security number, password, or any other sensitive information. If you do receive such messages, you should consider them suspicious, delete them, and contact us immediately at  866-760-3361.

**SUBSERVICING NOTICE**

Cornerstone Servicing, a division of Cornerstone Capital Bank, SSB, has an agreement with Oaktree Funding Corp. to provide the day-to-day servicing of your loan.

To view Oaktree Funding Corp.'s privacy policy, visit https://nonqmexpert.com.

To view Cornerstone Capital Bank's privacy policy, visit houseloan.com/privacy-notice

To view Cornerstone Capital Bank's disclosures, visit myloanservicer.com/disclosures.

Oaktree Funding Corp. | NMLS ID # 71640 (www.nmlsconsumeraccess.org)

Cornerstone Capital Bank, SSB Member FDIC, NMLS ID#2258 (www.nmlsconsumeraccess.org)

PO Box 4638, Englewood, CO80155
Monday through Friday, 6am to 6pm / Saturday 8am to 12pm MT

Email ID:CH010

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or c notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this http://www.buchalter.com/about/firm-policies/.

**From:** **Goldstein, Jason E.** jgoldstein@buchalter.com  📎
**Subject:** RE: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from you I will not have a. Choice [IMAN-BUCHALTER.FID6170674]
**Date:** January 8, 2026 at 10:04 AM
**To:** Audrey Little audreylittle458@gmail.com
**Cc:** Goldstein, Jason E. jgoldstein@Buchalter.com

Audrey:

That seems to be a standard and nice message. How is it harassment?

**Buchalter LLP**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**Buchalter**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, January 8, 2026 9:57 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Fwd: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

I just received this when a payment was made by my son on 12/29 . This is now harassment.





**IMPORTANT NOTICE**

*regarding your* **MORTGAG**

## Your mortgage payment is complete.

Great news — we have successfully processed and applied the following payment to you loan ending in 2597. You're all set!



## ime Payment Draft Scheduled

TLE:

ig sent to confirm that your one-time payment draft
$6,420.39, for your loan ending in *2597, was
29/2025.

number is 1767067557600.

questions, please contact us at the phone number

ur business.

**ig Corp.**

for information purposes only. Please do not respond
ress.



| Monday - Friday: 6 AM - 6 PM (MT) | Saturday: 8
) | Equal Housing Opportunity

ORMATION This email was sent to the email address
receive updates on your mortgage loan. If you wish
eiving future electronic communications from us,
s.myloanservicer.com or call us at 866.312.0272 to
munication preferences. Please do not reply to this
not able to respond to messages sent to this address.

FIRMATION

**>

ꞩ

oday regarding your transactions.

Ɡ your transaction history, we confirmed that there was no denied payment for the past 30 days
ꞧ, to January 08, 2026.

ꞧe don't hesitate to contact us.

Regards,

Audrey Little
audreylittle458@gmail.com

Begin forwarded message:

**From:** "Oaktree Funding Corp." <noreply-servicing@myloanservicer.com>
**Subject: Important Notice Regarding Your Mortgage**
**Date:** January 8, 2026 at 9:01:28 AM PST
**To:** AUDREY.LITTLE458@GMAIL.COM
**Reply-To:** loaninfo@myloanservicer.com



A payment made to your loan ending in 2597 on 12/30/2025 in the amount of $6,420.39 was returned unpaid by your bank due to UNCOLLECTED FUNDS. To replace the returned payment, please possible.

IMPORTANT: If the new payment is not received prior to the end of your grace period, a late fee may be charged. In addition, if you are enrolled for autopay (monthly recurring ACH drafts) or budget days), and your loan is past due on your next scheduled draft day, your next payment will not draft.

If you are unable to make the payment, please contact us. We're here to help!

**WAYS TO PAY**

We offer a variety of quick and easy payment options. Choose whichever is most convenient for you!

Before your first payment to  Oaktree Funding Corp. is due, you will receive a statement by mail--or enroll for our convenient e-statement options to receive it by email.
Online via oaktree.myloanservicer.com or our mobile app LoanNav
Call Customer Care at 866-500-0756
Set up autopay (recurring monthly ACH drafts) online or by phone
Call to set up budget drafts (recurring ACH drafts every 14 days)
Mail a check or update your third-party bill pay settings to:

Oaktree Funding Corp.

PO Box 660217

Dallas, TX 75266-0217

**WE'RE A CALL OR CLICK AWAY!**

Any time you have questions or need support, we're happy to help. Here are a few ways to reach us:

·    Call 866-760-3361
·    Log into our website and app to message with us
·    Email us at loaninfo@myloanservicer.com

**Fair Debt Collection Practices Act:**
TO THE EXTENT THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) AND/OR STATE DEBT COLLECTION LAWS ARE APPLICABLE, PLEASE BE ADVISED THAT THIS COMMUNICATION
AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**Bankruptcy Information:**

IF YOU ARE CURRENTLY INVOLVED IN A BANKRUPTCY PROCEEDING OR HAVE PREVIOUSLY RECEIVED A DISCHARGE IN A BANKRUPTCY PROCEEDING, PLEASE NOTIFY US IMMED
ALREADY, AND BE ADVISED THAT THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY. THIS NOTICE IS NOT INTENDED TO COLLECT, RECOVER, OR OFFSET THE DEBT AGAINST
NOT BE CONSIDERED A DEMAND FOR PAYMENT OR INDICATE THAT YOU ARE PERSONALLY LIABLE FOR THIS DEBT. PLEASE CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS
BANKRUPTCY LAW.

**Equal Credit Opportunity Act:**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the app binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit administers compliance with this law concerning this creditor is Division of Depositor and Consumer Protection, National Center for Consumer and Depositor Assistance, Federal Deposit Insurance C #11, Kansas City, MO 64106.

**Servicemembers Civil Relief Act Disclosure:**

If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility, please contact our Customer Service Team at 866-760-3361.

**Successor in Interest:**

Confirmed successors in interest to borrowers named on the Note are not liable for repayment of the debt of the original named borrower unless and until the successor assumes the loan obligation

**Credit Reporting Disclosure:**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. As required by law, you a report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

---

**IMPORTANT INFORMATION**

If you wish to opt out of receiving future electronic communications from us, please log into your account at oaktree.myloanservicer.com or call us at 866-760-3361 to update your communication preferences. Please do not reply to this email as we are not able to respond to messages sent to this address.

**ATTENTION**

For your protection, Oaktree Funding Corp. will never send you emails requesting your social security number, password, or any other sensitive information. If you do receive such messages, you should consider them suspicious, delete them, and contact us immediately at 866-760-3361.

**SUBSERVICING NOTICE**

Cornerstone Servicing, a division of Cornerstone Capital Bank, SSB, has an agreement with Oaktree Funding Corp. to provide the day-to-day servicing of your loan.

To view Oaktree Funding Corp.'s privacy policy, visit https://nonqmexpert.com.

To view Cornerstone Capital Bank's privacy policy, visit houseloan.com/privacy-notice

To view Cornerstone Capital Bank's disclosures, visit myloanservicer.com/disclosures.

Oaktree Funding Corp. | NMLS ID # 71640 (www.nmlsconsumeraccess.org)

Cornerstone Capital Bank, SSB Member FDIC, NMLS ID#2258 (www.nmlsconsumeraccess.org)

PO Box 4638, Englewood, CO80155
Monday through Friday, 6am to 6pm / Saturday 8am to 12pm MT

Email ID:CH010

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or cop notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this http://www.buchalter.com/about/firm-policies/.



**From:** Audrey Little  audreylittle458@gmail.com
**Subject:** Fwd: Message from Oaktree Funding Corp. 2597
**Date:** January 9, 2026 at 9:30 AM
**To:** Little Jake  jake.little@thetradedesk.com

Warmest Regards,
Audrey

Sent from my iPhone

Begin forwarded message:

> **From:** NoReply-Servicing <noreply-servicing@myloanservicer.com>
> **Date:** January 9, 2026 at 7:23:02 AM PST
> **To:** audrey.little458@gmail.com, HEYNOWJL@outlook.com
> **Subject: Message from Oaktree Funding Corp. 2597**
>
>
>
> ## Your mortgage payment is complete.
>
> Great news — we have successfully processed and applied the following payment to your mortgage loan ending in 2597. You're all set!
>
> | | |
> |---|---|
> | **Amount Paid** | $6,395.39 |
> | **Payment Date** | 01/08/2026 |

Breakdown
**Principal and Interest**  $6,090.85
**Escrow (Taxes and Insurance)**  $0.00
**Additional Principal**  $0.00
**Fees**  $304.54

Log into our website or app to review your payment information, transactions, and more—anytime, anywhere.

# READY TO SET UP RECURRING PAYMENTS?

You can save time and gain peace of mind by automating your mortgage payments. To set up recurring monthly ACH drafts, visit our website or app and enroll in Autopay. To split your monthly payment into recurring drafts every 14 days, contact us to set up Budget Drafts. For information browse our FAQs.

# WE'RE JUST A CALL OR CLICK AWAY!

If you need assistance, we're happy to help! Here are a few ways to reach us:

- Call  866-760-3361
- Message with us via our website and app
- Email us loaninfo@myloanservicer.com

**IMPORTANT INFORMATION**

This email was sent to the email address you provided to receive updates on your mortgage loan. If you wish to opt out of receiving future electronic communications from us, please log into your account at oaktree.myloanservicer.com or call us at 866-760-3361 to update your communication preferences. Please do not reply to this email as we are not able to respond to messages sent to this address.

**ATTENTION**

For your protection, Oaktree Funding Corp. will never send you emails requesting your social security number, password, or any other sensitive information. If you do receive such messages, you should consider

them suspicious and delete them and contact us immediately at 866-760-3361.

**SUBSERVICING NOTICE**

Cornerstone Servicing, a division of Cornerstone Capital Bank, SSB, has an agreement with Oaktree Funding Corp. to provide the day-to-day servicing of your loan.

To view our privacy policy, please visit oaktree.myloanservicer.com.

Oaktree Funding Corp. | NMLS #71640 (www.nmlsconsumeraccess.org)

Disclosures https://myloanservicer.com/disclosures/

THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited. If you have received this communication in error, please notify the sender immediately. Thank you.

From: **NoReply-Servicing** noreply-servicing@myloanservicer.com
Subject: Message from Oaktree Funding Corp. 2597
Date: January 9, 2026 at 7:23 AM
To: AUDREY.LITTLE458@GMAIL.COM, HEYNOWJL@OUTLOOK.COM





## Your mortgage payment is complete.

Great news — we have successfully processed and applied the following payment to your mortgage loan ending in 2597. You're all set!

**Amount Paid**       $6,395.39
**Payment Date**      01/08/2026
Breakdown
**Principal and Interest**   $6,090.85
**Escrow (Taxes and Insurance)**   $0.00
**Additional Principal**   $0.00
**Fees**  $304.54

Log into our website or app to review your payment information, transactions, and more—anytime, anywhere.

## READY TO SET UP RECURRING PAYMENTS?

From: Audrey Little audreylittle458@gmail.com
Subject: Thank you and clarification of my letter to Rocket that you were copied on
Date: Dec 10, 2025 at 10:49:21 PM
To: Goldstein, Jason E. jgoldstein@buchalter.com, Teague Robert rteague@oaktreefunding.com

Subject: Follow-Up on Rocket Closing Error, CPL Breach, and Required TRO Filing

Jason and Robert,

Thank you for finally sending me the documents I requested.

Now that the key documents are finally in hand, the complete sequence of the July 2025 closing is no longer ambiguous. The escrow instructions, the outdated title report, Oaktree's claim letter, and Rocket's own denial confirm exactly what I have been explaining for months: the defect occurred at closing, the lien was already of record, the required verification was never performed, and Rocket funded the loan in the wrong lien position.

You now have the same facts I have had to piece together without assistance. Those facts confirm that I was correct in my assessment from the beginning. This was never a borrower issue. It was a closing-date defect resulting directly from Rocket's failure to follow written escrow instructions and its breach of the CPL obligations under Insurance Code §§ 12340.1–12340.11.

Because neither Rocket nor Oaktree took corrective action when the defect was first identified, and because the loan has continued to be treated as enforceable despite being funded in an invalid lien position, I no longer have discretion regarding next steps. I must proceed with my Temporary Restraining Order and the Second Amended Complaint to prevent further harm.

I want to make one point absolutely clear: my goal has always been to resolve the lien-priority defect and stop the ongoing damage created by Rocket's error. Oaktree did not cause the error. Rocket did. Once Rocket corrects the lien-priority defect and satisfies the financial consequence of its own closing mistake, I will immediately dismiss Oaktree from the litigation. Your continued involvement exists only because Rocket's conduct has made it unavoidable.

However, until Rocket takes responsibility and the lien is corrected, I cannot delay the TRO filing. The harm continues daily, and the courts must now intervene to prevent further loss created by a closing that did not follow the governing instructions.

I am sending this follow-up so that there is no misunderstanding about (1) the reason the defect occurred, (2) the reason the TRO is now required, and (3) the reason Oaktree remains in the case only temporarily and solely because of Rocket's actions and Oaktree's refusal to pause billing —an issue that may ultimately determine how the matter is resolved.

If Rocket resolves the defect promptly, this becomes a Rocket-only matter. If Rocket continues to delay, the court will resolve it.

Please govern yourselves accordingly.

Sincerely,


Audrey Little
81439 Merv Griffin Way

**La Quinta, CA 92253**

**310-283-4448**

**audrey.little458@gmail.com**

September 10, 2025

Rocket Title Insurance Company
5910 North Central Expressway, Suite 1445
Dallas, TX 75206

Re:    Notice of Claim, Policy Number RTLSCA-104615.
       Date of Policy: 07/09/2025
       Property Address: 81439 Merv Griffin Way, La Quinta, CA 92253-8084
       Borrower: Audrey Beth Little and Jacob Little, JTWROS.
       Oaktree Loan Number: 22025050036
       Name of Insured: Oaktree Funding Corp.

Rocket Title Insurance Company:

Oaktree Funding Corp. ("Oaktree") hereby notifies Rocket Title Insurance Company ("Rocket") that it is making a claim against the above-referenced title policy (a copy of which is attached hereto).

Oaktree became aware during its attempt to sell the loan referenced above to an investor that there is an outstanding lien against the subject property in favor of Stewart and Lynda Resnick Revocable Trust in the amount of $393,000. This lien was recorded on 12/8/2024, which date was prior to Rocket's preliminary report and thus should have been discovered by Rocket. Currently, due to Rocket's error, Oaktree's lien is in third-position making it unsaleable. The Resnick lien on the property must be paid off in order for Oaktree's lien to assume second position so that the loan can be sold to its investor.

Oaktree looks forward to your prompt response.

Regards,

*Robert R. Teague*

SVP-Director of Compliance & General Counsel          cc: Stephen Lippens, Co-CEO

                                                          Kristopher Martin, Co-CEO

**Oaktree Funding Corp. | NMLS#: 71640 | 3133 W. Frye Rd., Suite 205, Chandler AZ 85226**



# U

## Court / Procedural

# EXHIBIT U-1

Prior Accepted Motion / Declaration

---

Case 5:26-cv-00402-MEMF-MBK    Document 78-1    Filed 03/03/26    Page 338 of 725
Page ID #:2826

*Prepared for Exhibit Binder - v8 (standardized cover)*

Supplemental Declaration of Audrey Little in Support of Motion for Leave to File Second Amended Complaint

I, Audrey Little, declare as follows:

1. I am the borrower in this matter and have personal knowledge of the facts stated herein. If called as a witness, I could and would testify competently thereto.

2. Prior to applying for the subject loan, I informed the mortgage broker that I had a family loan. I understood at all times that if there were an existing lien affecting title, I would not qualify for the loan.

3. During the loan process, the mortgage broker advised me that the title report was clear and read to me what appeared on the title report. Based on that representation, and based on what was described to me, everything sounded correct and consistent with my understanding of the property's status.

4. I did not believe, and had no reason to believe, that the family loan would appear as a recorded lien on title. There was no indication given to me that any lien affecting priority existed or had been identified.

5. As I later learned, the title company relied on an outdated title report with an effective date of October 15, 2025, despite the loan closing in July 2025. No current title report was run as of the date of closing.

6. The escrow instructions for this transaction expressly required that the lender's deed of trust be recorded in second position prior to funding. Despite this requirement, funding occurred without confirmation of lien position based on a current title report.

7. Title insurance was issued based on the same outdated title report rather than a report current to the date of recording and funding.

8. I did not withhold or conceal information regarding the family loan. There was no specific field, form, or place in the loan application or process that required or permitted me to independently disclose a family loan that was not reflected as a recorded lien on title.

9. The family loan did not require monthly payments and was effectively a zero-payment obligation. As such, it would not have affected my debt-to-income ratio or my ability to qualify for the loan. I therefore did not list it separately on the final Uniform Residential Loan Application (Form 1003), and I relied on the mortgage professionals and the title company to determine whether any recorded lien existed that would affect title or lien priority.

10. I relied on the professionals involved in the transaction—including the mortgage broker, escrow, and title—to accurately determine and confirm the condition of title, including lien status and priority, prior to closing and funding.

11. I would not have proceeded with the loan, and I would not have qualified for the loan, had I been informed that a lien existed that impaired the required lien position.

12. Assertions that I "did not disclose" the family loan are factually incorrect. I disclosed the existence of the family loan to the mortgage broker and relied on representations that title was clear based on the title report being used.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 23, 2025, at ___la Quinta_, California___.

**Audrey Little**

# EXHIBIT U-2

## MC-410 Disability Accommodation Order

*Prepared for Exhibit Binder (reordered/retabbed)*

**MC-410** | **Disability Accommodation Request**

**CONFIDENTIAL**

If you have a disability and need an accommodation while you are at court, you can use this form to make your request. For more information, see form MC-410-INFO.

 Make this request at least **5 days** (when the court is open) before you need the accommodation.

*Clerk receives and date stamps here.*

**1 Your information**

Name: Audrey Little

Address: 81439 Merv Griffin Way

La Quinta CA 92253

Phone: 310-283-4448

Email: audrey.little458@gmail.com

**Court Name and Address:**

**Case Number (if you know it):**
CVPS2508295

**Case Name/Type (if you know it):**
Little vs Rocket

**2 How are you involved in the case?**

☐ Juror   ☒ Party   ☐ Witness   ☐ Lawyer

☐ Other (explain):

**3 When and where do you need the accommodation?** [date(s), time(s), and court location]    Supior court of Riversie , Palm Springs Division

**4 What accommodation do you need at the court?**

The ability to appear remotely (by Zoom or equivalent) when medically necessary;schedule hearings at earliest possible dates when court permits, consideration and limitations on continuances  where pheasa

**5 Why do you need this accommodation to assist you in court?**

I am disableld and this case is causng orolinged harm.  That these accommodations apply to all future hearings in this matter.

☒ More information on this request is attached.

Date: 12-31-2025

Audrey Little
Type or print name

*audrey Little*
Signature

**(Optional)** If a court employee, caregiver or other person helped fill out this form and is **willing to provide more information if needed**, provide contact information below:

Name:                          Email:                          Phone:

Judicial Council of California, *www.courts.ca.gov*
Rev. January 1, 2021, Optional Form
Cal. Rules of Court, rule 1.100

**Disability Accommodation Request**

MC-410, Page 1 of 2



Name: Audrey Little

**Case Number (if you know it):**
CVPS2508295

—————————————— **Court fills out below** ——————————————

**(Optional)**

(!) **Important!** If your case is delayed or dismissed after you make this request and you do not need the accommodation for the date you specified under 3, please contact the court at:

Phone: _____    Email: _____

☒ Your request is **GRANTED.** The court will provide the accommodation(s) requested.

☐ Your request is **DENIED IN WHOLE OR IN PART.** The denied portion of your request:

☐ Does not meet the requirements of <u>Cal. Rules of Court, rule 1.100</u>.

☐ Creates an undue financial or administrative burden for the court.

☐ Changes the basic nature of the court's service, program, or activity.

Explain the reasons supporting the box(es) checked above:

_____

_____

☐ **Instead**, the court will provide the following accommodation(s):

_____

_____

**The court will provide the accommodation(s):**

☐ For the date(s) and time(s) requested        ☐ Indefinitely

☐ On date(s): _future courts hearing, unless trials or other evidentiary hearings where_

☐ More information on this decision is attached. _Physical attendance is necessary._

Date: _1.0926_

_Arthur C Hester_
Type or print name

▶ _Lea_
Signature

The court responded in person, by phone, or mail/email on: _____

**Note**: You may be able to ask for a review of this decision.
<u>Cal. Rules of Court, rule 1.100(g)</u> explains how to do this.

Rev. January 1, 2021

**Disability Accommodation Request**

MC-410, Page 2 of 2

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

| Print this form | Save this form |        | Clear this form |



# Miscellaneous Correspondence (Only if Needed)

Exhibit Section Divider

# EXHIBIT M-1

Misc. Targeted Correspondence (only if needed)

**FINAL NOTICE: Immediate Discontinuance of Enforcement — Loan No. 22025050036**

Conditions Precedent Failed; Undisputed Documentary Record; Post-Notice Enforcement Creates Independent Exposure

Robert R. Teague
SVP, Director of Compliance & General Counsel
Oaktree Funding Corp.

Jason E. Goldstein
Buchalter LLP

Re: Loan No. 22025050036 – 81439 Merv Griffin Way, La Quinta, CA 92253

This letter concerns my home. I am writing deliberately and precisely because the controlling facts are fixed by documents, dates, and Oaktree's own file. They do not depend on testimony, credibility, intent, or expert opinion. No amount of discovery or deposition will alter what the exhibits already establish.

I am enclosing a limited, targeted exhibit set so there is no ambiguity about the factual record, the applicable authority, or where this is heading.

**Demand (Deadline: Wednesday)**

Oaktree must immediately discontinue all enforcement of Loan No. 22025050036 no later than Wednesday, including billing, collection activity, default notices, late fees, negative credit reporting, autopay withdrawals, acceleration threats, or any servicing pressure intended to compel payment while these defects remain uncured. Continued enforcement after that date will constitute knowing, post-notice conduct taken in the face of an undisputed record.

**Mitigation History and Plaintiff's Restraint**

From the outset, I have taken deliberate steps to mitigate loss and avoid escalation. My first settlement proposal sought $0 to me and full payment of $716,580 to Oaktree to unwind the loan before further harm occurred. Multiple subsequent proposals continued to require that Oaktree be paid in full, with escalation only reflecting the accumulation of damages caused by continued non-cure and enforcement. I repeatedly requested only a temporary pause in billing and enforcement to preserve the status quo while the closing defects were addressed. Those requests were refused. Escalation occurred solely because enforcement continued after notice, not because of any desire to expand claims or create leverage.

To eliminate any ambiguity regarding this history, I am enclosing a short Supplemental Exhibit Binder: Supplemental Exhibit T (pause/enforcement requests and responses) and Supplemental Exhibit U (mitigation and settlement proposals confirming Oaktree was to be paid in full in every proposal).

### I. Escrow Instructions — Express Conditions Precedent to Funding

The Specific Closing Instructions governing this transaction are explicit. They state, under "CONDITIONS TO BE SATISFIED PRIOR TO DISBURSEMENT OF LOAN PROCEEDS," that "OAKTREE TO PERFORM FINAL QC REVIEW PRIOR TO FUNDING," and they separately require that "THIS LOAN MUST RECORD IN 2ND LIEN POSITION ON OR PRIOR TO THE DISBURSEMENT DATE NOTED ABOVE." (Exhibit A-1; Exhibit A-2.)

Under Title Insurance Requirements, the same instructions further require: (i) endorsements 8.1, 9, and 5 (or equivalents); (ii) an ALTA Title Policy free from liens/encumbrances except the lien of Oaktree's loan and expressly permitted items; (iii) taxes paid current; and (iv) only the specified items shown on the preliminary title report dated May 8, 2025, together with duplicate originals of the ALTA Title Policy. (Exhibit A-1; Exhibit A-2.)

These are not aspirational statements. They are conditions precedent to authorized disbursement and enforceable performance.

### II. Undisputed Timeline — Disbursement, Recording, and Insurance Attachment

The documentary record establishes that loan proceeds were disbursed on July 14, 2025. (Exhibit A-1/A-2 disbursement line; Exhibit B.) Oaktree's deed of trust recorded on July 15, 2025. (Exhibit C.)

The Final Lender's Title Policy confirms that its effective date is "07/09/2025 or the date of recording of the insured mortgage, whichever is later." (Exhibit D.) Accordingly, the loan was disbursed before the deed of trust recorded and before title insurance could attach under the policy's own terms. This is not inference; it is the timeline created by the documents.

### III. Title Review Failures — Second-Lien Status Was Impossible and Not Achieved

The preliminary title materials relied upon were generated "as of October 15, 2024," making them facially stale for a July 2025 funding decision. (Exhibit E.) I did not receive or see that preliminary title report until November 19, 2025. (Exhibit H.)

A title report run as of July 15, 2025 confirms that senior liens were visible at the time Oaktree's deed of trust recorded. (Exhibit F.)

The sequence supports only two possibilities, both fatal to enforceability: (1) no bring-down or current title verification was performed prior to disbursement, or (2) a bring-down was performed after disbursement, revealed the defect, and was ignored. Either way, the second-lien condition was not met.

**IV. The QC Condition Could Not Have Been Satisfied as a Matter of Fact**

The instructions list, as a condition to be satisfied prior to disbursement, that "OAKTREE TO PERFORM FINAL QC REVIEW PRIOR TO FUNDING." (Exhibit A-1; Exhibit A-2.) Because the separate, express condition—recording in second lien position on or prior to disbursement—was not satisfied, and because no current title verification existed at funding, the factual predicate necessary to complete the stated QC condition did not exist. Oaktree's file contains no QC sign-off tied to actual lien position as of disbursement. (Exhibit J.)

**V. Knowledge and Continued Enforcement**

Oaktree had actual knowledge of the lien-priority defect no later than September 9, 2025. (Exhibit G.) Despite that knowledge, Oaktree did not timely disclose the defect and continued to accept and apply payments and continue enforcement activity. (Exhibit H; Exhibit L.)

**Oaktree's Exposure Arises From Post-Notice Enforcement, Not Origination**

For clarity, I do not contend that Oaktree originated the escrow or title failures described above. However, once Oaktree had actual knowledge that express conditions precedent had failed and that insured second-lien status was never achieved, continued enforcement ceased to be routine servicing and became knowing post-notice conduct. A temporary discontinuance of enforcement is the legally appropriate and risk-limiting response while defects remain unresolved.

**VI. Enforcement Is Not Legally Permissible Where Conditions Precedent Failed; Post-Notice Enforcement Creates Independent Exposure**

California courts have consistently held that where express escrow conditions precedent are not satisfied, the obligation of the other party is excused and enforcement must halt until the defect is cured.

In Nash v. Emminger (1978) 83 Cal.App.3d 234, the court held that where time or compliance with an escrow condition precedent is essential, non-compliance excuses the other party's obligation to perform. Applied here, disbursement without insured second-lien recording violated express escrow conditions, excusing repayment while those conditions remain unmet.

In Nicholson v. Barab (1991) 233 Cal.App.3d 1671, the court denied enforcement and permitted rescission where escrow conditions, including title requirements, were not satisfied, recognizing a failure of consideration (see Civ. Code § 1689(b)(5)).

Courts further reject "no loss yet" theories where lien priority is impaired. Loss of the bargained-for security position is an immediate, cognizable injury. See Hovannisian v. First American Title Insurance Co. (recognizing impairment of lien priority as present harm).

While lenders do not owe generalized tort duties in loan processing, contractual and escrow-based remedies remain fully available where express conditions precedent fail. Sheen v. Wells Fargo Bank, N.A. (2022) 12 Cal.5th 905.

Taken together, these authorities confirm that where a lender disburses funds without satisfying express escrow conditions governing lien priority and insurance attachment, enforcement must halt until the defect is cured. Continued enforcement after notice creates independent legal exposure.

**Precedent Implications of Continued Enforcement**

Continued enforcement on this record presents a narrow but consequential legal question: whether a lender may continue to bill and enforce a loan when express escrow conditions precedent failed and insured lien priority was never achieved, once those defects are known and undisputed. A ruling on that question would not be confined to this transaction. This is precisely why I am requesting a voluntary pause now—to avoid forcing that question into an immediate judicial posture.

**Why a Temporary Pause Protects Oaktree**

A temporary discontinuance of enforcement protects Oaktree's interests. Continued enforcement while defects remain uncured increases the risk of credit damage, forced liquidation, and senior-lender action that could impair or eliminate Oaktree's recovery. By contrast, a pause preserves the status quo, limits downstream damages, and allows responsibility to be allocated to the parties who controlled the closing and title process.

**VII. Negligent Misrepresentation by Conduct (Independent of the Closing Error)**

By authorizing disbursement, funding the loan, recording the deed of trust, issuing mortgage statements, and demanding payment, Oaktree represented by its conduct that the loan closed in compliance with the escrow instructions; that conditions precedent were satisfied; that final QC was completed; and that required title protections were in place. Those representations were made without reasonable grounds for believing them true, as established by the fixed disbursement/recording timeline and the policy's effective-date clause. (Exhibits A–F; Exhibit L.)

I reasonably relied on Oaktree's representations by continuing to make payments and delaying protective action, resulting in financial loss and irreparable harm.

## VIII. Notice of Damages and Allocation of Responsibility

Based on the undisputed defects outlined above, it has become clear that Oaktree is the primary party responsible for my financial losses arising from this transaction, including losses already incurred and any further losses that may result from continued enforcement of an invalidly closed loan after notice.

These losses include, without limitation, the foreseeable risk of displacement from my home and the cost to replace a comparable residence in the event enforcement continues and results in loss of the property. For notice purposes, a comparable replacement would require, at minimum, a newly constructed or recent-build home (2021 or later) in La Quinta, CA 92253, within a gated, non-55+ club community, approximately 5,000 square feet, with four garage spaces and a detached casita containing a bedroom, bathroom, living area, kitchen, separate garage, and private entrance, together with south, west, and east-facing views. Based on current market conditions, the cost to replace such a property would reasonably exceed $7 million, exclusive of custom interior features and finishes. Oaktree is welcome to independently verify these market conditions.

As a direct and foreseeable result of continued enforcement after notice, I have also been deprived of the financial ability to maintain my in-home caregiving and medical support, including my aide, and to maintain necessary medical and therapeutic care. Any further disruption or loss of caregiver support or medical therapies resulting from continued enforcement will be treated as foreseeable, preventable harm for which Oaktree bears responsibility.

## IX. Allocation of Focus and Reservation of Remedies

If Oaktree discontinues billing and enforcement in light of the undisputed defects outlined above, I will direct my efforts toward pursuing reimbursement and resolution with Rocket Close and related parties responsible for the closing failures.

If Oaktree elects not to discontinue enforcement, I will proceed to pursue Oaktree in addition to Rocket Close, and Oaktree will bear responsibility for the full scope of damages resulting from continued enforcement after notice, including consequential and, where applicable, punitive exposure.

For clarity, Rocket Close is receiving a separate version of this letter that does not presently attribute responsibility to Oaktree. That posture will change only if Oaktree chooses to continue enforcement despite this notice.

## X. Causes of Action Supported by the Evidence

Based on the undisputed documentary record, the evidence supports enforcement relief and liability for the following causes of action:

1. Breach of contract
2. Breach of escrow instructions / breach of escrow
3. Breach of fiduciary duty (as pleaded)
4. Negligence / professional negligence
5. Negligent misrepresentation
6. Concealment / nondisclosure
7. Unjust enrichment
8. RESPA-based improper settlement/escrow practices
9. Slander of title
10. Quiet title / declaratory relief
11. Failure to mitigate damages

## XI. Notice of Court Setting, Irreparable Harm, and the Systemic Consequences of Continued Enforcement

This notice is being provided well in advance of the Court's February, 2026 hearing date. The exhibits enclosed with this letter are the same documentary materials that will be presented to the Court. They are date-stamped, record-based, and not meaningfully disputable. No amount of discovery can change (i) the escrow instruction language, (ii) the disbursement date, (iii) the recording date, (iv) the title policy's effective-date clause, or (v) the lien visibility on current title as of recording.

If enforcement is not paused voluntarily, I will request court-ordered relief halting further enforcement activity pending resolution. Continued enforcement between now and the hearing will materially enlarge irreparable harm—particularly where enforcement pressure forces trade-offs between unlawful loan payments and essential obligations tied to housing stability and health.

**To be explicit about foreseeable credit and housing consequences: I will prioritize paying this loan to avoid harm to my co-borrower, Jacob Little. That choice will necessarily divert limited funds away from other essential obligations, including my senior mortgage and other credit obligations. Any resulting credit damage, loss of access to credit, cash-only consequences, and increased housing risk are foreseeable, preventable harms caused by continued enforcement after notice, and will be treated accordingly in damages and equitable relief.**

Finally, continued enforcement in the face of these undisputed defects does not present a narrow private dispute. The Court will be asked to decide whether the foundational safeguards that make secured real estate lending workable in California—escrow instructions, current title verification/bring-down practice, recording-and-funding sequencing, title insurance attachment, and CPL frameworks—have operative effect. A position that these safeguards do not matter would undermine the integrity of the real estate process for borrowers and lenders alike. This letter is intended to provide Oaktree the opportunity to pause enforcement now and avoid forcing that question into an immediate judicial posture.

**Final Opportunity (Wednesday)**

This letter provides a final opportunity to discontinue enforcement in light of an undisputed record. Continued enforcement after Wednesday will be treated as a conscious decision made with full notice.

If Oaktree does not discontinue enforcement by the deadline stated above, I will proceed to seek court-ordered relief as soon as reasonably practicable based on this undisputed, documentary record, including relief halting further enforcement activity pending resolution. I have a hearing currently set for February 25, 2026, and these same exhibits and authorities will be presented to the Court. No amount of discovery will change the dates, the written conditions precedent, the lien priority shown on title, or the policy's effective-date language; the only remaining issue is the legal consequence of those fixed facts.

Please govern yourselves accordingly.

Sincerely,


Audrey Little
81439 Merv Griffin Way
La Quinta, CA 92253
audrey.little458@gmail.com
310-283-4448

**Exhibits Enclosed**

• Exhibit M: Counsel communications regarding pause and continued enforcement posture (if attached)

• Exhibit A-1: Escrow Instructions (Original)

• Exhibit A-2: Escrow Instructions (Clean, Easy-to-Read Version)

• Exhibit B: Bank/Wire Evidence of Disbursement (7/14/2025)

• Exhibit C: Riverside County Recording Proof (DOT recorded 7/15/2025)

• Exhibit D: Final Lender's Title Policy RTLSCA-104615 (Revised) — effective-date/recording clause

• Exhibit E: Preliminary Title ("As of October 15, 2024")

• Exhibit F: Title Report Run as of July 15, 2025 (showing senior liens visible)

• Exhibit G: Oaktree Claim Notice / Knowledge Evidence (Sept. 10, 2025)

• Exhibit H: Communications and Disclosure Timeline (including 11/19/2025 first receipt of prelim by borrower)

• Exhibit J: Oaktree "Complete Loan File" Production

• Exhibit L: Servicing and Enforcement Evidence

• Supplemental Exhibit Binder (Exhibits T–U): (T) Chronology of Requests to Pause Billing/Enforcement; (U) Mitigation and Settlement Efforts (All Proposals Paid Oaktree in Full).

# Master v9 Addendum – Updated Totals + Missing-Items List (Post-CPL Uploads)

Generated: 2026-01-21

## A. Totals (as reflected in Master v9)

| Category | Count | Where / Notes |
|---|---|---|
| Pause / Forbearance / Enforcement-freeze requests | 14 | Exhibit T-1 (chronology table). |
| CPL-related document requests & follow-ups | Present | Exhibits H-1 to H-3 (invocation + requests + silence). |
| RESPA / QWR document request package | Present (12/02/2025) | Exhibit D-3 (Document Requests and QWR). |
| Mitigation / settlement proposals table | Missing | Referenced as "Supplemental Exhibit U" in correspondence |

## B. Missing Items (updated)

• The actual insurer-issued Closing Protection Letter (CPL) document itself (the underwriter/lender CPL form with operative terms). Current binder contains the invoice line-item and multiple requests/invocations, but not the CPL instrument.

• Proof of certified-mail receipt / tracking for the 12/02/2025 QWR (the letter states it was sent certified mail return receipt requested).

• The 11/17/2025 QWR (if you intend to plead it as a separate QWR) + proof of receipt + any acknowledgment/response.

• Exhibit G-1 referenced attachments not included as standalone exhibits: Document-Request-Log_17-Refusals.pdf; Our-Companies_Rocket-Companies.pdf; Our-Philosophies_Rocket-Companies.pdf; Rocket_Fraud_and_Concealment_Timeline.pdf / "KEY DATE EX E."

• "Supplemental Exhibit U (mitigation and settlement proposals)" package referenced in correspondence, but not present as a tab/section in Master v9.

## C. Supplemental Exhibit (added at end): H-3A – Additional CPL Follow-Ups

This addendum package appends an additional CPL follow-up compilation as a standalone supplemental exhibit without altering Master v9 pagination.

# SUPPLEMENTAL EXHIBIT H-3A

## Additional CPL Follow-Ups and Related Correspondence (as provided)

Includes: additional requests for CPL copy, confirmation inquiries, courtesy-copy correspondence, and related follow-ups.

**From:** **Audrey Little** audreylittle@icloud.com
**Subject:** Request for Closing Protection Letter – Order No. 74346744 / Loan No. 22025050036
**Date:** December 14, 2025 at 8:10 PM
**To:** Heather Moldovan HeatherMoldovan@rocketclose.com, Client Resolution clientresolution@rocketclose.com, Iqbal, Zeeshan ZIqbal@hinshawlaw.com, Olivier J. Labarre olabarre@wrightlegal.net
**Cc:** Goldstein, Jason E. jgoldstein@buchalter.com
**Bcc:** Teague Robert rteague@oaktreefunding.com

AL

---

**Subject: Request for Closing Protection Letter – Order No. 74346744 / Loan No. 22025050036**

Dear [Rocket Close / Rocket Title] Team,

Please provide a copy of the **Closing Protection Letter** issued in connection with **Order No. 74346744 / Loan No. 22025050036 for Oaktree Funding Corporation**. Your **July 1, 2025 Mortgage Invoice** for this transaction expressly reflects issuance of an **"Insured Closing Protection Letter – $0.00."** I am requesting the CPL document itself, including its operative terms, as it governs the closing-stage obligations and is directly relevant to pending court filings. Please let me know when I can expect delivery.

Thank you,
Audrey Little
81439 Merv Griffin Way
La Quinta, CA 92253
310-283-4448
audrey.little458@gmail.com



**From:** **Audrey Little** audreylittle@icloud.com
**Subject:** Hi Please at least confirm
**Date:** December 17, 2025 at 10:55 AM
**To:** Olivier J. Labarre olabarre@wrightlegal.net

Was a CPL issued.  Olivier this is seriously impacting every area of my life especially my health.

I really need to know and get a copy please.  I am filing the new active complaint today and you will receive it.  As of now Title probably looks the best in it. Please

**From:** **Audrey Little** audreylittle@icloud.com  📎
**Subject:** Courtesy Copy emergency TRO
**Date:** December 17, 2025 at 12:27 PM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com, Teague Robert rteague@oaktreefunding.com
**Cc:** Heather Moldovan HeatherMoldovan@rocketclose.com, Varun Krishna Varun@rocket.com, Iqbal Zeeshan
ZIqbal@hinshawlaw.com, Olivier J. Labarre olabarre@wrightlegal.net, James, Lexine ljames@cornerstoneservicing.com

These were accepted by the court today, I will keep you informed on the status.

You all will have formal service of all documents within the next 48 hours which will include all accepted court filings.

I have proof of service of the fist for all but oaktree so they will be served a summons.

I would like to request that those of you that have been served delegate a person who can accept e-filing t make it easier for us all,

Robert and Jason I hope once you are formally served you also will consent to filing.  I would hate for forget a course copy.

It did not understand filing before and I never filed the first emended complaint that I sen you as a courtesy. This will replace the emended complaint and I hope nothing will been to be added in the future

I will also resend the updated evidence hinder when accepted.

**redone tro filr (7).pdf**
191 KB


**SUPP EXHIBIT BINDER
.pdf**
993 KB


**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** cpl
**Date:** December 22, 2025 at 12:56 PM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com



Hi,

Has Oaktree submitted a claim for CPL coverage? If not does it plan to? I requested a copy of the CPL that is indicated in my file but I do not have a copy.  It was not in the documents I received from Robert.

Hope you are well.

Audrey

**From:** Audrey Little audreylittle@icloud.com
**Subject:** Here they are
**Date:** December 30, 2025 at 1:18 PM
**To:** jcohen@coheneblg.com
**Cc:** Audrey Little audreylittle@icloud.com, Audrey Little audreylittle@mac.com



**final_complaint_SAC_FINAL.pdf**
172 KB

**tro sup exibit binder .pdf**
15.4 MB

**supplemental exhitbi index.pdf**
168 KB

**key stmtm of fact with correct cover.pdf**
70 KB

**Case_Law_Supporting_Plaintiff.pdf**
6 KB

**Declaration_of_Audrey_Little_Supplemental ...**
184 KB

**varun regulatory review.pdf**
110 KB

**Request for CPL Coverage ...**
110 KB

This case literally could not be clearer and I do not for the life of me understand why they have chosen litigation over cure, I have given them many good faith options to settle. If you have AI run the case through and you will see the summary.

You are the only friend I have that can represent me.

You are the only friend I have that can represent me.

**From:** Audrey Little audreylittle458@gmail.com
**Subject:** Here they are
**Date:** December 30, 2025 at 1:19 PM
**To:** jcohen@coheneblg.com
**Cc:** Audrey Little audreylittle458@gmail.com, Audrey Little audreylittle@mac.com



**final_complaint_SAC_FINAL.pdf**
172 KB

**tro sup exibit binder .pdf**
15.4 MB

**supplemental exhitbi index.pdf**
168 KB

**key stmtm of fact with correct cover.pdf**

**Case_Law_Supporting_Plaintiff.pdf**
6 KB

**Declaration_of_Audrey _Little_Supplemental ...**
184 KB

** varun regulatory review.pdf**
110 KB

**Request for CPL Coverage ...**
110 KB

This case literally could not be clearer and I do not for the life of me understand why they have chosen litigation over cure,  I have given them many good faith options to settle. If you have AI run the case through and you will see the summary.

You are the only friend I have that can represent me.

Regards,

Audrey Little
audreylittle458@gmail.com

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** If you have them
**Date:** January 3, 2026 at 10:13 PM
**To:** E. Goldstein Jason  jgoldstein@buchalter.com



May I please have a copy of the real
Title policy. I don't have it in my files. I also would like a copy of the CPL if you have that.

If you don't have them please tell me. If you do please provide me with copies.

If I don't hear back I will take it as a no.

Warmest Regards,
Audrey

Sent from my iPhone

**From:** Audrey Little  audreylittle458@gmail.com
**Subject:** Courtesy Copy
**Date:** January 6, 2026 at 10:21 AM
**To:** Teague Robert  rteague@oaktreefunding.com
**Cc:** Audrey Little  audrey.little@gmail.com,  Goldstein, Jason E.  jgoldstein@buchalter.com

Hi,

I really do not want to email you and bother you.  Until I get permission that I can e-serve Jason in writing directly from him I have to.

This is just a hearing to advance the date of a motion asking for the court to pause billing.

I would much prefer if it was done voluntarily by Oaktree and I will drop them from the suit and just go after rocket close and companies.  I have always included paying you in my numbers from day one.

I dropped Rocket Title Insurance from my claim.  I have a ton of information I would like to be able to share to help you if my billing pause is granted.

Was a CPL claim filed by oaktree? If yes can you upload it to the drop box.  Thank you so much.

Happy New Year!

Audrey

ex parte 1_8.pdf

**From:** Audrey Little  audreylittle458@gmail.com
**Subject:** Re: Mediation 2nd request [IMAN-BUCHALTER.FID6170674]
**Date:** January 13, 2026 at 1:14 PM
**To:** Goldstein Jason E.  jgoldstein@buchalter.com



If Rocket will go and I think they will we can go,  but you should know,  this case is 100% back by documentation. It's not disputable with any amount of discovery or evidence that you can provide. I will be seeking every single remedy. The Court has available as a result.

I do not understand why oak tree has not been paid under the CPL yet.  oaktree has not given me any copies of a CPL claim or denial no proof that one was even submitted. No copy of the CPL issued that I paid for and never appealed the denial that supposedly rocket gave you that includes denial reasons that don't exist in the policy.

I know that you received my letter probably after you received or you sent this. And you received  my motion after you received my letter so I don't know if your position is the same. I will assume it's the same and we'll just go right to court.

Warmest Regards,
Audrey

Sent from my iPhone

> On Jan 12, 2026, at 5:43 PM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:
>
> Audrey:
>
> At some point I believe a mediation may be fruitful.
>
> ## Buchalter LLP
>
> **Jason E. Goldstein**
> Partner
> **T** (949) 224-6235
> **F** (949) 720-0182
> jgoldstein@Buchalter.com
>
> 18400 Von Karman Avenue, Suite 800
> Irvine, CA 92612-0514
> www.buchalter.com | Bio | LinkedIn
>
> Buchalter

Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, January 8, 2026 10:44 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Mediation 2nd request

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

Is oaktree willing to go to mediation with me and rocket?

Yes or No will do.  Lack of response equals a no.

Regards,

Audrey Little
audreylittle458@gmail.com

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

# SUPPLEMENTAL EXHIBITS (V Series)

Meet-and-Confer / Pause / Procedural Coordination Record

## Supplemental Index

| Exhibit | Description |
|---------|-------------|
| V-1 | Meet-and-Confer / Coordination Record Summary (Prepared Index) |
| V-2 | Request for Stipulation to File Amended Complaint (FAC -> Proposed SAC) |
| V-3 | Service Status and Request to Confirm Proceeding on Current Hearing Date |
| V-4 | Notice Regarding Mortgage / Urgent Request (Pause-Related Harm) |
| V-5 | Rocket Counsel Email / Stipulation Coordination Record |
| V-6 | FAC Redline Provided to Oaktree (Notice of Material Changes) |

*Prepared for inclusion in Exhibit Binder; supplemental exhibits appended after existing binder pages.*

# EXHIBIT V-1

**Meet-and-Confer / Coordination Record Summary (Prepared Index)**

Attached document follows.

## Exhibit V-1: Meet-and-Confer / Coordination Record Summary

Exhibit Summary — Meet-and-Confer / Coordination Record (FAC → Proposed SAC)
Purpose: Attach this as an exhibit to a declaration (e.g., CRC 3.1324 leave motion, demurrer opposition re meet-and-confer posture, or a motion to compel) to show (1) good-faith efforts to streamline pleadings, (2) requests for a temporary pause, and (3) counsel's stated positions and non-responsiveness.

Practice note: Avoid attaching detailed settlement-demand emails or negotiation terms to court filings unless absolutely necessary; those communications can trigger Evidence Code § 1152 issues and are often unnecessary to prove notice, gatekeeper chronology, or nonproduction.

Table 1:

| Date | From → To | Subject / Topic | Key statement (quote/paraphrase) | How to use in court |
|---|---|---|---|---|
| Jan 7, 2026 | Audrey Little → Jason Goldstein (Buchalter) + Zeeshan Iqbal | Stipulation request to file SAC | Requested stipulation to file revised complaint (SAC) to avoid moot demurrer practice; stated SAC narrows issues and removes parties/claims; would proceed by noticed motion if no stip. | Shows good-faith effort to streamline pleadings and conserve resources. |
| Jan 12, 2026 | Jason Goldstein → Audrey Little | Pause request | "Oaktree does not agree to a pause." Also: "By not responding to the remainder of your email does not mean I agree with it." | Shows explicit refusal of pause and refusal to engage substantively; supports post-notice harm amplification narrative. |
| Jan 16, 2026 | Jason Goldstein → Audrey Little | Stipulations / appearance | "Unless and until an appearance by Oaktree is made… Oaktree will not make any stipulations." | Shows refusal to stipulate despite advance notice; supports reasonableness and avoids "you never asked" claims. |
| Jan 15–16, 2026 | Audrey Little → Jason Goldstein / response | Service status / hearing schedule | You updated service status and requested confirmation whether to proceed on the current hearing date; counsel confirmed no stipulations until appearance. | Supports diligence and procedural good faith; helps rebut delay accusations. |

# EXHIBIT V-2

**Request for Stipulation to File Amended Complaint (FAC -> Proposed SAC)**

Attached document follows.

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** Request for Stipulation to File Amended Complaint to Avoid Moot Demurrer Practice
**Date:** January 7, 2026 at 7:27 PM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com, Iqbal, Zeeshan ZIqbal@hinshawlaw.com
**Cc:** Audrey Little audreylittle458@gmail.com



Jason and Zeeshan,

I am writing to see whether we can streamline the pleadings and avoid unnecessary motion practice.

As you are aware, Rocket Title has been dismissed. Based on newly obtained documents, I have prepared a revised complaint that removes Rocket Title entirely, eliminates causes of action that no longer apply, and clarifies the claims asserted against the remaining defendants. In substance, this pleading functions as the first meaningful amended complaint directed only at the parties still in the case.

Rather than proceed with demurrers or motions directed at a complaint that I am seeking to replace, I am requesting your stipulation to allow me to file the revised complaint now (to be styled as a Second Amended Complaint), with all defendants preserving any and all defenses to that pleading. The second amended complaint is also more succinct and accurate.

The proposed amended complaint narrows the issues, removes parties and claims, and is intended to ensure the case proceeds on an accurate and efficient footing. I believe this approach avoids demurrers to causes of action that will not exist in the operative pleading and conserves both party and court resources.

If you are willing to stipulate, please let me know and I can prepare a short written stipulation. If not, I will proceed by noticed motion in the normal course.

Thank you for your consideration.

Regards,

Audrey B. Little

audreylittle458@gmail.com

# EXHIBIT V-3

## Service Status and Request to Confirm Proceeding on Current Hearing Date

Attached document follows.

**From:** **Goldstein, Jason E.** jgoldstein@buchalter.com
**Subject:** RE: Service Status and Request to Confirm Proceeding on Current Hearing Date [IMAN-BUCHALTER.FID6170674]
**Date:** January 16, 2026 at 8:39 AM
**To:** Audrey Little audreylittle@icloud.com
**Cc:** Goldstein, Jason E. jgoldstein@Buchalter.com



Audrey:

Unless and until an appearance by Oaktree is made in the case, Oaktree will not make any stipulations. Oaktree's willingness to consider stipulations will change once it appears in your lawsuit.

## Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

## Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle@icloud.com>
**Sent:** Thursday, January 15, 2026 5:57 PM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle@icloud.com>
**Subject:** Service Status and Request to Confirm Proceeding on Current Hearing Date

This message has originated from an **External Email**. audreylittle@icloud.com <audreylittle@icloud.com>:

Subject: Service Status and Request to Confirm Proceeding on Current Hearing Date

Jason,

This is an update regarding service and the currently scheduled hearing date.

Today I attempted personal service on Oaktree's registered agent. Although the agent's listing indicates they are open until 5:00 p.m., the office was closed by approximately 4:00 p.m. Accordingly, I will complete personal service tomorrow morning.

Based on the anticipated service date, the hearing will be 15 court days from official service. However, you have had the motion papers since **January 12** via courtesy delivery.

Please confirm in writing whether Oaktree is agreeable to proceeding on the currently scheduled hearing date notwithstanding the service timing, or whether you want the hearing date rescheduled. If I do not receive a written response by **4:00 p.m. tomorrow**, I will assume Oaktree will not stipulate to proceed on the current schedule and I will seek appropriate relief from the Court to avoid prejudice, including ex parte relief or an order shortening time.

Regards,
Audrey Little

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

# EXHIBIT V-4

## Notice Regarding Mortgage / Urgent Request (Pause-Related Harm)

Attached document follows.

**From: Goldstein, Jason E.** jgoldstein@buchalter.com
**Subject:** FW: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from you I will not have a. Choice [IMAN-BUCHALTER.FID6170674]
**Date:** January 12, 2026 at 5:23 PM
**To:** Audrey Little audreylittle458@gmail.com
**Cc:** Goldstein, Jason E. jgoldstein@Buchalter.com, Goldstein, Jason E. jgoldstein@Buchalter.com

Audrey:

Oaktree does not agree to a pause.

By not responding to the remainder of your email does not mean I agree with it.

**Buchalter LLP**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**Buchalter**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, January 8, 2026 1:30 PM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Re: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear from y
BUCHALTER.FID6170674]

> This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

Thank you for responding.  Here is where I am, I am going to have to stop my caretaker immediately, I am disabled and I am going to need to sell.

I have tried not to hurt oaktree. You know that.

FYI they are complicit in the failing escrow if you look at the escrow instructions They required Oaktree to QC the loan prior and based on how It ended up and the evidence Robert gave me t See escrow instructions.  Also there was no title insurance in effect at the time of the loan which I don't know that anyone including title has realized based on the denial. I really have given y

I did not know about this lien and I am the only one that followed escrow instructions.

All I requested was a. Pause so we could  get close to settle and they will and oak tree will be paid.  I have 100% evidence backed irrefutable suit against them that no amount of discovery wil it heard.  I will drop oak tree from the suit if the pause.  This case will be over quickly so I do not understand why Oaktree would intentionally put me in this position,

Even if the pause is only for 160 days it's enough.

Regards,

Audrey Little
audreylittle458@gmail.com

On Jan 8, 2026, at 1:20 PM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Audrey:

To be clear, unless you are told that there will be what you have referred to as a pause, there is no pause.

**Buchalter LLP**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

---

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, January 8, 2026 10:07 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Re: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I don't hear BUCHALTER.FID6170674]

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

Because the payment was made on the 29th and this is not the first time
I have asked for a pause until the noticed hearing can you please confirm yes or no not no answer as usual.


Regards,

Audrey Little
audreylittle458@gmail.com



On Jan 8, 2026, at 10:04 AM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Audrey:

That seems to be a standard and nice message.  How is it harassment?


Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn



Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

---

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, January 8, 2026 9:57 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Fwd: Important Notice Regarding Your Mortgage. I need to hear from you today. You request that I not contact Oaktree directly and I am trying to respect that but if I do Choice

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

I just received this when a payment was made by my son on 12/29 .  This is now harassment.

<image001.jpg><image002.jpg><image003.jpg>
Regards,

Audrey Little
audreylittle458@gmail.com

Begin forwarded message:

**From:** "Oaktree Funding Corp." <noreply-servicing@myloanservicer.com>
**Subject: Important Notice Regarding Your Mortgage**
**Date:** January 8, 2026 at 9:01:28 AM PST
**To:** AUDREY.LITTLE458@GMAIL.COM
**Reply-To:** loaninfo@myloanservicer.com

<image001.jpg>

<image004.png>

<image005.png>

A payment made to your loan ending in 2597 on 12/30/2025 in the amount of $6,420.39 was returned unpaid by your bank due to UNCOLLECTED FUNDS. To replace the returned pay possible.

IMPORTANT: If the new payment is not received prior to the end of your grace period, a late fee may be charged. In addition, if you are enrolled for autopay (monthly recurring ACH draf days), and your loan is past due on your next scheduled draft day, your next payment will not draft.

If you are unable to make the payment, please contact us. We're here to help!

**WAYS TO PAY**

We offer a variety of quick and easy payment options. Choose whichever is most convenient for you!

Before your first payment to  Oaktree Funding Corp. is due, you will receive a statement by mail--or enroll for our convenient e-statement options to receive it by email.

Online via oaktree.myloanservicer.com or our mobile app LoanNav
Call Customer Care at 866-500-0756
Set up autopay (recurring monthly ACH drafts) online or by phone
Call to set up budget drafts (recurring ACH drafts every 14 days)
Mail a check or update your third-party bill pay settings to:

Oaktree Funding Corp.

PO Box 660217

Dallas, TX 75266-0217

**WE'RE A CALL OR CLICK AWAY!**

Any time you have questions or need support, we're happy to help. Here are a few ways to reach us:

· Call 866-760-3361
· Log into our website and app to message with us
· Email us at loaninfo@myloanservicer.com

**Fair Debt Collection Practices Act:**
TO THE EXTENT THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) AND/OR STATE DEBT COLLECTION LAWS ARE APPLICABLE, PLEASE BE ADVISED THAT THIS CO
AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**Bankruptcy Information:**

IF YOU ARE CURRENTLY INVOLVED IN A BANKRUPTCY PROCEEDING OR HAVE PREVIOUSLY RECEIVED A DISCHARGE IN A BANKRUPTCY PROCEEDING, PLEASE NOTIF
ALREADY, AND BE ADVISED THAT THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY. THIS NOTICE IS NOT INTENDED TO COLLECT, RECOVER, OR OFFSET THE DE
NOT BE CONSIDERED A DEMAND FOR PAYMENT OR INDICATE THAT YOU ARE PERSONALLY LIABLE FOR THIS DEBT. PLEASE CONSULT AN ATTORNEY IF YOU HAVE ANY
BANKRUPTCY LAW.

**Equal Credit Opportunity Act:**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (pro
binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Con
administers compliance with this law concerning this creditor is Division of Depositor and Consumer Protection, National Center for Consumer and Depositor Assistance, Federal Depos
#11, Kansas City, MO 64106.

**Servicemembers Civil Relief Act Disclosure:**

If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections ar
including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility, please contact our Customer Service Team at 866-760-3361.

**Successor in Interest:**

Confirmed successors in interest to borrowers named on the Note are not liable for repayment of the debt of the original named borrower unless and until the successor assumes the loa

**Credit Reporting Disclosure:**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. As required
report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

---

**IMPORTANT INFORMATION**

If you wish to opt out of receiving future electronic communications from us, please log into your account at oaktree.myloanservicer.com or call us at 866-760-3361 to update your communication preferences. Please do not reply to this email as we are not able to respond to messages sent to this address.

**ATTENTION**

For your protection, Oaktree Funding Corp. will never send you emails requesting your social security number, password, or any other sensitive information. If you do receive such messages, you should consider them suspicious, delete them, and contact us immediately at 866-760-3361.

**SUBSERVICING NOTICE**

Cornerstone Servicing, a division of Cornerstone Capital Bank, SSB, has an agreement with Oaktree Funding Corp. to provide the day-to-day servicing of your loan.

To view Oaktree Funding Corp.'s privacy policy, visit https://nonqmexpert.com.

To view Cornerstone Capital Bank's privacy policy, visit houseloan.com/privacy-notice

To view Cornerstone Capital Bank's disclosures, visit myloanservicer.com/disclosures.

Oaktree Funding Corp. | NMLS ID # 71640 (www.nmlsconsumeraccess.org)

Cornerstone Capital Bank, SSB Member FDIC, NMLS ID#2258 (www.nmlsconsumeraccess.org)

PO Box 4638, Englewood, CO80155
Monday through Friday, 6am to 6pm / Saturday 8am to 12pm MT

Email ID:CH010

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, dist
prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For a
see http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution
notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governir
see http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or cop
immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, ple

# EXHIBIT V-5

## Rocket Counsel Email / Stipulation Coordination Record

Attached document follows.

**From:** **Audrey Little** audreylittle@icloud.com
**Subject:** Rock
**Date:** January 23, 2026 at 10:53 AM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com
**Cc:** Audrey Little audreylittle@icloud.com

Jason,

I wanted to extend the courtesy of letting you know that yesterday I had a phone conference with counsel for Rocket Close and Rocket Companies regarding the First Amended Complaint and the scope of changes reflected in the Second Amended Complaint ("SAC"). Rocket's counsel indicated his clients are willing to stipulate to the filing of the SAC and to defer responding to the current FAC in order to avoid spending resources responding to a pleading that has been materially superseded.

I am asking whether Oaktree will also stipulate so that all parties can respond to the same operative complaint. The SAC is materially different from the FAC and addresses many of the issues that would otherwise be raised in response to the FAC.

If Oaktree does not stipulate, Rocket has indicated it will hold its response until the SAC is filed (assuming leave is required), while Oaktree would likely proceed on the FAC. That would result in parallel responsive pleadings to two different complaints and unnecessary motion practice.

Separately, if Oaktree intends to challenge the SAC once filed, I am available to meet and confer in advance so that we can narrow issues and avoid unnecessary filings. I am unavailable next Tuesday and Wednesday all day, and part of Monday morning. If you would like to meet, please propose a few times outside those windows and I will confirm promptly.

Please let me know whether Oaktree will:

1. stipulate to allow filing of the SAC and respond only to the SAC; or

2. decline to stipulate and proceed with a response to the FAC.

Once I hear from you, I will notify Rocket's counsel.

Thank you,
Audrey Little
Plaintiff in Pro Per



# EXHIBIT V-6

## FAC Redline Provided to Oaktree (Notice of Material Changes)

Attached document follows.

**From:** **Audrey Little** audreylittle@icloud.com
**Subject:** Redlined version of FAC
**Date:** January 23, 2026 at 1:57 PM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com
**Cc:** Audrey Little audreylittle@icloud.com, Iqbal, Zeeshan ZIqbal@hinshawlaw.com





For your reference I have included a redlined version of the FAC. As you can see the entire complaint has been modified. This is largely due to the fact that when I submitted the first complaint I had not received any evidence from any parties in the case including oak tree. I received 99% of yours on December 10, 2025 and one piece November 19, 2025. The SAC is written based on the evidence I have been able to obtain since the FAC. Even if some things remained they are not in the same place or substantively changed.

**FAC_Redline_Deletions Only.pdf**
145 KB

# V-5 Meet-and-Confer re Motion to Dismiss (Feb 5, 2026)

Document: Meet and Confer Regarding Motion To Dismiss FAC IMANBUCHALTERFID6170674.pdf
Added to Exhibit Binder v15.

*Divider page (added for binder navigation)*



From: **Goldstein, Jason E.** jgoldstein@buchalter.com
Subject: Meet and Confer Regarding Motion To Dismiss FAC [IMAN-BUCHALTER.FID6170674]
Date: February 5, 2026 at 3:38 PM
To: Audrey Little audreylittle458@gmail.com
Cc: Goldstein, Jason E. jgoldstein@Buchalter.com, Hovsepyan, Richard rhovsepyan@buchalter.com

Audrey:

For the reasons stated below, each of your counts against Oaktree fail as a matter of law. You should agree to dismiss your First Amended Complaint as a result for the reasons stated below.

Are you available at 5pm to discuss the below?

## I.      THE COURT HAS DISCRETION TO DISMISS THE FAC, AND EACH AND EVERY PURPORTED CAUSE OF ACTION FOR CLAIM FOR RELIEF CONTAINED THEREIN DUE TO A LACK OF PLAUSIBILITY

While a Complaint only needs to provide a short and plain statement for relief, the actual standard required for pleading civil complaints in federal court requires that: 1) the plaintiff provide grounds for relief which are "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do;" and 2) factual allegations which "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 555. *See also*, *Williston Basin Interstate Pipeline Co. v. Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation* (9th Cir. 2008) 524 F.3d 1090, 1096 (citing *Twombly* [affirming dismissal of complaint where complaint failed to state a claim to relief that was plausible on its face]).

In fact, a plaintiff must show that it has a plausible entitlement to relief. *See Twombly*, 550 U.S. at 559 and 570:

> "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early

in the discovery process . . . [b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."

The United States Supreme Court confirmed the plausibility standard for pleading civil complaints in *Ashcroft v. Iqbal* (2009) 129 S. Ct. 1937, 1949-1950 when it held that:

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim for relief that is plausible on its face." (citation omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. (citation omitted). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (citation omitted). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitled to relief.'" (citation omitted).

It was further held in *Iqbal* that:

"only a complaint that states a plausible claim for relief survives a motion to dismiss. (citation omitted). Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. (citation omitted). But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" - - "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2)." *Iqbal,* 129 S. Ct. at 1949-1950. [Emphasis added]

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism whereby a claim may be dismissed where there is a lack of a cognizable theory or where there is an absence of sufficient facts. *See Ballistereri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). Although a Court must assume that the plaintiff's allegations are true on a motion to dismiss, the Court may disregard conclusory allegations and unreasonable inferences. *See also, Moss v. U.S. Secret Service* (9th Cir. 2009) 572 F.3d 962, 971, citing to *Sprewell v. Golden State Warriors* (9th Cir. 2001) 266 F.3d 979, 988 (stating that courts are not required to make "unreasonable inferences" or "unwarranted deductions of fact" to save a complaint from a motion to dismiss).

In addition, the Court need not accept as true allegations that contradict facts which may be judicially noticed (*Mack v. South Bay Beer Distributors* (9th Cir. 1986) 798 F.2d 1279, 1281) or which are contradicted by facts established by exhibits attached to the Complaint. (*Durning v. First Boston Corp.* (9th Cir. 1987) 815 F.2d 1265, 1267). See also, *Davis v. HSBC Bank Nevada, N.A.* (9th Cir. 2012) 691 F.3d 1152, 1160 (holding that courts may incorporate by reference documents referred to or identified in a complaint but not attached to it).

As discussed above, and as will be further discussed below, Plaintiff has failed to allege any plausible claims against Oaktree.

## II.    COUNT 1 FOR NEGLIGENCE FAILS

The elements of a cause of action for negligence are:  (1) legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach.  *Hoyem v. Manhattan* (1978) 22 Cal.3d 508, 514.

### A.    No Duty

It is the law in California that a lender does <u>not</u> owe its borrower a duty of care when it does not exceed its conventional role as a money lender.  As the Court of Appeal recently held in *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4<sup>th</sup> 49, 63:

> "**Lenders and borrowers operate at arm's length.** (*Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 466 . . .; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579 . . . ; *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476 . . . , disapproved on other grounds in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1182 . . .) **"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."** (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096)."   [Emphasis added]

It has long been regarded as "axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor."  "A debt is not a trust and there is not a fiduciary relation between a debtor and creditor as such."  The same

fiduciary relation between a debtor and creditor as such. The same principle should apply with even greater clarity to the relationship between a bank and its loan customers. *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476, quoting *Morse v. Crocker Nat'l. Bank* (1983) 142 Cal.App.3d 228, 232 and *Downey v. Humphreys* (1951) 102 Cal.App.2d 323, 332.

Here, there is no duty as a matter of law and the negligence count fails as a matter of law.

## III.    COUNT 3 FOR NEGLIGENT MISREPRESENTATION FAILS

The elements of a cause of action for negligent misrepresentation are: (1) a false statement of a material fact that the defendant honestly believes to be true, but made without reasonable grounds for such belief; (2) made with the intent to induce reliance; (3) reasonable reliance; and (4) damages. *Century Sur. Co. v. Crosby Ins., Inc.*, (2004) 124 Cal.App.4th 116, 129. Each element in a cause of action for negligent misrepresentation must be factually and specifically alleged. *Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.

Each element in a cause of action for negligent misrepresentation must be factually and specifically alleged. *Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.

### A.    The Negligent Misrepresentation Cause Of Action Fails Due To Lack Of Duty

Responsibility for an alleged negligent misrepresentation requires the existence of a duty. *Bock v. Hansen* (2014) 225 Cal.App.4th 215, 229. See also, *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1332 (holding that the question of duty is relevant in cases where a cause of action for negligent misrepresentation is

alleged).  "Whether a legal duty exists in a given case is primarily a question of law."  *Wylie v. Gresch* (1987) 191 Cal.App.3d 412, 416. Here, there is no duty of care present.

### B.      The Count Lacks Specificity

A plaintiff's burden in asserting a misrepresentation claim against a corporation, as opposed to an individual, is even greater.  *Lazar v. Sup. Ct.,* (1996) 12 Cal.4th 631, 645.  In such a case, the Plaintiff must allege the <u>name of the person</u> who made the allegedly fraudulent representations, <u>their authority to speak</u>, <u>what they said or wrote</u> and <u>when it was said or written</u>. *Id*.

This has not been done here.  The entire count fails.

## IV.     COUNT 4 FOR FRAUDULENT CONCEALMENT FAILS

"The elements of a claim for fraudulent concealment require the plaintiff to show that: '(1) the defendant . . . concealed or suppressed a material fact, (2) the defendant [was] under a duty to disclose the fact to the plaintiff, (3) the defendant . .. intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff [was] unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as  result of the concealment or suppression of face, the plaintiff must have sustained damage.' (cit. omit.)"  *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal. App. 4th 1105.

Fraud actions have been classed as "disfavored," and are subject to strict requirements of particularity in pleading.  5 Witkin, *California Procedure* (5th Ed., 2008) Pleading § 711, p. 126.  Therefore, each of the elements of a fraud cause of action must be alleged in full, factually and specifically, since general pleadings of legal conclusions are

insufficient to state a cause of action. *Roberts v. Ball, Hunt, Brown & Barowitz* (1976) 57 Cal.App.3d 104, 109. Fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud, and it is not sufficient to allege the elements in general terms or in terms which amount to mere conclusions. *Campbell v. Clark* (1958) 159 Cal.App.2d 439.

The particularity requirement necessitates pleading facts which show how, when, where and to whom and by what means the representations were tendered. In *Stansfield v. Starkey* (1990) 220 Cal.App.3d 59, it was held that a demurrer was properly sustained without leave to amend where the plaintiff failed to specifically allege a Fraud claim. In so ruling, the court noted that the rationale for the strict pleading requirement is not merely notice to the defendant. The idea seems to be that the allegations of Fraud involve a serious attack of character, and fairness to the defendant demands that he should have the fullest possible details of the charge in order to prepare his defense. *Id.* at 73. Thus, liberal rules of construction will not usually be invoked to sustain a pleading that is defective with respect to any one of the required elements of a fraud cause of action. *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331.

In addition, as stated above, a plaintiff's burden in asserting a misrepresentation claim against a corporation, as opposed to an individual, is even greater. *Lazar v. Sup. Ct.,* (1996) 12 Cal.4th 631, 645. In such a case, the Plaintiff must allege the <u>name of the person</u> who made the allegedly fraudulent representations, <u>their authority to speak</u>, <u>what they said or wrote</u> and <u>when it was said or written</u>. *Id.*

Here, the FAC is devoid of any particularity and does not identify any person which purportedly made a misrepresentation of a concealment. This is fatal.

## V.     COUNT 5 FOR CIVIL CONSPIRACY FAILS

There is no cause of action for civil conspiracy.  Instead, it is a legal doctrine that imposes liability on persons who did not commit the tort, but participated in its plan or design. *Klistoff v. Sup. Ct.* (2007) 157 Cal.App.4th 469, 479.

## VI.     COUNT 7 FOR UNFAIR BUSINESS PRACTICES FAILS

*Business & Professions Code* § 17200 ("Section 17200") provides civil remedies for unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice."  Section 17200 was designed to protect consumers and competitors from unfair business practices.  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal. 4th 163, 180 (1999).  The statute "is not an all-purpose substitute for a tort or contract action." *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173.  As will be discussed below, this purported claim for relief fails as a matter of law.

Here, the Plaintiff bases her Section 17200 claims on the prior counts discussed above.  This is improper because common law claims and principles cannot serve as a basis for a violation of the "unlawful" prong of Section 17200 claim. *See Textron Financial Corp. v. National Fire Ins. Co. of Pittsburgh* (2004) 118 Cal.App.4th 1061, 1072 (common law claim for fraud could not serve as the "unlawful" act supporting a claim under Section 17200).  Even "[p]rovisions of the Civil Code that are substantially the same as the common law, such as the provisions that codify common law torts, 'must be construed as continuations

thereof, and not as new enactments.'" *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1091 (citing California Civil Code Section 5 and specifically applying holding to claim for deceit).

For these reasons, the Plaintiff's Section 17200 count fails and must be dismissed.

### A.     Oaktree Has Not Done Anything Unlawful

The "unlawful" prong borrows violations of other laws and treats them as unlawful practices that Section 17200 makes independently actionable.   *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 520.  Nothing unlawful has been alleged.

### B.     Oaktree Has Not Done Anything Unfair

The "unfair" prong of a Section 17200 claim requires an allegation that Bank's conduct threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.  *Byars v. SCME Mortgage bankers, Inc.* (2003) 29 Cal.4th 1134.  This, the Plaintiff has not done and cannot due.

### C.     Oaktree Has Not Done Anything Fraudulent

The "fraudulent" prong deals with "any act or practice likely to deceive the public, even if no one is actually deceived." *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 907.  See, also *Committee on Children's Television v. General Foods Corp.* (1983) 35 Cal. 3d 197, 211 (holding that the test of whether a practice is "fraudulent" under Section 17200 is whether "…members of the public are likely to be deceived")

This standard "...implies more than a mere possibility that the [practice] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.  Rather, the phrase indicates that the [practice] is such that it is probable that a significant portion of the general consuming public or targeted consumers, acting reasonably in the circumstances, could be misled."  *Lavie v. Procter & Gamble Co.* (2003) 105 Cal. App. 4th 496, 500, 508.

There is nothing "fraudulent," as that term is used in Section 17200, that has been alleged here.

Therefore, Count 7 should be dismissed.

## VII.    COUNT 8 FOR UDAAP VIOLATIONS FAILS

Plaintiff's claim for "UDAAP Violations" fail because there is no private right of action for UDAAP violations.  *See, Atiyeh v. Am. Bus. Bank* (C.D. Cal. 2025) 2025 U.S. Dist. LEXIS 37838, * 6, citing to *Deutsche Bank Nat'l Trust Co. v. Fox* (M.D. Fla. 2013) 971 F.Supp.2d 1106, 1120 ("the administration of the Federal Trade Commission Act, including UDAAP, 'is in the hands of the administrative agency and not the private citizen." *Robert*s, 556 F.2d at 361 n. 6. Consequently, Foxx does not have a private action under UDAAP, and Count XV is DISMISSED with prejudice."), *Herrera v. Credit Collection Servs. Comercial* (C.D. Cal. 2024) 2024 U.S. Dist. LEXIS 240295, * 2 ("[T]he Court examined whether Plaintiff sufficiently alleged claims for relief. With respect to the FTC Act violations, the Court determined that Plaintiff cannot bring a § 5 claim because the Ninth Circuit has held that § 5 does not provide a private right of action") and *O'Donnell v. Bank of America, Nat. Ass'n*, (9th Cir. 2013) 504 Fed. App'x 566, 568.

Therefore, Count 8 must be dismissed.

## VIII.    COUNT 9 FOR CFPB REGULATION X (12 C.F.R. § 1024) FAILS

12 C.F.R. Section 1024 is known as Regulation X and was issued by the Bureau of Consumer Financial Protection to implement the Real Estate Settlement Procedures Act ("RESPA").

Here, Plaintiff has only submitted terse legal conclusions, with no facts, to support this purported count.  This requires the granting of this motion in and of itself.  In any event this count fails in its own right.

### A.    Plaintiff Has Not Alleged That She Sent A Proper Qualified Written Request Or Request For Information

Plaintiff has not alleged that she submitted, properly or not, a Qualified Written Request ("QWR") or Request for Information ("RFI") to Oaktree.

As an initial matter, a QWR under RESPA, 12 C.F.R. §§1024.35(a), 1024.36(a) imposes two preconditions that a borrower must satisfy to trigger a response duty. First, the borrower must show that he or she submitted a qualifying QWR regarding the servicing of a federally related mortgage loan. See 12 U.S.C. § 2605(e)(1)(A), (e)(2). RESPA defines a QWR as a written correspondence that "includes … the name and account of the borrower and includes a statement of the reasons for the belief of the borrower … that the account is in error or provides sufficient detail regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Second, if a borrower submits a qualifying QWR to a loan servicer, the borrower's letter must also request or challenge "information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A), (e)(2). Servicing encompasses "receiving any scheduled periodic payments from a borrower pursuant to the

any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts ..., and making the payments of principal and interest and such other payments." 12 U.S.C. § 2605(i)(3). As defined, servicing excludes "the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666-67 (9th Cir. 2012).

Documents regarding a claim by Oaktree to its title insurer which was denied is not a document that RESPA requires be produced to a borrower pursuant to a QWR or a RFI. Allegedly failing to appeal a title insurer's denial of a claim is also something that is not covered by RESPA.

This count fails as a result.

### B.      Plaintiff Has Not Pled That She Properly Submitted A Loss Mitigation Application

12 C.F.R. section 1024.41 enacts loss mitigation procedures under RESPA. The first step is the receipt of a complete loss mitigation application. 12 C.F.R. section 1024.41(b)(1). Plaintiff has not alleged that she submitted a completeloss mitigation application.

Second, nothing in 12 C.F.R. section 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation application.

### C.      Plaintiff Has Not Pled Damages Caused By An Alleged RESPA Violation

Lastly, in order to establish a violation of RESPA, Plaintiff must plead and prove "facts showing how the plaintiff suffered actual harm due to defendants' failure to respond to a qualified written request." *See* 12 U.S.C. §

2605(f)(1)(A); *Fullmer v. JPMorgan Chase Bank, N.A.*, No. 2:09-cv-01037-JFM, 2010 WL 95206, at *6 (E.D. Cal. Jan. 6, 2010); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) (explaining "there must be a 'causal link' between the alleged [RESPA] violation and the damages" [quoting *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001) ]); cf. *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 511 (8th Cir. 2012). Plaintiff has failed to allege that he sustained any actual damages resulting from any alleged violation of RESPA by SPS.

Here, Plaintiff fails to plead that any such damages were the "direct result of [Oaktree's purported] failure to comply" with RESPA. *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010). "A claim of a RESPA violation cannot survive a motion to dismiss when the plaintiff does not plead facts showing how the plaintiff suffered actual harm due to defendants' failure to respond to a qualified written response." *Fullmer v. JPMorgan Chase Bank, N.A.*, No. 2:09-cv-01037-JFM, 2010 WL 95206, at *6 (E.D. Cal. Jan. 6, 2010); *see* also *Singh v. Wash. Mut. Bank*, No. 3:09-cv-02771-MMC, 2009 WL 2588885, at *5 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim where plaintiffs "failed to allege any facts in support of their conclusory allegation that '[a]s a result' of defendants' failure to respond, defendants 'are liable for actual damages, costs, and attorney fees' "). Accordingly, a "plaintiff's failure to allege a pecuniary loss attributable to a servicer's failure to respond to QWRs has therefore been found to be fatal to the claim." *Robinson v. Bank of Am., N.A.*, No. 3:21-cv-00110-AJB-(DEBx), 2022 WL 837073, at *7 (S.D. Cal. Mar. 21, 2022).

Plaintiff concealed and failed to disclose the Resnick Deed of Trust to and the escrow agent failed to comply with the escrow instructions as a result. Plaintiff's concealment of the loan secured by the Resnick Deed of Trust does

not result in Oaktree having purportedly causing her any damages.  Nor does the failure to provide title claim related documents.

## IX.     COUNT 10 FOR FAILURE TO MITIGATE DAMAGES FAILS

It was held in *Valle De Oro Bank v. Gamboa* (1994) 26 Cal.App.4th 1686, 1691, that:

> "The doctrine of mitigation of damages holds that "[a] plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any  losses which could have been thus avoided. (cits. omit.)"

The alleged failure to mitigate damages is an affirmative defense raised by a defendant to claims by a Plaintiff.  It is not a cause of action.

Count 10 must be dismissed.

## X.     COUNT 11 FOR PUNITIVE DAMAGES FAILS

Punitive damages is a remedy, not a cause of action.  See, *569 East County Boulevard LLC v. Backcountry Against The Dump, Inc.* (2016) 6 Cal.App.5th 426, 429, fn. 3 and *Hilliard v. A.H. Robins Co.* (1983) 148 Cal.App.3d 374, 391.

Count 11 fails and must be dismissed.

Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

---

**From:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Sent:** Thursday, February 5, 2026 10:14 AM

**Sent:** Thursday, February 5, 2026 10:14 AM
**To:** Audrey Little <audreylittle458@gmail.com>
**Cc:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Subject:** RE: URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and
Interim Standstill (5:26-cv-00402) [IMAN-BUCHALTER.FID6170674]

Hi Audrey:

Oaktree will not so stipulate. Oaktree will be moving to dismiss each cause of action
alleged against it because they fail as a matter of law. I will send you an outline of why and
then I will give you a call to discuss today.

Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**Jason E. Goldstein**
*Partner*
Orange County Office
**T** (949) 224-6235
**C** (213) 379-4756

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, February 5, 2026 10:09 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and Interim
Standstill (5:26-cv-00402)

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

Subject
URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and Interim Standstill
(5:26-cv-00402)

Jason,

I am writing as a final meet-and-confer effort to narrow the issues created by removal and to prevent imminent, date-certain harm. If Oaktree is willing, we can avoid unnecessary motion practice and restore an orderly state-court path for the already-scheduled injunction posture.

As you are aware, Oaktree's responsive pleading to the First Amended Complaint (FAC) is due today. For the avoidance of doubt, I do not consent to any extension of time to respond to the FAC. My proposal below eliminates any need for an extension by allowing Oaktree to respond to the SAC instead.

**Proposed stipulation (three parts):**

1. **Stipulation to Remand.**
   Oaktree stipulates to remand this action to Riverside Superior Court.

2. **Pleadings posture (SAC).**
   Oaktree stipulates that Plaintiff may file the Second Amended Complaint (SAC) (the operative pleading I provided on January 23), and that any response will be directed to the SAC (not the superseded FAC).

3. **Interim standstill to preserve the status quo.**
   Oaktree agrees to a temporary standstill on billing/collection/enforcement activity and adverse credit furnishing relating to the challenged loan through March 10, 2026, or until the state court hears the injunction request, whichever occurs last, to avoid a preventable "jurisdictional gap" while the forum issue is resolved.

If you are not willing to stipulate, I will file a short supplemental notice with the Court addressing the procedural defects and prejudice from the timing of removal in relation to the state-court injunction schedule, and I will request appropriate relief (including fees/costs where authorized).

**Deadline:** Please confirm by 12:00 PM (PT) today whether Oaktree will stipulate to the three-part proposal above.

Regards,
Audrey Little

Plaintiff, Pro SeRegards,

Audrey Little
audreylittle458@gmail.com

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

**From:** **Goldstein, Jason E.** jgoldstein@buchalter.com
**Subject:** RE: Meet and Confer Regarding Motion To Strike Punitive Damages Allegations In FAC [IMAN-BUCHALTER.FID6170674]
**Date:** February 5, 2026 at 5:17 PM
**To:** Audrey Little audreylittle458@gmail.com
**Cc:** Goldstein, Jason E. jgoldstein@Buchalter.com



Hi Audrey:

Ok.  No need to talk then.

Also, sometime next week I anticipate filing my lawsuit against Rocket.  I will send you a copy.


## Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn


## Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn


**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, February 5, 2026 5:00 PM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Subject:** Re: Meet and Confer Regarding Motion To Strike Punitive Damages Allegations In FAC [IMAN-BUCHALTER.FID6170674]

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

File what you want to
Warmest Regards,
Audrey

Sent from my iPhone

On Feb 5, 2026, at 4:54 PM, Goldstein, Jason E. <jgoldstein@buchalter.com>
wrote:

Great.  530 it is.

I am filing two motions.  1 to dismiss.  1 as to punitive damages.  If the motion
to dismiss is granted, it will moot the second motion.

## Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com I Bio I LinkedIn

## Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com I Bio I LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>

**Sent:** Thursday, February 5, 2026 4:47 PM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Re: Meet and Confer Regarding Motion To Strike Punitive Damages Allegations In FAC [IMAN-BUCHALTER.FID6170674]

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

---

I thought you were filing a motion to dismiss the entire complaint? I can do 5:30. But that is the latest at this last notice.
Regards,

Audrey Little
audreylittle458@gmail.com

On Feb 5, 2026, at 3:46 PM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Audrey:

For the reasons stated below, your punitive damages allegations against Oaktree fail and are subject to a motion to strike.

Are you available at 5pm to discuss the below?

### A. Since The Counts For Which Punitive Damages Are Sought Fail, The Punitive Damages Allegations And Prayer Must Be Stricken

For all of the reasons stated in the concurrently filed Motion to Dismiss the FAC, which is incorporated herein by this reference in its entirety as though set forth in full, the causes of action which seek punitive damages fail. Therefore, there is no basis for any award of punitive damages against

Oaktree and the punitive damages allegations and prayer must be stricken.

### B.    The Punitive Damages Allegations And Prayer Are Insufficiently Pled And Must Be Stricken

Punitive damages are disfavored in California. California courts have ruled that such damages should be awarded with the greatest of caution and only in the clearest of cases. *Henderson v. Sec. Nat. Bank* (1977) 72 Cal.App.3d 764, 771.

In *G.D. Searle & Co. v. Sup. Ct.* (1975) 49 Cal. App. 3d 22, 29, the Court of Appeal discussed the possible grounds for punitive damages and pointed out that, like fraud, actions for punitive damages must be specifically pled: "Notwithstanding relaxed pleading criteria, certain tortious injuries demand firm allegations. Vague, conclusory allegations of fraud or falsity may not be rescued by the rule of liberal construction."

Detailed factual allegations are necessary because "[w]hen a defendant must produce evidence in defense of an exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him." *Id.* Thus, "[c]onclusory characterization of a defendant's conduct as intentional, willful and fraudulent is patently insufficient statement of 'oppression, fraud,

malice, express or implied,' within the meaning of section 3294." *See Brousseau v. Jarrett* (1977) 73 Cal. App. 3d 864, 872 [holding that conclusory allegations that a defendant engaged in certain conduct "intentionally, willfully, fraudulently, and with a wanton and reckless disregard" held "patently insufficient" to entitle a plaintiff to punitive damages]; *Cohen v. Groman Mortuary* (1964) 231 Cal.App.2d 1, 8 [stating that allegations of "wanton" or "willful disregard" are nothing more than legal conclusions]; *see also Hilliard v. A.H. Robbins Co.* (1983) 148 Cal.App.3d 374 [finding that mere allegation that intentional tort was committed is insufficient to warrant punitive damages].

In *Smith v. Sup. Ct.* (1992) 10 Cal.App.4th 1033, 1035-36, the court struck a punitive damage claim where the plaintiff alleged that:

> "Defendants . . . misrepresented and fraudulently concealed the true nature of the representation being afforded by . . . defendants and that Plaintiff's legal interests were being protected, when in fact they were not. The defendant's conduct . . . was intentional, knowing, malicious, fraudulent, false and deceitful. Said acts and omissions were undertaken with a conscious disregard

of the interests and rights of plaintiff and to the benefit of defendants."

The *Smith* court determined that the above allegations were wholly inadequate to support a punitive damages claim because they were only conclusory allegations. *See Id.* at 1042.

Here, in the FAC, the Plaintiff alleges no facts which show how Oaktree purportedly acted with oppression, fraud or malice.

Without specific facts showing malicious, fraudulent or oppressive conduct by Oaktree, the allegations and prayer for punitive damages fail as a matter of law and must be stricken.

## C.    The Punitive Damage Allegations Fail To Comply With The *Civil Code* § 3294 Requirement For Corporate Defendants And Must Be Stricken

A complainant which attempts to allege a claim for punitive damages against a corporate entity must satisfy the requirements of *Civil Code* § 3294(b) which requires an allegation that, "the acts of employees of defendant corporation were done with the knowledge or under the express direction or ratification of an officer, director or managing agent of the corporation . . ." *Scannell v. County of Riverside* (1984) 152 Cal.App.3d 596 (striking

deficient punitive damage allegations against a corporation).

The California Supreme Court in *White v. Ultramar* (1999) 21 Cal.4[th] 563, 572, held that the drafters of *Civil Code* §3294(b)'s:

> " . . . **goals were to avoid imposing punitive damages on employers who were merely negligent or reckless and to distinguish ordinary respondeat superior liability from corporate liability for punitive damages** . . . Section 3294 is no longer silent on who may be responsible for imputing punitive damages to a corporate employer. **For corporate punitive damages liability, section 3294, subdivision (b), requires that the wrongful act giving rise to the exemplary damages be committed by an 'officer, director, or managing agent**.'"

In *Grieves v. Sup. Ct.* (1984) 157 Cal.App.3d 159, 168, the Court of Appeal affirmed the sustaining of a demurrer in favor of a corporate defendant. Addressing the claim for punitive damages against the corporate defendant, the court stated:

stated:

> "[W]e fail to see how any of those allegations sets forth facts to show [corporate defendant's] advance knowledge, authorization or ratification. Also, absent from the complaint is any assertion an officer, director, managing agent of corporate defendant] was personally responsible for any of the acts allegedly performed by [corporate defendant]."

Further, the court in *J. R. Norton Co. v. General Teamsters, Warehousemen and Helpers Union* (1989) 208 Cal.App.3d 430, 445, held that:

> "A corporation may be held liable for punitive damages for the acts of its agents and employees when the act is motivated by actual malice or done under circumstances amounting to oppression providing that the act is done with the knowledge or under the direction of corporate officials having the power to bind the corporation."

Plaintiff's factually devoid punitive damage allegations do <u>not</u> satisfy the Section 3294(b) standard <u>and</u> are nothing more than legal conclusions with no factual support.  Therefore, the

punitive damages allegations and prayer are not drawn in conformity with the laws of the State of California and must be stricken.

**Buchalter**
_____

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com
_____

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com I Bio I LinkedIn

_____

**From:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Sent:** Thursday, February 5, 2026 3:38 PM
**To:** Audrey Little <audreylittle458@gmail.com>
**Cc:** Goldstein, Jason E. <jgoldstein@Buchalter.com>; Hovsepyan, Richard <rhovsepyan@buchalter.com>
**Subject:** Meet and Confer Regarding Motion To Dismiss FAC [IMAN-BUCHALTER.FID6170674]

Audrey:

For the reasons stated below, each of your counts against Oaktree fail as a matter of law.  You should agree to dismiss your First Amended Complaint as a result for the reasons stated below.

Are you available at 5pm to discuss the below?

**I.    THE COURT HAS DISCRETION TO DISMISS THE FAC, AND EACH AND EVERY PURPORTED CAUSE OF ACTION FOR CLAIM FOR RELIEF CONTAINED THEREIN DUE TO A LACK OF PLAUSIBILITY**

While a Complaint only needs to provide a short and plain statement for relief, the actual

standard required for pleading civil complaints in federal court requires that: 1) the plaintiff provide grounds for relief which are "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do;" and 2) factual allegations which "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 555. *See also*, *Williston Basin Interstate Pipeline Co. v. Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation* (9th Cir. 2008) 524 F.3d 1090, 1096 (citing *Twombly* [affirming dismissal of complaint where complaint failed to state a claim to relief that was plausible on its face]).

In fact, a plaintiff must show that it has a plausible entitlement to relief. *See Twombly,* 550 U.S. at 559 and 570:

> "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process . . . [b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."

The United States Supreme Court confirmed

The United States Supreme Court confirmed the plausibility standard for pleading civil complaints in *Ashcroft v. Iqbal* (2009) 129 S. Ct. 1937, 1949-1950 when it held that:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim for relief that is plausible on its face." (citation omitted).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  (citation omitted). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (citation omitted).  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitled to relief.'" (citation omitted).
> It was further held in *Iqbal* that:
> "only a complaint that states a plausible claim for relief survives a motion to dismiss.  (citation omitted).  Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  (citation omitted).  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" - - "that the pleader is entitled to relief."   Fed. Rule Civ. Proc. 8(a)(2)."   *Iqbal*, 129 S. Ct. at 1949-1950.   [Emphasis added]

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism whereby a claim may be dismissed where there is a lack of a cognizable theory or where there is an absence of sufficient facts.  *See Ballistereri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  Although a Court must assume that the plaintiff's allegations are true on a motion to dismiss, the Court may disregard conclusory allegations and unreasonable inferences.  *See also*, *Moss v. U.S. Secret Service* (9th Cir. 2009) 572 F.3d 962, 971, citing to *Sprewell v. Golden State Warriors* (9th Cir. 2001) 266 F.3d 979, 988 (stating that courts are not required to make "unreasonable inferences" or

"unwarranted deductions of fact" to save a complaint from a motion to dismiss).

In addition, the Court need not accept as true allegations that contradict facts which may be judicially noticed (*Mack v. South Bay Beer Distributors* (9th Cir. 1986) 798 F.2d 1279, 1281) or which are contradicted by facts established by exhibits attached to the Complaint. (*Durning v. First Boston Corp.* (9th Cir. 1987) 815 F.2d 1265, 1267). See also, *Davis v. HSBC Bank Nevada, N.A.* (9th Cir. 2012) 691 F.3d 1152, 1160 (holding that courts may incorporate by reference documents referred to or identified in a complaint but not attached to it).

As discussed above, and as will be further discussed below, Plaintiff has failed to allege any plausible claims against Oaktree.

## II.    <u>COUNT 1 FOR NEGLIGENCE FAILS</u>

The elements of a cause of action for negligence are:  (1) legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach.  *Hoyem v. Manhattan* (1978) 22 Cal.3d 508, 514.

### A.    <u>No Duty</u>

It is the law in California that a lender

It is the law in California that a lender does <u>not</u> owe its borrower a duty of care when it does not exceed its conventional role as a money lender.    As the Court of Appeal recently held in *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4<sup>th</sup> 49, 63:

> "**<u>Lenders and borrowers operate at arm's length.</u>** (*Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 466 . . .; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579 . . . ; *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476 . . . , disapproved on other grounds in*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1182 . . .) **<u>"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.</u>**" (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096)." [Emphasis added]

It has long been regarded as "axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor." "A debt is not a trust and there is not a fiduciary relation between a debtor and creditor as such." The same principle should apply with even greater clarity to the relationship between a bank and its loan customers. *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476, quoting *Morse v. Crocker Nat'l. Bank* (1983) 142 Cal.App.3d 228, 232 and *Downey v. Humphreys* (1951) 102 Cal.App.2d 323, 332.

Here, there is no duty as a matter of law and the negligence count fails as a matter of law.

## III.   COUNT 3 FOR NEGLIGENT MISREPRESENTATION FAILS

The elements of a cause of action for negligent misrepresentation are: (1) a false statement of a material fact that the defendant honestly believes to be true, but made without reasonable grounds for such belief; (2) made with the intent to induce reliance; (3) reasonable reliance; and (4) damages. *Century Sur. Co. v. Crosby Ins., Inc.,* (2004) 124 Cal.App.4th 116, 129. Each element in a cause of action for negligent misrepresentation must be factually and specifically

alleged. *Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.

Each element in a cause of action for negligent misrepresentation must be factually and specifically alleged. *Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.

## A.    The Negligent Misrepresentation Cause Of Action Fails Due To Lack Of Duty

Responsibility for an alleged negligent misrepresentation requires the existence of a duty. *Bock v. Hansen* (2014) 225 Cal.App.4th 215, 229. See also, *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1332 (holding that the question of duty is relevant in cases where a cause of action for negligent misrepresentation is alleged). "Whether a legal duty exists in a given case is primarily a question of law." *Wylie v. Gresch* (1987) 191 Cal.App.3d 412, 416. Here, there is no duty of care present.

## B.    The Count Lacks Specificity

A plaintiff's burden in asserting a misrepresentation claim against a corporation, as opposed to an individual, is even greater. *Lazar v. Sup. Ct.,* (1996) 12 Cal.4th 631, 645. In such a case, the Plaintiff must

allege the <u>name of the person</u> who made the allegedly fraudulent representations, <u>their authority to speak</u>, <u>what they said or wrote</u> and <u>when it was said or written</u>. *Id*.

This has not been done here. The entire count fails.

## IV.    <u>COUNT 4 FOR FRAUDULENT CONCEALMENT FAILS</u>

"The elements of a claim for fraudulent concealment require the plaintiff to show that: '(1) the defendant . . . concealed or suppressed a material fact, (2) the defendant [was] under a duty to disclose the fact to the plaintiff, (3) the defendant . .. intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff [was] unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as   result of the concealment or suppression of face, the plaintiff must have sustained damage.' (cit. omit.)" *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal. App. 4th 1105.

Fraud actions have been classed as "disfavored," and are subject to strict requirements of particularity in pleading. 5 Witkin, *California Procedure* (5th Ed., 2008) Pleading § 711, p. 126. Therefore, each of the elements of a fraud cause of

action must be alleged in full, factually and specifically, since general pleadings of legal conclusions are insufficient to state a cause of action. *Roberts v. Ball, Hunt, Brown & Barowitz* (1976) 57 Cal.App.3d 104, 109. Fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud, and it is not sufficient to allege the elements in general terms or in terms which amount to mere conclusions. *Campbell v. Clark* (1958) 159 Cal.App.2d 439.

The particularity requirement necessitates pleading facts which show how, when, where and to whom and by what means the representations were tendered. In *Stansfield v. Starkey* (1990) 220 Cal.App.3d 59, it was held that a demurrer was properly sustained without leave to amend where the plaintiff failed to specifically allege a Fraud claim. In so ruling, the court noted that the rationale for the strict pleading requirement is not merely notice to the defendant. The idea seems to be that the allegations of Fraud involve a serious attack of character, and fairness to the defendant demands that he should have the fullest possible details of the charge in order to prepare his defense. *Id.* at 73. Thus, liberal rules of construction will not usually be invoked to sustain a pleading that is defective with

respect to any one of the required elements of a fraud cause of action. *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331.

In addition, as stated above, a plaintiff's burden in asserting a misrepresentation claim against a corporation, as opposed to an individual, is even greater. *Lazar v. Sup. Ct.,* (1996) 12 Cal.4th 631, 645. In such a case, the Plaintiff must allege the <u>name of the person</u> who made the allegedly fraudulent representations, <u>their authority to speak</u>, <u>what they said or wrote</u> and <u>when it was said or written</u>. *Id.*

Here, the FAC is devoid of any particularity and does not identify any person which purportedly made a misrepresentation of a concealment. This is fatal.

## V.    COUNT 5 FOR CIVIL CONSPIRACY FAILS

There is no cause of action for civil conspiracy. Instead, it is a legal doctrine that imposes liability on persons who did not commit the tort, but participated in its plan or design. *Klistoff v. Sup. Ct.* (2007) 157 Cal.App.4th 469, 479.

## VI.    COUNT 7 FOR UNFAIR BUSINESS PRACTICES FAILS

*Business & Professions Code § 17200*

*Business & Professions Code § 17200*
("Section 17200") provides civil remedies for unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice."   Section 17200 was designed to protect consumers and competitors from unfair business practices.   *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal. 4th 163, 180 (1999).   The statute "is not an all-purpose substitute for a tort or contract action."   *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173.   As will be discussed below, this purported claim for relief fails as a matter of law.

Here, the Plaintiff bases her Section 17200 claims on the prior counts discussed above.   This is improper because common law claims and principles cannot serve as a basis for a violation of the "unlawful" prong of Section 17200 claim.   *See Textron Financial Corp. v. National Fire Ins. Co. of Pittsburgh* (2004) 118 Cal.App.4th 1061, 1072 (common law claim for fraud could not serve as the "unlawful" act supporting a claim under Section 17200).   Even "[p]rovisions of the Civil Code that are substantially the same as the common law, such as the provisions that codify common law torts, 'must be construed as continuations thereof, and not as new enactments.'"   *Mirkin v. Wasserman* (1993) 5

Cal.4th 1082, 1091 (citing California Civil Code Section 5 and specifically applying holding to claim for deceit).

For these reasons, the Plaintiff's Section 17200 count fails and must be dismissed.

### A.    Oaktree Has Not Done Anything Unlawful

The "unlawful" prong borrows violations of other laws and treats them as unlawful practices that Section 17200 makes independently actionable. *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 520. Nothing unlawful has been alleged.

### B.    Oaktree Has Not Done Anything Unfair

The "unfair" prong of a Section 17200 claim requires an allegation that Bank's conduct threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition. *Byars v. SCME Mortgage bankers, Inc.* (2003) 29 Cal.4th 1134. This, the Plaintiff has not done and cannot due.

### C.    Oaktree Has Not Done Anything Fraudulent

The "fraudulent" prong deals with "any act or

The "fraudulent" prong deals with "any act or practice likely to deceive the public, even if no one is actually deceived." *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 907. See, also *Committee on Children's Television v. General Foods Corp.* (1983) 35 Cal. 3d 197, 211 (holding that the test of whether a practice is "fraudulent" under Section 17200 is whether "…members of the public are likely to be deceived")

This standard "…implies more than a mere possibility that the [practice] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the [practice] is such that it is probable that a significant portion of the general consuming public or targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.* (2003) 105 Cal. App. 4th 496, 500, 508.

There is nothing "fraudulent," as that term is used in Section 17200, that has been alleged here.

Therefore, Count 7 should be dismissed.

## VII.   COUNT 8 FOR UDAAP VIOLATIONS FAILS

Plaintiff's claim for "UDAAP Violations" fail because there is no private right of action for UDAAP violations. *See, Atiyeh v. Am. Bus.*

*Bank* (C.D. Cal. 2025) 2025 U.S. Dist. LEXIS 37838, * 6, citing to *Deutsche Bank Nat'l Trust Co. v. Fox* (M.D. Fla. 2013) 971 F.Supp.2d 1106, 1120 ("the administration of the Federal Trade Commission Act, including UDAAP, 'is in the hands of the administrative agency and not the private citizen." *Robert*s, 556 F.2d at 361 n. 6. Consequently, Foxx does not have a private action under UDAAP, and Count XV is DISMISSED with prejudice."), *Herrera v. Credit Collection Servs. Comercial* (C.D. Cal. 2024) 2024 U.S. Dist. LEXIS 240295, * 2 ("[T]he Court examined whether Plaintiff sufficiently alleged claims for relief. With respect to the FTC Act violations, the Court determined that Plaintiff cannot bring a § 5 claim because the Ninth Circuit has held that § 5 does not provide a private right of action") and *O'Donnell v. Bank of America, Nat. Ass'n,* (9th Cir. 2013) 504 Fed. App'x 566, 568.

Therefore, Count 8 must be dismissed.

## VIII. COUNT 9 FOR CFPB REGULATION X (12 C.F.R. § 1024) FAILS

12 C.F.R. Section 1024 is known as Regulation X and was issued by the Bureau of Consumer Financial Protection to implement the Real Estate Settlement Procedures Act ("RESPA").

Here, Plaintiff has only submitted terse legal

conclusions, with no facts, to support this purported count. This requires the granting of this motion in and of itself. In any event this count fails in its own right.

### A. Plaintiff Has Not Alleged That She Sent A Proper Qualified Written Request Or Request For Information

Plaintiff has not alleged that she submitted, properly or not, a Qualified Written Request ("QWR") or Request for Information ("RFI") to Oaktree.

As an initial matter, a QWR under RESPA, 12 C.F.R. §§1024.35(a), 1024.36(a) imposes two preconditions that a borrower must satisfy to trigger a response duty. First, the borrower must show that he or she submitted a qualifying QWR regarding the servicing of a federally related mortgage loan. See 12 U.S.C. § 2605(e)(1)(A), (e)(2). RESPA defines a QWR as a written correspondence that "includes … the name and account of the borrower and includes a statement of the reasons for the belief of the borrower … that the account is in error or provides sufficient detail regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Second, if a borrower submits a qualifying QWR to a loan servicer, the borrower's letter must also request

or challenge "information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A), (e)(2). Servicing encompasses "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts ..., and making the payments of principal and interest and such other payments." 12 U.S.C. § 2605(i)(3). As defined, servicing excludes "the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666-67 (9th Cir. 2012).

Documents regarding a claim by Oaktree to its title insurer which was denied is not a document that RESPA requires be produced to a borrower pursuant to a QWR or a RFI. Allegedly failing to appeal a title insurer's denial of a claim is also something that is not covered by RESPA.

This count fails as a result.

## B. Plaintiff Has Not Pled That She Properly Submitted A Loss Mitigation Application

12 C.F.R. section 1024.41 enacts loss mitigation procedures under RESPA. The first step is the receipt of a complete loss mitigation application. 12 C.F.R. section 1024.41(b)(1). Plaintiff has not alleged that she

submitted a completeloss mitigation application.

Second, nothing in 12 C.F.R. section 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation application.

### C.      Plaintiff Has Not Pled Damages Caused By An Alleged RESPA Violation

Lastly, in order to establish a violation of RESPA, Plaintiff must plead and prove "facts showing how the plaintiff suffered actual harm due to defendants' failure to respond to a qualified written request." *See* 12 U.S.C. § 2605(f)(1)(A); *Fullmer v. JPMorgan Chase Bank, N.A.*, No. 2:09-cv-01037-JFM, 2010 WL 95206, at *6 (E.D. Cal. Jan. 6, 2010); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) (explaining "there must be a 'causal link' between the alleged [RESPA] violation and the damages" [quoting *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001) ]); cf. *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 511 (8th Cir. 2012). Plaintiff has failed to allege that he sustained any actual damages resulting from any alleged violation of RESPA by SPS.

Here, Plaintiff fails to plead that any such damages were the "direct result of [Oaktree's purported] failure to comply" with RESPA. *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010). "A claim of a RESPA violation cannot survive a motion to dismiss

when the plaintiff does not plead facts showing how the plaintiff suffered actual harm due to defendants' failure to respond to a qualified written response." *Fullmer v. JPMorgan Chase Bank, N.A.*, No. 2:09-cv-01037-JFM, 2010 WL 95206, at *6 (E.D. Cal. Jan. 6, 2010); *see* also *Singh v. Wash. Mut. Bank*, No. 3:09-cv-02771-MMC, 2009 WL 2588885, at *5 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim where plaintiffs "failed to allege any facts in support of their conclusory allegation that '[a]s a result' of defendants' failure to respond, defendants 'are liable for actual damages, costs, and attorney fees' "). Accordingly, a "plaintiff's failure to allege a pecuniary loss attributable to a servicer's failure to respond to QWRs has therefore been found to be fatal to the claim." *Robinson v. Bank of Am., N.A.*, No. 3:21-cv-00110-AJB-(DEBx), 2022 WL 837073, at *7 (S.D. Cal. Mar. 21, 2022).

Plaintiff concealed and failed to disclose the Resnick Deed of Trust to and the escrow agent failed to comply with the escrow instructions as a result. Plaintiff's concealment of the loan secured by the Resnick Deed of Trust does not result in Oaktree having purportedly causing her any damages. Nor does the failure to provide title claim related documents.

## IX.    <u>COUNT 10 FOR FAILURE TO MITIGATE DAMAGES FAILS</u>

It was held in *Valle De Oro Bank v. Gamboa* (1994) 26 Cal.App.4th 1686, 1691, that:

> "The doctrine of mitigation of damages holds that "[a] plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided. (cits. omit.)"

The alleged failure to mitigate damages is an affirmative defense raised by a defendant to claims by a Plaintiff. It is not a cause of action.

Count 10 must be dismissed.

## X.    COUNT 11 FOR PUNITIVE DAMAGES FAILS

Punitive damages is a remedy, not a cause of action. See, *569 East County Boulevard LLC v. Backcountry Against The Dump, Inc.* (2016) 6 Cal.App.5th 426, 429, fn. 3 and *Hilliard v. A.H. Robins Co.* (1983) 148 Cal.App.3d 374, 391.

Count 11 fails and must be dismissed.

**Jason E. Goldstein**
*Partner*
Orange County Office
**T** (949) 224-6235
**C** (213) 379-4756

---

**From:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Sent:** Thursday, February 5, 2026 10:14 AM
**To:** Audrey Little <audreylittle458@gmail.com>

**Cc:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Subject:** RE: URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and Interim Standstill (5:26-cv-00402) [IMAN-BUCHALTER.FID6170674]

Hi Audrey:

Oaktree will not so stipulate. Oaktree will be moving to dismiss each cause of action alleged against it because they fail as a matter of law. I will send you an outline of why and then I will give you a call to discuss today.

Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**Jason E. Goldstein**
*Partner*
Orange County Office
**T** (949) 224-6235
**C** (213) 379-4756

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, February 5, 2026 10:09 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and Interim Standstill (5:26-cv-00402)

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

Subject
URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and Interim Standstill (5:26-cv-00402)

Jason

Jason,

I am writing as a final meet-and-confer effort to narrow the issues created by removal and to prevent imminent, date-certain harm. If Oaktree is willing, we can avoid unnecessary motion practice and restore an orderly state-court path for the already-scheduled injunction posture.

As you are aware, Oaktree's responsive pleading to the First Amended Complaint (FAC) is due today. For the avoidance of doubt, I do not consent to any extension of time to respond to the FAC. My proposal below eliminates any need for an extension by allowing Oaktree to respond to the SAC instead.

**Proposed stipulation (three parts):**

1. **Stipulation to Remand.**
   Oaktree stipulates to remand this action to Riverside Superior Court.

2. **Pleadings posture (SAC).**
   Oaktree stipulates that Plaintiff may file the Second Amended Complaint (SAC) (the operative pleading I provided on January 23), and that any response will be directed to the SAC (not the superseded FAC).

3. **Interim standstill to preserve the status quo.**
   Oaktree agrees to a temporary standstill on billing/collection/enforcement activity and adverse credit furnishing relating to the challenged loan through March 10, 2026, or until the state court hears the injunction request, whichever occurs last, to avoid a preventable "jurisdictional gap" while the forum issue is resolved.

If you are not willing to stipulate, I will file a short supplemental notice with the Court addressing the procedural defects and prejudice from the timing of removal in relation to the state-court injunction schedule, and I will request appropriate relief (including fees/costs where authorized).

**Deadline:** Please confirm by 12:00 PM (PT) today whether Oaktree will stipulate to the three-part proposal above.

Regards,
Audrey Little

Plaintiff, Pro SeRegards,

Audrey Little

audreylittle458@gmail.com

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

From: **Goldstein, Jason E.** jgoldstein@buchalter.com
Subject: RE: Meet and Confer Regarding Motion To Strike Punitive Damages Allegations In FAC [IMAN-BUCHALTER.FID6170674]
Date: February 5, 2026 at 4:54 PM
To: Audrey Little audreylittle458@gmail.com
Cc: Goldstein, Jason E. jgoldstein@Buchalter.com

JG

Great.  530 it is.

I am filing two motions.  1 to dismiss.  1 as to punitive damages.  If the motion to dismiss is granted, it will moot the second motion.

## Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

## Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, February 5, 2026 4:47 PM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Re: Meet and Confer Regarding Motion To Strike Punitive Damages Allegations In FAC [IMAN-BUCHALTER.FID6170674]

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

I thought you were filing a motion to dismiss the entire complaint? I can do 5:30. But that is the latest at this last notice.
Regards,

Audrey Little
audreylittle458@gmail.com

On Feb 5, 2026, at 3:46 PM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Audrey:

For the reasons stated below, your punitive damages allegations against Oaktree fail and are subject to a motion to strike.

Are you available at 5pm to discuss the below?

## A.    Since The Counts For Which Punitive Damages Are Sought Fail, The Punitive Damages Allegations And Prayer Must Be Stricken

For all of the reasons stated in the concurrently filed Motion to Dismiss the FAC, which is incorporated herein by this reference in its entirety as though set forth in full, the causes of action which seek punitive damages fail. Therefore, there is no basis for any award of punitive damages against Oaktree and the punitive damages allegations and prayer must be stricken.

## B.    The Punitive Damages Allegations And Prayer Are Insufficiently Pled And Must Be Stricken

Punitive damages are disfavored in California. California courts have ruled that such damages should be awarded with the greatest of caution and only in the clearest

awarded with the greatest of caution and only in the clearest of cases. *Henderson v. Sec. Nat. Bank* (1977) 72 Cal.App.3d 764, 771.

In *G.D. Searle & Co. v. Sup. Ct.* (1975) 49 Cal. App. 3d 22, 29, the Court of Appeal discussed the possible grounds for punitive damages and pointed out that, like fraud, actions for punitive damages must be specifically pled: "Notwithstanding relaxed pleading criteria, certain tortious injuries demand firm allegations. Vague, conclusory allegations of fraud or falsity may not be rescued by the rule of liberal construction."

Detailed factual allegations are necessary because "[w]hen a defendant must produce evidence in defense of an exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him." *Id.* Thus, "[c]onclusory characterization of a defendant's conduct as intentional, willful and fraudulent is patently insufficient statement of 'oppression, fraud, malice, express or implied,' within the meaning of section 3294." *See Brousseau v. Jarrett* (1977) 73 Cal. App. 3d 864, 872 [holding that conclusory allegations that a defendant engaged in certain conduct "intentionally, willfully, fraudulently, and with a wanton and reckless disregard" held "patently insufficient" to entitle a plaintiff to punitive damages]; *Cohen v. Groman Mortuary* (1964) 231 Cal.App.2d 1, 8 [stating that allegations of "wanton" or "willful disregard" are nothing more than legal conclusions]; *see also Hilliard v. A.H. Robbins Co.* (1983)

148 Cal.App.3d 374 [finding that mere allegation that intentional tort was committed is insufficient to warrant punitive damages].

In *Smith v. Sup. Ct.* (1992) 10 Cal.App.4th 1033, 1035-36, the court struck a punitive damage claim where the plaintiff alleged that:

> "Defendants . . . misrepresented and fraudulently concealed the true nature of the representation being afforded by . . . defendants and that Plaintiff's legal interests were being protected, when in fact they were not.   The defendant's conduct . . . was intentional, knowing, malicious, fraudulent, false and deceitful.   Said acts and omissions were undertaken with a conscious disregard of the interests and rights of plaintiff and to the benefit of defendants."

The *Smith* court determined that the above allegations were wholly inadequate to support a punitive damages claim because they were only conclusory allegations. *See Id.* at 1042.

Here, in the FAC, the Plaintiff alleges no facts which show how Oaktree purportedly acted with oppression, fraud or malice.

Without specific facts showing malicious, fraudulent or oppressive conduct by Oaktree, the allegations and prayer for punitive damages fail as a matter of law and must be stricken.

**C.     The Punitive Damage Allegations Fail To**

C.    The Punitive Damage Allegations Fail To Comply With The *Civil Code* § 3294 Requirement For Corporate Defendants And Must Be Stricken

A complainant which attempts to allege a claim for punitive damages against a corporate entity <u>must satisfy</u> the requirements of *Civil Code* § 3294(b) which requires an allegation that, "the acts of employees of defendant corporation were done with the knowledge or under the express direction or ratification of an officer, director or managing agent of the corporation . . ." *Scannell v. County of Riverside* (1984) 152 Cal.App.3d 596 (striking deficient punitive damage allegations against a corporation).

The California Supreme Court in *White v. Ultramar* (1999) 21 Cal.4th 563, 572, held that the drafters of *Civil Code* §3294(b)'s:

" . . . **goals were to avoid imposing punitive damages on employers who were merely negligent or reckless and to distinguish ordinary respondeat superior liability from corporate liability for punitive damages** . . . Section 3294 is no longer silent on who may be responsible for imputing punitive damages to a corporate employer. **For corporate punitive damages liability, section 3294, subdivision (b), requires that the wrongful act giving rise to the exemplary damages be committed by an 'officer, director, or managing agent.'"**

officer, director, or managing agent.

In *Grieves v. Sup. Ct.* (1984) 157 Cal.App.3d 159, 168, the Court of Appeal affirmed the sustaining of a demurrer in favor of a corporate defendant. Addressing the claim for punitive damages against the corporate defendant, the court stated:

> "[W]e fail to see how any of those allegations sets forth facts to show [corporate defendant's] advance knowledge, authorization or ratification. Also, absent from the complaint is any assertion an officer, director, managing agent of corporate defendant] was personally responsible for any of the acts allegedly performed by [corporate defendant]."

Further, the court in *J. R. Norton Co. v. General Teamsters, Warehousemen and Helpers Union* (1989) 208 Cal.App.3d 430, 445, held that:

> "A corporation may be held liable for punitive damages for the acts of its agents and employees when the act is motivated by actual malice or done under circumstances amounting to oppression providing that the act is done with the knowledge or under the direction of corporate officials having the power to bind the corporation."

Plaintiff's factually devoid punitive damage allegations do <u>not</u> satisfy the Section 3294(b) standard <u>and</u> are nothing more than legal conclusions with no factual support.

Therefore, the punitive damages allegations and prayer are not drawn in conformity with the laws of the State of California and must be stricken.

Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com I Bio I LinkedIn

---

**From:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Sent:** Thursday, February 5, 2026 3:38 PM
**To:** Audrey Little <audreylittle458@gmail.com>
**Cc:** Goldstein, Jason E. <jgoldstein@Buchalter.com>; Hovsepyan, Richard <rhovsepyan@buchalter.com>
**Subject:** Meet and Confer Regarding Motion To Dismiss FAC [IMAN-BUCHALTER.FID6170674]

Audrey:

For the reasons stated below, each of your counts against Oaktree fail as a matter of law. You should agree to dismiss your First Amended Complaint as a result for the reasons stated below.

Are you available at 5pm to discuss the below?

## I.  <u>THE COURT HAS DISCRETION TO DISMISS THE FAC, AND EACH AND EVERY PURPORTED CAUSE OF ACTION FOR CLAIM FOR RELIEF CONTAINED THEREIN DUE TO A LACK OF PLAUSIBILITY</u>

While a Complaint only needs to provide a short and plain statement for relief, the actual standard required for pleading civil complaints in federal court requires that: 1) the

plaintiff provide grounds for relief which are "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do;" and 2) factual allegations which "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 555. *See also, Williston Basin Interstate Pipeline Co. v. Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation* (9th Cir. 2008) 524 F.3d 1090, 1096 (citing *Twombly* [affirming dismissal of complaint where complaint failed to state a claim to relief that was plausible on its face]).

In fact, a plaintiff must show that it has a plausible entitlement to relief. *See Twombly,* 550 U.S. at 559 and 570:

"It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process . . . [b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."

The United States Supreme Court confirmed the plausibility standard for pleading civil complaints in *Ashcroft v. Iqbal* (2009) 129 S. Ct. 1937, 1949-1950 when it held that:

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim for relief that is plausible on its face." (citation omitted).    A claim has facial plausibility when the plaintiff pleads factual content

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   (citation omitted).    The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (citation omitted).  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitled to relief.'" (citation omitted).

It was further held in *Iqbal* that:

"only a complaint that states a plausible claim for relief survives a motion to dismiss.   (citation omitted).  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.   (citation omitted).   But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" - - "that the pleader is entitled to relief."   Fed. Rule Civ. Proc. 8(a)(2)."   *Iqbal*, 129 S. Ct. at 1949-1950.  [Emphasis added]

Federal Rule of Civil Procedure 12(b)(6) provides a

mechanism whereby a claim may be dismissed where there is a lack of a cognizable theory or where there is an absence of sufficient facts.  *See Ballistereri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  Although a Court must assume that the plaintiff's allegations are true on a motion to dismiss, the Court may disregard conclusory allegations and unreasonable inferences.  *See also*, *Moss v. U.S. Secret Service* (9th Cir. 2009) 572 F.3d 962, 971, citing to *Sprewell v. Golden State Warriors* (9th Cir. 2001) 266 F.3d 979, 988 (stating that courts are not required to make "unreasonable inferences" or "unwarranted deductions of fact" to save a complaint from a motion to dismiss).

In addition, the Court need not accept as true allegations that contradict facts which may be judicially noticed (*Mack v. South Bay Beer Distributors* (9th Cir. 1986) 798 F.2d 1279, 1281) or which are contradicted by facts established by exhibits attached to the Complaint. (*Durning v. First Boston Corp.* (9th Cir. 1987) 815 F.2d 1265, 1267).  See also, *Davis v. HSBC Bank Nevada, N.A.* (9th Cir. 2012) 691 F.3d 1152, 1160 (holding that courts may incorporate by reference documents referred to or identified in a complaint but not attached to it).

As discussed above, and as will be further discussed below, Plaintiff has failed to allege any plausible claims against Oaktree.

## II.   COUNT 1 FOR NEGLIGENCE FAILS

... <u>**COUNT 1 FOR NEGLIGENCE v...**</u>

The elements of a cause of action for negligence are: (1) legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Hoyem v. Manhattan* (1978) 22 Cal.3d 508, 514.

### A.    <u>No Duty</u>

It is the law in California that a lender does <u>not</u> owe its borrower a duty of care when it does not exceed its conventional role as a money lender.  As the Court of Appeal recently held in *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4<sup>th</sup> 49, 63:

> "<u>**Lenders and borrowers operate at arm's length.**</u> (*Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 466 . . .; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579 . . . ; *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476 . . . , disapproved on other grounds in*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1182 . . .) <u>**"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money**</u>." (*Nymark v. Heart Fed. Savings & Loan*

*Assn.* (1991) 231 Cal.App.3d 1089, 1096)."

[Emphasis added]

It has long been regarded as "axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor." "A debt is not a trust and there is not a fiduciary relation between a debtor and creditor as such." The same principle should apply with even greater clarity to the relationship between a bank and its loan customers. *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476, quoting *Morse v. Crocker Nat'l. Bank* (1983) 142 Cal.App.3d 228, 232 and *Downey v. Humphreys* (1951) 102 Cal.App.2d 323, 332.

Here, there is no duty as a matter of law and the negligence count fails as a matter of law.

## III.     COUNT 3 FOR NEGLIGENT MISREPRESENTATION FAILS

The elements of a cause of action for negligent misrepresentation are: (1) a false statement of a material fact that the defendant honestly believes to be true, but made without reasonable grounds for such belief; (2) made with the intent to induce reliance; (3) reasonable reliance; and (4) damages. *Century Sur. Co. v. Crosby Ins., Inc.*, (2004) 124 Cal.App.4th 116, 129. Each element in a cause of action for negligent misrepresentation must be factually and specifically alleged. *Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.

Each element in a cause of action for negligent misrepresentation must be factually and specifically alleged. *Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.

## A.   The Negligent Misrepresentation Cause Of Action Fails Due To Lack Of Duty

Responsibility for an alleged negligent misrepresentation requires the existence of a duty. *Bock v. Hansen* (2014) 225 Cal.App.4th 215, 229. See also, *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1332 (holding that the question of duty is relevant in cases where a cause of action for negligent misrepresentation is alleged). "Whether a legal duty exists in a given case is primarily a question of law." *Wylie v. Gresch* (1987) 191 Cal.App.3d 412, 416.   Here, there is no duty of care present.

## B.   The Count Lacks Specificity

A plaintiff's burden in asserting a misrepresentation claim against a corporation, as opposed to an individual, is even greater. *Lazar v. Sup. Ct.,* (1996) 12 Cal.4th 631, 645.  In such a case, the Plaintiff must allege the <u>name of the person</u> who made the allegedly fraudulent representations, <u>their authority to speak</u>, <u>what they said or wrote</u> and <u>when it was said or written</u>. *Id*.

This has not been done here.  The entire count fails.

## IV.   COUNT 4 FOR FRAUDULENT CONCEALMENT FAILS

### FAILS

"The elements of a claim for fraudulent concealment require the plaintiff to show that: '(1) the defendant . . . concealed or suppressed a material fact, (2) the defendant [was] under a duty to disclose the fact to the plaintiff, (3) the defendant . .. intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff [was] unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as result of the concealment or suppression of face, the plaintiff must have sustained damage.' (cit. omit.)" *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal. App. 4th 1105.

Fraud actions have been classed as "disfavored," and are subject to strict requirements of particularity in pleading. 5 Witkin, *California Procedure* (5th Ed., 2008) Pleading § 711, p. 126. Therefore, each of the elements of a fraud cause of action must be alleged in full, factually and specifically, since general pleadings of legal conclusions are insufficient to state a cause of action. *Roberts v. Ball, Hunt, Brown & Barowitz* (1976) 57 Cal.App.3d 104, 109. Fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud, and it is not sufficient to allege the elements in general terms or in terms which amount to mere conclusions. *Campbell v. Clark* (1958) 159 Cal.App.2d 439.

The particularity requirement necessitates pleading facts which show how, when, where and to whom and by what

means the representations were tendered.  In *Stansfield v. Starkey* (1990) 220 Cal.App.3d 59, it was held that a demurrer was properly sustained without leave to amend where the plaintiff failed to specifically allege a Fraud claim.  In so ruling, the court noted that the rationale for the strict pleading requirement is not merely notice to the defendant.  The idea seems to be that the allegations of Fraud involve a serious attack of character, and fairness to the defendant demands that he should have the fullest possible details of the charge in order to prepare his defense.  *Id.* at 73.  Thus, liberal rules of construction will not usually be invoked to sustain a pleading that is defective with respect to any one of the required elements of a fraud cause of action.  *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331.

In addition, as stated above, a plaintiff's burden in asserting a misrepresentation claim against a corporation, as opposed to an individual, is even greater.  *Lazar v. Sup. Ct.,* (1996) 12 Cal.4th 631, 645.  In such a case, the Plaintiff must allege the <u>name of the person</u> who made the allegedly fraudulent representations, <u>their authority to speak</u>, <u>what they said or wrote</u> and <u>when it was said or written</u>. *Id*.

Here, the FAC is devoid of any particularity and does not identify any person which purportedly made a misrepresentation of a concealment. This is fatal.

## V.    <u>COUNT 5 FOR CIVIL CONSPIRACY FAILS</u>

There is no cause of action for civil conspiracy.  Instead,

it is a legal doctrine that imposes liability on persons who did not commit the tort, but participated in its plan or design. *Klistoff v. Sup. Ct.* (2007) 157 Cal.App.4th 469, 479.

## VI.   **COUNT 7 FOR UNFAIR BUSINESS PRACTICES FAILS**

*Business & Professions Code* § 17200 ("Section 17200") provides civil remedies for unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice." Section 17200 was designed to protect consumers and competitors from unfair business practices. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal. 4th 163, 180 (1999). The statute "is not an all-purpose substitute for a tort or contract action." *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173. As will be discussed below, this purported claim for relief fails as a matter of law.

Here, the Plaintiff bases her Section 17200 claims on the prior counts discussed above. This is improper because common law claims and principles cannot serve as a basis for a violation of the "unlawful" prong of Section 17200 claim. *See Textron Financial Corp. v. National Fire Ins. Co. of Pittsburgh* (2004) 118 Cal.App.4th 1061, 1072 (common law claim for fraud could not serve as the "unlawful" act supporting a claim under Section 17200). Even "[p]rovisions of the Civil Code that are substantially the same as the common law, such as the provisions that codify common law

torts, 'must be construed as continuations thereof, and not as new enactments.'"  *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1091 (citing California Civil Code Section 5 and specifically applying holding to claim for deceit).

For these reasons, the Plaintiff's Section 17200 count fails and must be dismissed.

### A.    Oaktree Has Not Done Anything Unlawful

The "unlawful" prong borrows violations of other laws and treats them as unlawful practices that Section 17200 makes independently actionable.  *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 520.  Nothing unlawful has been alleged.

### B.    Oaktree Has Not Done Anything Unfair

The "unfair" prong of a Section 17200 claim requires an allegation that Bank's conduct threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.  *Byars v. SCME Mortgage bankers, Inc.* (2003) 29 Cal.4th 1134.  This, the Plaintiff has not done and cannot due.

### C.    Oaktree Has Not Done Anything Fraudulent

The "fraudulent" prong deals with "any act or practice likely to deceive the public, even if no one is actually deceived."  *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 907.  See, also *Committee on Children's*

*Television v. General Foods Corp.* (1983) 35 Cal. 3d 197, 211 (holding that the test of whether a practice is "fraudulent" under Section 17200 is whether "…members of the public are likely to be deceived")

This standard "…implies more than a mere possibility that the [practice] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the [practice] is such that it is probable that a significant portion of the general consuming public or targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.* (2003) 105 Cal. App. 4th 496, 500, 508.

There is nothing "fraudulent," as that term is used in Section 17200, that has been alleged here.

Therefore, Count 7 should be dismissed.

## VII.   <u>COUNT 8 FOR UDAAP VIOLATIONS FAILS</u>

Plaintiff's claim for "UDAAP Violations" fail because there is no private right of action for UDAAP violations. *See, Atiyeh v. Am. Bus. Bank* (C.D. Cal. 2025) 2025 U.S. Dist. LEXIS 37838, * 6, citing to *Deutsche Bank Nat'l Trust Co. v. Fox* (M.D. Fla. 2013) 971 F.Supp.2d 1106, 1120 ("the administration of the Federal Trade Commission Act, including UDAAP, 'is in the hands of the administrative agency and not the private citizen." *Robert*s, 556 F.2d at 361 n. 6. Consequently, Foxx does not have a private action under UDAAP, and Count XV is DISMISSED with

prejudice."), *Herrera v. Credit Collection Servs. Comercial* (C.D. Cal. 2024) 2024 U.S. Dist. LEXIS 240295, * 2 ("[T]he Court examined whether Plaintiff sufficiently alleged claims for relief. With respect to the FTC Act violations, the Court determined that Plaintiff cannot bring a § 5 claim because the Ninth Circuit has held that § 5 does not provide a private right of action") and *O'Donnell v. Bank of America, Nat. Ass'n,* (9th Cir. 2013) 504 Fed. App'x 566, 568.

Therefore, Count 8 must be dismissed.

## VIII.    COUNT 9 FOR CFPB REGULATION X (12 C.F.R. § 1024) FAILS

12 C.F.R. Section 1024 is known as Regulation X and was issued by the Bureau of Consumer Financial Protection to implement the Real Estate Settlement Procedures Act ("RESPA").

Here, Plaintiff has only submitted terse legal conclusions, with no facts, to support this purported count. This requires the granting of this motion in and of itself.  In any event this count fails in its own right.

### A.    Plaintiff Has Not Alleged That She Sent A Proper Qualified Written Request Or Request For Information

Plaintiff has not alleged that she submitted, properly or not, a Qualified Written Request ("QWR") or Request for Information ("RFI") to Oaktree.

As an initial matter, a QWR under RESPA, 12 C.F.R. §§1024.35(a), 1024.36(a) imposes two preconditions that a borrower must satisfy to trigger a response duty. First, the borrower must show that he or she submitted a qualifying QWR regarding the servicing of a federally related mortgage loan. See 12 U.S.C. § 2605(e)(1)(A), (e)(2). RESPA defines a QWR as a written correspondence that "includes … the name and account of the borrower and includes a statement of the reasons for the belief of the borrower … that the account is in error or provides sufficient detail regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Second, if a borrower submits a qualifying QWR to a loan servicer, the borrower's letter must also request or challenge "information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A), (e)(2). Servicing encompasses "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts ..., and making the payments of principal and interest and such other payments." 12 U.S.C. § 2605(i)(3). As defined, servicing excludes "the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement."*Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666-67 (9th Cir. 2012).

Documents regarding a claim by Oaktree to its title insurer which was denied is not a document that RESPA requires be produced to a borrower pursuant to a QWR or a

RFI.   Allegedly failing to appeal a title insurer's denial of a claim is also something that is not covered by RESPA.

This count fails as a result.

### B.    Plaintiff Has Not Pled That She Properly Submitted A Loss Mitigation Application

12 C.F.R. section 1024.41 enacts loss mitigation procedures under RESPA. The first step is the receipt of a complete loss mitigation application.  12 C.F.R. section 1024.41(b)(1).  Plaintiff has not alleged that she submitted a completeloss mitigation application.

Second, nothing in 12 C.F.R. section 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation application.

### C.    Plaintiff Has Not Pled Damages Caused By An Alleged RESPA Violation

Lastly, in order to establish a violation of RESPA, Plaintiff must plead and prove "facts showing how the plaintiff suffered actual harm due to defendants' failure to respond to a qualified written request." *See* 12 U.S.C. § 2605(f)(1)(A); *Fullmer v. JPMorgan Chase Bank, N.A.*, No. 2:09-cv-01037-JFM, 2010 WL 95206, at *6 (E.D. Cal. Jan. 6, 2010); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) (explaining "there must be a 'causal link' between the alleged [RESPA] violation and the damages" [quoting *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001) ]); cf. *Hintz v. JPMorgan Chase Bank, N.A.*, 686

F.3d 505, 511 (8th Cir. 2012). Plaintiff has failed to allege that he sustained any actual damages resulting from any alleged violation of RESPA by SPS.

Here, Plaintiff fails to plead that any such damages were the "direct result of [Oaktree's purported] failure to comply" with RESPA. *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010). "A claim of a RESPA violation cannot survive a motion to dismiss when the plaintiff does not plead facts showing how the plaintiff suffered actual harm due to defendants' failure to respond to a qualified written response." *Fullmer v. JPMorgan Chase Bank, N.A.*, No. 2:09-cv-01037-JFM, 2010 WL 95206, at *6 (E.D. Cal. Jan. 6, 2010); *see* also *Singh v. Wash. Mut. Bank*, No. 3:09-cv-02771-MMC, 2009 WL 2588885, at *5 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim where plaintiffs "failed to allege any facts in support of their conclusory allegation that '[a]s a result' of defendants' failure to respond, defendants 'are liable for actual damages, costs, and attorney fees' "). Accordingly, a "plaintiff's failure to allege a pecuniary loss attributable to a servicer's failure to respond to QWRs has therefore been found to be fatal to the claim." *Robinson v. Bank of Am., N.A.*, No. 3:21-cv-00110-AJB-(DEBx), 2022 WL 837073, at *7 (S.D. Cal. Mar. 21, 2022).

Plaintiff concealed and failed to disclose the Resnick Deed of Trust to and the escrow agent failed to comply with the escrow instructions as a result. Plaintiff's concealment of the loan secured by the Resnick Deed of Trust does not result in Oaktree having purportedly causing her any damages. Nor does the failure to

purportedly causing her any damages. Nor does the failure to provide title claim related documents.

## IX.    COUNT 10 FOR FAILURE TO MITIGATE DAMAGES FAILS

It was held in *Valle De Oro Bank v. Gamboa* (1994) 26 Cal.App.4th 1686, 1691, that:

> "The doctrine of mitigation of damages holds that "[a] plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any  losses which could have been thus avoided. (cits. omit.)"

The alleged failure to mitigate damages is an affirmative defense raised by a defendant to claims by a Plaintiff.  It is not a cause of action.

Count 10 must be dismissed.

## X.    COUNT 11 FOR PUNITIVE DAMAGES FAILS

Punitive damages is a remedy, not a cause of action. See, *569 East County Boulevard LLC v. Backcountry Against The Dump, Inc.* (2016) 6 Cal.App.5th 426, 429, fn. 3 and *Hilliard v. A.H. Robins Co.* (1983) 148 Cal.App.3d 374, 391.

Count 11 fails and must be dismissed.

**Jason E. Goldstein**
*Partner*
Orange County Office
**T** (949) 224-6235
**C** (213) 379-4756

**From:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Sent:** Thursday, February 5, 2026 10:14 AM
**To:** Audrey Little <audreylittle458@gmail.com>
**Cc:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Subject:** RE: URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and Interim Standstill (5:26-cv-00402) [IMAN-BUCHALTER.FID6170674]

Hi Audrey:

Oaktree will not so stipulate.  Oaktree will be moving to dismiss each cause of action alleged against it because they fail as a matter of law.  I will send you an outline of why and then I will give you a call to discuss today.

Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com I Bio I LinkedIn

**Jason E. Goldstein**
*Partner*
Orange County Office
**T** (949) 224-6235
**C** (213) 379-4756

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, February 5, 2026 10:09 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and Interim Standstill (5:26-cv-00402)

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

Subject
URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and

URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and
Interim Standstill (5:26-cv-00402)

Jason,

I am writing as a final meet-and-confer effort to narrow the issues created by
removal and to prevent imminent, date-certain harm. If Oaktree is willing, we
can avoid unnecessary motion practice and restore an orderly state-court path
for the already-scheduled injunction posture.

As you are aware, Oaktree's responsive pleading to the First Amended
Complaint (FAC) is due today. For the avoidance of doubt, I do not consent to
any extension of time to respond to the FAC. My proposal below eliminates any
need for an extension by allowing Oaktree to respond to the SAC instead.

**Proposed stipulation (three parts):**

1. **Stipulation to Remand.**
   Oaktree stipulates to remand this action to Riverside Superior Court.

2. **Pleadings posture (SAC).**
   Oaktree stipulates that Plaintiff may file the Second Amended
   Complaint (SAC) (the operative pleading I provided on January 23), and
   that any response will be directed to the SAC (not the superseded FAC).

3. **Interim standstill to preserve the status quo.**
   Oaktree agrees to a temporary standstill on
   billing/collection/enforcement activity and adverse credit furnishing
   relating to the challenged loan through March 10, 2026, or until the state
   court hears the injunction request, whichever occurs last, to avoid a
   preventable "jurisdictional gap" while the forum issue is resolved.

If you are not willing to stipulate, I will file a short supplemental notice with the
Court addressing the procedural defects and prejudice from the timing of
removal in relation to the state-court injunction schedule, and I will request
appropriate relief (including fees/costs where authorized).

**Deadline:** Please confirm by 12:00 PM (PT) today whether Oaktree will
stipulate to the three-part proposal above.

Regards,
Audrey Little

Plaintiff, Pro SeRegards,

Audrey Little
audreylittle458@gmail.com

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.



**From:** **Goldstein, Jason E.** jgoldstein@buchalter.com
**Subject:** RE: Meet and Confer Regarding Motion To Strike Punitive Damages Allegations In FAC [IMAN-BUCHALTER.FID6170674]
**Date:** February 5, 2026 at 3:46 PM
**To:** Audrey Little audreylittle458@gmail.com
**Cc:** Hovsepyan, Richard rhovsepyan@buchalter.com, Goldstein, Jason E. jgoldstein@Buchalter.com

Audrey:

For the reasons stated below, your punitive damages allegations against Oaktree fail and are subject to a motion to strike.

Are you available at 5pm to discuss the below?

**A.      Since The Counts For Which Punitive Damages Are Sought Fail, The Punitive Damages Allegations And Prayer Must Be Stricken**

For all of the reasons stated in the concurrently filed Motion to Dismiss the FAC, which is incorporated herein by this reference in its entirety as though set forth in full, the causes of action which seek punitive damages fail.  Therefore, there is no basis for any award of punitive damages against Oaktree and the punitive damages allegations and prayer must be stricken.

**B.      The Punitive Damages Allegations And Prayer Are Insufficiently Pled And Must Be Stricken**

Punitive damages are disfavored in California.  California courts have ruled that such damages should be awarded with the greatest of caution and only in the clearest of cases.  *Henderson v. Sec. Nat. Bank* (1977) 72 Cal.App.3d 764, 771.

In *G.D. Searle & Co. v. Sup. Ct.* (1975) 49 Cal. App. 3d 22, 29, the Court of Appeal discussed the possible grounds for punitive damages and pointed out that, like fraud, actions for punitive damages must be specifically pled:  "Notwithstanding relaxed pleading criteria, certain tortious injuries demand firm allegations.  Vague, conclusory allegations of fraud or falsity may not be rescued by the rule of liberal construction."

Detailed factual allegations are necessary because "[w]hen a

defendant must produce evidence in defense of an exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him." *Id.* Thus, "[c]onclusory characterization of a defendant's conduct as intentional, willful and fraudulent is patently insufficient statement of 'oppression, fraud, malice, express or implied,' within the meaning of section 3294." *See Brousseau v. Jarrett* (1977) 73 Cal. App. 3d 864, 872 [holding that conclusory allegations that a defendant engaged in certain conduct "intentionally, willfully, fraudulently, and with a wanton and reckless disregard" held "patently insufficient" to entitle a plaintiff to punitive damages]; *Cohen v. Groman Mortuary* (1964) 231 Cal.App.2d 1, 8 [stating that allegations of "wanton" or "willful disregard" are nothing more than legal conclusions]; *see also Hilliard v. A.H. Robbins Co.* (1983) 148 Cal.App.3d 374 [finding that mere allegation that intentional tort was committed is insufficient to warrant punitive damages].

In *Smith v. Sup. Ct.* (1992) 10 Cal.App.4th 1033, 1035-36, the court struck a punitive damage claim where the plaintiff alleged that:

> "Defendants . . . misrepresented and fraudulently concealed the true nature of the representation being afforded by . . . defendants and that Plaintiff's legal interests were being protected, when in fact they were not. The defendant's conduct . . . was intentional, knowing, malicious, fraudulent, false and deceitful. Said acts and omissions were undertaken with a conscious disregard of the interests and rights of plaintiff and to the benefit of defendants."

The *Smith* court determined that the above allegations were

wholly inadequate to support a punitive damages claim because they were only conclusory allegations. *See Id.* at 1042.

Here, in the FAC, the Plaintiff alleges no facts which show how Oaktree purportedly acted with oppression, fraud or malice.

Without specific facts showing malicious, fraudulent or oppressive conduct by Oaktree, the allegations and prayer for punitive damages fail as a matter of law and must be stricken.

**C.     The Punitive Damage Allegations Fail To Comply With The *Civil Code* § 3294 Requirement For Corporate Defendants And Must Be Stricken**

A complainant which attempts to allege a claim for punitive damages against a corporate entity <u>must satisfy</u> the requirements of *Civil Code* § 3294(b) which requires an allegation that, "the acts of employees of defendant corporation were done with the knowledge or under the express direction or ratification of an officer, director or managing agent of the corporation . . ." *Scannell v. County of Riverside* (1984) 152 Cal.App.3d 596 (striking deficient punitive damage allegations against a corporation).

The California Supreme Court in *White v. Ultramar* (1999) 21 Cal.4th 563, 572, held that the drafters of *Civil Code* §3294(b)'s:

> " . . . **goals were to avoid imposing punitive damages on employers who were merely negligent or reckless and to distinguish ordinary respondeat superior liability from corporate liability for punitive damages** . . . Section 3294 is no longer silent on who may be responsible for imputing punitive damages to a  corporate employer. **For corporate punitive damages liability, section 3294, subdivision (b), requires that the wrongful act giving**

**rise to the exemplary damages be committed by an 'officer, director, or managing agent**.'"

In *Grieves v. Sup. Ct.* (1984) 157 Cal.App.3d 159, 168, the Court of Appeal affirmed the sustaining of a demurrer in favor of a corporate defendant. Addressing the claim for punitive damages against the corporate defendant, the court stated:

> "[W]e fail to see how any of those allegations sets forth facts to show [corporate defendant's] advance knowledge, authorization or ratification. Also, absent from the complaint is any assertion an officer, director, managing agent of corporate defendant] was personally responsible for any of the acts allegedly performed by [corporate defendant]."

Further, the court in *J. R. Norton Co. v. General Teamsters, Warehousemen and Helpers Union* (1989) 208 Cal.App.3d 430, 445, held that:

> "A corporation may be held liable for punitive damages for the acts of its agents and employees when the act is motivated by actual malice or done under circumstances amounting to oppression providing that the act is done with the knowledge or under the direction of corporate officials having the power to bind the corporation."

Plaintiff's factually devoid punitive damage allegations do <u>not</u> satisfy the Section 3294(b) standard <u>and</u> are nothing more than legal conclusions with no factual support.  Therefore, the punitive damages allegations and prayer are not drawn in conformity with the laws of the State of California and must be stricken.

**Buchalter**

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Sent:** Thursday, February 5, 2026 3:38 PM
**To:** Audrey Little <audreylittle458@gmail.com>
**Cc:** Goldstein, Jason E. <jgoldstein@Buchalter.com>; Hovsepyan, Richard <rhovsepyan@buchalter.com>
**Subject:** Meet and Confer Regarding Motion To Dismiss FAC [IMAN-BUCHALTER.FID6170674]

Audrey:

For the reasons stated below, each of your counts against Oaktree fail as a matter of law. You should agree to dismiss your First Amended Complaint as a result for the reasons stated below.

Are you available at 5pm to discuss the below?

# I.      THE COURT HAS DISCRETION TO DISMISS THE FAC, AND EACH AND EVERY PURPORTED CAUSE OF ACTION FOR CLAIM FOR RELIEF CONTAINED THEREIN DUE TO A LACK OF PLAUSIBILITY

While a Complaint only needs to provide a short and plain statement for relief, the actual standard required for pleading civil complaints in federal court requires that: 1) the plaintiff provide grounds for relief which are "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do;" and 2) factual allegations which "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544,

555.  *See also, Williston Basin Interstate Pipeline Co. v. Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation* (9th Cir. 2008) 524 F.3d 1090, 1096 (citing *Twombly* [affirming dismissal of complaint where complaint failed to state a claim to relief that was plausible on its face]).

In fact, a plaintiff must show that it has a plausible entitlement to relief.  *See Twombly,* 550 U.S. at 559 and 570:

> "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process . . . [b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."

The United States Supreme Court confirmed the plausibility standard for pleading civil complaints in *Ashcroft v. Iqbal* (2009) 129 S. Ct. 1937, 1949-1950 when it held that:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim for relief that is plausible on its face." (citation omitted).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  (citation omitted).  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (citation omitted).  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short

merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitled to relief.'" (citation omitted).

It was further held in *Iqbal* that:

"only a complaint that states a plausible claim for relief survives a motion to dismiss. (citation omitted). Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. (citation omitted). But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" - - "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2)." *Iqbal,* 129 S. Ct. at 1949-1950. [Emphasis added]

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism whereby a claim may be dismissed where there is a lack of a cognizable theory or where there is an absence of sufficient facts. *See Ballistereri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). Although a Court must assume that the plaintiff's allegations are true on a motion to dismiss, the Court may disregard conclusory allegations and unreasonable inferences. *See also*, *Moss v. U.S. Secret Service* (9th Cir. 2009) 572 F.3d 962, 971, citing to *Sprewell v. Golden State Warriors* (9th Cir. 2001) 266 F.3d 979, 988 (stating that courts are not required to make "unreasonable inferences" or "unwarranted deductions of fact" to save a complaint from a motion to dismiss).

In addition, the Court need not accept as true allegations that

contradict facts which may be judicially noticed (*Mack v. South Bay Beer Distributors* (9th Cir. 1986) 798 F.2d 1279, 1281) or which are contradicted by facts established by exhibits attached to the Complaint. (*Durning v. First Boston Corp.* (9th Cir. 1987) 815 F.2d 1265, 1267). See also, *Davis v. HSBC Bank Nevada, N.A.* (9th Cir. 2012) 691 F.3d 1152, 1160 (holding that courts may incorporate by reference documents referred to or identified in a complaint but not attached to it).

As discussed above, and as will be further discussed below, Plaintiff has failed to allege any plausible claims against Oaktree.

## II.    COUNT 1 FOR NEGLIGENCE FAILS

The elements of a cause of action for negligence are:  (1) legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach.  *Hoyem v. Manhattan* (1978) 22 Cal.3d 508, 514.

### A.    No Duty

It is the law in California that a lender does <u>not</u> owe its borrower a duty of care when it does not exceed its conventional role as a money lender.  As the Court of Appeal recently held in *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 63:

> "**<u>Lenders and borrowers operate at arm's length.</u>** (*Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 466 . . .; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579 . . . ; *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476 . . . , disapproved on other grounds in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1182 . . . .) **<u>"[A]s a general rule, a financial institution</u>**

**owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.**" (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096)." [Emphasis added]

It has long been regarded as "axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor." "A debt is not a trust and there is not a fiduciary relation between a debtor and creditor as such." The same principle should apply with even greater clarity to the relationship between a bank and its loan customers. *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476, quoting *Morse v. Crocker Nat'l. Bank* (1983) 142 Cal.App.3d 228, 232 and *Downey v. Humphreys* (1951) 102 Cal.App.2d 323, 332.

Here, there is no duty as a matter of law and the negligence count fails as a matter of law.

## III.    COUNT 3 FOR NEGLIGENT MISREPRESENTATION FAILS

The elements of a cause of action for negligent misrepresentation are: (1) a false statement of a material fact that the defendant honestly believes to be true, but made without reasonable grounds for such belief; (2) made with the intent to induce reliance; (3) reasonable reliance; and (4) damages. *Century Sur. Co. v. Crosby Ins., Inc.*, (2004) 124 Cal.App.4th 116, 129. Each element in a cause of action for negligent misrepresentation must be factually and specifically alleged. *Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.

Each element in a cause of action for negligent misrepresentation

must be factually and specifically alleged.  *Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.

### A.    The Negligent Misrepresentation Cause Of Action Fails Due To Lack Of Duty

Responsibility for an alleged negligent misrepresentation requires the existence of a duty.  *Bock v. Hansen* (2014) 225 Cal.App.4th 215, 229. See also, *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1332 (holding that the question of duty is relevant in cases where a cause of action for negligent misrepresentation is alleged).  "Whether a legal duty exists in a given case is primarily a question of law."  *Wylie v. Gresch* (1987) 191 Cal.App.3d 412, 416. Here, there is no duty of care present.

### B.    The Count Lacks Specificity

A plaintiff's burden in asserting a misrepresentation claim against a corporation, as opposed to an individual, is even greater.  *Lazar v. Sup. Ct.,* (1996) 12 Cal.4th 631, 645.  In such a case, the Plaintiff must allege the <u>name of the person</u> who made the allegedly fraudulent representations, <u>their authority to speak</u>, <u>what they said or wrote</u> and <u>when it was said or written</u>. *Id*.

This has not been done here.  The entire count fails.

## IV.    COUNT 4 FOR FRAUDULENT CONCEALMENT FAILS

"The elements of a claim for fraudulent concealment require the plaintiff to show that: '(1) the defendant . . . concealed or suppressed a material fact, (2) the defendant [was] under a duty to disclose the fact to the plaintiff, (3) the defendant . .. intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff [was]

unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as  result of the concealment or suppression of face, the plaintiff must have sustained damage.' (cit. omit.)"  *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal. App. 4th 1105.

Fraud actions have been classed as "disfavored," and are subject to strict requirements of particularity in pleading.  5 Witkin, *California Procedure* (5th Ed., 2008) Pleading § 711, p. 126.  Therefore, each of the elements of a fraud cause of action must be alleged in full, factually and specifically, since general pleadings of legal conclusions are insufficient to state a cause of action.  *Roberts v. Ball, Hunt, Brown & Barowitz* (1976) 57 Cal.App.3d 104, 109.  Fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud, and it is not sufficient to allege the elements in general terms or in terms which amount to mere conclusions.  *Campbell v. Clark* (1958) 159 Cal.App.2d 439.

The particularity requirement necessitates pleading facts which show how, when, where and to whom and by what means the representations were tendered.  In *Stansfield v. Starkey* (1990) 220 Cal.App.3d 59, it was held that a demurrer was properly sustained without leave to amend where the plaintiff failed to specifically allege a Fraud claim.  In so ruling, the court noted that the rationale for the strict pleading requirement is not merely notice to the defendant.  The idea seems to be that the allegations of Fraud involve a serious attack of character, and fairness to the defendant demands that he should have the fullest possible details of the charge in order to prepare his defense.  *Id.* at 73.  Thus, liberal rules of construction will not usually be

invoked to sustain a pleading that is defective with respect to any one of the required elements of a fraud cause of action. *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331.

In addition, as stated above, a plaintiff's burden in asserting a misrepresentation claim against a corporation, as opposed to an individual, is even greater. *Lazar v. Sup. Ct.,* (1996) 12 Cal.4th 631, 645. In such a case, the Plaintiff must allege the <u>name of the person</u> who made the allegedly fraudulent representations, <u>their authority to speak</u>, <u>what they said or wrote</u> and <u>when it was said or written</u>. *Id.*

Here, the FAC is devoid of any particularity and does not identify any person which purportedly made a misrepresentation of a concealment. This is fatal.

## V.     COUNT 5 FOR CIVIL CONSPIRACY FAILS

There is no cause of action for civil conspiracy. Instead, it is a legal doctrine that imposes liability on persons who did not commit the tort, but participated in its plan or design. *Klistoff v. Sup. Ct.* (2007) 157 Cal.App.4th 469, 479.

## VI.     COUNT 7 FOR UNFAIR BUSINESS PRACTICES FAILS

*Business & Professions Code* § 17200 ("Section 17200") provides civil remedies for unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice." Section 17200 was designed to protect consumers and competitors from unfair business practices. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal. 4th 163, 180 (1999). The statute "is not an all-purpose substitute for a tort or contract action." *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173. As will be discussed below, this purported claim for relief fails as a matter of law.

discussed below, this purported claim for relief fails as a matter of law.

Here, the Plaintiff bases her Section 17200 claims on the prior counts discussed above. This is improper because common law claims and principles cannot serve as a basis for a violation of the "unlawful" prong of Section 17200 claim. *See Textron Financial Corp. v. National Fire Ins. Co. of Pittsburgh* (2004) 118 Cal.App.4th 1061, 1072 (common law claim for fraud could not serve as the "unlawful" act supporting a claim under Section 17200). Even "[p]rovisions of the Civil Code that are substantially the same as the common law, such as the provisions that codify common law torts, 'must be construed as continuations thereof, and not as new enactments.'" *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1091 (citing California Civil Code Section 5 and specifically applying holding to claim for deceit).

For these reasons, the Plaintiff's Section 17200 count fails and must be dismissed.

### A.    Oaktree Has Not Done Anything Unlawful

The "unlawful" prong borrows violations of other laws and treats them as unlawful practices that Section 17200 makes independently actionable. *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 520. Nothing unlawful has been alleged.

### B.    Oaktree Has Not Done Anything Unfair

The "unfair" prong of a Section 17200 claim requires an allegation that Bank's conduct threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition. *Byars v. SCME Mortgage bankers, Inc.* (2003) 29 Cal.4th 1134. This, the Plaintiff has not done

and cannot due.

###   C.   <u>Oaktree Has Not Done Anything Fraudulent</u>

The "fraudulent" prong deals with "any act or practice likely to deceive the public, even if no one is actually deceived." *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 907.   See, also *Committee on Children's Television v. General Foods Corp.* (1983) 35 Cal. 3d 197, 211 (holding that the test of whether a practice is "fraudulent" under Section 17200 is whether "…members of the public are likely to be deceived")

This standard "…implies more than a mere possibility that the [practice] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.  Rather, the phrase indicates that the [practice] is such that it is probable that a significant portion of the general consuming public or targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.* (2003) 105 Cal. App. 4th 496, 500, 508.

There is nothing "fraudulent," as that term is used in Section 17200, that has been alleged here.

Therefore, Count 7 should be dismissed.

## VII.   <u>COUNT 8 FOR UDAAP VIOLATIONS FAILS</u>

Plaintiff's claim for "UDAAP Violations" fail because there is no private right of action for UDAAP violations.  *See, Atiyeh v. Am. Bus. Bank* (C.D. Cal. 2025) 2025 U.S. Dist. LEXIS 37838, * 6, citing to *Deutsche Bank Nat'l Trust Co. v. Fox* (M.D. Fla. 2013) 971 F.Supp.2d 1106, 1120 ("the administration of the Federal Trade Commission Act, including UDAAP, 'is in the hands of the administrative agency and not the private citizen." *Roberts,* 556 F.2d at 361 n. 6. Consequently, Foxx

the private citizen." *Roberts*, 936 F.2d at 304 n. 6. Consequently, Foxx does not have a private action under UDAAP, and Count XV is DISMISSED with prejudice."), *Herrera v. Credit Collection Servs. Comercial* (C.D. Cal. 2024) 2024 U.S. Dist. LEXIS 240295, * 2 ("[T]he Court examined whether Plaintiff sufficiently alleged claims for relief. With respect to the FTC Act violations, the Court determined that Plaintiff cannot bring a § 5 claim because the Ninth Circuit has held that § 5 does not provide a private right of action") and *O'Donnell v. Bank of America, Nat. Ass'n*, (9th Cir. 2013) 504 Fed. App'x 566, 568.

Therefore, Count 8 must be dismissed.

## VIII.   COUNT 9 FOR CFPB REGULATION X (12 C.F.R. § 1024) FAILS

12 C.F.R. Section 1024 is known as Regulation X and was issued by the Bureau of Consumer Financial Protection to implement the Real Estate Settlement Procedures Act ("RESPA").

Here, Plaintiff has only submitted terse legal conclusions, with no facts, to support this purported count.  This requires the granting of this motion in and of itself.  In any event this count fails in its own right.

### A.     Plaintiff Has Not Alleged That She Sent A Proper Qualified Written Request Or Request For Information

Plaintiff has not alleged that she submitted, properly or not, a Qualified Written Request ("QWR") or Request for Information ("RFI") to Oaktree.

As an initial matter, a QWR under RESPA, 12 C.F.R. §§1024.35(a), 1024.36(a) imposes two preconditions that a borrower must satisfy to trigger a response duty. First, the borrower must show that he or she submitted a qualifying QWR regarding the servicing of a

federally related mortgage loan. See 12 U.S.C. § 2605(e)(1)(A), (e)(2). RESPA defines a QWR as a written correspondence that "includes … the name and account of the borrower and includes a statement of the reasons for the belief of the borrower … that the account is in error or provides sufficient detail regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Second, if a borrower submits a qualifying QWR to a loan servicer, the borrower's letter must also request or challenge "information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A), (e)(2). Servicing encompasses "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts ..., and making the payments of principal and interest and such other payments." 12 U.S.C. § 2605(i)(3). As defined, servicing excludes "the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666-67 (9th Cir. 2012).

Documents regarding a claim by Oaktree to its title insurer which was denied is not a document that RESPA requires be produced to a borrower pursuant to a QWR or a RFI.  Allegedly failing to appeal a title insurer's denial of a claim is also something that is not covered by RESPA.

This count fails as a result.

### B.      Plaintiff Has Not Pled That She Properly Submitted A Loss Mitigation Application

12 C.F.R. section 1024.41 enacts loss mitigation procedures under RESPA. The first step is the receipt of a complete loss mitigation application.

12 C.F.R. section 1024.41(b)(1).  Plaintiff has not alleged that she submitted a completeloss mitigation application.

Second, nothing in 12 C.F.R. section 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation application.

### C.    Plaintiff Has Not Pled Damages Caused By An Alleged RESPA Violation

Lastly, in order to establish a violation of RESPA, Plaintiff must plead and prove "facts showing how the plaintiff suffered actual harm due to defendants' failure to respond to a qualified written request." *See* 12 U.S.C. § 2605(f)(1)(A); *Fullmer v. JPMorgan Chase Bank, N.A.*, No. 2:09-cv-01037-JFM, 2010 WL 95206, at *6 (E.D. Cal. Jan. 6, 2010); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) (explaining "there must be a 'causal link' between the alleged [RESPA] violation and the damages" [quoting *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001) ]); cf. *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 511 (8th Cir. 2012). Plaintiff has failed to allege that he sustained any actual damages resulting from any alleged violation of RESPA by SPS.

Here, Plaintiff fails to plead that any such damages were the "direct result of [Oaktree's purported] failure to comply" with RESPA. *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010). "A claim of a RESPA violation cannot survive a motion to dismiss when the plaintiff does not plead facts showing how the plaintiff suffered actual harm due to defendants' failure to respond to a qualified written response." *Fullmer v. JPMorgan Chase Bank, N.A.*, No. 2:09-cv-01037-JFM, 2010 WL 95206, at *6 (E.D. Cal. Jan. 6, 2010); *see* also *Singh v. Wash. Mut. Bank*, No. 3:09-cv-02771-MMC, 2009 WL 2588885, at *5 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim where plaintiffs "failed to allege any facts in support of their

RESPA claim where plaintiffs' failed to allege any facts in support of their conclusory allegation that '[a]s a result' of defendants' failure to respond, defendants 'are liable for actual damages, costs, and attorney fees' "). Accordingly, a "plaintiff's failure to allege a pecuniary loss attributable to a servicer's failure to respond to QWRs has therefore been found to be fatal to the claim." *Robinson v. Bank of Am., N.A.*, No. 3:21-cv-00110-AJB-(DEBx), 2022 WL 837073, at *7 (S.D. Cal. Mar. 21, 2022).

Plaintiff concealed and failed to disclose the Resnick Deed of Trust to and the escrow agent failed to comply with the escrow instructions as a result. Plaintiff's concealment of the loan secured by the Resnick Deed of Trust does not result in Oaktree having purportedly causing her any damages. Nor does the failure to provide title claim related documents.

## IX.    COUNT 10 FOR FAILURE TO MITIGATE DAMAGES FAILS

It was held in *Valle De Oro Bank v. Gamboa* (1994) 26 Cal.App.4th 1686, 1691, that:

> "The doctrine of mitigation of damages holds that "[a] plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any  losses which could have been thus avoided. (cits. omit.)"

The alleged failure to mitigate damages is an affirmative defense raised by a defendant to claims by a Plaintiff.  It is not a cause of action.

Count 10 must be dismissed.

## X.    COUNT 11 FOR PUNITIVE DAMAGES FAILS

Punitive damages is a remedy, not a cause of action.  See, *569 East County Boulevard LLC v. Backcountry Against The Dump, Inc.* (2016) 6 Cal.App.5th 426, 429, fn. 3 and *Hilliard v. A.H. Robins Co.* (1983) 148 Cal.App.3d 374, 391.

Count 11 fails and must be dismissed.

**Jason E. Goldstein**
*Partner*
Orange County Office
**T** (949) 224-6235
**C** (213) 379-4756

---

**From:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Sent:** Thursday, February 5, 2026 10:14 AM
**To:** Audrey Little <audreylittle458@gmail.com>
**Cc:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Subject:** RE: URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and Interim Standstill (5:26-cv-00402) [IMAN-BUCHALTER.FID6170674]

Hi Audrey:

Oaktree will not so stipulate. Oaktree will be moving to dismiss each cause of action alleged against it because they fail as a matter of law. I will send you an outline of why and then I will give you a call to discuss today.

Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**Jason E. Goldstein**
*Partner*
Orange County Office
**T** (949) 224-6235
**C** (213) 379-4756

---

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, February 5, 2026 10:09 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and Interim Standstill (5:26-cv-00402)

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

Subject
URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and Interim Standstill
(5:26-cv-00402)

Jason,

I am writing as a final meet-and-confer effort to narrow the issues created by removal and to prevent imminent, date-certain harm. If Oaktree is willing, we can avoid unnecessary motion practice and restore an orderly state-court path for the already-scheduled injunction posture.

As you are aware, Oaktree's responsive pleading to the First Amended Complaint (FAC) is due today. For the avoidance of doubt, I do not consent to any extension of time to respond to the FAC. My proposal below eliminates any need for an extension by allowing Oaktree to respond to the SAC instead.

**Proposed stipulation (three parts):**

1. **Stipulation to Remand.**
   Oaktree stipulates to remand this action to Riverside Superior Court.

2. **Pleadings posture (SAC).**
   Oaktree stipulates that Plaintiff may file the Second Amended Complaint (SAC) (the operative pleading I provided on January 23), and that any response will be directed to the SAC (not the superseded FAC).

3. **Interim standstill to preserve the status quo.**
   Oaktree agrees to a temporary standstill on billing/collection/enforcement activity and adverse credit furnishing relating to the challenged loan through March 10, 2026, or until the state court hears the injunction request, whichever occurs last, to avoid a preventable "jurisdictional gap" while the forum issue is resolved.

If you are not willing to stipulate, I will file a short supplemental notice with the Court addressing the procedural defects and prejudice from the timing of removal in relation to the state-court injunction schedule, and I will request appropriate relief (including fees/costs where authorized).

**Deadline:** Please confirm by 12:00 PM (PT) today whether Oaktree will stipulate to the three-part proposal above.

Regards,
Audrey Little

Plaintiff, Pro SeRegards,

Audrey Little
audreylittle458@gmail.com

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

From: **Goldstein, Jason E.**  jgoldstein@buchalter.com
Subject: RE: Meet and Confer Regarding Motion To Strike Punitive Damages Allegations In FAC
Date: February 5, 2026 at 5:37 PM
To: Audrey Little  audreylittle458@gmail.com
Cc: Goldstein, Jason E.  jgoldstein@Buchalter.com

JG

I am calling now.

## Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, February 5, 2026 5:36 PM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Re: Meet and Confer Regarding Motion To Strike Punitive Damages Allegations In FAC [IMAN-BUCHALTER.FID6170674]

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

I HAVE BBEN WAITING HERE AND CHANGED MY SCHEDULE NOW. YOU DONT WANT TO TALK
Regards,

Audrey Little
audreylittle458@gmail.com

On Feb 5, 2026, at 5:15 PM, Goldstein, Jason E. <jgoldstein@buchalter.com> wrote:

Hi Audrey:

Ok.  No need to talk then.

Also, sometime next week I anticipate filing my lawsuit against Rocket. I will

Also, sometime next week I anticipate filing my lawsuit against Rocket. I will send you a copy.

## Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

## Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, February 5, 2026 5:00 PM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Subject:** Re: Meet and Confer Regarding Motion To Strike Punitive Damages Allegations In FAC [IMAN-BUCHALTER.FID6170674]

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

File what you want to
Warmest Regards,
Audrey

Sent from my iPhone

On Feb 5, 2026, at 4:54 PM, Goldstein, Jason E.
<jgoldstein@buchalter.com> wrote:

Great.  530 it is.

I am filing two motions.  1 to dismiss.  1 as to punitive damages.  If the motion to dismiss is granted, it will moot the second motion.

## Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com I Bio I LinkedIn

## Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com I Bio I LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, February 5, 2026 4:47 PM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Re: Meet and Confer Regarding Motion To Strike Punitive Damages Allegations In FAC [IMAN-BUCHALTER.FID6170674]

This message has originated from an **External Email**. Audrey Little

This message has originated from an **External Email**. Audrey Little
<audreylittle458@gmail.com>:

I thought you were filing a motion to dismiss the entire complaint?
I can do 5:30. But that is the latest at this last notice.
Regards,

Audrey Little
audreylittle458@gmail.com

On Feb 5, 2026, at 3:46 PM, Goldstein, Jason E.
<jgoldstein@buchalter.com> wrote:

Audrey:

For the reasons stated below, your punitive damages
allegations against Oaktree fail and are subject to a
motion to strike.

Are you available at 5pm to discuss the below?

**A.     Since The Counts For
Which Punitive Damages
Are Sought Fail, The
Punitive Damages
Allegations And Prayer Must
Be Stricken**

For all of the reasons stated in the
concurrently filed Motion to Dismiss the
FAC, which is incorporated herein by this
reference in its entirety as though set forth
in full, the causes of action which seek
punitive damages fail. Therefore, there is
no basis for any award of punitive

damages against Oaktree and the punitive damages allegations and prayer must be stricken.

## B.    The Punitive Damages Allegations And Prayer Are Insufficiently Pled And Must Be Stricken

Punitive damages are disfavored in California.   California courts have ruled that such damages should be awarded with the greatest of caution and only in the clearest of cases.  *Henderson v. Sec. Nat. Bank* (1977) 72 Cal.App.3d 764, 771.

In *G.D. Searle & Co. v. Sup. Ct.* (1975) 49 Cal. App. 3d 22, 29, the Court of Appeal discussed the possible grounds for punitive damages and pointed out that, like fraud, actions for punitive damages must be specifically pled: "Notwithstanding relaxed pleading criteria, certain tortious injuries demand firm allegations.  Vague, conclusory allegations of fraud or falsity may not be rescued by the rule of liberal construction."

Detailed factual allegations are necessary because "[w]hen a defendant must produce evidence in defense of an

exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him." *Id.* Thus, "[c]onclusory characterization of a defendant's conduct as intentional, willful and fraudulent is patently insufficient statement of 'oppression, fraud, malice, express or implied,' within the meaning of section 3294." *See Brousseau v. Jarrett* (1977) 73 Cal. App. 3d 864, 872 [holding that conclusory allegations that a defendant engaged in certain conduct "intentionally, willfully, fraudulently, and with a wanton and reckless disregard" held "patently insufficient" to entitle a plaintiff to punitive damages]; *Cohen v. Groman Mortuary* (1964) 231 Cal.App.2d 1, 8 [stating that allegations of "wanton" or "willful disregard" are nothing more than legal conclusions]; *see also Hilliard v. A.H. Robbins Co.* (1983) 148 Cal.App.3d 374 [finding that mere allegation that intentional tort was committed is insufficient to warrant punitive damages].

In *Smith v. Sup. Ct.* (1992) 10 Cal.App.4th 1033, 1035-36, the court

struck a punitive damage claim where the plaintiff alleged that:

> "Defendants . . . misrepresented and fraudulently concealed the true nature of the representation being afforded by . . . defendants and that Plaintiff's legal interests were being protected, when in fact they were not. The defendant's conduct . . . was intentional, knowing, malicious, fraudulent, false and deceitful. Said acts and omissions were undertaken with a conscious disregard of the interests and rights of plaintiff and to the benefit of defendants."

The *Smith* court determined that the above allegations were wholly inadequate to support a punitive damages claim because they were only conclusory allegations. *See Id.* at 1042.

Here, in the FAC, the Plaintiff alleges no facts which show how Oaktree purportedly acted with oppression, fraud or

malice.

Without specific facts showing malicious, fraudulent or oppressive conduct by Oaktree, the allegations and prayer for punitive damages fail as a matter of law and must be stricken.

## C. The Punitive Damage Allegations Fail To Comply With The *Civil Code* § 3294 Requirement For Corporate Defendants And Must Be Stricken

A complainant which attempts to allege a claim for punitive damages against a corporate entity <u>must satisfy</u> the requirements of *Civil Code* § 3294(b) which requires an allegation that, "the acts of employees of defendant corporation were done with the knowledge or under the express direction or ratification of an officer, director or managing agent of the corporation . . ." *Scannell v. County of Riverside* (1984) 152 Cal.App.3d 596 (striking deficient punitive damage allegations against a corporation).

The California Supreme Court in *White v. Ultramar* (1999) 21 Cal.4th 563,

572, held that the drafters of *Civil Code* §3294(b)'s:

> " . . . **goals were to avoid imposing punitive damages on employers who were merely negligent or reckless and to distinguish ordinary respondeat superior liability from corporate liability for punitive damages** . . . Section 3294 is no longer silent on who may be responsible for imputing punitive damages to a corporate employer. **For corporate punitive damages liability, section 3294, subdivision (b), requires that the wrongful act giving rise to the exemplary damages be committed by an 'officer, director, or managing agent**.'"

In *Grieves v. Sup. Ct.* (1984) 157 Cal.App.3d 159, 168, the Court of Appeal affirmed the sustaining of a demurrer in favor of a corporate defendant. Addressing the claim for punitive damages against the

corporate defendant, the court stated:

> "[W]e fail to see how any of those allegations sets forth facts to show [corporate defendant's] advance knowledge, authorization or ratification. Also, absent from the complaint is any assertion an officer, director, managing agent of corporate defendant] was personally responsible for any of the acts allegedly performed by [corporate defendant]."

Further, the court in *J. R. Norton Co. v. General Teamsters, Warehousemen and Helpers Union* (1989) 208 Cal.App.3d 430, 445, held that:

> "A corporation may be held liable for punitive damages for the acts of its agents and employees when the act is motivated by actual malice or done under circumstances amounting
> to oppression providing that
> the act is done with the

the act is done with the knowledge or under the direction of corporate officials having the power to bind the corporation."

Plaintiff's factually devoid punitive damage allegations do <u>not</u> satisfy the Section 3294(b) standard <u>and</u> are nothing more than legal conclusions with no factual support. Therefore, the punitive damages allegations and prayer are not drawn in conformity with the laws of the State of California and must be stricken.

Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com I Bio I LinkedIn

**From:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Sent:** Thursday, February 5, 2026 3:38 PM
**To:** Audrey Little <audreylittle458@gmail.com>
**Cc:** Goldstein, Jason E. <jgoldstein@Buchalter.com>; Hovsepyan, Richard <rhovsepyan@buchalter.com>
**Subject:** Meet and Confer Regarding Motion To Dismiss FAC [IMAN-BUCHALTER.FID6170674]

Audrey:

For the reasons stated below, each of your counts

For the reasons stated below, each of your counts against Oaktree fail as a matter of law. You should agree to dismiss your First Amended Complaint as a result for the reasons stated below.

Are you available at 5pm to discuss the below?

## I.  THE COURT HAS DISCRETION TO DISMISS THE FAC, AND EACH AND EVERY PURPORTED CAUSE OF ACTION FOR CLAIM FOR RELIEF CONTAINED THEREIN DUE TO A LACK OF PLAUSIBILITY

While a Complaint only needs to provide a short and plain statement for relief, the actual standard required for pleading civil complaints in federal court requires that: 1) the plaintiff provide grounds for relief which are "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do;" and 2) factual allegations which "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 555. *See also*, *Williston Basin Interstate Pipeline Co. v. Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean*

*Geological Formation* (9th Cir. 2008) 524 F.3d 1090, 1096 (citing *Twombly* [affirming dismissal of complaint where complaint failed to state a claim to relief that was plausible on its face]).

In fact, a plaintiff must show that it has a plausible entitlement to relief. *See Twombly,* 550 U.S. at 559 and 570:

> "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process . . . [b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."

The United States Supreme Court confirmed the plausibility standard for pleading civil complaints in *Ashcroft v. Iqbal* (2009) 129 S. Ct. 1937, 1949-1950 when it held that:

> "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, "to state a claim for relief that is plausible on its face." (citation omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. (citation omitted). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (citation omitted). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitled to relief.'" (citation omitted).

It was further held in *Iqbal* that: "only a complaint that states a plausible claim for relief

survives a motion to dismiss. (citation omitted). Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. (citation omitted). But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" - - "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2)." *Iqbal*, 129 S. Ct. at 1949-1950. [Emphasis added]

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism whereby a claim may be dismissed where there is a lack of a cognizable theory or where there is an absence of sufficient facts. *See Ballistereri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). Although a Court must assume that the plaintiff's allegations are true on a motion to

dismiss, the Court may disregard conclusory allegations and unreasonable inferences. *See also*, *Moss v. U.S. Secret Service* (9th Cir. 2009) 572 F.3d 962, 971, citing to *Sprewell v. Golden State Warriors* (9th Cir. 2001) 266 F.3d 979, 988 (stating that courts are not required to make "unreasonable inferences" or "unwarranted deductions of fact" to save a complaint from a motion to dismiss).

In addition, the Court need not accept as true allegations that contradict facts which may be judicially noticed (*Mack v. South Bay Beer Distributors* (9th Cir. 1986) 798 F.2d 1279, 1281) or which are contradicted by facts established by exhibits attached to the Complaint. (*Durning v. First Boston Corp.* (9th Cir. 1987) 815 F.2d 1265, 1267). See also, *Davis v. HSBC Bank Nevada, N.A.* (9th Cir. 2012) 691 F.3d 1152, 1160 (holding that courts may incorporate by reference documents referred to or identified in a complaint but not attached to it).

As discussed above, and as will be

further discussed below, Plaintiff has failed to allege any plausible claims against Oaktree.

## II.    COUNT 1 FOR NEGLIGENCE FAILS

The elements of a cause of action for negligence are: (1) legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Hoyem v. Manhattan* (1978) 22 Cal.3d 508, 514.

### A.    No Duty

It is the law in California that a lender does <u>not</u> owe its borrower a duty of care when it does not exceed its conventional role as a money lender. As the Court of Appeal recently held in *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 63:

> "**Lenders and borrowers operate at arm's length.** (*Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 466 . . .; *Union Bank v.*

*Superior Court* (1995) 31 Cal.App.4th 573, 579 . . . ; *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476 . . . , disapproved on other grounds in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1182 . . . .) **"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."** (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096)." [Emphasis added]

It has long been regarded as "axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor." "A debt is not a trust and there is

creditor. A debt is not a trust and there is not a fiduciary relation between a debtor and creditor as such." The same principle should apply with even greater clarity to the relationship between a bank and its loan customers. *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476, quoting *Morse v. Crocker Nat'l. Bank* (1983) 142 Cal.App.3d 228, 232 and *Downey v. Humphreys* (1951) 102 Cal.App.2d 323, 332.

Here, there is no duty as a matter of law and the negligence count fails as a matter of law.

## III. COUNT 3 FOR NEGLIGENT MISREPRESENTATION FAILS

The elements of a cause of action for negligent misrepresentation are: (1) a false statement of a material fact that the defendant honestly believes to be true, but made without reasonable grounds for such belief; (2) made with the intent to induce reliance; (3) reasonable reliance; and (4) damages. *Century Sur. Co. v. Crosby Ins., Inc.,* (2004) 124 Cal.App.4th 116, 129. Each element in a cause of action for negligent misrepresentation must be

negligent misrepresentation must be factually and specifically alleged. *Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.

Each element in a cause of action for negligent misrepresentation must be factually and specifically alleged. *Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.

### A.    The Negligent Misrepresentation Cause Of Action Fails Due To Lack Of Duty

Responsibility for an alleged negligent misrepresentation requires the existence of a duty. *Bock v. Hansen* (2014) 225 Cal.App.4th 215, 229. See also, *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1332 (holding that the question of duty is relevant in cases where a cause of action for negligent misrepresentation is alleged). "Whether a legal duty exists in a given case is primarily a question of law." *Wylie v. Gresch* (1987) 191 Cal.App.3d 412, 416.   Here, there is no

duty of care present.

### B.     The Count Lacks Specificity

A plaintiff's burden in asserting a misrepresentation claim against a corporation, as opposed to an individual, is even greater. *Lazar v. Sup. Ct.,* (1996) 12 Cal.4th 631, 645.  In such a case, the Plaintiff must allege the <u>name of the person</u> who made the allegedly fraudulent representations, <u>their authority to speak</u>, <u>what they said or wrote</u> and <u>when it was said or written</u>. *Id*.

This has not been done here.  The entire count fails.

## IV.    COUNT 4 FOR FRAUDULENT CONCEALMENT FAILS

"The elements of a claim for fraudulent concealment require the plaintiff to show that: '(1) the defendant . . . concealed or suppressed a material fact, (2) the defendant [was] under a duty to disclose the fact to the plaintiff, (3) the defendant . .. intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff [was] unaware of the fact and would not have acted as he did if he had known of the

acted as he did if he had known of the concealed or suppressed fact, and (5) as result of the concealment or suppression of face, the plaintiff must have sustained damage.' (cit. omit.)" *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal. App. 4th 1105.

Fraud actions have been classed as "disfavored," and are subject to strict requirements of particularity in pleading. 5 Witkin, *California Procedure* (5th Ed., 2008) Pleading § 711, p. 126. Therefore, each of the elements of a fraud cause of action must be alleged in full, factually and specifically, since general pleadings of legal conclusions are insufficient to state a cause of action. *Roberts v. Ball, Hunt, Brown & Barowitz* (1976) 57 Cal.App.3d 104, 109. Fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud, and it is not sufficient to allege the elements in general terms or in terms which amount to mere conclusions. *Campbell v. Clark* (1958) 159 Cal.App.2d 439.

The particularity requirement

necessitates pleading facts which show how, when, where and to whom and by what means the representations were tendered. In *Stansfield v. Starkey* (1990) 220 Cal.App.3d 59, it was held that a demurrer was properly sustained without leave to amend where the plaintiff failed to specifically allege a Fraud claim. In so ruling, the court noted that the rationale for the strict pleading requirement is not merely notice to the defendant. The idea seems to be that the allegations of Fraud involve a serious attack of character, and fairness to the defendant demands that he should have the fullest possible details of the charge in order to prepare his defense. *Id.* at 73. Thus, liberal rules of construction will not usually be invoked to sustain a pleading that is defective with respect to any one of the required elements of a fraud cause of action. *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331.

In addition, as stated above, a plaintiff's burden in asserting a misrepresentation claim against a corporation, as opposed to an

individual, is even greater. *Lazar v. Sup. Ct.,* (1996) 12 Cal.4th 631, 645. In such a case, the Plaintiff must allege the <u>name of the person</u> who made the allegedly fraudulent representations, <u>their authority to speak</u>, <u>what they said or wrote</u> and <u>when it was said or written</u>. *Id.*

Here, the FAC is devoid of any particularity and does not identify any person which purportedly made a misrepresentation of a concealment. This is fatal.

## V. <u>COUNT 5 FOR CIVIL CONSPIRACY FAILS</u>

There is no cause of action for civil conspiracy. Instead, it is a legal doctrine that imposes liability on persons who did not commit the tort, but participated in its plan or design. *Klistoff v. Sup. Ct.* (2007) 157 Cal.App.4th 469, 479.

## VI. <u>COUNT 7 FOR UNFAIR BUSINESS PRACTICES FAILS</u>

*Business & Professions Code* § 17200 ("Section 17200") provides civil remedies for unfair competition, which it

defines as "any unlawful, unfair or fraudulent business act or practice." Section 17200 was designed to protect consumers and competitors from unfair business practices. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal. 4th 163, 180 (1999). The statute "is not an all-purpose substitute for a tort or contract action." *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173. As will be discussed below, this purported claim for relief fails as a matter of law.

Here, the Plaintiff bases her Section 17200 claims on the prior counts discussed above. This is improper because common law claims and principles cannot serve as a basis for a violation of the "unlawful" prong of Section 17200 claim. *See Textron Financial Corp. v. National Fire Ins. Co. of Pittsburgh* (2004) 118 Cal.App.4th 1061, 1072 (common law claim for fraud could not serve as the "unlawful" act supporting a claim under Section 17200). Even "[p]rovisions of the Civil Code that are substantially the same as the common

are substantially the same as the common law, such as the provisions that codify common law torts, 'must be construed as continuations thereof, and not as new enactments.'" *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1091 (citing California Civil Code Section 5 and specifically applying holding to claim for deceit).

For these reasons, the Plaintiff's Section 17200 count fails and must be dismissed.

## A.   Oaktree Has Not Done Anything Unlawful

The "unlawful" prong borrows violations of other laws and treats them as unlawful practices that Section 17200 makes independently actionable. *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 520.   Nothing unlawful has been alleged.

## B.   Oaktree Has Not Done Anything Unfair

The "unfair" prong of a Section 17200 claim requires an allegation that Bank's conduct threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws

because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition. *Byars v. SCME Mortgage bankers, Inc.* (2003) 29 Cal.4th 1134. This, the Plaintiff has not done and cannot due.

## C.   Oaktree Has Not Done Anything Fraudulent

The "fraudulent" prong deals with "any act or practice likely to deceive the public, even if no one is actually deceived." *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 907. See, also *Committee on Children's Television v. General Foods Corp.* (1983) 35 Cal. 3d 197, 211 (holding that the test of whether a practice is "fraudulent" under Section 17200 is whether "…members of the public are likely to be deceived")

This standard "…implies more than a mere possibility that the [practice] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the [practice] is such that it is probable that a significant portion of the

is probable that a significant portion of the general consuming public or targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.* (2003) 105 Cal. App. 4th 496, 500, 508.

There is nothing "fraudulent," as that term is used in Section 17200, that has been alleged here.

Therefore, Count 7 should be dismissed.

## VII.   COUNT 8 FOR UDAAP VIOLATIONS FAILS

Plaintiff's claim for "UDAAP Violations" fail because there is no private right of action for UDAAP violations. *See, Atiyeh v. Am. Bus. Bank* (C.D. Cal. 2025) 2025 U.S. Dist. LEXIS 37838, * 6, citing to *Deutsche Bank Nat'l Trust Co. v. Fox* (M.D. Fla. 2013) 971 F.Supp.2d 1106, 1120 ("the administration of the Federal Trade Commission Act, including UDAAP, 'is in the hands of the administrative agency and not the private citizen." *Roberts*, 556 F.2d at 361 n. 6. Consequently, Foxx does not have a

private action under UDAAP, and Count XV is DISMISSED with prejudice."), *Herrera v. Credit Collection Servs. Comercial* (C.D. Cal. 2024) 2024 U.S. Dist. LEXIS 240295, * 2 ("[T]he Court examined whether Plaintiff sufficiently alleged claims for relief. With respect to the FTC Act violations, the Court determined that Plaintiff cannot bring a § 5 claim because the Ninth Circuit has held that § 5 does not provide a private right of action") and *O'Donnell v. Bank of America, Nat. Ass'n*, (9th Cir. 2013) 504 Fed. App'x 566, 568.

Therefore, Count 8 must be dismissed.

## VIII.    COUNT 9 FOR CFPB REGULATION X (12 C.F.R. § 1024) FAILS

12 C.F.R. Section 1024 is known as Regulation X and was issued by the Bureau of Consumer Financial Protection to implement the Real Estate Settlement Procedures Act ("RESPA").

Here, Plaintiff has only submitted terse legal conclusions, with no facts, to

support this purported count.  This requires the granting of this motion in and of itself.  In any event this count fails in its own right.

        **A.**     <u>**Plaintiff Has Not Alleged That She Sent A Proper Qualified Written Request Or Request For Information**</u>

Plaintiff has not alleged that she submitted, properly or not, a Qualified Written Request ("QWR") or Request for Information ("RFI") to Oaktree.

As an initial matter, a QWR under RESPA, 12 C.F.R. §§1024.35(a), 1024.36(a) imposes two preconditions that a borrower must satisfy to trigger a response duty. First, the borrower must show that he or she submitted a qualifying QWR regarding the servicing of a federally related mortgage loan. See 12 U.S.C. § 2605(e)(1)(A), (e)(2). RESPA defines a QWR as a written correspondence that "includes … the name and account of the borrower and includes a statement of the reasons for the belief of the borrower … that the account is in error or provides

sufficient detail regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Second, if a borrower submits a qualifying QWR to a loan servicer, the borrower's letter must also request or challenge "information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A), (e)(2). Servicing encompasses "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts ..., and making the payments of principal and interest and such other payments." 12 U.S.C. § 2605(i)(3). As defined, servicing excludes "the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666-67 (9th Cir. 2012).

Documents regarding a claim by Oaktree to its title insurer which was denied is not a document that RESPA requires be produced to a borrower pursuant to a QWR or a RFI. Allegedly

failing to appeal a title insurer's denial of a claim is also something that is not covered by RESPA.

This count fails as a result.

### B. Plaintiff Has Not Pled That She Properly Submitted A Loss Mitigation Application

12 C.F.R. section 1024.41 enacts loss mitigation procedures under RESPA. The first step is the receipt of a complete loss mitigation application. 12 C.F.R. section 1024.41(b)(1). Plaintiff has not alleged that she submitted a completeloss mitigation application.

Second, nothing in 12 C.F.R. section 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation application.

### C. Plaintiff Has Not Pled Damages Caused By An Alleged RESPA Violation

Lastly, in order to establish a violation of RESPA, Plaintiff must plead and prove "facts showing how the plaintiff suffered actual harm due to defendants' failure to respond to a qualified written request." *See* 12

U.S.C. § 2605(f)(1)(A); *Fullmer v. JPMorgan Chase Bank, N.A.*, No. 2:09-cv-01037-JFM, 2010 WL 95206, at *6 (E.D. Cal. Jan. 6, 2010); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) (explaining "there must be a 'causal link' between the alleged [RESPA] violation and the damages" [quoting *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001)]); cf. *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 511 (8th Cir. 2012). Plaintiff has failed to allege that he sustained any actual damages resulting from any alleged violation of RESPA by SPS.

Here, Plaintiff fails to plead that any such damages were the "direct result of [Oaktree's purported] failure to comply" with RESPA. *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010). "A claim of a RESPA violation cannot survive a motion to dismiss when the plaintiff does not plead facts showing how the plaintiff suffered actual harm due to defendants' failure to respond to a qualified written response." *Fullmer v. JPMorgan Chase Bank, N.A.*, No. 2:09-cv-01037-JFM, 2010 WL 95206, at *6 (E.D. Cal. Jan. 6,

2010); *see* also *Singh v. Wash. Mut. Bank*, No. 3:09-cv-02771-MMC, 2009 WL 2588885, at *5 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim where plaintiffs "failed to allege any facts in support of their conclusory allegation that '[a]s a result' of defendants' failure to respond, defendants 'are liable for actual damages, costs, and attorney fees' "). Accordingly, a "plaintiff's failure to allege a pecuniary loss attributable to a servicer's failure to respond to QWRs has therefore been found to be fatal to the claim." *Robinson v. Bank of Am., N.A.*, No. 3:21-cv-00110-AJB-(DEBx), 2022 WL 837073, at *7 (S.D. Cal. Mar. 21, 2022).

Plaintiff concealed and failed to disclose the Resnick Deed of Trust to and the escrow agent failed to comply with the escrow instructions as a result. Plaintiff's concealment of the loan secured by the Resnick Deed of Trust does not result in Oaktree having purportedly causing her any damages. Nor does the failure to provide title claim related documents.

## IX.    <u>COUNT 10 FOR FAILURE TO MITIGATE DAMAGES FAILS</u>

It was held in *Valle De Oro Bank v. Gamboa* (1994) 26 Cal.App.4th 1686, 1691, that:

> "The doctrine of mitigation of damages holds that "[a] plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided. (cits. omit.)"

The alleged failure to mitigate damages is an affirmative defense raised by a defendant to claims by a Plaintiff. It is not a cause of action.

Count 10 must be dismissed.

## X.   COUNT 11 FOR PUNITIVE DAMAGES FAILS

Punitive damages is a remedy, not a cause of action. See, *569 East County Boulevard LLC v. Backcountry Against The Dump, Inc.* (2016) 6 Cal.App.5th 426, 429, fn. 3 and *Hilliard v. A.H. Robins Co.* (1983) 148 Cal.App.3d 374, 391.

Count 11 fails and must be dismissed.

**Jason E. Goldstein**
*Partner*
Orange County Office
**T** (949) 224-6235
**C** (213) 379-4756

---

**From:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Sent:** Thursday, February 5, 2026 10:14 AM
**To:** Audrey Little <audreylittle458@gmail.com>
**Cc:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Subject:** RE: URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and Interim Standstill (5:26-cv-00402) [IMAN-BUCHALTER.FID6170674]

Hi Audrey:

Oaktree will not so stipulate. Oaktree will be moving to dismiss each cause of action alleged against it because they fail as a matter of law. I will send you an outline of why and then I will give you a call to discuss today.

Buchalter LLP

---

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

---

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com I Bio I LinkedIn

**Jason E. Goldstein**
*Partner*
Orange County Office
**T** (949) 224-6235
**C** (213) 379-4756

---

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, February 5, 2026 10:09 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>

**Subject:** URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and Interim Standstill (5:26-cv-00402)

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

Subject
URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and Interim Standstill (5:26-cv-00402)

Jason,

I am writing as a final meet-and-confer effort to narrow the issues created by removal and to prevent imminent, date-certain harm. If Oaktree is willing, we can avoid unnecessary motion practice and restore an orderly state-court path for the already-scheduled injunction posture.

As you are aware, Oaktree's responsive pleading to the First Amended Complaint (FAC) is due today. For the avoidance of doubt, I do not consent to any extension of time to respond to the FAC. My proposal below eliminates any need for an extension by allowing Oaktree to respond to the SAC instead.

**Proposed stipulation (three parts):**

1. **Stipulation to Remand.**
   Oaktree stipulates to remand this action to Riverside Superior Court.

2. **Pleadings posture (SAC).**
   Oaktree stipulates that Plaintiff may file the Second Amended Complaint (SAC) (the operative pleading I provided on January 23), and that any response will be directed to the SAC (not the superseded FAC).

3. **Interim standstill to preserve the status quo.**
   Oaktree agrees to a temporary standstill on billing/collection/enforcement activity and adverse credit furnishing relating to the challenged loan through March 10, 2026, or until the state court hears the injunction

request, whichever occurs last, to avoid a preventable "jurisdictional gap" while the forum issue is resolved.

If you are not willing to stipulate, I will file a short supplemental notice with the Court addressing the procedural defects and prejudice from the timing of removal in relation to the state-court injunction schedule, and I will request appropriate relief (including fees/costs where authorized).

**Deadline:** Please confirm by 12:00 PM (PT) today whether Oaktree will stipulate to the three-part proposal above.

Regards,
Audrey Little

Plaintiff, Pro SeRegards,

Audrey Little
audreylittle458@gmail.com

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

**From:** **Goldstein, Jason E.** jgoldstein@buchalter.com
**Subject:** RE: Meet and Confer Regarding Motion To Strike Punitive Damages Allegations In FAC
**Date:** February 5, 2026 at 4:45 PM
**To:** Audrey Little audreylittle458@gmail.com
**Cc:** Goldstein, Jason E. jgoldstein@Buchalter.com



My apologies.  I now cannot do 5pm.  Can you do 530pm?

## Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, February 5, 2026 4:44 PM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** Re: Meet and Confer Regarding Motion To Strike Punitive Damages Allegations
In FAC [IMAN-BUCHALTER.FID6170674]

This message has originated from an **External Email**. Audrey Little <audreylittle458@gmail.com>:

Sure

Regards,

Audrey Little
audreylittle458@gmail.com

On Feb 5, 2026, at 3:46 PM, Goldstein, Jason E. <jgoldstein@buchalter.com>
wrote:

Audrey:

For the reasons stated below, your punitive damages allegations against
Oaktree fail and are subject to a motion to strike.

Are you available at 5pm to discuss the below?

### A.     Since The Counts For Which Punitive Damages Are Sought Fail, The Punitive Damages Allegations And Prayer Must Be Stricken

For all of the reasons stated in the concurrently filed Motion to Dismiss the FAC, which is incorporated herein by this reference in its entirety as though set forth in full, the causes of action which seek punitive damages fail. Therefore, there is no basis for any award of punitive damages against Oaktree and the punitive damages allegations and prayer must be stricken.

### B.     The Punitive Damages Allegations And Prayer Are Insufficiently Pled And Must Be Stricken

Punitive damages are disfavored in California. California courts have ruled that such damages should be awarded with the greatest of caution and only in the clearest of cases. *Henderson v. Sec. Nat. Bank* (1977) 72 Cal.App.3d 764, 771.

In *G.D. Searle & Co. v. Sup. Ct.* (1975) 49 Cal. App. 3d 22, 29, the Court of Appeal discussed the possible grounds for punitive damages and pointed out that, like fraud, actions for punitive damages must be specifically pled: "Notwithstanding relaxed pleading criteria, certain tortious injuries demand firm allegations.    Vague, conclusory allegations of fraud or falsity may not be rescued by the rule

of liberal construction."

Detailed factual allegations are necessary because "[w]hen a defendant must produce evidence in defense of an exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him." *Id.* Thus, "[c]onclusory characterization of a defendant's conduct as intentional, willful and fraudulent is patently insufficient statement of 'oppression, fraud, malice, express or implied,' within the meaning of section 3294." *See Brousseau v. Jarrett* (1977) 73 Cal. App. 3d 864, 872 [holding that conclusory allegations that a defendant engaged in certain conduct "intentionally, willfully, fraudulently, and with a wanton and reckless disregard" held "patently insufficient" to entitle a plaintiff to punitive damages]; *Cohen v. Groman Mortuary* (1964) 231 Cal.App.2d 1, 8 [stating that allegations of "wanton" or "willful disregard" are nothing more than legal conclusions]; *see also Hilliard v. A.H. Robbins Co.* (1983) 148 Cal.App.3d 374 [finding that mere allegation that intentional tort was committed is insufficient to warrant punitive damages].

In *Smith v. Sup. Ct.* (1992) 10 Cal.App.4th 1033, 1035-36, the court struck a punitive damage claim where the plaintiff alleged that:

> "Defendants . . . misrepresented and fraudulently concealed the true nature of the representation being afforded by . . . defendants and that Plaintiff's legal interests were being protected,

when in fact they were not. The defendant's conduct . . . was intentional, knowing, malicious, fraudulent, false and deceitful. Said acts and omissions were undertaken with a conscious disregard of the interests and rights of plaintiff and to the benefit of defendants."

The *Smith* court determined that the above allegations were wholly inadequate to support a punitive damages claim because they were only conclusory allegations. *See Id.* at 1042.

Here, in the FAC, the Plaintiff alleges no facts which show how Oaktree purportedly acted with oppression, fraud or malice.

Without specific facts showing malicious, fraudulent or oppressive conduct by Oaktree, the allegations and prayer for punitive damages fail as a matter of law and must be stricken.

### C.    The Punitive Damage Allegations Fail To Comply With The *Civil Code* § 3294 Requirement For Corporate Defendants And Must Be Stricken

A complainant which attempts to allege a claim for punitive damages against a corporate entity must satisfy the requirements of *Civil Code* § 3294(b) which requires an allegation that, "the acts of employees of defendant corporation were done with the knowledge or under the express direction or ratification of an officer, director or managing agent of the corporation . . ." *Scannell v. County of*

*Riverside* (1984) 152 Cal.App.3d 596 (striking deficient punitive damage allegations against a corporation).

The California Supreme Court in *White v. Ultramar* (1999) 21 Cal.4th 563, 572, held that the drafters of *Civil Code* §3294(b)'s:

> " . . . **goals were to avoid imposing punitive damages on employers who were merely negligent or reckless and to distinguish ordinary respondeat superior liability from corporate liability for punitive damages** . . . Section 3294 is no longer silent on who may be responsible for imputing punitive damages to a corporate employer. **For corporate punitive damages liability, section 3294, subdivision (b), requires that the wrongful act giving rise to the exemplary damages be committed by an 'officer, director, or managing agent**.'"

In *Grieves v. Sup. Ct.* (1984) 157 Cal.App.3d 159, 168, the Court of Appeal affirmed the sustaining of a demurrer in favor of a corporate defendant. Addressing the claim for punitive damages against the corporate defendant, the court stated:

> "[W]e fail to see how any of those allegations sets forth facts to show [corporate defendant's] advance knowledge, authorization or ratification. Also, absent from the complaint is any assertion

an officer, director, managing agent of corporate defendant] was personally responsible for any of the acts allegedly performed by [corporate defendant]."

Further, the court in *J. R. Norton Co. v. General Teamsters, Warehousemen and Helpers Union* (1989) 208 Cal.App.3d 430, 445, held that:

"A corporation may be held liable for punitive damages for the acts of its agents and employees when the act is motivated by actual malice or done under circumstances amounting to oppression providing that the act is done with the knowledge or under the direction of corporate officials having the power to bind the corporation."

Plaintiff's factually devoid punitive damage allegations do not satisfy the Section 3294(b) standard and are nothing more than legal conclusions with no factual support. Therefore, the punitive damages allegations and prayer are not drawn in conformity with the laws of the State of California and must be stricken.

Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com I Bio I LinkedIn

**From:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Sent:** Thursday, February 5, 2026 3:38 PM
**To:** Audrey Little <audreylittle458@gmail.com>
**Cc:** Goldstein, Jason E. <jgoldstein@Buchalter.com>; Hovsepyan, Richard <rhovsepyan@buchalter.com>
**Subject:** Meet and Confer Regarding Motion To Dismiss FAC [IMAN-BUCHALTER.FID6170674]

Audrey:

For the reasons stated below, each of your counts against Oaktree fail as a matter of law.  You should agree to dismiss your First Amended Complaint as a result for the reasons stated below.

Are you available at 5pm to discuss the below?

I.    **THE COURT HAS DISCRETION TO DISMISS THE FAC, AND EACH AND EVERY PURPORTED CAUSE OF ACTION FOR CLAIM FOR RELIEF CONTAINED THEREIN DUE TO A LACK OF PLAUSIBILITY**

While a Complaint only needs to provide a short and plain statement for relief, the actual standard required for pleading civil complaints in federal court requires that: 1) the plaintiff provide grounds for relief which are "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do;" and 2) factual allegations which "must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 555.  *See also, Williston Basin Interstate Pipeline Co. v. Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation* (9th Cir. 2008) 524 F.3d 1090, 1096 (citing *Twombly* [affirming dismissal of

complaint where complaint failed to state a claim to relief that
was plausible on its face]).

In fact, a plaintiff must show that it has a plausible
entitlement to relief.  *See Twombly,* 550 U.S. at 559 and 570:

> "It is no answer to say that a claim just shy of a
> plausible entitlement to relief can, if groundless,
> be weeded out early in the discovery process . . .
> [b]ecause the plaintiffs here have not nudged their
> claims across the line from conceivable to
> plausible, their complaint must be dismissed."

The United States Supreme Court confirmed the
plausibility standard for pleading civil complaints in *Ashcroft v.
Iqbal* (2009) 129 S. Ct. 1937, 1949-1950 when it held that:

> "To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as true,
> "to state a claim for relief that is plausible on its
> face." (citation omitted).   A claim has facial
> plausibility when the plaintiff pleads factual content
> that allows the court to draw the reasonable
> inference that the defendant is liable for the
> misconduct alleged.   (citation omitted).   The
> plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.
> (citation omitted).  Where a complaint pleads facts
> that are "merely consistent with" a defendant's
> liability, it "stops short of the line between

possibility and plausibility of 'entitled to relief.'" (citation omitted).

It was further held in *Iqbal* that:

"only a complaint that states a plausible claim for relief survives a motion to dismiss. (citation omitted). Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. (citation omitted). But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" - - "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2)." *Iqbal*, 129 S. Ct. at 1949-1950. [Emphasis added]

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism whereby a claim may be dismissed where there is a lack of a cognizable theory or where there is an absence of sufficient facts. *See Ballistereri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). Although a Court must assume that the plaintiff's allegations are true on a motion to dismiss, the Court may disregard conclusory allegations and unreasonable inferences. *See also, Moss v. U.S. Secret Service* (9th Cir. 2009) 572 F.3d 962, 971, citing to *Sprewell v. Golden State Warriors* (9th Cir. 2001) 266 F.3d 979, 988 (stating that courts are not required to make "unreasonable

inferences" or "unwarranted deductions of fact" to save a complaint from a motion to dismiss).

In addition, the Court need not accept as true allegations that contradict facts which may be judicially noticed (*Mack v. South Bay Beer Distributors* (9th Cir. 1986) 798 F.2d 1279, 1281) or which are contradicted by facts established by exhibits attached to the Complaint. (*Durning v. First Boston Corp.* (9th Cir. 1987) 815 F.2d 1265, 1267). See also, *Davis v. HSBC Bank Nevada, N.A.* (9th Cir. 2012) 691 F.3d 1152, 1160 (holding that courts may incorporate by reference documents referred to or identified in a complaint but not attached to it).

As discussed above, and as will be further discussed below, Plaintiff has failed to allege any plausible claims against Oaktree.

## II.    COUNT 1 FOR NEGLIGENCE FAILS

The elements of a cause of action for negligence are: (1) legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Hoyem v. Manhattan* (1978) 22 Cal.3d 508, 514.

### A.    No Duty

It is the law in California that a lender does <u>not</u> owe its borrower a duty of care when it does not exceed its conventional role as a money lender. As the Court of Appeal

recently held in *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4<sup>th</sup> 49, 63:

> "**Lenders and borrowers operate at arm's length.** (*Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 466 . . .; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579 . . . ; *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476 . . . , disapproved on other grounds in*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1182 . . .) **"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.**" (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096)."
> [Emphasis added]

It has long been regarded as "axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor." "A debt is not a trust and there is not a fiduciary relation between a debtor and creditor as such." The same principle should apply with even greater clarity to the relationship between a bank and its loan customers. *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476, quoting *Morse v. Crocker Nat'l.*

*Bank* (1983) 142 Cal.App.3d 228, 232 and *Downey v. Humphreys* (1951) 102 Cal.App.2d 323, 332.

Here, there is no duty as a matter of law and the negligence count fails as a matter of law.

### III.   COUNT 3 FOR NEGLIGENT MISREPRESENTATION FAILS

The elements of a cause of action for negligent misrepresentation are: (1) a false statement of a material fact that the defendant honestly believes to be true, but made without reasonable grounds for such belief; (2) made with the intent to induce reliance; (3) reasonable reliance; and (4) damages. *Century Sur. Co. v. Crosby Ins., Inc.*, (2004) 124 Cal.App.4th 116, 129.  Each element in a cause of action for negligent misrepresentation must be factually and specifically alleged. *Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.

Each element in a cause of action for negligent misrepresentation must be factually and specifically alleged. *Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.

### A.   The Negligent Misrepresentation Cause Of Action Fails Due To Lack Of Duty

Responsibility for an alleged negligent misrepresentation requires the existence of a duty. *Bock v. Hansen* (2014) 225 Cal.App.4th 215, 229. See also, *Wilhelm*

*v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1332 (holding that the question of duty is relevant in cases where a cause of action for negligent misrepresentation is alleged). "Whether a legal duty exists in a given case is primarily a question of law." *Wylie v. Gresch* (1987) 191 Cal.App.3d 412, 416. Here, there is no duty of care present.

### B.   The Count Lacks Specificity

A plaintiff's burden in asserting a misrepresentation claim against a corporation, as opposed to an individual, is even greater. *Lazar v. Sup. Ct.,* (1996) 12 Cal.4th 631, 645. In such a case, the Plaintiff must allege the <u>name of the person</u> who made the allegedly fraudulent representations, <u>their authority to speak</u>, <u>what they said or wrote</u> and <u>when it was said or written</u>. *Id*.

This has not been done here. The entire count fails.

## IV.   COUNT 4 FOR FRAUDULENT CONCEALMENT FAILS

"The elements of a claim for fraudulent concealment require the plaintiff to show that: '(1) the defendant . . . concealed or suppressed a material fact, (2) the defendant [was] under a duty to disclose the fact to the plaintiff, (3) the defendant . .. intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff [was] unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as result of the concealment or suppression of face, the plaintiff

must have sustained damage.' (cit. omit.)" *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal. App. 4th 1105.

Fraud actions have been classed as "disfavored," and are subject to strict requirements of particularity in pleading. 5 Witkin, *California Procedure* (5th Ed., 2008) Pleading § 711, p. 126. Therefore, each of the elements of a fraud cause of action must be alleged in full, factually and specifically, since general pleadings of legal conclusions are insufficient to state a cause of action. *Roberts v. Ball, Hunt, Brown & Barowitz* (1976) 57 Cal.App.3d 104, 109. Fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud, and it is not sufficient to allege the elements in general terms or in terms which amount to mere conclusions. *Campbell v. Clark* (1958) 159 Cal.App.2d 439.

The particularity requirement necessitates pleading facts which show how, when, where and to whom and by what means the representations were tendered. In *Stansfield v. Starkey* (1990) 220 Cal.App.3d 59, it was held that a demurrer was properly sustained without leave to amend where the plaintiff failed to specifically allege a Fraud claim. In so ruling, the court noted that the rationale for the strict pleading requirement is not merely notice to the defendant. The idea seems to be that the allegations of Fraud involve a serious attack of character, and fairness to the defendant demands that he should have the fullest possible details of the charge in order to prepare his defense. *Id.* at 73. Thus, liberal rules

of construction will not usually be invoked to sustain a pleading that is defective with respect to any one of the required elements of a fraud cause of action. *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331.

In addition, as stated above, a plaintiff's burden in asserting a misrepresentation claim against a corporation, as opposed to an individual, is even greater. *Lazar v. Sup. Ct.,* (1996) 12 Cal.4th 631, 645. In such a case, the Plaintiff must allege the <u>name of the person</u> who made the allegedly fraudulent representations, <u>their authority to speak</u>, <u>what they said or wrote</u> and <u>when it was said or written</u>. *Id.*

Here, the FAC is devoid of any particularity and does not identify any person which purportedly made a misrepresentation of a concealment. This is fatal.

## V.      COUNT 5 FOR CIVIL CONSPIRACY FAILS

There is no cause of action for civil conspiracy. Instead, it is a legal doctrine that imposes liability on persons who did not commit the tort, but participated in its plan or design. *Klistoff v. Sup. Ct.* (2007) 157 Cal.App.4th 469, 479.

## VI.     COUNT 7 FOR UNFAIR BUSINESS PRACTICES FAILS

*Business & Professions Code* § 17200 ("Section 17200") provides civil remedies for unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice." Section 17200 was designed to protect consumers

and competitors from unfair business practices. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal. 4th 163, 180 (1999). The statute "is not an all-purpose substitute for a tort or contract action." *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173. As will be discussed below, this purported claim for relief fails as a matter of law.

Here, the Plaintiff bases her Section 17200 claims on the prior counts discussed above. This is improper because common law claims and principles cannot serve as a basis for a violation of the "unlawful" prong of Section 17200 claim. *See Textron Financial Corp. v. National Fire Ins. Co. of Pittsburgh* (2004) 118 Cal.App.4th 1061, 1072 (common law claim for fraud could not serve as the "unlawful" act supporting a claim under Section 17200). Even "[p]rovisions of the Civil Code that are substantially the same as the common law, such as the provisions that codify common law torts, 'must be construed as continuations thereof, and not as new enactments.'" *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1091 (citing California Civil Code Section 5 and specifically applying holding to claim for deceit).

For these reasons, the Plaintiff's Section 17200 count fails and must be dismissed.

### A.  <u>Oaktree Has Not Done Anything Unlawful</u>

The "unlawful" prong borrows violations of other laws and treats them as unlawful practices that Section 17200 makes independently actionable. *Jenkins v. JP Morgan*

makes independently actionable.    *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4<sup>th</sup> 497, 520.  Nothing unlawful has been alleged.

### B.     Oaktree Has Not Done Anything Unfair

The "unfair" prong of a Section 17200 claim requires an allegation that Bank's conduct threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.    *Byars v. SCME Mortgage bankers, Inc.* (2003) 29 Cal.4th 1134.  This, the Plaintiff has not done and cannot due.

### C.     Oaktree Has Not Done Anything Fraudulent

The "fraudulent" prong deals with "any act or practice likely to deceive the public, even if no one is actually deceived."  *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 907.  See, also *Committee on Children's Television v. General Foods Corp.* (1983) 35 Cal. 3d 197, 211 (holding that the test of whether a practice is "fraudulent" under Section 17200 is whether "…members of the public are likely to be deceived")

This standard "…implies more than a mere possibility that the [practice] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the [practice] is such that it is probable that a significant portion of the general consuming public or targeted consumers, acting reasonably in the

circumstances, could be misled." *Lavie v. Procter & Gamble Co.* (2003) 105 Cal. App. 4th 496, 500, 508.

There is nothing "fraudulent," as that term is used in Section 17200, that has been alleged here.

Therefore, Count 7 should be dismissed.

## VII.    <u>COUNT 8 FOR UDAAP VIOLATIONS FAILS</u>

Plaintiff's claim for "UDAAP Violations" fail because there is no private right of action for UDAAP violations.  *See, Atiyeh v. Am. Bus. Bank* (C.D. Cal. 2025) 2025 U.S. Dist. LEXIS 37838, * 6, citing to *Deutsche Bank Nat'l Trust Co. v. Fox* (M.D. Fla. 2013) 971 F.Supp.2d 1106, 1120 ("the administration of the Federal Trade Commission Act, including UDAAP, 'is in the hands of the administrative agency and not the private citizen." *Robert*s, 556 F.2d at 361 n. 6. Consequently, Foxx does not have a private action under UDAAP, and Count XV is DISMISSED with prejudice."), *Herrera v. Credit Collection Servs. Comercial* (C.D. Cal. 2024) 2024 U.S. Dist. LEXIS 240295, * 2 ("[T]he Court examined whether Plaintiff sufficiently alleged claims for relief. With respect to the FTC Act violations, the Court determined that Plaintiff cannot bring a § 5 claim because the Ninth Circuit has held that § 5 does not provide a private right of action") and *O'Donnell v. Bank of America, Nat. Ass'n,* (9th Cir. 2013) 504 Fed. App'x 566, 568.

Therefore, Count 8 must be dismissed.

## VIII.    COUNT 9 FOR CFPB REGULATION X (12 C.F.R. § 1024) FAILS

12 C.F.R. Section 1024 is known as Regulation X and was issued by the Bureau of Consumer Financial Protection to implement the Real Estate Settlement Procedures Act ("RESPA").

Here, Plaintiff has only submitted terse legal conclusions, with no facts, to support this purported count. This requires the granting of this motion in and of itself.  In any event this count fails in its own right.

### A.    Plaintiff Has Not Alleged That She Sent A Proper Qualified Written Request Or Request For Information

Plaintiff has not alleged that she submitted, properly or not, a Qualified Written Request ("QWR") or Request for Information ("RFI") to Oaktree.

As an initial matter, a QWR under RESPA, 12 C.F.R. §§1024.35(a), 1024.36(a) imposes two preconditions that a borrower must satisfy to trigger a response duty. First, the borrower must show that he or she submitted a qualifying QWR regarding the servicing of a federally related mortgage loan. See 12 U.S.C. § 2605(e)(1)(A), (e)(2). RESPA defines a QWR as a written correspondence that "includes … the name and account of the borrower and includes a statement of the reasons for the belief of the borrower … that the account is in error or provides sufficient detail regarding other information

sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Second, if a borrower submits a qualifying QWR to a loan servicer, the borrower's letter must also request or challenge "information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A), (e)(2). Servicing encompasses "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts ..., and making the payments of principal and interest and such other payments." 12 U.S.C. § 2605(i)(3). As defined, servicing excludes "the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666-67 (9th Cir. 2012).

Documents regarding a claim by Oaktree to its title insurer which was denied is not a document that RESPA requires be produced to a borrower pursuant to a QWR or a RFI. Allegedly failing to appeal a title insurer's denial of a claim is also something that is not covered by RESPA.

This count fails as a result.

## B.    <u>Plaintiff Has Not Pled That She Properly Submitted A Loss Mitigation Application</u>

12 C.F.R. section 1024.41 enacts loss mitigation procedures under RESPA. The first step is the receipt of a complete loss mitigation application. 12 C.F.R. section 1024.41(b)(1). Plaintiff has not alleged that she submitted a completeloss mitigation

has not alleged that she submitted a completeloss mitigation application.

Second, nothing in 12 C.F.R. section 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation application.

## C. Plaintiff Has Not Pled Damages Caused By An Alleged RESPA Violation

Lastly, in order to establish a violation of RESPA, Plaintiff must plead and prove "facts showing how the plaintiff suffered actual harm due to defendants' failure to respond to a qualified written request." *See* 12 U.S.C. § 2605(f)(1)(A); *Fullmer v. JPMorgan Chase Bank, N.A.*, No. 2:09-cv-01037-JFM, 2010 WL 95206, at *6 (E.D. Cal. Jan. 6, 2010); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) (explaining "there must be a 'causal link' between the alleged [RESPA] violation and the damages" [quoting *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001) ]); cf. *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 511 (8th Cir. 2012). Plaintiff has failed to allege that he sustained any actual damages resulting from any alleged violation of RESPA by SPS.

Here, Plaintiff fails to plead that any such damages were the "direct result of [Oaktree's purported] failure to comply" with RESPA. *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010). "A claim of a RESPA violation cannot survive a motion to dismiss when the plaintiff does not plead facts showing how the plaintiff suffered actual harm due to defendants' failure to respond to a qualified written response." *Fullmer v.*

failure to respond to a qualified written response. *Palmer v. JPMorgan Chase Bank, N.A.*, No. 2:09-cv-01037-JFM, 2010 WL 95206, at *6 (E.D. Cal. Jan. 6, 2010); *see* also *Singh v. Wash. Mut. Bank*, No. 3:09-cv-02771-MMC, 2009 WL 2588885, at *5 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim where plaintiffs "failed to allege any facts in support of their conclusory allegation that '[a]s a result' of defendants' failure to respond, defendants 'are liable for actual damages, costs, and attorney fees' "). Accordingly, a "plaintiff's failure to allege a pecuniary loss attributable to a servicer's failure to respond to QWRs has therefore been found to be fatal to the claim." *Robinson v. Bank of Am., N.A.*, No. 3:21-cv-00110-AJB-(DEBx), 2022 WL 837073, at *7 (S.D. Cal. Mar. 21, 2022).

Plaintiff concealed and failed to disclose the Resnick Deed of Trust to and the escrow agent failed to comply with the escrow instructions as a result. Plaintiff's concealment of the loan secured by the Resnick Deed of Trust does not result in Oaktree having purportedly causing her any damages. Nor does the failure to provide title claim related documents.

## IX.   <u>COUNT 10 FOR FAILURE TO MITIGATE DAMAGES FAILS</u>

It was held in *Valle De Oro Bank v. Gamboa* (1994) 26 Cal.App.4th 1686, 1691, that:

> "The doctrine of mitigation of damages holds that "[a] plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any  losses which could have

been thus avoided. (cits. omit.)"

The alleged failure to mitigate damages is an affirmative defense raised by a defendant to claims by a Plaintiff.  It is not a cause of action.

Count 10 must be dismissed.

## X.     COUNT 11 FOR PUNITIVE DAMAGES FAILS

Punitive damages is a remedy, not a cause of action. See, *569 East County Boulevard LLC v. Backcountry Against The Dump, Inc.* (2016) 6 Cal.App.5th 426, 429, fn. 3 and *Hilliard v. A.H. Robins Co.* (1983) 148 Cal.App.3d 374, 391.

Count 11 fails and must be dismissed.

**Jason E. Goldstein**
*Partner*
Orange County Office
**T** (949) 224-6235
**C** (213) 379-4756

---

**From:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Sent:** Thursday, February 5, 2026 10:14 AM
**To:** Audrey Little <audreylittle458@gmail.com>
**Cc:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Subject:** RE: URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and Interim Standstill (5:26-cv-00402) [IMAN-BUCHALTER.FID6170674]

Hi Audrey:

Oaktree will not so stipulate.  Oaktree will be moving to dismiss each cause of action alleged against it because they fail as a matter of law.  I will send you an outline of why and then I will give you a call to discuss today.

Buchalter LLP

---

**Jason E. Goldstein**

Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com I Bio I LinkedIn

**Jason E. Goldstein**
*Partner*
Orange County Office
**T** (949) 224-6235
**C** (213) 379-4756

**From:** Audrey Little <audreylittle458@gmail.com>
**Sent:** Thursday, February 5, 2026 10:09 AM
**To:** Goldstein, Jason E. <jgoldstein@Buchalter.com>
**Cc:** Audrey Little <audreylittle458@gmail.com>
**Subject:** URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand
and Interim Standstill (5:26-cv-00402)

This message has originated from an **External Email**. Audrey Little
<audreylittle458@gmail.com>:

Subject
URGENT / Final Meet-and-Confer: Proposed Stipulation to Remand and
Interim Standstill (5:26-cv-00402)

Jason,

I am writing as a final meet-and-confer effort to narrow the issues created by
removal and to prevent imminent, date-certain harm. If Oaktree is willing, we
can avoid unnecessary motion practice and restore an orderly state-court path
for the already-scheduled injunction posture.

As you are aware, Oaktree's responsive pleading to the First Amended
Complaint (FAC) is due today. For the avoidance of doubt, I do not consent to
any extension of time to respond to the FAC. My proposal below eliminates any
need for an extension by allowing Oaktree to respond to the SAC instead.

**Proposed stipulation (three parts):**

1.  **Stipulation to Remand.**

Oaktree stipulates to remand this action to Riverside Superior Court.

2. **Pleadings posture (SAC).**
Oaktree stipulates that Plaintiff may file the Second Amended Complaint (SAC) (the operative pleading I provided on January 23), and that any response will be directed to the SAC (not the superseded FAC).

3. **Interim standstill to preserve the status quo.**
Oaktree agrees to a temporary standstill on billing/collection/enforcement activity and adverse credit furnishing relating to the challenged loan through March 10, 2026, or until the state court hears the injunction request, whichever occurs last, to avoid a preventable "jurisdictional gap" while the forum issue is resolved.

If you are not willing to stipulate, I will file a short supplemental notice with the Court addressing the procedural defects and prejudice from the timing of removal in relation to the state-court injunction schedule, and I will request appropriate relief (including fees/costs where authorized).

**Deadline:** Please confirm by 12:00 PM (PT) today whether Oaktree will stipulate to the three-part proposal above.

Regards,
Audrey Little

Plaintiff, Pro SeRegards,

Audrey Little
audreylittle458@gmail.com

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

**From:** **Goldstein, Jason E.** jgoldstein@buchalter.com
**Subject:** Little/Oaktree/Rocket [IMAN-BUCHALTER.FID6170674]
**Date:** February 5, 2026 at 10:27 PM
**To:** Audrey Little audreylittle458@gmail.com
**Cc:** Goldstein, Jason E. jgoldstein@Buchalter.com, Hovsepyan, Richard rhovsepyan@buchalter.com

Audrey:

Per our agreement for eservice, please see the attached was just filed.

I believe that there is a form you can fill out to get electronically served through Pacer/ECF.

## Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

## Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

| **Filed - RJN.pdf** | | **Filed - P's and A's.pdf**<br>488 KB | |
| **Filed - Notice of Motion** | | **Filed - Proposed order** | |

**.pdf**
149 KB

Filed    Proposed order
**.pdf**

# V-6 Selected Excerpts: Early Notice / Counsel Knowledge

Document: Selected_Exhibits_Early_Notice_Counsel_Knowledge.pdf
Added to Exhibit Binder v15.

*Divider page (added for binder navigation)*

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** inal Opportunity to Resolve Before Filing Second Amended Complaint & TRO Today (Deadline 1:30 PM PST)
**Date:** December 8, 2025 at 10:54 AM
**To:** Olivier J. Labarre olabarre@wrightlegal.net, Iqbal, Zeeshan ZIqbal@hinshawlaw.com, Heather Moldovan
HeatherMoldovan@rocketclose.com, generalcounsel@rocketcompanies.com, legal@rocketcompanies.com, Varun Krishna
Varun@rocket.com
**Cc:** Goldstein Jason E. jgoldstein@buchalter.com, Teague Robert rteague@oaktreefunding.com

**Subject:** Final Opportunity to Resolve Before Filing Second Amended Complaint & TRO Today (Deadline 1:30 PM PST)

**Date:** December 8, 2025

**To:**
Olivier J. Labarre, Esq.
Zeeshan Iqbal, Esq.
General Counsel – Rocket Companies, Inc.
Heather Moldovan, COO – Rocket Close LLC

**CC:**
Jason E. Goldstein, Esq.
Robert R. Teague, Esq.
MyLoanServicer.com
Self-copy

---

Dear Counsel and Rocket Executives,

I am writing to offer Rocket **one final opportunity** to resolve this matter voluntarily **before 1:30 p.m. PST today**, at which time I will file both my **Second Amended Complaint** and **Ex Parte Application for Temporary Restraining Order**.

As you know, my background is in **operations, information systems, and large-scale organizational process improvement**. My firm specializes in preventing the type of cascading operational failures that occurred in my refinance transaction and that I am now witnessing again in Rocket's legal response structure.

When I first attempted to settle this matter months ago, **my losses were approximately $62,000**. Rocket declined to engage. As of today, **my documented damages total $528,500**—an escalation of nearly **1,000%**, caused solely by Rocket's failure to acknowledge or address the underlying defect. This expansion of harm was entirely preventable.

At one point, I offered to resolve **all claims— including Oaktree's exposure and Rocket's operational failures — for under $500,000 total.** I was told, "**my client's position has not changed**." That response was a direct consequence of Rocket's siloed internal structure and the lack of cross-functional oversight that has defined this entire experience.

> **This situation has significantly disrupted my ability to work, manage my health, support my family, and maintain stability. Months of uncertainty, lack of information, and continued enforcement of a structurally invalid loan forced me to devote 12–16 hours a day to understanding a problem Rocket created and refused to explain. These are not abstract harms; they are documented, consequential disruptions that were fully avoidable had Rocket acted responsibly.**

**FLexhibits a thru j with denial .pdf**

On Dec 11, 2025, at 10:46 AM, Audrey Little <audreylittle@icloud.com> wrote:

Click to Download
exhibits a thru j.pdf
155.1 MB

Sorry

On Dec 11, 2025, at 10:03 AM, Audrey Little <audreylittle458@gmail.com> wrote:

**SUBJECT:** Courtesy Copy – Filed Ex Parte Application for Temporary Restraining Order (Little v. Rocket Title, et al.)

**BODY:**

Zeeshan and Jason,

As a courtesy, I am providing you with copies of the documents I have submitted today for filing with the Riverside Superior Court in Case No. CVPS2508295 (Little v. Rocket Title Insurance Company, et al.).

Attached:

1. Plaintiff's Ex Parte Application for Temporary Restraining Order; OSC re Preliminary Injunction; Request for Order Shortening Time; and Request for Leave to File SAC

2. [Proposed] Temporary Restraining Order (PDF)

3. [Proposed] Temporary Restraining Order (Word version)

4. Exhibit Binder (Exhibits A–J)

5. Proof of Service – Email Service on Rocket Title (LeBarre)

These are provided for courtesy notice only.
Formal service for the TRO package has been executed on Rocket Title Insurance Company through its agent for service of process, Olivier LeBarre.

Regards,
**Audrey Little**
Plaintiff in Pro Per
Phone: (310) 283-4448
Email: Audrey.Little458@gmail.com

**From:** **Audrey Little** audreylittle458@gmail.com

**Subject:** Mediation

**Date:** January 5, 2026 at 1:40 PM

**To:** Jason E. Goldstein  jgoldstein@buchalter.com

**Cc:** Audrey Little  audreylittle458@gmail.com,  Zeeshan Iqbal  ZIqbal@hinshawlaw.com

AL

Hi Jason,

Zeeshan is the attorney for Rocket Close and Companies.  Would you / Oaktree be willing to attend a mediation with them and me regarding this case?.  I am hoping it would lead to a much faster resolution.


Regards,

Audrey Little
audreylittle458@gmail.com

# EXHIBIT V-6

## FAC Redline Provided to Oaktree (Notice of Material Changes)

Attached document follows.

**From:** **Audrey Little** audreylittle@icloud.com
**Subject:** Redlined version of FAC
**Date:** January 23, 2026 at 1:57 PM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com
**Cc:** Audrey Little audreylittle@icloud.com, Iqbal, Zeeshan ZIqbal@hinshawlaw.com





For your reference I have included a redlined version of the FAC. As you can see the entire complaint has been modified. This is largely due to the fact that when I submitted the first complaint I had not received any evidence from any parties in the case including oak tree. I received 99% of yours on December 10, 2025 and one piece November 19, 2025. The SAC is written based on the evidence I have been able to obtain since the FAC. Even if some things remained they are not in the same place or substantively changed.

**FAC_Redline_Deletions Only.pdf**
145 KB

# 7 Supplemental Decl. re Disclosures & Title/Escrow Control (Feb 11, 202

Document: Supplemental_Declaration_Disclosure_FEDERAL_MEMF_v2_DISCLOSED.pdf
Added to Exhibit Binder v15.

*Divider page (added for binder navigation)*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

AUDREY B. LITTLE,■Plaintiff,■■v.■■OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET COMPANIES, INC.; and DOES 1–50, inclusive,■Defendants.
Case No. 5:26-cv-00402-MEMF (MBKx)

SCLOSURES AND TITLE/ESCROW CONTROL■(IN SUPPORT OF PENDING EX PARTE APPLICATION FOR TEMPO

I, Audrey B. Little, declare as follows:

1. I am the Plaintiff in this action and submit this Supplemental Declaration in support of my pending Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction, and the limited supplemental exhibit excerpts submitted for the Court's convenience.

2. Defendants and/or their agents controlled and performed the title and escrow functions for the subject loan transaction, including obtaining and relying on title materials, ensuring compliance with escrow/closing instructions, reconveyance of paid-off liens, and the order and timing of recording at closing.

3. I did not receive or possess a current title report identifying the lien-priority defect prior to closing. Any preliminary title report and any updated title diligence (including any bring-down) were obtained, maintained, and relied upon by Defendants and/or their agents as part of underwriting/closing.

4. The record reflects reliance on a preliminary title report dated October 15, 2024 despite the loan closing in July 2025, and the absence of timely updated title diligence immediately before disbursement/recording.

5. As a result, the loan did not record in the required position at closing. Consistent with the record, disbursement occurred on July 14, 2025 and the Deed of Trust recorded on July 15, 2025. In addition, a paid-off lien was not timely reconveyed, and senior liens remained of record at the time of recording.

6. At the outset of the transaction, I disclosed the family obligation and specifically asked whether it was reflected on title because I understood that if it appeared on title it would affect lien position/CLTV and therefore loan eligibility. I proceeded in reliance on Defendants' title/escrow diligence and the non-discretionary closing instruction requiring recordation in second-lien position on or prior to disbursement.

7. This matter does not involve a borrower-disclosure failure as a cause of the lien-priority defect. Lien priority is determined by professional actions at closing—current title diligence, compliance with escrow instructions, reconveyance of paid-off liens, and correct recording order. Borrowers do not control these processes. Here, even full disclosure by me would not have changed the requirement that the lender's deed of trust record in second-lien position on or prior to disbursement, nor would it have cured a failure to perform the non-discretionary closing safeguards that fixed priority at inception.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
Executed on February 11, 2026, at La Quinta, California.

/s/ Audrey B. Little
AUDREY B. LITTLE

# V-8 Appendix A: DTI vs. CLTV - Title Gatekeeper Failure

Document: FINAL_Appendix_A_DTI_vs_CLTV_FEDERAL_FORMAT_CAPTIONFIX.pdf
Added to Exhibit Binder v15.

*Divider page (added for binder navigation)*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

AUDREY B. LITTLE,

Plaintiff,

v.

OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET

COMPANIES, INC.; and DOES 1-50, inclusive

Defendants.

Case No. 5:26-cv-00402-MEMF (MBKx)

**APPENDIX A: DTI VS. CLTV - TITLE GATEKEEPER FAILURE (FOR**

**TRO/STATUS-QUO RELIEF)**

This Appendix summarizes the narrow underwriting and gatekeeper point relevant to the Court's TRO/status-quo analysis:

- DTI would not change: The family obligation required no monthly payment. Adding a $0 monthly payment does not increase debt-to-income ratio (DTI).
- CLTV would disqualify: If a current title report/bring-down had been run near closing/disbursement and the family lien appeared on title, combined loan-to-

value (CLTV) would have increased beyond the program limit and Plaintiff would not have qualified for the loan at all.

- This is why title/escrow safeguards were dispositive: The transaction was conditioned on correct lien priority and current title verification; those safeguards exist precisely to prevent funding when required lien position/CLTV conditions cannot be met.

- Defendants' own underwriting/QC conditions reflect DTI and CLTV thresholds: See Exhibit Binder v14 at p. 98 (MAX DTI / MAX CLTV conditions).

- The title materials in the file were facially stale: See Exhibit Binder v14 at p. 47 (Preliminary Title Report dated 10/15/2024). A current bring-down near funding would have revealed recorded encumbrances affecting CLTV/lien priority.

- Closing instructions required second position on or before disbursement: See Exhibit Binder v14 at p. 11 (Specific Closing Instruction requiring recordation in 2nd lien position on or prior to disbursement).

- Accordingly, Defendants' post hoc concealment narrative is not dispositive for interim relief: the dispositive gatekeeper question is whether current title and lien-priority conditions were verified before funding/disbursement.

DATED: February 10, 2026

/s/ Audrey B. Little

AUDREY B. LITTLE, Plaintiff Pro Se

# V-9 Exhibit K: Chronology of Record Evidence

Document: EXHIBIT_K_Record_Chronology_Cover_Table_FEDERAL.pdf
Added to Exhibit Binder v15.

*Divider page (added for binder navigation)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AUDREY B. LITTLE,

Plaintiff,

v.

OAKTREE FUNDING

CORPORATION; ROCKET CLOSE,

LLC; ROCKET COMPANIES, INC.;

and DOES 1–50, inclusive,

Defendants.

Case No. 5:26-cv-00402-MEMF

(MBKx)

EXHIBIT K

CHRONOLOGY OF RECORD EVIDENCE (FOR COURT'S CONVENIENCE)

Plaintiff provides the following chronology solely to assist the Court in locating

specific record excerpts referenced in Plaintiff's Reply and declarations. The table

identifies the issue addressed, the contemporaneous documentary evidence, and the

corresponding exhibit/page citations in the lodged materials.

| Issue raised in Opposition/Declaration | Record evidence (date/time; subject; recipients) | Exhibit / page |
|---|---|---|
| Notice of TRO/SAC | Dec. 8, 2025 email to | Selected Excerpts, Ex. H |

| posture | Goldstein and Teague with subject referencing TRO/SAC posture (early notice). | (p. 1) |
|---|---|---|
| Operative claims / RESPA posture | Jan. 23, 2026 email to Goldstein providing a redlined complaint reflecting removal of federal RESPA claim before removal. | Exhibit Binder excerpt, Ex. G (p. 387) |
| Plaintiff disability/medical impacts | Underwriting/QC materials reflecting lender verification of disability income and reliance on underwriting/title conditions. | Appendix A / Ex. Binder p. 98 |
| DTI vs. CLTV / DTI impact | Where the obligation is $0/month, the impact on DTI is mathematically zero; lien/CLTV effects are addressed through title/recording safeguards and lien-position requirements. | Appendix A |
| Lender/title "gatekeeper" requirements | Specific closing/underwriting conditions requiring verification of lien position prior to disbursement (supports narrow, time-limited status-quo relief). | Selected Excerpts / Exhibit Binder (cite page if included) |

DATED: February 10, 2026

Respectfully submitted,

/s/ Audrey B. Little

AUDREY B. LITTLE

Plaintiff Pro Se

# V-10 Declaration of Audrey Little (Jan 30, 2026) v3

Document: FILE1_Declaration_of_Audrey_Little_v3 (1).pdf
Added to Exhibit Binder v15.

UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

AUDREY LITTLE, Plaintiff, v. OAKTREE FUNDING CORPORATION, et al., Defendants. Case No. 5:26-cv-00402

DECLARATION OF AUDREY LITTLE

I, Audrey Little, declare under penalty of perjury as follows:

1. I am the Plaintiff in this action and am proceeding in pro per. I have personal knowledge of the facts stated herein.

2. I submit this declaration in support of (a) my Ex Parte Application for Temporary Restraining Order, (b) my Motion for Leave to File the Second Amended Complaint for purposes of clarifying jurisdiction, and (c) my Emergency Motion to Remand and for Fees under 28 U.S.C. § 1447(c).

3. Prior to removal, I provided Defendants with a complete redlined version of the First Amended Complaint reflecting that the pleading was entirely superseded, including removal of all RESPA / Regulation X claims. I expressly advised that the Second Amended Complaint (v82) proceeds solely on state-law causes of action.

4. I met and conferred with counsel for Rocket Close and Rocket Companies regarding the Second Amended Complaint. During that meet-and-confer, we reviewed the causes of action in the SAC cause-by-cause. I expressly advised that RESPA / Regulation X was removed. Rocket agreed to respond only to the Second Amended Complaint.

5. I did not have a meet-and-confer with Oaktree. Oaktree declined to meet and confer and declined to grant a temporary pause of enforcement.

6. I did not refuse to move the injunction hearing. When Oaktree's counsel requested that the hearing be continued to February 24, 2026, I explained that moving the hearing later without protection would cause me additional irreparable harm. I therefore proposed multiple reasonable alternatives to accommodate scheduling while preventing further harm: (a) continuing the hearing to February 24 with a temporary pause in enforcement until that date; (b) requesting that the Court advance the hearing to an earlier date; and (c) proceeding on the existing hearing date if no pause were granted. Oaktree declined all of these options.

7. After the deadline to oppose my state-court injunction motion passed without a timely opposition, Defendants filed a Notice of Removal on January 29, 2026, freezing the state court's ability to act and creating an immediate gap in judicial protection.

8. I am a disabled individual and have suffered irreparable harm and face imminent risk of additional irreparable harm absent immediate court intervention. This includes medically documented injury and health impacts caused and exacerbated by Defendants' continued enforcement posture.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 30, 2026. /s/ Audrey Little Audrey Little

DATED: January 30, 2026

# V-11 Declaration re Notice and Courtesy Service (Feb 17, 2026)

Document: Declaration_re_Notice_and_Courtesy_Service_ExParte-2.pdf
Added to Exhibit Binder v15.

*Divider page (added for binder navigation)*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

AUDREY LITTLE, Plaintiff (Pro Se),

v.

OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET COMPANIES,

INC.; and DOES 1–50, inclusive, Defendants.

**Case No. 5:26-cv-00402-MEMF (MBKx)**

**DECLARATION RE NOTICE AND COURTESY SERVICE (EX PARTE STATUS-QUO**

**TRO)**

I, Audrey Little, declare:

1. I am Plaintiff in this action and submit this declaration to describe notice provided to

Defendants' counsel in connection with Plaintiff's Ex Parte Application for Immediate

Status-Quo Temporary Restraining Order and related filings.

2. On the date of this declaration, I submitted the ex parte TRO/status-quo materials to the Court

via EDDS.

3. On the same date, I provided courtesy copies by email to the following counsel of record:

   a. Jason E. Goldstein (Buchalter LLP) — jgoldstein@buchalter.com

   b. Zeeshan Iqbal (Hinshaw & Culbertson LLP) — ziqbal@hinshawlaw.com

4. The courtesy email(s) included the following documents (as attachments and/or links):

- Ex Parte Application for Immediate Status-Quo TRO (Bridge Order)

- Proposed Order

- Supplemental Declaration (Urgent Harm Update)

- Consolidated Supplemental Declaration (if included)

- One-Page Chronology

- Exhibits packet (as applicable)

5. To the extent the CM/ECF system later generates NEF service upon docketing of the EDDS

submission, this declaration is offered to show that Defendants' counsel also received courtesy

notice contemporaneously, given the urgent nature of the requested relief.


I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.


Executed on February 17, 2026, at La Quinta, California.


/s/ Audrey Little

AUDREY LITTLE, Plaintiff Pro Se

# V-12 Supplemental Declaration: Urgent Harm Update (Feb 17, 2026)

Document: Supplemental_Declaration_Urgent_Harm_Update-2.pdf
Added to Exhibit Binder v15.

*Divider page (added for binder navigation)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AUDREY LITTLE, Plaintiff (Pro Se),        Case No. 5:26-cv-00402-MEMF (MBKx)

v.

OAKTREE FUNDING CORPORATION;

ROCKET CLOSE, LLC; ROCKET COMPANIES, INC.; and DOES 1–50, inclusive,

Defendants.

SUPPLEMENTAL DECLARATION (URGENT HARM UPDATE)

I, Audrey Little, declare under penalty of perjury under the laws of the United States of America as follows:

1. I am Plaintiff in this action and submit this urgent update to the Court regarding immediate irreparable harm.

2. I am already late on my first mortgage payment for the first time in my life as a direct consequence of the current enforcement posture and the need to protect my innocent co-borrower from foreclosure-related credit injury.

3. Oaktree (or its servicer) has attempted ACH withdrawals despite my instruction to stop, and I expect another ACH attempt. Uncontrolled withdrawals and resulting overdrafts/late fees/credit reporting are immediate and difficult to undo.

4. Absent an immediate status-quo TRO, I will be forced to list my home for sale immediately to prevent foreclosure-related credit injury to my co-borrower and to stop compounding harm before the Court can address jurisdiction and schedule a PI hearing.

Executed on February 17, 2026, at La Quinta, California.

/s/ Audrey Little

AUDREY LITTLE, Plaintiff Pro Se

2

# EXHIBIT V-13

Selected Exhibits (Doc. 30 filed 02/10/26)

*Cover + excerpted exhibits for TRO/status-quo relief*

FILED

CLERK, U.S. DISTRICT COURT

2/10/2026

CENTRAL DISTRICT OF CALIFORNIA

BY _____asi_____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**AUDREY B. LITTLE,**

Plaintiff,

v.

OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET COMPANIES,

INC.; and DOES 1–50, inclusive

Defendants.

**Case No. 5:26-cv-00402-MEMF (MBKx)**

## COVER PAGE – SELECTED EXHIBITS

Plaintiff submits the attached Selected Exhibits in support of her Ex Parte Application for

Temporary Restraining Order and Status-Quo Relief. These exhibits are excerpted from the

larger Exhibit Binder previously lodged and are provided to direct the Court to the most

probative written communications and records relevant to early notice, gatekeeper failure,

underwriting criteria, medical and caregiving impacts, and irreparable harm.

DATED: February 10, 2026

/s/ Audrey B. Little

AUDREY B. LITTLE

Plaintiff Pro Se

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** inal Opportunity to Resolve Before Filing Second Amended Complaint & TRO Today (Deadline 1:30 PM PST)
**Date:** December 8, 2025 at 10:54 AM
**To:** Olivier J. Labarre olabarre@wrightlegal.net, Iqbal, Zeeshan ZIqbal@hinshawlaw.com, Heather Moldovan
HeatherMoldovan@rocketclose.com, generalcounsel@rocketcompanies.com, legal@rocketcompanies.com, Varun Krishna
Varun@rocket.com
**Cc:** Goldstein Jason E. jgoldstein@buchalter.com, Teague Robert rteague@oaktreefunding.com

AL

**Subject:** Final Opportunity to Resolve Before Filing Second Amended Complaint & TRO Today (Deadline 1:30 PM PST)

**Date:** December 8, 2025

**To:**
Olivier J. Labarre, Esq.
Zeeshan Iqbal, Esq.
General Counsel – Rocket Companies, Inc.
Heather Moldovan, COO – Rocket Close LLC

**CC:**
Jason E. Goldstein, Esq.
Robert R. Teague, Esq.
MyLoanServicer.com
Self-copy

Dear Counsel and Rocket Executives,

I am writing to offer Rocket **one final opportunity** to resolve this matter voluntarily **before 1:30 p.m. PST today**, at which time I will file both my **Second Amended Complaint** and **Ex Parte Application for Temporary Restraining Order**.

As you know, my background is in **operations, information systems, and large-scale organizational process improvement**. My firm specializes in preventing the type of cascading operational failures that occurred in my refinance transaction and that I am now witnessing again in Rocket's legal response structure.

When I first attempted to settle this matter months ago, **my losses were approximately $62,000**. Rocket declined to engage. As of today, **my documented damages total $528,500**—an escalation of nearly **1,000%**, caused solely by Rocket's failure to acknowledge or address the underlying defect. This expansion of harm was entirely preventable.

At one point, I offered to resolve **all claims— including Oaktree's exposure and Rocket's operational failures — for under $500,000 total.** I was told, "**my client's position has not changed**." That response was a direct consequence of Rocket's siloed internal structure and the lack of cross-functional oversight that has defined this entire experience.

> **This situation has significantly disrupted my ability to work, manage my health, support my family, and maintain stability. Months of uncertainty, lack of information, and continued enforcement of a structurally invalid loan forced me to devote 12–16 hours a day to understanding a problem Rocket created and refused to explain. These are not abstract harms; they are documented, consequential disruptions that were fully avoidable had Rocket acted responsibly.**

> **FLexhibits a thru j with denial .pdf**

> On Dec 11, 2025, at 10:46 AM, Audrey Little <audreylittle@icloud.com> wrote:
>
> Click to Download
> exhibits a thru j.pdf
> 155.1 MB

Sorry

> On Dec 11, 2025, at 10:03 AM, Audrey Little <audreylittle458@gmail.com> wrote:
>
> **SUBJECT:** Courtesy Copy – Filed Ex Parte Application for Temporary Restraining Order (Little v. Rocket Title, et al.)
>
> **BODY:**
>
> Zeeshan and Jason,
>
> As a courtesy, I am providing you with copies of the documents I have submitted today for filing with the Riverside Superior Court in Case No. CVPS2508295 (Little v. Rocket Title Insurance Company, et al.).
>
> Attached:
>
> 1. Plaintiff's Ex Parte Application for Temporary Restraining Order; OSC re Preliminary Injunction; Request for Order Shortening Time; and Request for Leave to File SAC
>
> 2. [Proposed] Temporary Restraining Order (PDF)
>
> 3. [Proposed] Temporary Restraining Order (Word version)
>
> 4. Exhibit Binder (Exhibits A–J)
>
> 5. Proof of Service – Email Service on Rocket Title (LeBarre)
>
> These are provided for courtesy notice only.
> Formal service for the TRO package has been executed on Rocket Title Insurance Company through its agent for service of process, Olivier LeBarre.
>
> Regards,
> **Audrey Little**
> Plaintiff in Pro Per
> Phone: (310) 283-4448
> Email: Audrey.Little458@gmail.com



**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** Mediation
**Date:** January 5, 2026 at 1:40 PM
**To:** Jason E. Goldstein jgoldstein@buchalter.com
**Cc:** Audrey Little audreylittle458@gmail.com, Zeeshan Iqbal ZIqbal@hinshawlaw.com

Hi Jason,

Zeeshan is the attorney for Rocket Close and Companies. Would you / Oaktree be willing to attend a mediation with them and me regarding this case?. I am hoping it would lead to a much faster resolution.


Regards,

Audrey Little
audreylittle458@gmail.com

# EXHIBIT V-6

**FAC Redline Provided to Oaktree (Notice of Material Changes)**

Attached document follows.



**From:** Audrey Little audreylittle@icloud.com
**Subject:** Redlined version of FAC
**Date:** January 23, 2026 at 1:57 PM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com
**Cc:** Audrey Little audreylittle@icloud.com, Iqbal, Zeeshan ZIqbal@hinshawlaw.com

For your reference I have included a redlined version of the FAC. As you can see the entire complaint has been modified. This is largely due to the fact that when I submitted the first complaint I had not received any evidence from any parties in the case including oak tree. I received 99% of yours on December 10, 2025 and one piece November 19, 2025. The SAC is written based on the evidence I have been able to obtain since the FAC. Even if some things remained they are not in the same place or substantively changed.



**FAC_Redline_Deletions Only.pdf**
145 KB

# EXHIBIT V-14

Exhibits in Support of Reply re Motion to Remand (Combined, with Errata)

*Service/consent/counsel-knowledge exhibits + errata*

---

Divider generated 2026-02-21

# PLAINTIFF'S EXHIBITS

## In Support of Reply re Motion to Remand

Prepared: 2026-02-15

Case: 5:26-cv-00402-MEMF (MBKx)

Plaintiff: Audrey Little (Pro Se)

*Exhibits are excerpted to the minimum pages necessary for remand issues (service, consent, counsel identity).*

# Exhibit 1 — Proof of Service (Rocket Companies, Inc.)

POS-010 showing personal service on 12/26/2025 via CT Corporation Systems (registered agent).

*Exhibit separator*

Electronically FILED by Superior Court of California, County of Riverside on 12/29/2025 12:00 AM
Case Number CVPS2508295 0000152243806 - Jason B. Galkin, Executive Officer/Clerk of the Court By Victoria Lopez, Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Audrey Little<br>81434 Merv Griffin Way<br>La Quinta, CA 92253<br><br>TELEPHONE NO.: (310) 283-4448     FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: audrey.little458@gmail.com<br>ATTORNEY FOR *(Name)*: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
  STREET ADDRESS: 3255 E. TAHQUIZ CANYON WAY
  MAILING ADDRESS: 3255 E. TAHQUIZ CANYON WAY
  CITY AND ZIP CODE: PALM SPRINGS, CA 92262
  BRANCH NAME: DESERT - PALM SPRINGS COURTHOUSE

| PLAINTIFF/PETITIONER: AUDREY LITTLE<br><br>DEFENDANT/RESPONDENT: ROCKET TITLE INSURANCE COMPANY, et al. | CASE NUMBER:<br>CVPS 2508295 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>DEPT. PS1 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. [X] summons
   b. [X] complaint
   c. [ ] Alternative Dispute Resolution (ADR) package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [ ] other *(specify documents)*: First Amended Complaint for Damages

3. a. Party served *(specify name of party as shown on documents served)*:

   ROCKET COMPANIES, INC.

   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   C.T. CORPORATION SYSTEMS, Registered Agent, by serving Diana Ruiz, SOP Intake Specialist

4. Address where the party was served: 330 N. Brand Blvd., Suite 700, Glendale, CA 91203

5. I served the party *(check proper box)*
   a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: 12/26/2025     (2) at *(time)*: 10:42 AM
   b. [ ] **by substituted service.** On *(date)*:          at *(time)*:          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:          from *(city)*:          **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | CEB<br>www.ceb.com | Code of Civil Procedure, § 417.10 |

| PLAINTIFF/PETITIONER: AUDREY LITTLE | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: ROCKET TITLE INSURANCE COMPANY, et al. | CVPS 2508295 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*             (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☒ On behalf of *(specify):* ROCKET COMPANIES, INC.
    under the following Code of Civil Procedure section:

    ☒ 416.10 (corporation)          ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)   ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)     ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)           ☐ 415.46 (occupant)
                         ☐ other:

7. **Person who served papers**
  a. Name: Joseph Goldbaum - JGI | Joseph Goldbaum Inc.
  b. Address: 4790 Irvine Blvd., Suite 105-504, Irvine, CA 92620
  c. Telephone number: 949-795-0760
  d. **The fee for service was:** $75.00
  e. I am:

    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☒ a registered California process server:
      (i) ☒ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.: PSC-227
      (iii) County: Orange

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: 12/27/2025

JOSEPH GOLDBAUM                  ▶
_____        _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)     (SIGNATURE)

# Exhibit 2 — Rocket Stipulation (State Court)

Stipulation confirming service completed 12/26/2025 and discussing SAC/leave posture and deadlines.

*Exhibit separator*

Brian A. Paino (SBN 251243)
bpaino@hinshawlaw.com
Zeeshan Iqbal (SBN 337990)
ziqbal@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
Telephone:    213-680-2800
Facsimile:    213-614-7399

Attorneys for *Defendants* **ROCKET CLOSE, LLC (F/K/A AMROCK TITLE CALIFORNIA INC.) and ROCKET COMPANIES, INC.**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF RIVERSIDE

| | |
|---|---|
| AUDREY LITTLE,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>ROCKET TITLE INSURANCE COMPANY; ROCKET CLOSE, LLC (F/K/A AMROCK TITLE CALIFORNIA INC.); ROCKET COMPANIES, INC.; OAKTREE FUNDING CORPORATION; AND DOES 1-50,<br><br>　　　　Defendants. | Case No.:  On O<br><br>Assigned to: Hon. Arthur Hester<br>Dept: PS1<br><br>[Unlimited Jurisdiction]<br><br>**STIPULATION TO EXTEND RESPONSE DEADLINE FOR DEFENDANTS ROCKET CLOSE, LLC AND ROCKET COMPANIES, INC.; [PROPOSED] ORDER**<br><br>Action Filed: November 12, 2025<br>Trial Date: NA |

This Stipulation to Extend Response Deadline for Defendants Rocket Close, LLC and Rocket Companies, Inc. ("Stipulation") is entered into between *Defendants* Rocket Close, LLC (f/k/a Amrock Title California Inc.) and Rocket Companies, Inc. (collectively, the "Defendants") and *Plaintiff* Audrey Little ("Plaintiff," and together with Defendants, the "Parties").

## RECITALS

**A.**　　On November 12, 2025, Plaintiff commenced this action by filing her original complaint (the "Complaint") against Defendants and Rocket Title Insurance Company ("Rocket Title"). The Court issued a Summons on the Complaint on the same date.

**STIPULATION TO EXTEND RESPONSE DEADLINE FOR ROCKET CLOSE, LLC AND ROCKET COMPANIES, INC. [PROPOSED] ORDER**

B.      Prior to the service of the Complaint, on October 18, 2025, Plaintiff filed a First Amended Complaint ("FAC") through which she added Oaktree Funding Corporation ("Oaktree") as a defendant.

C.      On January 5, 2026, Plaintiff filed a Request for Dismissal to dismiss Rocket Title Insurance Company (the "RFD"). The RFD was entered by the court the same day.

C.      Service was completed on Defendants on December 26, 2025. Consequently, the deadline for Defendants to file a responsive pleading is January 26, 2026.

D.      On January 6, 2026, Plaintiff filed a Motion for Leave to File Second Amended Complaint (the "Motion for Leave") wherein she seeks leave to file a Second Amended Complaint ("SAC"). The Motion for Leave is set for hearing on February 23, 2026.

E.      The Parties engaged in a meet and confer process that spanned multiple discussions and concluded on January 22, 2026 (the "Meet and Confer"). As part of the Meet and Confer, the Parties agreed to narrow the causes of action alleged against Defendants in the FAC through the filing the SAC. Defendants, in turn, agreed they would not oppose the Motion for Leave.

E.      To avoid unnecessary motion practice and aid in the efficient administration of this case, the Parties have agreed to enter into this Stipulation to extend the response deadline for Defendants to align with a decision on the Motion for Leave.

## TERMS

The Parties agree as follows:

1.      In the event the Court grants the Motion for Leave, Defendants shall have thirty (30) days from the date of service of the SAC to file a responsive pleading, as determined by Cal. Civ. Proc. Code § 471.5.

2.      In the event that the Motion for Leave is denied, Defendants shall fifteen (15) days from the date of service of an order denying the motion to file a response to the FAC.

**IT IS SO STIPULATED**.

[*Signatures to Follow*]

2                                        CASE NO. CVPS2508295

**STIPULATION TO EXTEND RESPONSE DEADLINE FOR ROCKET CLOSE, LLC AND ROCKET COMPANIES, INC. [PROPOSED] ORDER**

Dated:  February 14, 2026              **HINSHAW & CULBERTSON LLP**


By:_____
           BRIAN A. PAINO
           ZEESHAN IQBAL
Attorneys for *Defendants* **ROCKET CLOSE, LLC
(F/K/A AMROCK TITLE CALIFORNIA INC.)
and ROCKET COMPANIES, INC.**


Dated:  February 14, 2026              By:_____
           AUDREY LITTLE, *in pro per*

3                                    CASE NO. CVPS2508295

**STIPULATION TO EXTEND RESPONSE DEADLINE FOR ROCKET CLOSE, LLC AND ROCKET
COMPANIES, INC. [PROPOSED] ORDER**

## <u>ORDER</u>

Having considered the foregoing Stipulation, and good cause appearing therefor,

**IT IS ORDERED** that the Stipulation is **APPROVED**.

**IT IS FURTHER ORDERED** that, in the event the Court grants Plaintiff leave to file the Second Amended Complaint ("<u>SAC</u>"), Rocket Close, LLC (f/k/a Amrock Title California Inc.) ("<u>Close</u>") and Rocket Companies, Inc. ("<u>Companies</u>") shall have thirty (30) days from the date of service of the pleading to file a response, as determined by Cal. Civ. Proc. Code § 471.5.

**IT IS FURTHER ORDERED** that, if Plaintiff's Motion for Leave to File the SAC (the "<u>Motion</u>") is denied, Close and Companies will have fifteen (15) days from the date of service of an order denying the Motion to file a responsive pleading.

Dated: _____

_____

HON. ARTHUR HESTER
Judge of the Superior Court

**STIPULATION TO EXTEND RESPONSE DEADLINE FOR ROCKET CLOSE, LLC AND ROCKET COMPANIES, INC. [PROPOSED] ORDER**

# Exhibit 3 — 1/5/2026 Email Identifying Rocket Counsel

Email to Goldstein stating: 'Zeeshan is the attorney for Rocket Close and Companies.'

*Exhibit separator*

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** Mediation
**Date:** January 5, 2026 at 1:40 PM
**To:** Jason E. Goldstein jgoldstein@buchalter.com
**Cc:** Audrey Little audreylittle458@gmail.com, Zeeshan Iqbal ZIqbal@hinshawlaw.com

Hi Jason,

Zeeshan is the attorney for Rocket Close and Companies.  Would you / Oaktree be willing to attend a mediation with them and me regarding this case?.  I am hoping it would lead to a much faster resolution.


Regards,

Audrey Little
audreylittle458@gmail.com

# Exhibit 4 — Goldstein Declaration (2/13/2026)

Declaration asserting no knowledge of who would represent Rocket in litigation and that Rocket had not appeared at removal.

*Exhibit separator*

BUCHALTER LLP
JASON E. GOLDSTEIN (SBN:  207481)
RICHARD HOVSEPYAN (SBN:  365788)
18400 Von Karman Avenue, Suite 800
Irvine, CA  92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email:jgoldstein@buchalter.com
       rhovsepyan@buchalter.com

Attorneys for Defendant
OAKTREE FUNDING CORP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDREY B. LITTLE, <br><br> Plaintiff, <br><br> vs. <br><br> OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET COMPANIES, INC.; and DOES 1 through 50, inclusive, <br><br> Defendants. | CASE NO.: 5:26-cv-00402 MEMF (MBKx) <br><br> **DECLARATION OF JASON E. GOLDSTEIN IN SUPPORT OF DEFENDANT OAKTREE FUNDING CORP.'S OPPOSITION TO PLAINTIFF AUDREY B. LITTLE'S MOTION FOR REMAND** <br><br> [Opposition and Evidentiary Objections filed concurrently herewith] <br><br> Date:  March 19, 2026 <br> Time: 10:00 a.m. <br> Crtrm: 8(B) |

## <u>DECLARATION OF JASON E. GOLDSTEIN</u>

I, Jason E. Goldstein, hereby declare as follows:

1. I am an attorney duly licensed to practice law before all courts of the State of California, the State of Florida, all of the United States District Courts in California and the United States District Courts for the Southern and Middle Districts of Florida and the Northern District of New York.  I am a Partner at the law firm of Buchalter LLP ("Buchalter"), counsel of record for Defendant Oaktree Funding Corp. ("Oaktree"), in the above-referenced action.

1

**DECLARATION OF JASON E. GOLDSTEIN**

BUCHALTER 108125790v1

2.      Oaktree's removal was proper in all respects.  As stated in my previously filed declaration [Dkt. 23-2], Plaintiff Audrey B. Little's ("Plaintiff") operative First Amended Complaint contained federal claims for relief and Oaktree's removal was timely filed.

3.      At the time of removal, I was not aware of who would be representing the Rocket escrow agent in the Plaintiff's litigation, although I did know attorney Zee Iqbal was to whom I was directed to tender a claim relative to the escrow.  As I did not receive a formal response to my tender of claim on behalf of Oaktree from Mr. Iqbal, I did not know would represent the escrow agent in this litigation.

4.      At the time of removal, the Rocket escrow agent had not appeared in this litigation.  The only Defendant who had appeared was Rocket Title Insurance Company – who was dismissed on January 5, 2026.

5.      In my experience with respect to title insurance and escrow claims, the attorney handling the claims process is not necessarily the attorney who handles the litigation.

6.      In any event, the Rocket escrow agent has appeared in this action and requested relief from this Court.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on February 13, 2026, in Irvine, California.

                                             */s/ Jason E. Goldstein*
                                             JASON E. GOLDSTEIN

BUCHALTER LLP
IRVINE

2
**DECLARATION OF JASON E. GOLDSTEIN**

BUCHALTER 108125790v1

# Exhibit 5 — CM/ECF Docket Excerpts

Docket report excerpt showing Notice of Removal, errata, remand schedule, and Rocket counsel appearance entry.

*Exhibit separator*

ACCO,(MBKx),DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Eastern Division - Riverside)
### CIVIL DOCKET FOR CASE #: 5:26-cv-00402-MEMF-MBK

Audrey B Little v. Oaktree Funding Corporation et al
Assigned to: Judge Maame Ewusi-Mensah Frimpong
Referred to: Magistrate Judge Michael B. Kaufman
Case in other court:  Riverside Superior Court, CVPS2508295
Cause: 28:1441 Notice of Removal

Date Filed: 01/29/2026
Jury Demand: None
Nature of Suit: 290 Real Property: Other
Jurisdiction: Federal Question

**Plaintiff**

**Audrey B Little**                    represented by    **Audrey B Little**
                                                        81439 Merv Griffin Way
                                                        La Quinta, CA 92253
                                                        PRO SE

V.

**Defendant**

**Oaktree Funding Corporation**        represented by    **Jason E Goldstein**
                                                        Buchalter APC
                                                        1000 Wilshire Boulevard Suite 1500
                                                        Los Angeles, CA 90017
                                                        213-891-0700
                                                        Fax: 213-891-0400
                                                        Email: jgoldstein@buchalter.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Richard Liparit Hovsepyan**
                                                        Buchalter LLP
                                                        18400 Von Karman Avenue, Suite 800
                                                        Irvine, CA 92612-0514
                                                        949-760-1121
                                                        Fax: 949-720-0182
                                                        Email: rhovsepyan@buchalter.com
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Rocket Close, LLC**                  represented by    **Zeeshan Iqbal**
                                                        Hinshaw and Culbertson LLP
                                                        350 South Grand Avenue, Suite 3600
                                                        Los Angeles, CA 90071
                                                        213-680-2800
                                                        Fax: 213-614-7399
                                                        Email: ziqbal@hinshawlaw.com
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Rocket Companies, Inc.**

represented by **Zeeshan Iqbal**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Rocket Title Insurance Company**

**Defendant**

**Does**
*1-50*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/29/2026 | 1 | NOTICE OF REMOVAL from Superior Court of the State of California for the County of Riverside, Palm Springs Branch, case number CVPS2508295 Receipt No: ACACDC-41390008 - Fee: $405, filed by Defendants Rocket Companies, Inc., Rocket Close, LLC, Oaktree Funding Corporation. (Attachments: # 1 Exhibit Exhibit A to Notice of Removal, # 2 Exhibit Exhibit B to Notice of Removal, # 3 Exhibit Exhibit C to Notice of Removal, # 4 Complaint, # 5 Ex Parte Application for Order Compelling Payment of Policy Benefits, Cure of Title Defect, and Production of Escrow and Title Files, # 6 Minute Order RE Ex Parte Application for Order Compelling Payment, # 7 First Amended Complaint for Damages - Breach of Contract, # 8 Declaration of Audrey Little, # 9 Exhibit Binder Index A thru J with Denial, # 10 SIGNED Proof of Service, # 11 Exhibit Index on 1st Amended Complaint for Breach of Contract Warranty (Over $35,000) of AUDREY LITTLE, # 12 Emergency Supplemental Declaration of Audrey Little and [Proposed] Order Granting Immediate Temporary Restraint, # 13 Supplemental Exhibits (A-B) in Support of Plaintiff's Application for Temporary Restraining Order, # 14 Notice of Hearing RE Ex Parte Hearing - Temporary Restraining Order, # 15 Ex Parte Application for Order Shortening Time to Advance Hearing on Plaintiff's Noticed Motion for Declaratory Relief Regarding Enforceability of Deed of Trust, # 16 Disability Accommodation Request, # 17 Notice of Motion and Motion for Temporary and Preliminary Injunctive Relief Memorandum of Points and Authorities Declaration of Audrey B. Little, # 18 Corrected Nunc Pro Tunc First Amended Complaint for Damages on 1st Amended Complaint, # 19 Declaration of Robert Teague ISO Defendant Oaktree Funding Corporation's Opposition to Plaintiff Audrey B. Little's Motion for Temporary and Permanent Injunctive Relief, # 20 Audrey Little Ex Parte Exhibits A thru J, # 21 Exhibit Binder (CVPS2508295) Index on 1st Amended Complaint for Breach of Contract Warranty (Over $35,000) of AUDREY LITTLE, # 22 Plaintiff's Ex Parte Application for Temporary Restraining Order, # 23 Plaintiff's Ex Parte Application for Temporary Restraining Order; Order to Show Cause Re Preliminary Injunction; Request for Order Shortening Time) (Attorney Jason E Goldstein added to party Oaktree Funding Corporation(pty:dft), Attorney Jason E Goldstein added to party Rocket Close, LLC(pty:dft), Attorney Jason E Goldstein added to party Rocket Companies, Inc.(pty:dft))(Goldstein, Jason) (Entered: 01/29/2026) |
| 01/29/2026 | 2 | CIVIL COVER SHEET filed by Defendants Oaktree Funding Corporation, Rocket Close, LLC, Rocket Companies, Inc.. (Goldstein, Jason) (Entered: 01/29/2026) |
| 01/29/2026 | 3 | Initial DISCLOSURE of Local Rule 7.1 Disclosure Statement filed by Defendants Oaktree Funding Corporation, Rocket Close, LLC, Rocket Companies, Inc. (Goldstein, Jason) (Entered: 01/29/2026) |

| 01/29/2026 | | CONFORMED COPY OF COMPLAINT filed by Plaintiff Audrey B Little in Riverside Superior Court on 11/12/2025, attached as Exhibit 4. (jtil) (Entered: 01/30/2026) |
|---|---|---|
| 01/29/2026 | | FIRST AMENDED COMPLAINT filed by Plaintiff Audrey B Little in Riverside Superior Court on 11/17/2025, attached as Exhibit 7. (jtil) Modified on 1/30/2026 (jtil). (Entered: 01/30/2026) |
| 01/30/2026 | 4 | EX PARTE APPLICATION for Temporary Restraining Order filed by Plaintiff Audrey B Little. (Attachments: # 1 Lodged Proposed Order) (gk) (Entered: 01/30/2026) |
| 01/30/2026 | 5 | NOTICE OF ASSIGNMENT of Eastern Division Removal Case and Notice re Consent to proceed before a U.S. Magistrate Judge. This case was initially assigned to District Judge Sunshine Suzanne Sykes and referred to Magistrate Judge Michael B. Kaufman for discovery. Pursuant to this Court's General Order in the Matter of Assignment of Cases and Duties to the District Judges, this case has been randomly reassigned to District Judge Maame Ewusi-Mensah Frimpong. The case number on all documents filed with the Court in this case should read as follows: 5:26-cv-00402 MEMF (MBKx). (jtil) (Entered: 01/30/2026) |
| 01/30/2026 | 6 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (jtil) (Entered: 01/30/2026) |
| 01/30/2026 | 7 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (jtil) (Entered: 01/30/2026) |
| 01/30/2026 | 8 | NOTICE TO FILER OF DEFICIENCIES in Filed Document RE: Ex Parte Application for Temporary Restraining Order filed 1/30/2026 4 . The following error(s) was/were found: Local Rule 11-3.8 title page is missing, incomplete, or incorrect. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (gk) (Entered: 01/30/2026) |
| 01/30/2026 | 9 | NOTICE OF DEFICIENCIES in Attorney Case Opening. The following error(s) was found: The pro se litigant's email address was added to CM/ECF in error upon the opening of this Notice of Removal case. The pro se litigant's email will be removed from CM/ECF and will not be used for electronic service without the appropriate registration and consent. See Local Rule 53. (jtil) (Entered: 01/30/2026) |
| 01/30/2026 | 10 | NOTICE OF ERRATA filed by Defendant Oaktree Funding Corporation. correcting Notice of Removal (Attorney Civil Case Opening),,,,,,,,,,, 1 *Selection of Defendants - Only Representing Oaktree Funding Corp*. (Goldstein, Jason) (Entered: 01/30/2026) |
| 01/30/2026 | 11 | PLAINTIFF'S EMERGENCY MOTION TO REMAND AND FOR FEES (28 U.S.C. § 1447(c)) filed by Plaintiff Audrey B Little. (Attachments: # 1 Proposed Order) (yl) (Entered: 01/30/2026) |
| 01/30/2026 | 12 | NOTICE REGARDING PENDING MOTIONS SUBMITTED VIA EDDS filed by Plaintiff Audrey B Little. (yl) (Entered: 01/30/2026) |
| 01/30/2026 | 13 | PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (FOR PURPOSES OF CLARIFYING JURISDICTION) filed by Plaintiff Audrey B Little. (Attachments: # 1 Proposed Order) (yl) (Entered: 01/30/2026) |
| 01/30/2026 | 14 | PROOF OF SERVICE filed by defendant Oaktree Funding Corporation, re Notice of Reassignment of Eastern Division Removal Case (CV-106) - optional html form,, 5 , Notice to Counsel Re: Consent to Proceed before a US Magistrate Judge - optional html form 7 , Disclosure 3 , Civil Cover Sheet (CV-71) 2 , Errata 10 , Notice of Removal |

# Exhibit 6 — Pre-Removal SAC Stipulation Discussions

Email(s) reflecting Oaktree counsel 'now in position to stipulate' to SAC and related scheduling discussions.

*Exhibit separator*

From: **Goldstein, Jason E.** jgoldstein@buchalter.com
Subject: Oaktree/Rocket/Little [IMAN-BUCHALTER.FID6170674]
Date: January 27, 2026 at 12:32 PM
To: Audrey Little audreylittle458@gmail.com
Cc: Goldstein, Jason E. jgoldstein@Buchalter.com, Hovsepyan, Richard rhovsepyan@buchalter.com



Hi Audrey:

This email is to advise that I am now in the position to be able to stipulate to your filing a Second Amended Complaint.

Also, I would request that you stipulate to an order continuing the hearing on your injunction motion from February 10 to February 24. I will be out of state on the 10th at a conference.

Please let me know if you would be amenable to the above and I can prepare the stipulation as to the injunction motion and you can send me your stipulation on the Second Amended Complaint.

Please advise.

## Buchalter LLP

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

## Buchalter

**Jason E. Goldstein**
Partner
**T** (949) 224-6235
**F** (949) 720-0182
jgoldstein@Buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio | LinkedIn

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return

e-mail and please delete this message and any and all duplicates of this message from your system. Thank
you in advance for your cooperation. For additional policies governing this e-mail, please see
http://www.buchalter.com/about/firm-policies/.

## Exhibit 7 — Notice of Errata (Dkt. 10)

Errata clarifying Buchalter represents only Oaktree; filed 1/30/2026.

*Exhibit separator*

BUCHALTER LLP
JASON E. GOLDSTEIN (SBN: 207481)
RICHARD HOVSEPYAN (SBN: 365788)
18400 Von Karman Avenue, Suite 800
Irvine, California 92612-0514
Telephone: 949.760.1121
Facsimile: 949.720.0182
Email: jgoldstein@buchalter.com

Attorneys for Defendant
OAKTREE FUNDING CORP.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# RIVERSIDE DIVISION

| | |
|---|---|
| AUDREY B. LITTLE,<br><br>Plaintiff,<br><br>vs.<br><br>OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET COMPANIES, INC.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:26-cv-00402-MEMF-MBK<br><br>**NOTICE OF ERRATA RE ECF NO. 1** |

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, ALL INTERESTED PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 29, 2026, Buchalter LLP filed its Notice of Removal (ECF No. 1). Upon opening of the case, Buchalter LLP erroneously selected representation of all the Defendants. Buchalter LLP only represents Defendant Oaktree Funding Corp.

The undersigned apologizes for the inadvertent selection.

BUCHALTER LLP
IRVINE

---

**NOTICE OF ERRATA RE ECF NO. 1**
BUCHALTER 107850839v1

Case No. 5:26-cv-00402

DATED:  January 30, 2026          BUCHALTER LLP


By:      /s/ Jason E. Goldstein
         JASON E. GOLDSTEIN
         Attorneys for Defendant
         OAKTREE FUNDING CORP.

BUCHALTER LLP
IRVINE

NOTICE OF ERRATA RE ECF NO. 1                              Case No. 5:26-cv-00402
BUCHALTER 107850839v1

# EXHIBIT V-15

Declaration of Audrey Little v3 (Captioned; Jan 30)

*Captioned declaration / lodge cover (dated Feb 18, 2026)*

Divider generated 2026-02-21

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDREY LITTLE,<br><br>Plaintiff (Pro Se),<br><br>v.<br><br>OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC;<br>ROCKET COMPANIES, INC.; and DOES 1–50, inclusive,<br>Defendants. | **Case No. 5:26-cv-00402-MEMF (MBKx)**<br><br>Assigned to:<br>HON. MAAME EWUSI■MENSAH FRIM |

## LODGE EXHIBIT / ATTACHMENT
### Declaration of Audrey Little v3 (Jan 30)

Dated: February 18, 2026

Executed at La Quinta, California

/s/ Audrey Little

AUDREY LITTLE

Plaintiff in Pro Per

Page 1

UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

AUDREY LITTLE, Plaintiff, v. OAKTREE FUNDING CORPORATION, et al., Defendants.
Case No. 5:26-cv-00402

DECLARATION OF AUDREY LITTLE

I, Audrey Little, declare under penalty of perjury as follows:

1. I am the Plaintiff in this action and am proceeding in pro per. I have personal knowledge of the facts stated herein.

2. I submit this declaration in support of (a) my Ex Parte Application for Temporary Restraining Order, (b) my Motion for Leave to File the Second Amended Complaint for purposes of clarifying jurisdiction, and (c) my Emergency Motion to Remand and for Fees under 28 U.S.C. § 1447(c).

3. Prior to removal, I provided Defendants with a complete redlined version of the First Amended Complaint reflecting that the pleading was entirely superseded, including removal of all RESPA / Regulation X claims. I expressly advised that the Second Amended Complaint (v82) proceeds solely on state-law causes of action.

4. I met and conferred with counsel for Rocket Close and Rocket Companies regarding the Second Amended Complaint. During that meet-and-confer, we reviewed the causes of action in the SAC cause-by-cause. I expressly advised that RESPA / Regulation X was removed. Rocket agreed to respond only to the Second Amended Complaint.

5. I did not have a meet-and-confer with Oaktree. Oaktree declined to meet and confer and declined to grant a temporary pause of enforcement.

6. I did not refuse to move the injunction hearing. When Oaktree's counsel requested that the hearing be continued to February 24, 2026, I explained that moving the hearing later without protection would cause me additional irreparable harm. I therefore proposed multiple reasonable alternatives to accommodate scheduling while preventing further harm: (a) continuing the hearing to February 24 with a temporary pause in enforcement until that date; (b) requesting that the Court advance the hearing to an earlier date; and (c) proceeding on the existing hearing date if no pause were granted. Oaktree declined all of these options.

7. After the deadline to oppose my state-court injunction motion passed without a timely opposition, Defendants filed a Notice of Removal on January 29, 2026, freezing the state court's ability to act and creating an immediate gap in judicial protection.

8. I am a disabled individual and have suffered irreparable harm and face imminent risk of additional irreparable harm absent immediate court intervention. This includes medically documented injury and health impacts caused and exacerbated by Defendants' continued enforcement posture.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 30, 2026. /s/ Audrey Little Audrey Little

DATED: January 30, 2026

# EXHIBIT V-16

Healthcare / Irreparable Harm Exhibits Packet (PHI) v2 (with MRI)

*Medical and caregiving exhibits; includes PHI*

Contains PHI. Handle consistent with sealing/redaction procedures as required.

Divider generated 2026-02-21

# UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**AUDREY B. LITTLE,**

Plaintiff,                                                    **Case No. 5:26-cv-00402-MEMF (MBKx)**

v.

OAKTREE FUNDING CORPORATION, et al.,
Defendants.

## HEALTHCARE / IRREPARABLE HARM EXHIBITS

### NOTICE OF LODGING OF INADVERTENTLY OMITTED PHI EXHIBITS

Plaintiff lodges the following medical and caregiving exhibits solely to complete the irreparable-harm record. These materials include time-stamped medical records and screenshots previously referenced in Plaintiff's filings but inadvertently omitted from an electronic upload. This packet contains Protected Health Information (PHI). Plaintiff requests confidential handling and will comply with any sealing/redaction procedures the Court directs.

---

### Exhibit Index

Exhibit A: Cedars-Sinai After Visit Summary (Breast oncology)
Exhibit B: Care/communication screenshots (ear pain / symptoms)
Exhibit C: Care/communication screenshots (pain meds / Norco)
Exhibit D: UCLA Progress Note screenshot (telehealth / pain history)
Exhibit E: UCLA Progress Note screenshot (prior baseline visit)
Exhibit F: UCLA After Visit Summary screenshot (med changes / radiculopathy)
Exhibit G: MyChart provider list / appointments screenshots
Exhibit H: Additional MyChart screenshot(s) (as included)
Exhibit I: MRI Shoulder Left Without Contrast – Results (Collected 01/09/2026)

Dated: February 12, 2026
/s/ Audrey B. Little
AUDREY B. LITTLE, Plaintiff Pro Se

UNITED STATES DISTRICT COURT                    Case No. 5:26-cv-00402-

CENTRAL DISTRICT OF CALIFORNIA                  MEMF (MBKx)


AUDREY B. LITTLE, Plaintiff,

v.

OAKTREE FUNDING CORPORATION; ROCKET CLOSE,

LLC; ROCKET COMPANIES, INC.; and DOES 1–50, inclusive,

Defendants.


PLAINTIFF'S EMERGENCY CONSOLIDATED REPLY IN SUPPORT OF TRO, ORDER

SHORTENING TIME, AND PRELIMINARY INJUNCTION THROUGH FINAL

ADJUDICATION OR RECORDED CURE; AND RESPONSE TO DEFENDANTS'

REMOVAL NARRATIVE AND EVIDENTIARY OBJECTIONS


Plaintiff submits this Reply to present the record as it is—document-driven and timestamped—

and to prevent irreversible harm. Defendants are attempting to reframe a systemic closing and

gatekeeper failure into a borrower-disclosure morality play and to obtain timing leverage through

removal and late-night filing practice.

Defendants filed their federal opposition packet at 10:44 p.m. on February 9, 2026 and served it

by email/ECF notice. Plaintiff worked through the night because the date-certain harm matured

on February 10, 2026.


## I. KEY FACTS AND TIMELINE (UNDISPUTED)

• Rocket was served December 22, 2025; Oaktree was served December 31, 2025.

• Plaintiff's noticed state-court injunction opposition deadline was January 28, 2026 (court-day counted). Defendants missed it. No opposition filed.

• Oaktree filed its Notice of Removal on January 29, 2026 after business hours.

• Oaktree filed its federal opposition package at 10:44 p.m. on February 9, 2026, accompanied by multiple evidentiary-objection filings aimed at striking Plaintiff's irreparable-harm record.

## II.  THE INJUNCTION OPPOSITION DEADLINE WAS MISSED; REMOVAL THEN PROVIDED THIRTEEN EXTRA DAYS

Defendants' opposition to the noticed injunction was due January 28, 2026. The deadline was missed. No opposition was filed.

On January 29—after the missed deadline—Oaktree removed. Removal did not interrupt a timely response; the response had already been missed. Removal reset the procedural clock and provided Defendants approximately thirteen extra days to oppose in federal court compared to the state schedule.

Defense counsel states that removal meant Oaktree "did not need to file a response" to the pending state-court injunction motion.                    That statement ignores the fact that the state deadline had already passed before removal was filed. Removal functioned as an end-run around a missed deadline and a pending injunction posture.

## III.  REMOVAL MISSTATEMENTS: COUNSEL KNOWLEDGE, CONSENT, AND FEDERAL-CLAIM POSTURE

Rocket was served nine days before Oaktree and remained a defendant at removal. Under 28 U.S.C. § 1446(b)(2)(A), all properly joined and served defendants must join in or consent to removal at the time of removal.

On January 5, 2026 Plaintiff expressly identified Rocket's counsel to Oaktree's counsel ("Zeeshan is the attorney for Rocket Close and Companies"), copying Rocket's counsel on the same email chain.                                        Any representation that Rocket counsel was unknown, or that consent could be obtained only after later "discovery," is contradicted by that written notice.

By January 23, 2026 Plaintiff provided Oaktree a redlined version of the materially superseding pleading posture and explained that the SAC revisions were evidence-driven after Oaktree's production on December 10, 2025.                          Defendants' attempt to portray removal as compelled by surprise or by a stable federal-claim posture is inconsistent with the contemporaneous record.

Plaintiff requests expedited remand determination and fees under 28 U.S.C. § 1447(c).


## IV.  THIS IS A TOTAL GATEKEEPER COLLAPSE (TITLE / ESCROW / RECORDING / RECONVEYANCE / TITLE INSURANCE / QC)—NOT "ONE MISSED LIEN"

Defendants want this case to be about one allegedly "missed" deed of trust so they can pivot to borrower nondisclosure. That is not the record. The record supports, at minimum, serious questions that every core safeguard failed:

Defendants also mischaracterize Oaktree as a mere "conventional lender." The loan was processed as a non-conventional product, and Oaktree functioned as the underwriter—not a passive money source. Oaktree's own file reflects underwriting and lender QC responsibilities

tied to title and lien-priority conditions. Oaktree cannot invoke the "conventional lender" label to disclaim duty while simultaneously acting as the underwriting gatekeeper for title, CLTV, and required lien position.

Oaktree also had the stale preliminary title report dated 10/15/2024 in its file long before funding. The record reflects that this stale title material was in Oaktree's possession and relied upon in the underwriting/closing process since at least May 2025. A current title bring-down at or immediately before disbursement was the obvious safeguard; either it was never obtained, or it was obtained and ignored. Either scenario supports injunctive relief and undermines Defendants' effort to shift blame to borrower "disclosure."

• No current title bring-down was obtained immediately before disbursement (or, if obtained, Defendants proceeded anyway).

• Escrow did not comply with the lien-priority instruction requiring the lender's deed of trust to record in the required position as a condition to close. Oaktree admits this safeguard existed and that escrow recorded Oaktree in a subordinate position.

• Recording occurred after disbursement rather than on/before the disbursement date required by the closing instruction (recording order safeguard failed).

• A paid lien was not timely reconveyed/cleared, compounding the defective lien stack and demonstrating the title/escrow "cleanup" function failed.

• Title insurance / title-risk handling was not performed as it should have been (claim/denial/policy inconsistencies are in the record).

• Oaktree's own QC/title conditions were not enforced despite underwriting limits turning on title/CLTV gatekeeping.

## V.  DTI = $0; TITLE/CLTV WAS THE DISQUALIFIER—THAT IS WHY PLAINTIFF ASKED "IS IT ON TITLE?"

Defendants' "material concealment" narrative collapses under underwriting math. The family obligation required no monthly payment; disclosure would add $0 to DTI.

The underwriting gate was whether a lien appeared on title (CLTV/lien stack) and whether the lender's deed of trust could be recorded in the required position. That is why Plaintiff asked whether it was on title.

## VI.  DEFENDANTS' OBJECTION PACKET IS A "GAG" ATTEMPT TO ERASE IRREPARABLE HARM

Plaintiff's medical background further supports the credibility of her functional-harm testimony. Plaintiff worked in healthcare for 36 years. Plaintiff is not offering expert causation opinions. Plaintiff offers first-hand functional facts, supported by medical records, and explains why the physical consequences of forced displacement and overexertion are serious and irreversible for her.

Plaintiff is disabled with degenerative musculoskeletal conditions. Plaintiff also has microscopic colitis. During this period, Plaintiff has experienced stress-aggravated symptoms including night sweats, hair loss, and other immune-related changes. Plaintiff did not previously understand these stress responses until her treating physician explained that severe stress can trigger such physical symptoms. Plaintiff reports these facts as observed and as communicated to her by her treating providers; she does not ask the Court to make medical-causation findings on an emergency record.

Federal disability status and court accommodation: The Social Security Administration has found Plaintiff disabled under its rules since August 13, 2010. (Exhibit Binder v14, Section F-1.) Riverside Superior Court granted Plaintiff's disability accommodation request (MC-410), recognizing the need for accommodations in court proceedings. (Exhibit Binder v14, Section F-2.)

Caregiver reduction and resulting injury: Due to the financial strain and enforcement pressure, Plaintiff has been forced to reduce long-standing in-home assistance. As a result, Plaintiff performed physical tasks beyond her medical limitations and sustained a shoulder injury; an MRI was ordered to evaluate the injury (including suspected rotator cuff involvement). (Exhibit Binder v14, Section F-4; medical records in Exhibit Binder v14, Section F.)

Plaintiff further experienced an ear infection during this same period, which her physician advised may be associated with stress-related immune changes. Again, Plaintiff offers this only to show the concrete physical deterioration occurring during the enforcement-and-delay window and why continued pressure and forced move risk permanent injury and loss of function. Defendants filed multiple evidentiary-objection documents aiming to strike Plaintiff's disability and injury facts as "irrelevant."                                        Irreparable harm is a required TRO/PI element. Plaintiff offers first-hand functional facts and objective corroboration; Defendants' objections are an attempt to blind the Court to the irreparable-harm inquiry.

## VII.  RELIEF REQUESTED

• Immediate TRO restraining any trustee sale/title transfer/foreclosure steps;

• Immediate restraint of acceleration, default/late/collection fees, billing/collection activity, and coercive enforcement leverage;

• Immediate restraint of adverse credit furnishing/updating/verifying during the TRO period (or

require DISPUTED and bar new delinquency/default codes);

• Order Shortening Time and expedited PI hearing;

• Preliminary Injunction to remain in effect through final adjudication or recorded cure;

• Expedited remand determination and fees/costs under 28 U.S.C. § 1447(c);

• Bond waived or nominal ($\leq$ \$500).

## VIII.  CONCLUSION

Defendants missed a fixed state-court opposition deadline, removed the next day after business

hours, obtained thirteen extra days, and filed a 10:44 p.m. federal opposition package designed to

erase irreparable harm. The Court should enter immediate injunctive relief and expedite remand

and PI proceedings.

DATED: February 10, 2026

/s/ Audrey B. Little

AUDREY B. LITTLE

Plaintiff Pro Se

## Social Security Administration
# Benefit Verification Letter

Date: January 12, 2024
BNC#: 24B5395K13179
REF: A

AUDREY BETH LITTLE
81439 MERV GRIFFIN WAY
LA QUINTA CA  92253-8084

You asked us for information from your record. The information that you requested is shown below. If you want anyone else to have this information, you may send them this letter.

**Information About Current Social Security Benefits**

Beginning December 2023, the full monthly Social Security benefit before any deductions is $3,488.80.

We deduct $594.00 for medical insurance premiums each month.

The regular monthly Social Security payment is $2,894.00.
(We must round down to the whole dollar.)

Social Security benefits for a given month are paid the following month. (For example, Social Security benefits for March are paid in April.)

Your Social Security benefits are paid on or about the third of each month.

We found that you became disabled under our rules on August 13, 2010.

**Information About Past Social Security Benefits**

From December 2022 to November 2023, the full monthly Social Security benefit before any deductions was $3,380.70.

We deducted $560.50 for medical insurance premiums each month.

The regular monthly Social Security payment was $2,820.00.
(We must round down to the whole dollar.)

**Type of Social Security Benefit Information**

You are entitled to monthly disability benefits.

See Next Page



## MC-410  Disability Accommodation Request

**CONFIDENTIAL**

If you have a disability and need an accommodation while you are at court, you can use this form to make your request. For more information, see form MC-410-INFO .

Make this request at least **5 days** (when the court is open) before you need the accommodation.

Clerk receives and date stamps here.

**Court Name and Address:**

### 1  Your information

Name:  Audrey Little

Address: 81439 Merv Griffin Way

La Quinta CA  92253

Phone:  310-283-4448

Email:  audrey.little458@gmail.com

**Case Number (if you know it):**
CVPS2508295

**Case Name/Type (if you know it):**
Little  vs  Rocket

### 2  How are you involved in the case?

☐ Juror  ☒ Party  ☐ Witness  ☐ Lawyer
☐ Other (explain):

### 3  When and where do you need the accommodation? [date(s), time(s), and court location]

Supior court of Riversie , Palm Springs Division

### 4  What accommodation do you need at the court?

The ability to appear remotely (by Zoom or equivalent) when medically necessary;schedule hearings at earliest possible dates when court permits, consideration and limitations on continuances  where pheasa

### 5  Why do you need this accommodation to assist you in court?

I am disableld and this case is causng orolinged harm.  That these accommodations apply to all future hearings in this matter.

☒ More information on this request is attached.

Date: 12-31-2025

Audrey Little
Type or print name




Signature

**(Optional)** If a court employee, caregiver or other person helped fill out this form and is **willing to provide more information if needed**, provide contact information below:

Name:                          Email:                          Phone:

Judicial Council of California, *www.courts.ca.gov*
Rev. January 1, 2021, Optional Form
Cal. Rules of Court, rule 1.100

**Disability Accommodation Request**

MC-410, Page 1 of 2

→

Name: Audrey Little

| Case Number (if you know it): |
|---|
| CVPS2508295 |

---------------------- **Court fills out below** ----------------------

> **(Optional)**
> **Important!** If your case is delayed or dismissed after you make this request and you do not need the accommodation for the date you specified under 3, please contact the court at:
>
> Phone: _____    Email: _____

☒ Your request is **GRANTED.** The court will provide the accommodation(s) requested.

☐ Your request is **DENIED IN WHOLE OR IN PART.** The denied portion of your request:

   ☐ Does not meet the requirements of Cal. Rules of Court, rule 1.100.

   ☐ Creates an undue financial or administrative burden for the court.

   ☐ Changes the basic nature of the court's service, program, or activity.

   Explain the reasons supporting the box(es) checked above:

   _____

   _____

   ☐ **Instead**, the court will provide the following accommodation(s):

   _____

   _____

**The court will provide the accommodation(s):**

☐ For the date(s) and time(s) requested     ☐ Indefinitely

☐ On date(s): future courts hearing, unless trials or other evidentiary hearing where

☐ More information on this decision is attached. Physical attendance is necessary.

Date: 1.09.26

Arthur C Hester

Type or print name          ▶ Lee

                                    Signature

The court responded in person, by phone, or mail/email on: _____

**Note**: You may be able to ask for a review of this decision. Cal. Rules of Court, rule 1.100(g) explains how to do this.

Rev. January 1, 2021

**Disability Accommodation Request**

MC-410, Page 2 of 2

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[Print this form] [Save this form] [Clear this form]

SUPPLEMENTAL DECLARATION OF AUDREY LITTLE

IN SUPPORT OF MOTION TO ADVANCE CASE MANAGEMENT CONFERENCE

[¶ 1] I am a disabled individual with significant and ongoing medical conditions. My health is highly sensitive to prolonged stress, disruption of treatment, and physical overexertion. Procedural delay in this case is materially worsening my health and placing me at risk of permanent physical injury.

[¶ 2] I have a history of breast cancer and chronic autoimmune illness. My treating physicians have emphasized the importance of minimizing prolonged stress due to its impact on immune and inflammatory responses. Since this case began, sustained uncertainty, financial strain, and the risk of losing my home have caused a significant escalation of stress-related symptoms.

[¶ 3] For the first time since approximately 2009, I have experienced a flare of microscopic colitis, which is 100% stress-agitated. Due to the severity of symptoms, my physicians have recommended a colonoscopy and endoscopy. These symptoms arose during the pendency of this case.

[¶ 4] I have experienced new physical symptoms that I have never previously had, including persistent night sweats, unexplained body odor, hair loss, and immune-related issues. During this same period, I developed an ear infection for the first time in my life.

[¶ 5] I am a breast cancer survivor, having been diagnosed in 2017 and remaining cancer-free. Stress is a medically recognized risk factor for recurrence. Many of the physical stress responses I experience, including night sweats, are involuntary and not subject to conscious control.

[¶ 6] Due to the financial impact of this case, I have been forced to discontinue medically necessary therapies not covered by insurance. I have lost approximately three months of therapy that previously required approximately four hours per week.

[¶ 7] Based on my treatment history and medical guidance, therapy interruption has a compounding effect. Each month of missed therapy typically requires approximately two

to two and a half months of increased therapy to recover lost function. As a result, recovery is now projected to require approximately five months at approximately nine hours per week.

[¶ 8] I have also been unable to participate in adaptive physical education activities, which typically require approximately twelve hours per week and are critical to maintaining strength and preventing surgical intervention.

[¶ 9] Due to financial strain, I have been forced to reduce long-standing in-home assistance that I relied on for over twenty years. As a result, I have performed physical tasks beyond my medical limitations.

[¶ 10] As a direct result, I sustained a shoulder injury and am scheduled to undergo an MRI on January 9, 2026.

[¶ 11] I have sought ongoing medical care from my primary physician and pain management physician and am now being referred to an orthopedic surgeon due to progression of injury.

[¶ 12] Continued delay places me at risk of requiring surgical intervention that could result in an estimated sixty percent loss of mobility.

[¶ 13] Continued delay also increases the risk that I may lose my home, which was specifically designed to accommodate my physical limitations. Relocation would place me at significant risk of serious physical injury.

[¶ 14] The cumulative effect of prolonged delay places me at risk of irreparable physical harm. Advancing the Case Management Conference will allow the Court to promptly address scheduling and prevent further injury.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _____, at _____, California.

**UNITED STATES DISTRICT COURT - CENTRAL DISTRICT OF CALIFORNIA**

Little v. Oaktree Funding Corporation, et al.  |  Case No. 5:26-cv-00402-MEMF (MBKx)

## NOTICE OF LODGING - CONSOLIDATED MEDICAL EXHIBITS (PHI)

Plaintiff lodges the attached consolidated medical exhibits for Court convenience. These exhibits contain personal health information (PHI). Plaintiff provides them solely for the limited purpose of supporting the irreparable-harm record in connection with Plaintiff's requests for TRO/PI/status-quo relief and related jurisdictional briefing. Plaintiff respectfully requests that the Court and parties treat these exhibits as confidential and handle them consistent with applicable privacy protections (including sealing/redaction procedures as appropriate).

**EXHIBIT INDEX**

| Exhibit | Description |
|---------|-------------|
| Exhibit A | Cedars-Sinai After Visit Summary (past visit details) screenshot. |
| Exhibit B | Text message thread re acute ear pain and symptoms (context for functional harm). |
| Exhibit C | Text message thread re pain medication and side effects (itching). |
| Exhibit D | UCLA Health progress note excerpt (11/18/2025) - pain history and VAS. |
| Exhibit E | UCLA Health progress note excerpt (09/12/2024) - baseline history. |
| Exhibit F | UCLA After Visit Summary (11/18/2025) - radiculopathy visit and medications. |
| Exhibit G | MyChart appointment detail screenshot (oncology). |
| Exhibit H | MyChart provider list screenshot (care team). |

DATED: _____, 2026

/s/ Audrey B. Little

AUDREY B. LITTLE, Plaintiff Pro Se

**UNITED STATES DISTRICT COURT - CENTRAL DISTRICT OF CALIFORNIA**

Little v. Oaktree Funding Corporation, et al.  |  Case No. 5:26-cv-00402-MEMF (MBKx)

## Exhibit A

Contains PHI - submitted for limited purpose in support of irreparable-harm record.



**UNITED STATES DISTRICT COURT - CENTRAL DISTRICT OF CALIFORNIA**

Little v. Oaktree Funding Corporation, et al.  |  Case No. 5:26-cv-00402-MEMF (MBKx)

## Exhibit B

Contains PHI - submitted for limited purpose in support of irreparable-harm record.



**UNITED STATES DISTRICT COURT - CENTRAL DISTRICT OF CALIFORNIA**

Little v. Oaktree Funding Corporation, et al.  |  Case No. 5:26-cv-00402-MEMF (MBKx)

## Exhibit C

Contains PHI - submitted for limited purpose in support of irreparable-harm record.



**UNITED STATES DISTRICT COURT - CENTRAL DISTRICT OF CALIFORNIA**

Little v. Oaktree Funding Corporation, et al.  |  Case No. 5:26-cv-00402-MEMF (MBKx)

## Exhibit D

Contains PHI - submitted for limited purpose in support of irreparable-harm record.



**UNITED STATES DISTRICT COURT - CENTRAL DISTRICT OF CALIFORNIA**

Little v. Oaktree Funding Corporation, et al.  |  Case No. 5:26-cv-00402-MEMF (MBKx)

## Exhibit E

Contains PHI - submitted for limited purpose in support of irreparable-harm record.



**UNITED STATES DISTRICT COURT - CENTRAL DISTRICT OF CALIFORNIA**

Little v. Oaktree Funding Corporation, et al.  |  Case No. 5:26-cv-00402-MEMF (MBKx)

## Exhibit F

Contains PHI - submitted for limited purpose in support of irreparable-harm record.



**UNITED STATES DISTRICT COURT - CENTRAL DISTRICT OF CALIFORNIA**

Little v. Oaktree Funding Corporation, et al.  |  Case No. 5:26-cv-00402-MEMF (MBKx)

## Exhibit G

Contains PHI - submitted for limited purpose in support of irreparable-harm record.



**UNITED STATES DISTRICT COURT - CENTRAL DISTRICT OF CALIFORNIA**

Little v. Oaktree Funding Corporation, et al.  |  Case No. 5:26-cv-00402-MEMF (MBKx)

## Exhibit H

Contains PHI - submitted for limited purpose in support of irreparable-harm record.



**EXHIBIT I — MRI SHOULDER (LEFT) WITHOUT CONTRAST**

Contains PHI — ti

10:44 😊

**Back**          Test Details ⋮          **Close**

# MRI SHOULDER LEFT WO CONTRAST

Collected on Jan 09, 2026 12:50 PM

## Results

### Impression

IMPRESSION:
1. Supraspinatus tendinosis with evidence of chronic low-grade articular surface partial tear.
2. Infraspinatus tendinosis with subjacent traction cysts.
3. Mild degeneration of the superior labrum.
4. Trace subacromial subdeltoid bursal fluid.

Dictated by: Robert Lee MD
ELECTRONICALLY SIGNED ON: 01/12/2026

Physician to Physician Direct Line is: (818) 732-6894

### Narrative

Patient Name: LITTLE, AUDREY B
Date of Birth: 08/26/1965

# EXHIBIT V-17

Attending Physician Statement (Broadspire)

*Work capacity / restrictions form; includes PHI*

Contains PHI. Handle consistent with sealing/redaction procedures as required.

Divider generated 2026-02-21

# ATTENDING PHYSICIAN STATEMENT
**BROADSPIRE – A CRAWFORD COMPANY**
**DISABILITY & LEAVE MANAGEMENT OPERATIONS**
PO BOX 14773 Lexington, KY 40512
Phone: (800) 495-2315
FAX: 1-859-550-2744
www.choosebroadspire.com



**Please Note:** The information on this form may not be sufficient to support the employee's inability to perform his/her essential job functions; therefore please include the following whenever possible: most recent office visit notes, diagnostic test results, operative report(if applicable) and physical therapy notes (if applicable).

## EMPLOYEE INFORMATION

### Section 1: Employee Information

| EMPLOYEE NAME: | Audrey Little | | EMPLOYER NAME: | University of Southern California |
|---|---|---|---|---|
| CLAIM NUMBER: | C-2015-006930 | EE ID: 0212150 | DATE OF BIRTH: | 8/26/1965 |
| JOB TITLE/DESCRIPTION: 099086  TERMINATED | | | | |

## TO BE COMPLETED BY ATTENDING PHYSICIAN:

### Section 2: Complete this Section for Pregnancy

| Expected Delivery Date (mm/dd/yyyy): | Actual Delivery Date (mm/dd/yyyy): | Delivery Type: ☐ Vaginal ☐ C-Section | Date of first visit for this pregnancy (mm/dd/yyyy): | Date Hospitalized (mm/dd/yyyy): |
|---|---|---|---|---|
| Diagnosis: | ICD Code: | Did you advise your patient to cease working prior to delivery? ☐ YES ☐ NO | | If yes, what date? (mm/dd/yyyy): |

Were there any complications that caused your patient to cease working prior to the expected delivery date? ☐ YES  ☐ NO
If yes, please provide explanation:

### Section 3: Complete this section for all conditions

| Primary Diagnosis: Cervical Spondylosis / Complete tear Rotator Cuff Rt | Primary ICD Code: M75.121. |
|---|---|
| Secondary Diagnosis: Spinal Stenosis | Secondary ICD Code: M47.812 |

Please describe symptoms, including frequency, severity, and duration:
Pain, Mobility limited, inability to sit or stand for long periods of time, back pain, Shoulder, hip and neck pain

| Date of first visit for the current condition(s) (mm/dd/yyyy): 8/2010 | Date of last visit (mm/dd/yyyy): 4/2/25 | Date of next visit (mm/dd/yyyy): | Frequency of treatment: ☐ Weekly ☐ Monthly ☑ Other |
|---|---|---|---|
| Has the patient been treated for the same or similar condition in the past? ☑ YES ☐ NO ☐ Unknown | If Yes, provide treatment dates: From: 8/2010 Through: 4/2025 | Is the patient's condition work related? ☐ YES ☑ NO ☐ Unknown | What is/was the start Date of Disability? (mm/dd/yyyy): |
| Has the patient been hospitalized for this condition? ☑ YES ☐ No | | Patients Height: 5'3" | Patients Weight: 134 lbs |
| If Yes, provide date hospitalized: From:          Through: | | | |
| Was surgery performed? ☑ YES ☐ NO    If Yes, what was the procedure? Right Shoulder arthroscopy distal clavical excision | CPT Code: 29824 | Date Surgery performed (mm/dd/yyyy): 5-9-2013 |

Please describe your current treatment plan and include all medications with prescribed dosage:
Physical therapy, accupuncture, deep tissue body work, hydrocodone every 6 hours as needed for pain, Ibuprofin 800 mg tablets 3x daily, carisoprodal 350 3x daily as needed, tizanadine as needed, gabapentin 900 daily for nerve pain, muscle spasm    muscle spasm    Nerve pain, strength training if possible

Please comment on how cooperative and compliant the patient has been with current treatment plan:
Very compliant

# ATTENDING PHYSICIAN STATEMENT
**BROADSPIRE – A CRAWFORD COMPANY**
**DISABILITY & LEAVE MANAGEMENT OPERATIONS**
PO BOX 14773 Lexington, KY 40512
Phone: (800) 495-2315
FAX: 1-859-550-2744
www.choosebroadspire.com



**Additional Providers:** Are you aware of or have you referred your patient to any additional treating providers? ☐ YES  ☐ NO    If Yes, please provide the provider's name and contact information.

| Name: | Specialty: | Address: | Phone: |
|---|---|---|---|
| John Itamura MD | Reconstructive Shoulder Surgery Orthopedics Elbow | | 323-307-4913 |
| Aris | deep tissue bodywork | | 760-774-6284 |
| Kelly West | Pilates | | 310 7037010 |

Has the patient been advised to return to work?
☐ YES  ☒ NO

What is the expected return to work date? (mm/dd/yyyy):

☐ Full Time  ☐ Part Time  Part Time hours per day:

**How is your patient limited from performing his/her occupation and what prevents a return to work with full or partial duties?**

pain, limited range of motion, inability to stand/sit, inability to lift weakness, limited finger dexterity

**What are the patients restrictions (what the patient should not do) and why?**

no heavy lifting 7 lbs     No sitting standing > 1.5 hours
no over head activity     No pushing pulling
                          No driving while on medication

**What diagnostic tests or clinical exam findings support your patients work restrictions and limitations? Please include results of any examination, lab data, x-rays, EKGs, and MRI:**

X-rays - Arthitis, AC joint Arthitis, disc height loss, C45, 56, 6-7, 134 L5-S1
MRI's - Articular surface thinning,
On Exam - tender to palpetation, biceps, radial nerve tender on exam.
On Exam - c spine stiff and pain w/ motion
On Exam - tender trapezeus, tender SI joints

**Are there any non-medical factors which have a significant impact on functional abilities?** *(Please consider the following: Work place issues (ie problems with supervisor, performance); Social/Family issues; Alcohol/Drug abuse; Financial/Legal issues)*

No

## Section 4: Psychological Functions:

Check Applicable box below:
☒ Class 1 – Patient is able to function under stress and engage in interpersonal relations (no limitations)
☐ Class 2 – Patient is able to function in most stress situations and engage in some interpersonal relations (slight limitations)
☐ Class 3 – Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)
☐ Class 4 – Patient is unable to engage in stress situations and engage in interpersonal relations (marked limitations)
☐ Class 5 – Patient has significant loss of psychological, physiological, personal, and social adjustment (severe limitations)

Remarks:

What stress factors or problems with interpersonal skills have affected patient's ability to perform the duties of his or her job?

Is patient competent to endorse checks and direct use of proceeds?  ☐ Yes  ☐ No

Case 5:26-cv-00402-MEMF-MBK   Document 78-1   Filed 03/03/26   Page 656 of 725
Page ID #:3144

## ATTENDING PHYSICIAN STATEMENT
BROADSPIRE – A CRAWFORD COMPANY
DISABILITY & LEAVE MANAGEMENT OPERATIONS
PO BOX 14773 Lexington, KY 40512
Phone: (800) 495-2315
FAX: 1-859-550-2744
www.choosebroadspire.com



| (3) Patient's ability to lift/carry  (check) | Never 0% | Occasionally 1-35% | Frequently 36-66% | Continuously 67-100% |
|---|---|---|---|---|
| Up to 10 lbs | [ ] | ☑ | [ ] | [ ] |
| 11 to 20 lbs | ☒ | [ ] | [ ] | [ ] |
| 21 to 50 lbs | ☒ | [ ] | [ ] | [ ] |
| 51 to 100 lbs | ☒ | [ ] | [ ] | [ ] |
| Over 100 lbs | ☒ | [ ] | [ ] | [ ] |

| (4) Patient's ability to perform repetitively  (circle) | Right Hand | Left Hand |
|---|---|---|
| Fine finger movements | Yes (No) | Yes (No) |
| Eye/hand movements | (Yes) No | (Yes) No |
| Pushing/pulling | Yes (No) | Yes (No) |
| Dominant Hand | (Right) | Left |

## Section 5: Psychological Functions: *ONLY COMPLETE SECTION 5 & 6 FOR CLAIMS WHICH INVOLVE A MENTAL HEALTH CONDITION*

Check Applicable box below
- ☑ Class 1 - Patient is able to function under stress and engage in interpersonal relations (no limitations)
- ☐ Class 2 - Patient is able to function in most stress situations and engage in some interpersonal relations (slight limitations)
- ☐ Class 3 - Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)
- ☐ Class 4 - Patient is unable to engage in stress situations and engage in interpersonal relations (marked limitations)
- ☐ Class 5 - Patient has significant loss of psychological, physiological, personal, and social adjustment (severe limitations)

Remarks



What stress factors or problems with interpersonal skills have affected patient's ability to perform the duties of his or her job?



Is patient competent to endorse checks and direct use of proceeds? ☑ Yes  ☐ No

## Section 6: Exam Findings for Behavior Health Diagnosis

1. Presented with appropriate dress and hygiene in session? [ ] YES  [ ] NO Please describe _____

2. Psychomotor activity and ability to put forth effort? [ ] Unremarkable  [ ] Impaired Please describe _____

3. Speech [ ] Spontaneous [ ] Pressured [ ] Stammering [ ] Slurred [ ] Loud [ ] Soft [ ] Tangential [ ] Over productive [ ] Under productive

4. Affect [ ] Congruent [ ] Inappropriate [ ] Blunted [ ] Restricted [ ] Flat [ ] Labile

5. Mood [ ] Euthymic [ ] Angry [ ] Euphoric [ ] Apathetic [ ] Dysphoric [ ] Apprehensive

6. Able to spontaneously compose her/himself? [ ] YES  [ ] NO Please explain _____

7. Panic Attacks? [ ] YES  [ ] NO If Yes, Please specify below
   a Frequency of panic attacks _____
   b Duration of panic attacks _____
   c Symptoms experienced _____

8. Reasoning and/ or Judgment. [ ] Within normal limits  [ ] Impaired Please explain _____

9. Demonstrates ability to concentrate for [ ] less than 5 min  [ ] 5-10 min  [ ] 15-30 min  [ ] 30-50 min

C-2015-006930

# ATTENDING PHYSICIAN STATEMENT

**BROADSPIRE – A CRAWFORD COMPANY**
**DISABILITY & LEAVE MANAGEMENT OPERATIONS**
PO BOX 14773 Lexington, KY 40512
Phone: (800) 495-2315
FAX: 1-859-550-2744
www.choosebroadspire.com


**Broadspire®**
A CRAWFORD COMPANY

## Section 5: Physical Capabilities:

**(1) Patient's ability to:**

| | Hours (circle) | (check) | |
|---|---|---|---|
| Sit | 1 **2** 3 4 5 6 7 8 | ☐ Continuously | ☑ Intermittently |
| Stand | **1** 2 3 4 5 6 7 8 | ☐ Continuously | ☑ Intermittently |
| Walk | 1 2 **3** 4 5 6 7 8 | ☐ Continuously | ☑ Intermittently |

**(2) Patient's ability to: (circle)**

| | Yes | No |
|---|---|---|
| Climb | Yes | **No** |
| Twist/bend/stoop | Yes | **No** |
| Reach above shoulder level | Yes | **No** |
| Operate a motor vehicle | **Yes** | No |

**(3) Patient's ability to lift/carry: (check)**

| | Never 0% | Occasionally 1-35% | Frequently 36-66% | Continuously 67-100% |
|---|---|---|---|---|
| Up to 10 lbs. | ☐ | ☑ | ☐ | ☐ |
| 11 to 20 lbs. | ☑ | ☐ | ☐ | ☐ |
| 21 to 50 lbs. | ☑ | ☐ | ☐ | ☐ |
| 51 to 100 lbs. | ☑ | ☐ | ☐ | ☐ |
| Over 100 lbs. | ☑ | ☐ | ☐ | ☐ |

**(4) Patient's ability to perform repetitively: (circle)**

| | Right Hand | | Left Hand | |
|---|---|---|---|---|
| Fine finger movements | Yes | **No** | Yes | **No** |
| Eye/hand movements | **Yes** | No | **Yes** | No |
| Pushing/pulling | Yes | **No** | Yes | **No** |
| Dominant Hand | **Right** | | Left | |

**(5) In your opinion, why is the patient unable to perform duties?**

**(6) Do you expect improvement in any area? (If so, please comment and give dates/timeframes.)**

Expectation is no improvement and to limit worsening with all therapies.

## Section 6: Attending Physician Signature:

| Physician Name (Last Name, First, MI, Suffix) Please Print: | Specialty/Degree: |
|---|---|
| | |

Address:

| City: | State: | Zip: |
|---|---|---|
| | | |

| Telephone Number: | Fax Number: | Physician Tax Id Number: | Are you related to this patient? ☐ YES ☐ NO<br>If yes, describe relationship: |
|---|---|---|---|

**I certify that the above statements are true and accurate to the best of my knowledge and belief.**

| Signature: | Date: |
|---|---|

The Genetic Information Non-Discrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by law. To comply with this law, we are asking, that you not provide any genetic information when responding to this request for medical information. Genetic information as defined by GINA, includes an individual's family medical history, the results of an individuals' or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

Fraud Warning:
Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or a statement of claim with materially false information or conceals for the purpose of misleading, information concerning any fact material there to may be guilty of committing a fraudulent insurance act. Please see below for special notice required by state law.

Alaska – A person who knowingly and with intent to injure, defraud or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

Arizona – For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of loss is subject to criminal and civil penalties.

# EXHIBIT V-18

Declaration of Audrey B. Little (Irreparable Harm Expanded) (Execution draft 2026-01-31

*Expanded irreparable-harm narrative for execution*

Divider generated 2026-02-21

**SUPPLEMENTAL DECLARATION OF AUDREY B. LITTLE**

*(Irreparable Harm)*

I, Audrey B. Little, declare as follows:

1. I submit this Supplemental Declaration to describe the irreparable harm I am currently experiencing and will suffer absent immediate injunctive relief. The harms described below are personal, medical, professional, financial, and statutory in nature, are not fully compensable by money damages, and will occur before the Court can adjudicate the merits unless the status quo is preserved.

2. This action does not arise from a dispute over loan payments or loan terms. It arises from the failure of required California real-estate safeguards that govern how loans are created, secured, recorded, and enforced, including title review, escrow instructions, recording order, and lien priority. The transaction was expressly conditioned on compliance with those safeguards. The harm I face stems from the disregard of those safeguards and the attempt to treat the transaction as enforceable as if those safeguards did not matter.

3. Since the events giving rise to this action, I have been required to service multiple mortgage obligations that together consume essentially all of my monthly income. As a result, I am no longer able to meet ordinary living expenses in a sustainable manner.

4. I have previously experienced periods of financial strain related to serious medical treatment. In order to preserve my mobility and health, I exhausted my entire IRA and other personal resources. During those periods, I fell behind on certain obligations by necessity, but I did so without jeopardizing my housing.

5. The present circumstances are materially different. For the first time in my adult life, I am in jeopardy of not being able to make a mortgage payment. I have never before faced the prospect of defaulting on a mortgage in more than thirty-three years of homeownership. The risk I now face is not temporary hardship, but loss of housing stability itself.

6. I am currently behind on basic household and care-related expenses, including amounts owed to my gardener, caregiver, physician, and other household service providers. I have limited grocery funds and am behind on bills in a way I have never previously experienced.

7. Since 2009, I have relied on only two caregivers in total. One was my children's nanny throughout their entire childhood. The second caregiver has worked for me in a caregiving

capacity for over five years, and I have known her for more than twenty-two years. This continuity of care is critical to my ability to function safely and independently in my home.

8. As a direct result of my inability to assure continued payment, I have already permanently lost two days per week of caregiving support. My caregiver was forced to accept other employment because she did not know when I would be able to continue paying her. This loss has already occurred, cannot be reversed, and has materially impaired my ability to manage daily activities and maintain stability in my home.

9. When this matter is resolved, I will be forced to seek a new caregiver whom I do not know, resulting in the loss of long-established trust, familiarity with my medical needs, and continuity of care. This harm cannot be undone by a later ruling.

10. The harm I face is imminent and date-certain. Absent interim relief, material and irreversible consequences will occur beginning February 16, 2026. On or immediately after that date, I will be forced to make financial and housing decisions that cannot later be undone, regardless of how promptly the Court resolves the merits.

11. Critically, the mortgage payment I will be forced to forgo is not the loan at issue in this case, but my first mortgage, because I cannot knowingly damage the credit of my co-borrower, my son, Jake, who was not responsible for the circumstances giving rise to this dispute.

12. Jake signed the same loan documents and escrow instructions that I did, under penalty of perjury, in a different location. He relied on the same express representations regarding lien position and verification prior to disbursement and became aware of the lien defect immediately when I discovered it in October.

13. On one occasion, Jake made a loan payment only because I did not have sufficient funds at that time, I had already paid my first mortgage, and we were attempting to avoid immediate harm to his credit. His payment was protective in nature and not based on any belief that the transaction had proceeded properly.

14. Jake is not a party to this action solely because he has a newborn child and the demands of new parenthood. He is otherwise willing to submit a sworn declaration consistent with these facts if the Court wishes. His absence from this action should not be construed as acquiescence, agreement, or lack of harm.

15. I have already suffered irretrievable personal losses as a result of this financial distress, including cancellation of milestone family events, loss of ordinary community participation, and

extended absence from close family relationships. These losses are permanent and cannot be recreated or compensated through later monetary relief. Specifically, I was forced to cancel my 60th birthday celebration and my annual holiday party; I lost a planned trip to Bora Bora with my son; and I missed the FIFA World Cup with my other son, a once-in-a-lifetime trip we planned for approximately twelve years. I did not attend a single holiday event, and I did not attend a single event during the season in my community.

16. My daily functioning has been materially impaired. I no longer garden, walk my dogs regularly, or participate in adaptive physical education, which had been a central part of my wellbeing. I have not played pickleball in approximately four months. I have not been doing the healthy activities that stabilize my condition; instead I have done nothing but sit and work on this crisis. My WHOOP health-age metric increased by approximately six years during this period. I have become increasingly isolated and distracted, impairing my ability to function normally.

17. I have also been unable to be present for close family members during serious medical events. My 84-year-old mother suffered a fall, and my 59-year-old sibling has been hospitalized repeatedly over the past several months for a cumulative period of approximately eight weeks. Because of the instability created by this situation, I have been unable to be there for them during these critical periods. These losses of time, presence, and support can never be restored.

18. My home is uniquely suited to my medical needs and cannot be readily replaced. I live in a 5,000-square-foot, single-story home on approximately half an acre of usable property, with no steps. Every bathroom in the home was intentionally designed to accommodate my colitis and related medical limitations. These features are functional necessities, not preferences.

19. In addition to being medically suitable, my home is fully finished and upgraded throughout, including upgraded flooring, countertops, tile, landscaping, and high-end appliances. It is a completed, modern residence. Replicating these custom finishes and improvements elsewhere would require substantial additional expense and time.

20. My property includes a fully fenced backyard suitable for my animals and safe outdoor use. Replacement housing that allows multiple animals and provides comparable secure outdoor space is difficult to obtain.

21. I personally selected the specific lot on which my home was built. The site was chosen by me based on its location, orientation, elevation, and views, and the home was then constructed on

that lot to take advantage of those features. This was not a resale purchase of an existing home on an arbitrary site, but an intentional selection of a unique parcel that cannot be replicated.

22. My property has unobstructed west-facing and south-facing horizon views, sun exposure throughout the day, and an east-facing aspect, with mountain views to the south and west. These views are intrinsic to my lot and home and are not dependent on golf-course or common-area amenities.

23. My home is located within a fully built-out gated community. There are no vacant lots for sale in my community, and no comparable homes currently available. Any property that could serve as a potential replacement would necessarily be located in a different community with materially different costs, governance, and constraints.

24. At the time of this declaration, I am aware of only one property in the broader La Quinta area that approaches my home's size and general functional characteristics. That property is located in a gated golf-course community and is listed at approximately $6.5 million. While it is a high-quality home, it would still require additional work estimated at approximately $500,000 or less to meet my medical, functional, and layout needs.

25. Even assuming such a property could be made suitable, replacement would require an immediate purchase. If I am unable to purchase a replacement property promptly as a result of a forced or distressed sale, I would permanently lose my existing property tax basis, resulting in significantly higher property taxes for the remainder of my life. That statutory loss cannot be restored by a later court ruling or monetary award.

26. I would also permanently lose my ability to utilize a tax-deferred exchange under Internal Revenue Code Section 1031, which is dependent on timing and available proceeds. Once lost, that statutory right cannot be recreated.

27. In addition, I currently have a fixed mortgage interest rate of approximately 2.625%, reflecting market conditions that no longer exist. If I am forced to sell or lose my home, I will permanently lose the ability to finance a replacement property on comparable terms. Due to missed mortgage payments that will occur absent injunctive relief, I will also not have the credit profile required to obtain replacement financing. As a practical matter, replacement would require an all-cash purchase or would not be possible at all.

28. Forced displacement from my home would cause severe emotional and physical harm that cannot be repaired by money. Relocating would require managing the physical and logistical

burdens of moving a full household while disabled, including relocating with multiple animals and re-establishing safe and accessible living arrangements. The stress, physical exertion, and disruption to medical stability and routine associated with forced moves would impose lasting harm that cannot later be undone, even if I prevail on the merits.

29. The principal amount of the loan at issue is approximately $716,580. Denial of interim relief would expose me to losses at least ten times greater than the loan itself, converting a discrete financial problem into catastrophic and irreversible harm.

30. From the outset, I made repeated good-faith efforts to resolve this matter and prevent escalation, including proposals that would have resulted in no monetary recovery to me while allowing Oak Tree to be paid in full. As my losses mounted and additional defects became known, I continued to propose resolutions designed to contain the damage. Each proposal was rejected, and the consequences continued to compound.

31. Immediately prior to the events giving rise to this action, I launched a new limited liability company and invested time and resources in developing professional and creative work. I undertook this effort because I am sixty years old and anticipated a material change in my income at age sixty-five, and I chose work that I could perform despite my disability. As a direct result of the financial strain, uncertainty, and time demands created by this dispute, that work ceased entirely. The interruption of this age- and time-dependent livelihood planning cannot be repaired by a later monetary award.

32. The harms described above are entirely avoidable through temporary injunctive relief preserving the status quo. If relief is denied and these harms occur, the resulting consequences will be substantially more severe and expensive to remediate than preventing them now.

33. The harm described in this declaration was not preventable by any action on my part. There was nothing I could have done, through disclosure or otherwise, to prevent the failures that led to this situation.

34. My identification of February 16, 2026 as the irreparable-harm trigger was expressly communicated to Defendants. I advised that I was willing to move the injunction hearing earlier to any date the Court could hear it, or later with a temporary pause. I explained that I could not move the hearing back without such protection because irreparable harm would otherwise occur beginning February 16.

35. Absent injunctive relief, I am forced into an unjust and irreversible situation that will cause permanent harm before the Court can rule. Temporary injunctive relief is therefore necessary to preserve the status quo while the Court adjudicates the merits.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _____, 2026

La Quinta, California

_____

Audrey B. Little

# EXHIBIT V-21

Oaktree Notice of Claim against Title Policy
(09/10/2025)

September 10, 2025

Rocket Title Insurance Company
5910 North Central Expressway, Suite 1445
Dallas, TX 75206

Re:    Notice of Claim, Policy Number RTLSCA-104615.
        Date of Policy: 07/09/2025
        Property Address: 81439 Merv Griffin Way, La Quinta, CA 92253-8084
        Borrower: Audrey Beth Little and Jacob Little, JTWROS.
        Oaktree Loan Number: 22025050036
        Name of Insured: Oaktree Funding Corp.

Rocket Title Insurance Company:

Oaktree Funding Corp. ("Oaktree") hereby notifies Rocket Title Insurance Company ("Rocket") that it is making a claim against the above-referenced title policy (a copy of which is attached hereto).

Oaktree became aware during its attempt to sell the loan referenced above to an investor that there is an outstanding lien against the subject property in favor of Stewart and Lynda Resnick Revocable Trust in the amount of $393,000. This lien was recorded on 12/8/2024, which date was prior to Rocket's preliminary report and thus should have been discovered by Rocket. Currently, due to Rocket's error, Oaktree's lien is in third-position making it unsaleable. The Resnick lien on the property must be paid off in order for Oaktree's lien to assume second position so that the loan can be sold to its investor.

Oaktree looks forward to your prompt response.

Regards,

*Robert R. Teague*

SVP-Director of Compliance & General Counsel        cc: Stephen Lippens, Co-CEO

                                                Kristopher Martin, Co-CEO

**Oaktree Funding Corp. | NMLS#: 71640 | 3133 W. Frye Rd., Suite 205, Chandler AZ 85226**

## Exhibit Binder v18 – Section I Addendum (Federal Court Supplemental Filings)

**Purpose:** This addendum page lists the new materials appended to Exhibit Binder v17 to create v18. Use the bookmarks panel to jump directly to each item.

**Placement:** All new materials are appended as **Section I** after existing Sections A–H to preserve prior organization and bookmarks.

**Section I Contents (in order):**

I-01 Supplemental Declaration – Disclosures / Title Control (031146974763)

I-02 Supplemental Declaration – Disclosures / Title (031146975278)

I-03 Supplemental Declaration – Teague / Record Correction (031146965264)

I-04 Supplemental Declaration – Teague / Missing Loan File (031146965350)

I-05 Supplemental Declaration – Urgent Harm Update (031147009505)

I-06 Emergency TRO Supplement + Exhibit A (Emergency_TRO_Supplement_With_Apology_EXH_A)

I-07 **CONFIDENTIAL PHI packet** – Healthcare / Irreparable Harm Exhibits (031147002311) *(Provided separately as VOL2)*

I-08 One-Page Chronology – Service / Notice / Injunction Posture / Removal (031147009512)

I-09 Exhibit K – Chronology of Record Evidence (031146965518)

I-10 Appendix A – DTI vs. CLTV / Title Gatekeeper Failure (031146965407)

I-11 Notice of Supplemental Exhibit Excerpts (031146974788)

I-12 Notice of Lodging Selected Excerpts (031146965390)

I-13 Cover Page – Selected Exhibits (031146965468)

I-14 Proof of Service – Oaktree (CVPS2508295)

I-15 Irreparable Harm Summary Exhibit (from irreparrrable harm.docx)

Dated: 2026-02-23

FILED
CLERK, U.S. DISTRICT COURT

2/11/2026

CENTRAL DISTRICT OF CALIFORNIA
BY_____asi_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

AUDREY B. LITTLE, ■Plaintiff, ■■v.■■OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET COMPANIES, INC.; and DOES 1–50, inclusive, ■Defendants.
Case No. 5:26-cv-00402-MEMF (MBKx)

DISCLOSURES AND TITLE/ESCROW CONTROL■(IN SUPPORT OF PENDING EX PARTE APPLICATION FOR TEMPO

I, Audrey B. Little, declare as follows:

1. I am the Plaintiff in this action and submit this Supplemental Declaration in support of my pending Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction, and the limited supplemental exhibit excerpts submitted for the Court's convenience.

2. Defendants and/or their agents controlled and performed the title and escrow functions for the subject loan transaction, including obtaining and relying on title materials, ensuring compliance with escrow/closing instructions, reconveyance of paid-off liens, and the order and timing of recording at closing.

3. I did not receive or possess a current title report identifying the lien-priority defect prior to closing. Any preliminary title report and any updated title diligence (including any bring-down) were obtained, maintained, and relied upon by Defendants and/or their agents as part of underwriting/closing.

4. The record reflects reliance on a preliminary title report dated October 15, 2024 despite the loan closing in July 2025, and the absence of timely updated title diligence immediately before disbursement/recording.

5. As a result, the loan did not record in the required position at closing. Consistent with the record, disbursement occurred on July 14, 2025 and the Deed of Trust recorded on July 15, 2025. In addition, a paid-off lien was not timely reconveyed, and senior liens remained of record at the time of recording.

6. At the outset of the transaction, I disclosed the family obligation and specifically asked whether it was reflected on title because I understood that if it appeared on title it would affect lien position/CLTV and therefore loan eligibility. I proceeded in reliance on Defendants' title/escrow diligence and the non-discretionary closing instruction requiring recordation in second-lien position on or prior to disbursement.

7. This matter does not involve a borrower-disclosure failure as a cause of the lien-priority defect. Lien priority is determined by professional actions at closing—current title diligence, compliance with escrow instructions, reconveyance of paid-off liens, and correct recording order. Borrowers do not control these processes. Here, even full disclosure by me would not have changed the requirement that the lender's deed of trust record in second-lien position on or prior to disbursement, nor would it have cured a failure to perform the non-discretionary closing safeguards that fixed priority at inception.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
Executed on February 11, 2026, at La Quinta, California.

/s/ Audrey B. Little
AUDREY B. LITTLE

FILED

CLERK, U.S. DISTRICT COURT

2/11/2026

CENTRAL DISTRICT OF CALIFORNIA
BY _____asi_____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

AUDREY B. LITTLE,                                         **Case No. 5:26-cv-00402-MEMF (MBKx)**

Plaintiff,

v.

OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET COMPANIES, INC.; and DOES 1–50, inclusive,

Defendants.

**SUPPLEMENTAL DECLARATION OF AUDREY B. LITTLE REGARDING DISCLOSURES AND TITLE/ESCROW CONTROL (IN SUPPORT OF PENDING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND OSC RE PRELIMINARY INJUNCTION)**

I, Audrey B. Little, declare as follows:

1. I am the Plaintiff in this action and submit this Supplemental Declaration in support of my pending Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction, and the limited supplemental exhibit excerpts submitted for the Court's convenience.

2. Defendants and/or their agents controlled and performed the title and escrow functions for the subject loan transaction, including obtaining and relying on title materials, ensuring compliance with escrow/closing instructions, reconveyance of paid-off liens, and the order and timing of recording at closing.

3. I did not receive or possess a current title report identifying the lien-priority defect prior to closing. Any preliminary title report and any updated title diligence (including any bring-down) were obtained, maintained, and relied upon by Defendants and/or their agents as part of underwriting/closing.

4. The record reflects reliance on a preliminary title report dated October 15, 2024 despite the loan closing in July 2025, and the absence of timely updated title diligence immediately before disbursement/recording.

5. As a result, the loan did not record in the required position at closing. Consistent with the record, disbursement occurred on July 14, 2025 and the Deed of Trust recorded on July 15, 2025. In addition, a paid-off lien was not timely reconveyed, and senior liens remained of record at the time of recording.

6. At the outset of the transaction, I disclosed the family obligation and specifically asked whether it was reflected on title because I understood that if it appeared on title it would affect lien position/CLTV and therefore loan eligibility. I proceeded in reliance on Defendants' title/escrow diligence and the non-discretionary closing instruction requiring recordation in second-lien position on or prior to disbursement.

7. This matter does not involve a borrower-disclosure failure as a cause of the lien-priority defect. Lien priority is determined by professional actions at closing—current title diligence, compliance with escrow instructions, reconveyance of paid-off liens, and correct recording order. Borrowers do not control these processes. Here, even full disclosure by me would not have changed the requirement that the lender's deed of trust record in second-lien position on or prior to disbursement, nor would it have cured a failure to perform the non-discretionary closing safeguards that fixed priority at inception.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 11, 2026, at La Quinta, California.

/s/ Audrey B. Little

AUDREY B. LITTLE

FILED

CLERK, U.S. DISTRICT COURT

2/10/2026

CENTRAL DISTRICT OF CALIFORNIA

BY_____asi_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

AUDREY B. LITTLE,

Plaintiff,

v.

OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET

COMPANIES, INC.; and DOES 1-50, inclusive

Defendants.

Case No. 5:26-cv-00402-MEMF
(MBKx)

**THIRD SUPPLEMENTAL DECLARATION OF AUDREY B. LITTLE IN**

**SUPPORT OF EX PARTE TRO AND STATUS-QUO RELIEF**

I, Audrey B. Little, declare as follows:

1. I am Plaintiff in this action. I have personal knowledge of the facts stated in this declaration and, if called, could and would testify competently to them.

2. What this case is about. This case is about whether escrow, title diligence, escrow instructions, recording order, and closing safeguards (including pre-funding quality control) matter - i.e., whether the loan could properly fund only if Defendants' deed of trust could be recorded in the required lien position - and

whether Defendants and their agents followed those safeguards. It is not about

whether a borrower can or must independently discover and report what appears on

title; that is the role of title/escrow safeguards and the contractual escrow

instructions that govern closing.

3. Title inquiry. During the loan process, I specifically asked whether anything

appeared on title regarding a family-related loan or lien. I was told, in substance,

that there was nothing on title reflecting such a lien. That response did not surprise

me because, to my knowledge at the time, there was no recorded family lien

affecting title and the family obligation required no monthly payment.

4. Reliance on safeguards and escrow instructions. I relied on the transaction's

safeguards - title diligence, the escrow instructions I signed, and required

recordation priority - so that the loan would not fund unless the lender's deed of

trust could be recorded in the required position and unless title was accurately

checked near closing. I understood that escrow instructions requiring recordation

priority are binding and were the operative failsafe to prevent a defective closing.

5. Stale title materials; no current title check. Based on the documents I have

reviewed, title materials in the file reflect that the title commitment was based on

older/stale title information, and a current title report (bring-down) was not

obtained immediately before disbursement. If a current title report had been run

near closing/disbursement, the lien-priority problem would have been caught and the transaction would not have funded in a defective lien position.

6. When I learned of the defect. I learned of the lien-priority defect only when I later attempted to refinance and was blocked because of the recorded lien position. That was the first time I learned that the safeguards had failed in a way that prevented refinancing.

7. Economic logic. I am a numbers person. I would not have rationally refinanced into a higher interest rate or worse economic terms if the intended refinance benefit could not be achieved. Had I known that a lien priority defect would prevent refinancing and lock me into a worse rate/cost structure, I would not have proceeded.

8. DTI-neutral versus LTV/CLTV disqualifier. The family obligation required no monthly payment and therefore did not increase my debt-to-income ratio (DTI). The underwriting impact of a recorded family lien on title would have been to increase loan-to-value/combined loan-to-value (LTV/CLTV) beyond program limits and to prevent the required lien position from being achieved. I understood that if a family lien appeared on title, the loan would not and should not close. For that reason, a current title check and strict compliance with escrow instructions were essential failsafes.

9. Any single safeguard would have prevented this. If any one of the standard closing safeguards had been performed correctly - including running a current title report near closing, confirming lien position before disbursement, enforcing the escrow instruction requiring recordation in the required priority on or before disbursement, or conducting a final pre-funding quality control check - this transaction would not have funded in a defective lien position and the ensuing harm would not have occurred.

10. Forced, irreparable choices absent interim relief. If the Court does not grant TRO/status-quo relief, I will be forced to sell my home to prevent Defendants from being paid on a disputed lien position that should not impair title as recorded. I will also be forced to choose between paying the disputed obligation to avoid harm to an innocent co-borrower versus paying my first mortgage, risking my first missed payment in more than 33 years. These are irreversible harms that cannot be fully remedied later by money damages.

11. Requested relief. I submit this declaration in support of narrow, temporary status-quo relief preventing irreversible foreclosure/title transfer and collateral coercive harms (billing/collection pressure and adverse credit reporting) while the Court resolves jurisdiction/remand and sets prompt preliminary-injunction proceedings.

I declare under penalty of perjury under the laws of the United States that the

foregoing is true and correct.

DATED: February 10, 2026

/s/ Audrey B. Little

AUDREY B. LITTLE

FILED

CLERK, U.S. DISTRICT COURT

2/10/2026

CENTRAL DISTRICT OF CALIFORNIA

BY_____asi_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AUDREY B. LITTLE,

Plaintiff,

v.

OAKTREE FUNDING

CORPORATION; ROCKET CLOSE,

LLC; ROCKET COMPANIES, INC.;

and DOES 1-50, inclusive,

Defendants.

Case No. 5:26-cv-00402-MEMF

(MBKx)

FOURTH SUPPLEMENTAL DECLARATION OF AUDREY B. LITTLE

(RE: TEAGUE DECLARATION; RECORD CORRECTION; MISSING

'COMPLETE LOAN FILE' MATERIALS)

1. I am the Plaintiff in this action. I have personal knowledge of the facts stated

herein and could competently testify to them.

2. I submit this declaration for a limited purpose: (a) to correct the record regarding

assertions made in the Declaration of Robert Teague filed in support of Oaktree's

opposition to my ex parte application for temporary restraining order ('Teague

Decl.'), and (b) to identify critical gaps in the materials Oaktree produced as a purported 'Complete Loan File,' which bear directly on the 'concealment' narrative and on the lender/title gatekeeping failures at issue.

3. Mr. Teague's declaration presents itself as an authoritative statement of corporate facts. He represents that he is a custodian of Oaktree's books and records, that those records are maintained in the regular course of business, and that he reviewed the file and is 'extremely familiar' with me and the loan. (Teague Decl. paras. 3-5.)

4. Mr. Teague's declaration does not identify his full role at Oaktree. However, in a November 4, 2025 email to me, Mr. Teague identified himself in his signature block as 'SVP Director of Compliance & General Counsel' for Oaktree Funding Corp. (Exhibit K-1.)

5. As Oaktree's in-house General Counsel and senior compliance officer, Mr. Teague's role should have been to analyze what occurred in this transaction against Oaktree's underwriting conditions, title diligence requirements, and lien-position safeguards, and to ensure that any sworn factual assertions presented to the Court are verified and complete.

6. Instead, the Teague declaration advances a borrower 'concealment' narrative and a counterfactual underwriting conclusion (i.e., Oaktree 'would not have funded' had it known of the family loan), without addressing the gatekeeping documents and

conditions that control lien priority and recording before disbursement. (Teague Decl. paras. 8-10.)

7. I previously declared under penalty of perjury (executed December 23, 2025) that prior to applying for the subject loan, I informed the mortgage broker that I had a family loan, and that I understood at all times that if a recorded lien affected title I would not qualify. (Supplemental Declaration of Audrey Little executed Dec. 23, 2025, paras. 2-4.)

8. My prior declaration also states that the family obligation required no monthly payment and was effectively a zero-payment obligation, meaning the alleged obligation would not change debt-to-income calculations. (Id. para. 9.) The underwriting significance of the family loan is therefore not 'DTI manipulation,' but rather lien position/CLTV and title/recording conditions - issues controlled by title/escrow gatekeeping.

9. I further declared that the escrow instructions required the lender's deed of trust to be recorded in second position prior to funding, and that no current title report was run as of closing/recording. (Id. paras. 5-7.) Those are gatekeeper failures independent of any borrower disclosure narrative.

10. After Oaktree received a denial of its title insurance claim, Mr. Teague communicated to me threats of referral to the FBI and/or allegations of mortgage fraud based on the same 'concealment' theory. I understood this as pressure to

accept a borrower-fault narrative rather than address the transactional safeguards requiring second-position recording and verification before disbursement.

11. I responded that Oaktree could make any referral it wished because I disclosed the family loan to the broker, my co-borrower did not have knowledge of any undisclosed lien, and I repeatedly executed closing documents making lien position a mandatory condition of the transaction. In particular, the deed of trust I signed repeatedly identifies the instrument as a California second-lien deed of trust, and the escrow instructions required second-position recording on or before disbursement.

12. Oaktree did not produce any substantive evidentiary materials to me until approximately December 10, 2025, when I received a Dropbox link containing (among other items) a title insurance policy excerpt without a cover page that does not match the claim/denial materials, a title insurance claim denial, a title commitment reflecting a stale title effective date, and a file labeled 'Little Complete Loan File.'

13. The file labeled 'Little Complete Loan File' is approximately 600 pages and appears largely composed of generic or non-substantive materials. The only materials of apparent relevance within it are certain underwriting condition lists/requirements. Critically, however, the file omits core executed closing and

verification documents that would ordinarily appear in a complete closing and servicing file.

14. By way of example (non-exhaustive), the 'Complete Loan File' is missing: the executed and/or final Deed of Trust, the Note, signed escrow instructions/closing instructions, recording information and final recording details, current title pulls or bring-down title reports proximate to funding/recording, the final underwriter sign-off/clear-to-close (or equivalent approval), the credit report relied upon, and core third-party items customarily in the file (including title, tax, and insurance documentation). I have repeatedly requested those materials, along with any CPL letter(s), all claim submission/appeal communications and decisions relating to the title insurance claim, and Oaktree's signed-off quality control ('QC') documentation reflecting review and verification of lien position prior to disbursement, but those materials have not been provided to me.

15. These omissions are significant because the missing documents are the documents that would confirm lien-priority verification, underwriting approval, and the basis for funding/disbursement. Without them, the borrower-fault narrative presented in the Teague Declaration should not be credited on this TRO record.

16. I submit this declaration solely to ensure the Court has an accurate record while full briefing proceeds, and to support the need for narrow, temporary relief

preserving the status quo to prevent irreversible enforcement, housing destabilization, and medical regression.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 10, 2026, at La Quinta, California.

/s/ Audrey B. Little

AUDREY B. LITTLE

Plaintiff Pro Se

EXHIBIT K-1

Email from Robert R. Teague dated November 4, 2025 (title and direct number)


From: Robert Teague <rteague@oaktreefunding.com>
Subject: RE: call
Date: November 4, 2025 at 3:47 PM
To: Audrey Little <audrey.little@gmail.com>; Jon Epstein
<jepstein@oaktreefunding.com>

Ms. Little, Jon and I are available tomorrow 10am AZ time for a call. If you're available at that time, we can give you a call.

Robert R. Teague, Esq.
SVP Director of Compliance & General Counsel
Direct: 480.691.3808
Office: 1.800.521.3911
Nonqmexpert.com

FILED

CLERK, U.S. DISTRICT COURT

2/17/2026

CENTRAL DISTRICT OF CALIFORNIA

BY_____asi_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

AUDREY LITTLE, Plaintiff (Pro Se),          **Case No. 5:26-cv-00402-MEMF (MBKx)**

v.

OAKTREE FUNDING CORPORATION;

ROCKET CLOSE, LLC; ROCKET COMPANIES, INC.; and DOES 1–50, inclusive,

Defendants.

**SUPPLEMENTAL DECLARATION (URGENT HARM UPDATE)**

I, Audrey Little, declare under penalty of perjury under the laws of the United States of America as follows:

1. I am Plaintiff in this action and submit this urgent update to the Court regarding immediate irreparable harm.

2. I am already late on my first mortgage payment for the first time in my life as a direct consequence of the current enforcement posture and the need to protect my innocent co-borrower from foreclosure-related credit injury.

3. Oaktree (or its servicer) has attempted ACH withdrawals despite my instruction to stop, and I expect another ACH attempt. Uncontrolled withdrawals and resulting overdrafts/late fees/credit reporting are immediate and difficult to undo.

4. Absent an immediate status-quo TRO, I will be forced to list my home for sale immediately to prevent foreclosure-related credit injury to my co-borrower and to stop compounding harm before the Court can address jurisdiction and schedule a PI hearing.

Executed on February 17, 2026, at La Quinta, California.

/s/ Audrey Little

AUDREY LITTLE, Plaintiff Pro Se

<div align="center">

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

</div>

AUDREY LITTLE,                                          Case No.: 5:26-cv-00402-MEMF-MBK

   Plaintiff,

v.

OAKTREE FUNDING CORP., et al.,

   Defendants.

Hon. Maame Ewusi-Mensah Frimpong

<div align="center">

**EMERGENCY TRO SUPPLEMENTAL DECLARATION**

**(OAKTREE STATUS QUO ONLY — EXPEDITED RELIEF REQUIRED; EXHIBIT A)**

</div>

I, Audrey Little, declare as follows:

1. My first mortgage is serviced by Ally, which is not a party to this case. I am not requesting, and understand the Court cannot issue, any order directed to Ally.

2. The loan requiring emergency status-quo relief is the Oaktree loan (the "third" loan), which should not exist. I have supplied documentary evidence establishing the defect in that loan. This request seeks preservation of the status quo only.

3. Any delinquency designation, adverse credit reporting, or escalation on the Oaktree loan directly harms the credit profiles of Audrey Little and Jacob Little.

4. I have already paid approximately $36,000 and placed approximately $20,000 into escrow toward the Oaktree loan under pressure to prevent escalation and credit harm. I cannot continue making those payments.

5. Absent immediate status-quo relief restraining Oaktree, I have no choice but to not pay Ally. I am already late on Ally for the first time in my life. Additional derogatory reporting will compound beyond the approximately 100-point drop already documented in my exhibit binder and will materially impair my ability to secure housing, including qualifying for a rental even if forced to sell.

6. Despite written instructions directing Oaktree, its servicer(s), and its attorney not to do so, they continue attempting ACH withdrawals from my bank account. These ongoing debit attempts have resulted in a negative account balance and create immediate financial instability and additional risk of harm. A true and correct copy of today's bank statement reflecting the ACH attempt(s) and negative balance is attached as Exhibit A.

7. My disability and medical harm from housing instability were acknowledged in the state-court proceedings, and the state court limited delay and managed timing with urgency in light of that harm.

8. I cannot wait for a remand decision because the harm is occurring now. The delay has produced the foreseeable outcome: compounding credit, housing, and medical harm before the Court can rule.

9. Plaintiff respectfully apologizes for multiple filings and does not intend to burden the Court. Plaintiff is submitting only time-sensitive updates because the underlying harm is escalating by the day.

**REQUESTED EMERGENCY RELIEF**

10. Because Ally is a non-party, I request emergency relief directed solely to Oaktree and all persons/entities acting for or in concert with Oaktree (including any servicer, trustee, debt collector, and counsel), as follows:

a. Immediately cease initiating or attempting any ACH withdrawals or other electronic debits from any account belonging to Audrey Little;

b. Refrain from any adverse credit reporting or furnishing concerning the Oaktree loan as to Audrey Little or Jacob Little during the TRO period;

c. Refrain from any collection escalation, default actions, enforcement activity, or foreclosure-related steps relating to the Oaktree loan during the TRO period; and

d. Preserve the status quo pending further order of the Court.

11. Plaintiff further requests expedited handling, including shortened briefing and/or the earliest available hearing date (or decision on the papers), due to ongoing irreparable harm.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: February 18, 2026

/s/ Audrey Little

Audrey Little, Plaintiff (Pro Se)

**EXHIBIT A**

**Bank Statement / Account Activity Showing ACH Attempt(s) and Negative Balance**

(Dated February 18, 2026)

## CONFIDENTIAL – PHI Exhibits Provided Separately (VOL2)

This page is a placeholder in VOL1 only.

The Healthcare / Irreparable Harm Exhibits packet contains protected health information (PHI) and is provided as a separate PDF:

**Exhibit_Binder_v18_VOL2_CONFIDENTIAL_PHI.pdf**

If the Court requires sealing/redaction, file and handle this packet consistent with the Court's privacy procedures and any applicable protective/sealing orders.

FILED

CLERK, U.S. DISTRICT COURT

2/17/2026

CENTRAL DISTRICT OF CALIFORNIA

BY _____ asi _____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

**AUDREY LITTLE,**          Case No. 5:26-cv-00402-MEMF (MBKx)

    Plaintiff,

**v.**

OAKTREE FUNDING CORPORATION;

ROCKET CLOSE, LLC;

ROCKET COMPANIES, INC.; and

DOES 1–50, inclusive,

    Defendants.

## ONE-PAGE CHRONOLOGY

(SERVICE • NOTICE • INJUNCTION POSTURE • REMOVAL)

| Date | Event | Why it matters | Exhibit |
|---|---|---|---|
| 12/26/2025 | Rocket Companies, Inc. personally served (CT Corp registered agent). | Triggers unanimity requirement (served co-defendant). | Ex. 1 |
| 12/31/2025 | Oaktree personally served via registered agent (Cogency). | Shows formal notice and anchors removal clock; injunction posture existed before removal. | |
| 01/13/2026 | Courtesy copy of noticed PI motion emailed to Goldstein; formal service to follow. | Shows advance notice to counsel; removal not a surprise response. | Ex. 9 |
| 01/16/2026 | PI motion + supporting | Confirms noticed | Ex. 10 |

| | | | |
|---|---|---|---|
| | materials served on Oaktree's registered agent. | injunction posture and record were served pre-removal. | |
| 01/23/2026 | Plaintiff sends redlined FAC and notice that amended pleading posture is evidence-based. | Confirms advance notice of SAC/amendment posture before removal; defeats "surprise" narrative. | Ex. 12 |
| 01/27/2026 | Goldstein email: "now in the position to stipulate" to SAC; discusses hearing movement. | Confirms SAC posture known and negotiated pre-removal; supports prejudice/timing. | Ex. 6 |
| 01/28/2026 | State-court noticed PI opposition deadline — MISSED (no opposition filed by deadline). | Shows non-opposition at noticed deadline; removal filed the next evening in the gap. | Ex. 9–10 |
| 01/29/2026 | Oaktree removes case late in statutory window. | Removal filed after MISSED 1/28 opposition deadline and before 1/30 response posture; resets deadlines and delays adjudication while unanimity remained unsatisfied. | Ex. 5 |
| 01/30/2026 | Defense files Errata clarifying Buchalter represents only Oaktree. | Confirms no authority to bind Rocket; does not cure missing consent. | Ex. 7 |
| 09/10/2025 | Oaktree claim letter: Oaktree "became aware" of lien later during attempted sale. | Supports gatekeeper/QC failure inference and need for status-quo protection. | Ex. 11 |

Dated: February 17, 2026

/s/ Audrey Little

AUDREY LITTLE, Plaintiff Pro Se

2

FILED

CLERK, U.S. DISTRICT COURT

2/10/2026

CENTRAL DISTRICT OF CALIFORNIA

BY_____asi_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AUDREY B. LITTLE,

Plaintiff,

v.

OAKTREE FUNDING

CORPORATION; ROCKET CLOSE,

LLC; ROCKET COMPANIES, INC.;

and DOES 1–50, inclusive,

Defendants.

Case No. 5:26-cv-00402-MEMF

(MBKx)

EXHIBIT K

CHRONOLOGY OF RECORD EVIDENCE (FOR COURT'S CONVENIENCE)

Plaintiff provides the following chronology solely to assist the Court in locating

specific record excerpts referenced in Plaintiff's Reply and declarations. The table

identifies the issue addressed, the contemporaneous documentary evidence, and the

corresponding exhibit/page citations in the lodged materials.

| Issue raised in Opposition/Declaration | Record evidence (date/time; subject; recipients) | Exhibit / page |
|---|---|---|
| Notice of TRO/SAC | Dec. 8, 2025 email to | Selected Excerpts, Ex. H |

| posture | Goldstein and Teague with subject referencing TRO/SAC posture (early notice). | (p. 1) |
|---|---|---|
| Operative claims / RESPA posture | Jan. 23, 2026 email to Goldstein providing a redlined complaint reflecting removal of federal RESPA claim before removal. | Exhibit Binder excerpt, Ex. G (p. 387) |
| Plaintiff disability/medical impacts | Underwriting/QC materials reflecting lender verification of disability income and reliance on underwriting/title conditions. | Appendix A / Ex. Binder p. 98 |
| DTI vs. CLTV / DTI impact | Where the obligation is $0/month, the impact on DTI is mathematically zero; lien/CLTV effects are addressed through title/recording safeguards and lien-position requirements. | Appendix A |
| Lender/title "gatekeeper" requirements | Specific closing/underwriting conditions requiring verification of lien position prior to disbursement (supports narrow, time-limited status-quo relief). | Selected Excerpts / Exhibit Binder (cite page if included) |

DATED: February 10, 2026

Respectfully submitted,

/s/ Audrey B. Little

AUDREY B. LITTLE

Plaintiff Pro Se

FILED

CLERK, U.S. DISTRICT COURT

2/10/2026

CENTRAL DISTRICT OF CALIFORNIA

BY _____asi_____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

AUDREY B. LITTLE,

Plaintiff,

v.

OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET

COMPANIES, INC.; and DOES 1-50, inclusive

Defendants.

Case No. 5:26-cv-00402-MEMF (MBKx)

**APPENDIX A: DTI VS. CLTV - TITLE GATEKEEPER FAILURE (FOR TRO/STATUS-QUO RELIEF)**

This Appendix summarizes the narrow underwriting and gatekeeper point relevant to the Court's TRO/status-quo analysis:

- DTI would not change: The family obligation required no monthly payment. Adding a $0 monthly payment does not increase debt-to-income ratio (DTI).
- CLTV would disqualify: If a current title report/bring-down had been run near closing/disbursement and the family lien appeared on title, combined loan-to-

value (CLTV) would have increased beyond the program limit and Plaintiff would not have qualified for the loan at all.

- This is why title/escrow safeguards were dispositive: The transaction was conditioned on correct lien priority and current title verification; those safeguards exist precisely to prevent funding when required lien position/CLTV conditions cannot be met.

- Defendants' own underwriting/QC conditions reflect DTI and CLTV thresholds: See Exhibit Binder v14 at p. 98 (MAX DTI / MAX CLTV conditions).

- The title materials in the file were facially stale: See Exhibit Binder v14 at p. 47 (Preliminary Title Report dated 10/15/2024). A current bring-down near funding would have revealed recorded encumbrances affecting CLTV/lien priority.

- Closing instructions required second position on or before disbursement: See Exhibit Binder v14 at p. 11 (Specific Closing Instruction requiring recordation in 2nd lien position on or prior to disbursement).

- Accordingly, Defendants' post hoc concealment narrative is not dispositive for interim relief: the dispositive gatekeeper question is whether current title and lien-priority conditions were verified before funding/disbursement.

DATED: February 10, 2026

/s/ Audrey B. Little

AUDREY B. LITTLE, Plaintiff Pro Se

FILED
CLERK, U.S. DISTRICT COURT

2/11/2026

CENTRAL DISTRICT OF CALIFORNIA
BY_____asi_____DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

AUDREY B. LITTLE,
Plaintiff,

v.

OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET COMPANIES, INC.; and DOES 1–50, inclusive,
Defendants.

Case No. 5:26-cv-00402-MEMF (MBKx)

**PLAINTIFF'S NOTICE OF SUPPLEMENTAL EXHIBIT EXCERPTS IN SUPPORT OF PENDING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

Plaintiff Audrey B. Little, appearing pro se, respectfully submits this Notice to provide the Court with a limited set of key excerpt pages for the Court's convenience in ruling on Plaintiff's pending Ex Parte Application for Temporary Restraining Order (filed January 30, 2026; briefing completed February 10, 2026).

The supplemental exhibits consist of five (5) pages excerpted from materials previously lodged/served (including Plaintiff's Exhibit Binder v14 and the recorded Deed of Trust). These excerpts are provided solely to organize the most probative record evidence concerning (i) the timing of disbursement versus recordation, and (ii) Defendants' own closing/underwriting conditions requiring the loan to record in second-lien position on or prior to disbursement.

In particular, the excerpts reflect: (1) disbursement on July 14, 2025; (2) recordation on July 15, 2025; (3) an express instruction that the deed of trust must record in 2nd lien position on or prior to disbursement; (4) underwriting/QC conditions premised on second-lien status and CLTV limits; and (5) title policy effective-date language tying coverage to the later of the policy date or recording of the insured mortgage.

No new arguments are presented by this Notice. Plaintiff also notes that the proposed order previously submitted in Word format reflects the preferred form naming co-borrower Jacob (Jake) Little.

DATED: February 11, 2026

/s/ Audrey B. Little
AUDREY B. LITTLE
Plaintiff Pro Se

Exhibit 1 — Recorded Deed of Trust (Recording Stamp 07/15/2025)

RECORDING REQUESTED BY:

Rocket Close and Title, Inc (the 'Settlement Agent')

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME    Settlement Agent ATTN: Recording

STREET ADDRESS    662 Woodward Ave

CITY, STATE & ZIP CODE    Detroit, MI 48226

DOC # 2025-0214839

07/15/2025 08:20 AM Fees: $84.00
Page 1 of 21
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: NORMA #248

SPACE ABOVE FOR RECORDER'S USE ONLY

## DEED OF TRUST

### Title of Document

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☐ Exempt from the fee per GC 27388.1 (a) (2); This document is subject to Documentary Transfer Tax

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☑ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☐ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

Exhibit 28 – Proof of Disbursement (07/14/2025)

Case 5:26-cr-00021-JFH-MRK Document 88-1 Filed 02/13/26 Page 3 of 60 Page ID Page #:1953188



**CHASE** 🔾

June 24, 2025 through July 22, 2025

Primary Account: **000000818985381**

## TRANSACTION DETAIL  (continued)

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| 07/07 | Remote Online Deposit            1 | **120.00** | 2,430.49 |
| 07/07 | Unitedhealthcare Premium     781482043821     Tel ID: 1836282001 | -544.24 | 1,886.25 |
| 07/07 | Unitedhcmedicare Medinspymt 000001321677779 Tel ID: 9000447048 | -115.40 | 1,770.85 |
| 07/07 | Zelle Payment To Ericpagelyahoo.Com Pagel Jpm99Bek5Ru3 | -1,041.67 | 729.18 |
| 07/07 | 07/04 Payment To Chase Card Ending IN 8129 | -300.00 | 429.18 |
| 07/07 | 07/06 Payment To Chase Card Ending IN 8129 | -100.00 | 329.18 |
| 07/07 | 07/06 Payment To Chase Card Ending IN 8129 | -190.00 | 139.18 |
| 07/07 | Affirm Inc        Affirm Pay 4428065       Web ID: 0000317218 | -275.48 | -136.30 |
| 07/07 | Affirm Inc        Affirm Pay 4780332       Web ID: 0000317218 | -80.07 | -216.37 |
| 07/07 | Bloomingdales    Auto Pymt  721716665280274 Web ID: Citiautfdr | -54.53 | -270.90 |
| 07/07 | Paypal          Inst Xfer  Instacart      Web ID: Paypalsi77 | -41.70 | -312.60 |
| 07/07 | Paypal          Inst Xfer  Instacart      Web ID: Paypalsi77 | -23.52 | -336.12 |
| 07/07 | Paypal          Inst Xfer  Adobe Inc Adobe Web ID: Paypalsi77 | -12.99 | -349.11 |
| 07/08 | Zelle Payment From Lance Betson Wfct0Yzvjr59 | **2,000.00** | 1,650.89 |
| 07/08 | 360 Sheffield Fi Trans Pmt        PPD ID: 1561771532 | -390.47 | 1,260.42 |
| 07/08 | Ebay Comwrxgt9B9 Payments   4Vbdfmirqgpom20 Web ID: 1395398000 | -191.25 | 1,069.17 |
| 07/08 | Griffin Ranch Ho L7709420        PPD ID: 1711041244 | -590.00 | 479.17 |
| 07/08 | Paypal          Inst Xfer  Flexjobs      Web ID: Paypalsi77 | -2.95 | 476.22 |
| 07/08 | Card Purchase With Pin  07/08 Homegoods 44439 Town C Palm Desert CA Card 6892 | -101.04 | 375.18 |
| 07/09 | Broadspire Svcs  Claimpmt   6710046536      CCD ID: B363917295 | **10,630.00** | 11,005.18 |
| 07/09 | Paypal          Inst Xfer  Google Google_Y Web ID: Paypalsi77 | -149.95 | 10,855.23 |
| 07/09 | Paypal          Inst Xfer  Instantink     Web ID: Paypalsi77 | -8.69 | 10,846.54 |
| 07/10 | Card Purchase           07/08 Hobby-Lobby #709 Rancho Mirage CA Card 6892 | -15.02 | 10,831.52 |
| 07/10 | Ally Home Loans  Loan Paymt 7123095684      Web ID: 9Drafting | -6,587.64 | 4,243.88 |
| 07/10 | Imp Irrig Dist   Power Bill        PPD ID: 9960038000 | -955.39 | 3,288.49 |
| 07/10 | Frontier Communi Bill Pay   21139369821     Tel ID: 7529252911 | -200.00 | 3,088.49 |
| 07/10 | Select Portfolio Sps       0031420235      Web ID: 1870465626 | -3,022.81 | 65.68 |
| 07/11 | Recurring Card Purchase 07/11 Hudforeclosed.Com 877-5038719 CA Card 6892 | -49.60 | 16.08 |
| 07/11 | Paypal          Inst Xfer  Apple.Com Bill  Web ID: Paypalsi77 | -106.98 | -90.90 |
| 07/11 | Paypal          Inst Xfer  Apple.Com Bill  Web ID: Paypalsi77 | -37.95 | -128.85 |
| 07/11 | Affirm Inc        Affirm Pay 6853746       Web ID: 0000317218 | -17.94 | -146.79 |
| 07/14 | Card Purchase Return    07/10 Hobby-Lobby #709 Rancho Mirage CA Card 6892 | 4.30 | -142.49 |
| /14 | Real Time Transfer Recd From Aba/Contr Bnk-072000326  From: Bnf-Amrock Ref: 746429 Info: Text-Rmtinf-Loan Proceeds Audrey Beth Little Id: 20250714021000021P1Brjpc01440268995 Recd: 18:27:50 Trn: 1223962195Gc Bref: 2579A0A1-C0C6-4E23-Be12-8Cb259C708A | 85,790.31 | 85,647.82 |
| 07/14 | Zelle Payment From Rosalina Ramirez 25484359608 | **2,000.00** | 87,647.82 |
| 07/14 | Affirm Inc        Affirm Pay 7319217       Web ID: 0000317218 | -101.86 | 87,545.96 |
| 07/14 | Card Purchase           07/14 Sp+Aff * Snuggle ME O 855-423-3729 CA Card 6892 | -35.66 | 87,510.30 |
| 07/14 | Affirm Inc        Affirm Pay 7841309       Web ID: 0000317218 | -192.42 | 87,317.88 |
| 07/14 | Aqua Finance Inc Billpay         PPD ID: 1391615890 | -83.65 | 87,234.23 |
| 07/14 | Zelle Payment To Rosalina Ramirez 25483779585 | -2,685.00 | 84,549.23 |
| 07/14 | Zelle Payment To Rosario Sandoval Jpm99Bfqnm7U | -750.00 | 83,799.23 |
| 07/14 | Affirm Inc        Affirm Pay 7966272       Web ID: 0000317218 | -210.65 | 83,588.58 |
| 07/15 | Remote Online Deposit            1 | **1,690.41** | 85,278.99 |
| 07/15 | Manual CR-Bkrg | 8,000.00 | 93,278.99 |
| 07/15 | Online Transfer From Sav ...3716 Transaction#: 25494185710 | 4,000.00 | 97,278.99 |
| 07/15 | Zelle Payment From Rosalina Ramirez 25490370727 | **685.00** | 97,963.99 |

Page 4 of 8

Case 5:26-cv-00021-MFU-JCH   Document 378-1   Filed 02/23/26   Page 4 of 61   Pageid#: 19963189

1. THIS LOAN MUST RECORD IN 2ND LIEN POSITION ON OR PRIOR TO THE DISBURSEMENT DATE NOTED ABOVE. PROVIDE DUPLICATE ORIGINALS OF THE ALTA TITLE POLICY

2. Vesting to read: AUDREY BETH LITTLE, AN UNMARRIED WOMAN AND JACOB LITTLE, AN UNMARRIED MAN, AS JOINT TENANTS WITH FULL RIGHTS OF SURVIVORSHIP

3. Title Policy must contain the following endorsements (or their equivalents): 8.1, 9, 5

4. ALTA Title Policy must be free from liens, encumbrances, easements, encroachments and other title matters except (i) the lien of our loan... (ALL TAXES TO BE PAID CURRENT) ... and (iv) the following items as shown on the preliminary title report dated May 8, 2025

SECONDARY FINANCING:

Secondary financing in the amount of $ NONE has been approved.

ESTIMATE OF FEES AND COSTS:

| ITEM | AMOUNT | POC | PAID BY |
|---|---|---|---|
| Document Prep fee to: Oaktree Funding Corp | 195.00 | | Borrower |
| Underwriting fee to: Oaktree Funding Corp | 695.00 | | Borrower |
| Appraisal fees to: AMC Direct Corporation | 900.00 | | Borrower |
| Appraisal Review Fee to: Clear Capital | 120.00 | | Borrower |
| TITLE - Lender's title insurance to: Amrock | 575.00 | | Borrower |
| TITLE - Settlement Fee to: Amrock Title | 475.00 | | Borrower |
| Mortgage recording fee to: Other | 256.00 | | Borrower |
| Originator compensation to: Adaxa, LLC | 14,331.60 | | Borrower |
| TITLE - Tax Certificate fee to: Amrock | 25.00 | | Borrower |
| Deed Prep Fee to: RR MICHIGAN, LLC | 95.00 | | Borrower |

Exhibit 4 - Underwriting/OA Subject Lien is 2nd Mortgage Max CLTV



## APPROVAL CERTIFICATE

**July 07, 2025 6:40 PM PDT**

Oaktree Funding Corp
3133 W Frye Road, Suite 205
Chandler, AZ 85226

**Ref #: 22025050036**

Audrey Beth Little
81439 Merv Griffin Way
La Quinta, CA 92253

This mortgage loan has been approved on behalf of the above noted client with the following terms and conditions.

| | | | |
|---|---|---|---|
| **Loan Number** | 22025050036 | **AU Response** | None/Not Submitted |
| **Approval Date** | 7/2/2025 | **Approval Exp Date** | |
| | | **Rate Lock Expiration** | 7/11/2025 |

### Loan Information

| | | | |
|---|---|---|---|
| **Loan Amount** | $716,580.00 | **Loan Purpose** | Refinance Cash-out |
| **Total Loan Amount** | $716,580.00 | **Cashout Amount** | $100,000.00 |
| **Mortgage Insurance** | No MI | **Impound?** | No escrow |
| **Upfront MIP Fee Financed** | $0.00 | **Term / Due** | 360 / 360 Months |
| **Note Rate** | 9.625% | **Loan Program** | 30 YR FIXED 2ND LIEN OO/2ND EQUITY ADVANTAGE |
| **Max DTI / Rate** | 50.000% / 9.067% | **Payment Type** | Principal & Interest |
| **LTV / CLTV / HCLTV** | 25.144% / 69.809% / | **Documentation** | Full Document |

### Collateral

| | | | |
|---|---|---|---|
| **Home Value** | $2,850,000.00 | **Property Type** | PUD |
| **Appraised Value** | $2,850,000.00 | **Property Purpose** | Primary Residence |
| **Appraisal Exp Date** | | **Asset Exp Date** | |

### Income

| | | | |
|---|---|---|---|
| **Monthly Income** | $40,847.17 | **Principal & Interest** | $6,090.85 |
| **Income Doc Exp Date** | | **Ratios** | 33.634% / 49.640% |

### Credit

| | | | |
|---|---|---|---|
| **Qualifying Score** | 689 | **Credit Exp Date** | |
| **LQI Credit Exp Date** | | | |

### Preliminary Title Report

| | | | |
|---|---|---|---|
| **Prelim Document Date** | | **Prelim Title Exp Date** | |

### Loan Officer

| | | | |
|---|---|---|---|
| **Contact** | Adam Jorgensen | **Phone** | (402) 525-3079 |
| **E-mail** | ajorgensen@adaxahome.com | **Fax** | |
| **Broker Name** | Adaxa, LLC | | |

### Processor (External)

| | | | |
|---|---|---|---|
| **Contact** | Ashley Garcia | **Phone** | (831) 212-2483 |
| **E-mail** | agarcia@adaxahome.com | **Fax** | |
| **Broker Name** | Adaxa, LLC | | |

### Processor

| | | | |
|---|---|---|---|
| **Contact** | Kale Allred | **Phone** | (480) 800-3800 |
| **E-mail** | kallred@oaktreefunding.com | **Fax** | |

### Account Executive

| | | | |
|---|---|---|---|
| **Contact** | Adam Martin | **Phone** | (480) 800-3800 |
| **E-mail** | akmartin@oaktreefunding.com | **Fax** | |

Exhibit 5 – Title Policy Schedule A (Effective Date, whichever is later)
Case 5:25-cv-00422-MRP-MRK   Document 37-1   Filed 02/03/26   Page 6 of 63   Page ID
Page #:3191

 **Rocket Title Insurance Company**

**ALTA SHORT FORM RESIDENTIAL LOAN POLICY—**
**ASSESSMENTS PRIORITY ONE-TO-FOUR FAMILY**
**issued by**
**ROCKET TITLE INSURANCE COMPANY**

**Transaction Identification Data, for which the Company assumes no liability as set forth in Condition 9.e.:**

Issuing Agent: Rocket Close and Title, Inc

Issuing Office: 17785 Center Court Dr. N., Suite 760, Cerritos, CA 90703

Issuing Office's ALTA® Registry ID: 1066048

Loan ID Number: 22025050036

Issuing Office File Number: 74346744

Property Address: 81439 Merv Griffin Way, La Quinta, CA 92253 8084

# SCHEDULE A

Name and Address of Title Insurance Company: Rocket Title Insurance Company
5910 No. Central Expressway, Suite 1445, Dallas, TX 75206

Policy Number:  RTLSCA-104615

Amount of Insurance:  $716,580.00          Premium:  $575.00

Mortgage Amount:  $716,580.00          Mortgage Date: 7/9/2025

Date of Policy:  07/09/2025
or the date of recording of the insured
mortgage, whichever is later

Property Address:  81439 Merv Griffin Way, La Quinta, CA 92253 8084

County and State:  Riverside, CA

1.  Name of Insured:       Oaktree Funding Corporation its successors and/or assigns

2.  Name of Borrower(s):   Audrey Beth Little, an unmarried person and Jacob Little, a single man, Joint Tenants
with Rights of Survivorship

3.  The estate or interest in the Land identified in this Schedule A and which is encumbered by the Insured Mortgage is Fee Simple and is, at the Date of Policy, vested in the Borrower(s) identified in the Insured Mortgage and named above.

4.  The Land referred to in this policy is described as set forth in the Insured Mortgage.

5.  This policy consists of 6 page(s), unless an addendum is attached and indicated below:

    ☒     Addendum attached

6.  This policy incorporates by reference the endorsements selected below, if any, adopted by the American Land Title Association as of the Date of Policy:

    ☐     ALTA 4 Condominium—Assessments Priority endorsement
    ☒     ALTA 5 Planned Unit Development—Assessments Priority endorsement
    ☐     ALTA 6 Variable Rate Mortgage endorsement, if the Insured Mortgage contains provisions which provide for an adjustable interest rate

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Form Name: 9913012412                    Page 1 of 6



FILED

CLERK, U.S. DISTRICT COURT

2/10/2026

CENTRAL DISTRICT OF CALIFORNIA

BY_____asi_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

AUDREY B. LITTLE,                                Case No. 5:26-cv-00402-MEMF
                                                                      (MBKx)

Plaintiff,

v.

OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET

COMPANIES, INC.; and DOES 1-50, inclusive

Defendants.

**NOTICE OF LODGING SELECTED EXCERPTS (GATEKEEPER**

**FAILURE; EARLY NOTICE; COUNSEL KNOWLEDGE;**

**MEDICAL/CARE IMPACT)**

Plaintiff Audrey B. Little, appearing pro se, respectfully lodges a limited set of

excerpts to assist the Court in evaluating Plaintiff's request for narrow TRO/status-

quo relief and to highlight the most probative evidence without requiring the Court

to search the full exhibit binder and email compilations. The lodged excerpts focus

on: (i) the binding lien-priority condition and gatekeeper safeguards (title diligence

and QC); (ii) early notice and counsel coordination regarding SAC/TRO posture;

and (iii) objective records supporting irreparable harm (caregiving loss and medical impacts).

Lodged Materials (attached as a single combined PDF titled:

Selected_Excerpts_Key_Emails_Medical_UW_Title.pdf):

1. 1. Exhibit A (Specific Closing Instruction: must record in 2nd lien position on or prior to disbursement) — Source: Exhibit_Binder_v14_Bookmarked.pdf; Page(s): 11.

2. 2. Exhibit B (Stale Preliminary Title Report dated 10/15/2024 - facially stale) — Source: Exhibit_Binder_v14_Bookmarked.pdf; Page(s): 47.

3. 3. Exhibit C (Underwriting/QC conditions showing FICO/DTI/CLTV limits and reliance on title conditions) — Source: Exhibit_Binder_v14_Bookmarked.pdf; Page(s): 98.

4. 4. Exhibit D (Loss of caregiving evidence - Rosario Sandoval payment/activity history) — Source: Exhibit_Binder_v14_Bookmarked.pdf; Page(s): 141.

5. 5. Exhibit E (Medical impact / treatment disruption evidence section start) — Source: Exhibit_Binder_v14_Bookmarked.pdf; Page(s): 143-146.

6. 6. Exhibit F (Jan. 23, 2026 meet-and-confer / stipulation request to Goldstein re SAC; copying Rocket counsel) — Source: Exhibit_Binder_v14_Bookmarked.pdf; Page(s): 384.

7. 7. Exhibit G (Jan. 23, 2026 redlined FAC provided to Goldstein; copying Rocket counsel) — Source: Exhibit_Binder_v14_Bookmarked.pdf; Page(s): 387.

8. 8. Exhibit H (Dec. 8, 2025 early notice email re TRO/SAC posture to Teague; Goldstein copied) — Source: jason g emails.pdf; Page(s): 1.

9. 9. Exhibit I (Jan. 5, 2026 email identifying Zeeshan Iqbal as Rocket Close/Rocket Companies counsel) — Source: jason g emails.pdf; Page(s): 195.

10. 10. Exhibit J (Robert Teague LinkedIn: SVP-Director of Compliance & General Counsel, Oaktree Funding Corp.) — Source: (16) Robert Teague _ LinkedIn.pdf; Page(s): 1.

These excerpts demonstrate, among other things: (a) the Specific Closing Instructions required the loan to record in second lien position on or prior to disbursement; (b) the title materials in the file include a facially stale preliminary title report (10/15/2024) and underwriting/QC conditions tied to lien position and CLTV limits; (c) Plaintiff requested a meet-and-confer and stipulation on January 23, 2026 so all parties could respond to the same operative SAC, and copied Rocket's counsel; and (d) the record contains objective evidence of disability, loss of caregiving hours, and medical impacts relevant to irreparable harm.

DATED: February 10, 2026

Respectfully submitted,

/s/ Audrey B. Little

AUDREY B. LITTLE

Plaintiff Pro Se

FILED

CLERK, U.S. DISTRICT COURT

2/10/2026

CENTRAL DISTRICT OF CALIFORNIA

BY _____ asi _____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**AUDREY B. LITTLE,**                                **Case No. 5:26-cv-00402-MEMF (MBKx)**

Plaintiff,

v.

OAKTREE FUNDING CORPORATION; ROCKET CLOSE, LLC; ROCKET COMPANIES,

INC.; and DOES 1–50, inclusive

Defendants.

## COVER PAGE – SELECTED EXHIBITS

Plaintiff submits the attached Selected Exhibits in support of her Ex Parte Application for

Temporary Restraining Order and Status-Quo Relief. These exhibits are excerpted from the

larger Exhibit Binder previously lodged and are provided to direct the Court to the most

probative written communications and records relevant to early notice, gatekeeper failure,

underwriting criteria, medical and caregiving impacts, and irreparable harm.

DATED: February 10, 2026

/s/ Audrey B. Little

AUDREY B. LITTLE

Plaintiff Pro Se

**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** inal Opportunity to Resolve Before Filing Second Amended Complaint & TRO Today (Deadline 1:30 PM PST)
**Date:** December 8, 2025 at 10:54 AM
**To:** Olivier J. Labarre olabarre@wrightlegal.net, Iqbal, Zeeshan ZIqbal@hinshawlaw.com, Heather Moldovan HeatherMoldovan@rocketclose.com, generalcounsel@rocketcompanies.com, legal@rocketcompanies.com, Varun Krishna Varun@rocket.com
**Cc:** Goldstein Jason E. jgoldstein@buchalter.com, Teague Robert rteague@oaktreefunding.com

AL

**Subject:** Final Opportunity to Resolve Before Filing Second Amended Complaint & TRO Today (Deadline 1:30 PM PST)

**Date:** December 8, 2025

**To:**
Olivier J. Labarre, Esq.
Zeeshan Iqbal, Esq.
General Counsel – Rocket Companies, Inc.
Heather Moldovan, COO – Rocket Close LLC

**CC:**
Jason E. Goldstein, Esq.
Robert R. Teague, Esq.
MyLoanServicer.com
Self-copy

---

Dear Counsel and Rocket Executives,

I am writing to offer Rocket **one final opportunity** to resolve this matter voluntarily **before 1:30 p.m. PST today**, at which time I will file both my **Second Amended Complaint** and **Ex Parte Application for Temporary Restraining Order**.

As you know, my background is in **operations, information systems, and large-scale organizational process improvement**. My firm specializes in preventing the type of cascading operational failures that occurred in my refinance transaction and that I am now witnessing again in Rocket's legal response structure.

When I first attempted to settle this matter months ago, **my losses were approximately $62,000**. Rocket declined to engage. As of today, **my documented damages total $528,500**—an escalation of nearly **1,000%**, caused solely by Rocket's failure to acknowledge or address the underlying defect. This expansion of harm was entirely preventable.

At one point, I offered to resolve **all claims— including Oaktree's exposure and Rocket's operational failures — for under $500,000 total.** I was told, "**my client's position has not changed**." That response was a direct consequence of Rocket's siloed internal structure and the lack of cross-functional oversight that has defined this entire experience.

> **This situation has significantly disrupted my ability to work, manage my health, support my family, and maintain stability. Months of uncertainty, lack of information, and continued enforcement of a structurally invalid loan forced me to devote 12–16 hours a day to understanding a problem Rocket created and refused to explain. These are not abstract harms; they are documented, consequential disruptions that were fully avoidable had Rocket acted responsibly.**



**FLexhibits a thru j with denial .pdf**

On Dec 11, 2025, at 10:46 AM, Audrey Little <audreylittle@icloud.com> wrote:

<div align="center">

Click to Download

exhibits a thru j.pdf

155.1 MB

</div>

Sorry

On Dec 11, 2025, at 10:03 AM, Audrey Little <audreylittle458@gmail.com> wrote:

**SUBJECT:** Courtesy Copy – Filed Ex Parte Application for Temporary Restraining Order (Little v. Rocket Title, et al.)

**BODY:**

Zeeshan and Jason,

As a courtesy, I am providing you with copies of the documents I have submitted today for filing with the Riverside Superior Court in Case No. CVPS2508295 (Little v. Rocket Title Insurance Company, et al.).

Attached:

1. Plaintiff's Ex Parte Application for Temporary Restraining Order; OSC re Preliminary Injunction; Request for Order Shortening Time; and Request for Leave to File SAC

2. [Proposed] Temporary Restraining Order (PDF)

3. [Proposed] Temporary Restraining Order (Word version)

4. Exhibit Binder (Exhibits A–J)

5. Proof of Service – Email Service on Rocket Title (LeBarre)

These are provided for courtesy notice only.
Formal service for the TRO package has been executed on Rocket Title Insurance Company through its agent for service of process, Olivier LeBarre.

Regards,
**Audrey Little**
Plaintiff in Pro Per
Phone: (310) 283-4448
Email: Audrey.Little458@gmail.com



**From:** **Audrey Little** audreylittle458@gmail.com
**Subject:** Mediation
**Date:** January 5, 2026 at 1:40 PM
**To:** Jason E. Goldstein jgoldstein@buchalter.com
**Cc:** Audrey Little audreylittle458@gmail.com, Zeeshan Iqbal ZIqbal@hinshawlaw.com

Hi Jason,

Zeeshan is the attorney for Rocket Close and Companies. Would you / Oaktree be willing to attend a mediation with them and me regarding this case?. I am hoping it would lead to a much faster resolution.


Regards,

Audrey Little
audreylittle458@gmail.com

# EXHIBIT V-6

**FAC Redline Provided to Oaktree (Notice of Material Changes)**

Attached document follows.



**From:** **Audrey Little** audreylittle@icloud.com
**Subject:** Redlined version of FAC
**Date:** January 23, 2026 at 1:57 PM
**To:** Goldstein, Jason E. jgoldstein@buchalter.com
**Cc:** Audrey Little audreylittle@icloud.com, Iqbal, Zeeshan ZIqbal@hinshawlaw.com

For your reference I have included a redlined version of the FAC. As you can see the entire complaint has been modified. This is largely due to the fact that when I submitted the first complaint I had not received any evidence from any parties in the case including oak tree. I received 99% of yours on December 10, 2025 and one piece November 19, 2025. The SAC is written based on the evidence I have been able to obtain since the FAC. Even if some things remained they are not in the same place or substantively changed.



**FAC_Redline_Deletions Only.pdf**
145 KB

POS-040

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *For Court Use Only* |
|---|---|
| Audrey Little<br>81439 Merv Griffin Way, Palm Springs, CA 92253<br>TELEPHONE NO.: 310-283-4448    FAX NO. *(Optional)*<br>E-MAIL ADDRESS *Optional*   audrey.little458@gmail.com<br>ATTORNEY FOR *(Name)*   In Pro Per | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    Riverside
STREET ADDRESS:    3255 East Tahquitz Canyon Way
MAILING ADDRESS:    3255 East Tahquitz Canyon Way
CITY AND ZIP CODE:    Palm Springs, 92262
BRANCH NAME:    Palm Springs Branch

| PLAINTIFF / PETITIONER:    Audrey Little | CASE NUMBER: |
|---|---|
| DEFENDANT / RESPONDENT:    Oaktree Funding Corporation, et al. | CVPS2508295 |

| PROOF OF SERVICE—CIVIL | JUDICIAL OFFICER: |
|---|---|
| **Check method of service** *(only one):*<br>[X] By Personal Service    [ ] By Mail    [ ] By Overnight Delivery<br>[ ] By Messenger Service    [ ] By Fax | DEPARTMENT:<br>PS1 |

*Do not use this form to show service of a summons and complaint or for electronic service.*
*See USE OF THIS FORM on page 3.*

1. At the time of service I was over 18 years of age and **not a party to this action.**
2. My residence or business address is:
   1401 Garden Highway, Suite 100, Sacramento, CA 95833.
3. [ ]    The fax number from which I served the documents is *(complete if service was by fax):*

4. On *(date):*   Jan 16 of 2026 at 2:42 PM    I served the following **documents** *(specify):*
   Notice of Motion and Motion for Temporary and Preliminary Injunctive Relief.
   Supplemental Declaration of Audrey Little in Support of Motion to Advance Case Management Conference.
   Letter to Oaktree Funding Corp. titled "FINAL NOTICE: Immediate Discontinuance of Enforcement — Loan No. 22025050036".
   Exhibit Binder with exhibits A-1, A-2, B, C, D, E, F, G, H, J, L, M.
   Exhibit T — Chronology of Requests to Pause Billing / Enforcement.
   [ ]    The documents are listed in the *Attachment to Proof of Service—Civil (Documents Served)* (form POS-040(D)).
5. I served the documents on the **person or persons** below, as follows:
   a.    Name of person served:    Cogency Global Inc, registered agent of Oaktree Funding Corporation.
         By leaving the documents with Emma Hernandez, authorized employee of Cogency Global Inc.
   b.    [X]    *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
         Business or residential address where person was served:
         1325 J Street, Ste 1550, Sacramento, CA 95814
   c.    [ ]    *(Complete if service was by fax.)*
         Fax number where person was served:

   [ ]    The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of
   Service—Civil (Persons Served)* (form POS-040(P))
6. The documents were served by the following means *(specify):*
   a.    [X]    **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and eight in the evening

Form Approved for Optional Use
Judicial Council of California
POS-040 [Rev. January 1, 2020]

**PROOF OF SERVICE — CIVIL**
**(PROOF OF SERVICE)**

Page 1 of 2
Code of Civil Procedure, §§ 1011, 1013, 1013a
2015.5; Cal. Rules of Court, rule 2.306

| CASE NAME:<br>Audrey Little vs. Oaktree Funding Corporation, et al. | CASE NUMBER:<br>CVPS2508295 |
|---|---|

6.  b.  ☐  **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one)*:

   (1)  ☐  deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

   (2)  ☐  placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

   I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):*                           ,

   c.  ☐  **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

   d.  ☐  **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

   e.  ☐  **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:   January 19 of 2026

Keianna Hostetler
Registered Process Server
County of Sacramento, registration #2025-048

| (TYPE OR PRINT NAME OF DECLARANT) | (SIGNATURE OF DECLARANT) |
|---|---|

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

## DECLARATION OF MESSENGER

☐  **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and eight in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date)*:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

| (NAME OF DECLARANT) | (SIGNATURE OF DECLARANT) |
|---|---|

Electronically FILED by Superior Court of California, County of Riverside on 12/29/2025 12:00 AM
Case Number CVPS2508295 0000152243806 - Jason B. Galkin, Executive Officer/Clerk of the Court By Victoria Lopez, Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Audrey Little<br>81434 Merv Griffin Way<br>La Quinta, CA 92253<br><br>TELEPHONE NO.: (310) 283-4448      FAX NO *(Optional):*<br>E-MAIL ADDRESS *(Optional):* audrey.little458@gmail.com<br>ATTORNEY FOR *(Name):* | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
  STREET ADDRESS: 3255 E. TAHQUIZ CANYON WAY
  MAILING ADDRESS: 3255 E. TAHQUIZ CANYON WAY
  CITY AND ZIP CODE: PALM SPRINGS, CA 92262
  BRANCH NAME: DESERT - PALM SPRINGS COURTHOUSE

| PLAINTIFF/PETITIONER: AUDREY LITTLE<br><br>DEFENDANT/RESPONDENT: ROCKET TITLE INSURANCE COMPANY, et al. | CASE NUMBER:<br>CVPS 2508295 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>DEPT. PS1 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [X]  summons

   b. [X]  complaint

   c. [ ]  Alternative Dispute Resolution (ADR) package

   d. [X]  Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ]  cross-complaint

   f. [ ]  other *(specify documents):* First Amended Complaint for Damages

3. a. Party served *(specify name of party as shown on documents served):*

      ROCKET COMPANIES, INC.

   b. [X]  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
      under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      C.T. CORPORATION SYSTEMS, Registered Agent, by serving Diana Ruiz, SOP Intake Specialist

4. Address where the party was served: 330 N. Brand Blvd., Suite 700, Glendale, CA 91203

5. I served the party *(check proper box)*

   a. [X]  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
      receive service of process for the party (1) on *(date):* 12/26/2025       (2) at *(time):* 10:42 AM

   b. [ ]  **by substituted service.** On *(date):*          at *(time):*          I left the documents listed in item 2 with or
      in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ]  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
               of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ]  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
               place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ]  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
               address of the person to be served, other than a United States Postal Service post office box. I informed
               him or her of the general nature of the papers.

      (4) [ ]  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
               at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
               *(date):*          from *(city):*          or [ ] a declaration of mailing is attached.

      (5) [ ]  I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | **CEB**<br>www.ceb.com | Code of Civil Procedure, § 417.10 |

| PLAINTIFF/PETITIONER: AUDREY LITTLE | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: ROCKET TITLE INSURANCE COMPANY, et al. | CVPS 2508295 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date)*:

    (2)  from *(city)*:

    (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section)*:

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  ☐  as an individual defendant.

  b.  ☐  as the person sued under the fictitious name of *(specify)*:

  c.  ☐  as occupant.

  d.  ☒  On behalf of *(specify)*: ROCKET COMPANIES, INC.

    under the following Code of Civil Procedure section:

    ☒  416.10 (corporation)        ☐  415.95 (business organization, form unknown)
    ☐  416.20 (defunct corporation)    ☐  416.60 (minor)
    ☐  416.30 (joint stock company/association)    ☐  416.70 (ward or conservatee)
    ☐  416.40 (association or partnership)    ☐  416.90 (authorized person)
    ☐  416.50 (public entity)        ☐  415.46 (occupant)
                           ☐  other:

7.  **Person who served papers**

  a.  Name: Joseph Goldbaum - JGI | Joseph Goldbaum Inc.

  b.  Address: 4790 Irvine Blvd., Suite 105-504, Irvine, CA 92620

  c.  Telephone number: 949-795-0760

  d.  The fee for service was: $ 75.00

  e.  I am:

    (1)  ☐  not a registered California process server.

    (2)  ☐  exempt from registration under Business and Professions Code section 22350(b).

    (3)  ☒  a registered California process server:

      (i)  ☒ owner  ☐ employee  ☐ independent contractor.

      (ii)  Registration No.: PSC-227

      (iii)  County: Orange

8.  ☒  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9.  ☐  I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: 12/27/2025

JOSEPH GOLDBAUM
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE )

# EXHIBIT __
# SUMMARY OF IRREPARABLE HARM (AUDREY LITTLE)
### (Updated: _____, 2026)

I submit this summary to identify the physical, financial, credit, housing, and life-functioning harms that have occurred and/or are imminent as a result of the ongoing enforcement of the disputed Oaktree loan and the continued withholding of core closing/title/escrow records needed to verify what occurred and to resolve the dispute. Unless otherwise stated, the harms below are ongoing and compounding.

## A. Imminent Forced Sale and Housing Displacement (Date-Certain)

Forced listing deadline (Feb. 28, 2026): If interim relief is not entered before February 28, 2026, I will be forced to list my home for sale because I cannot sustain continued payment demands and compounding costs. Once I list under duress, the consequences cannot be undone later.

Loss of uniquely suitable home: My home is uniquely suitable and not readily replaceable (single-story, custom-built for my needs and my pets). A forced sale would permanently deprive me of a uniquely suitable living environment.

Replacement impossibility / displacement: Comparable replacement housing is not realistically available in my area within the constraints created by this dispute, and any interim solution would require extended rental housing (which is unusually difficult given that I have five pets).

Permanent downstream consequences of forced sale: A forced sale would trigger long-term, nonreversible consequences including increased housing costs, likely higher HOA burdens, and major disruption to stability and health that cannot later be "fixed" by money.

## B. Credit Harm and Forced Triage Between Obligations (Irreversible Once Reported)

Co-borrower credit risk (Jake): I have been forced to prioritize payments on the Oaktree loan to avoid credit harm to my son/co-borrower, Jake, because negative reporting would be difficult to undo once made.

First-ever late payment on my Ally first mortgage: As a direct result of being forced to divert limited funds to keep Oaktree current (to protect Jake), I incurred my first late payment ever on my Ally first mortgage. Once late fees and credit reporting risk are triggered, the harm cannot be retroactively erased by the Court.

Credit exhaustion: I am maxed out on credit cards and have lost the ability to absorb emergencies, causing escalating interest/fees and increasing risk of further delinquencies.

Refinance lockout: I discovered the lien-position/recording problems only when I attempted to refinance and could not. The inability to refinance promptly has trapped me in a worsening financial spiral and increases the risk of forced sale.

## C. Financial Destabilization and Cascading Defaults

HOA payment failure: My HOA check bounced due to lack of available funds, exposing me to late charges, collections, and further destabilization.

Inability to maintain essential insurance coverage: I have been unable to pay required/essential insurance premiums (home insurance, car insurance, umbrella policy), placing me at risk of catastrophic uninsured loss and additional financial consequences that cannot be undone later.

Inability to complete taxes: I have been unable to complete/pay my taxes on schedule due to financial crisis and time displacement, risking penalties and further destabilization.

Loss of medical access structure: I have been unable to pay the concierge fee for my doctor, disrupting continuity of care at a time of significant health decline.

Compounding fees/penalties: Continued enforcement without a pause has forced destructive triage decisions and has caused compounding fees and penalties (including bank/returned-payment/late-fee consequences) that increase over time and worsen irreparable credit and housing risk.

### D. Physical and Medical Harm (Documented and Observable Decline)

Inability to eat normally / poor nutrition: Stress and constant time pressure have caused me to not eat or to eat poorly and irregularly, leading to reduced stamina and visible health decline.

Unintended weight loss: I have lost approximately 8 pounds unintentionally during this period.

Sleep disruption and physiologic strain: I have suffered sustained sleep disruption, nightly stress dreams, and measurable physiologic strain tracked by wearables (WHOOP/Oura), consistent with severe and ongoing stress.

Recurrent crying and tear duct swelling: I cry frequently from stress and overwhelm; when I cry, my left tear duct clogs and my left eye swells.

Night sweats (medical record): I have experienced night sweats documented in medical records during this period.

New ear infection (medical record): I suffered an ear infection during this period, unusual for me and the first I can recall in my life.

Hair loss and other physiologic changes: I have experienced hair falling out and other physiologic changes (including new body odor), reflecting ongoing stress-related deterioration.

Deconditioning from inability to exercise: Due to financial and time constraints of self-representation, I have not maintained normal exercise for months, causing significant deconditioning and visible physical changes.

Musculoskeletal injury and recovery risk (rotator cuff): I have suffered significant physical injury (including a torn rotator cuff) with ongoing treatment needs and risk of worsened prognosis without stabilization. The longer this continues, the greater the risk of non-healing or escalation to surgery, which would impair driving and daily functioning.

Increased care needs and costs: I have incurred increased caregiver and support needs (including additional charges and assistance), which reflect functional decline and are ongoing.

### E. Emotional and Functional Harm (Life-Functioning Loss Not Restorable Later)

Near-daily distress: I experience frequent emotional breakdowns and crying from prolonged stress, uncertainty, and compounding harm.

Need for renewed therapy/support: I have not needed therapy for years, but I now cannot handle this alone and must locate a new provider and begin treatment again due to the severity and persistence of stress.

Loss of normal life activities: I have been unable to date, socialize, and maintain normal personal life functioning due to the crisis and constant emergency litigation burden.

### F. Loss of Irreplaceable Family Time and Opportunities

Loss of time with my elderly mother and sister: I have lost substantial, irreplaceable time with my 84-year-old mother and my sister during a period when that time cannot be replaced later.

Loss of once-in-a-lifetime trips and bonding time with my sons: I was forced to cancel major planned trips with my sons (including a Bora Bora trip with my younger son and a World Cup trip with my older son), causing both (a) significant economic loss and (b) permanent loss of unique family experiences.

Out-of-pocket travel losses: I incurred nonrefundable cancellation losses associated with these trips, estimated at approximately $60,000 (subject to receipts/refunds).

Impact on pets and daily responsibilities: The crisis has materially impaired my ability to care for my dogs as I normally do (walking/playing), which compounds distress and reflects severe life disruption.

## G. Litigation Burden and Record Withholding (Ongoing Prejudice)

Extraordinary time displacement: I have spent approximately 2,200 hours (conservative) on emergency litigation tasks and compliance because I am forced to proceed pro se due to financial constraints. This time displacement has directly caused missed obligations, worsening health, and compounding financial damage.

Removal-related delay and extended crisis window: Removal and post-removal motion practice extended the period of acute harm and forced me into continuous emergency briefing while damage continued to accrue.

Withholding of core closing/control documents: The only critical unknowns that remain are within withheld records (e.g., title pulls/updates/bring-downs, payoff/reconveyance tracking, recording confirmations, and related internal records). Continued withholding prevents verification and timely resolution while enforcement continues.

## H. Why the Harm Is Irreparable

Irreversibility of forced sale and first-time delinquency: Once forced listing occurs, or once first-ever delinquencies/credit reporting occur, the Court cannot practically undo the downstream consequences later.

Compounding nature: Each week of delay increases both the severity and the permanence of harm: more defaults, more credit risk, more health decline, and heightened probability of forced sale/displacement.

Uniqueness of real-property stability and disability-related needs: The stability and suitability of my housing situation and my health baseline are not readily replaceable; loss of them cannot be fully compensated later with money.

## Supporting Documentation (Examples to Attach / Reference)

Ally first mortgage account screenshot/statement showing past-due status and late fees (date-stamped).

Proof of Oaktree payments made during the same period (bank/servicer confirmations).

HOA bounce documentation and any late/collection notice.

Insurance nonpayment notices / lapse warnings (home/auto/umbrella).

Medical records: night sweats, ear infection, weight measurements, injury/rotator cuff records, PT/rehab documentation.

Wearable summaries (weekly averages of sleep/recovery/strain).

Proof of forced listing by Feb. 28 (realtor email, draft listing agreement, calendar schedule).

Travel cancellation receipts/confirmations/refund denials (Bora Bora, World Cup).

Written requests for escrow/title/loan file access and responses/refusals.

**I declare under penalty of perjury that the foregoing summary is true and correct to the best of my knowledge based on my records and personal knowledge.**

Dated: _____, 2026

Audrey Little

# EXHIBIT V-22

## Oaktree Equity Advantage HELOC Program Matrix

(Effective January 6, 2026)

Little v. Oaktree Funding Corp., et al.

U.S.D.C. C.D. Cal. Case No. 5:26-cv-00402-MEMF (MBKx)

Produced / located on Oaktree's website; program guidelines for Equity Advantage HELOC.
Key excerpts include lien position limits and document age requirements (e.g., title).

*Cover page generated for exhibit organization; underlying document follows.*

# Equity Advantage
## HELOC Program Matrix

## Second Liens
Maximum HCLTV

| FICO | Primary | | Second Home | | Investment | |
|---|---|---|---|---|---|---|
| | Full Doc | Alt-Doc | Full Doc | Alt-Doc | Full Doc | Alt-Doc |
| 740 | 90 | 85 | 90 | 85 | 75 | 75 |
| 700 - 739 | 90 | 85 | 90 | 85 | 70 | 70 |
| 680 - 699 | 90 | 85 | 90 | 85 | 60 | - |
| 660 - 679 | 70 | 70 | 60 | 60 | 60 | - |

## First Liens
Maximum LTV

| FICO | Primary | | Second Home | | Investment | |
|---|---|---|---|---|---|---|
| | Full Doc | Alt-Doc | Full Doc | Alt-Doc | Full Doc | Alt-Doc |
| 720 | 80 | 80 | 80 | 80 | 75 | 75 |
| 700 - 719 | 80 | 80 | 80 | 80 | 70 | 70 |
| 680 - 699 | 75 | 75 | 75 | 75 | - | - |

## General Requirements

**Product Type**
Variable rate (Index plus a margin), 3 or 5 year IO draw period with a fully amortizing repayment period.  30, 25, 20, and 15 year amortization terms allowed

**HELOC Requirements**
**Index:** Prime rate as published in the WSJ on the 1st of the month - highest range used if range is published
**Initial Draw:** Minimum of 50% of the total line amount and no less than $150k
**Additional Draw:** Prohibited during the first 90 days following closing date.  Minimum $1k not to exceed credit limit
**Loan Payback:** No principal payments allowed during first 90 days.  Any principal payback may be considered an EPO

**Line/Loan Amount**
$150k - $500k ($1M case-by-case; Primary and Second Home only)
Maximum total financing is limited to $5M (total amount of 1st and 2nd lien combined)

**Lien Positions**
1st and 2nd lien positions only.  Subordinate financing behind Oaktree Funding second liens not permitted.

**Occupancy**
Owner occupied, second homes, investment (limited to 10 financed properties)

**Debt to Income**
Max 50% DTI
30-yr fully amortized payment based on start rate +2% and the total credit limit used to qualify if floating rate

**Early Termination**
5% penalty if terminated within the first 12 months unless otherwise prohibited by Federal or State law

**First Liens**
Max $500k; Lower of mid-FICO scores used if multiple borrowers

## Appraisal Requirements

**Full appraisals required on:**
- 1st lien positions
- Leasehold Properties

## Permitted Options

| Loan Amount | Details |
|---|---|
| ≤ $400k | 1. AVM with exterior property inspection with the following requirement: <br> a. Max 90 CLTV <br> b. Minimum confidence score of 90% <br> 2. Drive by appraisal <br> 3. Full appraisal <br> 4. Use prior appraisal (see requirements) |
| > $400k | 1. Full interior appraisal (1004/1025/1073) <br> 2. Use prior appraisal (see requirements) |

**Recertification of an existing appraisal is acceptable when the following requirements are met:**

1. Report has been completed within 12 months of application date

2. Current appraisal provided must be on form 1004 (single family), 1025 (multi-family), or 1073 (condo)

3. One of the following are required:

   a. AVM supporting value within 10% variance and Property Condition Inspection (PCI) is required when effective age of the appraisal is greater than 90 days

   b. A Collateral Desktop Analysis (CDA) and Property Condition Inspection (PCI) are required and will be ordered by the lender to validate any use of an existing appraisal

   c. CDA risk score must be low or moderate with no additional review recommended by reviewer - up to 10% variance in value

   d. CDA analysis commentary contains no comments that adversely impact value, marketability, or condition of the property

   e. CDA home data index must support either a neutral or increasing market trend

*CLTV will be calculated as the lower of the purchase price/CDA value or the appraised value*

*This material is intended solely for the use of licensed mortgage professionals.  Distribution to consumers is strictly prohibited. Program and rates are subject to change without notice.*

*Effective January 6, 2026*

OAKTREE
FUNDING CORP.

# Equity Advantage
## HELOC Program Matrix

## Income

### Documentation

| Full Documentation | • 2 Yrs - Standard FNMA documentation; NonQM and Agency eligible<br>  • Salaried: 2 Yrs W2 and Paystubs<br>  • Self-employed: 2 Yrs tax returns, all schedules.  YTD P&L + 3 mo. bank statements<br>• 1 Yr - W2, tax returns<br>  • Salaried: 1 Yr most recent W2 and Paystubs<br>  • Self-employed: 1 Yr tax return, all schedules.  YTD P&L + 3 mo. bank statements<br>• Asset Depletion permitted to augment qualifying income |
|---|---|
| Bank Statements | • 12 or 24 months; personal and/or business<br>• Asset Depletion permitted to augment qualifying income<br>• Refer to guidelines for expense factors and additional requirements |
| 1099 | • Most recent 1 Yr 1099; must have 2-year history of 1099 employment<br>• Refer to guidelines for any additional requirements and documentation |
| P&L | • CPA/CTEC/EA completed and signed 12-month P&L **(80 CLTV Max)**<br>• Refer to guidelines for any additional requirements and documentation |
| Document Age | • Income & Assets - 90 days<br>• Credit Report - 90 days<br>• Appraisal - 120 days<br>• Title - 120 days |

## Housing

### Seasoning

6-month seasoning required for all investment products

No seasoning is required subject to the following (primary & secondary residences):

- 0-6 months: must use the lower of the purchase price or appraised value
- >6 months: may use appraised value

### History

No mortgage lates in the last 6 months and max 1x30 in the past 12 months inclusive of all mortgages and all REO for all borrowers on the transaction.

No active mortgage loan can be in any active deferment or forbearance period. Once the deferment or forbearance period has expired, a minimum of three monthly payments at the current payment must be documented.

### Property Types

**Eligible:** Single family, PUD, Warrantable Condo (80 CLTV Max), 2-4 unit (80 CLTV Max), Rural primary or second home properties up to 10 acres (75 CLTV Max)

**Ineligible:** Cooperatives, condotels (NW Condo), condo projects, hotel/motel condos, mobile homes, manufactured housing, commercial operations, geodesic domes, working farms and ranches, unimproved land, properties with >10 acres, timeshares, properties listed for sale in the past 12 months

## Other Information

| Property Type LTV Limits | • Warrantable Condo - 80 CLTV Max<br>• 2-4 Unit - 80 CLTV Max<br>• Rural up to 10 acres - 75 CLTV Max |
|---|---|
| Liabilities | **Permitted:** Paying off debt to qualify<br>**Not permitted:** paying down debt to qualify, exclusion of lease payments<br>Student loan - 1% of the balance is used to calculate the payment to qualify when there is no payment reporting |

*This material is intended solely for the use of licensed mortgage professionals.  Distribution to consumers is strictly prohibited. Program and rates are subject to change without notice.*

*Effective January 6, 2026*



# Equity Advantage
## HELOC Program Matrix

## Other Information Cont.

| | |
|---|---|
| **Ineligible Borrowers** | • Non-occupant co-borrowers<br>• Irrevocable trusts<br>• Use of a power of attorney is only permitted for piggyback purchase transactions following GSE requirements<br>• Foreign Nationals<br>• Non-Permanent Residents |
| **Title** | Loan amount ≤ $250k: Owner encumbrance property report<br>Loan amount > $250k: Full title required |
| **Trade Lines** | Minimum of 3 trade lines are required for all borrowers that are contributing income to qualify.  At least one trade line must be open and active for the past 12 months.<br>A current mortgage paid as agreed for past 36 months will override the minimum trade line requirement |
| **Transaction Types** | Arm's length transactions only<br><br>*A non-arm's length transaction, also known as an arm-in-arm transaction, refers to a business deal in which buyers and sellers have an identity of interest; in short, buyers and sellers have an existing relationship, whether business-related or personal.*<br><br>Oaktree funding does not allow a non-arm's length transaction with the exception of a tenant buying the property they are currently renting from the landlord/owner of the property.  All other non-arm's length transactions are ineligible for financing. |
| **Significant Derogatory Credit** | Measured from disbursement date<br>Period of time that must elapse prior to loan eligibility:<br>• Foreclosure - 7 years<br>• Charge-off of a mortgage account, deed in lieu, pre-foreclosure sale, short sale - 4 years<br>• Chapter 7 or 11 bankruptcy - 4 years from discharge or dismissal<br>• Chapter 13 bankruptcy - 2 years from discharge or 4 years from dismissal<br><br>Multiple events with the past 7 years are not permitted.  Both events must be greater than 7 years. |
| **Ineligible States** | • Tennessee<br>• Texas |

*This material is intended solely for the use of licensed mortgage professionals.  Distribution to consumers is strictly prohibited.  Program and rates are subject to change without notice.*

*Effective January 6, 2026*



OAKTREE
FUNDING CORP.